1  Michael H. Bierman, State Bar No. 89156
   Michael E. Pappas, State Bar No. 130400
2  Michelle K. Sugihara, State Bar No. 217444
   LUCE, FORWARD, HAMILTON & SCRIPPS LLP
3  601 S. Figueroa, Suite 3900
   Los Angeles, California 90017
4  Telephone No.: 213.892.4992
   Fax No.: 213.892.7731
5  E-Mail:   mbierman@luce.com
             mpappas@luce.com
6             msugihara@luce.com

7  Attorneys for Intervenor, National Credit Union Administration
   As Conservator For Western Corporate Federal Credit Union .

8
                    UNITED STATES DISTRICT COURT
9
                   CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 1ST VALLEY CREDIT UNION; CASCADE FEDERAL CREDIT UNION; GLENDALE AREA SCHOOLS FEDERAL CREDIT UNION; KAIPERM NORTHWEST FEDERAL CREDIT UNION; NORTHWEST PLUS CREDIT UNION; STAMFORD FEDERAL CREDIT UNION; and TULARE COUNTY FEDERAL CREDIT UNION, | Case No.: CV10-01597 GW (MANx) |
| Plaintiffs, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SUBSTITUTE THE NATIONAL CREDIT UNION ADMINISTRATION AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION IN PLACE OF PLAINTIFFS** |
| DONNA BLAND, ROBERT BURRELL, JEREMY CALVA, WILLIAM CHENEY, LAURA CLOHERTY, GORDON DAMES, ADAM DENBO, DIANA R. DYKSTRA, JEFF HAMILTON, ROBERT H. HARVEY, JR., JAMES HAYES, WAYNE HOPE, DWIGHT JOHNSTON, JAMES P. JORDAN, TIMOTHY KRAMER, ROBIN J. LENTZ, SUSANNE LONGSON, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID ROUGHTON, TIMOTHY SIDLEY, ROBERT SIRAVO, DAVID TRINDER, DARREN WILLIAMS, RISKSPAN INC., and DOES 1 through 100, inclusive. | **Date :  June 14, 2010** **Time :  8:30 a.m.** **Crtrm:  10** |
| Defendants | |
| and | |
| NATIONAL CREDIT UNION ADMINISTRATION AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION, | |
| Intervenor. | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  **INTRODUCTION**

On March 19, 2009, Western Corporate Federal Credit Union ("WesCorp") was placed into conservatorship and the National Credit Union Administration ("NCUA") was appointed conservator ("Conservator").  At the time of the conservatorship, WesCorp was a $23 billion federally chartered corporate credit union whose 1,100 members are themselves credit unions.  Its losses are currently estimated to be more than $6 billion.  A significant amount of these losses will be borne by a government insurance fund, the National Credit Union Share Insurance Fund (the "NCUSIF"), financed by assessments paid by credit unions.  As Conservator, the NCUA is investigating the failure of WesCorp and whether any of its former officers or directors are legally culpable.  If the Conservator initiates legal action against former officers and directors, any recovery would go to WesCorp.

This action was brought by a group of seven WesCorp member credit unions against certain current and former directors and officers of WesCorp.  It seeks to recover the assets of the defendants and any insurance proceeds that might be available for the benefit of the seven plaintiffs.  The rights and claims that the plaintiffs are asserting are rights that are derivative of WesCorp –the complaint alleges negligence and breaches of fiduciary duties that resulted in losses to WesCorp and its members generally and not to the plaintiffs in particular.

Under federal law, the Conservator succeeds to all rights and obligations of the credit union and of its members with respect to the credit union.  The Conservator, and not individual member credit unions, thus has the exclusive right to pursue claims against current and former officers and directors for breaches of duty resulting in losses to the credit union and its members.  Because the Conservator has succeeded by operation of law to the claims asserted by the plaintiffs in this action, it is the real party in interest and must be substituted as plaintiff in place and stead of the current plaintiffs.

## II.   STATEMENT OF FACTS

### A.   The Federal Credit Union System.

The NCUA is the federally authorized regulatory agency thatoversees all federally chartered credit unions.  The authorization for the NCUA is found at 12 U.S.C. § 1751, *et seq*. (the "Federal Credit Union Act").  The NCUA acts under the management of the NCUA Board.  12 U.S.C. § 1752.  Declaration of David Shetler ("Shetler Decl.") ¶ 2.[1]

The credit union system is a three-tier system consisting of one wholesale corporate credit union, 27 retail corporate credit unions, and nearly 8,000 "natural person" credit unions.  The wholesale corporate credit union (U.S. Central Federal Credit Union) provides services to the 27 retail corporate credit unions, while the retail corporate credit unions provide services to the natural person credit unions, which in turn serve the financial needs of more than 87 million members.  Shetler Decl. ¶ 3.

Retail corporate credit unions provide essential support for natural person credit unions through delivery of liquidity, financial, and correspondent products and services, such as investment/deposit services, loans, wire transfers, item processing and imaging, automatic clearinghouse transaction processing, automatic teller machine processing, bill payment services and security safekeeping.  Shetler Decl. ¶ 4.

### B.   The Parties.

WesCorp, with 1,100 members, is the largest of the 27 retail corporate credit unions.  Shetler Decl. ¶ 5.  The seven plaintiffs in this action, 1st Valley Credit Union, Cascade Federal Credit Union, Glendale Area Schools Federal Credit Union, KaiPerm Northwest Federal Credit Union, Northwest Plus Credit Union, Stamford Federal Credit Union, and Tulare County Federal Credit Union (collectively

---

[1] The Shelter Declaration was originally filed in the Superior Court in support of the Conservator's motion to intervene and is part of this Court's file.

1  "Plaintiffs") are natural person credit unions that are members of WesCorp.

2  Complaint ¶¶ 6-12.

3      The defendants in this action are the following former and current officers

4  and directors of WesCorp: Robert Siravo, Robert Burrell, and Jeremy Calva (former

5  officer defendants); James Hayes, Laura Cloherty, Jeff Hamilton, Dwight Johnston,

6  Timothy Sidley and David Trinder (current officer defendants); Robert H. Harvey,

7  Jr., James P. Jordan, Timothy Kramer, Robin J. Lentz, Gordon Dames, Adam

8  Denbo, Diana R. Dykstra, Wayne Hope, Susanne Longson, John M. Merlo, Warren

9  Nakamura, Brian Osberg, and William Cheney (former director defendants); David

10  Roughton, Darren Williams and Donna Bland (former supervisory committee

11  defendants) (collectively, "Defendants").  The Plaintiffs also sued RiskSpan, Inc., a

12  third-party consultant that allegedly advised the WesCorp officers and directors on

13  their investment strategies.  Complaint ¶¶ 13-16.

14      In March 2009, the NCUA determined, among other things, that WesCorp's

15  investment portfolio, which was heavily invested in mortgage backed securities, had

16  declined in value to such a point as to make it necessary to appoint a Conservator to

17  manage and conserve the assets of WesCorp and to protect the National Credit

18  Union Share Insurance Fund and the interest WesCorp members' interests.  Shetler

19  Decl. ¶ 6.  The NCUA appointed itself as Conservator on March 19, 2009, pursuant

20  to 12 U.S.C. § 1786(h)(1)(A).  A copy of the conservatorship order is attached to the

21  Shetler Decl. as Exhibit 1.  As a result of the conservatorship, all assets and

22  operations of WesCorp are now under the control of the NCUA Board as

23  Conservator.  Shetler Decl. ¶ 6.

24      **C.  Procedural History.**

25      Plaintiffs filed this lawsuit on November 24, 2009, in the Los Angeles

26  Superior Court, after the Conservator had been appointed.  Shortly thereafter, the

27  Conservator sought, and on February 24, 2010 was granted, leave to intervene in the

28  lawsuit.  The Conservator promptly removed to this court on March 3, 2010.

3

1    On March 17, 2010, the Court stayed this lawsuit pursuant to the parties'

2    stipulation to allow Plaintiffs and the Conservator to discuss their respective roles, if

3    any, in this litigation and to allow the Conservator time to investigate the claims

4    raised in the lawsuit and what other claims the Conservator may have.  The

5    Conservator's investigation is ongoing.

6    **D.    The Lawsuit.**

7    In their complaint, the Plaintiffs alleged that they lost their member capital

8    accounts at WesCorp and will be required to pay additional assessments to the

9    NCUSIF as a result of the Defendants' breaches of fiduciary duty and negligence in

10    managing WesCorp and its investments.  The complaint summarizes the Plaintiffs'

11    claims as follows:

12    > In short, by embarking on a reckless and unreasonably leveraged
      > investment strategy, the WesCorp officer defendants, director defendants,
13    > and supervisory defendants (collectively, the "Individual Defendants")
      > breached fiduciary duties owed to WesCorp's credit union members,
14    > including Plaintiffs, for whose very benefit WesCorp was created.  The
      > Individual Defendants were assisted in their negligent investment scheme
15    > by RiskSpan, Inc., which was supposed to provide a competent,
      > independent analysis and evaluation of the mortgage-related securities in
16    > which WesCorp heavily invested.  RiskSpan and the Individual
      > Defendants utterly failed to conduct themselves in accordance with the
17    > requisite standard of care with regard to the protection of member credit
18    > unions' assets and the maintenance of sufficient WesCorp liquidity for the
      > benefit of its member credit unions' needs.
19

20    Complaint ¶ 4.

21    The complaint alleges two causes of action: one for negligence and a second

22    for breach of fiduciary duties.  While the complaint makes conclusory allegations

23    that Defendants owed Plaintiffs various duties, it does not allege either that the

24    action is being brought derivatively on behalf of WesCorp or any theory under

25    which the allegedly breached duties of WesCorp's directors and officers would run

26    directly to its members rather than to WesCorp itself.

27

28

4

# III.    LEGAL ARGUMENT

A.    **The Conservator Has Succeeded To All Rights, Titles, Powers And Privileges Of The Plaintiffs To Bring Claims Against The Former And Current Directors And Officers.**

Upon conservatorship, the NCUA Board (the "Board") succeeded to:

> (i) all rights, titles, powers, and privileges of the credit union, *and of any member*, accountholder, officer, or director of such credit union with respect to the credit union and the assets of the credit union.

12 U.S.C. § 1787(b)(2)(A)(i) (Emphasis added).

Cases interpreting this and similar statutes involving other financial institution regulators have held that the right of a member or shareholder to sue officers and directors of a failed financial institution for damages to the institution or for damages to the member's or shareholder's interests vests in the regulator acting as conservator or receiver. *Lafayette Federal Credit Union v. National Credit Union Administration*, 960 F.Supp. 999, 1005 (E.D. Va. 1997), *aff'd,*133 F.3d 915, 1998 WL 2881 (4ᵗʰ Cir. Jan. 7, 1998) (unpublished); *In re Federal National Mortgage Association Securities, Derivative and "ERISA" Litigation,*629 F.Supp.2d 1 (D.C. Cir. 2009) (Only FHFA has standing to pursue the claims for misconduct of former officers and directors relating to subprime mortgages). *See also*, *In re United Independent Credit Union,* 768 F.Supp 42 (E.D. NY 1991)(Majority shareholders not entitled to intervene because National Credit Union Administration Board as Conservator had duty to represent all shareholders).

In *Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998), the Ninth Circuit construed a virtually identical provision applicable to insured depository institutions as eliminating shareholders' standing to pursue derivative claims on behalf of a bank because "Congress has transferred everything it could to the FDIC, and that includes a stockholder's right, power, or privilege to demand corporate action or to sue directors or others when action is not forthcoming." *Id.* at 700.  Among the rights and powers the FDIC acquires when named as receiver or conservator is the right to control and assert claims brought derivatively by shareholders based on the acts and

5

1   omissions of directors and officers of failed banks. *Id* at 700-701. This right is to

2   be broadly read to ensure the orderly management of failed banks. As the Court

3   stated:

> 4   Pareto's assertion that the FDIC did not accede to his derivative
> stockholder claims against the allegedly miscreant directors of the bank
> 5   must founder on the rocks of 12 U.S.C. § 1821(D)(2)(A)(i) which is
> part of FIRREA. That section states that the FDIC "shall, as
> 6   conservator or receiver, and by operation of law, succeed to . . . all
> rights, titles, powers, and privileges of the insured depository
> 7   institution, and of any stockholder, member, accountholder, depositor,
> officer, or director of such institution with respect to the institution and
> 8   the assets of the institution . . . ." [Citations omitted.] Plainly, the
> section vests all rights and powers of a stockholder of the bank to bring
> 9   a derivative action in the FDIC. One of those rights or powers is the
> 10   pursuit of the very claims asserted here. The FDIC can decide to bring
> an action against the directors for their wrongdoing, if any there was.
> 11

12   *Id.* at 700.

13   A virtually identical statutory scheme applies to conservatorships in the

14   federal credit union system. In *Lafayette,* 960 F.Supp. at 999, ninetysix credit

15   unions, as former preferred capital shareholders in a corporate credit union like

16   WesCorp, sued the NCUA, seeking damages arising out of the NCUA's decision to

17   place the corporate credit union into conservatorship and then into liquidation. In

18   dismissing the case, the district court held that in addition to failing to exhaust

19   administrative remedies, the plaintiffs lacked standing to bring the suit because only

20   the NCUA Board, and not the individual credit union members, could bring a

21   derivative suit on behalf of the credit union:

> 22   The Board may, as conservator or liquidating agent-
>
> 23   (i) Take over the assets of and operate the credit union with all the
> powers of the members or shareholders, the directors, and the officers
> 24   of the credit union and shall be authorized to conduct all business of the
> credit union;
> 25
> 26   Absent contrary guidance from the Fourth Circuit, the Court reads this
> provision to vest in the conservator and liquidating agent the
> shareholders' former right to bring a derivative suit. Accordingly,
> 27   Plaintiffs' derivative claims are dismissed.

28   *Id.* at 1005.

6

1   Here, Plaintiffs sued Defendants for damages they allegedly incurred to their
2   membership interests, primarily the loss of their member capital accounts and
3   because their assessments for the NCUSIF have increased.[2]  As discussed below,
4   Plaintiffs' claims are derivative in nature and are now vested in the Conservator.  In
5   addition, even if Plaintiffs could posit a claim that was not derivative in nature, to
6   the extent Plaintiffs are attempting to assert claims relating to the losses to their
7   membership capital accounts held by WesCorp or other losses related to their
8   membership in WesCorp, those claims are vested in the Conservator, who has
9   succeeded to all "rights, titles, powers, and privileges . . . of any member" of
10  WesCorp.  12 U.S.C. § 1787(b)(2)(A)(i).  Simply put, the claims being asserted by
11  Plaintiffs are no longer theirs to assert.  The Conservator has the right to pursue
12  these claims and conduct the litigation.

13  **B.    The Claims Raised In The Complaint Are Derivative Claims That Depend On The Plaintiffs' Status As Members And Accountholders.**

14

15  A shareholder's derivative suit seeks to recover for the benefit of the
16  corporation and its whole body of shareholders when injury is caused to the
17  corporation that may not otherwise be redressed because of failure of the
18  corporation to act. *Paclink Communications International, Inc. v. Sup. Ct. (Ivan*
19  *Yeung)*, 90 Cal.App.4th 958, 964 (2001).  Thus, the action is derivative (i.e., in the
20  corporate right) if the gravamen of the complaint is injury to the corporation, or to
21  the whole body of its stock and property without any severance or distribution
22  among individual holders. *Id.*  As the court in *Rankin v. Frebank Co.*, 47
23  Cal.App.3d 75, 95 (1975), explained:

24  It is a general rule that a corporation which suffers damages through
25  wrongdoing by its officers and directors must itself bring the action to
    recover the losses thereby occasioned, or if the corporation fails to bring an
26  action, suit may be filed by a stockholder acting derivatively on behalf of the
    corporation.  An individual may not maintain an action in his own right
27

28  [2] In fact, all credit unions in the country will bear the increased assessment.

7

1     against the directors for destruction of or diminution in the value of the stock
2     . . . . This rule is justifiable, for the rights of creditors of the corporation,
3     which are superior to those of the shareholders, would not be protected if
    individual shareholders were permitted to sue in their own right.

4     As discussed above, the gravamen of Plaintiffs' complaint is that the conduct
5 of WesCorp's former and current directors and officers injured WesCorp's liquidity
6 and resulted in WesCorp being placed into conservatorship.  This alleged
7 wrongdoing constitutes an injury to WesCorp.  The injury allegedly suffered by
8 Plaintiffs is no different from the injury suffered by all members of WesCorp who
9 have had their capital accounts eliminated and are facing increased insurance
10 assessments.  It is entirely a result of and incidental to WesCorp's injury.  Thus,
11 Plaintiffs' claims are derivative and the Conservator is now the real party in interest.
12 *Nelson v. Anderson*, 72 Cal.App.4th 111, 127 (1999) ("[w]hen the injury is to the
13 'whole body of stock,' the action must be derivative"); *Jones v. H.F. Ahmanson &*
14 *Co.*, 1 Cal.3d 93, 107 (1969) (if the injury is incidental to the injury to the
15 corporation, a derivative cause of action exists).

16     **C.**  **The Conservator Should Be Substituted As Real Party In Interest**
**In Place Of Plaintiffs And The Action Permitted To Proceed As If**
17 **Commenced By The Conservator.**

18     Rule 17 of the Federal Rules of Civil Procedure provides, with a few
19 exceptions not applicable here, that an action "must be prosecuted in the name of the
20 real party in interest."  FRCP 17(a)(1).  Where the real party in interest is not joined
21 at the inception of the suit, the real party may be joined thereafter and substituted in
22 place of the named plaintiff and the action may proceed "as if it had been originally
23 commenced by the real party in interest."  FRCP 17(a)(3).

24     As discussed above, the Conservator is the real party in interest as to the
25 claims set forth in the complaint in this action.  The named Plaintiffs have no direct
26 interest in the claims by operation of law.  It is up to the Conservator to decide
27 whether and to what extent to pursue the claims and how to prosecute the action.

28

1 | Under 12 U.S.C. § 1787(b)(2)(A)(1) the Conservator must be substituted in the
2 | action as Plaintiff and the named Plaintiffs removed from the litigation.

3 | **IV.   CONCLUSION**

4 |     For the reasons set forth above, the Conservator respectfully requests that its
5 | motion be granted.

6 |

7 | DATED: May 11, 2010

LUCE, FORWARD, HAMILTON & SCRIPPS LLP
MICHAEL H. BIERMAN
MICHAEL E. PAPPAS
MICHELLE K. SUGIHARA


By: /s/ Michael H. Bierman
Michael H. Bierman
Attorneys for The National Credit Union
Administration as Conservator for Western
Corporate Federal Credit Union.

201048845.

9