Scott A. Kamber (pro hac vice)
skamber@kamberlaw.com
KAMBERLAW LLC
100 Wall Street, 23rd Floor
New York, NY 10005
Phone: (212) 920-3072
Fax: (212) 202-6364

David C. Parisi (SBN162248)
dcparisi@parisihavens.com
Azita Moradmand (SBN 260271)
amoradmand@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Phone: (818) 990-1299
Fax:    (818) 501-7852

Attorneys for Plaintiffs 1st Valley Credit Union, Cascade Federal Credit Union, Glendale Area Schools Federal Credit Union, Kaiperm Northwest Federal Credit Union, Northwest Plus Credit Union, Stamford Federal Credit Union, and Tulare County Federal Credit Union

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 1ST VALLEY CREDIT UNION; CASCADE FEDERAL CREDIT UNION; GLENDALE AREA SCHOOLS FEDERAL CREDIT UNION; KAIPERM NORTHWEST FEDERAL CREDIT UNION; NORTHWEST PLUS CREDIT UNION; STAMFORD FEDERAL CREDIT UNION; and TULARE COUNTY FEDERAL CREDIT UNION,<br><br>Plaintiffs,<br>v.<br><br>DONNA BLAND, et al.<br><br>Defendants<br>and<br><br>NATIONAL CREDIT UNION ADMINISTRATION AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION,<br>Intervenor. | CASE NO.: CV10-01597 GW (MANx)<br><br>**OPPOSITION TO MOTION TO SUBSTITUTE THE NATIONAL CREDIT UNION ADMINISTRATION AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION IN PLACE OF PLAINTIFFS**<br><br>Date:   July 12, 2010<br>Time:   8:30 a.m.<br>Crtrm:  10 |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

    A. Background .......................................................................................... 1

    B. The NCUA's Motion to Substitute ...................................................... 2

II. ARGUMENT .................................................................................................. 3

    A. Plaintiffs Retain Standing to Assert Derivative Claims ...................... 3

        (i) Members' Derivative Claims will not be Divested when the Result would be Absurd or Impracticable ............................ 4

    B. Plaintiffs Also Assert Direct Claims ................................................... 5

    C. Substituting the NCUA for Plaintiffs is Inequitable Because it May Deprive Plaintiffs of Any Remedy ...................................................... 7

III. CONCLUSION ............................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*American Casualty Co. v. FDIC*,
  39 F.3d 633 (6th Cir. 1994) .................................................................................... 4

*Branch v. FDIC*,
  825 F.Supp. 384 (D.Mass. 1993) ........................................................................... 4

*Delta Savings Bank v. U.S.*,
  265 F.3d 1017 (9th Cir. 2001) ............................................................................ 4, 5

*First Harford Corp. Pension Plan & Trust v. United States*,
  194 F.3d 1279 (Fed.Cir. 1999) ............................................................................... 5

*In re Sunrise Sec. Litig.*,
  916 F.2d 874 (3d Cir. 1990) ................................................................................... 4

*Jones v. H.F. Ahmanson & Co.*,
  1 Cal.3d 93 (1969) .............................................................................................. 5, 6

*Pareto v. FDIC*,
  139 F.3d 696 (9th Cir. 1998) .............................................................................. 4, 5

**STATUTES**

12 U.S.C. § 1751, *et seq.* .............................................................................................. 1

12 U.S.C. § 1787(b)(2)(A)(i) .................................................................................... 3, 5

**OTHER AUTHORITIES**

*Fletcher Cyc. Corp.* § 5908 ........................................................................................... 7

http://www.ncua.gov/GenInfo/Members/Matz/speeches/WisconsinCULeague10-0513.pdf ......... 2

**PARISI & HAVENS** LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

### A. Background

The National Credit Union Administration ("NCUA") oversees all federally insured credit unions, 12 U.S.C. § 1751, *et seq.*, including Western Corporate Credit Union ("WesCorp"), one of the largest "corporate" credit unions.  Throughout 2008 and into early 2009, the NCUA was particularly active in its oversight of WesCorp, having placed two examiners physically on-site at WesCorp to monitor its activities.[1] Yet, somehow, the NCUA oversaw WesCorp right into the ground, placing WesCorp into a conservatorship on March 20, 2009.  Since it became WesCorp's conservator – some 15 months ago – the NCUA has been "investigating the failure of WesCorp and whether any of its former officers or directors are legally culpable."  Intervener's Memorandum in Support of Motion to Substitute, p. 1.[2]

With representatives on the ground long before the conservatorship, and 15 months to investigate "the managers and boards who exercised such poor judgment,"[3] the NCUA *still has not decided whether or not* to initiate legal action against the former directors and former and/or current officers of WesCorp.  Despite its ambivalence as to whether it will or will not pursue claims against defendants, the

---

[1] While the NCUA stepped up its oversight of WesCorp in 2008, it actually began increased oversight of all corporate credit unions, including WesCorp, a decade ago following the failure of another corporate credit union, CapCorp.  In spite of its increased oversight of corporates, it does not appear that the NCUA learned much from the CapCorp failure, because the WesCorp failure presents an eerily familiar story.

[2] The NCUA has been aware of the retail credit unions' interest in pursuing litigation against Defendants since June 2009.  In an email to the interim conservator appointed by the NCUA, Mark Treichel, for one of the instant Plaintiffs inquired as to whether the NCUA would bring an action, and made clear that in the absence of NCUA action, it was likely that a number of retail credit unions would file suit.

[3] *See* Remarks of NCUA Chairman Debbie Matz to the Wisconsin Credit Union League's 76th Annual Convention, Green Bay, Wisconsin, May 13, 2010, at 6: "NCUA definitely shares some of the blame – but there is plenty of blame to go around, especially among the managers and boards who exercised such poor judgment."

PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299

NCUA has nonetheless intervened in this action. Now, the NCUA – an entity that shares blame for the failure of WesCorp – seeks to substitute itself as Plaintiff, and wrest this litigation out of the hands of the seven retail credit unions that have prosecuted it to date, even though the NCUA, compromised as it is, has not yet determined whether it will pursue the action in their stead.[4]

### B.     The NCUA's Motion to Substitute

The NCUA, as Conservator for WesCorp, seeks to substitute itself for Plaintiffs as the real party in interest in this action on the ground that the Complaint asserts derivative claims. The NCUA argues that only it may bring such derivative-type claims because the power to bring such claims vests exclusively in the NCUA pursuant to its statutory authority as Conservator.  The characterization by the NCUA of Plaintiffs' Complaint as "derivative" in nature is the sole basis for the NCUA's motion. However, as the NCUA points out, Plaintiffs did not expressly characterize their Complaint as either direct or derivative in nature. As a result, the NCUA chooses to misapprehend the claims made by Plaintiffs, denominates the claims as "derivative," and then asserts that it alone has standing to assert derivative claims against Defendants – that is, if it ever decides to do so.

Contrary to the NCUA's argument, it is not the only party that may assert derivative claims against defendants. Further, the Complaint also alleges that Defendants breached duties owed directly to Plaintiffs – not just duties owed to WesCorp. As a result of those breaches, Plaintiffs suffered injuries that are distinct from the harm that Defendants also inflicted on WesCorp. Only Plaintiffs, and not the NCUA, have standing to assert those direct claims. As a result, the NCUA is not the real party in interest with respect to those claims. Moreover, the NCUA is

---

http://www.ncua.gov/GenInfo/Members/Matz/speeches/WisconsinCULeague10-0513.pdf
[4]     *See* Intervener's Memorandum at 1 ("...the NCUA is investigating the failure of WesCorp and *whether* any of its former officer or directors are legally culpable. *If* the

hopelessly conflicted such that it would be absurd to expect it to vigorously pursue derivative claims on behalf of WesCorp. Accordingly, its motion to substitute should be denied.

## II. ARGUMENT

### A. Plaintiffs Retain Standing to Assert Derivative Claims

The key statutory provision that is applicable to the NCUA and which is at issue here provides:

> Upon conservatorship, the NCUA Board ("the Board") succeeded to:
>
> (i)   all rights, titles, powers, and privileges of the credit union, and of any member, accountholder, officer, or director of such credit union with respect to the credit union and the assets of the credit union.

12 U.S.C. § 1787(b)(2)(A)(i). This provision is the sole statutory authority upon which the NCUA relies to conclude that it has divested Plaintiffs of standing to assert derivative claims that they otherwise would have been able to bring in the absence of the conservatorship.

The NCUA would have this Court believe that all courts that have interpreted this power granting language (or similar provisions applicable to other financial institution regulators) have uniformly held that, in the wake of the imposition of a conservatorship or receivership, members of the failed financial institution lose the right to bring derivative actions, which vests solely with the NCUA (or other comparable financial institution regulators). However, that is far from an accurate picture.

In fact, courts have differed widely in their interpretation of just what rights the regulator "succeeded to" and what rights members retain. Indeed, several courts,

---

Conservator initiates legal action…")(emphasis added).

including the Ninth Circuit, would allow members to maintain derivative actions after the imposition of a conservatorship by financial institution regulators. Even the case on which the NCUA principally relies, *Pareto v. FDIC*, 139 F.3d 696, 700 (9th Cir. 1998) leaves the door open for Plaintiffs to retain standing to assert derivative claims.

### (i) Members' Derivative Claims will not be Divested when the Result would be Absurd or Impracticable

The NCUA quotes at length excerpts from two consecutive paragraphs of the *Pareto* decision interpreting a comparable statutory provision applicable to the FDIC (*See* Intervener's Memorandum at 6), the gist of which is that Congress transferred all the powers that it could to the regulator, including a stockholder's right to demand corporate action or sue directors if that action was not forthcoming. *See Pareto* at 700. However, the NCUA utterly fails to acknowledge the very next sentence, in which the circuit court noted that important exceptions to that rule were justified. The sentence omitted by the NCUA states: "Having read the section in that manner, we can bring our analysis to an end, *unless, of course, the result would be absurd or impracticable*." *Pareto* at 700 (emphasis added).[5] See also *Delta Savings Bank v. U.S.*, 265 F.3d 1017, 1023 (9th Cir. 2001) (exceptions to rule "justified if the result would otherwise 'be absurd or impracticable.'").

While the facts confronted by the *Pareto* court did not lead to an absurd or impracticable result in that case, because the FDIC in that instance was qualified to decide whether the bank should sue the former officers and directors for breaches of duty, the same cannot be said of the facts here. *Delta Savings Bank* at 1023. In *Pareto*, the FDIC was uninvolved in the Barbary Coast National Bank failure until

---

[5] While the *Pareto* Court did not find the analysis to be persuasive, it did note that courts in other jurisdictions allowed such post-conservatorship derivative actions by members to proceed. *Pareto* at 701, citing *Branch v. FDIC*, 825 F.Supp. 384 (D.Mass. 1993); *American Casualty Co. v. FDIC*, 39 F.3d 633, 636-637 (6th Cir. 1994); and *In re Sunrise Sec. Litig.*, 916 F.2d 874, 879, 889 (3d Cir. 1990).

the Office of the Controller of the Currency appointed it as Receiver. *Pareto* at 698. In contrast, in the case at bar: (1) the NCUA was on the ground at WesCorp long before it collapsed; (2) the NCUA's Chair has publically admitted that the NCUA's hands are not clean and that it shares the blame for the WesCorp mess;[6] and (3) the NCUA continues to shamelessly dilly-dally to this day about whether or not it will pursue the derivative claims even if this Court grants it the authority to do so.

It is the third factor that is perhaps the best evidence of the NCUA's conflict, and the absurdity of positioning it to be the lone vindicator of derivative claims regarding WesCorp. After all this time (fifteen months as Conservator, not to mention the years that the NCUA was camped out at WesCorp's offices on a daily basis before the collapse), it is astounding that the NCUA is still on the fence about whether to pursue claims against Defendants.

The past is prologue, and we know just how little vigor we can expect from the NCUA given its shared blame for the collapse of WesCorp. Taking a common sense, conflict of interest exception approach to 12 U.S.C. § 1787(b)(2)(A)(i) warrants granting standing to Plaintiffs to maintain the claims they have instituted. See *Delta Savings Bank* at 1024. *Accord First Harford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1295 (Fed.Cir. 1999) (adopting a conflict of interest exception to FIRREA). To divest plaintiffs of the claims in favor of a compromised NCUA would indeed be an absurd result.

### B.     Plaintiffs Also Assert Direct Claims

Derivative claims are claims that are brought in the name of an entity to recover for harm done to the institution as whole, as opposed to harms suffered by individual shareholders or members. *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93,

---

[6] See note 1, *supra*.

106 (1969). Any recovery had in a derivative action would go directly to the institution, as opposed to individual shareholders. *Id*. at 107.

By contrast, Plaintiffs here do not seek solely to make WesCorp whole for injuries that it suffered in Defendants' hands. Rather, Plaintiffs seek to remedy the additional direct harms that they individually suffered, because they relied to their detriment on Defendants' inaccurate representations about the financial health and stability of WesCorp. (Complaint ¶ 50). The crux of Plaintiff's direct claim is that, but for the rosy, but grossly inaccurate, picture that Defendants painted of the value of WesCorp's assets,[7] Plaintiffs would have managed the actual risk presented by WesCorp's irresponsible investments by reducing the funds on deposit with WesCorp, thereby limiting their exposure.

The fact that Plaintiffs' injuries were not unique, in the sense that other members suffered similar losses, does not alter the character of Plaintiffs' claims – "the individual wrong necessary to support a suit by a shareholder need not be unique to that Plaintiff." *Jones* at 107. "The same injury may affect a substantial number of shareholders. If the injury is not incidental to an injury to the corporation, an individual cause of action exists." *Id*.

Here, Plaintiffs allege direct injury to their institutions, arising out of their reasonable reliance on inaccurate information promulgated by Defendants. The harm to Plaintiffs is not merely incidental to the injury suffered by WesCorp, but is independent and distinct. Here the injury to Plaintiffs is analogous to the type of direct harm suffered by corporate shareholders when they are induced to buy or sell corporate shares in reliance on misleading representations by management.

---

[7] See Complaint ¶ 36, alleging that throughout 2008, Defendants asserted that WesCorp would have its best ever financial performance in 2008.

The fact that Defendants also injured WesCorp does not eliminate Plaintiffs' direct standing. *See* 12B *Fletcher Cyc. Corp.* § 5908 ("An individual cause of action can be asserted when the wrong is both to the shareholder and to the corporation."). It is well settled that shareholders may bring both direct and derivative claims simultaneously. *Id.*[8]

### C. Substituting the NCUA for Plaintiffs is Inequitable Because it May Deprive Plaintiffs of Any Remedy

At this juncture, it would be inequitable to substitute the NCUA for Plaintiffs. If the NCUA is substituted for Plaintiffs, it may choose not to prosecute this matter. If the NCUA chooses to abandon the case, Plaintiffs would be denied any remedy whatsoever, in any capacity – be it direct or derivative. Given the NCUA's shared responsibility for the WesCorp failure, and the lethargy of its approach, it would be inequitable to hand the case over to the NCUA. Otherwise, the substitution of the NCUA could deprive Plaintiffs of any remedy for the harms caused by Defendants.

## III. CONCLUSION

The NCUA has intervened in this action and is now a party. However, it is not the real party in interest with respect to the direct claims alleged by Plaintiffs for the false representations Defendants made, upon which Plaintiffs justifiably relied to their detriment. Moreover, the NCUA is hopelessly conflicted regarding the failure of WesCorp and cannot be expected to diligently prosecute all claims that may

---

[8] If the Court were to conclude that Plaintiffs' direct claims are not sufficiently

belong to WesCorp.  For those reasons, the Court should deny the Intervener's Motion to Substitute, and find that Plaintiffs have standing to continue to prosecute their claims against Defendants.

DATED: June 21, 2010

PARISI & HAVENS LLP

KAMBERLAW LLC

By: __s/David C. Parisi__
David C. Parisi
Attorneys for plaintiffs 1st Valley Credit Union, Cascade Federal Credit Union, Glendale Area Schools Federal Credit Union, Kaiperm Northwest Federal Credit Union, Northwest Plus Credit Union, Stamford Federal Credit Union, and Tulare County Federal Credit Union

---

well plead at this stage, Plaintiffs would request an opportunity to amend the Complaint to extend and clarify allegations pertaining to their direct claims.