Michael H. Bierman, State Bar No. 89156
Michael E. Pappas, State Bar No. 130400
Michelle K. Sugihara, State Bar No. 217444
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 S. Figueroa, Suite 3900
Los Angeles, California 90017
Telephone No.: 213.892.4992
Fax No.: 213.892.7731
E-Mail:   mbierman@luce.com
          mpappas@luce.com
          msugihara@luce.com

Attorneys for Intervenor, National Credit Union Administration
As Conservator For Western Corporate Federal Credit Union.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 1ST VALLEY CREDIT UNION; CASCADE FEDERAL CREDIT UNION; GLENDALE AREA SCHOOLS FEDERAL CREDIT UNION; KAIPERM NORTHWEST FEDERAL CREDIT UNION; NORTHWEST PLUS CREDIT UNION; STAMFORD FEDERAL CREDIT UNION; and TULARE COUNTY FEDERAL CREDIT UNION,<br><br>    Plaintiffs,<br>v.<br><br>DONNA BLAND, ROBERT BURRELL, JEREMY CALVA, WILLIAM CHENEY, LAURA CLOHERTY, GORDON DAMES, ADAM DENBO, DIANA R. DYKSTRA, JEFF HAMILTON, ROBERT H. HARVEY, JR., JAMES HAYES, WAYNE HOPE, DWIGHT JOHNSTON, JAMES P. JORDAN, TIMOTHY KRAMER, ROBIN J. LENTZ, SUSANNE LONGSON, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID ROUGHTON, TIMOTHY SIDLEY, ROBERT SIRAVO, DAVID TRINDER, DARREN WILLIAMS, RISKSPAN INC., and DOES 1 through 100, inclusive.<br><br>    Defendants<br><br>and<br><br>NATIONAL CREDIT UNION ADMINISTRATION AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION,<br>    Intervenor. | Case No.: CV10-01597 GW (MANx)<br><br>**REPLY OF THE NATIONAL CREDIT UNION ADMINISTRATION AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION IN SUPPORT OF MOTION TO SUBSTITUTE**<br><br>Date: July 15, 2010<br>Time: 8:30 a.m.<br>Ctrm: 10 |

## I. INTRODUCTION

Under the plain language of 12 U.S.C. § 1787(b)(2)(A)(i), the National Credit Union Administration as conservator for Western Corporate Federal Credit Union (the "Conservator") has succeeded to all of the rights and obligations of Western Corporate Federal Credit Union ("WesCorp"). Under case law which Plaintiffs do not contest, derivative claims are included in the rights and obligations the Conservator has succeeded to. The statute and the relevant case law dictate that the Conservator controls the claims asserted by Plaintiffs in this action and therefore should be substituted for the Plaintiffs as a matter of course.

Plaintiffs seek to avoid substitution by making two arguments. First, they assert that this case falls within a very narrow exception for situations in which claims creating gross conflicts of interest for the regulator would render its control of the claims "absurd or impracticable." The cases Plaintiffs cite as support for this exception demonstrate that it is not applicable here. They are cases in which FDIC control over the claims at issue would have put the agency in the position of suing itself or a sister regulatory agency. The Plaintiffs' claims in this case, by contrast, are against former directors and former and current officers of WesCorp. The exception manifestly does not apply to such claims, which are of the type the FDIC and similarly situated regulators routinely control and prosecute.

Second, Plaintiffs assert that buried within the derivative claims of the complaint is a direct claim that falls outside the scope of 12 U.S.C. § 1787(b)(2)(A)(i). A fair reading of the complaint makes clear that pleads derivative claims, and Plaintiffs acknowledge that it does. Thus, even if it did allege facts that could give rise to a direct claim, the Conservator should be substituted as plaintiff in the derivative claims. If Plaintiffs believe that they have a direct claim, they should be given leave to attempt to plead it in a separate complaint after substitution.

The Conservator is legally entitled to exercise its discretion and proceed on

the claims alleged in the complaint as it determines is appropriate. Its motion to substitute should therefore be granted.

## II. SUBSTITUTION OF THE CONSERVATOR FOR THE PLAINTIFFS IS NEITHER IMPRACTICABLE NOR ABSURD.

Plaintiffs do not dispute that the Conservator has succeeded to all rights of WesCorp and of its members with respect to WesCorp under the plain language of 12 U.S.C. § 1787(b)(2)(A)(i). They do not dispute that under *Lafayette Federal Credit Union v. National Credit Union Administration*, 960 F.Supp. 999 (E.D. Va. 1997), *aff'd,* 133 F.3d 915, 1998 WL 2881 (4th Cir. Jan. 7, 1998) (unpublished), and *Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998), the derivative claims they are asserting are among those rights. Rather Plaintiffs argument, based on a single sentence in *Pareto*, is that the Court should not allow the Conservator to substitute in because the result would be "absurd and impracticable." Neither the cases Plaintiffs cite nor the facts they rely on support Plaintiffs' assertion that it is either impracticable or absurd for this Court to allow the Conservator to fulfill its statutory mandate to evaluate and determine whether to prosecute the claims Plaintiffs have asserted here.

Plaintiffs' claims against officers, directors and others who allegedly caused the failure of WesCorp are derivative ones that only the NCUA is entitled to prosecute. As the Court held in *Pareto,* cutting off the rights of members and shareholders to sue derivatively is neither absurd nor impracticable:

> Rather, it helps assure the expeditious and orderly protection of all who are interested in the bank by placing the pursuit of its rights, protection of its assets, and payment of its liabilities firmly in the hands of a single, congressionally designated agency.

*Pareto* at 700.

The cases cited by the Plaintiffs as examples of absurd or impracticable results demonstrate that the narrow exception they seek to invoke does not apply. Plaintiffs rely primarily on *Delta Savings Bank v. United States*, 265 F.3d 1017 (9th

Cir. 2001), which considered whether the plaintiff shareholder of a savings bank in FDIC receivership had standing to assert derivative claims against the United States and two employees of the Office of Thrift Supervision (OTS) under civil rights statutes, alleging a race-based conspiracy to subject the bank to heightened scrutiny. The court held that there was a conflict of interest in expecting the FDIC to sue its sister agency, the OTS, and allowed a limited exception for that conflict. As the court stated:

> The FDIC was asked to demand a lawsuit, refuse this demand, and proceed derivatively with the lawsuit *against one of its closely-related, sister agencies*. This was one hat too many to be placed atop the head of the FDIC. [Emphasis in original.]

*Id.* at 1024.

Here the Plaintiffs are not suing the NCUA, or any closely-related agency, or even WesCorp itself. They are suing former directors and present and former officers of WesCorp. Suits against former officers and directors of failed insured depository institutions are squarely within the purview of the FDIC acting as receiver or conservator of such institutions. Since the exception stated in *Delta* does not apply to such claims, it cannot be invoked to grant Plaintiffs standing here.

Plaintiffs also cite *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279 (Fed. Cir. 1999), where the FDIC as receiver was asked to decide whether it should sue the federal government based upon a breach of contract, which, if proven, was caused by the FDIC itself. The court recognized a narrow exception in such cases:

> In holding that First Hartford has standing to sue derivatively on behalf of Dollar we stress that such standing could only occur in a very narrow range of circumstances. Indeed, our holding is limited to the situation here in which a government contractor with a putative claim of breach by a federal agency is being operated by that very same federal agency, as is the case in the receivership context. We neither infer nor express an opinion on the standing of derivative plaintiffs in other circumstances.

*Id.* at 1295. Because the Plaintiffs are not asserting claims against the NCUA or any other federal agency, this exception is inapplicable.[1]

The only "facts" that Plaintiffs offer to justify the Court denying substitution are: (1) the NCUA stepped up oversight of WesCorp in 2008 and of all corporate credit unions a decade ago [Docket 40 at n. 1][2]; (2) the NCUA has been "shamelessly dilly-dallying" and "still has not decided whether or not to initiate legal action" against WesCorp's former directors and current or former officers in the 15 months since the Conservatorship was imposed [Docket 40 at 1:11-13, 5:4-6]; and (3) the "NCUA's "hands are not clean" because the WesCorp failure was in part a regulatory failure [Docket 40 at 5:3-4]. Plaintiffs do not explain why any of these alleged "facts" causes substitution of the Conservator for Plaintiffs to be either absurd or impracticable.

Many, perhaps most, financial institutions that fail are subject to increased regulatory scrutiny in the period before their failure. Plaintiffs do not suggest that any court has held that this increased scrutiny justifies an exception to the plain language of the statutes vesting the rights of a failed financial institution (or derivative claims) in its conservator, liquidating agent or receiver.[3]

---

[1] The cases Plaintiffs cite at footnote 5 of their Opposition are from outside the Ninth Circuit and pre-date *Pareto*. Moreover, *American Casualty Co. v. FDIC*, 39 F.3d 633 (6th Cir. 1994), addressed the applicability of the regulatory exclusion in a directors and officers liability policy to a shareholders derivative suit; it did not discuss standing. *In re Sunrise Sec. Litig.*, 916 F.2d 874 (3d Cir. 1990), held that former depositors of an insolvent savings and loan could not bring a RICO claim against its directors. Because the claim belonged in first instance to the FDIC as receiver, it could be brought by depositors only as derivative claim following unsuccessful demand on the receiver. *Id.* at 889.

[2] Plaintiffs' suggestion that the NCUA "oversaw WesCorp right into the ground" after it increased its supervision [Docket 40 at 1:10] is disingenuous at best. As Plaintiffs presumably know, the allegations in their complaint relate to activities that ended in 2007.

[3] The Federal Credit Union Act uses the term "liquidating agent" rather than the term "receiver," which is used in the Federal Deposit Insurance Act. For all practical purposes, the powers and duties of the FDIC as receiver and the NCUA as liquidating agent are the same.

1   Likewise, the fact that the conservatorship was imposed 15 months ago does not suggest that substitution of the Conservator for Plaintiffs would lead to absurd or impracticable results. Congress contemplated that the NCUA's investigation and evaluation of claims against former officers and directors might take time. It therefore provided a three year tolling period in 12 U.S.C. § 1787(b)(14)(B)(i) to allow the NCUA, acting as conservator, to perform this function. The Conservator will complete its investigation and take action shortly.[4]

Finally, the frank discussion of the failure of WesCorp by the Chairman of the NCUA, referred to by Plaintiffs in their Opposition [Docket 40 at n. 3], underscores the importance of having the Conservator, and not Plaintiffs, in control of this litigation. While Plaintiffs have quoted a single line from the remarks, the rest of the Chairman's remarks discussing WesCorp's failure vividly illustrate the difficult problems WesCorp's failure has created for the federal credit union system as a whole and the potentially system-wide implications of NCUA actions taken in response.

While Plaintiffs complain that the NCUA has not acted swiftly enough in investigating claims relating to the failure of WesCorp, they do not acknowledge the steps that the NCUA has taken to shore up the corporate credit union system and protect Plaintiffs' interests. The same remarks by the NCUA's Chairman notes that:

> To stabilize the system, NCUA placed guarantees on shares at all corporates. As a result, credit union investments in the corporates are backed by the full faith and credit of the United States government.

Remarks of NCUA Chairman Debbie Matz to the Wisconsin Credit Union League's 76th Annual Convention, Green Bay, Wisconsin, May 13, 2010 at 7.

Plaintiffs are not in a position to displace the NCUA. It is up to the NCUA to decide whether or not it is in the best interest of the federal credit union system,

---

[4] It is not clear how much investigation Plaintiffs performed before filing their complaint. Despite repeated invitations, Plaintiffs have not shared with the NCUA any results of that investigation. *See* Declaration of Michael H. Bierman, ¶¶ 2, 4.

including the current and former members of WesCorp, to pursue Plaintiffs' claims and, if so, against which defendants and to what extent. Having accepted the benefit of a guarantee backed by the full faith and credit of the United States government, Plaintiffs cannot now argue that it would be inequitable to deprive them of the opportunity to prosecute claims that by law have transferred to the Conservator. Nor can they argue that the Conservator's control over Plaintiffs' claims would be absurd or impracticable.

### III. PLAINTIFFS DO NOT ALLEGE ANY INDIVIDUAL CLAIMS THAT FALL OUTSIDE OF THE FEDERAL STATUTE.

Plaintiffs seek to avoid substitution by asserting that their complaint pleads a direct claim as well as derivative ones. Although no direct claim is apparent of the face of the complaint, Plaintiffs' opposition suggests that the claim is one for negligent misrepresentation "about the financial health and stability of WesCorp" without which "Plaintiffs would have managed the actual risk presented by WesCorp's irresponsible investments by reducing the funds on deposit with WesCorp, thereby limiting their exposure." Docket 40 at 6:7-12.

Plaintiffs' purported direct claim has no effect on the Conservator's right to be substituted as plaintiff on the derivative claims asserted in the complaint. The Conservator has acquired those claims by statute, whether or not Plaintiffs have pled, or can also plead, direct claims.

The direct claim Plaintiffs now wish to assert is not currently pled in the complaint. The complaint alleges no facts supporting the legal conclusions of reliance and damages alleged in Paragraph 50 of the complaint. Although both of those elements are inherently plaintiff-specific, the complaint contains no plaintiff-specific allegations at all. Since negligent misrepresentation is a species of fraud in California, *See* Cal. Civ. Code § 1710, it would be subject to the requirements of Rule 9. Plaintiffs' purported direct claim does not satisfy those requirements.

Moreover, the losses alleged in Plaintiffs' complaint were (1) the loss of

1  Plaintiffs' Member Capital Accounts (and those of all other WesCorp members)
2  (Paragraph 39) and (2) increased assessments by the NCUA to partially finance the
3  losses caused by WesCorp's failure (Paragraph 40). Both of these alleged losses
4  were losses that were suffered by all credit unions that were members of WesCorp
5  as a whole and not by the Plaintiffs individually.
6       Plaintiffs have known the Conservator was asserting ownership of the claims
7  asserted in their complaint for more than six months. In that time, they have failed
8  to take any steps to plead or otherwise articulate claims that are not derivative or
9  otherwise fall outside the scope of those statutorily transferred to the Conservator.
10 Although the Conservator has repeatedly asked Plaintiffs to identify the basis of any
11 individualized claims Plaintiffs might be asserting, Plaintiffs have declined to do so.
12 [*See* Declaration of Michael H. Bierman, ¶¶ 2-4, Exhs. 1, 2.]
13      If Plaintiffs can demonstrate that they in fact have viable direct claims that
14 they wish to assert in this action, they can seek leave of Court to do so. The claims
15 they have alleged in their complaint are claims against officers and directors for
16 mismanaging the credit union. They belong to the Conservator and not to Plaintiffs,
17 even if Plaintiffs suffered individual losses. The Court should therefore substitute
18 the Conservator for the Plaintiffs on those claims.
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

## IV. CONCLUSION

For the reasons set forth above the NCUA respectfully requests that its motion be granted and that it be substituted as the plaintiff in this action.

DATED: June 28, 2010

LUCE, FORWARD, HAMILTON & SCRIPPS LLP
MICHAEL H. BIERMAN
MICHAEL E. PAPPAS
MICHELLE K. SUGIHARA


By: /s/ Michael H. Bierman
Michael H. Bierman
Attorneys for The National Credit Union Administration as Conservator for Western Corporate Federal Credit Union.

201058758.4