UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 10-1597-GW(MANx) | Date | July 15, 2010 |
| Title | 1st Valley Credit Union, et al. v. Donna Bland, et al. | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

David C. Parisi

Attorneys Present for Defendants:

Michael H. Bierman
Michael E. Pappas
Bruce A. Ericson
Seth E. Freilich

**PROCEEDINGS:** INTERVENOR NATIONAL CREDIT UNION ADMINISTRATION'S MOTION TO SUBSTITUTE THE NATIONAL CREDIT UNION ADMINISTRATION AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION IN PLACE OF PLAINTIFFS (filed 05/11/10)

Hearing is held. The tentative circulated is hereby adopted as the Court's final ruling (attached). Intervenor National Credit Union Administration's Motion to Substitute the National Credit Union Administration as Conservator for Western Corporate Federal Credit Union in Place of Plaintiffs is **granted.**

A Status Conference regarding any disputes as to the amended complaint is set for **August 5, 2010 at 8:30 a.m.** Parties will file a joint document by noon on August 3, 2010 regarding any remaining issues. Counsel for plaintiffs will have until August 31, 2010 to **manually** file an amended complaint at the Court's civil intake department.

The Scheduling Conference presently set for July 26, 2010 is continued to **September 9, 2010 at 8:30 a.m.** The Joint Rule 26(f) Report will be filed by September 7, 2010.

: 16

Initials of Preparer   JG

*1st Valley Credit Union, et al. v. Bland, et al.*, Case No. CV-10-1597
Tentative Ruling on Motion to Substitute the National Credit Union Administration as Conservator for Western Corporate Federal Credit Union in Place of Plaintiffs

**I. Background**

Plaintiffs 1st Valley Credit Union, Cascade Federal Credit Union, Glendale Area Schools Federal Credit Union, Kaiperm Northwest Federal Credit Union, Northwest Plus Credit Union, Stamford Federal Credit Union, and Tulare County Federal Credit Union (collectively "Plaintiffs") filed suit on November 24, 2009 in Los Angeles County Superior Court against numerous individual defendants and RiskSpan, Inc. (collectively "Defendants") for negligence and breach of fiduciary duties. Plaintiffs are state and federally chartered "retail" credit unions. *See* Complaint ¶¶ 3, 24. The individual defendants are former and current directors, officers, and supervisory committee members of Western Corporate Federal Credit Union ("WesCorp"), a "corporate" credit union. *See id.* ¶¶ 2-3, 25. RiskSpan, Inc. ("RiskSpan") is WesCorp's independent third-party risk management company. *See id.* ¶¶ 2, 16.

Plaintiffs allege that WesCorp irresponsibly and negligently invested in mortgage-backed securities without due care, which resulted in billions of member dollars (including Plaintiffs') being lost. *See id.* ¶¶ 1, 3-4. RiskSpan, which was hired to independently value WesCorp's investments and used faulty analytics to support inflated portfolio values, assisted WesCorp and the individual defendants. *See id.* ¶¶ 1, 4-5, 35. Plaintiffs allege that as a direct result of the Defendants' conduct, WesCorp was placed under a conservatorship imposed by the National Credit Union Association (the "NCUA") in March 2009. *See id.* ¶¶ 3, 38.

Plaintiffs allege that the purpose of WesCorp, as a not-for-profit corporate credit union consisting of retail credit unions (such as Plaintiffs here) as members, was to provide liquidity to retail credit unions and to provide a wide array of services including check, ATM, and credit card processing. *See id.* ¶¶ 25, 29. Under the leadership of the individual defendants, however, it strayed from its original mission and proceeded to over-leverage its assets by borrowing up to $10 billion from non-member sources to

invest into mortgage-backed securities. *See id.* ¶¶ 27-28. Once under the NCUA's conservatorship, the NCUA adopted several measures affecting WesCorp, including the replacement of the sitting WesCorp Board, the supervisory committee members, and two key officers. *See id.* ¶ 39. The NCUA also required all of WesCorp's member credit unions (including Plaintiffs) to relinquish all of the funds they had on deposit in their member capital accounts, thus resulting in the members recording losses. *See id.*

The NCUA, as conservator of WesCorp, intervened pursuant to 12 U.S.C. § 1787(b)(2)(A) and removed the case to federal court pursuant to 12 U.S.C. § 1789(a)(2). It now seeks to substitute in as the plaintiff in this action, citing Federal Rule of Civil Procedure 17(a), the "real party in interest" provision. *See also* Fed. R. Civ. P. 25(c).

## II. Analysis

Key to the resolution of the instant dispute is 12 U.S.C. § 1787(b)(2)(A)(i). That statutory provision reads, in pertinent part, as follows:

> (2) General Powers
>
>> (A) Successor to credit union
>>
>> The Board [of the NCUA] shall, as conservator or liquidating agent, and by operation of law, succeed to—
>>
>>> (i) all rights, titles, powers, and privileges of the credit union, and of any member, accountholder, officer, or director of such credit union with respect to the credit union and the assets of the credit union
>>> . . . .

12 U.S.C. § 1787(b)(2)(A)(i). The NCUA argues that this provision means that it[1] must be substituted in as plaintiff in this action, either as to all the claims raised herein or at least the derivative claims. Plaintiffs argue either that the motion should be denied in its entirety because it would be "absurd and impractical" to allow the NCUA to control this litigation or that the NCUA, at the very least, has no basis to substitute in with respect to their direct, as opposed to derivative, claims.

That any <u>derivative</u> claim now belongs to the NCUA is supported both by a plain

---

[1] Given the plain language of section 1787(b)(2)(A), the Court would inquire whether the NCUA itself can substitute in or whether it must in fact be the NCUA <u>Board</u>. *See* 12 U.S.C. § 1752(4) ("the term 'Board' means the National Credit Union Administration Board").

2

reading of the statute in question and relevant case law. *See id.* (providing for NCUA's rights, as conservator and successor, to "all rights, titles, powers, and privileges of the credit union"); *Lafayette Fed. Credit Union v. Nat'l Credit Union Admin.*, 960 F.Supp. 999, 1005 (E.D. Va. 1997), *aff'd*, 133 F.3d 915 (4th Cir.), *cert. denied*, 525 U.S. 820 (1998); *cf. Pareto v. FDIC*, 139 F.3d 696, 700-01 (9th Cir. 1998)[2]. Though a plain reading would also seem to support the NCUA's right to also control any <u>direct</u> action brought by Plaintiffs (after all, the NCUA Board succeeds to "all rights, titles, powers, and privileges of…any member…of such credit union with respect to the credit union and the assets of the credit union"), in its Reply the NCUA appears to concede that if Plaintiffs do have a valid direct claim, the NCUA should only be substituted in as plaintiff on the derivative claim. If indeed the NCUA is prepared to concede that point, the motion would be resolved in that fashion – permitting the NCUA (or its Board) to substitute in as plaintiff on any derivative claim(s) and allowing Plaintiffs to continue as plaintiffs on any direct claim(s).[3]

The Court certainly would not deny the motion outright because of Plaintiffs' argument that substitution here would be "absurd" or "impractical." First, there is no statutory "absurd" or "impractical" exception to section 1787(b)(2)(A)(i)'s provisions. Indeed, the *Pareto* decision, to which other courts have cited for the "absurd or impractical" exception, cited to *Oregon Nat. Resources Council, Inc. v. Kantor*, 99 F.3d 334, 339 (9th Cir. 1996). That decision supports the common maxim that a statute, plain on its face, is to be interpreted in that fashion, unless "the result" would be absurd or impractical. It would be a reach to interpret that passing citation to admit exceptions on a

---

[2] As Plaintiffs admit, in *Pareto* the Ninth Circuit rejected the approaches adopted in *Branch v. FDIC*, 825 F.Supp. 384 (D. Mass. 1993), *American Casualty Co. v. FDIC*, 39 F.3d 633 (6th Cir. 1994) and *Popkin v. Jacoby (In re Sunrise Securities Litigation)*, 916 F.2d 874 (3d Cir. 1990). *See Pareto*, 139 F.3d at 701. The *Pareto* decision is obviously what would bind this Court's decision (had it actually considered the NCUA, as opposed to the FDIC).

[3] Though the NCUA argues that Plaintiffs should be forced to re-plead their direct claim(s), it seemingly has no basis to argue that the claim(s) is/are not well pled. It is not a defendant in this action. *See* Fed. R. Civ. P. 12(b) ("[A] party may assert the following <u>defenses</u> by motion….") (emphasis added). If and when a defendant makes that argument, the Court would revisit it. As a practical matter, however, the Complaint would seemingly have to be amended in any event if the NCUA is to be substituted in as a plaintiff in some fashion in this case.

case-by-case basis for what might seem to some to be "absurd or impractical" <u>consequences</u>. *But see Delta Svs. Bank v. United States*, 265 F.3d 1017, 1023-24 (9th Cir. 2001), *cert. denied sub nom. Kim v. United States*, 534 U.S. 1082 (2002)[4]. That the *Pareto* court understood that it was referring to "the result" of its statutory interpretation and not "the consequences" from applying that statutory interpretation is made clear by the court's very next sentence – "[t]he result of our interpretation is neither absurd nor impracticable." *Pareto*, 139 F.3d at 700. There is only one plain reading of a statute, and that plain reading is either "absurd and impractical" as applied to all situations or not "absurd and impractical" at all. In other words, Pareto's "absurd or impracticable" comment, properly understood, referred to an "absurd or impracticable" interpretation of a statute's plain language; it is not (or should not be) the basis for a court-made "absurd or impractical" situation-based exception to a broad statutory provision that allows, on its face, for no such exception.

Second, even though certain courts (including the Ninth Circuit in *Delta Savings*) have recognized such "absurd or impractical" exceptions in some cases (notwithstanding the absence in the statute of any such provision and the failure of Plaintiffs to point to any case involving the precise statutory provision in question here), the NCUA appropriately argues that this case does not share a similar basis for applying such an exception. Neither the NCUA nor any related agency is named as a defendant in this action. *Cf. Delta Svs.*, 265 F.3d at 1021-23; *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1295 (Fed. Cir. 1999); *Kellmer v. Raines (In re Fed. Nat'l Mortgage Ass'n Secs., Derivative, ERISA Litig.)*, 629 F.Supp.2d 1, 4 n.5 (D.D.C. 2009). As such, as noted above, <u>at the very least</u> the Court would grant the instant motion as to the derivative claims included in the Complaint.

---

[4] Given *Delta Savings*, the analysis critical of the expansion of the "absurd or impractical" concept in the preceding paragraph would seemingly be foreclosed by Ninth Circuit precedent (if *Delta Savings* dealt with the NCUA). The *Delta Savings* court, having found no basis for such an exception in the statute, agreed with the plaintiffs' "simple plea to logic" that the Federal Deposit Insurance Corporation should not have final say whether it was in the plaintiff bank's best interest to sue the Office of Thrift Supervision, given that the FDIC and OTS were "interrelated agencies with overlapping personnel." 265 F.3d at 1021-22. The court fashioned its decision after the Federal Circuit's decision in *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1294 (Fed. Cir. 1999), which, it acknowledged, had "based its ruling, in part, on our court's holding in *Pareto*." *Delta Svs.*, 265 F.3d at 1022.