Michael H. Bierman, State Bar No. 89156
Michael E. Pappas, State Bar No. 130400
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 S. Figueroa, Suite 3900
Los Angeles, California 90017
Telephone: 213.892.4992
Facsimile:  213.892.7731
E-Mail:  mbierman@luce.com
         mpappas@luce.com

Attorneys for Plaintiff and Intervenor, National Credit Union Administration Board
As Conservator For Western Corporate Federal Credit Union

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION,<br><br>          Plaintiff,<br><br>v.<br><br>ROBERT A. SIRAVO, TODD M. LANE, ROBERT J. BURRELL, THOMAS E. SWEDBERG, TIMOTHY T. SIDLEY, ROBERT H. HARVEY, JR., WILLIAM CHENEY, GORDON DAMES, JAMES P. JORDAN, TIMOTHY KRAMER, ROBIN J. LENTZ, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE,<br><br>          Defendants. | Case No.: CV10-01597 GW (MANx)<br><br>**OPPOSITION OF PLAINTIFF NATIONAL CREDIT UNION ADMINISTRATION BOARD AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION TO MOTION TO DISMISS FILED BY DEFENDANTS SIRAVO AND SWEDBERG**<br><br>**Date:   December 20, 2010**<br>**Time:  8:30 a.m.**<br>**Judge: Hon. George Wu** |

# **TABLE OF CONTENTS**

Page

INTRODUCTION ......................................................................................... 1

I.  THE FIRST AMENDED COMPLAINT STATES A CLAIM FOR FRAUD RELATING TO THE SERP AMENDMENTS. ............................... 8

    A.  As Fiduciaries, Siravo And Swedberg Owed WesCorp A Duty Of Loyalty And Complete Candor. ........................................................ 8

    B.  The First Amended Complaint Alleges Both Misrepresentations And Failures To Disclose. ........................................................... 9

        1.  The First Amended Complaint Sufficiently Alleges That Defendants Committed Fraud. ......................................... 9

        2.  Siravo And Swedberg Failed To Disclose Material Information About The Proposed SERP Amendments. ............. 10

        3.  The Presentation of Amended SERP Plans Inconsistent With The Board's Resolution Are Actionable As Fraud. .......... 11

        4.  The Actions And Omissions Of Siravo and Swedberg Constitute Constructive Fraud. ....................................... 12

    C.  Defendants' Fact-Based Arguments Do Not Justify Dismissal Of the Fraud Claims. ............................................................ 12

        1.  That Defendants Did Not Conceal The Amount Of Siravo's SERP Benefit Increase Does Not Insulate Them From Liability. ........................................................ 13

        2.  Swedberg's Characterization Of The Proposed SERP Changes As Administrative Was More Than An Unactionable Opinion. ................................................ 14

        3.  The Misrepresentations Alleged In The First Amended Complaint Are Not True Statements Taken Out Of Context. ................................................................. 16

        4.  The Amended Siravo SERP Did Not Comply With The Board's Resolution. ............................................... 17

        5.  The "Draft" Proposals Swedberg Presented To Harvey and Merlo Contain Actionable Misrepresentations. ................... 18

II.  THE FIRST AND SECOND CLAIMS FOR RELIEF CANNOT BE DISMISSED AS AGAINST SIRAVO. ........................................... 18

CONCLUSION ........................................................................................... 19

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*American Trust Co. v. California Western States Life Ins. Co.,*
  15 Cal. 2d 42 (1940)..................................................................15

*Amtower v. Photon Dynamics, Inc.,*
  158 Cal. App. 4th 1582 (2008)..................................................10

*Ashcroft v. Iqbal,*
  - U.S.-, 129 S. Ct. 1937
  173 L. Ed. 2d 868 (2009)............................................................8

*Balistreri v. Pacifica Police Dep't,*
  901 F.2d 696 (9th Cir. 1988)......................................................8

*Bancroft-Whitney Co. v. Glen,*
  64 Cal. 2d 327 (1966)................................................................9

*Barrett v. Bank of America,*
  183 Cal. App. 3d 1362 (1989)..................................................14

*Bell Atlantic Corp. v. Twombley,*
  550 U.S. 544 ,
  127 S. Ct. 1955,
  167 L. Ed. 2d 929 (2007)..........................................................12

*Cohen v. S&S Construction Co.,*
  151 Cal. App. 3d 941 (1983)....................................................18

*Corson v. Brown Motel Inv., Inc.,*
  87 Cal. App. 3d 422 (1978)......................................................20

*Engalla v. Permanente Medical Group,*
  15 Cal. 4th 951 (1997)..............................................................11

*GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.,*
  83 Cal. App. 4th 409 (2000)......................................................9

*Gaillard v. Natomas,*
  208 Cal. App. 3d 1250 (1989)..................................................21

*Gentry v. eBay,*
  99 Cal. App. 4th 816 (2002)......................................................16

*Gilligan v. Jamco Development Corp.,*
  108 F.3d 246 (9th Cir. 1997)......................................................8

*Guth v. Loft,*
  23 Del. Ch. 255,
  5 A.2d 503 (1939)......................................................................9

ii

*K. & M., Inc. v. LeCuyer,*
    107 Cal. App. 2d 710 (1962) ........................................................16

*Lynch v. Cruttenden & Co.,*
    18 Cal. App. 4th 802 (1993) ......................................................18

*Miniace v. Pacific Maritime Association,*
    424 F.Supp. 2d 1168 (N.D. Cal. 2006) ..................................10

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand,*
    6 Cal.3d 176 (1971) ..................................................................10

*Neu v. Terminix Inter'l Co.,*
    2008 WL 2951390 (N.D. Cal. 2008) ........................................17

*Persson v. Smart Inventions,*
    125 Cal. App. 4th 1141 (2005) ................................................12

*Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.,*
    267 F. Supp 726 (S.D. Cal. 1966) ............................................20

*Reeves v. Hanlon,*
    33 Cal. 4th 1140 (2004) ..............................................................9

*Renaissance Realty, Inc. v. Soriano,*
    120 Cal. App. 3d Supp. 13 (1981) ..........................................13

*Sequoia Vacuum Systems v. Stransky,*
    229 Cal. App. 2d 281 (1964) ....................................................10

*Silver v. Shemanski,*
    89 Cal. App. 2d 520 (1949) ......................................................17

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001),
    amended on other grounds,
    275 F.3d 1187 (9th Cir. 2001) ....................................................8

## STATUTES

Civil Code
    Section 1573 ................................................................................14
    Section 1710(3) ..........................................................................12

Federal Rule of Civil Procedure
    Section 12(b)(6) ............................................................................8

iii

# **INTRODUCTION**

In the First Amended Complaint, the National Credit Union Administration Board as Conservator for the Western Corporate Federal Credit Union ("NCUA") alleges that defendants Robert Siravo ("Siravo") and Thomas Swedberg ("Swedberg") defrauded the board of directors of the Western Corporate Federal Credit Union ("WesCorp") in order to substantially increase their retirement payments. It alleges that Siravo and Swedberg persuaded the board to approve amendments to WesCorp's Supplemental Executive Retention Plans ("SERPs") by making false and misleading representations that the proposed amendments were necessary to correct past administrative errors and by not disclosing the true facts about them.

Siravo was WesCorp's President and Chief Executive Officer and Swedberg was its Vice President of Human Relations. Both owed a fiduciary duty of loyalty and candor to WesCorp. Both were nearing retirement. They misled the Chairman of the board's compensation committee, the Chairman of the board, the board's executive committee and the board as a whole. The resulting SERP amendments increased the retirement payments to Siravo and Swedberg by more than $3 million.

The First Amended Complaint alleges that Siravo and Swedberg are liable for fraud and breach of their fiduciary duty of loyalty because they made false and misleading representations and failed to disclose material facts they had a duty to disclose. In addition, it alleges that Siravo and Swedberg further defrauded WesCorp and breached their fiduciary duties by preparing amended SERP documents that provided for larger payments than the board's approval resolution and therefore resulted in a further increase in their retirement payments.

Siravo and Swedberg do not challenge the adequacy of the fraud allegations under Rule 9. Instead, they contend that (1) none of the representations made to the board and its executive committee in a November 2, 2007 memorandum attached to the First Amended Complaint were actually false; (2) the prior "draft" documents

1  presented to the Chairmen of the compensation committee and the board were not

2  "used" and are therefore not actionable; and (3) the November 2 memorandum

3  establishes that Siravo and Swedberg did not pay themselves more than authorized

4  by WesCorp's board.  The allegations of the First Amended Complaint defeat each

5  of these contentions.

6     In asserting that none of the alleged affirmative misrepresentations in the

7  November 2, 2007 memorandum is actually false, Siravo and Swedberg simply

8  ignore the allegations of actionable failures to disclose.  They make three arguments

9  that the alleged misrepresentations cannot be found false.  First, they note that the

10  November 2 memorandum discloses the financial impact of the proposed

11  amendments.  They do not explain why that disclosure eliminates the effect of either

12  the misrepresentations as to the reasons for the proposed amendments, or the failure

13  to disclose all material information about the proposed amendments.

14     Second, Siravo and Swedberg contend that the representation that the

15  characterization of the changes as "administrative" is nonactionable opinion as a

16  matter of law.  However, that characterization as alleged was a representation that

17  the proposed changes did not raise policy issues, not a mere opinion.  In any event,

18  false or misleading opinions of fiduciaries such as Swedberg are actionable as fraud.

19     Third, Siravo and Swedberg contend that Swedberg's representations about

20  WesCorp's intent when the SERP program was "initially developed" are immaterial

21  because they refer only to WesCorp's intent when the original SERP was

22  established in November 2001 and not to its intent when it negotiated Siravo's

23  SERP in March 2002.  This distinction does not appear in either the November 2

24  memorandum or the other allegations of the First Amended Complaint.  Whether or

25  not it existed in the minds of WesCorp's board members in 2001 and 2002, or in the

26  minds of the board members who were persuaded to amend the SERPs, are

27  questions of fact.  However, Swedberg made the false representation about the

28  initial intent of the SERP program in order to persuade the board to amend the

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION SIRAVO AND
SWEDBERG'S MOTION TO DISMISS

1   Siravo SERP.  Even if the representation was about a period four months before

2   Siravo's SERP was negotiated, that fact does not make it immaterial.

3       The contention that the misrepresentations made in "drafts" are not actionable

4   because they were not submitted to the board as a whole ignores the allegation that

5   the "drafts" went to the chairman of the board's compensation committee.

6   Likewise, the contention that Siravo received less SERP money than the board

7   authorized is based on Swedberg's memo to the board and not the resolution it

8   actually adopted.

9       Finally, Siravo's joinder in the motion of WesCorp's directors to dismiss the

10  NCUA's first and second claims for relief fails for the reasons set forth in the

11  NCUA's opposition to that motion.  In addition, as an officer of WesCorp, Siravo is

12  not entitled to the benefit of the business judgment rule, which applies only to

13  directors.  The motion to dismiss should be denied in its entirety.

14  ## THE ALLEGATIONS OF THE COMPLAINT

15      In November 2001, WesCorp created a Supplemental Executive Retention

16  Plan ("SERP") for certain high-level WesCorp executives (the "Executive SERP"),

17  including Swedberg.  FAC ¶ 81.  The Executive SERP provided for a lump sum

18  payment to participants at their expected retirement date.  FAC ¶ 82.  When Siravo

19  became President and CEO of WesCorp in March 2002, he negotiated a similar

20  SERP plan for himself (the "Siravo SERP").  FAC ¶ 83.

21      In both SERPs, the amount of the lump sum benefit was determined by a

22  formula based on "Final Compensation," defined as the "monthly base-period salary

23  paid most recently while a person was a participant in the program, multiplied by

24  twelve (12)."  FAC ¶ 84.  The lump sum payment formula for both SERPs also

25  included a 40% gross-up for taxes.  *Id.*

26      In Fall 2007, Siravo and Swedberg decided to increase the amount of their

27  SERP benefits.  FAC ¶ 85.  They decided to propose amendments to the SERP plans

28  that would change the definition of Final Compensation to be total compensation,

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION SIRAVO AND
SWEDBERG'S MOTION TO DISMISS

1   including salary and bonuses, rather than "monthly base-period salary," and to

2   increase the gross-up for taxes from 40% to 67%. FAC ¶ 85. In engineering the

3   SERP amendments, Siravo and Swedberg falsely characterized them as

4   administrative changes necessary to correct errors in the plans. FAC ¶ 34. Siravo

5   decided that the Siravo SERP should be amended first, and that the proposal to do so

6   should be presented to the board by Swedberg, who would be "disinterested."

7   Siravo would then arrange for identical amendments to be proposed to the board

8   made for the Executive SERP, which would increase the lump sum payment to

9   Swedberg. FAC ¶ 86.

10      As WesCorp officers, Siravo and Swedberg occupied positions of trust and

11   owed WesCorp duties of loyalty and good faith as well as a duty to provide candid

12   and truthful information to the board of directors in matters affecting compensation

13   and employment. FAC ¶ 125. The WesCorp board and its executive committee

14   were justified in relying on Siravo and Swedberg to fully disclose to them all facts

15   material to the nature of and need for changes to the plans. FAC ¶¶ 134, 135.

16      Swedberg prepared a Power Point presentation for WesCorp's board, which

17   he sent to Siravo on October 19, 2007, and subsequently showed to John Merlo, the

18   Chairman of the board's compensation committee. FAC ¶¶ 89, 91. The

19   presentation stated that the Siravo SERP required modification because (1) its

20   formula currently produces a 28% "shortfall" and (2) new plans provide for a 67%

21   gross-up, which "produces a more equitable result." FAC ¶ 89. These statements

22   were false and misleading, and the defendants knew the statements were false and

23   misleading, because the Siravo SERP formula in fact produced a lump sum payment

24   significantly higher than the payment contemplated by the parties at the time

25   Siravo's SERP was negotiated and the amount of the gross-up had been set at that

26   time in arms-length negotiations.[1] FAC ¶ 90.

27

28   [1] The NCUA expects the evidence at trial to show that the amount of Siravo's SERP
     retirement payment was initially negotiated as a fixed lump sum and then translated

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION SIRAVO AND
SWEDBERG'S MOTION TO DISMISS

1   Merlo asked Swedberg to replace the Power Point presentation with a short

2   memo.  Swedberg then prepared a one page memo to Merlo that recommended an

3   "administrative change" to "increase benefits sufficiently to achieve 48 percent of

4   earnings inclusive of off-sets" and requested consideration of a change in the tax

5   multiplier to 1.67 percent.  FAC ¶ 91.  Later drafts of the memo stated that "the

6   SERP currently produces 37% of ending earnings versus the agreed-to 48%."  *Id.*

7   The First Amended Complaint alleges that the representation in the memo

8   that the change was administrative was false because the change was substantive,

9   i.e. it raised policy issues.  FAC. ¶ 92.  The representation that there had been an

10  agreed-to percentage of "ending earnings" was false because WesCorp had never

11  agreed that Siravo's lump sum SERP payment would be based on 48% of ending

12  earnings.  *Id.*

13  Swedberg wrote a revised memorandum dated November 2, 2007, which he

14  sent Siravo's concurrence to Robert Harvey, the Chairman of the board.  FAC ¶ 93.

15  The memorandum, provided to the board's executive committee (and possibly to the

16  whole board), was entitled "Administrative Change" to the CEO's SERP.  *Id.*  It

17  contained several false and misleading statements and Siravo and Swedberg knew

18  they were false or misleading or had no reasonable ground to believe that they were

19  true.  FAC ¶ 94, 95.  These misrepresentations included the following:

20  - that the proposed amendments were "administrative;"

21  - that there were two "administrative errors in the current 457(f) [SERP]

22    plan document that are not consistent with the intent of the program

23    when it was initially developed;"

24  - that "[o]ur CEO's current 457(f) Plan utilized an old template that

25    dated back to Dick Johnson's tenure as President when no bonuses or

26  into a formula based on his then-calculated monthly base salary.  Since Siravo's
27  monthly base salary at his retirement date was significantly higher than his initial
    salary, the SERP payment was also significantly higher than the lump sum originally
28  negotiated.  There was thus no "shortfall" in the lump sum payment amount.

1    incentive pay plans existed at WesCorp and the concept of tax gross-up

2    was not broadly utilized in 457(f) Plans;" and

3    • that the changes are necessary to provide the "agreed upon 48 percent

4    of compensation rate" and that the tax gross-up change is required to

5    provide the "correct tax gross-up amount." FAC ¶ 94.

6    The true facts were that the Siravo SERP was fully consistent with the intent

7    of the parties at the time the plan was negotiated. FAC ¶ 96. Siravo and WesCorp

8    never agreed or contemplated that the amount of the lump sum payment would be

9    48% of total compensation. Rather, the parties contemplated and agreed that the

10   amount of Siravo's lump sum payment was to be calculated as a percentage of base

11   salary, not total compensation. *Id.*

12   Moreover, the concept of gross-up rates was utilized in WesCorp's SERP

13   plans both at the time the Siravo SERP was negotiated and when the Executive

14   SERP was adopted a few months earlier. *Id.* Finally, the gross-up percentage in the

15   Siravo SERP formula was the same as the percentage in the Executive SERP, and

16   neither party intended to change it at the time the Siravo SERP was negotiated. *Id.*

17   The November 2 memorandum was provided to the board's executive

18   committee, which approved the proposal Swedberg presented. The WesCorp board

19   approved the executive committee's approval of the changes to the Siravo SERP and

20   adopted a resolution to that effect. FAC ¶¶ 97, 98.

21   The resolution adopted by the WesCorp board authorized the following

22   changes to the Siravo SERP:

23   1.    Include salary *plus* bonus and incentive pay in the SERP
24   benefit calculation to make it consistent with the compensation
     used in WesCorp's Defined Benefit Plan benefits calculation.
25   (Emphasis in original).

26   2.    Calculate the tax gross-up using the divisor (.60) *versus*
27   the multiplier (1.4). (Emphasis in original). FAC ¶ 99.

28

On January 24, 2008, Harvey executed an amended Siravo SERP document prepared by Swedberg and approved by Siravo. FAC ¶ 100. The formula in that document provided Siravo a larger lump sum payment than the board's resolution authorized.[2] *Id.* The First Amended Complaint alleges that both Siravo and Swedberg knew that the amended Siravo SERP did not comport with the approved board resolution, but concealed that fact from the board and failed to take any action to correct the amended plan. FAC ¶ 101.

The First Amended Complaint alleges that after the Siravo SERP amendment was approved, Swedberg prepared an identical amendment to the Executive SERP. FAC ¶¶ 86, 103. WesCorp's board approved the amendments to the Executive SERP at its June 24, 2008 meeting. The only WesCorp employee present was Siravo. The board resolution adopting the amendments to the Executive SERP is identical to the resolution adopting the amendments to the Siravo SERP, except for the name of the SERP program involved. FAC ¶ 104.

Siravo and Swedberg received their SERP payments in May 2008 and January 2009, respectively. The payments were approximately $3,076,039 more than they would have been had the SERP plans not been amended. FAC ¶¶ 102, 105, 129, 136.

## APPLICABLE LEGAL STANDARD

Dismissal under Rule 12(b)(6) for failure to state a claim is warranted only where the complaint does not allege a claim supported by a cognizable legal theory or if the complaint does not allege sufficient facts in support of a cognizable legal theory. *See, Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

---

[2] The resolution authorized the SERP to be amended in a way that was consistent with the Defined Benefit Plan's definition of compensation. The NCUA expects the evidence at trial to show that the Defined Benefit Plan calculated compensation based on the *average* of the employee's annual compensation over the prior five years. By contrast, the amended Siravo SERP calculated compensation based on the *highest* annual compensation out of the prior three years.

1    When considering a motion to dismiss under Federal Rule of Civil Procedure

2    12(b)(6), the court must accept as true all of the factual allegations set out in

3    plaintiff's complaint and draw inferences from those allegations in the light most

4    favorable to plaintiff. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988,

5    amended on other grounds, 275 F.3d 1187 (9th Cir. 2001).   If a complaint "pleads

6    factual content that allows the court to draw the reasonable inference that the

7    defendant is liable for the misconduct alleged," the complaint survives a motion to

8    dismiss. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868

9    (2009).  Given this standard, motions to dismiss for failure to state a claim are

10   disfavored and rarely granted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246,

11   249 (9th Cir. 1997).

### LEGAL ARGUMENT

12

13   **I.     THE FIRST AMENDED COMPLAINT STATES A CLAIM FOR FRAUD RELATING TO THE SERP AMENDMENTS.**

14

15       **A.     As Fiduciaries, Siravo And Swedberg Owed WesCorp A Duty Of Loyalty And Complete Candor.**

16       Siravo as WesCorp's President and Chief Executive Officer and Swedberg as

17   its Vice President of Human Resources were fiduciaries. *GAB Business Services,*

18   *Inc. v. Lindsey & Newsom Claim Services, Inc.*, 83 Cal. App. 4th 409, 420 (2000),

19   overruled on other grounds cited in *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1153-1154

20   (2004).  They were required to act in good faith and in the best interest of the

21   corporation and were not permitted to use their positions of trust and confidence to

22   further their private interests. *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 345

23   (1966).  The position of a corporate officer demands "the most scrupulous

24   observance of his duty, not only affirmatively to protect the interests of the

25   corporation committed to his charge, but also to refrain from doing anything that

26   would work injury to the corporation. *Id.* at 345, citing *Guth v. Loft*, 23 Del. Ch.

27   255, 5 A.2d 503, 510 (1939).

28

Thus, if an officer misuses his position of trust to further his private interest, he may be held liable for the damage or accountable for any benefits which he obtains thereby. *Id.*; *Sequoia Vacuum Systems v. Stransky,* 229 Cal. App. 2d 281, 286 (1964); *Miniace v. Pacific Maritime Association,* 424 F.Supp.2d 1168, 1186-87 (N.D. Cal. 2006) .

An officer's fiduciary duty includes the duty of full disclosure. *Amtower v. Photon Dynamics, Inc.,*  158 Cal. App. 4th 1582, 1597 (2008), citing *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,*  6 Cal. 3d 176, 189 (1971).  As the court stated in *Neel*:

> The duty of a fiduciary embraces the obligation to render a full and fair disclosure to the beneficiary of all facts which materially affect his rights and interests.  "Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud."

*Neel* at 189, citations omitted.

Siravo and Swedberg owed a duty of complete candor and full disclosure to the board, and the board was entitled to repose its trust in and rely on them in connection with their consideration of the proposed SERP amendments.  That fiduciary duty underlies all of the claims against Siravo and Swedberg relating to the SERP amendments.[3]

### B.    The First Amended Complaint Alleges Both Misrepresentations And Failures To Disclose.

#### 1.    The First Amended Complaint Sufficiently Alleges That Defendants Committed Fraud.

To state a claim for fraud, a plaintiff must allege (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or

---

[3]    Siravo and Swedberg assert that misrepresentations alleged in the fraud and breach of fiduciary duty claims overlap entirely and therefore "Count Three [the breach of fiduciary duty claim] stands or falls with Count Four [the fraud claim]."  Motion at 6:16-21.  If Siravo and Swedberg were to prove that their disclosures to WesCorp's board fully satisfied their duty of candor and full disclosure, the NCUA agrees that those disclosures would not be actionable as fraud.

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION SIRAVO AND
SWEDBERG'S MOTION TO DISMISS

1    scienter); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e)

2    resulting damage. *Engalla v. Permanente Medical Group*, 15 Cal. 4th 951, 974

3    (1997). The First Amended Complaint alleges each of these elements as against

4    Siravo and Swedberg with respect the communications to the board about the

5    proposed SERP amendments and the failure to comply with the board resolution in

6    drafting the amended SERP documents.

7         The alleged misrepresentations are detailed in the discussion of the

8    allegations, above. The First Amended Complaint alleges that Siravo and Swedberg

9    knew that the representations were false and misleading and that they intended to

10   deceive WesCorp's board. FAC ¶¶ 95, 133. Among other things, the First

11   Amended Complaint alleges that Siravo and Swedberg knew that the changes were

12   more than administrative and not meant to correct errors or mistakes. By virtue of

13   their positions in negotiating the Siravo SERP, they knew that that plan was never

14   meant to calculate benefits based on salary plus bonus and that the lump sum

15   amount was never meant to be 48% of final compensation. FAC ¶¶ 92, 93, 96. The

16   First Amended Complaint alleges that the board justifiably relied on the

17   representations of Siravo and Swedberg in amending the SERP plans, to the damage

18   of WesCorp. FAC ¶¶ 134-136. These allegations are sufficient "to raise a right to

19   relief above the speculative level." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544,

20   555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

21
22   **2.    Siravo And Swedberg Failed To Disclose Material Information
            About The Proposed SERP Amendments.**

23        In addition to affirmatively misrepresenting the nature of and reasons for the

24   requested amendments to the SERPs, the First Amended Complaint alleges that

25   Siravo and Swedberg failed to disclose the true reason for the proposed SERP

26   amendments and the fact that the rationale advanced by Swedberg was a pretext to

27   obtain a SERP plan that was more generous. An action for fraud by concealment

28

1   will lie for the "suppression of a fact, by one who is bound to disclose it, or who

2   gives information of other facts which are likely to mislead for want of

3   communication of that fact." California Civil Code, § 1710(3). Failure to disclose

4   material facts gives rise to a claim for actionable fraud where there is a fiduciary

5   relationship or other special relationship or conduct giving rise to a duty to disclose.

6   *Id.*; *see Persson v. Smart Inventions*, 125 Cal. App. 4th 1141, 1165 (2005)

7   (defendant liable for intentional concealment where he suppressed facts materially

8   qualifying those provided). *See also Renaissance Realty, Inc. v. Soriano*, 120 Cal.

9   App. 3d Supp. 13, 16 (1981) (real estate broker failed to disclose secret

10  commission).

11        The First Amended Complaint alleges Siravo and Swedberg did not disclose

12  their true intentions and the reasons for the changes, that there were no errors that

13  needed to be corrected, and that the SERP plans complied with WesCorp's original

14  intent. FAC ¶¶ 87, 95, 96, 126, 127, 133. They also did not disclose that they had

15  agreed to seek changes to each other's SERPs. FAC ¶¶ 85, 86. Had Siravo and

16  Swedberg been candid with the board and fully disclosed the true reason they were

17  seeking the proposed SERP amendments, the board could have made an informed

18  decision about whether WesCorp should enhance the SERP plans to provide more

19  generous benefits than originally intended.

**3.   The Presentation of Amended SERP Plans Inconsistent With The Board's Resolution Are Actionable As Fraud.**

The First Amended Complaint also states a claim for fraud arising from the

implementation of the board's resolution authorizing the amendment to the Siravo

SERP plan. It alleges that Siravo and Swedberg "had a duty to calculate Siravo's

SERP payment correctly and advise the Board of any error in the amendment,"

FAC ¶ 127, and that they knew or should have known about the variance but did not

advise Chairman Harvey of it. FAC ¶ 101. It pleads each element of fraud:

1   Swedberg did not disclose that the amendment was not in compliance with the

2   resolution; he presented it to Chairman Harvey with the intent that Harvey sign it as

3   the implementation of the board's resolution; Harvey justifiably relied upon

4   Swedberg in signing the amendment; WesCorp was damaged when it paid out

5   benefits to which Siravo was not entitled.  This failure to disclose material facts

6   Siravo and Swedberg had a duty to disclose is fraud.  *Neel v. Magana, Olney, Levy,*

7   *Cathcart & Gelfand,*  6 Cal. 3d at 189.

### 4.   The Actions And Omissions Of Siravo and Swedberg Constitute Constructive Fraud.

10      In addition to intentional fraud, the First Amended Complaint alleges facts

11  sufficient to state a claim for constructive fraud against Siravo and Swedberg.

12  Constructive fraud includes any breach of duty by which a person, without an

13  actually fraudulent intent, gains an advantage by misleading another to his or her

14  prejudice, or to the prejudice of anyone claiming under him or her.  *See,* Civil Code

15  § 1573; *Barrett v. Bank of America*, 183 Cal. App. 3d 1362, 1368-69 (1989).

16      Under the allegations of the First Amended Complaint, the fiduciary duties of

17  full disclosure and complete honesty and candor that Siravo and Swedberg owed the

18  WesCorp board required them, among other things, to disclose fully the true reasons

19  for the changes to the SERPs, that they had a plan to change both SERPs to benefit

20  themselves, that there were no errors in the SERP plans, and that the changes were

21  not administrative.  They also had a duty to implement the board's resolution as

22  approved.  The First Amended Complaint sufficiently alleges breach of these duties

23  and that WesCorp and its board were misled by the actions of Siravo and Swedberg.

### C.   Defendants' Fact-Based Arguments Do Not Justify Dismissal Of the Fraud Claims.

26      Siravo and Swedberg make four fact-based arguments that their

27  misrepresentations were either truthful or not actionable.  First, they assert that

28  because the November 2 memorandum disclosed the amount of Siravo's increased

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION SIRAVO AND
SWEDBERG'S MOTION TO DISMISS

1    SERP payment, none of the alleged false statements and failures to disclose could

2    mislead WesCorp's board.  Second, they assert that Swedberg's reference to the

3    changes as "administrative" is, as a matter of law, simply his nonactionable opinion.

4    Third, they assert that the alleged misrepresentations in the November 2, 2007

5    memorandum only appear to be false because they are "taken out of context."

6    Finally, they assert that WesCorp was not damaged by the alleged discrepancy

7    between the resolution approving the changes to the Siravo SERP and the

8    amendment to the SERP because the board approved a higher payment than Siravo

9    actually received.  None of these arguments nullifies the fraud allegations in the

10   First Amended Complaint.

### 1.  That Defendants Did Not Conceal The Amount Of Siravo's SERP Benefit Increase Does Not Insulate Them From Liability.

13        Siravo and Swedberg argue that because they disclosed the financial impact

14   of the proposed SERP amendments, they cannot be liable for fraud.  They offer no

15   explanation why disclosure of the amount the amendments would cost eliminates

16   the fraud as to the justification for them.  The fact that the end result of the changes

17   — to raise Siravo's SERP benefit — was not concealed does not absolve Siravo and

18   Swedberg from their affirmative misrepresentations as to the reasons and need for

19   the requested changes to correct some sort of mistake.  *American Trust Co. v.*

20   *California Western States Life Ins. Co.*, 15 Cal. 2d 42,  62-63, 65-66 (1940) (A

21   director [or officer] owes to the corporation "the highest fiduciary obligation and the

22   fullest duty of disclosure." Moreover, "[r]egardless of whether one is under a duty to

23   speak or disclose facts, one who does speak must speak the whole truth, and not by

24   partial suppression or concealment make the utterance untruthful and misleading.")

25        *K. & M., Inc. v. LeCuyer*, 107 Cal. App. 2d 710 (1962), cited by defendants,

26   does not change the analysis.  In that case, the buyers of a restaurant claimed they

27   were defrauded by the seller about the status of a security deposit on leased premises

28   conveyed as part of the purchase.  The trial court found that the status of the security

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION SIRAVO AND
SWEDBERG'S MOTION TO DISMISS

1   deposit was fully disclosed in the documents and that any alleged misrepresentations

2   regarding the security deposit could not be the basis of a fraud claim.

3        Here, the NCUA does not claim that the amount of the change in the SERP

4   benefit was not disclosed in the November 2 memorandum.  Rather, the stated

5   nature of the change (administrative) and reason for the change (required to correct

6   errors in the plan) were false and misleading.  The true intentions of Siravo and

7   Swedberg were concealed, as was the fact that they were working together to change

8   each other's SERP plans.  This conduct, along with the other conduct alleged in the

9   First Amended Complaint, amounts to fraud and breach of fiduciary duty even if the

10  financial impact of the proposed SERP amendments was disclosed.

11      **2.**    **<u>Swedberg's Characterization Of The Proposed SERP Changes</u>**

12          **<u>As Administrative Was More Than An Unactionable Opinion.</u>**

13      Siravo and Swedberg argue that Swedberg's characterization of the SERP

14  changes as "administrative" was merely an unactionable statement of opinion.

15  Motion at 8:17-18.  A statement is an opinion "if it expresses only (a) the belief of

16  the maker, without certainty, as to the existence of a fact; or (b) his judgment as to

17  the quality, value, authenticity, or other matters of judgment."  *Gentry v. eBay*, 99

18  Cal. App. 4th 816, 835 (2002).  Swedberg nowhere designated his statements in the

19  November 2 memorandum as opinions.  Nothing in the allegations of the First

20  Amended Complaint or the memorandum itself suggests that the statements were

21  intended to be opinions.  To prevail, therefore, Defendants must establish that the

22  statements are opinions as a matter of law, regardless of designation or intent.  They

23  cite no law so suggesting.

24      Swedberg's memorandum was entitled in part "Administrative Change" and

25  affirmatively represented that there were two "administrative errors in the current

26  457(f) [SERP] plan document that are not consistent with the intent of the program

27  when it was initially developed."  The characterization of the proposed amendments

28  as "administrative" is not a statement of opinion; it is a statement by implication that

1  the proposed changes did not raise policy issues for the board to consider.

2  Swedberg was stating a purported fact – that "administrative errors" existed in the

3  SERP which had to be corrected through an administrative change.

4      Siravo and Swedberg Defendants cite two cases, *Neu v. Terminix Inter'l Co.*,

5  2008 WL 2951390 (N.D. Cal. 2008) and *Silver v. Shemanski*, 89 Cal. App. 2d 520

6  (1949), for the general rule that an expression of opinion, without more, is not

7  actionable as fraud.  Motion at 8:15-25.  In *Neu*, plaintiff sued a termite company for

8  making statements that their "Baiting System was the best defense against the threat

9  of subterranean termite infestation" and that they "formulated a unique plan of

10 action for defending Plaintiff's home against termite infestation." The court held

11 these statements to be mere expressions of opinion or "puff talk" and not actionable

12 as fraud.  (*Id.* at *3.)

13      In *Silver*, the attorneys for the executor of an estate opined to a third party

14 claimant that under the terms of the will certain joint tenancy property was

15 community property.  *Id.* at 545.  There was no confidential relationship existing

16 between the executor's attorneys and the third party; the attorneys had advised the

17 third party that they could not represent her and urged her to retain independent

18 legal counsel.  Under those facts, the court held that there was no fraud in the

19 attorneys' expression of opinion.  *Id.*  By contrast, Swedberg's statements were not

20 commercial "puffing" or an exercise of judgment expressed to a third party.  They

21 were made to advise the board of the nature of the proposed SERP amendments.

22      Moreover, because Swedberg was a fiduciary possessed with expertise on

23 employee benefits matters and the person responsible for implementing the

24 amendments, his statements are actionable even if they might otherwise be classified

25 as opinions.  Opinions can be actionable misrepresentations "'(1) where a party

26 holds himself out to be specially qualified and the other party is so situated that he

27 may reasonably rely upon the former's superior knowledge; (2) where the opinion is

28 by a fiduciary or other trusted person; [and] (3) where a party states his opinion as

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION SIRAVO AND
SWEDBERG'S MOTION TO DISMISS

1  an existing fact or as implying facts which justify a belief in the truth of the

2  opinion.'" *Cohen v. S&S Construction Co.,* 151 Cal. App. 3d 941, 946 (1983),

3  internal citations omitted; *Lynch v. Cruttenden & Co.,* 18 Cal. App. 4th 802, 808

4  (1993) (reliance on opinion is reasonable "where the recipient of the opinion is in a

5  relationship of trust and confidence, or where the recipient of the opinion reasonably

6  believes that, as compared with himself, the maker of the opinion has special

7  knowledge or skill with respect to the subject matter").

8      Swedberg was in a position of trust and confidence and held himself out as

9  possessing superior knowledge, special information, or expertise regarding the

10  intent of the parties at the time the SERP plan was originally negotiated, the

11  purported errors in the SERP plan document, and the purported necessity for the

12  proposed amendments.  These facts made it reasonable for the board to rely on his

13  opinion in approving the amendments.

14
15
     **3.**     **The Misrepresentations Alleged In The First Amended Complaint Are Not True Statements Taken Out Of Context.**

16      Siravo and Swedberg assert that a number of the alleged misrepresentations in

17  the November 2 memorandum are not actionable because they are "taken out of

18  context."  They appear to assert that those representations are not material because

19  they relate to the time the Executive SERP was established, in November 2001, and

20  not to the time the Siravo SERP was negotiated, in March 2002.  Motion at 9:3-

21  10:15.  Siravo and Swedberg contend that this distinction is both clear from the face

22  of the November 2 memorandum and sufficient to render one time period irrelevant

23  to the other as a matter of law.  Neither is true.

24      The First Amended Complaint alleges that the Siravo SERP provided a

25  similar lump sum payment as the Executive SERP.  A fact finder could fairly infer

26  that the intent of the two SERPs with respect to the lump sum payment was the

27  same, despite the fact that Siravo's SERP came four months later.  Moreover, the

28  subject of the November 2 memorandum was the Siravo SERP.  The fact that

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION SIRAVO AND
SWEDBERG'S MOTION TO DISMISS

1  Swedberg made the statements he did about the "initial" development of the plan in

2  his memorandum urging amendments to the Siravo SERP strongly suggests that

3  those statements are material. While Siravo and Swedberg theorize that the parties

4  intended to modify the Siravo SERP to make it consistent with the intent of the

5  original SERP plan, that theory is inconsistent with the allegations of the First

6  Amended Complaint and hardly compelled by the language of the November 2

7  memorandum.[4]

8       ### 4.    The Amended Siravo SERP Did Not Comply With The Board's
9                 Resolution.

10          The resolution to amend the Siravo SERP adopted by the board stated that the

11  plan should be amended to make the definition of final compensation "consistent

12  with WesCorp's Defined Benefit Plan. FAC ¶ 99. Siravo and Swedberg assert that

13  the alleged misrepresentations caused no harm to WesCorp because the board

14  approved a payment to Siravo that was higher than the amount he ultimately

15  received. Motion p. 7:7-10. However, nowhere in the board resolution as alleged is

16  there any mention of the amount to be paid to Siravo. The resolution simply states

17  that the calculation should be consistent with WesCorp's Defined Benefit Plan. The

18  First Amended Complaint does not allege that the board approved a specific amount

19  to be paid to Siravo. To the contrary, the First Amended Complaint alleges that the

20  board approved a formula to calculate Siravo's retirement benefit. The defendants

21  prepared an amended SERP document that contained a more generous formula.

22  Their action constitutes fraud.

23

24

25

26  [4] Both of the cases defendants rely on, *Corson v. Brown Motel Inv., Inc.*, 87 Cal. App.
27  3d 422 (1978) and *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem.*
    *Corp.*, 267 F. Supp 726 (S.D. Cal. 1966), were appeals after a trial on the merits with
28  factual determinations regarding what particular documents and statements meant.

1
2

### 5.   The "Draft" Proposals Swedberg Presented To Harvey and Merlo Contain Actionable Misrepresentations.

3      Defendants contend that the misrepresentations made in "drafts" are not

4   actionable because they were not submitted to the board as a whole.  Motion at 11:6-

5   15.  This contention ignores the allegation in the First Amended Complaint that the

6   "drafts" went to the chairman of the board's compensation committee, John Merlo

7   and to the chairman of the board, Robert Harvey.  *See* FAC ¶¶ 91, 93.

8      Merlo and Harvey were both responsible for reviewing the proposal to amend

9   the SERP and making recommendations to the executive committee and the board.

10   Swedberg was trying to influence them to get their support for the changes and was

11   using similar false statements as the ones that appeared in the November 2

12   memorandum.  Merlo and Harvey were entitled to rely on the materials and

13   statements Swedberg presented to them, which ultimately led to their support of the

14   final resolution and approval of the SERP amendments.    The earlier

15   misrepresentations are actionable.

16
17

## II.   THE FIRST AND SECOND CLAIMS FOR RELIEF CANNOT BE DISMISSED AS AGAINST SIRAVO.

18      Siravo seeks to dismiss the First and Second Claims for Relief against him

19   "for the reasons articulated in co-defendants' [Directors] Motion to Dismiss."

20   Motion at 12:9-10.  For the reasons set forth in the NCUA's Opposition to the

21   Directors' Motion, filed concurrently with this opposition, these claims against

22   Siravo cannot be dismissed pursuant to Rule 12(b)(6).

23      In addition, the primary thrust of the Director's Motion to Dismiss is that the

24   First Amended Complaint does not overcome the presumption of the business

25   judgment rule.  Under California law, the business judgment rule does not apply to

26   corporate officers, such as Siravo.

27      Corporations Code § 7231 codifies the California business judgment rule as

28   applied to nonprofit mutual benefit corporations, including credit unions.  It applies

1   to directors and not officers like Siravo. Under Corporations Code § 7231(c), only a

2   person "who performs the duties of a *director*" in accordance with the statute has the

3   protection of the business judgment rule.

4      In *Gaillard v. Natomas*, 208 Cal. App. 3d 1250, 1265 (1989), the court

5   considered the scope of protection of the business judgment rule under Corporations

6   Code Section 309, the for-profit corporation counterpart to Section 7231. It rejected

7   the attempts of the inside director defendants to invoke that section to protect them

8   from liability for negligence. As the court stated:

9   > We further conclude, however, that, as a matter of law, our review of the
10  > conduct of the inside directors is not governed by section 309 . . . . In
    > securing the payment of these benefits to themselves, they were not
11  > "perform[ing] the duties of a director" as specified in section 309, but
    > were acting as officer employees of the corporation. The judicial
12  > deference afforded under the business judgment rule therefore should not
    > apply. As stated by Marsh in his discussion of section 309: "[Section 309,
13  > subdivision (a)] does not relate to officers of the corporation, but only to
    > directors. . . . [A]n officer-director might be liable for particular conduct
14  > because of his capacity as an officer, whereas the other directors would
    > not."
15

16  208 Cal. App. 3d at 1265.

17     Because Siravo was an officer and not a director performing the duties of a

18  director, he cannot avail himself of the business judgment rule defense. Siravo's

19  duties and the breach thereof are adequately alleged and there is no basis to dismiss

20  the First and Second Claims For Relief as against Siravo.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## CONCLUSION

For the reasons set forth above and in the accompanying opposition to the Directors' Motion to Dismiss, this motion to dismiss must be denied.

DATED:  November 22, 2010

LUCE, FORWARD, HAMILTON & SCRIPPS LLP
MICHAEL H. BIERMAN
MICHAEL E. PAPPAS

By:   /s/ Michael H. Bierman
Michael H. Bierman
Attorneys For The National Credit Union Administration Board As Conservator For Western Corporate Federal Union

201079217.9

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION SIRAVO AND
SWEDBERG'S MOTION TO DISMISS