1  Michael H. Bierman, State Bar No. 89156
2  Michael E. Pappas, State Bar No. 130400
   LUCE, FORWARD, HAMILTON & SCRIPPS LLP
3  601 S. Figueroa, Suite 3900
   Los Angeles, California 90017
4  Telephone: 213.892.4992
   Facsimile:  213.892.7731
5  E-Mail:   mbierman@luce.com
              mpappas@luce.com
6
7  Attorneys for Plaintiff and Intervenor, National Credit Union Administration Board
   As Conservator For Western Corporate Federal Credit Union
8

9                   UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11  NATIONAL CREDIT UNION                    Case No.: CV10-01597 GW (MANx)
    ADMINISTRATION BOARD AS
12  CONSERVATOR FOR WESTERN
    CORPORATE FEDERAL CREDIT
13  UNION,
                                             **OPPOSITION OF PLAINTIFF**
14          Plaintiff,                        **NATIONAL CREDIT UNION**
                                             **ADMINISTRATION BOARD AS**
15  v.                                       **CONSERVATOR FOR WESTERN**
                                             **CORPORATE FEDERAL CREDIT**
16  ROBERT A. SIRAVO, TODD M. LANE,          **UNION TO DIRECTORS'**
    ROBERT J. BURRELL, THOMAS E.             **MOTION TO DISMISS FIRST**
17  SWEDBERG, TIMOTHY T. SIDLEY,             **AMENDED COMPLAINT**
    ROBERT H. HARVEY, JR., WILLIAM
18  CHENEY, GORDON DAMES, JAMES              **Date:   December 20, 2010**
    P. JORDAN, TIMOTHY KRAMER,               **Time:  8:30 a.m.**
19  ROBIN J. LENTZ, JOHN M. MERLO,           **Judge: Hon. George Wu**
    WARREN NAKAMURA, BRIAN
20  OSBERG, DAVID RHAMY and
    SHARON UPDIKE,
21
22          Defendants.

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................. 1

THE ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ....................... 4

APPLICABLE LEGAL STANDARD ......................................................... 8

LEGAL ARGUMENT ........................................................................... 8

I.   THE BUSINESS JUDGMENT RULE DOES NOT ELIMINATE THE BREACH OF FIDUCIARY DUTY CLAIM AGAINST THE DIRECTORS. ................................................................................. 8

    A.   Section 7231 Imposes A Duty Of Care On Directors. ........................... 8

    B.   The Business Judgment Rule Does Not Require Enhanced Pleading ............................................................................. 10

    C.   Application Of The Standard Of Care Is An Issue Of Fact. ................. 11

    D.   The Allegations Of The First Amended Complaint State A Claim For Breach Of Fiduciary Duty Notwithstanding The Business Judgment Rule. ............................................................ 13

    E.   The Directors' Assertions Of Pleading Defects Are Meritless. ............ 14

        1.   The NCUA Need Not Allege Irrational Or Overreaching Conduct Or Violation Of The Duty Of Loyalty. ..................... 14

        2.   The Directors' Assertions About Their Conduct Raise Issues For Trial, Not This Motion To Dismiss. ..................... 16

II.  THE FIRST AMENDED COMPLAINT STATES A CLAIM AGAINST BURRELL FOR NEGLIGENCE. ..................................... 19

III. THE CLAIM FOR VIOLATION OF 12 U.S.C. § 1787(h) IS VIABLE ........ 20

    A.   Section 1787(h) Creates An Independent Federal Claim For Damages. .................................................................... 20

    B.   The Allegations Of The First Amended Complaint Are Sufficient To Plead Gross Negligence. ............................................... 21

IV.  THE STATUTES OF LIMITATIONS DO NOT BAR ANY CLAIMS ....... 23

    A.   The Limitations Period For The First Claim For Relief Is Four Years. ....................................................................... 23

    B.   The Statute Of Limitations Does Not Bar The Section 1787(h) Claim ........................................................................ 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal,*
129 S. Ct. 1937
173 L. Ed. 2d 868 (2009)............................................................9, 13, 15, 28

*Atherton v. FDIC,*
519 US 213 (1997) ..................................................................................24

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1988)...............................................................8, 15

*Barber v. Chang,*
151 Cal. App. 4th 1456 (2007)................................................................14

*Bell Atlantic Corp. v. Twombley,*
550 U.S. 544 (2007) ................................................................................13

*Berg & Berg Enters., LLC v. Boyle,*
178 Cal. App 4th 1020 (2008).......................................................12, 13, 15

*Briano v. Rubio,*
46 Cal. App. 1167 (1996) .......................................................................28

*Brummett v. County of Sacramento*
21 Cal. 3d 880 (1978) .............................................................................14

*Bunnell v. Department of Corrections,*
64 Cal.App.4th 1360 (1998) ...................................................................29

*Burt v. Irvine,*
237 Cal. App. 2d 828 (1965) .............................................................11, 26

*City of Santa Barbara,*
41 Cal. 4th at 754, fn. 4 ..........................................................................26

*Continental Ins. Co. v. Am. Prot. Indus.,*
197 Cal. App. 3d 322 (1987) ..................................................................25

*Decker v. City of Imperial Beach,*
209 Cal. App. 3d 349 (1989) ..................................................................26

*Eldridge v. Tymshare, Inc.,*
186 Cal.App.3d 767 (1986) ....................................................................12

*FDIC v. Former Officers & Directors of Metro. Bank,*
884 F.2d 1304 (9th Cir.1989 ..................................................................28

*FDIC v. Former Officers & Directors of Metro. Bank; Guaranty Trust Co. v. United States,*
    304 U.S. 126 (1938) ............................................................................30

*FDIC v. Jackson,*
    133 F. 3d 694 (9th Cir. 1998) .........................................................29

*FDIC v. Castetter,*
    184 F.3d 1040 (9th Cir. 1999) ...................................................11, 22

*Findley v. Garrett,*
    109 Cal. App. 2d 166 (1952) .........................................................15

*Fox v. Hale & Norcross Silver Min. Co.,*
    108 Cal. 369 (1895) ......................................................................25

*Frances T.*
    42 Cal. 3d at 507 n. 14 .................................................................16

*Gaillard v. Natomas,*
    208 Cal. App. 3d 1250 (1989) ..................................................11, 23

*Gilligan v. Jamco Development Corp.,*
    108 F.3d 246 (9th Cir. 1997) ..........................................................9

*In re Citigroup Inc. Shareholder Derivative Litig.,*
    964 A. 2d 106 (Del Ch. 2009) ......................................................16

*In re Walt Disney Co. Derivative Litigation,*
    907 A. 2d 693 (Del. Ch. 2005) .....................................................26

*Katz v. Chevron Corporation,*
    22 Cal. App. 4th 1352 ...................................................................18

*King v. United States,*
    301 F.3d 1270 (10th Cir. 2002) .....................................................29

*Lamden v. La Jolla Shores,*
    21 Cal. 4th 249 (1999) ..................................................................10

*Laird v. T. W. Mather, Inc.,*
    51 Cal. 2d 210 (1958) ...................................................................14

*Lee v. Interinsurance Exchange of the Automobile Club of Southern California,*
    50 Cal. App. 4th 694 (1996) .....................................................10, 15

*Lehman v. Superior Court,*
    145 Cal. App. 4th 109 (2006) .......................................................28

*LLP Mortg. v. Bizar,*
    126 Cal.App.4th 773 (2005) ..........................................................29

iii

*Martinez v. United States,*
   No. EDCV 09-0375-SVW (RC),
   2010 US Dist. Lexis 105763, *20-*21 ...................................................25

*McMichael v. United States Filter Corp.,*
   2001 U.S. Dist LEXIS 3918 (C.D. Cal. 2001) ...................................15

*Pool v. City of Oakland,*
   42 Cal. 3d 1051 (1986) ..................................................................14

*RTC v. Blasdell,*
   930 F. Supp. 417 (D. Ariz. 1994) ...................................................27

*Saenz v. Whitewater Voyages, Inc.,*
   226 Cal.App.3d 758 (1991)............................................................25

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 amended on other grounds,
   275 F.3d 1187 (9th Cir. 2001). .........................................................9

*Ritter & Ritter Pension & Profit Sharing Plan v. Churchill,*
   166 Cal. App. 4th 103 (2008).........................................................12

*Van Meter v. Bent Construction Co.,*
   46 Cal. 2d 588 (1956) ....................................................................26

## OTHER AUTHORITIES

12 U.S.C.
   Section 1787(h)..................................................................passim

Code of Civil Procedure § 343 ...............................................28

## RULES

Federal Rule of Civil Procedure
   12(b)(6) ...................................................................9, 13, 17

## REGULATIONS

California Corporations Code
   Section 309 ...........................................................10, 11, 15

California Corporations Code
   Section 7321 ..............................................................10, 11

California Financial Code
   Section 14002.5 .................................................................10

iv

1

## **INTRODUCTION**

2   The director defendants in this action (collectively, the "Directors") and

3 defendant Robert Burrell ("Burrell") have moved to dismiss the First Amended

4 Complaint filed in this action by the National Credit Union Administration Board as

5 Conservator for Western Corporate Federal Credit Union (the "NCUA") on three

6 primary grounds.  None supports the granting of the motion.

7   First, the Directors and Burrell argue they are shielded from liability for

8 breach of fiduciary duty by the California business judgment rule.  That rule,

9 codified in California Corporations Code § 7231, imposes a duty on directors to act

10 with the care of an ordinarily prudent person, while it insulates directors from

11 liability for poor business judgments that are made exercising due care and in

12 reliance on information provided by others.  The moving defendants assert that the

13 allegations of the First Amended Complaint do not rebut the presumption that their

14 conduct is protected by the business judgment rule.

15   The First Amended Complaint alleges facts that would permit a finder of fact

16 to make the following determinations.  The Directors caused or allowed WesCorp to

17 transform its investment portfolio from a relatively safe repository for its members'

18 excess funds into a cash machine, generating ever-increasing amounts of investment

19 income to support WesCorp's increasing operating expenses and to justify

20 substantial compensation increases for WesCorp's senior executives.  To generate

21 increased investment income, the Directors directed or allowed WesCorp to

22 significantly increase its investment in relatively riskier "private label" mortgage

23 backed securities ("MBS") and to borrow substantial sums to increase the amount of

24 the investment.  They did so without weighing the increased risks of this change in

25 the investment portfolio against the increased income generated and without

26 obtaining the information necessary to do so.  They approved budgets that mandated

27 increased investment income without evaluating the increased investment risk that

28 the budgets required, without obtaining the information necessary to do so, and

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO DIRECTORS'
MOTION TO DISMISS

1   without considering or adopting any safeguards to mitigate the increased risk.  The

2   Directors were responsible for establishing concentration limits for WesCorp's

3   investment portfolio.  The concentration limits they set for private label MBS

4   permitted WesCorp to invest its entire portfolio in those securities.

5       The Directors caused or allowed WesCorp to continue seeking increasing

6   investment income even after learning that changes in the market required WesCorp

7   to purchase increasingly risky MBS investments in order to maintain the same

8   amount of investment income, let alone increase it.  To obtain the investment

9   income required by its budget, WesCorp increasingly purchased MBS based on

10  Option ARM mortgage collateral and lower tranche MBS, both of which were

11  relatively riskier than most of WesCorp's private label MBS.  Nonetheless, the

12  Directors did not consider the imposition of concentration limits for those types of

13  MBS, despite their inherent riskiness, and they did not inform themselves about (or

14  require WesCorp's management to track) the growing concentrations of these types

15  of securities in WesCorp's investment portfolio.  As a result largely of its

16  investments in Option ARM and lower tranche MBS, WesCorp was required to

17  recognize losses of $6.8 billion in 2009 and it failed.[1]

18      These alleged facts and the inferences that may fairly be drawn from them

19  rebut any presumption that the business judgment rule insulates the Directors'

20  conduct in this case.  Nothing in the First Amended Complaint compels the

21  conclusion that the Directors' alleged acts and omissions were the result of each of

22  the Directors acting with the care required by Section 7231 and relying on

23  information provided in accordance with that statute.  The Directors' arguments that

24  the allegations of the First Amended Complaint are not sufficient to overcome the

25  presumption are based on a selective distillation of those allegations, drawing

26  inferences in favor of the Directors and not in favor of the NCUA.  Under the

27

28

[1] On October 1, 2010, the NCUA Board ordered WesCorp to be placed into liquidation.

1 | standards applicable to motions under Rule 12(b)(6), the Directors' motion to
2 | dismiss the breach of fiduciary duty claim must be denied.

3 |     The other pleading deficiencies the Directors assert for the breach of fiduciary
4 | duty claim are likewise meritless.  Breach of fiduciary duty by directors does not
5 | require an enhanced pleading standard or allegations that the conduct at issue was
6 | irrational or overreaching or that it violated the duty of loyalty.

7 |     Burrell's contentions that as an officer of WesCorp he is entitled to the
8 | protection of the business judgment rule and that the First Amended Complaint does
9 | not sufficiently allege his involvement are both incorrect.

10 |     Second, the moving defendants contend that the NCUA's statutory claim for
11 | gross negligence under 12 U.S.C. § 1787(h) cannot be brought in California because
12 | (1) the liability standard under California is stricter than gross negligence and (2)
13 | California does not recognize the tort of gross negligence.  Section 1787(h)
14 | authorizes the NCUA to bring damages claims for breach of a gross negligence
15 | liability "floor" against credit union directors and officers.  The moving defendants'
16 | contentions that the NCUA cannot bring this statutory claim in California are not
17 | supported by the language of the statute, and they run counter to the legislative
18 | intent of the statute as recognized by the United States Supreme Court.

19 |     The moving defendants also contend that the First Amended Complaint does
20 | not allege facts establishing gross negligence.  Whether the acts and omissions
21 | alleged in the First Amended Complaint rise to the level of gross negligence as
22 | alleged is an issue of fact, to be determined on the evidence and not the pleadings.

23 |     Third, three directors contend that the applicable limitations periods for the
24 | First and Second Claims for Relief are two or three years; they expired before
25 | WesCorp failed; and the claims cannot be resurrected.  These directors acknowledge
26 | the binding Ninth Circuit case law holding that the limitations period for the breach
27 | of fiduciary duty claim is four years, making that claim timely for all defendants.
28 | The statute of limitations for the Section 1787(h) claim is set by federal law, not

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO DIRECTORS'
MOTION TO DISMISS

1  state law. That claim is not subject to the "no-resurrection" rule because it was not a

2  claim assigned by WesCorp by operation of law. It is therefore also timely.

3       The thrust of the Directors' motion is that the Directors were well meaning

4  and diligent volunteers whom the NCUA has made scapegoats because it needs

5  someone to blame. The NCUA respectfully submits that the evidence will prove

6  otherwise. This will be one of the issues to be determined at trial. It cannot be

7  decided as a matter of law based on the allegations of the First Amended Complaint.

8  **THE ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

9       WesCorp was the largest non-profit "retail" corporate credit union in the

10 United States. First Amended Complaint ("FAC") ¶¶ 24, 37. A retail corporate

11 credit union is a non-profit credit union whose members are themselves credit

12 unions. *Id.* Profit maximization was not WesCorp's mission, and its structure was

13 designed to maximize member service over profits. FAC ¶ 40. WesCorp provided

14 its members a place to prudently invest their excess funds, a variety of "back office"

15 banking services and a ready source of liquidity. FAC ¶ 39. WesCorp's members,

16 particularly its many small credit union members, depended on WesCorp for

17 services, liquidity and safe investment of excess funds. FAC ¶ 42-43.

18      In about 2002, WesCorp embarked on an aggressive plan to increase the yield

19 in its investment portfolio by purchasing an increasing amount of private label

20 MBS, rather than less risky U.S. agency securities. FAC ¶ 50. From December

21 2002 to December 2007, the concentration of U.S. agency MBS in WesCorp's

22 investment portfolio dropped from 17% to 4% while the concentration of higher-

23 yielding private label MBS increased from 72% to almost 95%. *Id.*

24      To further increase investment income, WesCorp borrowed substantial sums

25 of money to purchase additional private label MBS. FAC ¶ 49. Between January

26 2002 and January 2004, WesCorp's borrowings increased from $420 million to

27 $1.28 billion. From January 2004 to November 2008, WesCorp's borrowings

28 increased 472% to $7.3 billion. *Id.*

1   Although WesCorp increased the investment risk in its portfolio as it

2   increased its investment income, it did not increase its capital base to compensate.

3   FAC ¶ 51.  Its officers used the increased investment income to justify substantial

4   increases in compensation for WesCorp's top executives, including an increase in

5   the salary and bonus compensation of defendant Robert A. Siravo ("Siravo") from

6   $350,000 (annualized) in 2002 to almost $992,000 in 2008.  FAC ¶ 53.

7   Each year, the Officer Defendants proposed and the Director Defendants

8   adopted a budget for WesCorp for the following year.  FAC ¶ 65.  The budgets

9   directed that WesCorp increase the investment yield and income earned by its

10  portfolio.  FAC ¶ 66.  However, the Directors adopted the budgets without any

11  information about how the composition of WesCorp's investment portfolio would

12  need to change to achieve the net interest income projected in the budgets.  FAC ¶

13  65.  The directors thus adopted budgets directing WesCorp's management to earn

14  increasingly aggressive yields on its investment portfolio without the information

15  necessary to weigh the increased risk against the increased income being generated.

16  Burrell and WesCorp's Investment Department were responsible for ensuring that

17  WesCorp's investments earned the returns required to meet WesCorp's budget for

18  investment income and net interest income.  FAC ¶ 67.

19  During the same period, the investment spreads were shrinking for the

20  securities WesCorp was purchasing, and the yields for any particular level of risk

21  were decreasing.  FAC ¶ 55.  WesCorp was therefore required to purchase

22  increasingly risky MBS to obtain the income required by its budgets.  It did so by

23  purchasing large numbers of Option ARM MBS.[2]  FAC ¶ 56, 60.  WesCorp began

24

---

[2]   Option ARM MBS are based on Option ARM loans, which allow the borrower to
25  make substantially below-market monthly payments for the first years of the loan, after
    which the monthly payments "reset" and increase drastically, frequently more than
26  doubling.  Many Option ARM loans were made without verifying the borrower's
    ability to make the monthly payments.  Many were made to borrowers who could try
27  afford the initial below-market monthly payments but not the regular monthly payment
    due after the loan reset.  FAC ¶ 59.
28

purchasing Option ARM MBS in 2005.  In 2006, 47% of its investment portfolio purchases were Option ARM MBS.  By 2007, that number had risen to 57%, and Option ARM MBS made up 37% of WesCorp's investment portfolio.  FAC ¶ 60.

WesCorp also increased the risk in its portfolio by purchasing MBS from lower tranches, which would absorb any losses in the mortgage pools before the higher tranches and therefore had a higher risk and paid a higher yield.  FAC ¶ 61. In 2002, more than 95% of the MBS WesCorp purchased were from a "senior" or higher tranche.  By 2007, the percentage had dropped to less than 50%.  FAC ¶ 63.

The Directors were charged with adopting prudent concentration limits to ensure that WesCorp's investment portfolio was properly diversified.  FAC ¶ 68. From 2004 on, WesCorp's private label MBS concentration limits were meaningless – they were so high that they permitted WesCorp to invest its entire portfolio in that one form of security.  FAC ¶ 69.  In addition, the Directors never considered or adopted any concentration limits for Option ARM MBS, a new form of MBS that WesCorp was purchasing heavily.  FAC ¶ 71.  The Directors did not require or obtain information allowing them to monitor the concentration of Option ARM MBS in WesCorp's investment portfolio.  *Id.*  Similarly, they did not require or obtain the information required to monitor the concentration of MBS by tranche position.  *Id.*  Without such tracking and reporting, WesCorp and the Directors were unable to monitor or control the risks posed by the concentration of Option ARM MBS and lower tranche MBS in WesCorp's portfolio.  FAC ¶¶ 71-72.

Beginning as early as March 2005 and continuing through 2006, the Directors were informed that (1) investment spreads were tightening significantly, FAC ¶ 75; (2) "good" investments were becoming increasingly hard to find, *id.*; (3) interest rates were beginning to rise, FAC ¶ 77; and (4) housing activity was slowing, *id.* Notwithstanding these trends, the Directors took no steps to curtail WesCorp's purchases of Option ARM MBS or lower tranche MBS.  *Id.*

1   WesCorp was required to recognize investment losses of $6.872 billion as of

2   December 31, 2008.  Of these losses, more than $4.683 billion resulted from Option

3   ARM MBS WesCorp purchased in 2006 and 2007.  Had WesCorp imposed the

4   same concentration limit on its Option ARM MBS as it did on its CDO MBS,

5   another form of risky MBS, its losses on those securities would have been limited to

6   less than $200 million.  FAC ¶ 80.

7   The First Amended Complaint alleges that the Directors breached their

8   fiduciary duty of care by, among other things, embarking on a growth and

9   investment strategy dependent on massive borrowing without any information on

10  the increased risks it created; failing to impose a meaningful concentration limit for

11  investments in private label MBS; failing to impose any concentration limits on

12  WesCorp's investments in particular forms of MBS, including Option ARM MBS;

13  failing to monitor or impose concentration limits on WesCorp's investments in

14  lower tranche position private label MBS; raising concentration limits and setting

15  and approving budgets based on desired yield without consideration of the attendant

16  risks; failing to reevaluate WesCorp's strategy of investing heavily in private label

17  MBS in light of changing economic conditions; and allowing WesCorp to develop a

18  large concentration of Option ARM MBS in its investment portfolio.  FAC ¶ 114.

19  The First Amended Complaint alleges that the Directors and Officers were

20  grossly negligent (1) in allowing WesCorp to pursue a highly leveraged strategy of

21  investing in private label MBS without understanding the risks of a high

22  concentration of such securities in its portfolio and without taking steps to mitigate

23  those risks through appropriate concentration limits and investment policies; (2) in

24  essentially ignoring the prospect that real estate values could decline; and (3) in

25  acts and omissions that are also alleged to be breaches of the fiduciary duty of care.

26  FAC ¶¶ 120, ¶121.

27

28

## APPLICABLE LEGAL STANDARD

Dismissal under Rule 12(b)(6) for failure to state a claim is warranted only where the complaint does not allege a claim supported by a cognizable legal theory or if the complaint does not allege sufficient facts in support of a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all of the factual allegations set out in plaintiff's complaint and draw inferences from those allegations in the light most favorable to plaintiff. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, amended on other grounds, 275 F.3d 1187 (9th Cir. 2001). If a complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the complaint survives a motion to dismiss. *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Motions to dismiss for failure to state a claim are therefore rarely granted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

## LEGAL ARGUMENT

### I. THE BUSINESS JUDGMENT RULE DOES NOT ELIMINATE THE BREACH OF FIDUCIARY DUTY CLAIM AGAINST THE DIRECTORS.

#### A. Section 7231 Imposes A Duty Of Care On Directors.

The part of the California business judgment rule that imposes personal liability on directors is codified in California Corporations Code § 309 for for-profit corporations and in California Corporations Code § 7321 for nonprofit mutual benefit corporations.[3] Corporations Code § 7231 applies in this case.[4]

---

[3] The business judgment rule has a second component that "shield[s] from scrutiny qualifying decisions made by a corporation's board of directors." *Lamden v. La Jolla Shores*, 21 Cal. 4th 249, 257, 259 (1999); *Lee v. Interinsurance Exchange of the Automobile Club of Southern California*, 50 Cal. App. 4th 694, 714 (1996). That component is not at issue in this motion.

[4] Under California Financial Code § 14002.5, California's Nonprofit Mutual Benefit Corporation Law is generally applicable to credit unions.

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO DIRECTORS'
MOTION TO DISMISS

1   Section 7231 does three things.  First, subdivision (a) imposes a duty to act

2   "with such care, including reasonable inquiry, as an ordinarily prudent person in a

3   like position would use under similar circumstances."  Second, subdivision (b)

4   entitles a director to rely on certain information furnished by others specified in the

5   statute, provided "the director acts in good faith, after reasonable inquiry when the

6   need therefor is indicated by the circumstances and without knowledge that would

7   cause such reliance to be unwarranted."  Finally, subdivision (c) insulates from

8   liability any person "who performs the duties of a director in accordance with

9   subdivisions (a) and (b)."

10   The business judgment rule, as codified in Section 309 (and 7231)

11   "incorporates the concept of a director's immunity from liability for an honest

12   mistake of business judgment with the concept of a director's obligation of

13   reasonable diligence in the performance of his or her duties."  *Gaillard v. Natomas*,

14   208 Cal. App. 3d 1250, 1264 (1989).  Section 7231 thus protects disinterested

15   directors against liability for carefully made decisions that turn out badly.  It does

16   not eliminate directors' liability for breach of the duty of care.

17   In their motion, the Directors studiously ignore the duty of care imposed by

18   Section 7231(a).  They assert that the California business judgment rule "insulates

19   directors from liability for simple negligence," and creates a presumption of sound

20   business judgment that "can be rebutted only by a factual showing of fraud, bad

21   faith or gross overreaching."  Motion at 7:4-5.  The cases relied on by the Directors

22   do not read the duty of care out of Section 7231 or Section 309.

23   To the contrary, while the Directors cite *FDIC v. Castetter*, 184 F.3d 1040

24   (9th Cir. 1999), for the proposition that the business judgment rule insulates

25   directors from simple negligence, Motion at 7:4-8, the case in fact holds that the

26   California business judgment rule "requires directors to act in good faith and with

27   the prudence that an ordinary person would under like circumstances.  However, it

28   also entitles a director to rely on information supplied by others."  *Id.* at 1044.  The

1  other case relied on by the Directors, *Ritter & Ritter Pension & Profit Sharing Plan*

2  *v. Churchill*, 166 Cal. App. 4th 103, 123 (2008) was an action for an injunction

3  against an association, which did not implicate Section 309 or Section 7231.

4     *Berg & Berg Enters., LLC v. Boyle*, 178 Cal. App 4th 1020 (2008), also holds

5  that the duty of care applies to directors notwithstanding the business judgment

6  rule.[5]  The court recognized that the rule does not shield failure to make reasonable

7  inquiry – a breach of the duty of care. *Id.* at 1045.  By holding that "***in most cases***

8  'the presumption of the business judgment rule can be rebutted only by affirmative

9  allegations of facts which, if proven, would establish fraud, bad faith, overreaching

10 or an unreasonable failure to investigate material facts,'" *id.* at 1046 (emphasis

11 added), the court recognized that failure to investigate is not the only breach of the

12 duty of care actionable under the business judgment rule.

13    **B.    The Business Judgment Rule Does Not Require Enhanced Pleading**.

14    The Directors suggest that the business judgment rule creates an enhanced

15 pleading standard for claims for damages against directors.  Motion at 8:12-14.

16 However, claims for damages against directors are not special matters subject to

17 Fed. R. Civ. P. Rule 9.  Rather, such claims are subject to Rule 8(a)(2), requiring a

18 short and plain statement of the claim, and, under *Ashcroft v. Iqbal*, *supra* at 1949,

19 and *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555-56 (2007), requiring further

20 that sufficient factual matter be pled to state a claim for relief that is plausible on its

21 face.  *Berg & Berg*, the case relied on by the Directors, reflects these principles (as

22 applied in state court) rather than any enhanced pleading standard.  *See* 178 Cal.

23 App. 4th at 1046-7.[6]

24

---

25  [5]    The portion of *Berg & Berg* discussing the business judgment rule is an alternative
26 holding of the case.  The primary holding was that directors owe no fiduciary duties to
   creditors of a corporation in the zone of insolvency other than those imposed by the
   trust fund doctrine. *Id. at 1041.*

27  [6]    The complaint alleged "not facts but the conclusion that the board simply did
28 nothing by way of investigation of alternatives to the assignment" for the benefit of
   creditors. *Id.* at 1046.  The facts actually alleged in the complaint – the company being

C.   **Application Of The Standard Of Care Is An Issue Of Fact.**

In general, the issues relating to application of the standard of due care are for the finder of fact.  Under California law, determining what constitutes due care in any particular case, and whether or not a breach of a duty of due care has occurred, is a question of fact for the jury, which must view the conduct as a whole in the light of all the circumstances.  *Brummett v. County of Sacramento,* 21 Cal. 3d 880, 887 (1978); *Laird v. T. W. Mather, Inc.,* 51 Cal. 2d 210, 215-216 (1958).  Put differently, it is for the jury to determine: (1) how a reasonably prudent person would have acted under the circumstances presented; and (2) whether the defendant's conduct conformed to that standard.  *Laird,* 51 Cal. 2d at 215-216; *see Pool v. City of Oakland*, 42 Cal. 3d 1051, 1061 (1986) (the trier of fact determines whether a defendant's conduct satisfies the applicable standard of care); *Barber v. Chang*, 151 Cal. App. 4th 1456, 1463 (2007) (the elements of breach of duty and causation are ordinarily questions of fact for the jury's determination).

The Directors assert that the business judgment rule requires the Court to focus on the process by which the directors made their decisions rather than the content of the decisions.  Motion at 9:16-10:20.  Because the business judgment rule insulates directors from liability for prudently made decisions, claims alleging breach of the duty of care must usually consider the decision making process to establish lack of prudence.  However, that fact does not render the content of the decision irrelevant, when evaluated as of the time it was made and not in hindsight.

The business judgment rule does not change the inherently factual nature of the standard of care: "as an ordinarily prudent person in a like position would use under similar circumstances."  Not surprisingly, therefore, other than *Berg & Berg*,

in the zone of insolvency and director's knowledge of the alternative to the assignment favored by the plaintiff creditor – "do not, without more, rebut the presumption" of the business judgment rule because directors do not owe a fiduciary duty to creditors when their corporation is in the zone of insolvency and the plaintiff did not plead facts suggesting that the investigation of alternatives would have made the decision to assign for the benefit of creditors unreasonable. *Id.* at 1046-1047.

1    none of the cases cited by the Directors in which courts dismissed complaints under

2    the business judgment rule sought damages for breach of the duty of care under

3    Corporations Code § 309 or § 7231. *See* Motion at 9:7-14.[7]

4        Further factual development is particularly important to determine the

5    applicability of the business judgment rule in this case. First, there is very little case

6    law discussing the application of Section 7231 outside of the homeowners

7    association context. Second, the policy considerations relevant to nonprofit mutual

8    benefit corporations differ significantly from those applicable to for-profit

9    corporations under Section 309. For the latter, the business judgment rule

10    "'recognizes that shareholders to a very real degree voluntarily undertake the risk of

11    bad business judgment; investors need not buy stock, for investment markets offer

12    an array of opportunities less vulnerable to mistakes in judgment by corporate

13    officers.'" *Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 507 (1986) at

14    n. 14, citation omitted; *Lamden* 21 Cal. 4th at 259. For a for-profit corporation, the

15    essence of the business judgment for directors is deciding how a company will

16    evaluate the trade-off between risk and return, and their ability to earn returns for

17    investors by taking business risks would be crippled by imposing liability on

18    directors for making a "wrong" decision. *See In re Citigroup Inc. Shareholder*

19    *Derivative Litig.,* 964 A. 2d 106, 126 (Del. Ch. 2009).

20        The considerations are different for a nonprofit credit union such as WesCorp.

21    WesCorp's members were not investors voluntarily buying shares in WesCorp in

22    hopes that they could profit from the business risks WesCorp took. They were

23    generally small credit unions looking for banking services, a borrowing source and a

---

[7]      In *Barnes v. State Farm Mut. Auto. Ins. Co.*, 16 Cal. App. 4th 365 (1993), *Lee v. Interinsurance Exchange of the Auto. Club of So. Cal.*, 50 Cal. App. 4th 694 (1996), and *Fairchild v. Bank of America,* 192 Cal. App. 2d 252 (1961), the plaintiffs sought declaratory or injunctive relief to force corporate action. *McMichael v. United States Filter Corp.*, 2001 U.S. Dist LEXIS 3918 (C.D. Cal. 2001), applied Delaware law and invoked the exculpatory clause in the certificate of incorporation. *Id.* at *49. In *Findley v. Garrett,* 109 Cal. App. 2d 166 (1952*),* the complaint was dismissed for insufficient allegations of fraud.

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO DIRECTORS'
MOTION TO DISMISS

1    safe place to keep their excess funds.  FAC ¶¶ 39, 43.  Nor was WesCorp

2    capitalized like a for-profit financial institution.  The corporate mandate for its

3    directors was not to earn greater return by taking shrewd investment risk, but to

4    provide effective funds management and services to benefit its members.  FAC ¶ 41.

5          Given WesCorp's nonprofit status and its role of safeguarding its members'

6    funds, the case law applying the business judgment rule to for-profit companies does

7    not completely define the duty of care for WesCorp's directors.  The contours of

8    that duty must be developed though an analysis of the facts of the case under the

9    standard imposed by Section 7231.

**D.    The First Amended Complaint States A Claim For Breach Of Fiduciary Duty Notwithstanding The Business Judgment Rule.**

12         The facts alleged in the First Amended Complaint and the reasonable

13   inferences that can be drawn from them permit a fact finder to determine that the

14   Directors breached the standard of care prescribed in Section 7231 by: (1) departing

15   from WesCorp's traditional, conservative business model and seeking substantial

16   increases in investment portfolio income, without considering the additional credit

17   risk that WesCorp was taking, or the safeguards or controls that would be required

18   to mitigate it; (2) not considering or informing themselves of the increasing level of

19   risk that was being created in WesCorp's investment portfolio by the increasingly

20   large amounts of investment income the Directors were budgeting; (3) continuing,

21   without further deliberation, to direct WesCorp to obtain higher investment income,

22   even after receiving information in 2005 and 2006 that investment spreads were

23   tightening and that increasingly risky investments were therefore required to obtain

24   the same yield and portfolio income; (4) setting concentration limits for private label

25   MBS that would allow WesCorp to invest its entire portfolio in those securities; (5)

26   not considering the imposition of concentration limits for Option ARM MBS despite

27   the inherent riskiness of the Option ARM collateral on which they were based and

28   the growing concentration of such securities in WesCorp's portfolio; and (6) not

1  requiring the reporting of the concentration of Option ARM MBS and lower tranche

2  MBS in WesCorp's investment portfolio.

3       Nothing in the First Amended Complaint establishes as a matter of law that

4  these failures by the Directors to inform themselves, to deliberate about their actions

5  and to set meaningful concentration limits were merely poor outcomes from

6  otherwise prudently-made business judgments.  Nothing establishes that they were

7  the result of a diligent decision-making process or that the Directors made

8  reasonable inquiry prior to these acts and omissions.  To the contrary, the thrust of

9  the NCUA's allegations is that the Directors failed to exercise the care of an

10  ordinarily prudent person in these acts and omissions.  Because nothing in the First

11  Amended Complaint affirmatively establishes that the Directors did not breach the

12  duties prescribed by Section 7231, the First Claim For Relief cannot be dismissed

13  pursuant to Rule 12(b)(6) under the business judgment rule.

14       **E.**      **The Directors' Assertions Of Pleading Defects Are Meritless.**

15
16              **1.**      **The NCUA Need Not Allege Irrational Or Overreaching Conduct Or Violation Of The Duty Of Loyalty.**

17       The Directors contend that the First Claim For Relief is barred because it

18  "does not allege that the content of Defendants' business decisions was irrational or

19  gross overreaching," Motion at 11:4-5, and because it "does not allege fraud, bad

20  faith or conflicts of interest," Motion at 12:15.  Nothing in either the language of

21  Section 7231 or the cases construing it suggests that acts or omissions of directors

22  satisfy the duty of care unless they are irrational or overreaching.[8]  The rationality

23  threshold invoked by the Directors was enunciated in *Katz v. Chevron Corporation*,

24  22 Cal. App. 4th 1352, 1367 (1994), a case applying Delaware law, not California

25  law.  "Overreaching" is material to the duty of loyalty, not the duty of care.

26  ───────────────

[8]    Of the two cases cited by the Directors, *Castetter* does not hold or suggest that

27  liability under Section 309 requires proof that directors did not believe that they were acting in the best interests of the corporation, *Id.* at 1044, and *Ritter & Ritter* did not

28  involve damages claims against directors at all.  166 Cal. App. 4th at 125.

1    Similarly, nothing in Section 7231 requires allegations of fraud, bad faith or

2   conflicts of interest – breaches of the duty of loyalty – in order to state a claim for

3   breach of the duty of care.  While the First Amended Complaint does not allege

4   breaches of the duty of loyalty against the Directors, it also nowhere alleges that the

5   Directors "are simply good citizens who tried their best to oversee the management

6   of the money their own credit unions had entrusted to WesCorp."  Motion at 12:21-

7   23.  Rather, the NCUA expects the evidence to show that some of the directors were

8   CEOs of large sophisticated credit unions that benefited from WesCorp's subsidy of

9   its "back office" services.  These facts and the effects of the benefit on the CEOs

10   personally are facts to be developed in discovery.  They are not allegations

11   necessary to state a claim for breach of the duty of care.

12    Notwithstanding the arguments of the Directors, Motion at 11:28-12:8,

13   nothing suggests that the actions of directors of a nonprofit corporation must be

14   secret or unlawful to create liability for breach of the duty of care.  There is some

15   limit to the risks that directors can prudently cause a credit union to take.  Directors

16   causing those risks are not insulated from liability simply because the risks are not

17   kept secret and do not happen to violate statutes or regulations.

18    In asserting that all the First Amended Complaint alleges is "a disagreement

19   about . . . how much risk to bear and how much reward to seek," Motion at 11:13-

20   15, the Directors simply ignore the material allegations.  In invoking Delaware law

21   governing for-profit corporations to assert that the "core protections" of the business

22   judgment rule are "designed to allow corporate managers and directors to pursue

23   risky transactions without the specter of being held personally liable," the Directors

24   ignore the role of WesCorp as a nonprofit, thinly capitalized service organization for

25   its credit union members.

26

27

28

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO DIRECTORS'
MOTION TO DISMISS

1    **2.    The Directors' Assertions About Their Conduct Raise Issues
2    For Trial, Not This Motion To Dismiss.**

3         The Directors contend that the "process" allegations in the First Amended

4    Complaint do not overcome the business judgment rule because (1) they do not

5    allege lack of a reasonable inquiry; (2) they admit actions that show the claimed

6    diligence of the Directors, and (3) they do not mention that WesCorp had expanded

7    investment authority and purchased only securities whose ratings were above the

8    minimum ratings permitted under that authority. Motion at 13:1-16:21. These

9    contentions are based on the Directors' selective and restrictive interpretation of the

10   allegations of the First Amended Complaint. They ignore those allegations taken as

11   a whole with all permissible inferences drawn in favor of the NCUA.

12        Lack of reasonable inquiry can be reasonably inferred from the allegations of

13   the First Amended Complaint. Moreover, it is not the only requirement of the duty

14   of care prescribed in Section 7231. A director must perform his duties "with such

15   care, *including* reasonable inquiry, as an ordinarily prudent person in a like position

16   would use under similar circumstances." Subdivision (a), emphasis added.

17        The "admissions" of Director diligence are largely based on inferences the

18   Directors choose to draw from the allegations, many contradicted by other

19   allegations. Specifically:

20        (1)    Nothing in the First Amended Complaint alleges that the Directors "set,

21   monitored and followed appropriate concentration limits." Motion at 13:16-17.

22   Rather, the First Amended Complaint alleges that WesCorp's concentration limits

23   for private label MBS were not appropriate and that the Board should have imposed

24   concentration limits on Option ARM MBS. Nor does the First Amended Complaint

25   allege that WesCorp ceased MBS purchases long before most on Wall Street. *Id.*

26   13:19-20. The NCUA expects the evidence to show that purchases ceased only a

27   few months before the market froze for private label MBS.

28

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO DIRECTORS'
MOTION TO DISMISS

1       (2)    The First Amended Complaint does not allege that WesCorp "used the

2  bond rating of investments to track tranche positions." *Id.* 13:22-23. To the

3  contrary, the cited paragraphs allege that WesCorp did not track either concentration

4  of Option ARM MBS or concentration by tranche position. While paragraph 72

5  does allege that WesCorp did not require the latter "except by bond rating," no

6  allegation suggests that bond rating effectively tracks concentration by tranche

7  position. The NCUA expects the evidence to show that it does not.

8       According to the Directors, the First Amended Complaint does not suggest

9  that WesCorp should have tracked WesCorp's Option ARM and lower-tranche MBS

10  concentrations. Motion at 16:4-7. The NCUA alleges that both forms of MBS were

11  riskier than other MBS; that concentrations of both became significant; and that the

12  losses caused by these investments destroyed WesCorp. FAC ¶ ¶ 59-64, 78. These

13  allegations justify an inference the concentrations should have been tracked.

14       (3)    Despite the Directors' contrary assertions, Motion at 13:24-27, the First

15  Amended Complaint alleges that the budgets contained "very little information

16  about the proposed projected investment income, investment expense and net

17  income interest." FAC ¶ 65. It also alleges that the Directors "were not provided

18  any information about how the composition of WesCorp's investment portfolio

19  would need to change to achieve the net interest income projected in the budgets."

20  FAC ¶ 65.

21       The Directors characterize these allegations as "nitpicking." Motion at 15:25.

22  Similarly, they minimize the allegations that the directors did not seek or receive

23  critical investment information by asserting that "[e]specially in hindsight, any

24  management report could be improved." Motion at 16:8. Whether the information

25  shortcomings alleged by the NCUA are "nitpicking" and normal institutional

26  imperfections or rather were part of the Directors' fundamental failure to prudently

27  govern the affairs of WesCorp is an issue to be resolved at trial.

28

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO DIRECTORS'
MOTION TO DISMISS

1        (4)    The First Amended Complaint does not allege that the Directors

2 "received and considered presentations on Option ARM MBS" or that they took any

3 affirmative steps to adjust WesCorp's investment strategy based on that information,

4 as the Directors contend. Motion at 14:3-6. It alleges that "the Investment

5 Department reported at the ALCO meetings that it was purchasing significant

6 quantities of Option ARM MBS," FAC ¶ 76, and that "WesCorp curtailed its

7 purchase of AA rated MBS." FAC ¶ 77. However, it does not allege that the

8 curtailing of AA MBS purchases was a reaction to the information about large

9 purchases of Option ARM MBS, and the NCUA expects the evidence to show that it

10 was not.

11        Neither the fact that the ratings on WesCorp's MBS were higher than the

12 regulatory minimums nor the fact that WesCorp was granted expanded investment

13 authority establish that the Directors acted with the prudence required by Section

14 7231. If anything, the fact that WesCorp sought and was granted permission to take

15 greater investment risk imposed upon the Directors a greater obligation to ensure

16 that that risk was managed prudently. The NCUA policies cited by the Directors,

17 12 C.F.R. § 703 and 12 C.F.R. § 704, assign the responsibility to enact and enforce

18 prudent investment and concentration policies to credit union directors. While the

19 NCUA is basing its claims against the Directors on their imprudent acts and

20 omissions rather than regulatory violations, the regulations play a role in defining

21 the contours of the Directors' duty of care in this case.

22        Finally, the Directors mischaracterize the allegations of the First Amended

23 Complaint by asserting that it reflects "condescension about Defendants'

24 understanding." Motion at 16:22-17:2. The allegations the Directors cite allege

25 failure to act and failure to make reasonable inquiry. They allege nothing about

26 understanding. Nor does *Castetter*, the case Directors invoke, hold that lack of

27 understanding is, *ipso facto* protected by the business judgment rule. In *Castetter*,

28 the Ninth Circuit affirmed summary judgment because the FDIC did not rebut the

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO DIRECTORS'
MOTION TO DISMISS

1   directors' *prima facie* showing of reasonable investigation, and the allegations that

2   the directors did not comprehend their business were irrelevant to that issue.

3   *Castetter*, 184 F.3d at 1045.

4         In this case, whether the Directors' actions challenged here were taken in

5   good faith reliance on information provided by WesCorp's officers, "after

6   reasonable inquiry when the need therefor is indicated by the circumstances and

7   without knowledge that would cause such reliance to be unwarranted" will be a

8   disputed issue of fact.  The allegations of the First Amended Complaint would

9   permit a fact finder to determine that the challenged acts and omissions of the

10  Directors were not insulated from liability by the reasonable inquiry and good faith

11  reliance provisions of Section 7321.

12  **II.   THE FIRST AMENDED COMPLAINT STATES A CLAIM AGAINST**

13  **BURRELL FOR NEGLIGENCE.**

14        The First Amended Complaint alleges that Burrell was an Executive Vice

15  President and the Chief Investment Officer for WesCorp and was responsible for

16  WesCorp's investment portfolio and for ensuring that WesCorp's investments

17  earned the returns required to meet its budget for investment income and net interest

18  income.  FAC ¶¶ 8, 67.  It alleges that as an Officer Defendant, Burrell failed to

19  propose any concentration limits for Option ARM MBS, failed to track and report

20  concentrations of Option ARM MBS and lower tranche MBS in WesCorp's

21  portfolio and thereby failed to provide the board with sufficient information to

22  control concentration risk.  FAC ¶¶ 70-71, 73.  These alleged facts are sufficient to

23  state a claim against Burrell.

24        Notwithstanding Burrell's contention, the protection of the business judgment

25  rule does not extend to corporate officers under California law.[9]  Both Section 7321

26  _____

27  [9]    The case relied on by the Directors, *McMichael v. United States Filter Corp.*, 2001
      U.S. Dist. Lexis 3918 (C.D. Cal. Feb. 23, 2001) applied Delaware law, not California

28  law.

1    and Section 309 explicitly apply only to directors.  An officer may be liable for

2    conduct that a director would not be liable for, since the premise of the business

3    judgment rule is that disinterested directors are presumably acting in the best

4    interests of the corporation.  *See Gaillard v. Natomas*, 208 Cal. App. 3d 1250, 1265

5    (1989).  [See NCUA's Opposition to Siravo and Swedberg's Motion to Dismiss

6    18:23-19:26.]

7    **III.     THE CLAIM FOR VIOLATION OF 12 U.S.C. § 1787(h) IS VIABLE.**

8            **A.     Section 1787(h) Creates An Independent Federal Claim For Damages.**

9            The moving defendants argue that 12 U.S.C. § 1787(h) does not apply in

10   California because (1) California law sets a lower liability standard than gross

11   negligence; and (2) California does not recognize a claim for gross negligence.

12   Motion at 18:14-19:7.  Neither argument is supported by authority, and both run

13   contrary to the language and purpose of Section 1787(h).

14          Section 1787(h) is the credit union analog to 12 U.S.C. § 1821(k), a statute

15   creating a federal gross negligence claim for the FDIC.  By its terms, Section

16   1787(h) permits the NCUA acting as conservator or liquidating agent to bring a

17   federal claim for damages against directors and officers of credit unions for

18   engaging in gross negligence.  *See FDIC v. McSweeney*, 976 F.2d 532, 537 (9th Cir.

19   1992) ("The first sentence of [12 U.S.C.] § 1821(k) authorizes the FDIC to bring

20   claims alleging gross negligence as a matter of federal law").

21          The moving defendants' argument that Section 1787(h) does not permit such

22   claims in California is based on a sentence in *Atherton v. FDIC*, 519 U.S. 213, 117

23   S. Ct. 666, 136 L.Ed.2d 656 (1997) stating that 12 U.S.C. § 1821(k) "applies as a

24   substitute for state standards that are more relaxed." *Id.* at 214. That sentence,

25   relating to whether state or federal law sets "the standard of care to measure the

26   legal propriety of the defendants' conduct" does not suggest that the FDIC can only

27   bring Section 1821(k) claims in states with director liability standards more relaxed

28   than gross negligence. *Id.*

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO DIRECTORS'
MOTION TO DISMISS

1      The *Atherton* court held that state law simple negligence claims are not

2  preempted by Section 1821(k) because of its savings clause specifying that it does

3  not displace other applicable law. *Atherton* 519 U.S. at 227. If Section 1821(k) or

4  Section 1787(h) simply did not apply when state law imposed a simple negligence

5  standard, there would be no need for the savings clause.

6      The argument that Section 1787(h) does not apply because California does

7  not recognize any general claim of gross negligence is similarly flawed. As

8  *Atherton* observed, section 1821(k) was enacted to set a gross negligence "floor" in

9  response to concern about state legislatures acting to limit the liability of bank

10  officers and directors. *Id.* at 228-229. Under the moving defendants' interpretation,

11  Section 1787(h) would only set a gross negligence floor in states that recognized

12  gross negligence. It would set no floor at all in any state that (1) imposed a more

13  relaxed standard for director liability than gross negligence and (2) did not recognize

14  a claim of gross negligence. *Atherton* makes clear that this interpretation of Section

15  1787(h) must be rejected. Moreover, California recognizes gross negligence as a

16  standard of care when it is required by a statute, as it is in this case.[10]

17

**B.    The Allegations Of The First Amended Complaint Are Sufficient To**
18      **Plead Gross Negligence.**

19      California long ago recognized that a director can be liable for gross

20  negligence. *Fox v. Hale & Norcross Silver Min. Co.*, 108 Cal. 369 (1895) (finding

21  that directors who paid little attention to business operations but entrusted the

22  management of the business to the president and superintendent of the company

23

---

24  [10]  While *Continental Ins. Co. v. Am. Prot. Indus.*, 197 Cal. App. 3d 322, 330 (1987), held that the concept of gross negligence as an independent tort claim had ceased to be

25  relevant, it acknowledged that the standard still exists under various statutes. *Id.* at 330. Similarly, in *Saenz v. Whitewater Voyages, Inc.*, 226 Cal. App. 3d 758, 766 n. 9 (1991),

26  the Court stated in dicta that California does not have a direct claim for gross negligence independent of a statutory basis. *Martinez v. United States*, No. EDCV 09-

27  0375-SVW (RC), 2010 US Dist. Lexis 105763, *20-*21 (CD Cal. Mar. 25, 2010) cited the court's holding in *Saenz* and dismissed an inmates claim for gross negligence

28  because no statutory basis had been pleaded. *Id.* at *22.

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO DIRECTORS'
MOTION TO DISMISS

1    who abused their trust and caused loss and damage to the company warranted

2    finding of gross negligence). *See also, Burt v. Irvine Co.*, 237 Cal. App. 2d 828

3    (1965) (citing *Fox* with approval).

4         California defines gross negligence as: "the lack of any care or an extreme

5    departure from what a reasonably careful person would do in the same situation to

6    prevent harm to oneself or to others." *CACI No. 425. "Gross Negligence"*

7    *Explained*; *City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 754

8    (2007)(Gross negligence defined in California as either a "want of even scant care"

9    or "an extreme departure from the ordinary standard of conduct"); *accord, Van*

10   *Meter v. Bent Construction Co.*, 46 Cal. 2d 588, 594 (1956);;  *Decker v. City of*

11   *Imperial Beach*, 209 Cal. App. 3d 349, 358 (1989)(gross negligence is merely an

12   extreme departure for the ordinary standard of care.)[11]

13        The First Amended Complaint states a claim for gross negligence under the

14   California standard of "an extreme departure from what a reasonably careful person

15   would do in the same situation to prevent harm to oneself or to others.   It alleges

16   that the conduct of the director defendants alleged to breach their duty of care was

17   also grossly negligent, as was their conduct of essentially ignoring the prospect that

18   real estate values could decline, and allowing and encouraging WesCorp to borrow

19   huge sums of money to invest in private label MBS.  FAC ¶¶ 120, 121.

20        Whether particular conduct constitutes gross negligence is generally a

21   question of fact. *Decker*, 209 Cal. App. 3d at 358.  Even when the issue is decided

22   as a matter of law, it is generally in the context of a full factual record.  *See e.g. RTC*

23

24   ---
     [11]   The Delaware "recklessness" standard for gross negligence cited by the moving
     defendants, Motion at 19:19-20:6, as applied in *In re Walt Disney Co. Derivative*
     *Litigation*, 907 A. 2d 693, 750 (Del. Ch. 2005) is not the law in California. *Decker*,
     209 Cal. App. 3d at 358 (Gross negligence requires want of scant care or extreme
     departure for ordinary standard of conduct.); *See also, City of Santa Barbara*, 41 Cal.
     4th at 754, fn. 4 (contrasting "wanton" or "reckless" misconduct with gross
     negligence). Likewise, the Arizona gross negligence standard cited in *RTC v. Blasdell*,
     930 F. Supp. 417, 426 (D. Ariz. 1994) (under Arizona law gross negligence differs
     from ordinary negligence in quality and not degree differs from California's standard.

1   *v. Blasdell*, 930 F. Supp. 417, 426-427 (D. Ariz. 1994) (Summary judgment granted

2   because evidence presented by RTC did not support gross negligence finding,

3   particularly in light of testimony of RTC's expert).  Although the moving

4   defendants contend that the allegations they have culled and interpreted do not

5   amount to gross negligence, the allegations of the First Amended Complaint taken

6   as a whole would permit that finding.

7   　　　The First Amended Complaint alleges that the acts and omissions of the

8   moving defendants caused the failure of the largest retail corporate credit union in

9   the United States.  Whether the alleged conduct was an extreme departure, a

10  departure, or no departure at all from what a reasonably careful person would do to

11  prevent harm to others cannot be determined on the face of the complaint.  It must

12  be evaluated based on the evidence presented in this case.  The motion to dismiss

13  this claim should be denied.

14  **IV.　　THE STATUTES OF LIMITATIONS DO NOT BAR ANY CLAIMS**.

15  　　**A.　　The Limitations Period For The First Claim For Relief Is Four Years**.

16  　　　The NCUA had three years from imposition of the WesCorp conservatorship

17  in March 2009 to bring this action, provided the limitations period had not already

18  run at the time the institution was closed.  *See* 12 U.S.C. § 1787(b)(14)(B)(i); *FDIC*

19  *v. McSweeney,* 976 F.2d 532, 534 (9th Cir. 1992); *FDIC v. Former Officers &*

20  *Directors of Metro. Bank,* 884 F.2d 1304, 1309 n. 4 (9th Cir. 1989)**.**  As the moving

21  defendants concede, the statute of limitations governing this action against directors

22  and officers for breach of their duties to the corporation is the four year limitation

23  period prescribed by California's "catch-all" statute, Code of Civil Procedure § 343.

24  Motion at 22:22-24.  *See, McSweeney* 976 F.2d at 536; *Lehman v. Superior Court,*

25  145 Cal. App. 4th 109, 113 (2006) (applied Section 343 to breach of fiduciary duty

26  claim against directors).

27  　　　The claims against the officers and directors accrued at the time the

28  questionable securities were purchased.  *See FDIC v. Jackson,* 133 F.3d 694, 696-

1   697 (9th Cir. 1998) (limitations period begins to run when questionable loan is

2   made).  Since the NCUA's claims are based on purchases of private label MBS in

3   2006 and 2007, and the conservatorship was imposed in 2009, the claims are timely.

4         **B.**     **The Statute Of Limitations Does Not Bar The Section 1787(h) Claim**.

5      The Directors argue that the Second Claim For Relief is subject either to

6   California's two year state statute of limitations for negligence claims or its three

7   year statute for liabilities created by law.  Motion at 22-24.  Because 12

8   U.S.C. § 1787(h) is a federal statutory claim, however, its limitations period is

9   established by federal law, not by California law.  *King v. United States*, 301 F.3d

10  1270, 1277 (10th Cir. 2002); *Bunnell v. Department of Corrections*, 64 Cal. App.

11  4th 1360, 1369 (1998); *LLP Mortg. v. Bizar*, 126 Cal. App. 4th 773, 777-78 (2005).

12  The applicable statute of limitations is set forth in 12 U.S.C. § 1787(b)(14), which

13  provides that the limitations period for any tort claim brought by the NCUA as

14  conservator or liquidating agent shall be three years after the claim accrues and that

15  the claim accrues upon appointment of the Conservator.

16      While Section 1787(b)(14) cannot resurrect claims that were time-barred as of

17  the date of conservatorship, this rule does not apply to the NCUA's claim under

18  Section 1787(h).  The "no-resurrection" rule is based on the principle that an

19  assignee cannot obtain any greater rights through assignment than the assignor had.

20  *See FDIC v. Former Officers & Directors of Metro. Bank*; *Guaranty Trust Co. v.*

21  *United States*, 304 U.S. 126, 142, 58 S.Ct. 785, 82 L.Ed. 1224 (1938).  The rule

22  applies to any claim the NCUA acquired from WesCorp as a matter of law pursuant

23  to 12 U.S.C. § 1787(b)(2)(A).  However, the Section 1787(h) claim was never

24  owned by WesCorp or transferred to the NCUA, since it can be brought only by the

25  NCUA acting as conservator or liquidating agent.  Since the claim did not accrue

26  until the conservatorship came into existence in 2009, the statute of limitations on it

27  does not run until three years thereafter.

28

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO DIRECTORS'
MOTION TO DISMISS

1

## CONCLUSION

2      For the reasons set forth above, the NCUA respectfully requests that the

3  motion to dismiss brought by the Directors and Burrell be dismissed.

4  DATED:  November 22, 2010    LUCE, FORWARD, HAMILTON & SCRIPPS LLP

                                      MICHAEL H. BIERMAN

5                                       MICHAEL E. PAPPAS

6

7                              By:     /s/ Michael H. Bierman

8                                      Michael H. Bierman

                                      Attorneys For The National Credit Union

9                                      Administration Board As Conservator For

                                      Western Corporate Federal Union

10

11  201078753.8

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO DIRECTORS'
MOTION TO DISMISS