1  BRAD D. BRIAN (State Bar No. 079001)
   Brad.Brian@mto.com
2  RICHARD E. DROOYAN (State Bar No. 065672)
   Richard.Drooyan@mto.com
3  LAURA D. SMOLOWE (State Bar No. 263012)
   Laura.Smolowe@mto.com
4  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
5  Thirty-Fifth Floor
   Los Angeles, CA 90071-1560
6  Telephone: (213) 683-9100
   Facsimile: (213) 687-3702
7
8  Attorneys for Defendants
   Robert A. Siravo and Thomas E. Swedberg
9
10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12
   NATIONAL CREDIT UNION              CASE NO. CV10-01597 GW (MANx)
13 ADMINISTRATION BOARD AS
   CONSERVATOR FOR WESTERN            **REPLY MEMORANDUM OF**
14 CORPORATE FEDERAL CREDIT           **DEFENDANTS SIRAVO AND**
   UNION,                             **SWEDBERG IN SUPPORT OF**
15                                    **MOTION TO DISMISS WITH**
              Plaintiff,              **PREJUDICE COUNTS ONE, TWO,**
16                                    **THREE AND FOUR OF FIRST**
       vs.                           **AMENDED COMPLAINT**
17                                    **PURSUANT TO FED. R. CIV. P.**
   ROBERT A. SIRAVO, TODD M.          **129(B)(6)**
18 LANE, ROBERT J. BURRELL,
   THOMAS E. SWEDBERG,                Judge:    Honorable George Wu
19 TIMOTHY T. SIDLEY, ROBERT H.       Date:     December 20, 2010
   HARVEY, JR., WILLIAM CHENEY,       Time:     8:30 a.m.
20 GORDON DAMES, JAMES P.
   JORDAN, TIMOTHY KRAMER,
21 ROBIN J. LENTZ, JOHN M. MERLO,
   WARREN NAKAMURA, BRIAN
22 OSBERG, DAVID RHAMY and
   SHARON UPDIKE,
23
              Defendants.
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................... 1

II.  ARGUMENT ............................................................................................ 2

A.   The First Amended Complaint Does Not State A Claim for Fraud Or Breach Of Fiduciary Duty .................................................... 2

1.   Plaintiff's Claims Are Based Entirely Upon The November 2, 2007 Memorandum Attached As Exhibit 1 To The FAC ........................................................................... 2

2.   The Purported Misrepresentations In The November 2 Memorandum Are Neither Misleading Nor Material ................ 4

3.   The Purported Misrepresentations Compare Two Different Time Periods ................................................................. 7

4.   The Complaint Does Not Allege A Claim For Constructive Fraud And Such A Claim Would Fail Regardless ......................................................................... 8

5.   Plaintiff's New Argument That The Amended SERPs Used a Different Formula Than The Board Authorized Is Not Alleged In The Complaint .......................................................... 8

B.   The Business Judgment Rule Applies To Siravo ................................ 9

III. CONCLUSION ...................................................................................... 11

- i -

1

# TABLE OF AUTHORITIES

2

**Page**

3

**FEDERAL CASES**

4

*Ashcroft v. Iqbal,*
5
    129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009) ............................................................ 4

6

*Broam v. Bogan,*
7
    320 F.3d 1023 (9th Cir. 2003) ........................................................................... 3, 7

8

*In re Bare Escentuals, Inc. Sec. Litig.,*
    No. C 09-3268 PJH, 2010 WL 3893622 (N.D. Cal. Sept. 30, 2010) .................. 4
9

10

*In re Croton River Club, Inc.,*
    52 F.3d 41 (2d Cir. 1995) ................................................................................... 10
11

12

*Matter of Munford, Inc.,*
    98 F.3d 604 (11th Cir. 1996) ............................................................................... 9

13

*Official Comm. Of Unsecured ex rel. Lemington Home for the Aged v.*
14
    *Baldwin,*
15
    No. 10cv800, 2010 WL 4275252 (W.D. Pa. Oct. 25, 2010) ............................... 9

16

*Quan v. Computer Sciences Corp.,*
17
    623 F.3d 870 (9th Cir. 2010) ........................................................................... 6, 7

18

*Sprewell v. Golden State Warriors,*
19
    266 F.3d 979 (9th Cir. 2001) ........................................................................... 3, 8

20

*The 1849 Condominiums Assoc., Inc. v. Bruner,*
    No. 2:09-cv-03339-JAM, 2010 WL 2557711 (E.D. Cal. June 21, 2010) ........... 8
21

22

*ViChip Corp. v. Lee,*
    438 F. Supp. 2d 1087 (N.D. Cal. 2006) ............................................................ 10

23

**STATE CASES**

24

*Estate of Gump,*
25
    1 Cal. App. 4th 582, 2 Cal. Rptr. 2d 269 (1991) ................................................ 8

26

*Gaillard v. Natomas,*
27
    208 Cal. App. 3d 1250, 256 Cal. Rptr. 702 (1989) .......................................... 10

28

-ii-

# TABLE OF AUTHORITIES
## (cont.)

**Page**

*Levine v. Blue Shield of California,*
   189 Cal. App. 4th 1117, --- Cal. Rptr. 3d ----, 2010 WL 4369797 (Cal. Ct. App. 2010) ................................................................................................. 4, 5

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand,*
   6 Cal. 3d 176, 98 Cal. Rptr. 837 (1971) ........................................................ 4, 5

*Pelligrini v. Weiss,*
   165 Cal. App. 4th 515, 81 Cal. Rptr. 3d 387 (2008) ......................................... 3

*Perlas v. GMAC Mortg., LLC,*
   187 Cal. App. 4th 429, 113 Cal. Rptr. 3d 790 (2010) ....................................... 2

STATUTES AND RULES

Cal. Corp. Code § 7231(c) ............................................................................................ 9

OTHER AUTHORITIES

*Restatement (Second) of Torts* § 538, com. e (1977) ................................................... 5

1

## I.      **INTRODUCTION**

2          The crucial fact at issue in Defendants Siravo's and Swedberg's (collectively,

3   "Defendants") Motion to Dismiss Counts Three and Four of the First Amended

4   Complaint (the "FAC") is *undisputed.*   In proposing changes to WesCorp's

5   Supplemental Executive Retirement Plans ("SERP"), Defendants fully disclosed to

6   WesCorp's Board of Directors ("the Board") the precise nature of the proposed

7   changes to the SERP calculation formula, and the financial impact of the proposed

8   changes.  Notwithstanding Plaintiff's overtones to the contrary, the FAC

9   acknowledges, as it must, that it was no secret that the proposed SERP amendments

10  to include bonuses and incentive pay in the definition of compensation and to

11  increase the tax gross-up to the correct amount would increase the supplemental

12  retirement benefits that Defendants and other WesCorp executives would receive

13  upon their retirements from the company.  There is nothing remarkable, much less

14  sinister or conspiratorial, about any of this, and none of it forms the basis for claims

15  of fraud or a breach of fiduciary duty.

16         That Defendant Swedberg characterized the changes as "administrative"

17  rather than "substantive" is just that ─ a non-actionable characterization or opinion

18  that was entirely immaterial.  It simply cannot form the basis of Plaintiff's claims

19  where, as here, the Board was fully informed about the nature of the changes and

20  the financial implications.

21         Without a real leg to stand on, Plaintiff's Opposition relies upon new theories

22  and allegations not present in the FAC.  Plaintiff must, however, accept the

23  allegations as pled for purposes of opposing a motion to dismiss, and it cannot rely

24  upon allegations not in the FAC.  Although these new allegations may be a reason

25  for the Court to grant Plaintiff leave to amend the complaint (even though they are

26  contradicted by documents they reference), they are not grounds for defeating the

27  motion itself.

28

CASE NO. CV10-01597 GW (MANx)
REPLY TO SIRAVO AND SWEDBERG'S
MOTION TO DISMISS COUNTS

Finally, Plaintiff erroneously claims that the business judgment rule does not apply to Siravo's activities that are the subject of Counts One and Two because he was not a director. The statute that Plaintiff cites makes it clear, however, that where, as here, an officer's activities are indistinguishable from those of directors, he is entitled to the protection of the business judgment rule. Accordingly, Counts One and Two should also be dismissed.

## II. ARGUMENT

### A. The First Amended Complaint Does Not State A Claim for Fraud Or Breach Of Fiduciary Duty

#### 1. Plaintiff's Claims Are Based Entirely Upon The November 2, 2007 Memorandum Attached As Exhibit 1 To The FAC

The crux of Plaintiff's claims for both fraud and breach of fiduciary duty[1] is that Defendants made a material misrepresentation in a memorandum that Swedberg sent to WesCorp's Chairman Robert Harvey on November 5, 2007. (FAC, ¶¶ 93-98, Ex. 1.) In reliance on this memorandum, which was "provided to the board's executive committee (and possibly the board as a whole)," the Board allegedly "approved the amendments to the SERPs and permitted the increased SERP payments to Siravo and Swedberg." (FAC ¶¶93, 134.)

Although the FAC references other documents, they are not the basis for Plaintiff's claims. In summarizing the allegations in the FAC, Plaintiff discusses a PowerPoint presentation that Swedberg prepared, which allegedly contained "false and misleading" statements, (Opp. at 4 (citing FAC ¶ 90)), but it never mentions the

---

[1] Plaintiff's Opposition concedes that its fraud and breach of fiduciary duty claims rise or fall together. (Opp. at 9 & n.3.) (acknowledging that "fiduciary duty underlies all of the claims against Siravo and Swedberg relating to the SERP amendments" and agreeing that "if [they] prove that their disclosures to WesCorp's board fully satisfied their duty of candor and full disclosure, . . .those disclosures would not be actionable as fraud").

CASE NO. CV10-01597 GW (MANx)
REPLY TO SIRAVO AND SWEDBERG'S
MOTION TO DISMISS COUNTS

1  PowerPoint again.  That is because the FAC does not allege that the Board or its

2  representatives ever relied on the PowerPoint.  *See Perlas v. GMAC Mortg., LLC*,

3  187 Cal. App. 4th  429, 434, 113 Cal. Rptr. 3d 790, 794 (2010) (reliance is an

4  element of fraud); *Pelligrini v. Weiss*, 165 Cal. App. 4th 515, 524, 81 Cal. Rptr. 3d

5  387, 397 (2008) (damages *caused by* the breach is an element of breach of fiduciary

6  duty). Indeed, according to the FAC, the Chairman of the Compensation Committee

7  John Merlo allegedly told Swedberg to replace the PowerPoint with a short

8  memorandum.  (FAC ¶ 91.)[2]

9       With respect to the drafts of the "short memo" that Plaintiff alleges in the

10  FAC were "false," (FAC ¶ 92), Plaintiff asserts in its Opposition that they "led to

11  [John Merlo and Robert Harvey's] support of the final resolution and approval of

12  the SERP amendments."  (Opp. at 18.)  But the FAC *does not make those*

13  *allegations.*  Indeed, the FAC does not even allege that anybody ever saw the drafts,

14  much less relied upon them.

15       As a matter of law, this Court may not consider these new allegations here.

16  *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the

17  propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond a complaint to

18  a plaintiff's moving papers, such as a memorandum in opposition to a motion to

19  dismiss" (citation omitted)).  Thus, Plaintiff's argument must focus entirely upon

20

21  _____

   [2] Had Plaintiff actually alleged that anyone had relied on the PowerPoint
22  presentation, Defendants would have attached it to their Motion to Dismiss and
   demonstrated that it contains no misrepresentations.  *Sprewell v. Golden State*
23  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept
   as true allegations that contradict matters properly subject to judicial notice or by
24  exhibit.")  Should the Court allow Plaintiff to amend, Defendants intend to do just
   that.  By way of a proffer, the PowerPoint explains that the "28% shortfall"
25  occurred because executives had in the interim begun to receive bonuses and
   incentive pay.  As this additional income was not accounted for in the definition of
26  compensation, the SERPs "no longer produce[d] 48% income replacement."
   Similarly, in context, the PowerPoint explains that the reason for changing the
27  gross-up was based on "then current thinking." Since the program was initially
   developed, other plans had determined that a 67% tax gross-up was more
28  appropriate and begun to use that number.

the November 2, 2007 memorandum attached as Exhibit 1 to the FAC. (*See e.g.,* Opp. at 12, 14, 16.)

### 2. The Purported Misrepresentations In The November 2 Memorandum Are Neither Misleading Nor Material

Plaintiff must prove that Defendants made a misrepresentation and that the misrepresentation was material. *See Levine v. Blue Shield of California*, 189 Cal. App. 4th 1117, --- Cal. Rptr. 3d ----, 2010 WL 4369797, at *5 (Cal. Ct. App. 2010) (element of fraud is that defendant "must have concealed or suppressed a material fact"); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 189, 98 Cal. Rptr. 837, 845 (1971) (fiduciaries have a duty to disclose all facts "which materially affect [the beneficiary's] rights and interest"). The fundamental problem for Plaintiff is that Exhibit 1 to the FAC demonstrates conclusively that none of Defendant Swedberg's representations were either misleading or material given the information that he provided about the nature and financial impact of the changes. *See In re Bare Escentuals, Inc. Sec. Litig.*, No. C 09-3268 PJH, 2010 WL 3893622, at *10 (N.D. Cal. Sept. 30, 2010) (on a motion to dismiss "the court may consider exhibits attached to the complaint" (citation omitted)).

The allegations in the FAC do not support a claim that Defendants Siravo and Swedberg misrepresented anything to the Board. At best, Plaintiff has alleged conclusory allegations of wrongdoing along with representations by Defendant Swedberg that are transparently immaterial. A complaint fails to state a claim under such circumstances. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50, 173 L.Ed. 2d 868, 894 (2009) (courts, "draw[ing] on . . . judicial experience and common sense," must deny complaints containing only "conclusory statements" and the "mere possibility of misconduct").

According to the FAC, after meeting with Robert Harvey and John Merlo, on November 5, 2007, Defendant Swedberg, "with [Defendant] Siravo's concurrence,"

1    sent a memorandum to Harvey that provided the information he had "requested

2    regarding two suggested changes to the CEO Supplemental Executive Retirement

3    Plan." (FAC ¶¶ 88, 93, Ex. 1.) The document "recommend[s]" that (1) "[t]he

4    CEO's bonus and incentive pay be included in the benefit calculation"; and (2) the

5    Board "[c]hange the tax gross-up calculation to utilize the divisor of (.60%) versus

6    the current multiplier of (1.40%)," which "results in the correct tax gross-up

7    amount." (FAC Ex. 1.) Of paramount importance, Defendant Swedberg explicitly

8    explained in the memorandum that the changes would result in the CEO receiving

9    $7.412 million instead of $4.863 million. (*Id.*)

10          Plaintiff *concedes* that Defendant Swedberg disclosed the most critical

11   information (amount of benefit increase and substantive nature of the changes) in

12   the memorandum to the Chairman Harvey, yet insists that the Board was

13   nevertheless misled because Defendants allegedly (1) mischaracterized the change

14   as "administrative" rather than "substantive;" and (2) gave the Board a "reason for

15   the change" that was "false and misleading. (Opp. at 13-14.) These arguments

16   should be rejected out of hand.

17          For the reasons articulated in the Motion, the characterization of the

18   suggested changes as "administrative" rather than "substantive" is a non-actionable

19   opinion. (Mot. at 8-9.) Further, as the FAC itself makes clear, the characterization

20   of the change is not material. *See Levine*, 2010 WL 4369797, at *5; *Neel*, 6 Cal.3d

21   176 at 189. The FAC proves this point by alleging that these were "substantive

22   changes intended to nearly double the SERP benefit." (FAC ¶ 94.) Yet Exhibit 1,

23   on its face, *discloses* that the changes would nearly double the SERP benefit. If, as

24   explained in the FAC itself, the import of the "administrative" versus "substantive"

25   characterization is the extent of the increase in benefits, that is precisely the

26   information that Defendant Swedberg conveyed in Exhibit 1. Swedberg's

27   characterization of the change as "administrative" could not possibly be material

28   where, as here, he fully described the "substantive" financial impact of the change.

1   *See Restatement (Second) of Torts* § 538, com. e (1977) (stating that a fact is not

2   material as a matter of law "if the fact misrepresented is so obviously unimportant

3   that the jury could not reasonably find that a reasonable man would have been

4   influenced by it"); *see also Quan v. Computer Sciences Corp.*, 623 F.3d 870, 886-

5   87 (9th Cir. 2010) (rejecting breach of fiduciary duty claim in ERISA action where

6   purported misrepresentations about "pricing of stock options at 100% of market

7   value," had little financial impact and therefore were not material as a matter of

8   law).

9        Plaintiff's claim that Defendants misrepresented the reason for the changes

10  cannot survive either.  Defendant Swedberg recommended that the Board include

11  bonus and incentive pay in the definition of compensation to conform the plan

12  "with the intent of the program when it was initially developed," which was to pay

13  WesCorp's retiring executives at a replacement rate of 48% of their compensation.

14  (FAC Ex. 1.)  This was a true statement; in the intervening years since the first

15  SERP was adopted, WesCorp's executive compensation had changed from a salary-

16  based compensation system to a salary-plus-bonus-and-incentive-pay system.

17  (FAC ¶ 84 & Ex. 1.)  Swedberg also recommended to the Board that it change the

18  "tax gross-up calculation" to achieve the "correct tax gross-up amount."  Notably,

19  Plaintiff does not dispute (either in the FAC or the Opposition) Swedberg's

20  assertion that his proposed change results in the "correct" amount.

21       Plaintiff repeatedly asserts that Siravo and Swedberg concealed their "true

22  intentions and reasons for the changes" (Opp. at 10-12, 14), which the FAC alleges

23  "were simply intended to increase the size of the lump sum payment to Siravo."

24  (FAC ¶ 87.)  Through Exhibit 1, however, Defendant Swedberg explicitly told

25  Chairman Harvey that the proposed changes to Siravo's SERP would increase

26  Siravo's retirement payout by over $2.5 million.  Quite obviously, a fundamental

27  purpose of the change was to obtain a larger retirement pay-out for Siravo.  Based

28

1    on Exhibit 1, the Board could not have been misled about the purpose (or impact)

2    of the changes recommended by Swedberg.

3         Plaintiff also argues that Defendants committed wrongdoing because they

4    "did not disclose that they had agreed to seek changes to each other's SERPs."

5    (Opp. at 11.)  But the Board separately decided the proposed amendments to the

6    CEO SERP and the Executive SERP with a full understanding of the financial

7    impact of the proposed changes.  Without any material misrepresentations to the

8    Board, that Siravo and Swedberg allegedly worked in concert to obtain the SERP

9    changes is of no legal consequence.

10        **3.    The Purported Misrepresentations Compare Two Different**

11             **Time Periods**

12        Plaintiff concedes that the FAC allegations of misrepresentation improperly

13   compares two different time periods, but claims (without any case citation

14   whatsoever) that the difference is without consequence because the time periods

15   were, allegedly, only four months apart.  (Opp. at 16-17.)  The FAC, however, *does*

16   *not allege* that the intent of WesCorp in creating the original SERP in 2001 was the

17   same (or even similar) as the intent of the parties in assenting to the Siravo SERP

18   contract in 2002.  Absent such an allegation, the FAC simply cannot use the intent

19   of the contracting parties at the time the Siravo contract was negotiated in 2002 as a

20   basis for showing that Swedberg's representations about WesCorp's intent in

21   creating the original SERP in 2001 ─ an entirely different time period ─ were false.

22   (FAC ¶ 96 & Ex. 1.)  *See Quan*, 623 F.3d at 886-87 (rejecting breach of fiduciary

23   duty claim in ERISA action based on alleged misrepresentations such as "a

24   statement purportedly to the effect that [a] June [30] 2006 stock price drop was

25   caused by 'the market, not [defendant]'" because the statement actually referred to

26   the market on June 15, not June 30); *see also Broam*, 320 F.3d at 1026 n.2 (plaintiff

27   cannot create new allegations in an opposition brief).

28

**4.      The Complaint Does Not Allege A Claim For Constructive Fraud And Such A Claim Would Fail Regardless**

Continuing to alter the FAC through its Opposition, Plaintiff now asserts that the FAC supports a claim for constructive fraud.  (Opp. at 12.)  The FAC makes no mention of such a cause of action, and for this reason alone it should be rejected here.  Even if allowed, however, the claim adds nothing.  In an action for constructive fraud, Plaintiff must still show reliance, damage *as a result* of the lack of disclosure, and a material failure.  *The 1849 Condominiums Assoc., Inc. v. Bruner*, No. 2:09-cv-03339-JAM, 2010 WL 2557711, at *5 (E.D. Cal. June 21, 2010) (facts withheld must be material to support a constructive fraud claim); *Estate of Gump*, 1 Cal. App. 4th 582, 603, 2 Cal. Rptr. 2d 269, 282 (1991) (reliance and damage required for constructive fraud).  As already explained, the FAC fails to state allegations sufficient to make out these contentions.

**5.      Plaintiff's New Argument That The Amended SERPs Used A Different Formula Than The Board Authorized Is Not Alleged in the Complaint**

The assertion in the Opposition that the amended SERPs did not comply with the Board's resolution because they contained "a more generous formula" for calculating the SERP payments than the Board authorized (Opp. at 17) is likewise found nowhere in the FAC.  Again, Plaintiff has cobbled together an entirely new allegation when faced with the inadequacies of its complaint.  Defendants cannot defend themselves against such ever-changing accusations, which therefore should be rejected.

The FAC alleges that the Board adopted a resolution to approve the SERP changes based upon "the proposal outlined in the November 2 memorandum."  (FAC ¶¶ 97-98.)  That memorandum attached to the FAC as Exhibit 1 described changes that would result in an increased pay-out to Siravo of up to $7.412 million.

1   Yet the FAC then alleges that "[t]he amended Siravo SERP provided Siravo a

2   larger *lump sum payment* than the board's resolution authorized" because Siravo

3   was paid $6,881,401 million.  (FAC ¶¶ 100, 102 (emphasis added).)  As $6.8

4   million is clearly *less* than $7.4 million, not more, the FAC is at odds with its own

5   Exhibit, and in such cases, the Exhibit trumps.  *Sprewell*, 266 F.3d at 988.

6          Plaintiff does not address this problem at all in its Opposition.  Instead, it

7   forwards the entirely new allegation that the amended SERP allowed for a more

8   generous *formula* than the Board authorized.  Specifically, Plaintiff now claims that

9   the Board authorized a formula based on WesCorp's Defined Benefit Plan

10  ("DBP"), which used the "average of the employee's annual compensation over the

11  prior five years," while the amended SERP "calculated compensation based on the

12  *highest* annual compensation out of the prior three years."  (Opp. at 7 n.2.)  The

13  FAC, however, alleges nothing of the kind.[3]

14          **B.     The Business Judgment Rule Applies To Siravo**

15          Finally, the business judgment rule applies to Siravo with respect to his

16  conduct that is the subject of Counts One and Two of the FAC because he was

17  acting in a capacity indistinguishable from an uninterested director.[4]  *See* Cal. Corp.

18  Code § 7231(c) (any "person who performs the duties of a director" is entitled to

19  the protection of the business judgment rule); *see also, e.g., Official Comm. Of*

20  ────────────────

21  [3] Again, had Plaintiff actually made this allegation in the FAC, Defendants would
    have responded to it by attaching the DBP for the Court's review.  Defendants
    proffer that the DBP, on its face, would contradict Plaintiff's representations.
22  Specifically, Defendants would demonstrate to the Court that the "average
    compensation" referenced has no application to the SERP amendments.  The Board
23  resolution states that the new SERP should "[i]nclude salary *plus* bonus and
    incentive pay . . . to make it consistent with the compensation used in WesCorp's
24  [DBP]."  (FAC ¶ 99.)  The DBP in fact defines "compensation" as "the total
    compensation we paid to you that is subject to federal income tax."  In other words,
25  the resolution sought to make the SERPs consistent with the DBP by including
    bonus and incentive pay.  The "Average Compensation" referenced by Plaintiff for
26  the first time in its Opposition relates to a definition of the "Normal Retirement
    Benefit," *not* the meaning of compensation in the DBP generally, as Plaintiff
    suggests.

27  [4] Defendant Siravo also incorporates the arguments set forth in the Reply Brief of
28  the Director Defendants.

1    *Unsecured ex rel. Lemington Home for the Aged v. Baldwin*, No. 10cv800, 2010

2    WL 4275252, at *10 (W.D. Pa. Oct. 25, 2010) (holding that the business judgment

3    rule protected officer defendants in the absence of allegations of bad faith or self

4    dealing); *Matter of Munford, Inc.*, 98 F.3d 604, 611 (11th Cir. 1996) ("business

5    judgment rule protects directors and officers from liability when they make good

6    faith business decisions in an informed and deliberate manner").

7         *Gaillard v. Natomas*, 208 Cal. App. 3d 1250, 256 Cal. Rptr. 702 (1989),

8    upon which Plaintiff relies, in fact supports Defendant Siravo's position.  In

9    *Gaillard*, shareholders brought a derivative action challenging "golden parachutes"

10   and other benefits given to five inside directors as part of a merger.  The inside

11   directors had not voted on the benefits, but had drafted them and proposed them to

12   the board.  *Id.* at 1259-60.  The inside directors argued that this self-interested

13   activity was subject to the protection of the business judgment rule.  The court

14   rejected that claim because, in the context of a golden parachute, "[t]he inside

15   directors . . . were not 'perform[ing] the duties of a director' . . . but were acting as

16   officer employees of the corporation." *Id*. at 1265; *see also ViChip Corp. v. Lee*,

17   438 F. Supp. 2d 1087, 1099 (N.D. Cal. 2006) ("The business judgment rule can

18   only be used where a fiduciary [officer or director] is demonstrated to have acted in

19   an unbiased manner"); *In re Croton River Club, Inc*., 52 F.3d 41, 44 (2d Cir. 1995)

20   ("It is black-letter, settled law that when a corporate director or officer has an

21   interest in a decision, the business judgment rule does not apply").

22        Defendants do not dispute this proposition.  Indeed, it is for this reason that

23   Siravo does not claim the business judgment rule as a defense to the SERP claims

24   in Counts Three and Four.  There, Siravo was an interested officer who received a

25   benefit from the decision of the Board.  In that context, the *Gaillard* court's

26   comment that "an officer-director might be liable for particular conduct because of

27   his capacity of an officer, whereas the other directors would not" (208 Cal. App. 3d

28   at 1265) fits perfectly.  The Board's decision to approve the SERP amendments

1  might well be protected by the business judgment rule while Siravo's decision to
2  propose them would not.

3      Counts One and Two, however, are wholly different.  There is no allegation
4  that Mr. Siravo had any responsibilities or took any action that would suggest his
5  role was as anything other than that akin to an uninterested director.  The FAC
6  draws no distinction between his conduct and that of the other directors.  In such a
7  context, Siravo is a "person performing the duties of a director" and is therefore
8  entitled to the business judgment rule.

9  **III.   <u>CONCLUSION</u>**

10     Plaintiff's Opposition does not save the FAC, but rather creates new
11  allegations and theories of liability not currently present.  The FAC does not
12  adequately allege fraud or breach of fiduciary duty.  Further, Siravo is entitled to
13  the protection of the business judgment rule.  The Motion to Dismiss should be
14  granted.

15

16  DATED: December 6, 2010          MUNGER, TOLLES & OLSON LLP
17                                   Richard E. Drooyan
                                     Laura D. Smolowe
18

19                                   By:     */s/ Richard E. Drooyan*
20                                        RICHARD E. DROOYAN

21                                   Attorneys for Defendants
                                     ROBERT A. SIRAVO AND
22                                   THOMAS E. SWEDBERG

23

24

25

26

27

28

12437232.4                    - 11 -