CHAPIN FITZGERALD SULLIVAN LLP
   Kenneth M. Fitzgerald, Esq. (SBN: 142505)
   kfitzgerald@cfslawfirm.com
   Curtis G. Carll, Esq. (SBN: 248470)
   ccarll@cfslawfirm.com
550 West "C" Street, Suite 2000
San Diego, California  92101
Tel:  (619) 241-4810
Fax: (619) 955-5318

Attorneys for Defendant
TODD M. LANE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION<br><br>           Plaintiff,<br><br>   vs.<br><br>ROBERT A. SIRAVO, TODD M. LANE, ROBERT J. BURRELL, THOMAS E. SWEDBERG, TIMOTHY T. SIDLEY, ROBERT H. HARVEY, JR., WILLIAM CHENEY, GORDON DAMES, JAMES P. JORDAN, TIMOTHY KRAMER, ROBIN J. LENTZ, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE,<br>           Defendants | Case No.:   CV10-01597 GW (MANx)<br><br>**Defendant Todd M. Lane's Reply In Support of Motion to Dismiss Plaintiff's First Amended Complaint**<br><br>Date:      December 20, 2010<br>Time:     8:30 a.m.<br>Courtroom:  Los Angeles, 10<br><br>Honorable George H. Wu |

# I.  Introduction

A claim for negligence must start with a specific description of the defendant's duties.  From there, the claim must allege how the defendant breached those specific duties.  Finally, the claim must allege how those breaches caused damages.  If a plaintiff does not state what a defendant's duties were, the claims should be dismissed.

The NCUA has accused WesCorp's former CFO, Todd Lane, of gross negligence and negligent breach of fiduciary duties—but it has not alleged what Mr. Lane's duties at WesCorp were.  Instead, it has made vague and insufficient claims that he was "second-in-command," that he attended some meetings of the Board's Asset & Liability Committee, and that he was part of a group of four officers who drafted proposed budgets for the Board's review.  It does not allege that Mr. Lane had authority over, responsibility for, or a role in anything else.

Without first alleging Mr. Lane's specific duties at WesCorp, the NCUA doesn't state a claim against him.  But even if the allegations of duties were sufficient, they are not linked to what the NCUA claims caused WesCorp's losses.  The NCUA blames investment decisions, specifically a lack of concentration limits, for WesCorp's alleged losses.  The NCUA identifies two departments—neither of which were run or influenced by Mr. Lane—as having exclusive responsibility over those matters.

The NCUA's First Amended Complaint ("Complaint") has not alleged Mr. Lane's duties at WesCorp at all, nor has it linked what has been alleged to WesCorp's losses.  The First and Second Claims for Relief in the Complaint should be dismissed on those grounds, as well as for the grounds described in the Motions to Dismiss of the Directors and Siravo & Swedberg and their supporting documents, which Mr. Lane adopts.

## II. Allegations In the First Amended Complaint

### A. Lane's Duties at WesCorp Are Not Described in the Complaint

The Complaint states that Mr. Lane was WesCorp's CFO from March 1998 to April 2008. FAC ¶ 7. That claim is the one, and only, specific allegation of Mr. Lane's authority, role, or responsibilities at WesCorp. The Complaint also includes the vague allegation that Mr. Lane was "second in command at WesCorp." *Id.* ¶ 7.

All the other allegations against Mr. Lane in the Complaint relating to the First and Second Causes of Action aren't against Mr. Lane: they are against the "Officer Defendants." This group is made up of WesCorp's former CEO, Robert Siravo; its former head of Risk Assessment, Timothy Sidley; its former head of Investments, Robert Burrell; and Mr. Lane. FAC ¶¶ 6–9; 67, 68; Opp. 2:4–3:23. The Complaint doesn't describe Mr. Lane's role within this group.

In its Opposition, the NCUA adds allegations against Mr. Lane that are not in the Complaint. First, the NCUA states that Mr. Lane "was responsible for the budget." Opp. 2:10-11; 2:22-23. Second, the Opposition adds that Mr. Lane was "responsible for overseeing the financial affairs of the credit union." Opp. 6:27–7:1. Finally, the Opposition includes the non-pleaded claim that "the board was relying on [Mr. Lane] to advise it as to prudent financial practices." Opp. 7:1-2. [1] None of these claims, even if pleaded, is specific enough to be a legally sufficient description of Mr. Lane's duties.

---

[1] The Opposition also incorrectly states that "Lane's motion is directed to the entire complaint." Opp. 1:27, n. 1. In fact, Mr. Lane moved "to dismiss the First and Second Claims for Relief of the First Amended Complaint[.]" Lane's Motion to Dismiss, Doc. 95, at 1:2-4, 1:7-8 ("The First and Second Claims of the complaint, therefore, should be dismissed.").

**B. Specific Roles at WesCorp Are Described in the Complaint**

The NCUA does know how to make specific allegations of roles and responsibilities of officers and departments at WesCorp. Thus, the Complaint alleges what officer and department were in charge of investments. FAC ¶ 67 ("Burrell and WesCorp's Investment Department were responsible for ensuring that WesCorp's investments earned the returns required to meet WesCorp's budget for investment income and net interest income."). And the Complaint alleges what officer and department were in charge of proposing concentration limits. *Id.* ¶ 68 ("WesCorp's Risk Management Department, headed by Sidley, was responsible for proposing . . . prudent concentration limits for its investment portfolio to ensure that the portfolio was properly diversified.").

But the Complaint alleges nothing similar for Mr. Lane. It throws him in with the "Officer Defendants" as if each had identical roles and responsibilities —which is undermined by the Complaint's own allegations of WesCorp's division of labor among officers and departments.

**C. Decisions Outside the Scope of Mr. Lane's Duties and Authority Are the Alleged Causes of WesCorp's Failure**

The NCUA has repeatedly identified one cause of WesCorp's losses: its failure to have proper concentration limits on private-label mortgage-backed securities. FAC ¶¶ 31, 33, 69, 71, 78–80, 114 a–h; Opp. 3:20-23 ("[A]s a result of the failure of the Officer Defendants to control WesCorp's concentration of Option ARM and lower trache MBS, WesCorp was required to recognize severe losses[.]").

The NCUA even has claimed that if WesCorp had concentration limits on those securities, there would be almost no losses, and, therefore, no liability and no lawsuit. FAC ¶¶ 33 ("If WesCorp's officers and directors had imposed prudent concentration limits on its private label MBS, including its Option ARM MBS, almost all of this loss would have been avoided."); 80 ("Had WesCorp

imposed the same concentration limit on its Option ARM MBS as it did on its CDO MBS, its losses on those securities would have been limited to less than $200 million [4.3% of the $4.683 billion of alleged losses].").

The concentration limits, as alleged in the Complaint, were the responsibility of the Risk Assessment Department—and not Mr. Lane.  FAC ¶ 68 (the FAC inaccurately refers to Risk Assessment as "Risk Management").

The NCUA makes no allegations that Mr. Lane had any responsibility for, authority over, or role in WesCorp's concentration limits and investment decisions.  The Complaint attempts to pull Mr. Lane into liability by claiming that the yearly proposed budgets (drafted, allegedly collectively, by the four "Officer Defendants") lacked sufficient description of "how the composition of WesCorp's investment portfolio would need to change to achieve the net interest income projected in the budgets."  FAC ¶ 65; Opp. 2:8-23.

For this Motion, we must accept as true that WesCorp operated in the backwards fashion of using a budget to dictate investments—and not the opposite, logical, and industry-standard practice of having projected investment income dictate the budget.  Even so, the Complaint's allegations of what was lacking in the budget involved *investments*, a department out of Mr. Lane's control: "The budget contained . . . very little information about the proposed projected investment income, investment expense and net income interest, except the monthly projected totals."  FAC ¶¶ 65, 67, 68.

## III.   Legal Argument

### A.   The Business Judgment Rule Applies to Officers

This Reply adopts the Replies of the Directors and Swedberg & Siravo.  In addition to those arguments made for the application of the business judgment rule to officers, it should be noted that the NCUA gives a single case, *Gaillard v. Natomas*, for support that the business judgment rule does not apply to officers. Opp. 4:18-24; Opposition to Directors' Motion 20:2-5; Opposition to Siravo &

- 4 -

1   Swedberg's Motion 19:1-16 (all citing *Gaillard*, 208 Cal. App. 3d 1250, 1265
2   (1989)).

3           But the reasoning of *Gaillard* supports the idea that disinterested corporate
4   officers should benefit from the presumption and protection of the business
5   judgment rule.  In *Gaillard*, shareholders challenged golden parachute payments
6   that were given to five directors who were also officers of the corporation.  *Id.* at
7   1257, 1265.  The Court would not apply the business judgment rule to the inside
8   directors because they were interested in the transactions—they were "securing
9   payment of benefits to themselves"—not simply because they were officers.  *Id.*
10  1265–66.  And the Court affirmed that reasoning by concluding that it would
11  defer to decisions of "*disinterested* directors who presumably are acting in the
12  best interests of the corporation."  *Id.* at 1266 (italics in original).

13          Regarding the First and Second Claims for Relief, the Complaint does not
14  allege that Lane or any of the other officers made decisions for WesCorp that
15  were *interested*—or not "*disinterested*."  The decisions that the NCUA states
16  were responsible for losses (poor investment choices and insufficient
17  concentration limits) are not analogous to golden parachute payments because the
18  officers at WesCorp, like the directors at WesCorp, were not receiving "benefits
19  to themselves" for them.  *Gaillard*, 208 Cal. App. 3d at 1265.  The officers,
20  therefore, should also be protected by the business judgment rule.

21  **B.   Rule 8 Is Not At Issue**

22          In its Opposition, the NCUA argues that the Complaint satisfies Federal
23  Rule of Civil Procedure 8, which describes requirements for pleadings.  Opp.
24  7:10–8:22.  Lane's Motion, however, didn't invoke Rule 8, nor the requirement
25  that Mr. Lane be put on fair notice.  *Id.*  Mr. Lane agrees that he has been put on
26  notice by the Complaint and that Rule 8 has been satisfied.  The issue is whether
27  the NCUA has actually stated a claim against Mr. Lane under Rule 12(b)(6).  By
28  characterizing Mr. Lane's  Motion as arising under Rule 8, the NCUA is

1   attempting to dodge the fact that it has not described Mr. Lane's duties at

2   WesCorp—nor linked the breach of those duties to damages.

3   **C. The NCUA Confuses Legal Fiduciary Duties with Factual Ones**

4         The NCUA has accused Mr. Lane of negligently breaching his fiduciary

5   duty of due care to WesCorp. FAC ¶¶ 110–114; 115–117; Opp. 5:20-21

6   ("[w]hether Mr. Lane has exercised due care"); *id.* 6:3-4 ("Lane breached the

7   standard of care"). As the NCUA correctly states, Mr. Lane, as WesCorp's CFO,

8   was a fiduciary to WesCorp. Opp. 5:11-19. Mr. Lane had the duty to act "as a

9   reasonably careful [officer] would have acted under the same or similar

10   circumstances." Judicial Council of California, Civil Jury Instruction ("CACI")

11   No. 4101

12         Although the NCUA is correct that a breach of a fiduciary duty is a factual

13   question, Opp. 5:20-22, that does not excuse it from having to plead that Mr.

14   Lane breached that duty, and that the breach led to WesCorp's losses. *See Mosier*

15   *v. S. Cal. Physicians Ins. Exch.*, 63 Cal.App.4th 1022, 1044 (1998) ("The

16   elements of a cause of action for breach of fiduciary duty are: (1) existence of a

17   fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by

18   that breach."). Repeatedly throughout the Complaint, the NCUA states one

19   proximate cause of WesCorp's losses: the failure to adopt concentration limits on

20   private mortgage backed securities. FAC ¶¶ 31, 33, 69, 71, 78–80, 114 c–f, h.

21   But nowhere does the NCUA accuse Mr. Lane of having duties in that area.

22         The NCUA is not excused from pleading that Mr. Lane was responsible

23   for, or had authority over, or had a role in the decisions that it claims led to losses.

24   The Opposition lists five possible inferences of Mr. Lane's breach of his fiduciary

25   duties. Opp. 6:1-17. The Complaint provides no allegations specific to Mr. Lane

26   to support these claims.

27         The first is that Mr. Lane "allow[ed] and encourag[ed]" WesCorp to be

28   more aggressive and take on credit risk. Opp. 6:3-7. The Complaint itself

- 6 -

identifies 2002—four years after Mr. Lane started—as the time when WesCorp allegedly changed its strategies, FAC ¶ 26, and includes no allegations that Mr. Lane himself did those things (or that he had the authority to do so).  The second and third inferences are that Mr. Lane provided "unduly risky budgets" without description of the investment portfolio necessary to support them.  Opp. 6:7-13.  The Complaint, however, does not state Mr. Lane's role in the budgeting process, FAC ¶ 65; meanwhile, it puts the responsibility for investments on a department that Mr. Lane was not part of, *id.* ¶ 67.  The fourth and fifth inferences involve concentration limits, Opp. 6:13-17, which, once again, the Complaint admits that Mr. Lane had no part of, FAC ¶ 68.[2]

## D.  Whether the NCUA Has Pleaded Duties Is Not a Factual Issue

Similar to its approach to breach of fiduciary duties, the NCUA argues that because the question of whether "particular conduct constitutes gross negligence is generally a question of fact," Opp. 7:3-4, it is excused from properly pleading negligence.  It is not.  To avoid dismissal, the FAC must allege a duty, then a breach of that duty, then damages proximately caused by that breach.  *See Martinez v. United States,* 2010 U.S. Dist. LEXIS 105763,*20–21 (C.D. Cal. Mar. 25, 2010).

The standard for gross negligence, as the NCUA puts it, is "an extreme departure from what a reasonably careful person would do in the same situation to prevent harm to oneself or to others."  Opposition to Directors' Motion to Dismiss 22:4-6 (citing CACI No. 425).  The starting point for pleading gross negligence, then, is to describe what exact "situation" Mr. Lane was in— otherwise, there is no basis for a standard of conduct.  *See Flowers v. Torrance*

---

[2]   As explained in the Directors' Motion to Dismiss and Reply, the allegations regarding concentration limits and investments also do not plead a legally sufficient claim for negligent breach of fiduciary duties against the other defendants.

1   *Mem'l Hosp. Med. Ctr.*, 8 Cal. 4th 992, 997 (1994) (describing negligence, stating

2   that "because application of this principle [*e.g.* negligence] is inherently

3   situational, the amount of care deemed reasonable in any particular case will

4   vary.").

5          The NCUA appears to believe that just alleging that Mr. Lane was CFO is

6   enough to fully describe his role (or "situation") at WesCorp.  *See* Opp. 6:26–7:2

7   (without citing the Complaint or case law, stating that Mr. Lane "was responsible

8   for overseeing the financial affairs of the credit union" and "to advise [the Board]

9   as to prudent financial decisions").  In doing so, the NCUA ignores its

10  requirement to plead a legally sufficient claim, in addition to ignoring the realities

11  of the division of labor at credit unions and other financial companies—which are

12  supported by the allegations in the Complaint.  When it comes to the duties at

13  WesCorp that the NCUA actually claims led to losses, the Complaint alleges

14  certain officers' roles with great specificity.  *See, e.g.*, FAC ¶¶ 67 (responsibility

15  for investments); 68 (responsibility for proposing policies to mitigate credit risk,

16  including concentration limits).

17         But Mr. Lane isn't included in any specific allegations and this absence is

18  fatal to the NCUA's claim against him.  For instance, the Complaint doesn't

19  allege that Mr. Lane had any role, responsibility, or authority at WesCorp over

20  the following things: (1) portfolio management; (2) asset and liability

21  management; (3) investment operations; (4) investment rating; or (5) investment

22  concentration limits.  Those are the areas that the NCUA claims led to the losses

23  that gave rise to this case.

24         The only allegation against Mr. Lane for something that he participated in

25  (along with three other officers) is in regard to *proposing* a budget that was

26  lacking in *investment* information.  FAC ¶ 67.  And the only action that Mr. Lane

27  is alleged to have failed to do (again, undifferentiated among three other officers)

28  is to *propose* limits on *concentration of investments*. *Id.* ¶ 72.  All of those alleged

duties, as described in the Complaint, were in the hands of other groups at WesCorp.  Investment and concentration limits were analyzed by departments unaffiliated with Mr. Lane. *Id.* ¶¶ 67–68.[3]

## IV.   Conclusion

The Complaint alleges that WesCorp failed because it did not adopt proper concentration limits on private mortgage back securities.  The Complaint makes no allegations that Todd Lane had any role in, responsibility for, or authority over investment decisions, risk assessment, or concentration limits.  The Complaint, therefore, does not state a claim against him for gross negligence or negligent breach of fiduciary duties, and the First and Second Claims for Relief should be dismissed on these grounds, as well as the grounds described in the Motions to Dismiss of the Directors and Siravo & Swedberg and their supporting documents.


DATED:   December 6, 2010          CHAPIN FITZGERALD SULLIVAN LLP


By:     /s/ *Curtis G. Carll*
        _____
        Kenneth M. Fitzgerald, Esq.
        Curtis G. Carll, Esq.
        Attorneys for Defendant
        TODD M. LANE

---

[3]   As explained in the Directors' Motion to Dismiss and Reply, the allegations regarding concentration limits and investments also do not plead a legally sufficient claim for gross negligence against the other defendant directors and officers.