1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    REYNOLD L. SIEMENS  #177956
2   Email:  reynold.siemens@pillsburylaw.com
    725 South Figueroa Street, Suite 2800
3   Los Angeles, CA 90017-5406
    Telephone:  (213) 488-7100
4   Facsimile:  (213) 629-1033

5   PILLSBURY WINTHROP SHAW PITTMAN LLP
    BRUCE A. ERICSON  #76342
6   Email:  bruce.ericson@pillsburylaw.com
    GEORGE ALLEN BRANDT  #264935
7   Email:  allen.brandt@pillsburylaw.com
    50 Fremont Street
8   Post Office Box 7880
    San Francisco, CA  94120-7880
9   Telephone: (415) 983-1000
    Facsimile: (415) 983-1200

10

11  Attorneys for Defendants ROBERT JOHN BURRELL, WILLIAM CHENEY,
    GORDON DAMES, ROBERT H. HARVEY, JR., JAMES JORDAN,
    TIMOTHY M. KRAMER, ROBIN LENTZ, JOHN M. MERLO, WARREN
12  NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE

13                  UNITED STATES DISTRICT COURT

14                  CENTRAL DISTRICT OF CALIFORNIA

15                  WESTERN DIVISION

16  NATIONAL CREDIT UNION              No. CV 10-01597 GW (MANx)
17  ADMINISTRATION BOARD AS
    CONSERVATOR FOR WESTERN           **REPLY IN SUPPORT OF DIRECTOR**
18  CORPORATE FEDERAL CREDIT          **DEFENDANTS' MOTION TO**
    UNION,                             **DISMISS PLAINTIFF'S FIRST**
                                       **AMENDED COMPLAINT**
19
                    Plaintiff,         Honorable George H. Wu
20                                     Courtroom 10
         vs.                           312 North Spring Street
21
    ROBERT A. SIRAVO, et al.,          Date:       December 20, 2010
22                                     Time:       8:30 a.m.
                    Defendants.        Courtroom:  Los Angeles, 10
23

24

25

26

27

28

# Table of Contents

Page

I.   SUMMARY OF ARGUMENT. ........................................................... 1

II.  ARGUMENT. ................................................................................... 3

A.   The FAC's First Claim must be dismissed. .................................. 3

1.   The Business Judgment Rule applies to WesCorp's directors. ............................................................. 3

2.   The FAC fails to allege facts that rebut the presumptions of the Business Judgment Rule. ................... 6

a.   The FAC's allegations mainly reflect hindsight disagreement with the content of Defendants' decisions. ........................................ 7

b.   The few process-related allegations in the FAC do not overcome the presumption of the Business Judgment Rule. ................................................................. 8

3.   The Court can and should apply the Business Judgment Rule on a motion to dismiss. ........................... 11

4.   The Business Judgment Rule applies to officers such as Burrell. ............................................. 13

B.   The FAC's Second Claim must be dismissed. ............................ 14

1.   The federal gross negligence "floor" does not apply in California. ............................................ 14

2.   The FAC does not allege facts that rise to the level of gross negligence. ............................................ 16

C.   The statute of limitations bars the First and Second Claims as to Cheney, Rhamy and Updike. ............................... 19

1.   The First Claim does not plead wrongdoing in the limitations period. ...................................... 19

2.   The Second Claim is time-barred and cannot be resurrected. ........................................................ 20

D.   Dismissal should be without leave to amend. ............................ 22

III. CONCLUSION. ............................................................................. 23

## Table of Authorities

**Page**

### Cases

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ...................................................................16

*Atherton v. FDIC,*
519 U.S. 213, 117 S. Ct. 666 (1997) ................................ 14, 15, 16, 21

*Barnes v. State Farm Mut. Auto. Ins. Co.,*
16 Cal. App. 4th 365, 20 Cal. Rptr. 2d 87 (1993) ..........................11

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955 (2007) .........................................16

*Berg & Berg Enters., LLC v. Boyle,*
178 Cal. App. 4th 1020, 100 Cal. Rptr. 3d 875 (2009) ................... 3, 11

*Biren v. Equality Emergency Medical Group, Inc.,*
102 Cal. App. 4th 125, 125 Cal. Rptr. 2d 325 (2002) .........................13

*Bunnell v. Dep't of Corrections,*
64 Cal. App. 4th 1360, 76 Cal. Rptr. 2d 58 (1998) .............................21

*City of Santa Barbara v. Superior Court,*
41 Cal. 4th 747, 62 Cal. Rptr. 3d 527 (2007) ............................... 16, 18

*Decker v. City of Imperial Beach,*
209 Cal. App. 3d 349, 257 Cal. Rptr. 356 (1989) .................... 16, 17, 18

*Devito v. Cal.,*
202 Cal. App. 3d 264, 272, 248 Cal. Rptr. 330 (1988) ........................17

*Erie R.R. Co. v. Tompkins,*
304 U.S. 64, 58 S. Ct. 817 (1938) .............................................15

*Fairchild v. Bank of America,*
192 Cal. App. 2d 252, 13 Cal. Rptr. 491 (1961) ........................... 11, 12

*FDIC v. Castetter,*
184 F.3d 1040 (9th Cir. 1998) ........................................... passim

*FDIC v. Dawson,*
4 F.3d 1303 (5th Cir. 1993) ....................................................20

*FDIC v. Former Officers & Directors of Metro. Bank,*
884 F.2d 1304 (9th Cir. 1989) ..................................................22

*FDIC v. Jackson,*
133 F.3d 694 (9th Cir. 1998) ..................................................19

*FDIC v. McSweeney*,
  976 F.2d 532 (9th Cir. 1992)..........................................................14, 20

*FDIC v. Regier Carr & Monroe*,
  996 F.2d 222 (10th Cir. 1993)................................................................20

*Findley v. Garrett*,
  109 Cal. App. 2d 166, 240 P.2d 421 (1952) .........................................12

*Fox v. Hale & Norcross Silver Min. Co.*,
  108 Cal. 369, 41 P. 308 (1895) ..............................................................18

*Frances T. v. Village Green Owners Ass'n*,
  42 Cal. 3d 490, 723 P.2d 573 (1986) ...................................................4, 5

*Gaillard v. Natomas*,
  208 Cal. App. 3d 1250, 256 Cal. Rptr. 702 (1989) ...............................13

*Guaranty Trust Co. v. United States*,
  304 U.S. 126, 58 S. Ct. 785 (1938) .......................................................22

*In re Citigroup Inc. Shareholder Derivative Litig.*,
  964 A.2d 106 (Del. Ch. 2009)....................................................6, 8, 9, 10

*In re Consumers Power Co. Derivative Litig.*,
  132 F.R.D. 455 (E.D. Mich. 1990)........................................................11

*King v. U.S.*,
  301 F.3d 1270 (10th Cir. 2002)..............................................................21

*La Caisse Populaire Ste. Marie (St. Mary's Bank) v. United States*,
  425 F. Supp. 512 (D.N.H. 1976),
  *aff'd*, 563 F.2d 505 (1st Cir. 1977).........................................................6

*Lee v. Interinsurance Exchange*,
  50 Cal. App. 4th 694, 57 Cal. Rptr. 2d 798 (1996) ....................... passim

*LLP Mortg. v. Bizar*,
  126 Cal. App. 4th 773, 24 Cal. Rptr. 3d 598 (2005) .............................21

*McMichael v. United States Filter Corp.*,
  No. EDCV 99-182 VAP (MCx),
  2001 U.S. Dist. LEXIS 3918 (C.D. Cal. Feb. 26, 2001)......................12

*RTC v. Armbruster*,
  52 F.3d 748 (8th Cir. 1995)....................................................................20

*RTC v. Artley*,
  28 F.3d 1099 (11th Cir. 1994)....................................................20, 21, 22

*RTC v. Bright*,
  872 F. Supp. 1551 (N.D. Tex. 1995)............................................20, 21, 22

*RTC v. O'Bear, Overholser, Smith & Huffer,*
   840 F. Supp. 1270 (N.D. Ind. 1993)..................................21

*RTC v. Zimmerman,*
   853 F. Supp. 1016 (N.D. Ohio 1994) ................................21

*Van Meter v. Bent Construction Co.,*
   46 Cal. 2d 588, 297 P.2d 644 (1956) ................................18

## Statutes and Codes

California Corporations Code
   Section 309 ............................................................... 3, 4, 13
   Section 7231 ...................................................................3, 4

California Financial Code
   Section 14001.1 .................................................................4
   Section 14002.5 .................................................................4

United States Code
   Title 12, Section 1787 ........................................................21
   Title 12, Section 1787(b)(14) ..................................... 20, 21, 22
   Title 12, Section 1787(h)........................................... passim
   Title 12, Section 1821 ........................................................21
   Title 12, Section 1821(d)(14) ...................................... 20, 22
   Title 12, Section 1821(d)(14)(c)..........................................21
   Title 12, Section 1821(k)............................... 14, 15, 21, 22

## Rules and Regulations

75 Fed. Reg. 64786, 64840-41 (Oct. 20, 2010) ..................................6

Code of Federal Regulations
   Title 12, Section 703.14 .....................................................6
   Title 12, Section 704.5 .......................................................6

Federal Rules of Civil Procedure
   Rule 12(b)(6) .................................................................12

## Other Authorities

2 Model Bus. Corp. Act Annotated
   Section 8.42, Official Comment (4th ed. 2008) ....................14

*Principles of Corporate Governance*
   Section 4.01 (Am. Law Inst. 2005) ......................................14

# I.     SUMMARY OF ARGUMENT.

If the Business Judgment Rule means anything, it means that before a plaintiff can seek billions of dollars of damages from unpaid volunteer directors unsullied by any conflicts of interest or ulterior motives, the plaintiff must make cogent factual allegations strongly suggesting that the directors blinded themselves to reality, acted in bad faith or lacked any rational business purpose. The NCUA's First Amended Complaint, Doc. 84 ("FAC") does not do that here, and nothing in the NCUA's opposition to the directors' motion to dismiss, Doc. 102 ("Opposition" or "Opp.") demonstrates otherwise.

*First Claim (ordinary negligence):*  The Opposition misconceives the Business Judgment Rule as applied in California – applying the wrong statute, misreading Supreme Court precedent and dismissing in a footnote the most important aspect of the Rule.  Building on this foundation of legal error, the Opposition then seizes on WesCorp's non-profit status, utterly ignoring the fact that whether or not WesCorp turned a profit, it was in the business of investing its members' money, and making business judgments between risk and reward – exactly the activity that the Business Judgment Rule is meant to protect.

Much of the Opposition is devoted to the argument that the FAC's allegations, while focusing on content not process, and while utterly devoid of specifics, ought to receive the benefit of the doubt and glide past a motion to dismiss and into discovery – never mind that the NCUA has had all WesCorp's records for the last 18 months and every opportunity to develop a cogent fact-based claim, if it could.  This plea is exactly backwards.  If the Business Judgment Rule means anything, it means that weak, conclusory hindsight-based disagreements with an investment strategy ought not survive a motion to dismiss merely because the damages claimed are very large.  Indeed, as courts have observed, this is exactly when the Rule should be applied with especial care. And, contrary to what the Opposition suggests, courts do apply the Rule to weed

1    out weak claims at the pleadings stage – a fact not obscured by the Opposition's

2    attempts to distinguish on irrelevant grounds cases illustrating exactly this point.

3          On the few occasions when the Opposition focuses not on the content of

4    Defendants' decisions, but instead on the process by which they gathered

5    information for use in decision-making, the Opposition again misses the main

6    point.  The law is clear that conclusory allegations on process are not enough –

7    because in hindsight one could always have done something more, or something

8    different.  Instead a plaintiff must plead facts showing that "red flags" existed at

9    the time, and further investigation would have uncovered material facts that

10   would have led to a different decision.  The Opposition simply ignores this

11   because the FAC does not allege this.

12         *Second Claim (gross negligence):*  The Opposition argues that it can state

13   such a claim, despite clear Supreme Court and Ninth Circuit precedent to the

14   contrary – precedent showing that there is no such federal claim in a state such as

15   California, where state law permits claims for negligence.  The Opposition then

16   argues that the same conclusory allegations it offers to establish negligence also

17   establish gross negligence, even though the FAC candidly admits that

18   Defendants acted with much more than the "some care" sufficient to rebut a

19   claim of gross negligence.

20         *Statute of limitations:*  Here too the Opposition makes fundamental legal

21   errors, failing to follow binding Ninth Circuit authority in favor of a baseless

22   argument that if accepted (as no circuit has) would permit the NCUA to

23   resuscitate claims dating from the middle of the last century.  The NCUA knows

24   full well that it lacks the statutory basis to revive expired claims – indeed, lacks

25   even the FDIC's limited power to do so (which in any event would not avail it

26   here).  And if that were not enough, the Opposition completely ignores the fact

27   that the FAC does not specifically allege even one wrongful act within any

28   conceivable limitations period.

1     **II.**       **ARGUMENT.**

2     **A.**       **The FAC's First Claim must be dismissed.**

3     **1.**       **The Business Judgment Rule applies to WesCorp's directors.**

4       The NCUA's argument begins by asserting that California Corporations

5 Code section 7231 marks the outer boundaries of the Business Judgment Rule

6 applicable to WesCorp and is narrower than the Business Judgment Rule

7 applicable to for-profit corporations.  Opp. at 8:20-9:22 & 8 n.4, 12:4-13:9.  All

8 parts of this argument are wrong.

9       *First*, neither Corporations Code section 7231 nor Corporations Code

10 section 309 define the outer bounds of the Business Judgment Rule; both merely

11 codify one part of the common-law Business Judgment Rule (section 7231 for

12 mutual benefit corporations, and section 309 for general corporations), leaving

13 the rest of the Rule to the common law.  In California, the Business Judgment

14 Rule "has two components – one which immunizes directors from personal

15 liability if they act in accordance with its requirements, and another which

16 insulates from court intervention those management decisions which are made by

17 directors in good faith in what the directors believe is the organization's best

18 interest.  *Only the first component is embodied in Corporations Code section*

19 *309.*"  *Lee v. Interinsurance Exchange*, 50 Cal. App. 4th 694, 714, 57 Cal. Rptr.

20 2d 798, 810 (1996) (emphasis added) (citation omitted); *see also Berg & Berg*

21 *Enters., LLC v. Boyle*, 178 Cal. App. 4th 1020, 1045, 100 Cal. Rptr. 3d 875, 897

22 (2009).  The uncodified part of the Rule is a judicial policy of deference to the

23 business judgment of corporate directors and officers in the exercise of their

24 broad discretion in making corporate decisions.  Based on this common law

25 policy, "[i]nterference with the discretion of directors is not warranted in

26 doubtful cases."  *Lee,* 50 Cal. App. 4th at 715 (citation omitted).  No matter

27 which statutory section applies to WesCorp, Defendants' business decisions are

28 protected by the policy of judicial deference embodied in the common law

1   aspects of California's Business Judgment Rule.  The NCUA recognizes the

2   common-law component of California's Business Judgment Rule, but claims

3   without discussion or citation that it is "not at issue in this motion."  Opp. at 8

4   n.3.  That is wrong.  The gravamen of the FAC is nothing but an attack on

5   Defendants' business judgment – namely, their investment decisions.  Because

6   the NCUA seeks judicial interference with the business judgments of

7   Defendants, California's policy of deference to such decisions is directly relevant

8   here – indeed, controlling.

9          *Second*, turning to the codified aspects of the Business Judgment Rule, the

10   NCUA errs by claiming that section 7231 rather than section 309 applies.  The

11   NCUA notes that California Financial Code section 14002.5, which is part of the

12   California Credit Union Act, incorporates by reference the California Nonprofit

13   Mutual Benefit Corporation Law (which includes Cal. Corp. Code § 7231).  Opp.

14   at 8 n.4.  But the NCUA overlooks California Financial Code section 14001.1,

15   which expressly provides that the California Credit Union Act (including

16   Financial Code section 14002.5) applies "to any person, *other than a federal*

17   *credit union engaging in the business of a credit union in this state*."  Cal. Fin.

18   Code § 14001.1 (emphasis added).  Thus, the very Act on which the NCUA

19   relies expressly excludes WesCorp from its coverage.

20          *Third*, even if section 7231 did apply to WesCorp, its operative language is

21   almost identical to section 309 and its effect is no different.  The NCUA fails to

22   cite a single authority suggesting that section 7231 differs materially from

23   section 309.  And an authority it does miscite, *Frances T. v. Village Green*

24   *Owners Ass'n*, 42 Cal. 3d 490, 506 n.13, 723 P.2d 573, 582 n.13 (1986), squarely

25   states that "section 7231, the standard of fiduciary responsibility for nonprofit

26   directors, incorporates the standard of care defined in Corporations Code section

27   309." (citations omitted).  This language is one footnote before the footnote that

28   the NCUA cites (Opp. at 12:13-14) yet the NCUA somehow fails to bring

1   footnote 13 to this Court's attention.  Instead, the NCUA makes the facially false
2   argument that *Frances T.* distinguishes between directors of for-profit and non-
3   profit corporations (Opp. at 12:4-13:9), when in fact what *Frances T.*
4   distinguishes between are shareholders (who voluntarily decide to invest in the
5   corporation) and third-party rape victims like the plaintiff Frances T. (who did
6   not volunteer to be raped in the dark condo complex that the defendants had
7   failed to light).  *See Frances T.*, 42 Cal. 3d at 507-09, 507 n.14.  Try as it might
8   (Opp. at 12:20-13:9), the NCUA cannot credibly argue that credit unions who
9   chose to invest money with WesCorp – investors who voluntarily chose to seek
10  the higher yields that WesCorp offered – are more like rape victims than profit-
11  seeking shareholders.  The argument is absurd.  Natural-person credit unions
12  could freely choose whether to invest their excess cash with WesCorp or others
13  among the other 27-30 corporate credit unions.  FAC ¶ 36.  The FAC does not
14  allege that members were unaware of WesCorp's investment strategy or
15  somehow duped into investing their funds with WesCorp.  Indeed, the NCUA
16  offers no legal or policy grounds upon which to consider WesCorp's members to
17  be different from shareholders of a for-profit corporation:  both weigh risk versus
18  reward, and then decide where to invest their money.
19      *Fourth*, the NCUA admits that the "essence of the business judgment" is
20  the "trade-off between risk and return."  Opp. at 12:14-19.  Yet the NCUA
21  contends that the Business Judgment Rule does not apply to WesCorp because
22  WesCorp was a non-profit.  Opp. at 12:20-13:9.  This is a *non-sequitur*.  Whether
23  or not WesCorp or its unpaid volunteer directors personally made money, it is
24  beyond dispute that they were in the business of making investment decisions on
25  behalf of WesCorp's members.  *See, e.g.,* FAC ¶¶ 39, 43.  Indeed, the whole
26  point of a credit union is to make money that, while not a "profit" under the
27  Internal Revenue Code, still will benefit its members.  *See La Caisse Populaire*
28  *Ste. Marie (St. Mary's Bank) v. United States,* 425 F. Supp. 512, 522 (D.N.H.

1    1976), *aff'd*, 563 F.2d 505 (1st Cir. 1977).

2        More fundamentally, WesCorp was in the business of investing its

3    members' money and thus making decisions about risk and reward.  All

4    investments entail "risk," or the chance that a return on an investment will be

5    different than expected.  *See In re Citigroup Inc. Shareholder Derivative Litig.*,

6    964 A.2d 106, 126 (Del. Ch. 2009).  Anyone who makes an investment decision

7    for himself or anyone else must weigh risk against reward, knowing that even

8    with the safest investment there is a possibility that returns will be significantly,

9    even catastrophically, lower than expected.  *See id.*  To deny WesCorp's

10    directors the protection of the Business Judgment Rule simply because they and

11    WesCorp did not profit personally makes no sense.  All it would do is deter them

12    from taking any risk, however small – presumably, they would buy nothing but

13    T-bills.  Other than hindsight, the NCUA offers no justification for proposing

14    such a rule.  Indeed, the NCUA's own regulations permitted – and to this day

15    still permit – all manner of exotic investments, including investments rated far

16    lower than any investment WesCorp's directors ever authorized.[1]

17    **2.    The FAC fails to allege facts that rebut the presumptions of the**

18        **Business Judgment Rule.**

19        To overcome the presumptions of the Business Judgment Rule, the FAC

20    must allege facts showing that the *process* by which Defendants made

21    investment decisions fell below some discernable standard of care.  The FAC all

22

23    [1]   *See* 12 C.F.R. § 704.5 (Mar. 19, 1997) (permitting credit union investments in
24    corporate debt, repurchase agreements, securities lending, investment
      companies and forward settlements); *see also id.* § 703.14 (June 3, 2003)
25    (permitting credit union investments in "variable rate investments," REMICs
      (real estate mortgage investment conduits), "Yankee dollar deposits,"
26    "Eurodollar deposits," banker's acceptances, "European financial options
      contracts" and "mortgage note repurchase transactions").  Amendments set to
27    take effect next year will narrow § 704.5's investment powers subject to some
      "grandfathering."  *See* 75 Fed. Reg. 64786, 64840-41 (Oct. 20, 2010).
28

1   but ignores *process*, focusing almost entirely on the *content* of investment

2   decisions.  *See* FAC ¶¶ 25-30, 45-53.  The FAC's process allegations are few and

3   far between, and most relate to the things that the directors did right: receiving

4   detailed information, setting appropriate concentration limits and living within

5   those limits, buying highly rated investments, monitoring trends, and lowering

6   WesCorp's exposure to riskier investments when risks emerged.  *See, e.g.,* FAC

7   ¶¶ 32, 63-66, 74-77; Memorandum in Support of Defendants' Motion to Dismiss

8   Plaintiffs' First Amended Complaint, Doc. 96-1 ("Doc. 96-1"), at 13:14-15:18.

9   **a.**   **The FAC's allegations mainly reflect hindsight disagreement with the**

10      **content of Defendants' decisions.**

11      The case law and statutes show that judges and juries are ill-equipped to

12   second-guess the content of business decisions in hindsight and therefore should

13   not do so.  Yet the main thrust of the FAC is a disagreement about the risk-

14   reward tradeoff in Defendants' business decisions.  The FAC does not allege bad

15   faith or violations by these Defendants of the duty of loyalty.  Instead, and with

16   nothing but the benefit of 20/20 hindsight, the NCUA claims that these decisions

17   were negligent *because* they led to large losses.  *E.g.,* Opp. at 17:8-13.  Such

18   allegations cannot overcome the Business Judgment Rule.

19      The NCUA contends that a fact-finder could determine that Defendants

20   breached their fiduciary duty based on the inferences that could be drawn from

21   the FAC.  Opp. at 13:14-14:2.  The allegations the NCUA relies upon (without

22   citation to the FAC) are almost entirely content-oriented, however:  departing

23   from WesCorp's traditional conservative business model (Opp. at 13:14-15);

24   seeking increases in investment income (Opp. at 13:16-17); continuing to direct

25   WesCorp to seek higher investment income after learning that investment

26   spreads were tightening (Opp. at 13:20-24); setting certain concentration limits

27   (Opp. at 13:24-25, 16:22-24); not imposing concentration limits specifically for

28   Option ARM MBS (Opp. at 13:26-28); and failing to recognize the increased risk

1   in WesCorp's portfolio (Opp. at 13:16-20).  These allegations have nothing to do

2   with *how* Defendants made decisions and everything to do with *what* Defendants

3   decided (or allegedly failed to decide).[2]

4           Such content-related allegations cannot rebut the Business Judgment Rule.

5   Indeed, they strongly resemble the showing rejected in *FDIC v. Castetter*,

6   184 F.3d 1040 (9th Cir. 1999).  In *Castetter*, the FDIC unsuccessfully tried to

7   overcome the defendants' invocation of the Business Judgment Rule by showing

8   that defendants failed to adopt proper policies concerning loans, capital

9   adequacy, collections and internal controls.  *Id.* at 1045.  The court held that such

10  proof could not rebut the Business Judgment Rule.  The court reasoned that

11  instead of relating to the adequacy of defendants' investigation, such matters

12  "bear on the soundness of the directors' actions based on the information."  *Id.*

13  So too here, the FAC's allegations attacking Defendants' policies concerning

14  WesCorp's business model, concentration limits and investments cannot rebut

15  the Business Judgment Rule.  *See also Citigroup*, 964 A.2d at 131 (refusing "[t]o

16  impose oversight liability on directors for failure to monitor 'excessive' risk").

17          With hindsight, the NCUA would rather WesCorp had been more

18  traditional and risk-adverse.  But this is precisely the kind of after-the-fact

19  second-guessing that courts should avoid under the Business Judgment Rule.

20  **b.      The few process-related allegations in the FAC do not overcome the**

21          **presumption of the Business Judgment Rule.**

22          The FAC's factual allegations related to process are very limited, and

23  attack Defendants' analysis of that information without adequately alleging a

24  _____

25  [2]    The Opposition tries to recast some of the FAC's allegations as process
       allegations.  For example, the NCUA claims that Defendants continued
26     "without further deliberation" to seek higher investment yield.  Opp. at 13:21.
       These assertions – made without citation to the FAC – find no support in the
27     FAC, which alleges nothing about deliberations over seeking higher
       investment yields.
28

1    failure to conduct a reasonable investigation.  Such attacks on analysis are little

2    more than invitations to judicial second-guessing of business decisions –

3    invitations that courts should resist particularly when a plaintiff seeks to impose

4    billions of dollars of "personal liability for failure to predict the future and to

5    properly evaluate business risk." *Citigroup*, 964 A.2d at 131.[3]

6         Even if the FAC's allegations are construed as allegations of insufficient

7    information-gathering as opposed to insufficient analysis, they do not suffice.  To

8    overcome the Business Judgment Rule's presumption that directors acted in a

9    reasonable manner, plaintiffs must allege that – *at the time*, not in hindsight – the

10   directors overlooked (1) 'red flags' reasonably calling for further investigation or

11   (2) facts that would have been discovered by a reasonable investigation *and*

12   would have been material to the questioned exercise of business judgment.  *Lee*,

13   50 Cal. App. 4th at 715.  The FAC alleges neither (which is particularly ironic

14   given that the NCUA had examiners on-site full-time at WesCorp and real-time

15   access to WesCorp's business records while the investments were being made).

16        The NCUA acknowledges that Defendants classified and tracked MBS

17   investments by rating (AAA and AA) and FICO score (prime, alt-A and

18   subprime) and used the bond rating of investments to track tranche positions, but

19   now contends – in hindsight – that Defendants *also* should have separately

20   tracked Option ARM MBS and lower tranche MBS in the investment portfolio.

21   Opp. at 14:1-2, 17:4-7; FAC ¶¶ 71-72.  The NCUA similarly acknowledges that

22

---

23   [3]   As the Delaware Chancery Court said when faced with allegations that

24   Citigroup overinvested in subprime mortgages:  "In any business decision that
     turns out poorly there will likely be signs that one could point to and argue are

25   evidence that the decision was wrong.  Indeed, it is tempting in a case with
     such staggering losses for one to think that they could have made the 'right'

26   decision if they had been in the directors' position.  This temptation, however,
     is one of the reasons for the presumption against an objective review of

27   business decisions by judges, a presumption that is no less applicable when
     the losses to the Company are large."  *Id.*

28

1    the budgets Defendants received "contained detailed information," but now – in

2    hindsight – deems them inadequate because they contained monthly projected

3    totals of investment income, investment expense and net income interest but did

4    not specifically tie changes in projected income to changes in asset allocations.

5    Opp. at 17:14-20; FAC ¶ 65.[4]

6         These allegations do not establish a failure to investigate; at most they pick

7    nits with the analysis undertaken of the information at hand.  The FAC alleges no

8    red flags requiring additional investigation.  The FAC also alleges no material

9    facts such investigation would have uncovered, or how those facts would have

10   changed the investment decisions that Defendants made.  At most the FAC asks

11   the Court to draw the unsupported inference that more analysis 'coulda, woulda,

12   shoulda' led to different decisions because – in hindsight – the decisions actually

13   made led to large losses.  This does not satisfy *Lee*; this does not satisfy

14   *Citigroup*; this is no basis for seeking $6.8 billion from well-intentioned

15   volunteer directors on the theory that they failed to forecast the Great Recession.

16        The FAC also alleges no discernable duty of care:  what the reasonable

17   director would and should have been doing at the time.  Instead, the Opposition's

18   discussion of duty is essentially vapor about the "contours of duty."  *See* Opp. at

19   18:18-21.  Without some coherent allegation of duty, the NCUA's few

20   procedural allegations cannot overcome the Business Judgment Rule's

21   _____

22   [4]   The NCUA challenges Defendants' interpretation of the FAC's admissions
         regarding ALCO meetings, stating that Defendants' decision to reduce
23       investments in AA-rated MBS was unrelated to ALCO presentations
         regarding Option ARM MBS.  Opp. at 18:1-10.  That misses the point.  The
24       FAC admits that Defendants attended meetings where they received
         information about WesCorp's investments and the economy generally.  FAC
25       ¶ 74.  The FAC does not call into question the adequacy of these meetings.
         Nowhere does the FAC allege that the meetings were infrequent, that certain
26       directors failed to attend, or that the presentations ignored facts known to be
         material.  The NCUA's ultimate disagreement is with Defendants' investment
27       decisions, not their ALCO meetings.

28

1   presumption that Defendants made informed business decisions with due care.

2        Any business information system and any management report can be

3   improved in hindsight.  Given all the time and money in the world, one can

4   always gather more facts and analyze them more thoroughly.  But perfection is

5   not the standard.  All that the Business Judgment Rule requires is a *reasonable*

6   investigation.  *See In re Consumers Power Co. Derivative Litig.,* 132 F.R.D. 455,

7   483 (E.D. Mich. 1990).

8        The NCUA contends that it can skate by on inferences and sort out the

9   facts at trial.  Opp. at 17:22-27.  But the Business Judgment Rule's presumption

10  works the other way, dismissing the marginal complaint, not plumbing it for

11  inferences that might save it from dismissal.  "A hallmark of the business

12  judgment rule is that a court will not substitute its judgment for that of the board

13  if the latter's decision can be attributed to any rational business purpose."  *Berg*

14  *& Berg,* 178 Cal. App. 4th at 1045 (quotations omitted).  The FAC's attempts to

15  find flaws in Defendants' methods of tracking and budgeting do not come close

16  to raising a plausible inference that Defendants' actions lacked "any rational

17  business purpose."

18  **3.**      **The Court can and should apply the Business Judgment Rule on a**

19       **motion to dismiss.**

20       It is settled law in California that the application of the Business Judgment

21  Rule is a question of law that is appropriate to decide on a motion to dismiss or

22  demurrer.  *Berg & Berg,* 178 Cal. App. 4th at 1045.  The burden is on the

23  plaintiff to plead facts that overcome the Rule's presumption of informed,

24  disinterested director actions.  *Id.*  The NCUA does not even attempt to

25  distinguish *Berg & Berg* on this point.  *See* Opp. at 11:24-12:3.  The NCUA

26  attempts to distinguish *Barnes v. State Farm Mut. Auto. Ins. Co.*, 16 Cal. App.

27  4th 365, 20 Cal. Rptr. 2d 87 (1993), *Lee,* 50 Cal. App. 4th at 694, and *Fairchild*

28  *v. Bank of America*, 192 Cal. App. 2d 252, 13 Cal. Rptr. 491 (1961) on the basis

1   that those plaintiffs sought declaratory or injunctive relief, and not money

2   damages.  Opp. at 12 n.7.  This is a distinction without a difference:  it is absurd

3   to say that the Business Judgment Rule disappears precisely when it is most

4   needed – when a plaintiff seeks to collect billions of dollars from individuals.

5   Those opinions said nothing suggesting that the Business Judgment Rule applies

6   only to equitable remedies; rather, they applied the Rule because the complaints

7   there suffered from the same defects as the FAC here.[5]

8        *McMichael v. United States Filter Corp.,* No. EDCV 99-182 VAP (MCx),

9   2001 U.S. Dist. LEXIS 3918 (C.D. Cal. Feb. 26, 2001), applied Delaware law,

10   but Delaware law is similar to California law on this point, and the court

11   employed well-established principles under Fed. R. Civ. P. 12(b)(6).  While the

12   court noted an exculpatory clause in the certificate of incorporation, it

13   nevertheless addressed the merits of the duty of care claim and ruled that the

14   complaint failed to overcome the Business Judgment Rule.  *See id.* at *29 n.10,

15   *32-*43.  *Findley v. Garrett*, 109 Cal. App. 2d 166, 178, 240 P.2d 421, 429

16   (1952), also demonstrates that whether or not an exception to the Business

17   Judgment Rule has been adequately pled is a question of law.  Thus, the *Findley*

18   court affirmed the sustaining of a demurrer, saying "[t]he board of directors may

19   make incorrect decisions, as well as correct ones, so long as it is faithful to the

20   corporation and uses its best business judgment."  109 Cal. App. 2d at 178.

21        Citing cases involving personal injury, passing counterfeit bills and

22   _____

23   [5]   *See Barnes*, 16 Cal. App. 4th at 379 n.14 (emphasizing trial court's

24   observation that "there must be a showing of facts that would set forth, and not just in a conclusory way . . . a lack of merit in the manner in which [the

25   directors'] work is performed . . . ."); *Lee*, 50 Cal. App. 4th at 716 (dismissing complaint in the absence of "allegations tending to show that [directors']

26   conclusions were based upon inadequate information . . . ."); *Fairchild*, 192 Cal. App. 2d at 258 (holding that it "appears from the face of the

27   complaint [directors' judgment] has been and will be performed in good faith and in the exercise of its best business judgment.").

28

1    landlord-tenant disputes, the NCUA argues that breach of duty is generally a

2    question for the finder of fact.  Opp. at 11:2-14.  These cases have nothing to do

3    with the duties of directors and officers, and nothing to do with the presumption

4    created by the Business Judgment Rule.  Under both California and federal

5    precedents, it is appropriate for courts to decide the application of the Business

6    Judgment Rule on a motion to dismiss.  Where, as here, a plaintiff fails to plead

7    facts to overcome the Business Judgment Rule, the complaint must be dismissed

8    for failure to state a claim.

9    **4.      The Business Judgment Rule applies to officers such as Burrell.**

10            The NCUA argues that the Business Judgment Rule does not apply to

11   Burrell as a non-director officer.  Opp. at 19:24-20:6, citing *Gaillard v. Natomas*,

12   208 Cal. App. 3d 1250, 1265, 256 Cal. Rptr. 702, 711 (1989).  *Gaillard,*

13   however, merely addressed Corporations Code section 309, which speaks only to

14   directors, and did so in the context of a claim implicating the duty of loyalty, and

15   not merely the duty of care.  *Id.*[6]  *Gaillard* did not address the broader common-

16   law Business Judgment Rule.  *See* discussion in Part II.A.1 above.  A subsequent

17   California opinion has applied the Business Judgment Rule to an officer/director

18   acting as an officer and not as a participant in a board decision.  *Biren v. Equality*

19   *Emergency Medical Group, Inc.*, 102 Cal. App. 4th 125, 125 Cal. Rptr. 2d 325

20   (2002).  *Gaillard*'s limitation of section 309 is not the last word on applying the

21   Business Judgment Rule to officers in California.

22            Respected authorities on corporate law agree that the Business Judgment

23   Rule should apply to officers.  The American Law Institute's *Principles of*

24   *Corporate Governance: Analysis and Recommendations* applies the Business

25   Judgment Rule to officers and directors alike.  *Principles of Corporate*

26   _____

27   [6]   *Gaillard* also involved conflicts of interest:  acts by officers to secure benefits
      for themselves.  *Id.* at 1265-66.  The FAC's First and Second Claims allege
28    no such conflict of interest here.

1    *Governance* § 4.01 (Am. Law Inst. 2005); *see also id.* cmt. a ("Sound public

2    policy points in the direction of holding officers to the same duty of care and

3    business judgment standards as directors, as does the little case authority that

4    exists . . . .").  The ABA Committee on Corporate Laws echoes this idea in the

5    commentary to the Model Business Corporation Act, which applies the Business

6    Judgment Rule to officers.  *See* 2 Model Bus. Corp. Act Annotated § 8.42,

7    Official Comment at 8-347 (4th ed. 2008) ("[T]he business judgment rule will

8    normally apply to decisions within an officer's discretionary authority.").  It is

9    unsurprising that the majority of commentators support the application of the

10   Rule to officers because the "[s]ound public policy" that underlies the Rule

11   applies equally to officers and directors.  Like directors, officers should not be

12   deterred from weighing business risk against business reward by the specter of

13   billion-dollar judgments.  And the risk of judicial second-guessing and hindsight

14   bias affects judicial review of officers' decisions just as much as it affects

15   judicial review of directors' decisions.  Thus, the Rule should protect both.

16   **B.      The FAC's Second Claim must be dismissed.**

17   **1.      The federal gross negligence "floor" does not apply in California.**

18           The directors' moving papers demonstrate that, under *Atherton v. FDIC*,

19   519 U.S. 213, 117 S. Ct. 666 (1997) and *FDIC v. Castetter,* 184 F.3d 1040,

20   1043-44 (9th Cir. 1999), the federal gross negligence statutes (12 U.S.C.

21   §§ 1821(k) and 1787(h)) do not apply in California.  This is true because

22   California – unlike some states – does not require a showing of more culpability

23   than gross negligence to hold a director or officer liable.  Doc. 96-1, at 18:15-22.

24           Citing *FDIC v. McSweeney*, 976 F.2d 532, 537 (9th Cir. 1992), the NCUA

25   argues that "[t]he first sentence of [12 U.S.C.] § 1821(k) authorizes the FDIC to

26   bring claims alleging gross negligence as a matter of federal law" – whatever

27   California law may provide.  Opp. at 20:14-20 (quoting *McSweeney*, 976 F.2d at

28   537).  But *McSweeney* predates by five years *Atherton*'s definitive treatment of

1   the statute and thus is no longer good law on this point.  This Court should look

2   instead to *FDIC v. Castetter,* the Ninth Circuit case that post-dates and relies on

3   *Atherton*.  *Atherton* held that 12 U.S.C. § 1821(k) (and by analogy 12 U.S.C.

4   § 1787(h)) "sets a 'gross negligence' floor, which applies as a *substitute* for state

5   standards that are more relaxed." *Atherton,* 519 U.S. at 216 (emphasis added).

6   Citing *Atherton*, *Castetter* held that "[b]ecause the simple negligence standard

7   [of California law] is stricter than the gross negligence standard provided for in

8   12 U.S.C. § 1821(k) . . . California law is the applicable standard for assessing

9   liability in this instance under *Atherton*." *Castetter*, 184 F.3d at 1043-44.

10        Unable to muster any post-*Atherton* authority for its position, the NCUA

11  next argues that "[i]f Section 1821(k) or Section 1787(h) simply did not apply

12  when state law imposed a simple negligence standard, there would be no need for

13  the savings clause."  Opp. at 21:3-5; *see also* Opp. at 20:21-21:16.  This

14  argument ignores *Atherton*'s square holding.  *Atherton* first held that there was

15  no federal common law standard for director and officer liability – at least not

16  one that had survived *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817,

17  822 (1938).  *Atherton*, 519 U.S. at 217-26.  *Atherton* then considered the

18  interplay between the federal gross negligence statute and state laws.  At the time

19  when Congress enacted sections 1787(h) and 1821(k), a number of states, faced

20  by the savings and loan crisis of the 1980's, were under political pressure to

21  make the law harder for plaintiffs, and easier for directors and officers, by raising

22  the culpability standard from gross negligence to intentional misconduct or even

23  higher. *Id.* at 228.   After reviewing the statutory language and legislative

24  history, the Court held that Congress intended state law to govern if state law

25  requires a plaintiff only to show gross or simple negligence, but section 1821(k)

26  to take effect if state law requires a plaintiff to show more than gross negligence.

27  *Id.* at 227-28, 231.  Or, as the Court put it, "[w]e conclude that state law sets the

28  standard of conduct as long as the state standard (such as simple negligence) is

1    stricter than that of the federal statute.  The federal statute nonetheless sets a

2    'gross negligence' floor, which applies as a substitute for state standards that are

3    more relaxed." *Atherton*, 519 U.S. at 216 ("relaxed" in this sense being from the

4    point of view of the defendant, not the plaintiff).  Thus, contrary to the NCUA's

5    revisionist history, the federal statute does not apply, because California law

6    requires only simple negligence – exactly as *Castetter* held.  *Castetter*, 184 F.3d

7    at 1043-44.[7]

8    **2.      The FAC does not allege facts that rise to the level of gross negligence.**

9            Even if the NCUA could state a claim for gross negligence under

10   12 U.S.C. § 1787(h), the FAC fails to allege facts sufficient to make the success

11   of such a claim "plausible" under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

12   127 S. Ct. 1955 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

13           California law defines "gross negligence" as a "want of even scant care"

14   or "an extreme departure from the ordinary standard of conduct."  *City of Santa*

15   *Barbara v. Superior Court*, 41 Cal. 4th 747, 754, 62 Cal. Rptr. 3d 527, 531-32

16   (2007) (quotations omitted).  Because the phrase "gross negligence" is "devoid

17   of all real content," some courts have interpreted it as requiring willful

18   misconduct or recklessness.  *Decker v. City of Imperial Beach*, 209 Cal. App. 3d

19   349, 358, 257 Cal. Rptr. 356, 361 (1989) (quotations omitted).  No matter which

20   standard applies, the Second Claim should be dismissed because the FAC fails to

21   allege facts that amount to gross negligence.

22           The NCUA does not dispute that complaints that fail to allege facts

23   demonstrating an "extreme departure from the ordinary standard of conduct" are

24   properly dismissed on motion.  Opp. at 22:20-21.  The NCUA's reliance on

25   *Decker* for the proposition that gross negligence is a question of fact (*id.*) is

26   _____

27   [7]    Because the federal statute does not apply, the point made in the Opposition at 21 n.10 about how California deals with statutory claims of gross

28          negligence has no relevance.  There is no statutory claim here.

1    particularly misplaced, because the *Decker* court found no gross negligence as a

2    matter of law.  209 Cal. App. 3d at 362.  As the court recognized, gross

3    negligence is often a question of fact, "but not always."  *Id.* at 358 (citing *Devito*

4    *v. Cal.,* 202 Cal. App. 3d 264, 272, 248 Cal. Rptr. 330, 335 (1988)).

5           *Decker,* though factually dissimilar (it involved a bungled attempt to

6    rescue a surfer, *id.* at 352-53), illustrates what is wrong with the FAC's nit-

7    picking approach to Defendants' investment management.  The plaintiff in

8    *Decker* argued that the City was grossly negligent "because the rescue personnel

9    elected to try two methods to rescue [the surfer] but failed to try a third method."

10   *Id.* at 361.   The Court of Appeal rejected the plaintiff's claim of gross

11   negligence as a matter of law, reasoning:  "To avoid a finding of gross

12   negligence, it is not required that a public entity must pursue all possible options.

13   It is required only that they exercise some care, that they pursue a course of

14   conduct which is not an extreme departure from the ordinary standard of

15   conduct."  *Id.* (quotation omitted).  *See also Devito*, 202 Cal. App. 3d at 272.

16          Here too it is appropriate to dismiss the gross negligence claim as a matter

17   of law because the FAC admits that the Directors exercised "some care."  The

18   FAC admits that Defendants adopted an annual budget that contained detailed

19   information.  FAC ¶ 65.  The FAC admits that Defendants adopted policies

20   specifying concentration limits for its investment securities and periodically

21   amended the polices to change limits or impose new limits.  FAC ¶ 69.  The FAC

22   admits that Defendants tracked and reported investments by rating (AAA or AA)

23   and by FICO score (prime, alt-A, and subprime).  FAC ¶ 71.  The FAC admits

24   that Defendants adopted concentration limits for the investments at issue, and did

25   not exceed them.  FAC ¶¶ 69, 73.  The FAC admits that Defendants attended

26   ALCO meetings, where they received presentations about the state of the

27   economy generally and WesCorp's investment strategy specifically.  FAC ¶ 74.

28   And the FAC admits that Defendants adjusted WesCorp's investment strategy

1    based on the information presented at the ALCO meetings, first decreasing

2    investments in AA-rated securities and then stopping investments in MBS

3    altogether.  FAC ¶¶ 62-64, 75-77.  At the very least, these admissions

4    demonstrate that the Directors exercised "some care."  Just as the *Decker*

5    plaintiff's nitpicking regarding which particular rescue methods the City should

6    have used did not amount to gross negligence as a matter of law, the NCUA's

7    nitpicking regarding which particular tracking methods should have been used or

8    which specific concentration limits should have been adopted or how much

9    WesCorp should have borrowed (*see* Opp. at 22:15-19) does not, as a matter of

10   law, rise to the level of gross negligence.[8]

11          In support of its gross negligence claim, the NCUA argues that the FAC

12   "alleges that the acts and omissions of the moving defendants caused the failure

13   of the largest retail corporate credit union in the United States."  Opp. at 23:7-9.

14   This statement is representative of the shortcomings of the FAC:  it attempts to

15   overwhelm the reader with the specter of big damages while saying nothing

16   factually that might establish the liability of Defendants.

17          Because the FAC does not allege facts to show that it is "plausible" that

18   Defendants were grossly negligence, the Second Claim must be dismissed.

19

20

21   _____

22   [8]   The other cases the NCUA cites in its discussion of gross negligence (Opp. at
     21:19-22:21) are factually dissimilar from this case.  *Fox v. Hale & Norcross*
23   *Silver Min. Co.*, 108 Cal. 369, 41 P. 308 (1895) is a dated case regarding a
     conspiracy involving corporate directors.  Even if the case was decided under
24   relevant modern standards of director duties, the FAC does not allege that
     Defendants completely abdicated responsibility to others, as was the case in
25   *Fox*.  *Id.* at 387.  *Van Meter v. Bent Construction Co.*, 46 Cal. 2d 588, 590,
     297 P.2d 644, 645 (1956), involved a contract between a contractor and
26   subcontractor, and *City of Santa Barbara*, 41 Cal. 4th at 747, involved a
     contractual release for gross negligence in the context of a wrongful death
27   suit.  Neither case is at all on point.

28

**C.    The statute of limitations bars the First and Second Claims as to Cheney, Rhamy and Updike.**

**1.    The First Claim does not plead wrongdoing in the limitations period.**

As noted in our moving papers (Doc. 96-1, at 22:12-27) and in the Opposition (Opp. at 23:16-26), the Court is constrained to apply the four-year catch-all statute of limitations.  Thus, the question presented is whether the First Claim accrued within four years before the date of the conservatorship, March 19, 2009.  *See* FAC ¶ 1.

The NCUA argues that "[t]he claims against the officers and directors accrued at the time the questionable securities were purchased."  Opp. at 23:27-24:2 (citing *FDIC v. Jackson,* 133 F.3d 694, 696-697 (9th Cir. 1998) (construing Arizona law)).  For purposes of this motion, we are willing to assume that *arguendo*, despite the obvious irrelevance of Arizona law to this case.

The NCUA next argues that its "claims are based on purchases of private label MBS in 2006 and 2007" and thus are timely.  Opp. at 24:2-3.  This argument is backed by no citation to the FAC and finds no support in the FAC.  Nowhere does the FAC allege any purchases of "questionable securities" in 2006 or 2007 – or 2005, for that matter. [9]  Indeed, *nowhere does the FAC ever actually specify the names and dates of purchase of any "questionable securities," or who approved the purchase*.  All the FAC does is list the dollar amount of WesCorp's total assets annually since 2002 and suggest that the concentration of AA-rated securities declined after 2005.  *See, e.g.,* FAC ¶¶ 45-47, 63.

In the hands of a private plaintiff without access to pre-filing discovery, such vague and conclusory allusions would not state a claim against these three

---

[9]    Cheney left the board in February 2006, and Updike and Rhamy in April 2006.  FAC ¶¶ 17, 20, 21.  Thus, purchases of "questionable securities" would have to be before their departure dates and after March 19, 2005 to have any conceivable relevance to them.  No such purchases are alleged.

1   defendants.  *A fortiori*, in the hands of a government agency that had total control

2   of WesCorp's documents and personnel for 18 months before filing the FAC

3   (and had on-site real-time access to WesCorp's business records back when

4   investments were being made), such vagueness cannot possibly be excused.

5   **2.     The Second Claim is time-barred and cannot be resurrected.**

6          Citing clear Ninth Circuit authority, our moving papers demonstrated that

7   the NCUA could not revive claims that were time-barred as of the date of the

8   conservatorship.  Doc. 96-1, at 21:16-22:4 (citing *McSweeney*, 976 F.2d at 534).

9   *McSweeney* interpreted 12 U.S.C. § 1821(d)(14), the FDIC analogue to NCUA's

10  12 U.S.C. § 1787(b)(14), holding that section 1821(d)(14) – while giving the

11  regulator three years *after* imposition of a conservatorship to bring tort claims

12  against former officers and directors – does not revive claims for which the state-

13  law statute of limitations has expired *before* the date of receivership.

14  *McSweeney*, 976 F.2d at 534.

15         Noting that the FDIC in *McSweeney* asserted only a state-law claim

16  (breach of fiduciary duty), the NCUA argues that the "no-resurrection" rule

17  applies only to state-law claims that the NCUA acquired from WesCorp, not to

18  federal claims created by the NCUA as conservator.  Opp. at 24:5-27.  The

19  NCUA cites no authority so holding, and the argument is wrong:

20         *First*, *McSweeney* does not hold, or even suggest, that federal claims are

21  exempt from the no-resurrection rule.  Nor do other circuits that have construed

22  section 1821(d)(14).  *See RTC v. Armbruster*, 52 F.3d 748, 750 (8th Cir. 1995);

23  *RTC v. Artley*, 28 F.3d 1099, 1101-02 (11th Cir. 1994); *FDIC v. Dawson*, 4 F.3d

24  1303, 1306-07 (5th Cir. 1993); *FDIC v. Regier Carr & Monroe*, 996 F.2d 222,

25  225 (10th Cir. 1993); *RTC v. Bright*, 872 F. Supp. 1551, 1570 (N.D. Tex. 1995).

26  Indeed, courts that have considered whether a conservator or receiver of a failed

27  financial institution can assert gross negligence claims against the institution's

28  former directors and officers have held that state statutes of limitations govern

1   such gross negligence claims, which cannot be revived once the state statute has

2   run.  *Artley*, 28 F.3d at 1101-03; *Bright*, 872 F. Supp. at 1570.[10]  These cases

3   completely undermine the NCUA's theory.[11]

4        *Second*, the NCUA's argument is even weaker than it would be in the

5   hands of the FDIC/RTC, which (as shown) has had no luck arguing against the

6   no-resurrection rule.  The FDIC/RTC, at least, had a statutory basis for

7   resurrecting certain expired claims, albeit one limited to state-law claims for

8   "fraud" or "intentional misconduct," that expired not more than five years before

9   the imposition of the conservatorship.  *See* 12 U.S.C. § 1821(d)(14)(C) ("Revival

10  of expired State causes of action.").  But the NCUA's comparable statute,

11  12 U.S.C. § 1787(b)(14), contains no revival statute like subsection (C).  The

12  NCUA has contemplated asking Congress for such a revival statute, but has not

13  done so, much less succeeded in obtaining such a statute from Congress.

14  _____

15  [10]  The NCUA overlooks *Artley* and *Bright*, and relies instead on a trio of
16  irrelevant cases.  *King v. United States,* 301 F.3d 1270, 1277 (10th Cir. 2002),
17  cited by the NCUA for the proposition that a federal statute of limitations
    must govern a gross-negligence claim under 12 U.S.C. § 1787(h) (Opp. at
18  24:5-15), has nothing to do with section 1787, or section 1821, or statutes of
    limitation.  *Bunnell v. Dep't of Corrections,* 64 Cal. App. 4th 1360, 1369, 76
19  Cal. Rptr. 2d 58 (1998) holds merely that where a federal statute of
    limitations expressly governs a federal claim, that statute governs and state
20  statutes of limitations do not.  *LLP Mortg. v. Bizar*, 126 Cal. App. 4th 773,
    777-78, 24 Cal. Rptr. 3d 598, 602 (2005) holds merely that a federal statute of
21  limitations governs federal Small Business Administration loans (citing both
    federal and California opinions so holding with respect to SBA loans).
22
    [11]  Only two pre-*Atherton* cases suggest otherwise, and neither is persuasive
23  here.  In *RTC v. O'Bear, Overholser, Smith & Huffer*, 840 F. Supp. 1270,
    1280-81 (N.D. Ind. 1993), the court held that section 1821(k) created an
24  independent federal cause of action that was unaffected by state statutes of
    limitation.  As discussed above in Part II.B.1, *Atherton* and *Castetter* made
25  clear that section 1821(k) does not create such an independent cause of action
    in California.  *O'Bear*'s holding – if it survived *Atherton* at all – is therefore
26  irrelevant here.  *RTC v. Zimmerman*, 853 F. Supp. 1016, 1021 (N.D. Ohio
    1994) relied on *O'Bear* without further discussion (defendants had conceded
27  the point), and can be disregarded for the same reasons.
28

- 21 -

1    *Third*, lacking any basis in relevant statutes or case law to resurrect

2    expired claims, the NCUA cites a pair of cases that predate sections 1821(k) and

3    1787(h) and therefore say nothing about these statutes, or about sections

4    1821(d)(14) and 1787(b)(14), or indeed about any federal claim.  Opp. at 24:16-

5    27 (citing *FDIC v. Former Officers & Directors of Metro. Bank*, 884 F.2d 1304

6    (9th Cir. 1989) and *Guaranty Trust Co. v. United States*, 304 U.S. 126, 142, 58

7    S. Ct. 785 (1938)).

8    *Fourth*, adopting the NCUA's interpretation would permit the NCUA to

9    revive claims stretching back decades simply by imposing a conservatorship and

10   suing within three years.  Other courts have refused to implement such an

11   interpretation for claims under section 1821(k) for precisely that reason, holding

12   that Congress could not possibly have intended to give FDIC/RTC (and, by

13   analogy, the NCUA) such sweeping revival powers.  *See Artley*, 28 F.3d at 1102-

14   03; *Bright*, 872 F. Supp. at 1570.  As the *Artley* court put it, "this approach would

15   permit the RTC to resurrect claims stale from the early twentieth century.  The

16   evidence that Congress intended such a sweeping recovery right is not

17   persuasive."  *Artley*, 29 F.3d at 1102 n.6 (quotation omitted).

18   Thus, the NCUA has no legal basis to revive expired claims, be they state

19   or federal.  And its Opposition does not even attempt to show that the FAC

20   alleges misconduct by Cheney, Rhamy or Updike within two or three years (*see*

21   Doc. 96-1, at 22:28-24:11) of the imposition of the conservatorship.  *See* Opp. at

22   24:4-27.  Accordingly, the Second Claim must be dismissed as to Cheney,

23   Rhamy and Updike.

24   **D.    Dismissal should be without leave to amend.**

25   Our moving papers explained why the NCUA, after 18 months of

26   investigation and total control of the evidence, should not be granted leave to

27   amend.  *See* Doc. 96-1, at 24:12-25.  The NCUA does not even attempt to

28   address this point or our authorities.

1   **III.   CONCLUSION.**

2        For each of the foregoing reasons, the FAC should be dismissed without

3   leave to amend.

4        Dated:  December 6, 2010.

5                          PILLSBURY WINTHROP SHAW PITTMAN LLP
                           REYNOLD L. SIEMENS  #177956
6                          Email:  reynold.siemens@pillsburylaw.com
                           725 South Figueroa Street, Suite 2800
7                          Los Angeles, CA 90017-5406
                           Telephone:  (213) 488-7100
8                          Facsimile:  (213) 629-1033

9                          PILLSBURY WINTHROP SHAW PITTMAN LLP
                           BRUCE A. ERICSON  #76342
10                         Email:  bruce.ericson@pillsburylaw.com
                           GEORGE ALLEN BRANDT  #264935
11                         Email:  allen.brandt@pillsburylaw.com
                           50 Fremont Street
12                         Post Office Box 7880
                           San Francisco, CA  94120-7880
13                         Telephone: (415) 983 1000
                           Facsimile: (415) 983 1200

14

15

16                         By _____/s/ Bruce A. Ericson_____
                                    Bruce A. Ericson

17                         Attorneys for Defendants Robert John Burrell, William
                           Cheney, Gordon Dames, Robert H. Harvey, Jr., James
18                         Jordan, Timothy M. Kramer, Robin Lentz, John M. Merlo,
                           Warren Nakamura, Brian Osberg, David Rhamy and
19                         Sharon Updike

20

21

22

23

24

25

26

27

28