BRAD D. BRIAN (State Bar No. 079001)
Brad.Brian@mto.com
RICHARD E. DROOYAN (State Bar No. 065672)
Richard.Drooyan@mto.com
LAURA D. SMOLOWE (State Bar No. 263012)
Laura.Smolowe@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Attorneys for Defendants
Robert A. Siravo and Thomas E. Swedberg

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT A. SIRAVO, TODD M. LANE, ROBERT J. BURRELL, THOMAS E. SWEDBERG, TIMOTHY T. SIDLEY, ROBERT H. HARVEY, JR., WILLIAM CHENEY, GORDON DAMES, JAMES P. JORDAN, TIMOTHY KRAMER, ROBIN J. LENTZ, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE,<br><br>Defendants. | CASE NO. CV10-01597 GW (MANx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COUNTS FIVE AND SIX OF SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6), MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF THOMAS E. SWEDBERG FILED CONCURRENTLY HEREWITH**<br><br>Judge:   Honorable George Wu<br>Date:    June 9, 2010<br>Time:    8:30 a.m. |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 9, 2011, at 8:30 a.m. or as soon thereafter as counsel may be heard, in the courtroom of the Honorable George Wu,

in the United States District Court, 312 North Spring Street, Courtroom 10, Los Angeles, California, 90012, **Defendants Robert A. Siravo and Thomas E. Swedberg** will and hereby do move this Court to dismiss Counts Five (for breach of fiduciary duty) and Six (for fraud) of the Second Amended Complaint ("SAC") with prejudice for failure to state a claim upon which relief can be granted.  This motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) and is made on the following grounds: (1) None of the purported misrepresentations regarding the Supplemental Executive Retirement Program (the "SERP") that form the bases of these causes of action were false; (2) the purported failure to disclose information to the Board of Directors regarding the intention of the SERP is contradicted by the SAC; (3) Plaintiff relies on *drafts* of documents that were never actually used; and (4) Plaintiff's claim that Defendants breached their fiduciary duties by paying themselves more money than authorized by the Board of Directors is contradicted by the SAC and Exhibit 1 to the SAC.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Declaration of Thomas E. Swedberg filed concurrently herewith, any reply papers submitted in support of this motion, oral argument of counsel, the complete files and records in this matter, and such additional matters as the Court may deem it appropriate to consider.  This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 13, 2011.

DATED: April 18, 2011                    MUNGER, TOLLES & OLSON LLP
                                                                     Richard E. Drooyan
                                                                     Laura D. Smolowe

                                       By:      */s/ Richard E. Drooyan*
                                                          RICHARD E. DROOYAN

                                     Attorneys for Defendants
                                     ROBERT A. SIRAVO AND
                                     THOMAS E. SWEDBERG

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. PROCEDURAL HISTORY ....................................................................................2

III. RELEVANT ALLEGATIONS ...............................................................................4

IV. LEGAL STANDARD .............................................................................................7

V. ARGUMENT ..........................................................................................................8

    A. None Of The Representations In Mr. Swedberg's November 2, 2007 Memorandum To The Board Were False .....................................9

    B. The Purported False Statements In Drafts Of Exhibit 1 Cannot Support Counts Five or Six Because They Were Never Presented To The Board And Are Taken Out Of Context..................13

    C. The Allegation That Defendants Failed To Advise The Board Of An Overpayment To Siravo Fails Because He Received Less SERP Money Than The Board Authorized, Not More.......................13

VI. CONCLUSION .....................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) .......................................................7, 12

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007) ....................................7

*Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*,
 No. C 09-4485 JF, 2010 WL 2573386 (N.D. Cal. June 23, 2010)......................9

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*,
 896 F.2d 1542 (9th Cir. 1989)..............................................................................8

*In re Bare Escentuals, Inc. Securities Litigation*,
 No. C 09-3268 PJH, 2010 WL 3893622 (N.D. Cal. Sept. 30, 2010)...................8

*Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*,
 267 F. Supp. 726 (S.D. Cal. 1966) ............................................................... 11, 13

*Neu v. Terminix Inter'l Co.*,
 No. C 07-6472 CW, 2008 WL 2951390 (N.D. Cal. Jul. 24, 2008)....................10

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001)............................................................................7, 9

*Van Buskirk v. Cable News Network, Inc.*,
 284 F.3d 977 (9th Cir. 2002)................................................................................8

**STATE CASES**

*Corson v. Brown Motel Inv., Inc.*,
 87 Cal. App. 3d 422, 151 Cal. Rptr. 385 (1978) .......................................... 11, 13

*K. & M., Inc. v. LeCuyer*,
 107 Cal. App. 2d 710, 238 P.2d 28 (1962).........................................................10

*Pellegrini v. Weiss*,
 165 Cal. App. 4th 515, 81 Cal. Rptr. 3d 387 (2008) ......................................8, 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Perlas v. GMAC Mortg., LLC*,
  187 Cal. App. 4th 429, 113 Cal. Rptr. 3d 790 (2010) ......................... 8, 9, 11, 13

*Silver v. Shemanski*,
  89 Cal. App. 2d 520, 201 P.2d 418 (1949) .......................................................... 10

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(6) ....................................................... 2, 7, 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **INTRODUCTION**

In the Second Amended Complaint (the "SAC"), Plaintiff National Credit Union Administration ("NCUA" or "Plaintiff") -- now as Liquidating Agent for Western Corporate Federal Credit Union ("WesCorp") -- has re-asserted verbatim the same allegations against Defendants Robert Siravo and Thomas Swedberg based on changes made to WesCorp's Supplemental Executive Retirement Plans ("SERP").

As before, the SAC acknowledges that these changes -- including their full financial impact -- were explicitly disclosed to the WesCorp Board of Directors, which approved them. Notably, the SAC does not address the one issue that was raised by this Court in its tentative ruling, and that was discussed at the hearing on the Defendants Motion to Dismiss NCUA's SERP claims in the FAC (the "Motion to Dismiss").

Based upon the NCUA's response to the Motion to Dismiss, this Court observed in its tentative ruling that an allegation of a "failure to disclose . . . a *quid pro quo* arrangement" would be sufficient to state a claim for relief. As was noted at the hearing, however, the FAC never made such an allegation. Rather, the only non-disclosure alleged in the FAC was that Defendants Siravo and Swedberg failed to disclose to the board that the amendments "were simply intended to increase the size of the lump sum payments to Siravo," (FAC ¶ 87), and this alleged non-disclosure was contradicted by the FAC itself. The SAC repeats verbatim this allegation, but it does not allege that Defendants Siravo and Swedberg failed to disclose a *quid pro quo* arrangement, presumably because it was well known that the changes to Siravo's SERP would also be made to the Executives' SERP.

As before, the NCUA's claim for fraud (Count Six in the SAC) fails because Defendants Siravo and Swedberg did not make any false representations to the

1. Board or its Executive Committee, which recommended the changes to the Board.
2. As the SAC, Exhibit 1 to the SAC, and Mr. Swedberg's PowerPoint presentation
3. referenced in the SAC (the "PowerPoint") make plain, the purported grounds for
4. the falsity of the representations consist of facts and circumstances that have
5. nothing to do with the representations at issue.
6.     The SAC alleges that Mr. Swedberg made false representations to the
7. WesCorp Board about the intention of the SERP program when it was initially
8. developed in 2001 by comparing his representations to the intention of the parties
9. when Mr. Siravo's SERP was negotiated a year later in 2002. However, these are
10. two entirely different events. The SAC's allegations that Mr. Swedberg misled the
11. Board make no sense and are contradicted elsewhere in the SAC.
12.     Because the NCUA's breach of fiduciary duty claim (Count Five in the SAC)
13. rests entirely on the same alleged misrepresentations, that claim lacks merit as well.
14. These causes of action should be dismissed with prejudice under Federal Rule of
15. Civil Procedure 12(b)(6).

16. **II.  PROCEDURAL HISTORY**

17.     The original complaint was filed in California Superior Court on November
18. 4, 2009 against a number of Defendants, including Mr. Siravo. The complaint
19. alleged two counts of negligence and breach of fiduciary duty arising out of
20. WesCorp's decision to invest in mortgage-backed securities ("MBS") before the
21. collapse of the economy. Mr. Swedberg was not named in this original complaint.
22. On March 3, 2010, the NCUA intervened and removed this case to federal court.
23. On August 31, 2010, the NCUA replaced the original plaintiffs and filed the FAC.
24.     The FAC added four new claims and several new Defendants, including Mr.
25. Swedberg. As relevant here, the FAC alleged new Counts Three and Four against
26. Defendants Siravo and Swedberg for Breach of Fiduciary Duty and Fraud. The
27. *only* allegation of non-disclosure in the FAC was that:
28.

> Rather than disclosing to the board that the amendments to the Siravo SERP were simply intended to increase the size of the lump sum payment to Siravo, Swedberg, with Siravo's knowledge and acquiescence, *concealed this fact* and instead represented to the board that the amendments were necessary to correct errors in the Siravo SERP.

(FAC ¶ 87 (emphasis added).) This allegation, however, was contradicted by Exhibit 1 to the FAC, which plainly disclosed that the proposed changes to the SERP would increase Siravo's payments from $4.863 million to $7.412 million.

On November 1, 2010, Defendants Siravo and Swedberg filed a Motion to Dismiss Counts Three and Four of the FAC. This Court's initial tentative ruling was to deny the Motion to Dismiss because Defendants did not provide "persuasive authority suggesting that their failure to disclose that they were seeking amendment to the SERP Plans in what amounted to a *quid pro quo* arrangement would not violate that duty [of disclosure to the Board] or that such information was immaterial as a matter of law." (Tentative Ruling, dated December 20, 2010, p. 22.) Although the NCUA had made reference to the concealment of the alleged *quid pro quo* arrangement in response to the Motion to Dismiss, it never made this allegation in the FAC.

On January 31, 2011, this Court issued its final ruling and granted Defendant Siravo's and Swedberg's Motion to Dismiss with, as it indicated at the hearing on the motion, leave to amend.

On February 22, 2011, the NCUA filed its SAC. With respect to the SERP claims against Defendants Siravo and SERP, the NCUA repeats verbatim in Claims for Relief 5 and 6 the allegations in the FAC, including the allegation that Swedberg concealed from the Board "this fact" that the SERP changes were intended to increase the payout to Siravo. (SAC ¶ 160.) The SAC does not allege

- 3 -

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS COUNTS 5 & 6

that Defendants Siravo and Swedberg failed to disclose a *quid pro quo* arrangement, presumably because it cannot make this allegation.

### III. RELEVANT ALLEGATIONS

The SAC alleges that in 2001 the WesCorp Board authorized a SERP for "certain high level WesCorp executives" "to encourage [them] to remain employed at WesCorp." (SAC ¶¶ 154-55.)[1] The SERP provides these executives with a lump sum payment at their expected retirement dates, if certain conditions are met. (SAC ¶ 155.) The lump sum was determined by a formula based upon the employees' "Final Compensation," which was grossed-up for taxes.[2] (SAC ¶ 157.) Mr. Swedberg was a participant in the original SERP (the "Executive SERP"). (SAC ¶ 154.) When Mr. Siravo joined WesCorp as CEO in 2002, he negotiated a similar SERP for a "similar lump sum payment" at his retirement. (SAC ¶ 156.)

In the fall of 2007, Defendants Siravo and Swedberg decided to propose amendments to the SERP plans. (SAC ¶ 158.) Siravo decided that his SERP should be amended first, and that Swedberg should make the presentation to the Board requesting the amendments because he was "disinterested." (SAC ¶ 159.) "Rather than disclosing to the board that the amendments to the Siravo SERP were simply intended to increase the size of the lump sum payment to Siravo," Swedberg "*concealed this fact.*" (SAC ¶ 160 (emphasis added).)

The SAC alleges that the Chairman of the board's compensation committee John Merlo and the Chairman of Wescorp's board Robert Harvey worked with Mr. Swedberg in developing the proposal to amend Siravo's SERP. (SAC ¶ 161.) The SAC does not allege that Merlo or Harvey were misled, and there is no claim that they misled the Board.

---

[1] The facts set forth here are based upon the allegations in the SAC, the Exhibit attached to the FAC, and the PowerPoint presentation attached as Exhibit A to the Declaration of Thomas E. Swedberg filed concurrently herewith. Defendants accept as true these allegations for the purposes of this Motion only.

[2] A tax gross-up is a multiplier used to provide an employee with the full salary promised to him, adding back the amount that would be deducted for tax.

The SAC alleges that on October 19, 2007, Mr. Swedberg emailed to Mr. Siravo a PowerPoint presentation that falsely stated that the SERP "required modification because (1) its formula currently produces a 28% shortfall and (2) new plans provide for a 67% gross-up, which 'produces a more equitable result.'" (SAC ¶ 162). The actual PowerPoint presentation, however, provided important additional background information, explaining that the existing SERP "no longer produces 48 percent income replacement due to differences" in the way that "Compensation" is determined, which is why the "SERP formula now produces a shortfall of 28%." (Swedberg Dec. ¶ 3, Ex. A at 7.) The PowerPoint also points out that the tax gross-up of 40% "was based on then current thinking," and that new identified plans "use 67%," which produces a more "equitable" *net* result. (*Id.* at 8.)

The SAC claims that Mr. Swedberg showed the PowerPoint Presentation to Mr. Merlo, who "suggested replacing it with a short memo" that "'recommended' an 'administrative change' to 'increase benefits sufficiently to achieve 48% of earnings'" and "consideration" of changing the tax multiplier to 1.67 percent. (SAC ¶ 164.) "Subsequent drafts of the memo stated that 'the SERP currently produces 37% of ending earnings versus the agreed-to 48%.'" (*Id.*) The SAC nowhere alleges that this memorandum was actually presented to the Board.

After meeting with Messrs Harvey and Merlo on October 28, 2007, Mr. Swedberg prepared a revised memorandum to Mr. Harvey proposing the changes to Mr. Siravo's SERP. The memorandum, which is attached to the SAC as Exhibit 1, was "provided to the board's executive committee (and possibly the board as a whole)[.]" (SAC ¶ 166.)

Mr. Swedberg's memorandum proposes to correct "two administrative errors in the current [SERP] plan document that are not consistent with the intent of the program *when it was initially developed*." (SAC Ex. 1 (emphasis added).) The current plan was based on a "template" developed "when no bonuses or incentive

1   pay plans existed at WesCorp and the concept of tax gross-up was not broadly
2   utilized in 457(f) Plans." (*Id.*)  The first proposed change was that "[t]he CEO's
3   bonus and incentive pay be included in the benefit calculation." (*Id*.)  The second
4   proposal was to "change the gross-up calculation" to reach the "correct tax gross-up
5   amount." (*Id*.)  The memorandum disclosed that the two changes would increase
6   the SERP pay-out to Mr. Siravo from $4.863 million to $7.412 million. (*Id*.)  On
7   November 27, 2007, the Board approved the amendments to Mr. Siravo's SERP.
8   (SAC ¶¶ 171-72.)
9         According to the SAC, on January 24, 2008, Mr. Harvey executed an
10  amended Siravo SERP document, allegedly prepared by Mr. Swedberg and
11  approved by Mr. Siravo, that "provided Siravo a larger lump sum payment than the
12  board's resolution authorized." (SAC ¶ 173.)  Elsewhere, however, the SAC
13  alleges that "WesCorp paid Siravo a lump sum SERP payment of $6,881,401,"
14  (SAC ¶ 175), which is less than the $7.412 million increase reflected in Mr.
15  Swedberg's memorandum.  (SAC Ex. 1.).
16        After the Siravo SERP was amended, "Swedberg began work on
17  amendments to the Executive SERP," which were "identical to the amendments" to
18  Mr. Siravo's SERP.  (SAC ¶ 176.)  The WesCorp Board "approved the
19  amendments to the Executive SERP at its June 24, 2008 meeting." (SAC ¶ 177.)
20        The SAC's claims for fraud and breach of fiduciary duty against Defendants
21  Siravo and Swedberg are based upon the following alleged misrepresentations and
22  omissions:
23        1.    The SAC claims that "[r]ather than disclosing to the board that
24  the amendments to the Siravo SERP were simply intended to increase the size of
25  the lump sum payment to Siravo, Swedberg, with Siravo's knowledge and
26  acquiescence, concealed this fact and instead represented to the board that the
27  amendments were necessary to correct errors in the Siravo SERP." (SAC ¶ 160.)
28

1 Exhibit 1, however, clearly discloses the amount of the increased lump sum of
2 $7.412 million.  (SAC Ex. 1.)

3     2.     The SAC claims that Defendants falsely characterized the
4 amendments as "administrative" rather than "substantive" (SAC ¶ 167), even
5 though Mr. Swedberg's memorandum *explicitly* discloses that the amendments will
6 increase Mr. Siravo's SERP pay-out by over $2.5 million.

7     3.     The SAC claims that the memorandum falsely states that the
8 current plan terms were "'not consistent with the intent of the program when it was
9 *initially* developed'" because it "'utilized an old template that dated back to [a time]
10 when no bonuses or incentive pay plans existed at WesCorp and the concept of tax
11 gross-up was not broadly utilized.'"  (SAC ¶ 167 (quoting Ex. 1) (emphasis
12 added).)  It also purportedly falsely states that the changes were necessary to
13 provide the "'agreed upon 48 percent of compensation rate'" and that the tax gross-
14 up change was required to provide the "'correct tax gross-up amount.'"  (*Id.*)  The
15 only basis in the SAC for the purported falsity of these statements is that the
16 original terms of Mr. Siravo's SERP were allegedly consistent with the intent of the
17 parties when "the terms of the Siravo SERP were being negotiated" in 2002 (SAC ¶
18 169) -- a year after the program *"was initially developed"* in 2001.  (SAC ¶ 154,
19 Ex. 1.)

20 **IV.**     **LEGAL STANDARD**

21     A motion to dismiss should be granted if the plaintiff fails to plead "enough
22 facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*
23 *Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929, 949 (2007).
24 "Where a complaint pleads facts that are merely consistent with a defendant's
25 liability, it stops short of [demonstrating an] . . . entitlement to relief." *Ashcroft v.*
26 *Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868, 884 (2009) (internal citations and
27 quotations omitted); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988
28 (9th Cir. 2001) (a court is not "required to accept as true allegations that are merely

conclusory, unwarranted deductions of fact, or unreasonable inferences"). Further, although on a motion pursuant to Rule 12(b)(6) "the court may not generally consider materials outside the pleadings," the court "may consider exhibits attached to the complaint [] and documents referenced by the complaint." *In re Bare Escentuals, Inc. Securities Litigation*, No. C 09-3268 PJH, 2010 WL 3893622 (N.D. Cal. Sept. 30, 2010) (citing *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542, 1555 n. 19 (9th Cir. 1989) and *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002)).

## V. ARGUMENT

Although the elements differ,[3] Count Five (Breach of Fiduciary Duty) and Count Six (Fraud) are based upon the same alleged misrepresentations to the Board regarding the initial SERP program and the proposed changes to increase the lump sum payout. (SAC ¶¶ 126-127 (Breach of Fiduciary Duty), 132 (Fraud.)) Because the grounds for the claims overlap entirely, as the NCUA has conceded, Count Five stands or falls with Count Six.

When Plaintiff's confusing allegations are broken down and examined closely, they disintegrate completely. The purported false representations -- most of which are taken completely out of context -- are not false. Indeed, the NCUA alleges that the representations are false by comparing them to matters that are not the subject of the representations. In addition, several alleged misrepresentations were not even presented to the Board at all and, therefore, could not have been

---

[3] The elements for fraudulent misrepresentation are "(1) the defendant represented to the plaintiff that an important fact was true; (2) that *representation was false*; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff *reasonably relied on the representation*; (6) the plaintiff was harmed; and, (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." *Perlas v. GMAC Mortg., LLC*, 187 Cal. App. 4th 429, 434, 113 Cal. Rptr. 3d 790, 794 (2010) (citations omitted) (first emphasis added). The elements for breach of a fiduciary duty are (1) the existence of a fiduciary duty; (2) a breach of the fiduciary duty; and 3) resulting damage. *Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524, 81 Cal. Rptr. 3d 387, 397 (2008).

relied upon by the Board in approving the amended SERPs. Finally, the allegation that Mr. Siravo received more money through his SERP than the Board authorized is contradicted by the SAC itself; according to the SAC, Mr. Siravo actually received *less* money than the Board authorized. As a result, these purported misrepresentations cannot form the basis of Counts Five and Six, which thereby fail as a matter of law.

### A. None Of The Representations In Mr. Swedberg's November 2, 2007 Memorandum To The Board Were False

The gravamen of Counts Five and Six is that Mr. Swedberg, with Mr. Siravo's knowledge, misrepresented the proposed changes to Mr. Siravo's SERP in his November 2, 2007 memorandum to the Board attached as Exhibit 1 to the SAC. But while the SAC is replete with strong words and conclusory allegations of fraud and mispresentation, a review of Exhibit 1 demonstrates that those allegations have no basis. *See Sprewell*, 266 F.3d at 989 (affirming dismissal where "attachments to [the] complaint prove fatal to [the] claims); *Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*, No. C 09-4485 JF, 2010 WL 2573386, at *2 (N.D. Cal. June 23, 2010) ("[A] court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint.")

As conclusively demonstrated by Exhibit 1, none of the purported misrepresentations are false. *See, e.g.*, *Perlas*, 187 Cal. App. 4th at 436-37 (dismissing fraudulent misrepresentation claim where no false representation was actually alleged). First, the SAC alleges that "[r]ather than disclosing to the board that the amendments to the Siravo SERP were simply intended to increase the size of the lump sum payment to Siravo, Swedberg, with Siravo's knowledge and acquiescence, concealed this fact and instead represented to the board that the amendments were necessary to correct errors in the Siravo SERP." (SAC ¶ 160.) Exhibit 1, however, plainly shows that Defendants did not "conceal" the increase in

1  the lump sum payment from the Board; it discloses that the amount that Siravo
2  would receive upon his retirement would increase from $4.863 million to $7.412
3  million. (SAC Ex. 1.) *See K. & M., Inc. v. LeCuyer*, 107 Cal. App. 2d 710, 715,
4  238 P.2d 28 (Cal. Ct. App. 1962) (affirming the finding of no fraud where
5  "documents disclosed all of the matters as to which it is alleged representations
6  were made").

7      This is the *only* fact that was allegedly concealed from the Board by Mr.
8  Swedberg. Notwithstanding the statements in the NCUA's response to Defendants'
9  Motion to Dismiss the FAC and the references in the Court's tentative ruling, the
10  SAC does not allege that Defendants concealed a purported *quid pro quo* that
11  Swedberg would propose Siravo's SERP in exchange for his support of changes to
12  the Executive SERP.

13      Second, the SAC claims that Defendants falsely refer to the amendments as
14  "administrative" rather than "substantive." (SAC ¶ 167.) By any measure, the
15  characterization of something as administrative versus substantive is an opinion; it
16  is not objectively one thing or another. *See, e.g.*, *Neu v. Terminix Inter'l Co.*, No. C
17  07-6472 CW, 2008 WL 2951390, at *3 (N.D. Cal. Jul. 24, 2008) ("[A]n expression
18  of opinion or belief, if nothing more, and if so understood and intended, is not a
19  representation of fact, and although false, does not amount to actual fraud."
20  (citations omitted)); *Silver v. Shemanski*, 89 Cal. App. 2d 520, 544, 201 P.2d 418,
21  433 (1949) (holding that "there was no fraud in the expression of [an] opinion").

22      Here, Exhibit 1 discloses the "substantive" financial impact that the changes
23  would have on Mr. Siravo's SERP. It is hard to understand how the Board could
24  have been misled by Mr. Swedberg's characterization of the changes as
25  "administrative" when he disclosed in the very same document that the change
26  would result in an increased pay-out of over $2.5 million. If the NCUA considers
27  that to be a substantive change, the WesCorp Board was well aware of it.

28

1   In this circumstance, whether the changes are viewed as "administrative" or
2   "substantive" is also immaterial.  The Board plainly could not have relied on that
3   characterization in making the decision to approve the changes when it had in front
4   of it a disclosure of the full financial impact.  *Perlas*, 187 Cal. App. 4th at 434
5   (misrepresentation must be "important" and plaintiff must have relied on it).

6   Third, the other purported misrepresentations in Exhibit 1 are taken
7   completely out of context.  The statements in Exhibit 1 that (1) the current plan
8   terms were "'not consistent with the intent of the program when it was *initially*
9   developed'" and "'utilized an old template that dated back to [a time] when no
10  bonuses or incentive pay plans existed at WesCorp and the concept of tax gross-up
11  was not broadly utilized,'" and  (2) "that the changes are necessary to provide the
12  'agreed upon 48 percent of compensation rate' and that the tax gross-up change is
13  required to provide the 'correct tax gross-up amount" clearly refer to the time
14  period in 2001 when the program was "*initially* developed."  (SAC ¶ 167 (quoting
15  Ex. 1 (emphasis added)).)  But Plaintiff claims that these statements are false by
16  referencing the intent of the parties in 2002 -- when "the terms of the *Siravo SERP*
17  were being negotiated."  (SAC ¶ 169 (emphasis added).)

18  Thus revealed, the NCUA has not alleged a misrepresentation at all.  Rather,
19  it has compared the intent of the company at the time the SERP program was
20  initially developed by WesCorp in 2001 to the intent of WesCorp and Siravo at the
21  time the Siravo SERP was negotiated in 2002 in an attempt to prove that the
22  representation of the company's intent in adopting the plan in 2001 was false.  Put
23  simply, this is comparing apples to oranges.  An assertion that a statement made
24  about the intent of Agreement 1 negotiated at Time A is false on the basis of the
25  parties' intent in negotiating Agreement 2 at Time B makes no sense.  As such,
26  these purported misrepresentations cannot support the NCUA's claims for fraud
27  and breach of fiduciary duty against Defendants Swedberg and Siravo.  *See, e.g.*,
28  *Corson v. Brown Motel Inv., Inc.*, 87 Cal. App. 3d 422, 428, 151 Cal. Rptr. 385,

1   388 (1978) (affirming judgment of no fraud where purported misrepresentation
2   "taken out of context"); *Monolith Portland Midwest Co. v. Kaiser Aluminum &*
3   *Chem. Corp.*, 267 F. Supp. 726, 777 (S.D. Cal. 1966) (in light of out-of-context
4   constructions plaintiff attempted to impose on relevant documents, defendant "was
5   not guilty of any conduct which might be characterized as a species of fraud").

6   Taking the allegation in paragraph 167 as true (as one must on a Motion
7   pursuant to Rule 12(b)(6)), the intent of the parties in creating the *Siravo SERP* in
8   2002 is entirely irrelevant.  Assuming that the parties did have such intent in
9   creating Siravo's SERP, they then agreed to change the contract in 2007 to be
10  consistent with the purpose of the *original* SERP plan, which was to provide a lump
11  sum supplemental retirement payment to executives based upon their compensation
12  at the time of their retirement.  The changes were recommended by Mr. Swedberg
13  because at the time the *original* SERP was created, no employee received a bonus
14  or incentive pay as part of their compensation and "the concept of tax gross-up was
15  not broadly utilized." (SAC Ex. 1.)  Those changes and their financial impact were
16  fully disclosed to the Board, which approved them.

17  For the same reason, the suggestion that Mr. Siravo also breached his
18  fiduciary duty by failing to disclose the "true nature" of the amendments when he
19  sought Board approval for the amendments to the Executive SERP several months
20  after the Board had approved the changes to his SERP also fails at the outset.  (SAC
21  ¶¶ 176-77, 223-24.)  The SAC provides absolutely no facts to support this claim,
22  and fails to specify what about the amendment's true nature was not disclosed,
23  instead hinting that the representations were false in the same manner as Mr.
24  Swedberg's were false with respect to the Siravo amendments.  (*Id.*)  However, as
25  noted above, the SAC's sole basis for claiming the representations about Mr.
26  Siravo's SERP amendments were false related to the parties' intent at the time of
27  the negotiations surrounding his SERP -- well after the earlier creation of the
28  Executive SERP.

In short, Plaintiff has alleged a muddle of contradictory allegations, but nothing even plausibly *false*. *See Iqbal*, 129 S. Ct. at 1950 (where allegations "are no more than conclusions, [they] are not entitled to the assumption of truth").

### B. The Purported False Statements In *Drafts* of Exhibit 1 Cannot Support Counts Five or Six Because They Were Never Presented To The Board and Are Taken Out Of Context

The SAC also suggests that Swedberg made false statements in a PowerPoint presentation and *drafts* of the memorandum to the Board. (SAC ¶¶ 162-64.) Viewing the entire PowerPoint presentation in context, it is apparent that the statements cited in the SAC are not false. (Compare, SAC ¶ 162 with Swedberg Dec. ¶ 3, Ex. A.) *See, e.g.*, *Corson*, 87 Cal. App. 3d at 428 (affirming judgment of no fraud where purported misrepresentation "taken out of context"); *Monolith*, 267 F. Supp. at 777 (in light of out-of-context constructions plaintiff attempted to impose on relevant documents, defendant "was not guilty of any conduct which might be characterized as a species of fraud").

Further, the SAC does not allege that the drafts were ever presented to the Board itself. Quite obviously, the Board could not have relied to its detriment on or been damaged by memoranda it never received in approving the SERP changes. *See Perlas*, 187 Cal. App. 4th at 434 (detrimental reliance and resulting damages are required elements of fraudulent misrepresentation); *Pellegrini*, 165 Cal. App. 4th at 524 (damages required in breach of fiduciary duty claims). Accordingly, these statements cannot form the basis of either a fraud claim (no reliance and no damages) or a breach of fiduciary duty claim (no damages).

### C. The Allegation That Defendants Failed To Advise The Board Of An Overpayment To Siravo Fails Because He Received *Less* SERP Money Than The Board Authorized, Not More

The SAC alleges that Defendants "had a duty to calculate Siravo's SERP payment correctly and advise the board of any error in the amendment" -- a duty which they purportedly breached. (SAC ¶ 224.) When cross referenced with Exhibit 1, it becomes clear that Plaintiff is yet again mixing and matching time periods in an attempt at confusion.

The basis for the claim that "[t]he amended Siravo SERP provided Siravo a larger lump sum payment than the board's resolution authorized" (SAC ¶ 173) is that Siravo received $6,881,401 as opposed to $4,494,351.62. (SAC ¶ 175.) Yet, as the SAC admits, the amount that the Board authorized was the $7.412 million set forth in Exhibit 1. (SAC ¶¶ 166-67, 170-73.) The $4,494,351.62 is the amount Mr. Siravo would have received under "the *original Siravo SERP*." (SAC ¶ 175 (emphasis added).) Based on the allegations in the SAC, the lump sum of $6,881,401 is not more than the Board authorized, it is *less* than the Board authorized. The SAC thus conflates the amount Siravo would have received in 2002 ($4 million) with the amount the Board authorized in 2007 ($7 million). This allegation should be rejected out of hand.

## VI. CONCLUSION

This case is about WesCorp's investment decisions, which are the subject of the motions to dismiss filed by the Officer and Director Defendants.[4] It has nothing to do with the SERP amendments, the implications of which were fully disclosed to the Board. Plaintiff mischaracterizes its own Exhibit and Mr. Swedberg's PowerPoint presentation, and it fills the SAC with out-of-context and contradictory

---

[4] Mr. Swedberg is not named as a defendant in the claims based upon these investment decisions.

statements that completely fail to allege any misrepresentation or breaches of fiduciary duty whatsoever.  Accordingly, Counts Five and Six  fail to state a claim as a matter of law, and should be dismissed with prejudice.

DATED: April 18, 2011

MUNGER, TOLLES & OLSON LLP
Richard E. Drooyan
Laura D. Smolowe

By: */s/ Richard E. Drooyan*
RICHARD E. DROOYAN

Attorneys for Defendants
ROBERT A. SIRAVO AND
THOMAS E. SWEDBERG