1   BRAD D. BRIAN (State Bar No. 079001)
    Brad.Brian@mto.com
2   RICHARD E. DROOYAN (State Bar No. 065672)
    Richard.Drooyan@mto.com
3   LAURA D. SMOLOWE (State Bar No. 263012)
    Laura.Smolowe@mto.com
4   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue
5   Thirty-Fifth Floor
    Los Angeles, CA  90071-1560
6   Telephone:   (213) 683-9100
    Facsimile:    (213) 687-3702
7
    Attorneys for Defendant
8   Robert A. Siravo

9   [Attorneys for remaining Officer Defendants listed
    separately on next page]
10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION,<br><br>                    Plaintiff,<br><br>      vs.<br><br>ROBERT A. SIRAVO, TODD M. LANE, ROBERT J. BURRELL, THOMAS E. SWEDBERG, TIMOTHY T. SIDLEY, ROBERT H. HARVEY, JR., WILLIAM CHENEY, GORDON DAMES, JAMES P. JORDAN, TIMOTHY KRAMER, ROBIN J. LENTZ, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE,<br><br>                    Defendants. | CASE NO. CV10-01597 GW (MANx)<br><br>**NOTICE OF MOTION AND MOTION OF OFFICER DEFENDANTS TO DISMISS THE FIRST CLAIM FOR RELIEF OF THE SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6), MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:      Honorable George Wu<br>Date:       June 9, 2010<br>Time:       8:30 a.m. |

PILLSBURY WINTHROP SHAW PITTMAN LLP
REYNOLD L. SIEMENS #177956
Email: reynold.siemens@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone:   (213) 488-7100
Facsimile:    (213) 629-1033
PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON #76342
Email: bruce.ericson@pillsburylaw.com
GEORGE ALLEN BRANDT #264935
Email: allen.brandt@pillsburylaw.com
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone:   (415) 983-1000
Facsimile:    (415) 983-1200

Attorneys for Defendants
Robert John Burrell, William Cheney, Gordon Dames,
Robert H. Harvey, Jr., James Jordan, Timothy M.
Kramer, Robin Lentz, John M. Merlo, Warren
Nakamura, Brian Osberg, David Rhamy and
Sharon Updike

KENT B. GOSS (State Bar No. 131499)
kgoss@orrick.com
SETH E. FREILICH (State Bar No. 217321)
sfreilich@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017-5855
Telephone:   (213) 629-2020
Facsimile:    (213) 612-2499

Attorneys for Defendant
Timothy T. Sidley

CHAPIN FITZGERALD SULLIVAN LLP
Kenneth M. Fitzgerald, Esq. (SBN: 142505)
kfitzgerald@cfslawfirm.com
Curtis G. Carll, Esq. (SBN: 248470)
ccarll@cfslawfirm.com
550 West C Street, Suite 2000
San Diego, California 92101
Telephone:   (619) 241-4810
Facsimile:    (619) 955-5318

Attorneys for Defendant
Todd M. Lane

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN SAC,

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 9, 2011, at 8:30 a.m. or as soon thereafter as counsel may be heard, in the courtroom of the Honorable George Wu, in the United States District Court, 312 North Spring Street, Courtroom 10, Los Angeles, California, 90012, **Defendants Robert A. Siravo, Todd M. Lane, Robert J. Burrell and Timothy T. Sidley** will and hereby do move this Court to dismiss the First Claim for Relief (for breach of fiduciary duty) of the Second Amended Complaint (the "Complaint") with prejudice for failure to state a claim upon which relief can be granted.  This motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) and is made on the grounds that the claim fails to allege facts sufficient to show that the Officer Defendants breached their fiduciary duties to Western Corporate Federal Credit Union ("WesCorp") in that there are no allegations that the Officer Defendants acted in bad faith, engaged in any wrongful, misleading or improper conduct, failed to provide the Board with requested information, or abdicated their responsibilities.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, any reply papers submitted in support of this motion, oral argument of counsel, the complete files and records in this matter, the Request for Judicial Notice filed by the Director Defendants in support of their Motion to Dismiss, and such additional matters as the Court may deem it appropriate to consider.  This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 13, 2011.

1  DATED: April 18, 2011        MUNGER, TOLLES & OLSON LLP
2                                  Richard E. Drooyan
                                   Laura D. Smolowe
3
                               By:    /s/ Richard E. Drooyan
4                                     RICHARD E. DROOYAN

5                              Attorneys for Defendant
                               ROBERT A. SIRAVO
6  DATED: April 18, 2011        PILLSBURY WINTHROP SHAW
                               PITTMAN LLP
7

8                              By:    /s/ Bruce A. Ericson
9                                     BRUCE A. ERICSON

10                             Attorneys for Defendant
                               Robert J. Burrell
11  DATED: April 18, 2011       ORRICK, HERRINGTON &
                               SUTCLIFFE LLP
12

13                             By:   /s/ Seth E. Freilich
14                                   SETH E. FREILICH

15                             Attorneys for Defendant
                               Timothy T. Sidley
16  DATED: April 18, 2011       CHAPIN FITZGERALD SULLIVAN
                               LLP
17

18                             By: /s/ Kenneth M. Fitzgerald
19                                 KENNETH M. FITZGERALD

20                             Attorneys for Defendant
                               Todd M. Lane___
21                             _____

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    PROCEDURAL HISTORY ................................................................ 3

III.   RELEVANT ALLEGATIONS .......................................................... 4

       A.    The Officer Defendants And Their Duties ............................ 5

       B.    The Board of Directors And The Board's Committees ........ 6

       C.    The Alleged Breaches Of The Officers' Fiduciary Duties .... 8

IV.    LEGAL STANDARD ..................................................................... 10

       A.    Motion To Dismiss Standard. .............................................. 10

       B.    Breach Of Fiduciary Duty Standard. ................................... 10

V.     ARGUMENT .................................................................................. 12

       A.    The NCUA's Theory Would Create Unprecedented New Law By Basing Liability Solely On Hindsight. ................. 12

       B.    There Must Be Some Wrongful Conduct Or AnAbdication Of Responsibility For A Corporate Officer To Be Liable For A Breach Of Fiduciary Duty. ............................................ 13

       C.    The NCUA Does Not Allege Facts Sufficient To Show That The Officer Defendants Breached Their Fiduciary Duties To WesCorp. ................................................................................. 17

             1.    The Budget Committee .............................................. 17

             2.    The Concentration Limits ......................................... 19

             3.    The New MBS Investments ...................................... 21

VI.    CONCLUSION ............................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ........................................................................ 10

*Bell Atl.c Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007) ................... 10

*Federal Sav. and Loan Ins. Corp. v. Molinaro,*
   889 F.2d 899 (9th Cir. 1989) .............................................................. 15

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,*
   896 F.2d 1542 (9th Cir. 1989) .............................................................. 2

*In re Bare Escentuals, Inc. Securities Litigation,*
   745 F. Supp. 2d 1052 (N.D. Cal. 2010) ................................................ 2

*In re Heritage Bond Litig.,*
   02-ML-1475, 2004 U.S. Dist. LEXIS 15387
   (C.D. Cal. June 28, 2004) ........................................................ 10, 15, 16

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir. 2001) .............................................................. 10

*Swartz v. KPMG LLP,*
   476 F.3d. 757 (9th Cir. 2007) ............................................................... 2

*Van Buskirk v. Cable News Network, Inc.,*
   284 F.3d 977 (9th Cir. 2002) ............................................................... 2

**STATE CASES**

*Bankcroft-Whitney Co. v. Ada Glen, as Special Administratrix,*
   411 P.2d 921 (Cal. 1966) .................................................................... 14

*Frances T. v. Village Green Owners Ass'n,*
   42 Cal. 3d 490 (1986) .................................................................... 11, 16

*GAB Bus. Servs. v. Lindsey & Newsome Claim Servs.,*
   83 Cal. App. 4th 409 (2000) .............................................................. 11

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.,*
  99 Cal. Rptr. 2d 665 (Cal. Ct. App. 2000) ...................................................11, 14

5

6

*Reeves v. Hanlan,*
  33 Cal. 4th 1140 (2004)...........................................................................................11

7

8

*Reid v. Robinson,*
  220 P. 676 (Cal. Ct. App. 1923) .............................................................................14

9

10

*Tarasoff v. Regents of Univ. of Cal.,*
  17 Cal. 3d 425 (1976)...............................................................................................11

11

12

*U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.,*
  1 Cal. 3d 586 (1970)...........................................................................................11, 16

13

**MODEL CODES**

14

ABA Model Bus. Corp. Code § 8.42(b)(1) ...................................................................13

15

16

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) .....................................................................................................2

17

18

**TREATISES**

19

Restatement of Restitution § 197 comment c (1937) ..................................................15

20

21

22

23

24

25

26

27

28

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN SAC

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3         The essence of this case is that, with the benefit of hindsight, the NCUA

4    disagrees with WesCorp's decision to invest in certain securities—decisions that

5    were approved by WesCorp's Board of Directors, authorized by law, and well

6    known to the NCUA at the time.  This remains the heart of the case,

7    notwithstanding the NCUA's efforts to dissect the process by which WesCorp

8    made its decisions to invest in highly rated AAA and AA Mortgage Backed

9    Securities ("MBS").  Remarkably, the NCUA brought this case despite

10   acknowledging that "[b]ased on historic performance, there appeared to be very

11   little risk with private label mortgage backed securities purchased by the

12   corporates."[1]  After the Court dismissed much of its first attempt, the NCUA

13   broadened the allegations against Defendants Robert A. Siravo, Todd M. Lane,

14   Robert J. Burrell, and Timothy T. Sidley (the "Officer Defendants") in its Second

15   Amended Complaint (the "Complaint") to try to hold them responsible for

16   WesCorp's investment losses.

17        We recognize that this Court has held that the Officer Defendants are not

18   protected by the Business Judgment Rule, which shields the Director Defendants

19   from liability in this case.  (*See* Directors' Motion § III(C).)  Nevertheless, a breach

20   of fiduciary duty claim against Officer Defendants requires something more than

21   mere hindsight judgments that the officer should have done more to "highlight" the

22   risks that he or she brought to the attention of the Board, and which the Board

23   considered in approving the MBS investments.  It requires allegations of bad faith,

24   wrongful conduct, or an abdication of the Officer's responsibilities in the

25   performance of his or her duties.

26   _____

27   [1]Memorandum in Support of Director Defendants' Motion to Dismiss Plaintiff's
     Second Amended Complaint (the "Directors' Motion") § III(B) (quoting the
     transcript of the NCUA's "Corporate System Resolution Presentation."; *see also*

28   (Request for Judicial Notice ("RJN") Ex. 10 at 0766.)

CASE NO. CV10-01597 GW (MANx)
                                              MOTION TO DISMISS FIRST CLAIM FOR
                                              RELIEF IN SAC,

It is easy to play Monday morning quarterback, particularly in light of the severe economic recession and the losses that many financial institutions suffered as a result of MBS investments.  But after having control over WesCorp and its books and records for over two years, the NCUA does not allege that the Officer Defendants (1) acted in bad faith, (2) withheld information from the Board, (3) misled the Board, (4) failed to provide the Board with information that the Board requested or (5) failed to advise the Board of the risks of the MBS investments. Instead, the NCUA claims that the Officer Defendants did not do *quite enough* to identify risks, set concentration limits, and analyze what the NCUA characterizes as "new" types of MBS securities.

In particular, the NCUA alleges that the Officer Defendants breached their fiduciary duties to WesCorp because they allegedly (1) failed to "highlight" the risks of MBS investments to the Budget Committee, even though members of that committee also sat on the Asset and Liability Committee ("ALCO"), which received monthly reports that provided a detailed analysis of the investment risks, and which was the committee responsible for approving investments; [2] (2) failed to urge the Board to set "reasonable" concentration limits for MBS investments, even though there is no allegation that the concentration of WesCorp's MBS investments in AAA-rated securities ever reached or exceeded the unspecified concentration limits that the NCUA now thinks should have been imposed by the Board; and (3) failed to follow WesCorp's policies with respect to reviewing the risks of, and tracking, "new" types of investments, even though these securities were hardly

---

[2] The ALCO reports are attached to the Director Defendants Request for Judicial Notice (the "RJN").  The Officer Defendants join in the Director Defendants' RJN. Although on a motion pursuant to Rule 12(b)(6) "the court may not generally consider materials outside the pleadings," the court "may consider exhibits attached to the complaint and documents referenced by the complaint."  *In re Bare Escentuals, Inc. Sec. Litig.,* 745 F. Supp. 2d 1052, 1065 (N.D. Cal. 2010) (citing *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542, 1555 n. 19 (9th Cir. 1989) and *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002)); *see also Swartz v. KPMG LLP,* 476 F.3d. 757, 763 (9th Cir. 2007).

"new" at all, were analyzed in the monthly ALCO books, and were AAA-rated MBS investments.

These allegations are nothing more than hindsight judgments that the Officer Directors should have done more to highlight the risks of the MBS investments the Board was approving.  The Officer Defendants provided WesCorp's Directors with detailed monthly reports about WesCorp's MBS investments, and the Board properly exercised its business judgment in approving these investments.  There are no allegations that the Officers misled the Board or failed to provide the Board with any information it requested.  Under these circumstances, the allegations against the Officer are insufficient to show a breach of fiduciary duty to WesCorp, and the First Claim for Relief should be dismissed with prejudice.

## II.   PROCEDURAL HISTORY

The original complaint filed in California Superior Court on November 4, 2009, against a number of Defendants alleged two counts of negligence and breach of fiduciary duty arising out of WesCorp's decision to invest in MBS before the collapse of the economy.  On March 3, 2010, the NCUA removed this case to federal court and intervened.  On August 31, 2010, the NCUA replaced the original plaintiffs and filed the FAC.

On November 1, 2010, the Director Defendants filed a Motion to Dismiss the First and Second Claims for Relief in the FAC essentially on the grounds that the FAC failed to plead facts sufficient to overcome the Business Judgment Rule that protects the decisions of directors from the kind of hindsight, second-guessing reflected in the FAC.  Although Defendants Siravo, Lane and Burrell were sued as officers rather than directors, they joined in that motion on the grounds, *inter alia*, that the allegations against them in the FAC were indistinguishable from the allegations against the Director Defendants and, therefore, they were also entitled to the protections of the Business Judgment Rule.

1       This Court's initial tentative ruling was to grant the Director Defendants'

2  Motion to Dismiss without leave to amend, and to grant the Motions of Lane and

3  Burrell, but not Siravo, with leave to amend. This Court observed that in order to

4  overcome the Business Judgment Rule, the NCUA would have to allege facts

5  sufficient to show some wrongful conduct by the Director Defendants and that

6  conclusory allegations were insufficient.

7       Following argument on the Director Defendants' Motion to Dismiss, this

8  Court granted the NCUA leave to file a written proffer of the facts it would allege if

9  permitted to amend the FAC. On January 31, 2011, the Court granted the Director

10 Defendants' Motion to Dismiss the First and Second Claims for Relief in the FAC,

11 but with leave to amend the First Claim for Relief. The Court observed that the

12 NCUA's "new" allegations "are not significantly different" than the allegations in

13 the FAC, and that these new allegations are "still based on . . .hindsight." (Docket

14 No. 115 at 2-3.) The Court stated that whether to grant leave to amend was a "close

15 call," but it granted the NCUA leave to amend because "it would be difficult to

16 conclude . . . that such amendment would clearly be futile[.]" (*Id.* at 4.)

17 **III.  RELEVANT ALLEGATIONS**

18      On February 22, 2011, the NCUA as the self-appointed conservator, and now

19 liquidating agent, of WesCorp (¶¶ 1, 6)[3] filed its Second Amended Complaint.

20 Recognizing the weakness of its claims against the Officer Defendants in the FAC,

21 the NCUA alleges a distinct claim for breach of fiduciary duty in the Second

22 Amended Complaint (the "Complaint") against all of the Officer Defendants based

23 upon their various roles and responsibilities as Officers of WesCorp.[4]

24 

25 [3] All paragraph ("¶") references are to the Second Amended Complaint.

26 [4] The facts summarized in this Section are limited to the allegations against the Officer Defendants upon which the First Claim for Relief For Breach of Fiduciary Duty is based. They are taken from the allegations in the Complaint, and the

27 documents referenced in the Complaint, which are the subject of the Director Defendants' RJN. The Officer Defendants accept as true these allegations for the

28 purposes of this Motion only.

A.     **The Officer Defendants And Their Duties**

The allegations in the Complaint concern investments made by WesCorp "in new forms of AAA rated private label MBS ("Mortgage Backed Securities"), including Collateralized Debt Obligations ('CDOs'), and Option ARM MBS." (¶ 74.)  The Complaint alleges that "CDOs are 'second level' MBS. . . . MBS are shares in a pool of mortgages.  CDOs are shares in a pool of MBS." (¶ 75.) "Option ARM MBS are shares in pools of Option ARM mortgage loans," which allow the borrower to make substantially below-market monthly payments for the first years of the loan, after which the monthly payments 'reset' and increase." (¶ 77.)  WesCorp began purchasing CDOs in 2004 and Option ARM MBS in "substantial quantities" in 2005.  (¶¶ 76, 80.)  The Complaint alleges that most Option ARM MBS "were purchaed from the lowest AAA rated tranches." (¶ 84.)

Defendant Siravo is the former Chief Executive Officer ("CEO") of WesCorp (¶ 7); Defendant Lane is the former Chief Financial Officer ("CFO") (¶ 8); Defendant Burrell is the former Executive Vice President and Chief Investment Officer ("CIO") (¶ 9); and Defendant Sidley is the former Vice President for Risk Assessment and Chief Risk Officer ("CRO") (¶ 10).  Siravo, Lane, Burrell, and Sidley are referred to collectively as the "Officer Defendants."  (*Id.*)

The Complaint alleges that, individually, Siravo, as the CEO, had "a duty to supervise all aspects of" WesCorp and to "ensure" that actions "necessary for WesCorp's safe and sound operation were recommended and explained to the board." (¶ 187.)  Lane, as the CFO, "was responsible for WesCorp's financial affairs," handling WesCorp's "financial statements and financial operations," and submitting annual budgets to the Board.  (¶¶ 55, 189.)  The Complaint also alleges that Lane, in his capacity "as a member of WesCorp's Executive Team," had the "responsibility to supervise WesCorp's investing activities and portfolio." (¶ 189.) Burrell, as CIO, is alleged to have "had a duty to manage WesCorp's investment portfolio and its investing activities in a safe and sound manner." (¶ 190.) And

1  Sidley, as CRO, had a "duty to ensure that an appropriate credit review was
2  performed of each security purchased by WesCorp" and to make appropriate
3  recommendations resulting therefrom.  (¶ 194.)

4      According to the Complaint, Siravo, Lane, and Burrell, collectively, "were
5  responsible for supervising WesCorp's investments and recommending policies and
6  investment strategies and for ensuring the safety and soundness of WesCorp's asset
7  and liability activities, including its investment activities." (¶ 60.)

8      The Complaint also alleges that all of the Officer Defendants had an
9  obligation to WesCorp "to exercise the same care as a reasonably prudent officer of
10  a $30 billion financial institution would exercise." (¶¶ 184-85.)  They had duties
11  "of loyalty and good faith"  (*id.*); to perform "in a manner each of them believed to
12  be in the best interests of WesCorp" (*id.*); and "to keep themselves and the board
13  fully informed of the risks arising from WesCorp's business strategy, its annual
14  budget, and its investing activity." (¶ 186.)

15      Notably, the Complaint does not allege that the Officer Defendants acted in
16  bad faith, did not believe that their actions were in the best interests of WesCorp,
17  did not keep the board informed of the risks of its investments, were not aware of
18  the risks of the MBS investments, or *intentionally concealed* any information from
19  the board.  Stated otherwise, the Complaint does not allege that the Officer
20  Defendants breached any of the specific fiduciary duties it alleges they owed
21  WesCorp.

22      **B.     The Board of Directors And the Board's Committees**

23      The Complaint alleges that Board of Directors was "responsible for setting
24  investment policies" (¶ 108); approving WesCorp's budgets (¶ 87), setting
25  "reasonable and supportable concentration limits for limited liquidity investments"
26  (¶ 105); and implementing "a credit risk management policy commensurate with
27  the investment risks and activities WesCorp was undertaking" (¶ 105).

28      The proposed budget was prepared annually by Lane, along with Siravo, and

1    with input from Burrell, and it was "first considered by the [T]he [B]udget

2    [C]ommittee, which then recommended it to the board."  (¶85.)  The Directors on

3    the Budget Committee "were responsible for reviewing the proposed budgets and

4    recommending them to the board for approval."  (¶87.)

5            The Asset and Liability Committee ("ALCO") of the Board was responsible

6    for "the review and recommendation of proposed changes to WesCorp's asset and

7    liability policies and strategies, the review of and recommendations for existing and

8    proposed concentration limits, and the review of and recommendations for

9    investment security purchases and sales."  (¶ 25.)

10           The Complaint alleges that ALCO members received "ALCO materials

11   along with their monthly board packages" before each meeting.  (¶¶ 26, 97, 99,

12   138-42.  The monthly ALCO books provided a list of each proposed new

13   investment with proposed concentration limits (RJN Ex. 1 at 0013-20), a list of all

14   transactions in the previous month (*id.* at 0069-73); a detailed assessment of risk

15   and risk exposure (*id.* at 0035-48), a detailed discussion of fluctuations in member

16   balances and loans (*id.* at 0050-55), a detailed business forecast assessing

17   borrowings, liquidity and capital (*id.* at 0057-67), a discussion of investment

18   strategies (*id.* at 0069-73), and a monthly analysis of economic and market

19   conditions (*id.* at 0070; *see also* ¶ 97).  The ALCO books also include supporting

20   documentation and data, including details on derivatives, concentration limits,

21   watch lists, counterparty transaction limits, delinquencies, losses, credit support,

22   and stress tests analyzing various risk scenarios.  (*Id.* 0075-0107).[5]

23           The Asset/Liability Staff Committee ("ALSC") was created in 2006 to

24   "review" purchases and sales of securities and "the prevailing investment strategies

25   and potential changes thereto," with "the ALCO retaining the responsibility to

26   approve ALSC recommendations."  (¶ 59.)  Siravo, Lane and Burrell were voting

27

28
─────────────
[5] *See* Directors' Motion § III(C)(3), describing in more detail the information
provided in the ALCO materials.

members of ALCO and ALSC and Sidley was a "non-voting member of the ALSC and a staff liaison to the ALCO."  (¶ 60.)

The Complaint also alleges that the Officer Defendants collectively had duties "to ensure that WesCorp's investing activities were conducted in a prudent manner" in their capacity as members of the ALCO and the ALSC (¶¶ 188-90.).

### C.     The Alleged Breaches Of The Officers' Fiduciary Duties

The First Claim for Relief alleges that the Officer Defendants breached their fiduciary duties to WesCorp in connection with WesCorp's investments in MBS, which were presented to and approved by WesCorp's Board of Directors.  There are no allegations that the Officer Defendants engaged in intentional misconduct, acted in bad faith, misled the Board, failed to provide the Board with information that the Board requested, or abdicated their responsibilities.  Rather, this claim is an entirely hindsight-based theory; that is, in retrospect, some of the highest-rated AAA MBS investments were unwise, and the Officer Defendants should have done more to avoid or minimize the risks of these investments.

The First Claim for Relief alleges that the Officers Defendants breached their duties of care and loyalty to WesCorp in three ways: First, Siravo, Lane and Burrell allegedly breached their duties in the presentation of the WesCorp budget to the Budget Committee because they did not "highlight" the risks inherent attempting to achieve the investment returns upon which the budgets were based, (¶¶ 85-104), even though members of the Budget Committee also "attended ALCO meetings at which tightening investment credit spreads and lower yields were discussed" (¶ 96).[6]  The Complaint admits, however, that the officers presented the Budget Committee and the Board with a proposed budget that "contained detailed information about the proposed projected expenses and projected fee income."  (¶

---

[6] "[A]s early as March 2005 and continuing through 2006, the Investment Department reported at the ALCO meetings that investment credit spreads were tightening significantly."  (¶ 136)

88.)  The budget also contained "the monthly projected totals" of the "proposed projected investment income, investment expense and net interest income."  (¶ 88.) Moreover, the directors  "were presented with a chart showing that the investment credit spreads for private label MBS had been generally shrinking while the investment credit spreads required for WesCorp to meet is budgeted income targets had been increasing."  (¶ 99.)

Second, the Complaint alleges that all Officer Defendants breached their duties to WesCorp with respect to concentration limits for AAA-rated private-label MBS securities and for Option ARM MBS.  (¶¶ 105-114, 192(b), (d), (e), (f), 195(b), (c), (d).)     The Complaint concedes, however, that "the private label MBS that WesCorp purchased for investment were rated AAA or at least AA by Moody's and S&P, or both, and were underwritten by the world's leading investment banks[.]"  (¶ 39; *see also* ¶ 73 ("WesCorp invested in AAA rated and AA rated private label MBS."); ¶ 114 ("WesCorp was investing increasingly in AAA rated private label MBS from 2005 through 2007 . . . .").)  These securities were much more highly rated than the BBB-rated investments that WesCorp was authorized to invest in by law.[7]  The Complaint also acknowledges that WesCorp's investment in lower AA rated, investment grade securities, *declined* during the relevant period.  (¶ 82.)

Third, the Complaint claims that the Officer Defendants failed to control the risks of Option ARM MBS by allegedly failing to "enforce[] the policy requiring review of credit risk implications for new security types with respect to Option ARM MBS" (¶ 117), and not proposing "policies limiting or requiring reporting of concentration of AAA rated private label MBS by tranche" or "the concentration of Option Arm MBS in WesCorp's portfolio."  (¶¶ 128, 129.)  The Complaint acknowledges, however, that WesCorp had been investing in MBS for years, and

---

[7] *See* Directors' Motion § III(B) discussing "the expanded authority" of credit unions to invest in BBB-rated securities.

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN SAC

the Complaint and ALCO books show that the Officer Directors gave the Board of Directors substantial information to enable the Board to make informed decisions. (*See e.g.*, ¶ 97 (April 2006 package to "all directors" explaining difficulty in getting greater returns); ¶ 123 ("[T]he Investment Department reported at the ALCO meetings, attended by the Director Defendants, that WesCorp was purchasing significant quantities of Option ARM MBS."); ¶ 131 ("[T]he Director Defendants were aware of the risks created by [Option ARM MBS] investments . . . ."); *see also supra* at 6-7; RJN Ex. 1.)

Finally, Defendant Siravo is also alleged to have breached his duty of care by "not devoting sufficient time and effort to his duties as President and CEO of WesCorp." (¶ 197.)  No further explanation, detail, or factual allegation is provided as to how exactly Mr. Siravo was supposedly lax in his duties.

## IV.   LEGAL STANDARD

### A.   Motion To Dismiss Standard.

A motion to dismiss should be granted if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929, 949 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of [demonstrating an] . . . entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (internal citations and quotations omitted); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

### B.   Breach Of Fiduciary Duty Standard.

Officers owe fiduciary duties to the corporations for which they work.  *See In re Heritage Bond Litig.*, 02-ML-1475, 2004 U.S. Dist. LEXIS 15387, *13 (C.D. Cal. June 28, 2004).  Those duties are "reasonable care, diligence, and skill in their work." *Id.*  An officer of a corporation is "required to have the particular

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN SAC

knowledge and to exercise the particular skill and diligence expected" of him or her position in the corporation.  *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 594, 83 Cal. Rptr. 418, 422 (1970).  But, importantly, "liability is not incurred by mere error of judgment in the exercise of discretion unless the error is based on want of care or diligence."  *Id.*

An officer's fiduciary duties—and liability for breach of the same—are tied directly to the roles and responsibilities the officer has within an organization, and must be analyzed based on what an officer knew at the time.  *See Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 508, 229 Cal. Rptr. 456, 457 (1986) ("To maintain a tort claim against a director in his or her personal capacity, a plaintiff must first show that the director specifically authorized, directed or participated in the allegedly tortious conduct or that although they specifically knew or reasonably should have known that some hazardous condition or activity under their control could injury plaintiff, they negligently failed to take or order appropriate action to avoid the harm.") (internal quotations omitted); *see also id.* at 509.

The analysis of a alleged fiduciary breach begins with the specific duties the Officer Defendants had to WesCorp, and only then proceeds to an analysis of what they knew and did at the time—because "[t]he duty of care [is] always related to "'some circumstance of time, place and person.'" *Haidinger-Hayes*, 1 Cal. 3d at 594; *see also Tarasoff v. Regents of Univ. of Cal.*, 17 Cal. 3d 425, 434, 131 Cal. Rptr. 14, 22 (1976) ("[L]egal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done."); *GAB Bus. Servs. v. Lindsey & Newsome Claim Servs.*, 83 Cal. App. 4th 409, 420–21, 99 Cal. Rptr. 2d 665, 667 (2000) ), *overturned on other grounds by Reeves v. Hanlan*, 33 Cal. 4th 1140 (2004) (tying the existence of the officer's fiduciary duty to "participat[ion] in management of the corporation, exercising some discretionary authority" and noting, "[a]fter all, a corporation

1   cannot make a mail clerk its fiduciary by simply bestowing upon the clerk the title

2   of officer.  We think something more than bare title, and less than control, is

3   required.").

4   **V.      ARGUMENT**

5         A.    **The NCUA's Theory Would Create Unprecedented New Law By**

6               **Basing Liability Solely On Hindsight.**

7         The NCUA's theory against the Officer Defendants would, if successful,

8   create unprecedented new law by basing liability solely on hindsight—i.e., the

9   second guessing of an investment strategy pursued in good faith, with appropriate

10  risk assessment, and with the best interests of the corporation in mind, but which,

11  nevertheless, resulted in investment losses.  We are unaware of any cases imposing

12  liability for investment decisions on officers who acted in good faith, dislcosed the

13  investment risks to the board, never withheld any information from the board, and

14  never misled the board, and did not breach any of the general fiduciary duties the

15  NCUA alleges that they owed to WesCorp.  (¶¶ 184-86.)

16        Here, the allegations against the Officer Defendants relate entirely to

17  investments that were approved by the Board.  There is no credible allegation that

18  the Officer Defendants did not disclose to the Board the risks of the MBS

19  investments, or that the Board was unaware of those risks.[8]  Rather, the allegation is

20  that the Officer Defendants did not emphasize the risks *enough*.

21        For example, the Complaint acknowledges that the Director Defendants

22  "were aware of the credit risks created by those investments," (¶ 131), yet it

23  complains that Burrell and Sidley did not do a thorough enough review of the credit

24  risk of each proposed purchase(¶ 132) without explaining what more they should

25  have done.  Similarly, while there is no allegation that the Board was unaware of

26  _____

27  [8] Further, for the reasons discussed in the Director Defendants' concurrently filed Motion to Dismiss, there is no credible evidence that the Director Defendants failed to analyze these risks appropriately in exercising their business judgment to

28  approve these investments.

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN SAC

1    the volume of the MBS held for investment by WesCorp, the hindsight allegation is

2    that the Officer Defendants should have done a better job tracking the investments

3    and set some (unspecified) concentration limits for the investments that the NCUA

4    does not even allege WesCorp exceeded.  But as the ALCO books cited by the

5    Complaint show, the Officer Defendants did track compliance with concentration

6    limits—many different concentration limits—every month.  (*See, e.g.*, RJN Ex. 1, at

7    0039, 0077-0078, 0080-0092, Ex. 4, at 0168, 0206-0207, 0218-0227 (the other

8    ALCO books contain similar reports).)

9           To impose liability on the Officer Defendants in these circumstances with the

10   benefit of hindsight and without any allegations of wrongdoing would be

11   unprecedented and unwarranted.  As the ABA Model Business Corporation Act

12   puts it, an officer has the duty to act "(1) in good faith; (2) with the care that a

13   person in a like position would reasonably exercise under similar circumstances;

14   and (3) in a manner the officer reasonably believes to be in the best interests of the

15   corporation."  ABA Model Bus. Corp. Act § 8.42(b)(1).  That duty includes an

16   obligation to keep superiors or the board informed "about the affairs of the

17   corporation *known* to the officer, within the scope of the officer's functions, and

18   *known to the officer to be material* to such superior officer, board or committee."

19   *Id.* (emphasis added).   The Model Code goes on to provide that "[a]n officer shall

20   not be liable to the corporation or its shareholders for any decision to take or not to

21   take action, or any failure to take any action, as an officer, if the duties of the office

22   are performed in compliance with this section."  *Id.* § 8.42(d).

23   **B.      There Must Be Some Wrongful Conduct Or Abdication Of**

24   **Responsibility For A Corporate Officer To Be Liable For A Breach**

25   **Of Fiduciary Duty.**

26          The NCUA's asserted cause of action for breach of fiduciary duty does not

27   present factual allegations showing the types of actions by the Officer Defendants

28   that California case law has recognized as leading to officer liability.

- 13 -

1      It has long been recognized that affirmative wrongdoing by a corporate

2   officer can give rise to liability for a breach of fiduciary duty.  For example, in *GAB*

3   *Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.*, a regional vice-

4   president of GAB Business Services was offered a position with GAB's competitor.

5   83 Cal. App. 4th at 413-14.  He told the competitor that he would only accept the

6   position if he could bring seventeen other key GAB employees from his region with

7   him and when the competitor accepted these terms, he used his corporate position

8   and knowledge to recruit the group so that they could resign en masse.  *See id.*

9   These active steps to take GAB's employees while still an officer owing the

10  company a fiduciary duty were found to be the type of affirmative action based

11  upon which a jury could find a breach of fiduciary duty.  *See id.* at 422-23.

12     Similarly, in *Bancroft-Whitney Co. v. Gle*, an officer/director of Bancroft-

13  Whitney agreed to take a position with a competitor.  64 Cal. 2d 327, 330, 49 Cal.

14  Rptr. 825, 828, 411 P.2d 921, 924-25 (Cal. 1966).  While still employed at

15  Bankcroft-Whitney, he then used his position to commit a host of actions for the

16  benefit of the competitor, to Bankcroft-Whitney's detriment.  *See id.* at 330-31,

17  336-44.  As a result of his actions, more than twenty employees resigned from

18  Bancroft-Whitney in order to take positions with the competitor company.  *See id.*

19  The California Supreme Court found these actions to be a breach of his officer

20  fiduciary duty because, under these "particular circumstances," the officer engaged

21  in a consistent course of conduct intending to benefit Bankcroft-Whitney's

22  competitor, to Bankcroft-Whitney's detriment, all the while misleading Bankcroft-

23  Whitney and its other officers about this threat.  *See id.* at 347.

24     In other contexts, liability attached where an officer engaged in some

25  wrongful conduct in breaching his or her fiduciary duty.  For example, in *Reid v.*

26  *Robinson*, a corporation's secretary and president were found to have violated their

27  fiduciary duties by actively committing and concealing fraud.  64 Cal. App. 46, 48-

28  51, 220 P. 676, 677-79 (Cal. Ct. App. 1923).  The Court of Appeal affirmed the

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN SAC

1    trial court's finding that this was a breach of fiduciary duty even though one of the

2    officers did not personally benefit from the fraudulent sale because he knew that it

3    was taking place and failed to tell the other officers.  *Id.* at 57.  In other words, his

4    actions in concealing the fraudulent sale were so obviously contrary to the

5    company's best interests *at the time that his (in)actions occurred*, there could be no

6    doubt that he breached his fiduciary duty to the corporation, regardless of the lack

7    of self-profit.

8         Similarly, where an officer uses the corporation to his own financial benefit,

9    those actions support a finding of liability.  *See Federal Sav. and Loan Ins. Corp. v.*

10   *Molinaro*, 889 F.2d 899 (9th Cir. 1989).  Here, the sole shareholder and CEO of a

11   savings and loan institute arranged a set of transactions which resulted in the

12   savings and loan association giving out a series of loans, some of the proceeds of

13   which wound up going to Molinaro.  *See id.* at 901.  This was a breach of his

14   fiduciary duty because it went against the "broad principle of preventing a conflict

15   of opposing interests in the minds of fiduciaries whose duty it is to act solely for the

16   benefit of their beneficiaries."  *Id.* at 904 (quoting Restatement of Restitution § 197

17   comment c (1937)).

18        Finally, a wholesale abdication of responsibility can also be a breach of

19   fiduciary duty.  Before retiring, Judge Tevrizian analyzed whether a corporate

20   officer for the Heritage Housing Development had committed a breach of fiduciary

21   duty in handling financial transactions on Heritage's behalf.  *See In re Heritage*

22   *Bond Litig.*, 2004 U.S. Dist. LEXIS 15387, *22–24 (C.D. Cal. June 28, 2004).  The

23   Court held that the "Defendant failed to exercise due diligence *to investigate the*

24   *propriety* of the inter-company transfers he actively participated in and facilitated."

25   *Id.* at *18 (emphasis added).  The Court then listed what the defendant had (and had

26   not done)—a list that stands in stark contrast to the allegations against the Officer

27   Defendants in the Complaint.  The Court found that the defendant (1) "did nothing

28   to investi[gate] the propriety of the inter-company transfers," (2) "never reviewed

1   any of the Official Statements issued in connection with the Heritage bond

2   offerings," despite having no experience with bond funds, (3) "never consulted any

3   auditor on the propriety of the inter-company transfers," and (4) "did not even

4   question anyone about the legality or legitimacy of the inter-company transfers."

5   *Id.* In other words, the defendant breached his fiduciary duty because he "wholly

6   failed to conduct any inquiry into the propriety" of what he was doing. *Id.* at *22–

7   23 (citations to evidence omitted). Citing *Frances T.*, Judge Tevrizian concludes

8   by finding that "[i]t is evident that an ordinarily prudent person, knowing what

9   Defendant knew at the time, would not have acted similiarly under the

10  circumstances." *Id.* at *23–24.

11      The California Supreme Court similarly analyzed the responsibility of a

12  corporate officer to properly investigate a potential insured before issuing an

13  insurance policy in *Haidinger-Hayes*, 1 Cal. 3d at 590–95. There, the Court

14  explained the reasonable steps that insurance underwriters were expected to take

15  before issuing a policy, which the officer did not do. *Id.* at 592. In particular, the

16  Court noted that despite reviewing information sufficient to inform him that a

17  higher premium was necessary to cover potential losses, the corporate officer

18  recommended an unreasonably low premium in part because he "knew [that] . . .

19  [the insured] would not accept the coverage at a substantially higher premium." *Id.*

20  at 593. In such a circumstance, the Court concluded that the officer had breached

21  his duty of care. *Id.* at 591-92.

22      In each of these cases, the officers did not simply make a decision while

23  executing their corporate functions that, with the benefit of hindsight, turned out to

24  be wrong or mistaken. Rather, they actively and purposefully committed some

25  wrongdoing either, if not both, for their own benefit or to the detriment of the

26  corporation, or they completely abdicated all responsibility for informed decision-

27  making These actions, moreover, were clearly wrong and improper *at the time*, not

28  merely in hindsight. The Complaint is devoid of such allegations.

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN SAC

1

2

3     **C.**     **The NCUA Does Not Allege Facts Sufficient To Show That**

4              **The Officer Defendants Breached Their Fiduciary Duties To**

5              **WesCorp.**

6          While the Second Amended Complaint, on its face, contains considerably

7     more allegations than the deficient First Amended Complaint, it still fails to show

8     that the Officer Defendants breached their fiduciary duties to WesCorp.

9          The Complaint sets forth three purported breaches by the Officer Defendants.

10    (*See* ¶¶ 192, 193, 195.)  Tellingly, there are no allegations of fraud, improper

11    competition, self-dealing, bad faith, concealing information, misleading the Board

12    or any other wrongful conduct.  Nor is there any allegation that the Officer

13    Defendants abdicated their responsibilities to WesCorp.

14         None of the NCUA's three theories are sufficient to impose liability on the

15    Officer Defendants for breaching their fiduciary duties to WesCorp.  Stripped of the

16    verbiage, these allegations reflect nothing more than conclusory judgments based

17    upon pure hindsight of what happened in the financial markets, and amount to

18    vague complaints that the Officer Defendants should have done more than they did.

19    Just saying that an officer should have done more than he or she did is not sufficient

20    to show that the officer's conduct breached his or her fiduciary duties to the

21    corporation.

22              **1.**     **The Budget Committee**

23         The Complaint seeks to hold Siravo, Lane, and Burrell liable for failing to

24    "highlight" the risks of MBS investments for the Budget Committee even though

25    the Complaint does not allege that the Budge Committee had jurisdiction over risk

26    assessment.  Instead, the Complaint alleges that the ALCO was, *inter alia,*

27    responsible for the review of "WesCorp's asset and liability policies and strategies"

28    and "the review of and recommendations for investment security purchases and

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN SAC

1   sales." (¶ 25.)  The Complaint, however, alleges that the Director Defendants on

2   the Budget Committee "had a duty to inform themselves about . . .the basis for and

3   potential risks to WesCorp of budgeting increases in investment income and net

4   interest income." (¶ 87.)

5          The Complaint acknowledges that the Directors on the Budget Committee

6   received information about the risks of private label MBS investments, albeit as

7   members of ALCO.  They "attended ALCO meetings at which tightening

8   investment credit spreads and lower yields were discussed" (¶ 96); received an

9   ALCO package that emphasized the "inherent risks" in MBS (¶ 97); and "were

10  presented with a chart showing that the investment credit spreads for private label

11  MBS had been generally shrinking while the investment credit spreads required for

12  WesCorp to meet its budgeted income targets had been increasing." (¶ 99.)

13         The Complaint never alleges that Siravo, Lane, or Burrell misled the Budget

14  Committee (or the ALCO), failed to provide any information requested by the

15  Budget Committee, or intentionally withheld any information from the Committee.

16  The Complaint does not allege that that the Budget Committee was required to

17  adopt the proposed budgets, despite insinuating that the budget proposals "were

18  effectively dictating the level of risk in WesCorp's investment portfolio." (¶ 89.)

19         Nevertheless, the Complaint claims these Officer Defendants breached their

20  fiduciary duty by "actively advocate[ing]" for the budgets they proposed without

21  "*highlight*[*ing*] the increased risks *inherent* in those budgets" and by failing to

22  "recognize[]" that the budget for which they were advocating "materially increased

23  the risks in WesCorp's investment portfolio," which risks were within the pruview

24  of the ALCO to assess. (¶¶ 25, 104 (emphasis added), 192a.)

25         Stated otherwise, they told the Directors about the risks—but with the benefit

26  of the NCUA's hindsight, the Complaint argues that these Officer Defendants did

27  not emphasize the risks enough to these specific directors, some of whom were

28  members of the ALCO and received monthly packages analyzing the risks of these

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN SAC

1   very investments as members of that committee.  This is purely hindsight and is not

2   enough to impose liability on these Officers Defendants.

3   ## 2.   The Concentration Limits

4        Next, the NCUA complains that the Officer Defendants did not do enough to

5   impose concentration limits on MBS investments.  The Complaint alleges that "the

6   Director Defendants were solely responsible for setting investment policies."

7   (¶ 108.)  The WesCorp "board adopted policies specifying concentration limits" for

8   its securities, including private label MBS, which the Complaint alleges "was

9   unreasonable and unsupportable," and it did not "adopt a concentration limit for

10  Option ARM MBS," which the Complaint alleges "was clearly unreasonable."

11  (¶¶ 111-13, 127.)  The monthly books presented to the ALCO do, however, reflect

12  concentration limits, albeit based upon different criteria (*e.g.*, originator, issuer

13  group, shelf registration, servicer, bond insurer and "state geographical.")  .)  (*See,*

14  *e.g.*, RJN, Ex. 1, at 0013-20, 0039, 0077-78.)[9]  The Complaint thus just takes issue

15  with the how the Officer Directors chose to determine the concentration limits.

16       The Complaint does not allege that WesCorp's investments exceeded, or ever

17  even reached the purportedly "unreasonable" concentration limits for private label

18  MBS set by the Board.[10]  (¶¶ 111-14.)  For example, the Complaint alleges that the

19  concentration limits were well in excess of WesCorp's capital and allowed

20  WesCorp to "invest its entire portfolio in private label MBS." (¶ 111.)   Elsewhere,

21  however, the Complaint alleges that "at the end of 2007," 54% of "WesCorp's

22  investment portfolio" was in "relatively risky MBS securities."  (¶148.)  Needless

23  to say, WesCorp did not "invest its entire portfolio in private label MBS."

24       Nor does the Complaint allege what "reasonable" concentration limits should

25  have been set by the Board for either private label MBS or Option ARM MBS, or

26  that the investments in these AAA-rated securities exceeded such reasonable limits.

27  [9] *See* Directors' Motion § III(C)(4).

28  [10]*See supra* at 7-8.

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN SAC

For example, the Complaint alleges that the Director Defendants were aware "that WesCorp was purchasing significant quantities of Option ARM MBS," (¶ 123), but it does not allege that these quantities were in excess of whatever unstated concentration limits the NCUA now believes should have been set by the Board.

Further, the Complaint does not allege that the Officer Defendants failed to provide the Board with any requested information or intentionally withheld any information about the volume of MBS investments.  Indeed, it alleges to the contrary.  (*See, e.g.*, ¶ 123 ("[T]he Investment Department reported at the ALCO meetings, attended by the Director Defendants, that WesCorp was purchasing significant quantities of Option ARM MBS.").)  Significantly, the Complaint also alleges that the Directors "were aware of the risks created by those investments[.]" (¶ 131.)

The Complaint nonetheless charges the Officer Defendants with breaching their duties of care by "[n]ot . . . recommending the review and correction of unreasonable and unsupportable concentration limit for AAA private label MBS" and "not recommending a concentration limit for Option ARM MBS before the concentration of those securities in WesCorp became material[.]"  (¶ 192.)  Again, it does not allege what limits should have been imposed or that WesCorp ever exceeded these hindsight limits.

Along the same lines, the Complaint claims the Officer Defendants failed to make appropriate recommendations about increasing WesCorp's capital in light of the deteriorating economy.  The Complaint charges the Officer Defendants with "[n]ot considering or recommending to the board that WesCorp increase its capital to adjust for the greater risks it was exposed to by its heavy investment in Option ARM MBS and by the simultaneous deterioration of the housing market and rising interest rates." (¶¶ 192k, 195e.)  The Complaint acknowledges, however, the Board members were told at ALCO meetings and in ALCO presentations that "interest rates [were] beginning to rise significantly in 2005," and that, by the end of 2006,

- 20 -

1   "the housing market [was] in the most precarious position ever seen in the United
2   States, and that it would be easy to envision a meltdown in housing that would
3   drive the economy into a recession." (¶¶ 137, 140; *see also* RJN Ex. 8 at 0618, Rx.
4   9 at 0718.)

5          In this case, the Officer Defendants did exactly what they were supposed to
6   do—they brought information to the attention of the Director Defendants. The
7   Director Defendants then did what they were supposed to do—they evaluated the
8   risks and exercised their business judgment to approve or disapprove of
9   investments. There is no basis for imposing hindsight liability on either the Officer
10  Defendants or the Director Defendants

11              **3.    The New MBS Investments**

12         Finally, the NCUA seeks to hold the Officer Defendants liable for not doing
13  enough to review what the NCUA characterizes as "new" types of securities. The
14  Complaint alleges that the Investment Credit Services Department was required to
15  "review the credit risk implications of new security types," and present each "new
16  security type. . . to the ALCO and to the board for approval." (¶ 115.) Further,
17  "the purchase of new security types prior to such approvals" was "prohibited." (*Id.*)

18         The Complaint acknowledges that "ALCO and the board became aware that
19  WesCorp had begun purchasing material quantities of Option ARM MBS," which
20  are MBS investments with particular attributes; that the Investment Department
21  reported at ALCO meetings that "WesCorp was purchasing significant quantities of
22  Option ARM MBS; and that "[b]y the Summer of 2005 the Director Defendants
23  were aware of the risks associated with these securities. (¶¶ 119, 120, 123, 131.)
24  The Complaint also alleges that the Board was aware "that the credit risk on
25  reduced documentation [Option ARM MBS] loans was significantly higher than the
26  credit risk on loans made after verifying the borrowers income and ability to ma[k]e
27  the payments required by the loan" (¶ 120), and, more generally, was "aware of the
28  risks created by those investments" (¶ 131). Further, as set forth in the ALCO

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN SAC

1  reports prepared for the ALCO Committee, the Officer Defendants disclosed to that

2  committee each proposed new investment, concentrations limits, risk assessments,

3  and risk exposure. (*See, e.g.,* RJN Ex. 1.)[11]

4        The Complaint alleges that "neither ALCO nor the board required WesCorp

5  to comply with the policy requiring a review of credit implications for new security

6  types with respect to Option ARM MBS," which it alleges was "clearly

7  unreasonable." (¶ 119.) The Complaint charges the Officer Defendants with

8  breaching their duties by failing "enforce WesCorp's policies requiring a thorough

9  credit review" prior to the purchase of private label MBS. (¶¶192(h), 195(a).)

10        These are conclusory allegations that do not support the NCUA's claim that

11  the Officer Defendants breached their fiduciary duties. The Complaint does not say

12  what more the Officer Defendants should have or could have done to "review" the

13  credit implications of the "new securities types" for the Board. Nor does it allege

14  that the Officer Defendants failed to provide the Board with any information it

15  requested or intentionally withheld any information from the Board regarding the

16  allegedly new Option ARM MBS.

17        Ultimately, this is a debate over the semantics of what constitutes a "new"

18  type of security and over differing judgments about how much information the

19  Officer Defendants should have provided to the Board. The Complaint

20  acknowledges, as it must, that WesCorp had been investing in MBS for years and

21  that Option ARM MBS were reviewed monthly by the ALCO. The Officer

22  Defendants consistently provided risk assessments to the ALCO and the Director

23  Defendants consistently utilized their business judgments in assessing this

24  information. In the absence of some indicia of wrongful conduct, or at least some

25  specific allegations about what more the Officer Directors should have done, there

26  is no basis for imposing liability on them for breach of fiduciary duty.

27

28  _____

[11] *See also* Directors' Motion §§ II, III(C)(2).

1   **VI.  CONCLUSION**

2          As this Court recently held, "'[d]ismissal without leave to amend is proper if

3   it is clear that the complaint could not be saved by amendment.'"  (12/20 Order at 3

4   (quoting *Kendall v. Visa U.S.A. Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008)).)  It is

5   clear that the Complaint cannot be saved by further amendment.  The NCUA has

6   conducted an investigation almost unprecedented for a plaintiff still in the pleading

7   stage, having had two years of full access to WesCorp's records coupled with

8   having had its own examiners on site at WesCorp throughout the period of time

9   encompassed by the NCUA's allegations.  Despite such access, the NCUA has

10  taken two bites at the apple and failed both times, because the truth simply does not

11  mesh with the allegations the NCUA wants to make.  This warrants a dismissal

12  with prejudice.  *See, e.g., Magdaleno v. Indymac Bancorp, Inc.*, --- F. Supp. 2d. ---,

13  2011 WL 338493, *8 (E.D. Cal. Jan. 31, 2011) (claim "dismissed without leave to

14  amend" because the plaintiff lacks the facts to state a claim that is plausible on its

15  face); *Carnero v. EMC Mortg. Cop.*, No. C 09-4696 JF (HRL), 2010 WL 4916418,

16  *2 (N.D. Cal. Nov. 22, 2010) (dismissing without leave to amend because the

17  plaintiffs failed to allege a viable claim "despite having had several opportunities to

18  do so").

19         Looking beyond the Complaint's conclusory statements, there are simply no

20  facts that show that the Officer Defendants did anything other than dutifully fulfill

21  their officer responsibilities.  The NCUA's hindsight notwithstanding, it is now

22  clear that what was already a "close question," whether or not to previously grant

23  leave to amend (1/31 Order at 3), has but one answer:  the NCUA has no facts that

24  can establish that the Officer Defendants breached their fiduciary duties in any way.

25  This motion should therefore be granted without leave to amend.

26

27

28

- 23 -        CASE NO. CV10-01597 GW (MANx)
                                                                    MOTION TO DISMISS FIRST CLAIM FOR
                                                                    RELIEF IN SAC

1  DATED: April 18, 2011                MUNGER, TOLLES & OLSON LLP
                                            Richard E. Drooyan
2                                           Laura D. Smolowe

3
                                        By:      /s/ Richard E. Drooyan
4                                                RICHARD E. DROOYAN

5                                       Attorneys for Defendant
                                        ROBERT A. SIRAVO
6  DATED: April 18, 2011                PILLSBURY WINTHROP SHAW
                                        PITTMAN LLP
7

8                                       By:      /s/ Bruce A. Ericson
                                                 BRUCE A. ERICSON
9
10                                      Attorneys for Defendant
                                        Robert J. Burrell
11  DATED: April 18, 2011               ORRICK, HERRINGTON &
                                        SUTCLIFFE LLP
12

13                                      By:    /s/ Seth E. Freilich
                                               SETH E. FREILICH
14
15                                      Attorneys for Defendant
                                        Timothy T. Sidley
16  DATED: April 18, 2011               CHAPIN FITZGERALD SULLIVAN
                                        LLP
17

18                                      By: /s/ Kenneth M. Fitzgerald
                                            KENNETH M. FITZGERALD
19
20                                      Attorneys for Defendant
                                        Todd M. Lane____
21                                      _____

22

23

24

25

26

27

28