Michael H. Bierman, State Bar No. 89156
Michael E. Pappas, State Bar No. 130400
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 S. Figueroa, Suite 3900
Los Angeles, California 90017
Telephone: 213.892.4992
Facsimile: 213.892.7731
E-Mail: mbierman@luce.com
        mpappas@luce.com

Attorneys for Plaintiff and Intervenor, National Credit Union Administration Board As Liquidating Agent For Western Corporate Federal Credit Union

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD AS LIQUIDATING AGENT FOR WESTERN CORPORATE FEDERAL CREDIT UNION,<br><br>       Plaintiff,<br><br>v.<br><br>ROBERT A. SIRAVO, TODD M. LANE, ROBERT J. BURRELL, THOMAS E. SWEDBERG, TIMOTHY T. SIDLEY, ROBERT H. HARVEY, JR., WILLIAM CHENEY, GORDON DAMES, JAMES P. JORDAN, TIMOTHY KRAMER, ROBIN J. LENTZ, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE,<br><br>       Defendants. | Case No.: CV10-01597 GW (MANx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF NATIONAL CREDIT UNION ADMINISTRATION BOARD AS LIQUIDATING AGENT FOR WESTERN CORPORATE FEDERAL CREDIT UNION IN OPPOSITION TO MOTION OF DEFENDANTS ROBERT A. SIRAVO AND THOMAS E. SWEDBERG TO DISMISS COUNTS FIVE AND SIX OF SECOND AMENDED COMPLAINT [DOCKET 119]**<br><br>Date:      June 9, 2011<br>Time:     8:30 a.m.<br>Courtroom: 10 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ...................................................................................... 1

PROCEDURAL HISTORY....................................................................... 4

THE SAC'S ALLEGATIONS RELATING TO THE SERP PLANS ...................... 5

LEGAL STANDARD................................................................................10

LEGAL ARGUMENT ...............................................................................10

I.    THE COURT SHOULD DENY THIS MOTION BECAUSE IT IS AN IMPROPER MOTION FOR RECONSIDERATION....................................10

II.   THE SAC STATES CLAIMS FOR BREACH OF FIDUCIARY DUTY AND FRAUD RELATING TO THE SERP AMENDMENTS. ........12

    A.   As Fiduciaries, Siravo and Swedberg Owed WesCorp a Duty of Loyalty and Complete Candor. .........................................................12

    B.   The Second Amended Complaint Alleges Both Misrepresentations and Failures to Disclose. ......................................13

        1.   The Second Amended Complaint Sufficiently Alleges That Defendants Committed Fraud. ............................................13

        2.   Siravo and Swedberg Failed to Disclose Material Information About the Proposed SERP Amendments. ..............14

        3.   The Presentation of Amended SERP Plans Inconsistent With the Board's Resolution is Actionable as Breaches of Fiduciary Duty and Fraud. .........................................................15

        4.   The Actions and Omissions of Siravo and Swedberg Constitute Constructive Fraud..................................................16

    C.   Defendants' Fact-Based Arguments do Not Justify Dismissal of the Fraud Claims.........................................................................17

        1.   The Disclosure of the Amount of Siravo's SERP Benefit Increase Does Not Insulate the SERP Defendants from Liability for Concealing the Reasons for It. ............................17

        2.   Swedberg's Characterization of the Proposed SERP Changes as Administrative was More Than a Non-Actionable Opinion.................................................................18

        3.   The Misrepresentations Alleged in the SAC are Not True Statements Taken Out of Context. ...........................................20

        4.   The Amended Siravo SERP did Not Comply with the Board's Resolution. .................................................................21

## <u>TABLE OF CONTENTS</u>
### (cont'd)

<u>Page</u>

5.    The "Draft" Proposals Swedberg Presented to Harvey and Merlo Contain Actionable Misrepresentations. ........................22

CONCLUSION ........................................................................................24

# TABLE OF AUTHORITIES

**Page**

## CASES

*American Trust Co. v. California Western States Life Ins. Co.*,
15 Cal. 2d 42 (1940) ...................................................................................17

*Amtower v. Photon Dynamics, Inc.*,
158 Cal. App. 4th 1582 (2008).......................................................................13

*Ashcroft v. Iqbal*,
__ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................10

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988)..........................................................................10

*Bancroft-Whitney Co. v. Glen*,
64 Cal. 2d 327 (1966) ...................................................................................12

*Barrett v. Bank of America*,
183 Cal. App. 3d 1362 (1989).........................................................................16

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................14

*Cohen v. S&S Construction Co.*,
151 Cal. App. 3d 941 (1983)...........................................................................20

*Corson v. Brown Motel Inv., Inc.*,
87 Cal. App. 3d 422 (1978).............................................................................21

*Engalla v. Permanente Medical Group*,
15 Cal. 4th 951 (1997) ...................................................................................13

*Fontana v. Haskin*,
262 F.3d 871 (9th Cir. 2001)..........................................................................16

*GAB Business Services, Inc. v. Lindsey & Newsom Claim Servs., Inc.*,
83 Cal. App. 4th 409 (2000)...........................................................................12

*Gentry v. eBay*,
99 Cal. App. 4th 816 (2002)...........................................................................18

*Guth v. Loft*,
23 Del. Ch. 255, 5 A.2d 503 (1939) ...............................................................12

*K. & M., Inc. v. LeCuyer*,
107 Cal. App. 2d 710 (1962)...........................................................................18

*Lynch v. Cruttenden & Co.*,
18 Cal. App. 4th 802 (1993)...........................................................................20

**TABLE OF AUTHORITIES**
(cont'd)

Page

*Miniace v. Pacific Maritime Association*,
424 F. Supp. 2d 1168 (N.D. Cal. 2006)........................................12

*Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*,
267 F. Supp. 726 (S.D. Cal. 1966) ..................................21

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*,
6 Cal. 3d 176 (1971) .......................................... 13, 16

*Neu v. Terminix Inter'l Co.*,
2008 WL 2951390 (N.D. Cal. 2008) ................................19

*Persson v. Smart Inventions*,
125 Cal. App. 4th 1141 (2005).......................................15

*Rains v. Criterion Systems, Inc.*,
80 F.3d 339 (9th Cir. 1996)...........................................16

*Reeves v. Hanlon*,
33 Cal. 4th 1140 (2004) .............................................12

*Renaissance Realty, Inc. v. Soriano*,
120 Cal. App. 3d Supp. 13 (1981)..................................15

*Sequoia Vacuum Sys. v. Stransky*,
229 Cal. App. 2d 281 (1964).........................................12

*Silver v. Shemanski*,
89 Cal. App. 2d 520 (1949)..........................................19

*Sprewell v. Golden State Warriors*,
266 F.3d 979,
*amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001) ...............10

**STATUTES**

Cal. Civ. Code § 1573.....................................................16

Cal. Civ. Code § 1710(3) ...............................................15

**RULES**

Fed. R. Civ. P. 12(b)(6)...........................................3, 10, 23

Local Rule 7-18 .......................................................2, 11

Local Rule 7-18(a) .......................................................11

Local Rule 7-18(b) .......................................................11

Local Rule 7-18(c) ....................................................11, 12

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES
(cont'd)

**Page**

### MISCELLANEOUS

2 W. Schwarzer, A. Tashima & J. Wagstaffe, *California Practice Guide:*
*Federal Civil Procedure Before Trial*, §§ 9:211 – 9:212.1 (2011)....................23

201109150.3

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO MOTION TO
DISMISS COUNTS FIVE AND SIX OF SAC

**INTRODUCTION**

In its Second Amended Complaint ("SAC"), the National Credit Union Administration Board (the "NCUA") as Liquidating Agent for the Western Corporate Federal Credit Union ("WesCorp") alleges that defendants Robert Siravo ("Siravo") and Thomas Swedberg ("Swedberg") (the "SERP Defendants") breached their fiduciary duties and defrauded WesCorp's board of directors in order to substantially increase their retirement payments just months before they received their payouts.

The SAC alleges that Siravo and Swedberg persuaded the board to approve amendments to WesCorp's Supplemental Executive Retention Plans ("SERPs") by claiming falsely that the proposed amendments were necessary to correct two administrative errors and by not disclosing the true facts about them.  Swedberg presented the proposed changes to the Siravo SERP to the board.  In return, a few months later, Siravo proposed the same changes for the SERP affecting Swedberg and other senior executives.

Siravo as WesCorp's President and Chief Executive Officer and Swedberg as a Vice President owed fiduciary duties of loyalty and candor to WesCorp and its board.  They affirmatively misled the Chairman of the board's compensation committee, the Chairman of the board, the board's executive committee and the board as a whole when they told them that the SERPs needed to be amended to correct mistakes that had been made in the plans.  Although they disclosed the net result of the changes, they were not candid nor truthful about the reasons for the changes.  In addition to the affirmative misrepresentations they made, Siravo and Swedberg concealed that they were working together to increase the payouts in each other's plans.  The resulting SERP amendments increased the retirement payments to Siravo and Swedberg by more than $3 million.

The SAC alleges that Siravo and Swedberg are liable for fraud and breach of their fiduciary duty of loyalty because they made false and misleading

Case No. CV10-01597 GW (MANx)
NCUA'S OPP. TO MOTION TO DISMISS FIFTH
AND SIXTH CLAIMS FOR RELIEF

representations regarding the reasons and need for changes to the SERP plans and failed to disclose the true purpose of the changes.  In addition, it alleges that Siravo and Swedberg further defrauded WesCorp and breached their fiduciary duties by preparing amended SERP documents that provided for larger payments than the board's resolution approved, resulting in a further increase in their retirement payments.

The SERP Defendants' motion to dismiss the SAC's Fifth and Sixth Claims for Relief for breach of fiduciary duty and fraud is virtually a refiling of their previously denied motion to dismiss the same claims in the First Amended Complaint.  The SERP Defendants' motion must be denied as a motion for reconsideration that does not fall within any of the narrow grounds recognized by Local Rule 7-18 for bringing a motion for reconsideration.  On the merits of the motion, the SERP Defendants essentially repeat their prior arguments, trying to parse individual words and ignoring the overall effect of the November 2, 2007 memorandum, which was meant to mislead the board.  First, they note that the November 2, 2007 memorandum discloses the financial impact of the proposed amendments and claim that there could be no fraud because the directors knew the amount of the proposed increase.  The SERP Defendants do not explain why the disclosure of the amount of the change eliminates the effect of either the misrepresentations as to the reasons for the proposed amendments, or the failure to disclose all material information about the proposed amendments.

Second, they contend that the representations characterizing the change as "administrative" is non-actionable opinion.  However, that characterization as alleged was a representation that the proposed changes did not raise policy issues, not a mere opinion.  In any event, false or misleading opinions of fiduciaries such as Swedberg are actionable as breaches of fiduciary duty and fraud.

Third, Siravo and Swedberg contend that Swedberg's representations about WesCorp's intent when the SERP program was "initially developed" are immaterial

Case No. CV10-01597 GW (MANx)
NCUA'S OPP. TO MOTION TO DISMISS FIFTH
AND SIXTH CLAIMS FOR RELIEF

1   because they refer only to WesCorp's intent when the original SERP was

2   established in November 2001 and not to its intent when it negotiated Siravo's

3   SERP in March 2002.  This distinction does not appear in either the November 2,

4   2007 memorandum or the other allegations of the SAC.  Whether or not this

5   distinction existed in the minds of WesCorp's board members in 2001 and 2002, or

6   in the minds of the board members who were persuaded to amend the SERPs, are

7   questions of fact.  However, Swedberg made the false representation about the intent

8   of the SERP program in order to persuade the board to amend the Siravo SERP.

9   Even if the representation was about a period four months before Siravo's SERP

10  was negotiated, that fact does not make it immaterial.

11       Fourth, Siravo and Swedberg argue that the prior "draft" documents presented

12  to the Chairmen of the compensation committee and the board were not "used" and

13  are therefore not actionable.[1]  To support this argument, they attach a declaration

14  from Swedberg with a printout of a PowerPoint presentation given to Merlo –

15  materials that are improper on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) –

16  and claim that the statements in the SAC are taken out of context.  However, the

17  SERP Defendants' attempt to impose a particular interpretation cannot be

18  considered on a motion to dismiss.

19       Fifth, with respect to the SERP plan amendment that provided for a payout in

20  excess of the board authorization, Siravo and Swedberg argue that the November 2

21  memorandum establishes that they did not pay themselves more than "authorized"

22  by WesCorp's board.  However, the SAC does not allege that Swedberg's

23  memorandum describing the Siravo SERP amendment was ever voted on or adopted

24  by the board.  The SAC alleges that the board voted on and adopted a separate

25  resolution and that the amendment to the SERP plan Swedberg eventually presented

26  _____

27  [1]    The contention that the misrepresentations made in "drafts" are not actionable
    because they were not submitted to the board as a whole ignores the allegation that
    the "drafts" went to the chairman of the board's compensation committee, John

28  Merlo.

to the Chairman of the Board did not follow the language of the resolution but provided for a more generous calculation of SERP benefits than authorized by the resolution.

## PROCEDURAL HISTORY

On November 1, 2010, the defendants filed three motions to dismiss the NCUA's First Amended Complaint. The motions included: (1) the Directors' and defendant Robert J. Burrell's motion to dismiss the First and Second Claims for Relief for breach of fiduciary duties and gross negligence (Motion 1); (2) defendant Todd M. Lane's motion to dismiss these same claims for relief as against him (Motion 2); and (3) Siravo's motion to dismiss the First and Second Claims as against him and Siravo and Swedberg's motion to dismiss the Third and Fourth Claims for Relief relating to the SERP issues (Motion 3) (the SERP issue claims, which are the SAC's Fifth and Sixth Claims for Relief, are the same claims being attacked in this motion).

On December 20, 2010, the Court issued tentative rulings [Docket 110] as follows:

Motion 1: Grant, largely without leave to amend. Both claims would be granted without leave to amend, with the exception of the first claim as it relates to Burrell. As to that claim against Burrell, grant with leave to amend.

Motion 2: Grant. Grant as to second claim without leave to amend. Grant as to first claim with leave to amend.

Motion 3: Grant in part, deny in part. Grant without leave to amend as to second claim. **Deny as to** first, **third and fourth claims**. [Emphasis added.]

After oral argument, the Court confirmed that its tentative rulings would be the order of the Court, except the Court would permit an offer of proof with respect to the First Claim for Relief as to the Directors (Motion 1) to see if amendment should be permitted.

The NCUA subsequently submitted its offer of proof, and at a hearing on January 31, 2011, devoted *solely* to the issue whether the NCUA should be

1  permitted to amend the complaint to attempt to state a breach of fiduciary duty claim

2  (the First Claim for Relief) against the Directors, the Court ruled that leave to amend

3  would be granted. Docket 115.

4       The Court's January 31, 2011 tentative ruling addressed only the "Offer of

5  Proof for Purposes of Being Allowed to Amend So As to Overcome Business

6  Judgment Rule on First Claim for Relief." *Id.* Although the Court's January 31,

7  2011 Minute Order listed all three motions and stated that they were "granted with

8  leave to amend," *id.*, the Court's Order is fairly understood as granting leave to

9  amend as permitted or required in the Court's various tentative rulings. For

10  instance, no party believes that the Court was granting the NCUA leave to amend

11  for its Second Claim for Relief charging gross negligence. Similarly, the NCUA

12  does not believe that the Court changed its prior ruling denying the SERP

13  Defendants' motion to dismiss the Third and Fourth Claims for Relief relating to the

14  SERP plans. It therefore replead those claims *verbatim* as the Fifth and Sixth

15  Claims for Relief in the SAC. Had the NCUA believed that the Court had reversed

16  itself on the SERP claims, it would have amended those claims. The Court should

17  adopt its prior tentative ruling on these same claims and deny the SERP Defendants'

18  refiling of their previous motion.[2]

19  **THE SAC'S ALLEGATIONS RELATING TO THE SERP PLANS**

20       In November 2001, WesCorp created a Supplemental Executive Retention

21  Plan ("SERP") for certain high-level WesCorp executives (the "Executive SERP"),

22  including Swedberg. SAC ¶ 154. The Executive SERP provided for a lump sum

23  payment to participants at their expected retirement date. SAC ¶ 155. When Siravo

24

25

26  [2]   If the Court did intend to revise its prior tentative ruling and to grant the SERP
    Defendants' prior motion to dismiss with leave to amend and the Court finds here

27  that the SAC does not state a claim on the Fifth and Sixth Claims for Relief, the
    NCUA apologizes to the Court for its misunderstanding of the Court's prior Order

28  and respectfully requests leave to amend.

Case No. CV10-01597 GW (MANx)
NCUA'S OPP. TO MOTION TO DISMISS FIFTH
AND SIXTH CLAIMS FOR RELIEF

became President and CEO of WesCorp in March 2002, he negotiated a similar SERP plan for himself (the "Siravo SERP"). SAC ¶ 156.

In both SERPs, the amount of the lump sum benefit was determined by a formula based on "Final Compensation," defined as the "monthly base-period salary paid most recently while a person was a participant in the program, multiplied by twelve (12)." SAC ¶ 157. The lump sum payment formula for both SERPs also included a 40% gross-up for taxes. *Id.*

In fall 2007, Siravo and Swedberg decided to increase the amount of their SERP benefits. SAC ¶ 158. They decided to propose amendments to the SERP plans that would change the definition of Final Compensation to be total compensation, including salary and bonuses, rather than "monthly base-period salary," and to increase the gross-up for taxes from 40% to 67%. SAC ¶ 158. In engineering the SERP amendments, Siravo and Swedberg falsely characterized them as administrative changes necessary to correct errors in the plans. SAC ¶ 160. Siravo decided that the Siravo SERP should be amended first, and that the proposal to do so should be presented to the board by Swedberg, who would appear "disinterested." Siravo would then arrange for identical amendments to be proposed to the board made for the Executive SERP, which would increase the lump sum payment to Swedberg. SAC ¶ 159.

As WesCorp officers, Siravo and Swedberg occupied positions of trust and owed WesCorp duties of loyalty and good faith as well as a duty to provide candid and truthful information to the board of directors in matters affecting compensation and employment. SAC ¶¶ 222, 224, 228. The WesCorp board and its executive committee were justified in relying on Siravo and Swedberg to fully disclose to them all facts material to the nature of and need for changes to the plans. SAC ¶¶ 231-32.

Swedberg prepared a PowerPoint presentation for WesCorp's board, which he sent to Siravo on October 19, 2007, and subsequently showed to John Merlo, the

Case No. CV10-01597 GW (MANx)
NCUA'S OPP. TO MOTION TO DISMISS FIFTH
AND SIXTH CLAIMS FOR RELIEF

1   Chairman of the board's compensation committee.  SAC ¶¶ 162, 164.  The

2   presentation stated that the Siravo SERP required modification because (1) its

3   formula currently produces a 28% "shortfall" and (2) new plans provide for a 67%

4   gross-up, which "produces a more equitable result."  SAC ¶ 162.  These statements

5   were false and misleading, and the defendants knew the statements were false and

6   misleading, because the Siravo SERP formula in fact produced a lump sum payment

7   significantly higher than the payment contemplated by the parties at the time

8   Siravo's SERP was negotiated and the amount of the gross-up had been set at that

9   time in arms-length negotiations.[3]  SAC ¶ 163.

10        Merlo asked Swedberg to replace the PowerPoint presentation with a short

11  memo.  Swedberg then prepared a one-page memo to Merlo that recommended an

12  "administrative change" to "increase benefits sufficiently to achieve 48 percent of

13  earnings inclusive of off-sets" and requested consideration of a change in the tax

14  multiplier to 1.67 percent.  SAC ¶ 164.  Later drafts of the memo stated that "the

15  SERP currently produces 37% of ending earnings versus the agreed-to 48%."  *Id.*

16        The SAC alleges that the representation in the memo that the change was

17  administrative was false because the change was substantive, *i.e.*, it raised policy

18  issues.  SAC ¶ 165.  The representation that there had been an agreed-to percentage

19  of "ending earnings" was false because WesCorp had never agreed that Siravo's

20  lump sum SERP payment would be based on 48% of ending earnings.  *Id.*

21        Swedberg wrote a revised memorandum dated November 2, 2007, which he

22  sent with Siravo's concurrence to Robert Harvey, the Chairman of the board.  SAC

23  ¶ 166.  The memorandum, provided to the board's executive committee (and

24

25  [3]   The NCUA expects the evidence at trial to show that the amount of Siravo's
26  SERP retirement payment was initially negotiated as a fixed lump sum and then
    translated into a formula based on his then-calculated monthly base salary.  Since
27  Siravo's monthly base salary at his retirement date was significantly higher than his
    initial salary, the SERP payment was also significantly higher than the lump sum
28  originally negotiated.  There was thus no "shortfall" in the lump sum payment
    amount.

possibly to the whole board), was entitled "Administrative Change" to the CEO's SERP.  *Id.*  It contained several false and misleading statements, and Siravo and Swedberg knew they were false or misleading or had no reasonable ground to believe that they were true.  SAC ¶¶ 167-68.  These misrepresentations included the following:

- that the proposed amendments were "administrative";
- that there were two "administrative errors in the current 457(f) [SERP] plan document that are not consistent with the intent of the program when it was initially developed";
- that "[o]ur CEO's current 457(f) Plan utilized an old template that dated back to Dick Johnson's tenure as President when no bonuses or incentive pay plans existed at WesCorp and the concept of tax gross-up was not broadly utilized in 457(f) Plans"; and
- that the changes are necessary to provide the "agreed upon 48 percent of compensation rate" and that the tax gross-up change is required to provide the "correct tax gross-up amount."  SAC ¶ 167.

The true facts were that the Siravo SERP was fully consistent with the intent of the parties at the time the plan was negotiated.  SAC ¶ 169.  Siravo and WesCorp never agreed or contemplated that the amount of the lump sum payment would be 48% of total compensation.  Rather, the parties contemplated and agreed that the amount of Siravo's lump sum payment was to be calculated as a percentage of base salary, not total compensation.  *Id.*

Moreover, the concept of gross-up rates was utilized in WesCorp's SERP plans both at the time the Siravo SERP was negotiated and when the Executive SERP was adopted a few months earlier.  *Id.*  Finally, the gross-up percentage in the Siravo SERP formula was the same as the percentage in the Executive SERP, and neither party intended to change it at the time the Siravo SERP was negotiated.  *Id.*

1   The November 2, 2007 memorandum was provided to the board's executive

2   committee, which approved the proposal Swedberg presented.  The WesCorp board

3   approved the executive committee's approval of the changes to the Siravo SERP and

4   adopted a resolution to that effect.  SAC ¶¶ 170-71.

5   The resolution adopted by the WesCorp board authorized the following

6   changes to the Siravo SERP:

7       1.   Include salary *plus* bonus and incentive pay in the SERP benefit
         calculation to make it consistent with the compensation used in
8       WesCorp's Defined Benefit Plan benefits calculation.

9       2.   Calculate the tax gross-up using the divisor (.60) *versus* the
         multiplier (1.4).
10
    SAC ¶ 172 (emphasis in original).
11

12   On January 24, 2008, Harvey executed an amended Siravo SERP document

13   prepared by Swedberg and approved by Siravo.  SAC ¶ 173.  The formula in that

14   document provided Siravo a larger lump sum payment than the board's resolution

15   authorized.[4]  *Id*.  The SAC alleges that both Siravo and Swedberg knew that the

16   amended Siravo SERP did not comport with the approved board resolution, but

17   concealed that fact from the board and failed to take any action to correct the

18   amended plan.  SAC ¶ 174.

19   The SAC alleges that after the Siravo SERP amendment was approved,

20   Swedberg prepared an identical amendment to the Executive SERP.  SAC ¶¶ 159,

21   176.  WesCorp's board approved the amendments to the Executive SERP at its June

22   24, 2008 meeting.  The only WesCorp employee present was Siravo.  The board

23   resolution adopting the amendments to the Executive SERP is identical to the

24

25

26   [4]   The resolution authorized the SERP to be amended in a way that was consistent
     with the Defined Benefit Plan's definition of compensation.  The NCUA expects the
     evidence at trial to show that the Defined Benefit Plan calculated compensation
27   based on the *average* of the employee's annual compensation over the prior five
     years.  By contrast, the amended Siravo SERP calculated compensation based on the
28   *highest* annual compensation out of the prior three years.

9

1  resolution adopting the amendments to the Siravo SERP, except for the name of the
2  SERP program involved.  SAC ¶ 177.

3       Siravo and Swedberg received their SERP payments in May 2008 and
4  January 2009, respectively.  The payments were approximately $3,076,039 more
5  than they would have been had the SERP plans not been amended.  SAC ¶¶ 175,
6  178, 226, 233.

7                          **LEGAL STANDARD**

8       Dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is
9  warranted only where the complaint does not allege a claim supported by a
10 cognizable legal theory or if the complaint does not allege sufficient facts in support
11 of a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,
12 699 (9th Cir. 1988).

13      When considering a motion to dismiss under Rule 12(b)(6), the Court must
14 accept as true all of the factual allegations set out in plaintiff's complaint and draw
15 inferences from those allegations in the light most favorable to plaintiff.  *Sprewell v.*
16 *Golden State Warriors*, 266 F.3d 979, 988, *amended on other grounds*, 275 F.3d
17 1187 (9th Cir. 2001).  If a complaint "pleads factual content that allows the court to
18 draw the reasonable inference that the defendant is liable for the misconduct
19 alleged," the complaint survives a motion to dismiss.  *Ashcroft v. Iqbal*, __ U.S. __,
20 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

21                         **LEGAL ARGUMENT**

22
23 **I.    THE COURT SHOULD DENY THIS MOTION BECAUSE IT IS AN
       IMPROPER MOTION FOR RECONSIDERATION.**

24      The NCUA believes that the Court denied the SERP Defendants' prior motion
25 to dismiss these very same allegations.  The Court's December 20, 2010 ruling
26 provided a detailed explanation why the Third and Fourth Claims for Relief with
27 regard to SERP issues stated a claim, and it denied the motion as to those claims.
28 *See* Docket 110 at 19-22.  While the Court's January 31, 2011 Order stated that it

Case No. CV10-01597 GW (MANx)
NCUA'S OPP. TO MOTION TO DISMISS FIFTH
AND SIXTH CLAIMS FOR RELIEF

1  was granting all three motions with leave to amend, the January 31, 2011 hearing

2  did not address SERP issues, and there is no reason to believe that the January 31,

3  2011 Order [Docket 115] reversed the Court's tentative denying the SERP

4  Defendants' motion to dismiss the SERP claims.[5]  The Fifth and Sixth Claims for

5  Relief in the SAC are identical to the SERP claims the Court has ruled on.

6      Because the Court has already denied a motion to dismiss the same claims for

7  relief based upon the same allegations, this motion is actually a motion for

8  reconsideration.  Local Rule 7-18 allows motions for reconsideration only in very

9  limited circumstances.  None of these circumstances exists here, and the SERP

10  Defendants make no attempt to argue the existence of any such circumstance.

11      First, reconsideration is proper where there is a "material difference in fact or

12  law" which could not have been reasonably known to the parties seeking

13  reconsideration.  *See* Local Rule 7-18(a).  The SERP Defendants have not identified

14  any material difference in fact or law from that presented to the Court in connection

15  with the prior motion, much less any difference that they could not reasonably have

16  known at the time of the prior hearing.  Instead, the SERP Defendants' motion

17  merely restates the points they made before and recites the cases they cited before.

18      Second, reconsideration is proper where new material facts emerge or the law

19  changes after the hearing.  *See* Local Rule 7-18(b).  No new material facts have

20  emerged here.  The NCUA intentionally did not change its allegations with regard to

21  its SERP claims precisely because the Court had previously denied the SERP

22  Defendants' motion to dismiss.  The SERP Defendants do not and cannot rely on a

23  change in the law.

24      Third, reconsideration is proper where there is a manifest showing of a failure

25  to consider material facts presented to the Court before its decision.  *See* Local Rule

---

[5]    If the January 31, 2011 Order is interpreted in the manner urged by Siravo and Swedberg, it would also necessarily have granted the NCUA leave to amend with regard to its Second Claim for Relief for gross negligence, even though the Court's December 20, 2010 tentative dismissed that claim without leave to amend.

Case No. CV10-01597 GW (MANx)
NCUA'S OPP. TO MOTION TO DISMISS FIFTH
AND SIXTH CLAIMS FOR RELIEF

7-18(c). Given the Court's detailed analysis of the SERP Defendants' prior motion, *see* Docket 110 at 19-22, the SERP Defendants cannot conceivably make such an argument, and they do not do so in their moving papers.

Because the SERP Defendants have failed to show grounds supporting reconsideration, the Court should deny their motion without again reaching the merits.

## II.    THE SAC STATES CLAIMS FOR BREACH OF FIDUCIARY DUTY AND FRAUD RELATING TO THE SERP AMENDMENTS.

### A.    As Fiduciaries, Siravo and Swedberg Owed WesCorp a Duty of Loyalty and Complete Candor.

Siravo, as WesCorp's President and Chief Executive Officer, and Swedberg, as its Vice President of Human Resources, were fiduciaries of WesCorp. *See GAB Business Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc*., 83 Cal. App. 4th 409, 420 (2000), *overruled on other grounds*, *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1153-54 (2004). They were required to act in good faith and in the best interest of the corporation and were not permitted to use their positions of trust and confidence to further their private interests. *See Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 345 (1966). The position of a corporate officer demands "'the most scrupulous observance of his duty, not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation.'" *Id.* (quoting *Guth v. Loft*, 23 Del. Ch. 255, 5 A.2d 503, 510 (1939)).

Thus, if an officer misuses his position of trust to further his private interest, he may be held liable for the damage or accountable for any benefits which he obtains thereby. *See id.*; *Sequoia Vacuum Sys. v. Stransky,* 229 Cal. App. 2d 281, 286 (1964). *See also Miniace v. Pacific Maritime Association*, 424 F. Supp. 2d 1168, 1186-87 (N.D. Cal. 2006).

Case No. CV10-01597 GW (MANx)
NCUA'S OPP. TO MOTION TO DISMISS FIFTH
AND SIXTH CLAIMS FOR RELIEF

1    An officer's fiduciary duty includes the duty of full disclosure. *See Amtower*

2 *v. Photon Dynamics, Inc*., 158 Cal. App. 4th 1582, 1597 (2008) (citing *Neel v.*

3 *Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal. 3d 176, 189 (1971)). As the court

4 stated in *Neel*:

5       The duty of a fiduciary embraces the obligation to render a full and fair
        disclosure to the beneficiary of all facts which materially affect his
6       rights and interests. "Where there is a duty to disclose, the disclosure
        must be full and complete, and any material concealment or
7       misrepresentation will amount to fraud."

8 *Neel*, 6 Cal. 3d at 189 (citations omitted).

9    Siravo and Swedberg owed a duty of complete candor and full disclosure to

10 the board, and the board was entitled to repose its trust in and rely on them in

11 connection with their consideration of the proposed SERP amendments. That

12 fiduciary duty underlies all of the claims against Siravo and Swedberg relating to the

13 SERP amendments.[6]

14    **B.    The Second Amended Complaint Alleges Both Misrepresentations and Failures to Disclose.**

15

16    **1.    The Second Amended Complaint Sufficiently Alleges That Defendants Committed Fraud.**

17    To state a claim for fraud, a plaintiff must allege: (a) misrepresentation (false

18 representation, concealment, or nondisclosure); (b) knowledge of falsity (or

19 scienter); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e)

20 resulting damage. *See Engalla v. Permanente Medical Group*, 15 Cal. 4th 951, 974

21 (1997). The SAC alleges each of these elements as against Siravo and Swedberg

22 with respect to the communications to the board about the proposed SERP

23 amendments and the failure to comply with the board resolution in drafting the

24 amended SERP documents.

25 _____

26 [6]    Siravo and Swedberg assert that misrepresentations alleged in the fraud and breach of fiduciary duty claims overlap entirely and therefore "Count Three [the breach of fiduciary duty claim] stands or falls with Count Four [the fraud claim]."

27 Docket 119 at 6:16-21. If Siravo and Swedberg were to prove that their disclosures to WesCorp's board fully satisfied their duty of candor and full disclosure, the

28 NCUA agrees that those disclosures would not be actionable as fraud.

The alleged misrepresentations are detailed in the discussion of the allegations above and include that: (1) the proposed amendments were "administrative"; (2) there were two "administrative errors in the current 457(f) [SERP] plan document that are not consistent with the intent of the program when it was initially developed"; (3) the 457(f) Plan utilized an "old template" that dated back to a time when "the concept of tax gross-up was not broadly utilized in 457(f) Plans"; and (4) the changes are necessary to provide the "agreed upon 48 percent of compensation rate" and the tax gross-up change is required to provide the "correct tax gross-up amount." SAC ¶ 167.

The SAC alleges that these statements were not true, that Siravo and Swedberg knew that the representations were false and misleading and that they intended to deceive WesCorp's board. SAC ¶¶ 168, 230. Among other things, the SAC alleges that Siravo and Swedberg knew that the changes were more than administrative and not meant to correct errors.

Further, the SAC alleges that by virtue of their positions in negotiating the Siravo SERP, Swedberg and Siravo also knew that the plan was never meant to calculate benefits based on salary plus bonus and that the lump sum amount was never meant to be 48% of final compensation. SAC ¶¶ 165, 167-69. The SAC alleges that the board justifiably relied on the representations of Siravo and Swedberg in amending the SERP plans, to the damage of WesCorp. SAC ¶¶ 230-32. These allegations are sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

### 2. Siravo and Swedberg Failed to Disclose Material Information About the Proposed SERP Amendments.

The SAC alleges that Siravo and Swedberg, in addition to affirmatively misrepresenting the nature of and reasons for the requested amendments to the SERPs, failed to disclose the true reason for the proposed SERP amendments and the fact that the rationale advanced by Swedberg was a pretext to obtain a SERP

14

1  plan that was more generous.  An action for fraud by concealment will lie for the

2  "suppression of a fact, by one who is bound to disclose it, or who gives information

3  of other facts which are likely to mislead for want of communication of that fact."

4  Cal. Civ. Code § 1710(3).  Failure to disclose material facts gives rise to a claim for

5  actionable fraud where there is a fiduciary relationship or other special relationship

6  or conduct giving rise to a duty to disclose.  *Id.*; *see Persson v. Smart Inventions*,

7  125 Cal. App. 4th 1141, 1165 (2005) (defendant liable for intentional concealment

8  where he suppressed facts materially qualifying those provided); *Renaissance*

9  *Realty, Inc. v. Soriano,* 120 Cal. App. 3d Supp. 13, 16 (1981) (real estate broker

10  failed to disclose secret commission).

11     The SAC alleges Siravo and Swedberg did not disclose their true intentions

12  and the reasons for the changes, that there were no errors that needed to be

13  corrected, and that the SERP plans complied with WesCorp's original intent.  SAC

14  ¶¶ 160, 165, 168, 223-24, 229-30.  They also did not disclose that they had agreed to

15  seek changes to each other's SERPs.  SAC ¶¶ 158-59.  Had Siravo and Swedberg

16  been candid with the board and fully disclosed the true reason they were seeking the

17  proposed SERP amendments, the board could have made an informed decision

18  about whether WesCorp should enhance the SERP plans to provide more generous

19  benefits than originally intended.

20     **3.  <u>The Presentation of Amended SERP Plans Inconsistent With the Board's Resolution is Actionable as Breaches of Fiduciary Duty and Fraud.</u>**

21

22     The SAC also states claims for breach of fiduciary duty and fraud arising

23  from the implementation of the board's resolution authorizing the amendment to the

24  Siravo SERP plan.  It alleges that Siravo and Swedberg "had a duty to calculate

25  Siravo's SERP payment correctly and advise the Board of any error in the

26  amendment," SAC ¶ 224, 229, and that they knew or should have known about the

27  variance but did not advise Chairman Harvey of it, SAC ¶ 174.  It pleads each

28

15

element of fraud: Swedberg did not disclose that the amendment was not in compliance with the board's resolution; he presented it to Chairman Harvey with the intent that Harvey sign it as the implementation of the board's resolution; Harvey justifiably relied upon Swedberg in signing the amendment; and WesCorp was damaged when it paid out benefits to which Siravo was not entitled. This failure to disclose material facts Siravo and Swedberg had a duty to disclose is fraud. *See Neel*, 6 Cal. 3d at 189.

### 4. The Actions and Omissions of Siravo and Swedberg Constitute Constructive Fraud.

In addition to intentional fraud, the SAC alleges facts sufficient to state a claim for constructive fraud against Siravo and Swedberg. Constructive fraud includes any breach of duty by which a person, without an actually fraudulent intent, gains an advantage by misleading another to his or her prejudice, or to the prejudice of anyone claiming under him or her. *See* Cal. Civ. Code § 1573; *Barrett v. Bank of America*, 183 Cal. App. 3d 1362, 1368-69 (1989).[7]

Under the allegations of the SAC, the fiduciary duties of full disclosure and complete honesty and candor that Siravo and Swedberg owed the WesCorp board required them, among other things, to disclose fully the true reasons for the changes to the SERPs, that they had a plan to change both SERPs to benefit themselves, that there were no errors in the SERP plans, and that the changes were not administrative. They also had a duty to implement the board's resolution as approved. The SAC sufficiently alleges breach of these duties and that WesCorp and its board were misled by the actions of Siravo and Swedberg.

---

[7] Although the SAC does not contain a claim entitled "constructive fraud," the facts are sufficiently pleaded and a title is not necessary. The "label that a plaintiff places on his pleadings … does not determine the nature of his cause of action." *Rains v. Criterion Systems, Inc.*, 80 F.3d 339, 343 n.2 (9th Cir. 1996). Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief. *See Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001).

Case No. CV10-01597 GW (MANx)
NCUA'S OPP. TO MOTION TO DISMISS FIFTH
AND SIXTH CLAIMS FOR RELIEF

**C.** **Defendants' Fact-Based Arguments do Not Justify Dismissal of the Fraud Claims.**

The SERP Defendants make four fact-based arguments that their misrepresentations were either truthful or not actionable. First, they assert that because the November 2, 2007 memorandum disclosed the amount of Siravo's increased SERP payment, none of the alleged false statements and failures to disclose could mislead WesCorp's board. Second, they assert that Swedberg's reference to the changes as "administrative" is his nonactionable opinion. Third, they assert that the alleged misrepresentations in the November 2, 2007 memorandum only appear to be false because they are "taken out of context." Finally, they assert that WesCorp was not damaged by the discrepancy between the resolution approving the changes to the Siravo SERP and the amendment implementing the changes to the Siravo SERP because the board approved a higher payment than Siravo actually received. None of these arguments nullifies the fraud allegations in the SAC.

**1.** **The Disclosure of the Amount of Siravo's SERP Benefit Increase Does Not Insulate the SERP Defendants from Liability for Concealing the Reasons for It.**

The SERP Defendants argue that because they disclosed the financial impact of the proposed SERP amendments, they cannot be liable for fraud. They offer no explanation why disclosure of the amount the amendments would cost eliminates the fraud as to the justification for them. The fact that the end result of the changes – to raise Siravo's SERP benefit – was not concealed does not absolve Siravo and Swedberg from their affirmative misrepresentations as to the reasons and need for the requested changes to correct some sort of mistake. *See American Trust Co. v. California Western States Life Ins. Co.*, 15 Cal. 2d 42, 62-63, 65-66 (1940) (a director or officer owes to the corporation "the highest fiduciary obligation and the fullest duty of disclosure"; "[r]egardless of whether one is under a duty to speak or

1 disclose facts, one who does speak must speak the whole truth, and not by partial

2 suppression or concealment make the utterance untruthful and misleading").

3 *K. & M., Inc. v. LeCuyer*, 107 Cal. App. 2d 710 (1962), cited by defendants,

4 does not change the analysis. In that case, the buyers of a restaurant claimed they

5 were defrauded by the seller about the status of a security deposit on leased premises

6 conveyed as part of the purchase. The trial court found that the status of the security

7 deposit was fully disclosed in the documents and that any alleged misrepresentations

8 regarding the security deposit could not be the basis of a fraud claim.

9 Here, the NCUA does not claim that the financial impact of the change in the

10 SERP benefit was not disclosed in the November 2, 2007 memorandum. Rather, the

11 stated nature of the change (administrative) and reason for the change (required to

12 correct errors in the plan) were false and misleading. There were not "two

13 administrative errors." Nothing needed to be corrected. Siravo and Swedberg were

14 misleading the board and concealing their true intentions and the fact that they were

15 working together to change each other's SERP plans. This conduct, along with the

16 other conduct alleged in the SAC, amounts to fraud and breach of fiduciary duty

17 even if the financial impact of the proposed SERP amendments was disclosed.

18 **2.** **Swedberg's Characterization of the Proposed SERP Changes**
**as Administrative was More Than a Non-Actionable**
19 **Opinion.**

20 The SERP Defendants argue that Swedberg's characterization of the SERP

21 changes as "administrative" was merely an non-actionable statement of opinion.

22 Docket 119 at 8:17-18. A statement is an opinion "if it expresses only (a) the belief

23 of the maker, without certainty, as to the existence of a fact; or (b) his judgment as

24 to the quality, value, authenticity, or other matters of judgment." *Gentry v. eBay*, 99

25 Cal. App. 4th 816, 835 (2002). Swedberg nowhere designated his statements in the

26 November 2, 2007 memorandum as opinions. Nothing in the allegations of the SAC

27 or the memorandum itself suggests that the statements were intended to be opinions.

28

1   To prevail, therefore, Defendants must establish that the statements are opinions as a

2   matter of law, regardless of designation or intent.  They cite no law so suggesting.

3        Swedberg's memorandum was entitled in part "Administrative Change" and

4   affirmatively represented that there were "two administrative errors in the current

5   457(f) [SERP] plan document that are not consistent with the intent of the program

6   when it was initially developed."  The characterization of the proposed amendments

7   as "administrative" is not a statement of opinion; it is a statement by implication that

8   the proposed changes did not raise policy issues for the board to consider and were

9   simply "ministerial" in nature.  Swedberg was stating a purported fact – that "two

10  administrative errors" existed in the SERP which had to be corrected through an

11  administrative change.

12       Siravo and Swedberg cite two cases, *Neu v. Terminix Int'l Co.*, 2008 WL

13  2951390 (N.D. Cal. July 24, 2008), and *Silver v. Shemanski*, 89 Cal. App. 2d 520

14  (1949), for the general rule that an expression of opinion, without more, is not

15  actionable as fraud.  Docket 119 at 10:16-21.  In *Neu*, plaintiff sued a termite

16  company for making statements that its "Baiting System was the best defense

17  against the threat of subterranean termite infestation" and that it "formulated a

18  unique plan of action for defending Plaintiff's home against termite infestation."

19  The court held these statements to be mere expressions of opinion or "puff talk" and

20  not actionable as fraud.  *See Neu*, 2008 WL 2951390 at *3.

21       In *Silver*, the attorneys for the executor of an estate opined to a third party

22  claimant that under the terms of the will certain joint tenancy property was

23  community property.  *See Silver*, 89 Cal. App. 2d at 545.  There was no confidential

24  relationship existing between the executor's attorneys and the third party; the

25  attorneys had advised the third party that they could not represent her and urged her

26  to retain independent legal counsel.  Under those facts, the court held that there was

27  no fraud in the attorneys' expression of opinion.  *See id.*  By contrast, Swedberg's

28  statements were not commercial "puffing" or an exercise of judgment expressed to a

Case No. CV10-01597 GW (MANx)
NCUA'S OPP. TO MOTION TO DISMISS FIFTH
AND SIXTH CLAIMS FOR RELIEF

1    third party.  They were made to advise the board of the nature of the proposed SERP

2    amendments.

3         Moreover, because Swedberg was a fiduciary possessed with expertise on

4    employee benefits matters and the person responsible for implementing the

5    amendments, his statements are actionable even if they might otherwise be classified

6    as opinions.  Opinions can be actionable misrepresentations "'(1) where a party

7    holds himself out to be specially qualified and the other party is so situated that he

8    may reasonably rely upon the former's superior knowledge; (2) where the opinion is

9    by a fiduciary or other trusted person; [and] (3) where a party states his opinion as

10   an existing fact or as implying facts which justify a belief in the truth of the

11   opinion.'"  *Cohen v. S&S Construction Co.,* 151 Cal. App. 3d 941, 946 (1983)

12   (internal citations omitted); *see Lynch v. Cruttenden & Co.,* 18 Cal. App. 4th 802,

13   808 (1993) (reliance on opinion is reasonable "where the recipient of the opinion is

14   in a relationship of trust and confidence, or where the recipient of the opinion

15   reasonably believes that, as compared with himself, the maker of the opinion has

16   special knowledge or skill with respect to the subject matter").

17        Swedberg was in a position of trust and confidence and held himself out as

18   possessing superior knowledge, special information, or expertise regarding the

19   intent of the parties at the time the SERP plan was originally negotiated, the

20   purported errors in the SERP plan document, and the purported necessity for the

21   proposed amendments.  These facts made it reasonable for the board to rely on his

22   opinion in approving the amendments.

23
                   **3.    The Misrepresentations Alleged in the SAC are Not True
24                         Statements Taken Out of Context.**

25        Siravo and Swedberg assert that a number of the alleged misrepresentations in

26   the November 2, 2007 memorandum are not actionable because they are "taken out

27   of context."  They appear to assert that those representations are not material

28   because they relate to the time the Executive SERP was established, in November

1   2001, and not to the time the Siravo SERP was negotiated, in March 2002.  Docket

2   119 at 11:6-12:16.  Siravo and Swedberg contend that this distinction is both clear

3   from the face of the November 2, 2007 memorandum and sufficient to render one

4   time period irrelevant to the other as a matter of law.  Neither is true.

5        The SAC alleges that the Siravo SERP provided a similar lump sum payment

6   as the Executive SERP.  A fact finder could fairly infer that the intent of the two

7   SERPs with respect to the lump sum payment was the same, despite the fact that

8   Siravo's SERP came four months later.  Moreover, the subject of the November 2,

9   2007 memorandum was the Siravo SERP.  The fact that Swedberg made the

10  statements he did about the "initial" development of the plan in his memorandum

11  urging amendments to the Siravo SERP strongly suggests that those statements are

12  material.  While Siravo and Swedberg theorize that the parties intended to modify

13  the Siravo SERP to make it consistent with the intent of the original SERP plan, that

14  theory is inconsistent with the allegations of the SAC and hardly compelled by the

15  language of the November 2, 2007 memorandum.[8]

### 4.    The Amended Siravo SERP did Not Comply with the Board's Resolution.

18       The resolution to amend the Siravo SERP adopted by the board stated that the

19  plan should be amended to make the definition of final compensation "consistent

20  with WesCorp's Defined Benefit Plan."  SAC ¶ 172.  Siravo and Swedberg assert

21  that the alleged misrepresentations caused no harm to WesCorp because the board

22  approved a payment to Siravo that was higher than the amount he ultimately

23  received.  Docket 119 at 14:4-20.  However, nowhere in the board resolution as

24  alleged is there any mention of the dollar amount to be paid to Siravo.  The

---

[8]     Both of the cases defendants rely on, *Corson v. Brown Motel Inv., Inc.*, 87 Cal. App. 3d 422 (1978), and *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 267 F. Supp. 726 (S.D. Cal. 1966), were appeals after a trial on the merits with factual determinations regarding what particular documents and statements meant.

resolution simply states that the calculation should be consistent with WesCorp's Defined Benefit Plan.  The SAC does not allege that the board approved a specific amount to be paid to Siravo.  To the contrary, it alleges that the board approved a formula to calculate Siravo's retirement benefit.  The defendants prepared an amended SERP document that contained a more generous formula.  These allegations sufficiently state a claim for breach of fiduciary duties and fraud.

### 5.  The "Draft" Proposals Swedberg Presented to Harvey and Merlo Contain Actionable Misrepresentations.

Siravo and Swedberg contend that the misrepresentations made in "drafts" are not actionable because they were not submitted to the board as a whole.  *Id.* at 11:6-15.  This contention ignores the allegation in the SAC that the "drafts" went to the chairman of the board's compensation committee, John Merlo and to the chairman of the board, Robert Harvey.  SAC ¶¶ 164, 166.

Merlo and Harvey were both responsible for reviewing the proposal to amend the SERP and making recommendations to the executive committee and the board.  Swedberg was trying to influence them to get their support for the changes and was using similar false statements as the ones that appeared in the November 2, 2007 memorandum.  Merlo and Harvey were entitled to rely on the materials and statements Swedberg presented to them, which may ultimately have led to their support of the final resolution and approval of the SERP amendments.  Thus, misrepresentations made in draft proposals are actionable

Siravo and Swedberg submit the Declaration of Thomas E. Swedberg ("Swedberg Decl.") [Docket 119-1] in support of their motion.  Attached to that declaration is a PowerPoint dated October 29, 2007, which Swedberg declares was given to Siravo and Merlo seven to ten days prior, between October 19 and 22, 2007.  Swedberg Decl. ¶ 3.  Siravo and Swedberg contend that the PowerPoint taken as a whole explains Swedberg's statements so that they are not misleading.

1    First, the Swedberg declaration and PowerPoint are not admissible and should

2    not be considered on a motion to dismiss.  As a general rule, in ruling on a Rule

3    12(b)(6) motion "the court cannot consider material outside the complaint (e.g.,

4    facts presented in briefs, affidavits or discovery materials."  2 W. Schwarzer, A.

5    Tashima & J. Wagstaffe, *California Practice Guide: Federal Civil Procedure*

6    *Before Trial*, § 9:211, at 9-67 (2011).  While the Court may also consider materials

7    subject to judicial notice, attached to the complaint, and (in some circumstances)

8    documents referred to in the complaint but not attached thereto, *see id.*, §§ 9:211 –

9    9:212.1, the SERP Defendants do not and cannot claim that the Swedberg

10   declaration or the attached PowerPoint are admissible under any of these exceptions.

11   Moreover, to the extent the PowerPoint is considered at all, it fails to explain

12   away any of the misrepresentations in the November 2, 2007 memorandum.  Page 6

13   of the PowerPoint makes the statement that the CEO's SERP was "expected to

14   provide income replacement at 48%" and at page 7 states "the SERP formula now

15   produces a shortfall of 28%."  Docket 119-1, Ex. A, at 6.  However, the SAC alleges

16   that this statement is not true and that the Siravo SERP was not expected to provide

17   a 48% replacement rate.  The SAC alleges that: (1) the Siravo SERP was negotiated

18   as a lump sum payment, SAC ¶¶ 156, 163; (2) the Siravo SERP formula in fact

19   provided for a significantly higher lump sum payment than what was negotiated

20   between Siravo and WesCorp, SAC ¶ 163; and (3) Siravo and WesCorp never

21   agreed that his lump sum SERP payment would be calculated based on 48% of his

22   total income, SAC ¶ 165.  The allegations of the SAC must be taken as true, and

23   consequently, the statements in the PowerPoint must be assumed to be false for

24   purposes of this motion.  Finally, the interpretation of the PowerPoint and its effect

25   on the recipients, if in fact they considered it, is a question of fact, not appropriate

26   for a motion to dismiss.

27

28

1

## CONCLUSION

2          As set forth above, the SAC sufficiently alleges that defendants Siravo and

3   Swedberg were not candid and truthful with the board as to their requests for

4   changes to the SERP plans and that they breached their fiduciary duties and

5   committed fraud.  The SERP Defendants' motion to dismiss the SAC's Fifth and

6   Sixth Claims for Relief must be denied.

7

8   DATED:  May 12, 2010          LUCE, FORWARD, HAMILTON & SCRIPPS LLP
                                  MICHAEL H. BIERMAN
9                                 MICHAEL E. PAPPAS

10

11                           By:   /s/ Michael H. Bierman
                                  Michael H. Bierman
12                                Attorneys For The National Credit Union
                                  Administration Board As Liquidating Agent
13                                For Western Corporate Federal Union

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV10-01597 GW (MANx)
                            NCUA'S OPP. TO MOTION TO DISMISS FIFTH
                            AND SIXTH CLAIMS FOR RELIEF