1  Michael H. Bierman, State Bar No. 89156
   Michael E. Pappas, State Bar No. 130400
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   601 S. Figueroa, Suite 3900
3  Los Angeles, California 90017
   Telephone: 213.892.4992
4  Facsimile: 213.892.7731
   E-Mail:  mbierman@luce.com
5          mpappas@luce.com
6
7  Attorneys for Plaintiff National Credit Union Administration Board
   As Liquidating Agent For Western Corporate Federal Credit Union
8

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

| 11 | NATIONAL CREDIT UNION ADMINISTRATION BOARD AS LIQUIDATING AGENT FOR WESTERN CORPORATE FEDERAL CREDIT UNION, | Case No.: CV10-01597 GW (MANx) |
|---|---|---|
| 12 | | **MEMORANDUM OF POINTS AND AUTHORITIES OF THE NATIONAL CREDIT UNION ADMINISTRATION BOARD AS LIQUIDATING AGENT FOR WESTERN CORPORATE FEDERAL CREDIT UNION IN OPPOSITION TO DEFENDANT TODD M. LANE'S MOTION TO DISMISS [DOCKET 120]** |
| 13 | | |
| 14 |         Plaintiff, | |
| 15 | v. | |
| 16 | ROBERT A. SIRAVO, TODD M. LANE, ROBERT J. BURRELL, THOMAS E. SWEDBERG, TIMOTHY T. SIDLEY, ROBERT H. HARVEY, JR., WILLIAM CHENEY, GORDON DAMES, JAMES P. JORDAN, TIMOTHY KRAMER, ROBIN J. LENTZ, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE, | |
| 17 | | |
| 18 | | Date:      June 9, 2011 |
| 19 | | Time:      8:30 a.m. |
| 20 | | Courtroom: 10 |
| 21 | | |
| 22 |         Defendants. | |

23
24
25
26
27
28

2011112810.7

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

THE ALLEGATIONS ABOUT LANE IN THE SAC ............................................. 3

LEGAL STANDARD........................................................................... 7

LEGAL ARGUMENT.......................................................................... 8

I.   LANE'S SEPARATE MOTION TO DISMISS IS PROCEDURALLY
     IMPROPER AND SHOULD BE SUMMARILY DENIED........................... 8

II.  THE SAC SETS FORTH SUFFICIENT PARTICULARIZED
     ALLEGATIONS AGAINST LANE TO STATE A CLAIM FOR
     BREACH OF THE FIDUCIARY DUTY OF CARE AGAINST HIM........... 9

     A.   The Applicable Legal Standard on a Motion to Dismiss. ..................... 9

     B.   The SAC States a Claim for Breach of Fiduciary Duties Against
          the Officer Defendants......................................................... 10

     C.   The SAC Sets Forth Sufficient Particularized Factual Allegations
          Against Lane Showing His Role in WesCorp's Failure and in the
          Negligence Alleged............................................................. 11

          1.   The SAC's Allegations Against Lane Sufficiently Identify
               Lane's Roles and Responsibilities and Must be Taken as
               True. ................................................................... 11

          2.   It is Plausible that Lane is Responsible, Along with the
               Other Officer Defendants, for WesCorp's Failure.................. 13

     D.   Lane's Reliance on the ALCO Materials is Both Improper and
          Misplaced. ......................................................................... 16

CONCLUSION ................................................................................. 17

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO LANE'S MOTION TO
DISMISS SAC

2011112810.7

1

## TABLE OF AUTHORITIES

2

### CASES

**Page**

3

*Ashcroft v. Iqbal*,
    __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......... 7, 9, 10, 11, 12, 13

4

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988)...............................................................7

5

6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................... 9, 11, 12, 13

7

*Erickson v. Pardus*,
    551 U.S. 89 (2007)..........................................................................10

8

9

*GAB Business Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*
    83 Cal. App. 4th 409 (2000)...........................................................10

10

11

*Iconix, Inc. v. Tokuda*,
    457 F. Supp. 2d 969 (N.D. Cal. 2006).............................................10

12

*In re Heritage Bond Litig.*,
    2004 U.S. Dist. LEXIS 15387 (C.D. Cal. June 28, 2004)................10

13

14

*Phillips v. Baker*,
    121 F.2d 752 (9th Cir. 1941)............................................................9

15

*Reeves v. Hanlon*,
    33 Cal. 4th 1140 (2004) .................................................................10

16

17

*Sprewell v. Golden State Warriors*,
    266 F.3d 979,
    *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001) .................7

18

19

*Yulaeva v. Greenpoint Mortgage Funding, Inc.*,
    2010 WL 5394859 (E.D. Cal. Dec. 20, 2010) ..........................10, 13

20

### RULES

21

Fed. R. Civ. P. 8................................................................................9, 12

22

Fed. R. Civ. P. 12(b)(6).........................................................................7

23

Fed. R. Civ. P. 12(g).............................................................................9

24

Fed. R. Civ. P. 12(g)(2).................................................................1, 8, 9

25

Fed. R. Civ. P. 12........................................................................1, 8, 9

26

Local Rule 11-6 ..........................................................................1, 8, 9

27

28

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES
**(cont'd)**

**Page**

### MISCELLANEOUS

6 B. Witkin, *Summary of California Law: Torts*,
   § 1193 (10th ed. 2005 & supp. 2010) ........................................................ 13, 15

iii

2011112810.7

# INTRODUCTION

Defendant Todd Lane ("Lane"), the former Chief Financial Officer of Western Corporate Federal Credit Union ("WesCorp"), has filed this motion to dismiss the Second Amended Complaint ("SAC") filed by plaintiff National Credit Union Administration Board as Liquidating Agent for WesCorp (the "NCUA") on the grounds that the business judgment rule should apply to officers like him and the SAC does not sufficiently allege his breaches of fiduciary duty. This is Lane's second motion to dismiss the SAC. Lane is also a moving party to the Officer Defendants' Motion to Dismiss (the "Officer Defendants' Motion") [Docket 121], which makes similar challenges to the SAC.

By filing two motions to dismiss, Lane has violated Fed. R. Civ. P. 12(g)(2) (which prohibits parties from making multiple Rule 12 motions) and evaded Local Rule 11-6 (which limits briefs to 25 pages). Lane's violation of these rules creates an inordinate burden for the Court and the NCUA and is, by itself, sufficient ground to deny Lane's motion.

The SAC alleges that as Chief Financial Officer, Lane was responsible for the financial affairs of WesCorp, including its financial statements and financial operations and budgeting process, and that he functioned as WesCorp's second in command and had general supervisory responsibility over the institution. Lane was a voting member of WesCorp's Asset and Liability Committee ("ALCO") and its Asset and Liability Staff Committee ("ALSC"), the bodies responsible for supervising WesCorp's investment strategy and for ensuring the safety and soundness of WesCorp's investments and balance sheet. Lane was paid between $176,000 and $390,000 annually from 2002 through 2007; he received $1,325,000 in supplemental payments in 2006 and $75,000 in both 2007 and 2008 in addition to his salary and bonus. Lane was an integral part of WesCorp's senior management team, and he was responsible, along with the other senior officers, for WesCorp's failure.

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO LANE'S MOTION TO
DISMISS SAC

2011112810.7

1    Lane brings his motion on two grounds.  First, he asserts essentially that the

2  business judgment rule should apply to officers, and that he can not be held liable

3  for breaches of the duty of care in the absence of allegations of bad faith, wrongful

4  conduct, abdication of duties, or failure to provide information to the board.  To

5  support this argument, Lane incorporates the arguments set forth in the Officer

6  Defendants' Motion.  The NCUA similarly incorporates its Opposition to the

7  Officer Defendants' Motion, which shows that: (1) the Officer Defendants –

8  including Lane – owed a fiduciary duty of care to WesCorp to act with reasonable

9  care and diligence; and (2) the facts alleged in the SAC are more than sufficient to

10  show that the Officer Defendants – including Lane – breached their fiduciary duty

11  of care.

12    Second, Lane asserts that even if the allegations of the SAC are sufficient to

13  state a claim against the other Officer Defendants, they are insufficient to state a

14  claim against him because they do not allege that he had a role in, or responsibility

15  for, the excessive concentration of risky private label MBS in WesCorp's

16  investment portfolio.  In support of this second ground, Lane claims that: (1) the

17  SAC impermissibly "lumps" allegations against him with those against the other

18  Officer Defendants; and (2) the allegations against him are implausible because they

19  do not sufficiently demonstrate how he could bear some responsibility for

20  WesCorp's failure.

21    Lane's first argument ignores the specific and separate allegations against

22  him, and Lane cites no authority suggesting that a plaintiff cannot allege acts or

23  omissions by two or more defendants in a single sentence or otherwise use defined

24  terms to identify a group of individuals acting together without being accused of

25  "lumping."

26    Lane's claim of implausibility is also meritless.  The allegations against Lane

27  – a corporate officer who was in charge of WesCorp's finances and budget, who

28  was an integral part of the senior management, who was involved with setting

2011112810.7

1   strategic direction and business goals, and was one of the voting members of the

2   financial institution's ALCO and ALSC, bodies responsible for WesCorp's

3   investment portfolio – permit a reasonable inference that he had some responsibility

4   for WesCorp's failure.  The SAC includes detailed factual allegations that are more

5   than sufficient to support a finding that Lane breached the fiduciary duty of care that

6   he owed WesCorp and that such breach was a proximate cause of the damages

7   suffered by WesCorp.

8       Lane also asks the Court to take judicial notice of hundreds of pages of

9   ALCO minutes that he contends define the limits of his duties at WesCorp.[1]  He

10  asks this Court to determine, at the pleading stage, that he had no role in pursuing a

11  failed business strategy dependent on massive borrowing and limitless

12  concentrations in risky Option ARM MBS, despite specific factual allegations to the

13  contrary which support the conclusion that he did have such a role.

14      The SAC's allegations are sufficient to put Lane on notice of the claims

15  against him, and, taking the factual allegations as true, state a plausible claim against

16  him for breach of fiduciary duty.  The Court should reject Lane's attempts to have

17  this Court conduct an evidentiary review of the ALCO materials and impose a

18  higher standard of pleading than is required.

19  ## THE ALLEGATIONS ABOUT LANE IN THE SAC

20      The SAC alleges that Lane was the Chief Financial Officer of WesCorp from

21  March 9, 1998 to April 18, 2008, a period of 10 years.[2]  SAC ¶ 8.  As Chief

---

23  [1]   The NCUA's opposition to defendants' request for judicial notice, filed
24  concurrently herewith, explains why the judicial notice sought by Lane and the
    Officer Defendants is inappropriate.  In any event, the materials as to which the
25  defendants seek judicial notice do not contradict the allegations of the SAC, and
    they therefore have no bearing on the motion to dismiss.

26  [2]   The facts set forth in the SAC pertaining to the Officer Defendants' breach of
    fiduciary duties are discussed in detail in the NCUA's Opposition to the Officer
27  Defendants' Motion to Dismiss, which is incorporated by reference and will not be
    repeated here.  This Part discusses the FAC's specific allegations with regard to
28  Lane's responsibility for the financial affairs of WesCorp and its failure.

                                                        Case No. CV10-01597 GW (MANx)
                                                        NCUA'S OPPOSITION TO LANE'S MOTION TO
                                                        DISMISS SAC

2011112810.7

Financial Officer, Lane was responsible for WesCorp's financial affairs, including its financial statements and financial operations.  SAC ¶ 55.  Lane had a duty to ensure that WesCorp followed sound financial practices.  *Id.*

Lane functioned as "second in command" at WesCorp behind WesCorp's president, Robert Siravo, and he had general supervisory responsibility over WesCorp.  SAC ¶¶ 53, 55.  He managed WesCorp collaboratively with Siravo and Robert Burrell, WesCorp's Chief Investment Officer, and together they determined and implemented WesCorp's overall business strategies, including its strategy of significantly increasing investment income by investing in higher yielding securities and by substantial borrowing.  SAC ¶ 57.  That strategy was used to justify increased compensation for WesCorp's top executives, including Lane.  SAC ¶ 70.

Lane was a voting member of the ALCO, which was responsible for the oversight of the asset liability management process, including investments.  SAC ¶¶ 24, 60.  The ALCO provided overall management direction for WesCorp's investment strategy and the types and level of risk WesCorp's investments exposed it to.  SAC ¶ 25.  The ALCO's duties included the review and recommendation of proposed changes to WesCorp's asset and liability policy and strategy, the review of and recommendations for existing and proposed concentration limits, and review and recommendations for investment security purchases and sales.  *Id.*

Lane was also a voting member of the ALSC, which was formed to provide a forum to coordinate the issues that most directly impacted effective management of WesCorp's balance sheet, including investments.  SAC ¶¶ 59-60.  The ALSC was responsible for review of investment security purchases and sales and the prevailing investment strategies and potential changes to those strategies.  SAC ¶ 59.

As a voting member of the ALCO and the ALSC, Lane was responsible for supervising WesCorp's investments, recommending policies and investment strategies and ensuring the safety and soundness of WesCorp's asset and liability activities, including its investment activities.  *Id.*  One of Lane's responsibilities as a

1   voting member of the ALCO was to recommend concentration limits that met

2   regulatory requirements and ensured that WesCorp's portfolio was properly

3   diversified to minimize investment risk.[3]  SAC ¶ 109.

4          In addition to his overall management responsibility at WesCorp and his

5   membership on the ALCO and the ALSC, Lane had additional duties as Chief

6   Financial Officer.  He was responsible for preparing WesCorp's annual budget and

7   proposing the budget to WesCorp's Board.  SAC ¶ 85.  As officer in charge of the

8   budgeting process, Lane had a duty to understand and consider how WesCorp would

9   achieve the investment income and net interest income recommended in the

10  proposed budget and to explain to the budget committee and, if necessary, the Board

11  as a whole, the credit and financial risks that the budget contained.  SAC ¶ 86.

12         The budgets Lane prepared contained little information about proposed

13  projected investment income, investment expense and net interest income, except

14  the monthly projected totals.  SAC ¶ 88.  Lane did not provide WesCorp's directors

15  information about the composition of WesCorp's investment portfolio necessary to

16  achieve the net interest income projected in the budgets.  *Id.*  Because the amount of

17  investment income and net interest income earned by WesCorp was based on the

18  return WesCorp received on its investment portfolio, which in turn was determined

19  by the risk of the portfolio, the budget dictated the investment risk in WesCorp's

20  portfolio.  SAC ¶ 89.  However, Lane did not provide any information to the Board

21  or the budget committee to allow them to evaluate that risk.  SAC ¶¶ 88-89.

22  Presumably, Lane had such information, given his participation in the ALSC and the

23  ALCO.  SAC ¶¶ 25, 59, 60.

24         The budgets Lane proposed to WesCorp's budget committee and board

25  mandated increasing investment income and net interest income, but Lane did not

26

---

27  [3]    The facts regarding concentration limits and the failure to control MBS and
    Option ARM MBS and its effect on WesCorp's failure are set forth in the NCUA's
28  opposition to the Officer Defendants' Motion to Dismiss.

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO LANE'S MOTION TO
DISMISS SAC

1  provide the board information about the risks required for WesCorp to earn that

2  additional income.  SAC ¶¶ 90, 93-95.  Lane advocated for these budgets, and did

3  not highlight the increased risks inherent in them, in part to further his own personal

4  agenda of ever increasing salary, bonuses and retirement plans, all of which were

5  funded from the increasing net interest income mandated by the budgets.  SAC

6  ¶ 104.

7          By June 2006, Lane was aware that investment credit spreads for certain

8  private label MBS were continuing to shrink while the investment credit spreads

9  required for WesCorp to meet its budgeted income targets had been increasing.

10  SAC ¶ 98.  Despite the knowledge of shrinking investment credit spreads and the

11  risks inherent in the MBS WesCorp was purchasing, Lane failed to consider the

12  consequences of substantially increasing investment income and net interest income

13  through investment in riskier MBS securities and was obligated to explain to the

14  budget committee and the Board how adoption of the budgets in 2006 and 2007

15  would materially affect the risk in WesCorp's investment portfolio.  SAC ¶¶ 98,

16  100.

17          Lane acknowledges that as CFO he was responsible for WesCorp's financial

18  soundness and capital requirements.  SAC ¶ 55; Docket 120-1 at 10:7-10.  NCUA

19  regulations required WesCorp to maintain sufficient capital to support its risk

20  exposures, and WesCorp's corporate policies required management to recommend

21  capital goals sufficient to support WesCorp's risk.  SAC ¶¶ 68, 147.  Although

22  WesCorp's risk exposures were increasing because of WesCorp's increased

23  borrowing and substantial concentration of Option ARM MBS, WesCorp did not

24  increase its capital goals or its capital base to compensate for the increase in risk in

25  its investment portfolio.  *Id.*  To the contrary, between 2002 and 2007, WesCorp's

26  capital ratios – the ratios of capital to assets – declined.  By 2007, all but two retail

27  corporate credit unions had higher retained earnings ratios than WesCorp and all but

28  four had higher total capital ratios.  SAC ¶ 68.  Allowing WesCorp's core capital

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO LANE'S MOTION TO
DISMISS SAC

2011112810.7

1 | and total capital ratios to decline, particularly in light of WesCorp's heavy
2 | investment in private label MBS and Option ARM MBS, was unreasonable.  SAC
3 | ¶ 147.
4 |       Lane earned substantial compensation at WesCorp.  Lane's salary and bonus
5 | ranged from $176,000 in 2002 to approximately $390,000 in 2007, his last full year
6 | with WesCorp.  SAC ¶ 70.  As a senior executive of WesCorp, Lane was also a
7 | participant in WesCorp's Supplemental Executive Retirement Plan.  SAC ¶ 179.
8 | His retirement date was in 2015; however, he arranged for a payout in lieu of
9 | retirement benefits in 2006.  SAC ¶¶ 179-80.  On February 28, 2006, Lane received
10 | a lump sum payment of $1,325,000 and additional payments of $75,000 in both
11 | 2007 and 2008.  SAC ¶¶ 180, 182.  These payments were in addition to Lane's base
12 | compensation and regular bonus.  SAC ¶ 182.  WesCorp failed on March 20, 2009,
13 | less than 11 months after Lane left.  SAC ¶¶ 1, 182.

## LEGAL STANDARD

14 |
15 |       Dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is
16 | warranted only where the complaint does not allege a claim supported by a
17 | cognizable legal theory or if the complaint does not allege sufficient facts in support
18 | of a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,
19 | 699 (9th Cir. 1988).
20 |       When considering a motion to dismiss under Rule 12(b)(6), the Court must
21 | accept as true all of the factual allegations set out in plaintiff's complaint and draw
22 | inferences from those allegations in the light most favorable to plaintiff.  *See*
23 | *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended on other grounds*,
24 | 275 F.3d 1187 (9th Cir. 2001).  If a complaint "pleads factual content that allows the
25 | court to draw the reasonable inference that the defendant is liable for the misconduct
26 | alleged," the complaint survives a motion to dismiss.  *Ashcroft v. Iqbal*, __ U.S. __,
27 | 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).
28 |

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO LANE'S MOTION TO
DISMISS SAC

2011112810.7

## LEGAL ARGUMENT

### I.   LANE'S SEPARATE MOTION TO DISMISS IS PROCEDURALLY IMPROPER AND SHOULD BE SUMMARILY DENIED

Lane has impermissibly filed two motions to dismiss the First Claim for Relief for breach of fiduciary duty, thereby violating Fed. R. Civ. P. 12(g)(2)'s prohibition on serial motions to dismiss and effectively evading Local Rule 11-6's limitation on the length of memoranda.  Lane, along with the other Officer Defendants, collectively filed a motion to dismiss the First Claim for Relief.  Docket 121.  Lane's counsel signed that motion on behalf of Lane.  Lane has now brought a second, separate motion to dismiss on similar grounds.

Both motions address only the First Claim for Relief.  Both motions assert that the allegations of the SAC fail to state a claim.  Like the instant motion, the Officer Defendants' motion discusses, among other things: (1) the Officer Defendants (including Lane) and their duties, Docket 121 at 5:1 – 6:21; (2) the relative roles of the Officer Defendants (including Lane), the board of directors and board committees, including the ALCO, the ALSC, and the budget committee, *id.* at 6:22 – 8:5; and (3) the SAC's allegations regarding the responsibility of the Officer Defendants to control MBS and MBS Option ARM concentration risk, credit risk, and the budget, *id.* at 8:7 – 10:12.  The Officer Defendants' brief then analyzes the roles of the Officer Defendants (including Lane) on the budget committee, in setting concentration limits, and in purchasing MBS, and it argues why the SAC fails to state a claim for breach of fiduciary duty against any of them (including Lane).  *Id.* at 17:3 – 22:26.

Rule 12(g)(2) requires that a party must raise all objections and defenses in a single Rule 12 motion and cannot bring multiple motions attacking a pleading on separate grounds:

2011112810.7

1
2
> [A] party who makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

3  Fed. R. Civ. P. 12(g)(2).  *See Phillips v. Baker*, 121 F.2d 752, 754 (9th Cir. 1941)

4  (Rule 12(g) provides for the joining of all available motions permitted by Rule 12

5  and prohibits bringing by separate motion any of the omitted defenses which were

6  available).

7       Moreover, in addition to violating Rule 12(g) by filing a second brief, Lane

8  has circumvented Local Rule 11-6, which imposes a 25-page limit on a

9  memorandum of points and authorities.  Lane's additional 16-page brief exceeds the

10  page limit by 15 pages and essentially has given him 41 pages of argument.  Lane's

11  legal position is adequately addressed in the Officer Defendants' motion and this

12  additional Rule 12(b)(6) motion should be disregarded and denied.

13
14
## II.   THE SAC SETS FORTH SUFFICIENT PARTICULARIZED ALLEGATIONS AGAINST LANE TO STATE A CLAIM FOR BREACH OF THE FIDUCIARY DUTY OF CARE AGAINST HIM.

15
### A.   The Applicable Legal Standard on a Motion to Dismiss.

16       Under Fed. R. Civ. P. 8, a pleading need contain only a "short and plain

17  statement of the claim showing that the pleader is entitled to relief."  *Id.*  The

18  complaint must give defendant "fair notice of what the claim is and the grounds

19  upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

20  The complaint must be supported by factual allegations and not just legal

21  conclusions or conclusory statements.  *See Iqbal*, 129 S. Ct. at 1950.  The latter can

22  provide a framework for a complaint, but are not by themselves sufficient or entitled

23  to a presumption of truth.  *See id.* at 1949-50.  There must be factual allegations that

24  tend to support the conclusions.  *See id.*

25       *Twombly* and *Iqbal* require a two-part analysis.  The first part is to identify the

26  factual allegations (as opposed to legal conclusions).  The second part is

27  consideration of whether those factual allegations – taken as true – plausibly state a

28

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO LANE'S MOTION TO DISMISS SAC

1   claim for relief.  *Id.  See Yulaeva v. Greenpoint Mortgage Funding, Inc.*, 2010 WL

2   5394859 at *1-2 (E.D. Cal. Dec. 20, 2010) (citing *Iqbal* and *Erickson v. Pardus*, 551

3   U.S. 89 (2007)).

4        Lane argues that "[a]llegations of legal duties are legal conclusions and,

5   therefore, the Court need not accept them as true."  Docket 120-1 at 11:2-6.

6   However, to establish that Lane owed a fiduciary duty to WesCorp as a matter of

7   law, all the NCUA needed to do was to allege facts showing that Lane was an

8   officer who participated in WesCorp's management and exercised some

9   discretionary authority.  *See Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 981 (N.D.

10  Cal. 2006); *GAB Business Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83

11  Cal. App. 4th 409, 420-21 (2000), *overruled on other grounds*, *Reeves v. Hanlon*, 33

12  Cal. 4th 1140 (2004).  Lane does not and cannot dispute that the SAC's factual

13  allegations are sufficient to establish that Lane participated in WesCorp's

14  management and exercised some discretionary authority and that he therefore owed

15  a fiduciary duty to WesCorp.  Nor can Lane dispute that, as a matter of law, he owed

16  WesCorp a fiduciary duty of care requiring him to exercise reasonable care and

17  diligence.  *See In re Heritage Bond Litig.*, 2004 U.S. Dist. LEXIS 15387 at *13

18  (C.D. Cal. June 28, 2004)

19
                **B.   The SAC States a Claim for Breach of Fiduciary Duties Against
20                       the Officer Defendants.**

21       In his Motion, Lane joins and adopts the arguments set forth in the Officers'

22  Motion to Dismiss that they did not breach their fiduciary duties to WesCorp.

23  Docket 120-1 at 1:11-16, 16:9-21.  WesCorp's argument regarding negligence and

24  breach of fiduciary duties by the Officer Defendants is set forth at length in

25  WesCorp's opposition to the Officer Defendants' motion and is incorporated herein.

26  In short, California law recognizes that corporate officers owe a fiduciary duty of

27  care to their corporation – a duty that is breached when officers fail to exercise

28  reasonable care or diligence (even if they acted in good faith and did not breach

                                                    10

their duty of loyalty) – and that officers (unlike directors) are not entitled to the protection of the business judgment rule.  The NCUA's opposition to the Officer Defendants' motion further shows that the Officer Defendants – including Lane – failed to exercise reasonable care or diligence with regard to WesCorp's operations by, *inter alia*, following risky investment strategies without complying with WesCorp investment policies or taking the steps necessary to ameliorate the risks.

### C.   The SAC Sets Forth Sufficient Particularized Factual Allegations Against Lane Showing His Role in WesCorp's Failure and in the Negligence Alleged.

Lane argues that because of his "limited" role: (1) even if the SAC states a claim for officer negligence, it does not allege sufficient facts to show that Lane, personally, was a participant along with the other officers; and (2) the allegations against him are impermissibly "lumped" with those against other defendants.  In support, Lane selectively cites portions of the SAC, puts his interpretation on those allegations, and ignores the specific and unfavorable allegations. He also asks the Court to determine, purportedly under *Twombly* and *Iqbal,* that the factual allegations that Lane had some responsibility for WesCorp's failure are not "plausible."  Docket 120-1 at 11:9-19.  Lane's motion is without merit, and his interpretation of *Twombly* and *Iqbal* is mistaken.  The motion should be denied.

#### 1.   The SAC's Allegations Against Lane Sufficiently Identify Lane's Roles and Responsibilities and Must be Taken as True.

Lane complains that the identification of his role and responsibility for the alleged breaches of fiduciary duty are not spelled out sufficiently and that he is lumped together with the other defendants impermissibly.  *Id.* at 11:20 – 13:7.  Lane simply ignores the specific allegations set forth above and throughout the SAC. Neither *Iqbal, Twombly,* nor any other case says that the names of more than one defendant cannot be combined in a single sentence.  Yet this is precisely what Lane complains about when he asserts that the defendants are "lumped" together.  *See id.*

11

2011128107

1   at 12:15 – 13:3 (challenging the sufficiency of allegations such as "Siravo, Lane and

2   Burrell were aware. . ." and "[t]he failure of Siravo, Lane and Burrell to

3   discuss. . ."). What is being alleged as to Lane and his role is clear, and the factual

4   support is readily apparent, whether or not the NCUA has combined some of its

5   allegations against some of the Officer Defendants.[4]

6        In *Twombly* and *Iqbal*, the Supreme Court discussed the differences between

7   factual and conclusory allegations. The Court noted that Rule 8 "does not require

8   'detailed factual allegations,' but it demands more than an unadorned, the-

9   defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting

10  *Twombly*, 550 U.S. at 555). The SAC's factual allegations are more than sufficient

11  to satisfy this standard as to Lane.

12       The allegations of the SAC connecting Lane to the acts and omissions that are

13  its subject can be condensed and summarized as follows: Lane was Chief Financial

14  Officer of WesCorp; Lane was second in command at WesCorp; Lane had general

15  supervisory authority over WesCorp; Lane managed WesCorp collaboratively with

16  Siravo and Burrell, and together they determined and implemented its strategy of

17  significantly increasing investment income by investing in higher yielding securities

18  and by substantial borrowing; Lane was a voting member of the ALSC, which was

19  responsible for coordinating the issues that directly impacted WesCorp's balance

20  sheet, including investments; Lane was a voting member of the ALCO, which was

21  responsible for supervising WesCorp's investments and recommending policies and

22  investment strategies including concentration limits; Lane was responsible for

23  WesCorp's budgets; Lane was responsible for providing information to the Board

24  regarding matters relating to the budget and capital requirements, and as a member

25

26  _____

27  [4]   In the FAC, the NCUA has addressed the Court's December 20, 2010 Minute Order requiring enhancement of the factual allegations demonstrating Lane's role and participation, providing specific facts identifying Lane's role and participation

28  in management and the losses to the institution.

1  of the ALSC and ALCO, information relating to investments; and Lane received

2  millions of dollars in compensation for his services.

3      These are all specific factual allegations, not conclusions, regarding Lane's

4  personal involvement.  They must be taken as true for the purposes of a motion to

5  dismiss.

### 2.  It is Plausible that Lane is Responsible, Along with the Other Officer Defendants, for WesCorp's Failure.

8      The second step in the *Twombly/Iqbal* analysis requires the Court to assume

9  that the foregoing allegations are true and to decide if, taken together, they plausibly

10  state a claim.  "'Plausibility,' as it is used in *Twombly* and *Iqbal*, does not refer to

11  the likelihood that a pleader will succeed in proving the allegations.  Instead, it

12  refers to whether the non-conclusory factual allegations, when assumed to be true,

13  'allow[] the court to draw the reasonable inference that the defendant is liable for the

14  misconduct alleged.'"  *Yulaeva*, 2010 WL 5394859 at *2 (citing *Iqbal*, 129 S. Ct. at

15  1949).  Plausibility does not mean "probability."  Only something more than a

16  "sheer possibility that a defendant has acted unlawfully" must be shown.  *Iqbal*, 129

17  S. Ct. at 1949.

18      Nor does the NCUA need to demonstrate that Lane was the sole cause of

19  losses at WesCorp.  "The defendant's negligent act need not be the *sole cause* of the

20  injury; it is enough that it be *a cause*."  6 B. Witkin, *Summary of California Law:*

21  *Torts*, § 1193, at 568 (10th ed. 2005 & supp. 2010) ("*Witkin*").

22      The basis for the claims for breach of fiduciary duty against Lane and the

23  other Officer Defendants and the legal theories supporting those claims are set forth

24  in the NCUA's opposition to the Officer Defendants' Motion.  With respect to Lane,

25  the SAC sufficiently alleges his authorization, direction and participation as well as

26  his knowledge and failure to prevent the harm.  The SAC alleges that WesCorp's

27  failure was caused by a business strategy of making risky investments in private

28

2011112810.7

1    label Option ARM MBS without sufficient controls to address the risk presented by

2    the extremely high concentrations of such investments that WesCorp accumulated.

3         The SAC alleges that Lane, as a member of WesCorp's executive team

4    actively managing and directing WesCorp's business strategy and as the second in

5    command, had the duty to supervise WesCorp's investing activities and portfolio, its

6    budgeting process and the credit risks WesCorp was exposed to and to ensure that

7    the policies, budgets and other board actions necessary for WesCorp's safe and

8    sound operation were recommended and explained to the board.  As Chief Financial

9    Officer, Lane had a duty to control the financial affairs of the credit union and to

10   provide full information about any increase in risk WesCorp would be exposed to by

11   adopting the budgets he recommended.  As a member of the ALCO and the ALSC,

12   Lane also had a duty to ensure that WesCorp's investing strategy was carried out in

13   a safe and sound manner.

14        Lane's conduct in recommending budgets that materially increased risks

15   without recognizing those risks, informing the board of them or recommending or

16   taking steps to mitigate them, was just one of the ways he mismanaged WesCorp's

17   finances and participated in the conduct that caused WesCorp's failure.  As a voting

18   member of the ALCO and the ALSC in charge of ensuring safe and sound

19   investment activity, Lane participated in the decisions that led to the

20   overconcentration of MBS without sufficient risk controls.  By failing to

21   recommend increased capital to account for the increased risk in WesCorp's

22   investment and borrowing activities, Lane further contributed to WesCorp's

23   inability to withstand losses.  At page 13-14 of his motion, Lane attempts to

24   minimize the effect of the budget and his role in preparing it, asserting that he was

25   limited to "matching income with expenses."  *See* Docket 120-1 at 13:16 – 15:1.  As

26   CFO of a multi-billion dollar credit union proposing a budget to the board, Lane had

27   a greater role than simply matching income with expenses.  He was responsible for

28   ensuring that WesCorp's board was making informed decisions in approving the

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO LANE'S MOTION TO
DISMISS SAC

1  budget and in particular in determining the levels of investment income and net

2  interest income that WesCorp's management should be charged with achieving.

3  Contrary to Lane's suggestion, *see id.* at 15:8-10, WesCorp did not grow its income

4  by sound financial management or increasing its membership base, and the SAC

5  does not make that allegation.  Rather, WesCorp grew its investment income and net

6  interest income by borrowing massive amounts of money from 2005 ($6.1 billion)

7  to 2007 ($10.2 billion) and by investing in increasingly risky private label MBS.

8  Lane breached his duty of care by not addressing the risks inherent in the budget and

9  business strategy he proposed and advocated.

10       Finally, there is no paradox in the NCUA's position that Lane had his own

11  separate responsibilities as well as general responsibilities in areas where other

12  WesCorp executives had primary responsibilities, such as investment and credit risk.

13  Neither Burrell nor Sidley prepared the budget or was a member of the budget

14  committee.  Lane, however, was a member of both the ALCO and the ALSC, and he

15  had responsibility for the overall financial health of WesCorp.  As stated above, for

16  Lane to have liability, he need only have been a cause of WesCorp's injury, not the

17  sole cause.  *See* 6 *Witkin*, § 1193, at 568.

18       Lane certainly was in a position to take action to prevent the harm that

19  eventually befell WesCorp.  Whether his conduct is ultimately found to have

20  breached the standard of care is a matter to be determined by the trier of fact.

21  However, if the NCUA proves the allegations in the SAC, it is certainly plausible,

22  given Lane's title, role and vote on the committees that created the strategy and

23  made the decisions that caused WesCorp's failure, that he may be liable for that

24  failure along with the other Officer Defendants he worked with.

25

26

27

28

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO LANE'S MOTION TO
DISMISS SAC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### D.     Lane's Reliance on the ALCO Materials is Both Improper and Misplaced.

Lane improperly attempts to rely on the ALCO materials to minimize his role in managing WesCorp.  Docket 120-1 at 6:23 – 10:22.  He asks the Court to make a factual determination based on the purported evidence contained in those documents that the division of responsibility at WesCorp precludes his legal responsibility for WesCorp's failure.  *Id*.  As discussed in the NCUA's opposition to the Director Defendants' request for judicial notice filed concurrently herewith, Lane's attempted use of the ALCO materials as evidence goes far beyond what is permitted in a request for judicial notice when considering a motion to dismiss a complaint.

Nevertheless, even if the Court were to consider the ALCO materials, they demonstrate nothing more than that Lane was a member of the ALCO, a senior member of the ALSC, regularly attended ALCO and ALSC meetings, was one of three officers on the ALCO, was involved with monitoring capital ratios and ensuring that the Bank met its capital requirements, was involved with business forecasts, and was present for the discussions of both the ALCO and the ALSC. Simply put, the ALCO materials support the allegations in the SAC and confirm the plausibility of the theory alleged: that Lane was intimately familiar with WesCorp's financial and investment affairs, deeply involved in the development and execution of WesCorp's business strategy, and responsible, along with others, for its failure. The fact that Lane is not mentioned more in the ALCO materials cannot nullify the fact allegations of the SAC that charge him with liability.

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO LANE'S MOTION TO DISMISS SAC

2011112810.7

1

## <u>CONCLUSION</u>

2        For the reasons set forth above, the NCUA respectfully requests that Lane's

3   Motion to Dismiss be denied.

4   DATED:  May 12, 2011        LUCE, FORWARD, HAMILTON & SCRIPPS LLP
                          MICHAEL H. BIERMAN

5                             MICHAEL E. PAPPAS

6

7                 By:     /s/ Michael H. Bierman

8                       Michael H. Bierman
                    Attorneys For The National Credit Union

9                       Administration Board As Liquidating Agent
                    For Western Corporate Federal Union

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO LANE'S MOTION TO
DISMISS SAC

2011112810.7