Michael H. Bierman, State Bar No. 89156
Michael E. Pappas, State Bar No. 130400
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 S. Figueroa, Suite 3900
Los Angeles, California 90017
Telephone: 213.892.4992
Facsimile: 213.892.7731
E-Mail: mbierman@luce.com
mpappas@luce.com

Attorneys for Plaintiff National Credit Union Administration Board
As Liquidating Agent For Western Corporate Federal Credit Union

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD AS LIQUIDATING AGENT FOR WESTERN CORPORATE FEDERAL CREDIT UNION,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT A. SIRAVO, TODD M. LANE, ROBERT J. BURRELL, THOMAS E. SWEDBERG, TIMOTHY T. SIDLEY, ROBERT H. HARVEY, JR., WILLIAM CHENEY, GORDON DAMES, JAMES P. JORDAN, TIMOTHY KRAMER, ROBIN J. LENTZ, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE,<br><br>Defendants. | Case No.: CV10-01597 GW (MANx)<br><br>**OBJECTIONS OF PLAINTIFF NATIONAL CREDIT UNION ADMINISTRATION BOARD AS LIQUIDATING AGENT FOR WESTERN CORPORATE FEDERAL CREDIT UNION TO REQUESTS FOR JUDICIAL NOTICE OF DIRECTOR DEFENDANTS AND TODD M. LANE [DOCKETS 120-2 & 123]**<br><br>Date:  June 9, 2011<br>Time:  8:30 a.m.<br>Courtroom: 10 |

# INTRODUCTION

Plaintiff National Credit Union Administration Board (the "NCUA") as Liquidating Agent for Western Corporate Federal Credit Union ("WesCorp") objects as follows to the requests for judicial notice in support of the motions to dismiss NCUA's Second Amended Complaint (the "SAC") filed by: (1) defendants Robert John Burrell, William Cheney, Gordon Dames, Robert H. Harvey, Jr., James Jordan, Timothy M. Kramer, Robert Lentz, John M. Merlo, Warren Nakamura, Brian Osberg, David Rhamy, and Sharon Updike (the "Directors") [Docket 123]; and (2) defendant Todd M. Lane ("Lane") [Docket 120-2].

# BACKGROUND

**A.    ALCO Materials.**

The SAC alleges that WesCorp's Asset and Liability Committee ("ALCO") "provided overall management direction for WesCorp's investment strategy and the types and level of risk WesCorp's investments exposed it to." SAC ¶¶ 23, 25. The SAC further alleges that seven of the Director Defendants and WesCorp officers, including Lane, served on the ALCO at various times from 2005 to 2007, that "many of the other board members attended ALCO meetings," and that "all board members received ALCO materials along with their monthly board packages." SAC ¶¶ 26, 60.

The SAC includes the following statements concerning ALCO materials, each of which was referenced in support of allegations that defendants were on notice of the risks inherent in the Option ARM and other risky mortgage-backed securities ("MBS") in which WesCorp was investing:

> (1)    "[a] document entitled 'Investment & ALM Strategies' in the April 2006 information package for the ALCO" warned that it was getting more difficult to find appropriate securities, that "[i]t seems as if the foreign investors are not considering any of the inherent risks in

these securities," and that "there is nothing in the foreseeable future to suggest spreads will widen," SAC ¶ 97;

(2) "[i]n June 2006, the Director Defendants were presented with a chart showing that the investment credit spreads for private label MBS had been generally shrinking while the investment credit spreads required for WesCorp to meet its budgeted income targets had been increasing," SAC ¶ 99;

(3) "[t]he September 19, 2006 'Economic and Market Conditions' report" referred to newspaper articles about the housing slowdown, SAC ¶ 138;

(4) "[t]he October 31, 2006 'Economic and Market Conditions' report in the ALCO package warned: 'We think the housing story and ramifications of poor lending practices will grow in importance, bringing along with them all of the negative implications for the economy,'" SAC ¶ 139;

(5) "[t]he December 19, 2006 report was even more negative on housing and 'the mortgages underneath the housing market,'" "not[ing] escalating delinquencies and the inability of borrowers to refinance, 'unless some benevolent lender decides to forego the appraisal,'" *id.*;

(6) "[t]he 'Economic and Market Conditions' report in the January 23, 2007 ALCO package" noted concerns "from what we see in the performance characteristics of recent vintage mortgages, and from what we are hearing from mortgage servicers," and stated that "[t]hese . . . statistics tell us that the surge in delinquency notices and foreclosures we've seen recently is only the first warning of a larger wave to come," SAC ¶ 141;

1  (7) "[t]he 'Economic and Market Conditions' report in the February 2007 ALCO package discussed the 'meltdown' of the subprime market and the restricted availability of Option ARM loans," SAC ¶ 142; and

(8) "[t]he report in the March 2007 ALCO package noted the doubling of delinquency rates for prime borrowers in adjustable rate mortgages and the inability of borrowers to roll over balances and refinance," *id.*

The Directors ask the Court to take judicial notice of nine exhibits of ALCO materials – totaling 750 pages – based on the SAC's references to ALCO materials *See* Docket 123 at 3. Seven of those exhibits are the ALCO monthly board packages from April 2006, September 2006, October 2006, and December 2006 through March 2007, *see* Docket 123-1, 123-3 – 123-7, Exs. 1, 4-9; the Directors rely on the SAC's citation to documents in those packages in support of their request for judicial notice, *see* Docket 123 at 3. The two remaining exhibits are identified by the Directors as "June 2006 Officers Orientation" and "June 2006 WesCorp Board Training," Docket 123 at 3; Docket 123-1, Exs. 2-3; the Directors rely on paragraph 99 of the SAC in support of their request for judicial notice, *see* Docket 123 at 3.

Lane's Request for Judicial Notice joins in the Directors' Request for Judicial Notice as to the ALCO monthly board packages (Exhibits 1 and 4-9) and attaches excerpts from those packages. Docket 120-2. In their memorandum of points and authorities, the Officer Defendants join in the Directors' Request for Judicial Notice as to the "ALCO reports"; they apparently are not seeking judicial notice of the June 2006 materials. Docket 121 at 2 n.2.

The Directors assert that portions of the ALCO materials contain information that demonstrates that the Directors were acting within the standard of care. Docket 121 at 10:1-21. In particular, they assert that the ALCO materials show that "the

1 *process* by which the Directors made decisions was more than adequate." *Id*. at
2 18:23-24.

### B. Transcript of NCUA Presentation.

4 The Directors also seek judicial notice of the transcript of a video presentation
5 by Debbie Matz, Chairman of the Board of the NCUA, downloaded from the
6 Internet. *See* Docket 123 at 3; Docket 123-8, Ex. 10. The transcript is incomplete
7 because it does not include the slides that were being shown in conjunction with the
8 transcribed oral portion. The Directors argue that a numbers of statements in the
9 Matz presentation constitute admissions by the NCUA that private label MBS were
10 low risk investments. Docket 121 at 7:26 – 9:20.

## LEGAL ARGUMENT

### I. THE MATERIALS AS TO WHICH DEFENDANTS SEEK JUDICIAL NOTICE MAY NOT BE CONSIDERED IN RULING ON THEIR MOTIONS TO DISMISS.

#### A. Absent Limited Circumstances, Rule 12(b)(6) Motions Must be Decided on the Face of the Complaint.

16 "As a general rule, 'a district court may not consider any material beyond the
17 pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250
18 F.3d 668, 688 (9th Cir. 2001) (quoting *Branch v. Tunnell,* 14 F.3d 449, 453-54 (9th
19 Cir. 1994), *overruled in part on other grounds*, *Galbraith v. County of Santa Clara,*
20 307 F.3d 1119 (9th Cir. 2002)). "There are, however, two exceptions to the
21 requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a
22 summary judgment motion." *Id.* "[U]nder Fed. R. Evid. 201, a court may take
23 judicial notice of 'matters of public record.'" *Id.* (citing *Mack v. South Bay Beer
24 Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). In addition, "a court may consider
25 'material which is properly submitted as part of the complaint' on a motion to
26 dismiss," *id.* (quoting *Branch*, 14 F.3d at 453), or "[i]f the documents are not
27 physically attached to the complaint, they may be considered if the documents'
28 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies'

on them," *id.* (quoting *Parrino v. FHP, Inc.,* 146 F.3d 699, 705-06 (9th Cir. 1998)).

Defendants ask the Court to take judicial notice of the ALCO materials and the video transcript. They do not and cannot contend that these materials are attached to the SAC. They assert that the Court should consider the ALCO materials because they are referred to in the Complaint, but they do not so contend with regard to the video transcript.

**B.     The ALCO Materials may Not be Considered on These Motions.**

**Judicial Notice.** "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The ALCO materials are not properly the subject of judicial notice because they do not fall within either of these categories.

"Facts that are 'generally known within the territorial jurisdiction of the trial court' are those that exist in the unrefreshed, unaided recollection of the populace at large." *Lussier v. Runyon*, 50 F.3d 1103, 1114 (1st Cir. 1995). The ALCO materials are not, of course, generally known to the populace within the Central District. It is true that "some government documents are subject to judicial notice (albeit under certain limited conditions) on the ground that information contained therein is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Id.* However, judicial notice is not proper as to information where "the court did not acquire it through direct resort to *any* public record, but, rather, through untested unilateral submissions." *Id.* For these reasons alone, the ALCO materials are not properly the subject of judicial notice.

Furthermore, while courts may sometimes take judicial notice of the existence of documents, they may not take judicial notice of their contents, if those contents are subject to reasonable dispute. *See Edie v. Baca*, 2009 WL 3417844, at *3 (C.D. Cal. Oct. 19, 2009); *Del Puerto Water Dist. v. United States Bureau of Reclamation,*

271 F. Supp. 2d 1224, 1234 (E.D. Cal. 2003).  In particular, "documents are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or ***any party's assertion of what the contents mean***."  *United States v. Southern California Edison Co.*, 300 F. Supp. 2d 964, 975 (E.D. Cal. 2004) (emphasis added).  Because defendants are seeking to use the ALCO materials not for the existence of the statements in them but for what those statements mean – that "the *process* by which the Directors made decisions was more than adequate" – judicial notice is inappropriate.

**Documents Referred to in Complaint.**  In ruling on a Rule 12(b)(6) motion, a court may consider a document not physically attached to the complaint if: (1) "the complaint *refers* to the document"; (2) "the document is 'central' to plaintiff's claim"; and (3) "no party questions the authenticity of the copy attached to the 12(b)(6) motion."  2 W. Schwarzer, A. Tashima & J. Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial*, § 9:212.1a, at 9-68 (2011) ("*Schwarzer*").  See *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("[e]ven if a document is not attached to the complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"); *Parrino*, 146 F.3d at 706 (extending incorporation-by-reference rule "to documents crucial to the plaintiff's claims"); *Branch*, 14 F.3d at 453-54.  The purpose of the doctrine is to prevent the plaintiff from surviving a motion to dismiss by deliberately omitting documents on which its claims are based.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (citing *Parrino,* 146 F.3d at 706).  "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  *See Ritchie*, 342 F.3d at 908-09 (same); *Schwarzer*, § 9:212.1a, at 9-69 (same).

Furthermore, the doctrine of incorporation by reference does not permit attribution to the plaintiff of everything in a document written by a third party or a

defendant where the plaintiff has not adopted the entirety of the document. *See Rivera v. Hamlet*, 2003 WL 22846114 at *4-5 (N.D. Cal. Nov. 25, 2003); *see also Rojas v. Loza*, 2008 WL 5056525, at *8 (N.D. Cal. Nov. 24, 2008) (rejecting defendants' argument that exhibits attached to complaint showed that they did not use excessive force and noting that plaintiffs did not adopt as true full contents of documents attached to complaint); *Harrison v. Institutional Gang of Investigations*, 2009 WL 1277749, at *2-3 (N.D. Cal. May 6, 2009) (holding that defendants' reliance on the content of administrative appeals attached as exhibits to the complaint to show that the complaint fails to state a claim upon which relief can be granted and that they are entitled to qualified immunity "reflects a basic misunderstanding of the rules at the pleading stage as it attempts to put their words into plaintiff's mouth"); *Franklin v. Dudley*, 2009 WL 3073930, at *3 (E.D. Cal. Sept. 22, 2009) ("[d]efendant is mistaken, however, in assuming that plaintiff has conceded the factual representations in response to the grievance by merely attaching it to his complaint"; "[t]he attachment of a document as an exhibit to the complaint does not mean that plaintiff has adopted as true all the statements in the document"); *Wilson v. Grannis*, 2008 WL 4415268, at *2 (N.D. Cal. Sept. 26, 2008) ("It is true that Rule 10(c) of the Federal Rules of Civil Procedure provides that pages attached to a complaint are part of the complaint 'for all purposes'"; "that does not mean that all the facts set forth in the attachments are to be treated as true"). "The plaintiff's purpose in attaching an exhibit to his complaint determines what assertions if any in the exhibit are acts that the plaintiff has incorporated into the complaint." *Guzell v. Hiller*, 223 F.3d 518, 519 (7th Cir. 2000).

  Here, the SAC refers to the ALCO monthly packages (Exhibits 1 and 4-9). However, the SAC does not expressly refer to the "June 2006 Officers Orientation" and the "June 2006 WesCorp Board Training" (Exhibits 2 and 3). The Directors rely on the SAC's allegation that the Directors were presented with a chart in June 2006, SAC ¶ 99, but they cite no authority that suggests that an allegation that does

not even identify a document being referred to can support consideration of that document on a motion to dismiss. *Cf. Schwarzer*, § 9:212.1a, at 9-68 – 9-69 ("where the complaint merely alleges a 'contract' – not a specific document – the court may not consider documents that are *not indisputably* the basis for the alleged 'contract,' without converting the motion to summary judgment") (citing *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003)).

    None of the selections from the Economic and Market Conditions reports in the ALCO materials that are quoted or referenced in the SAC is "central" or "crucial" to the NCUA's claim, the NCUA does not "refer[] extensively" to those materials, and those materials do not "form[] the basis of" the NCUA's claims. The SAC quotes from or refers to these reports for the limited purpose of establishing that the defendants were on notice of certain facts. The NCUA could have pled generally that the defendants were on notice of these facts, without referring to any specific ALCO material.

    Nothing that defendants ask the Court to consider in those materials disproves or is even relevant to the notice allegations supported by the quotes and references. Indeed, defendants are not generally seeking to use the Economic and Market Conditions reports at all; instead, they are asking the Court to consider the contents of other documents in the ALCO packages. *See* Docket 122-1 at 10:6-21, 16:11-16, 18:23-27, 19:16-20:14, 21:8-9, 21:22-22:6, 22:12-14.

    Defendants have not cited any authority that suggests that a party may oppose a Rule 12(b)(6) motion by asking the Court to draw conclusions about the significance of the contents of any document that a complaint cites in support of an unrelated proposition. Defendants' position, if accepted, would effectively convert almost every Rule 12(b)(6) motion into a summary judgment motion, without applying Fed. R. Civ. P. 12(d)'s requirements that Rule 12(b)(6) motions be converted to summary judgment motions if "matters outside the pleadings are presented to and not excluded by the court" and that "[a]ll parties must be given a

1. reasonable opportunity to present all the material that is pertinent to the motion."
2. Fed. R. Civ. P. 12(d). *See Mack*, 798 F.2d at 1282 ("[i]t is reversible error for a
3. court to grant a motion to dismiss that has been converted to one for summary
4. judgment, without providing all parties a reasonable opportunity to present material
5. relevant to a Rule 56 motion").

      **C.    The NCUA Transcript may Not be Considered on These Motions.**

While the NCUA transcript (Exhibit 10) is arguably a public record,[1] it is incomplete, and in any event, "[d]isputed facts in public records are not properly the subject of judicial notice." 2 R. Jones & G. Rosen, *California Practice Guide: Federal Civil Trials & Evidence*, § 8:874.1, at 8D-12 (2010). As explained in the NCUA's opposition to the Directors' motion to dismiss, the NCUA disputes the Directors' claim that the transcript shows that WesCorp's investments were not risky; the cited portion of the transcript refers to private label MBS generally, not the types of MBS in which WesCorp was investing, and the statements that the Directors are relying on are taken out of context. To the extent that Ms. Matz's statements may be interpreted in the manner urged by the Directors – and the NCUA contends that they cannot – such statements are disputed, and judicial notice is improper.

---

[1] Because the transcript is not referred to in the SAC, judicial notice is the only basis on which defendants could ask the Court to consider the transcript in ruling on the motions to dismiss.

## CONCLUSION

For the reasons set forth above, the Court should decline to take judicial notice of the materials identified by the Directors and Lane and should not consider such materials in ruling on defendants' motions to dismiss.

DATED: May 12, 2011

LUCE, FORWARD, HAMILTON & SCRIPPS LLP
MICHAEL H. BIERMAN
MICHAEL E. PAPPAS

By: /s/ Michael H. Bierman
Michael H. Bierman
Attorneys For The National Credit Union Administration Board As Liquidating Agent For Western Corporate Federal Union