1   BRAD D. BRIAN (State Bar No. 079001)
    Brad.Brian@mto.com
2   RICHARD E. DROOYAN (State Bar No. 065672)
    Richard.Drooyan@mto.com
3   LAURA D. SMOLOWE (State Bar No. 263012)
    Laura.Smolowe@mto.com
4   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue
5   Thirty-Fifth Floor
    Los Angeles, CA 90071-1560
6   Telephone: (213) 683-9100
    Facsimile: (213) 687-3702
7
    Attorneys for Defendants
8   Robert A. Siravo and Thomas E. Swedberg

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  NATIONAL CREDIT UNION              CASE NO. CV10-01597 GW (MANx)
    ADMINISTRATION BOARD AS
13  CONSERVATOR FOR WESTERN            **REPLY IN SUPPORT OF MOTION
    CORPORATE FEDERAL CREDIT           TO DISMISS COUNTS FIVE AND
14  UNION,                             SIX OF SECOND AMENDED
                                       COMPLAINT PURSUANT TO FED.
15              Plaintiff,             R. CIV. P. 12(B)(6)**

16        vs.                          Judge:   Honorable George Wu
                                       Date:    June 9, 2010
17  ROBERT A. SIRAVO, TODD M.          Time:    8:30 a.m.
    LANE, ROBERT J. BURRELL,
18  THOMAS E. SWEDBERG,
    TIMOTHY T. SIDLEY, ROBERT H.
19  HARVEY, JR., WILLIAM CHENEY,
    GORDON DAMES, JAMES P.
20  JORDAN, TIMOTHY KRAMER,
    ROBIN J. LENTZ, JOHN M. MERLO,
21  WARREN NAKAMURA, BRIAN
    OSBERG, DAVID RHAMY and
22  SHARON UPDIKE,

23              Defendants.

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION ............................................................................... 1

4    II.   ARGUMENT ..................................................................................... 2

5          A.    Defendants' Motion Is Not A Motion For Reconsideration ................ 2

6          B.    The Second Amended Complaint Does Not State A Claim for
7                Fraud Or Breach Of Fiduciary Duty ....................................................... 3

8                1.    The SAC Once Again Fails To Allege That Defendants
                       Concealed A *Quid Pro Quo* Arrangement ................................. 3

9                2.    Plaintiff's Claims Are Based Entirely Upon Swedberg's
10                     November 2, 2007 Memorandum ................................................. 4

11               3.    The Purported Misrepresentations In The November 2
                       Memorandum Are Neither Misleading Nor Material ................ 6

12
                 4.    The Purported Misrepresentations Compare Two
13                     Different Time Periods ................................................................. 9

14               5.    The Complaint Does Not Allege A Claim For
                       Constructive Fraud And Such A Claim Would Fail
15                     Regardless ..................................................................................... 10

16               6.    Plaintiff's New Argument That The Amended SERPs
                       Used A Different Formula Than The Board Authorized Is
17                     Once Again Not Alleged In The Complaint .............................. 10

18   III.  CONCLUSION ................................................................................ 12

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

5

*Ashcroft v. Iqbal,*
129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009) .................................................... 7, 11

6

7

*Broam v. Bogan,*
320 F.3d 1023 (9th Cir. 2003) .................................................................. 6, 10

8

9

*In re Bare Escentuals, Inc. Sec. Litig.,*
No. C 09-3268 PJH, 2010 WL 3893622 (N.D. Cal. Sept. 30, 2010) ................. 6

10

11

*Quan v. Computer Sciences Corp.,*
623 F.3d 870 (9th Cir. 2010) ................................................................... 8, 9

12

*Sprewell*, 266 F.3d at 988 ................................................................................ 11

13

14

*The 1849 Condominiums Assoc., Inc. v. Bruner,*
No. 2:09-cv-03339-JAM, 2010 WL 2557711 (E.D. Cal. June 21, 2010).......... 10

15

*Van Buskirk v. Cable News Network, Inc.,*
284 F.3d 977 (9th Cir. 2002) ........................................................................ 4

16

17

**STATE CASES**

18

*Estate of Gump,*
1 Cal. App. 4th 582, 2 Cal. Rptr. 2d 269 (1991) ............................................ 10

19

20

21

*Levine v. Blue Shield of California,*
189 Cal. App. 4th 1117, --- Cal. Rptr. 3d ----, 2010 WL 4369797 (Cal. Ct. App. 2010) .................................................................................................. 6, 8

22

23

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand,*
6 Cal. 3d 176, 98 Cal. Rptr. 837 (1971) ...................................................... 6, 8

24

25

*Pelligrini v. Weiss,*
165 Cal. App. 4th 515, 81 Cal. Rptr. 3d 387 (2008) ......................................... 5

26

*Perlas v. GMAC Mortg., LLC,*
187 Cal. App. 4th 429, 113 Cal. Rptr. 3d 790 (2010) ....................................... 5

27

28

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**FEDERAL RULES**

Fed. R. Civ. P. 8(a)(2)................................................................................12

**STATE RULES**

Rule 12(b)(6)..................................................................................5, 6

**TREATISES**

RESTATEMENT (SECOND) OF TORTS § 538, com. e (1977).......................8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Despite the plain language of this Court's Order dismissing the Supplemental Executive Retirement Plans ("SERP") claims against Defendants Robert Siravo and Thomas Swedberg without prejudice, the National Credit Union Administration ("NCUA") chose to reassert those claims verbatim in its Second Amended Complaint ("SAC") because it assumes that the Court intended to adopt the tentative order issued a month earlier.  In doing so, the NCUA ignores the hearing at which Defendants' counsel pointed out that, notwithstanding the NCUA's response to the Motion to Dismiss the First Amended Complaint, the NCUA had not alleged that Defendants had concealed a purported *quid pro quo* arrangement from the WesCorp Board of Directors ("the Board").  In response, the Court indicated that "I will take another look at it.  But at best what you will get is dismissal with leave to amend."   (Reporter's Transcript of Proceedings 12/20/2010 at 23:23-25.)  Thereafter, the Court granted Defendants' motion with leave to amend.

The NCUA apparently believes that the Court did not intend to dismiss its claims with leave to amend.  Notwithstanding the colloquy at the hearing, the NCUA has once again *failed to allege any concealment* of the purported *quid pro quo.*  Moreover, the crucial fact at issue in Defendants' Motion to Dismiss Counts Five and Six of the SAC remains *undisputed.*  In proposing changes to the SERPs, Defendants "disclosed the net result of the changes" and the financial impact of the proposed changes to the Board.  (Opp. at 1.)  Notwithstanding the NCUA's overtones to the contrary, the SAC acknowledges that it was no secret that the proposed SERP amendments would increase the supplemental retirement benefits that Defendants and other WesCorp executives would receive upon their retirements from the company.  There is nothing remarkable, much less sinister or

conspiratorial, about any of this, and none of it forms the basis for claims of fraud or a breach of fiduciary duty.

That Defendant Swedberg characterized the changes as "administrative" rather than "substantive" is just that — a non-actionable characterization or opinion that was entirely immaterial.[1] It simply cannot form the basis of Plaintiff's claims where, as here, the Board was fully informed about the nature of the changes and their financial implications.

Without a real leg to stand on, Plaintiff's Opposition once again relies upon new theories and allegations not present in the SAC. Plaintiff must, however, accept the allegations as pled for purposes of opposing a motion to dismiss, and it cannot rely upon allegations not in the SAC. Moreover, these *same* new theories were identified as improper in the last round of briefing. Nevertheless, the NCUA has failed to add them to the SAC, suggesting it is well aware that they lack any merit or factual basis. This Court granted the NCUA leave to amend, but it failed to cure the apparent defects. The NCUA should not get another bite at the apple, and Counts Five and Six should be dismissed with prejudice.

## II.   ARGUMENT

### A.   Defendants' Motion Is Not A Motion For Reconsideration

Defendants' Motion to Dismiss Counts Five and Six is not an improper motion for reconsideration; it is not a motion for reconsideration at all. Accordingly, the NCUA's three pages of briefing and analysis in its Opposition (pp. 9-12) are entirely irrelevant.

This Court's Order regarding the motions to dismiss the FAC, issued on January 31, 2011, explicitly states that "Defendants Robert A. Siravo and Thomas

---

[1] The NCUA incorrectly refers to Mr. Swedberg in its Opposition as an "officer[]." (Opp. at 6.) As the SAC acknowledges, Swedberg was *not* a WesCorp officer. (SAC ¶ 11.) He is therefore not subject to the special duties of officers identified by Plaintiff in its briefing. Labeling Swedberg an officer provides the misleading impression he had greater authority and discretion than he in fact had. Mr. Swedberg was a WesCorp employee acting at the direction of his superiors.

1   E. Swedberg's Motion to Dismiss With Prejudice Counts One, Two, Three and

2   Four of First Amended Complaint" was "granted with leave to amend.  (Order of

3   1/31/2011 at 1.)  It is simply not the case that "there is no reason to believe that"

4   this Court would have reversed its tentative ruling.  (Opp. at 11.)  To the contrary,

5   counsel for Defendants pointed out at oral argument that the purported *quid pro quo*

6   arrangement between Defendants had not been alleged in the First Amended

7   Complaint, and the Court indicated that it was going to "take another look at it." [2]

8   The Court thereafter granted Defendants' Motion to Dismiss with leave to amend.

9   The NCUA, however, chose to ignore the dismissal and proceeded to plead *the*

10  *exact same allegations* regarding the SERP as it did in the First Amended

11  Complaint.  As a result, the SAC has the exact same defects as its predecessor.

12         **B.    The Second Amended Complaint Does Not State A Claim for**

13                **Fraud Or Breach Of Fiduciary Duty**

14                **1.    The SAC Once Again Fails To Allege That Defendants**

15                      **Concealed A *Quid Pro Quo* Arrangement**

16         In its tentative ruling of December 20, 2010, this Court identified one

17  purported allegation that would allow the FAC to survive the motion to dismiss:

18  that Defendants allegedly concealed a "*quid pro quo* arrangement" to seek the

19  SERP amendments.  (Tentative order of 12/20/2010 at 22.)  Notwithstanding the

20  Court's observation, the SAC once again fails to allege that any such arrangement

21  was concealed.  Specifically, the SAC alleges that Siravo and Swedberg agreed to

22  work together on the SERP amendments, but it *does not allege* that they concealed

23  this from the Board.  (SAC ¶¶ 158-59.)  This is not surprising given that we believe

24  ───────────────
    [2] At the hearing, the Court stated that "I had thought that they were alleging [] that

25  there was a quid pro quo arrangement and the failure to inform about the quid pro

    quo arrangement could possibly be sufficient [to state a claim]."  (Tr. of 12/20/2010

26  Hearing at 20:12-15.)  Counsel for Defendants explained that "that is how the

    opposition reads -- opposition to our motion, but that's not really what they alleged

27  in the complaint. . . . [T]hey didn't allege that that fact was concealed."  (*Id.* at

    20:19-21, 22:1-2.)  The Court then stated it would "take another look at [the

28  issue]."  (*Id.* at 23:24.)

1    the evidence will show that the Board was well aware that any changes to

2    Mr. Siravo's SERP would result in changes to the other Executives' SERPs.

3                    **2.      Plaintiff's Claims Are Based Entirely Upon Swedberg's**

4                            **November 2, 2007 Memorandum**

5            The crux of Plaintiff's claims for fraud and breach of fiduciary duty[3] is that

6    Defendants made a material misrepresentation in a memorandum that Swedberg

7    sent to WesCorp's Chairman Robert Harvey on November 5, 2007.  (SAC ¶¶ 162-

8    171, Ex. 1.)  In reliance on this memorandum, which was "provided to the board's

9    executive committee (and possibly the board as a whole)," the Board allegedly

10   "approved the SERP amendments and permitted the increased SERP payments to

11   Siravo and Swedberg."  (SAC ¶¶ 166, 225.)

12           Although the SAC references other documents, they are not a sufficient basis

13   for Plaintiff's claims.  In summarizing the allegations in the SAC, Plaintiff

14   selectively discusses a PowerPoint presentation that Swedberg prepared, which

15   allegedly contained "false and misleading" statements, (Opp. at 7 (citing SAC ¶

16   162).)   As explained in the Motion (at 5, 13), the statements in the PowerPoint are

17   not false.  The NCUA simply repeats the out-of-context quotes and phrases alleged

18   in the SAC.  (Opp. at 23.)  This selective quotation gives a misleading impression

19   of the document, which explains that the term "shortfall" was used to signify the

20   change between the former and current understandings of tax gross-ups, not to

21   suggest that the 47% gross-up was a shortfall from what was originally negotiated.

22   (*See* Mot. at 5.)  That is why the context is important, and why a review of the

23   actual document fatally contradicts the SAC's allegations.  *See, e.g.*, *Van Buskirk v.*

24   *Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Under the

---

[3] Plaintiff's Opposition concedes that its fraud and breach of fiduciary duty claims
stand or fall together.  (Opp. at 13 & n.6 (acknowledging that "fiduciary duty
underlies all of the claims against Siravo and Swedberg relating to the SERP
amendments" and agreeing that "if [they] prove that their disclosures to WesCorp's
board fully satisfied their duty of candor and full disclosure, . . .those disclosures
would not be actionable as fraud").)

1   'incorporation by reference' rule of [the Ninth] Circuit, a court may look beyond

2   the pleadings" and "consider documents that were referenced" in the complaint on a

3   Rule 12(b)(6) motion to dismiss).[4]

4        Moreover, the SAC does not allege that the Board or its representatives ever

5   relied on the PowerPoint. *See Perlas v. GMAC Mortg., LLC*, 187 Cal. App. 4th

6   429, 434, 113 Cal. Rptr. 3d 790, 794 (2010) (reliance is an element of fraud);

7   *Pelligrini v. Weiss*, 165 Cal. App. 4th 515, 524, 81 Cal. Rptr. 3d 387, 397 (2008)

8   (damages *caused by* the breach is an element of breach of fiduciary duty). To the

9   contrary, according to the SAC, the Chairman of the Compensation Committee

10  John Merlo allegedly told Swedberg to replace the PowerPoint with a short

11  memorandum.  (SAC ¶ 164.)  In other words, as alleged, the PowerPoint was

12  brought to Merlo's attention; Merlo then *rejected* it and asked for a different

13  document instead.  Quite evidently, Merlo did not rely on any representations in the

14  PowerPoint.

15       To that end, the SAC's allegations regarding Merlo and Harvey belie the

16  suggestion that somehow Swedberg and Siravo were attempting to hoodwink the

17  Board.  As is clearly alleged in the SAC, both Merlo and Harvey were an integral

18  part of developing the presentation to the Board.  Merlo rejected Swedberg's

19  proposed PowerPoint and asked for a memorandum instead.  (SAC ¶ 164.)

20  Swedberg drafted the memorandum that was ultimately presented to the Board only

21  *after* consultation with Merlo and Harvey.  (SAC ¶ 166.)  As alleged, Merlo and

22  Harvey were key partners in shaping the ultimate memorandum.  The NCUA fails

23  entirely to address this point, presumably because it seriously undermines Counts

24  Five and Six.

25

26  _____

    [4] The NCUA's contention that the PowerPoint is not admissible (Opp. at 23) is
27  perplexing.  The NCUA *admits* that "the Court may consider materials . . . referred
    to in the complaint but not attached thereto." (*Id.*)  The PowerPoint is,
28  indisputably, referred to in the complaint.  That is why Defendants attached it to
    Mr. Swedberg's declaration for the Court's review.  The document is admissible.

With respect to the drafts of the "short memo" that Plaintiff alleges in the SAC were "false" (SAC ¶ 164), Plaintiff asserts in its Opposition that they "led to [John Merlo and Robert Harvey's] support of the final resolution and approval of the SERP amendments." (Opp. at 22.) But the SAC *does not make those allegations.* Indeed, the SAC does not even allege that anybody ever saw the drafts, much less relied upon them. As a matter of law, this Court may not consider these new allegations here. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a motion to dismiss" (citation omitted)). Thus, Plaintiff's argument must focus entirely upon the November 2, 2007 memorandum attached as Exhibit 1 to the SAC.

### 3. The Purported Misrepresentations In The November 2 Memorandum Are Neither Misleading Nor Material

Plaintiff must prove that Defendants made a misrepresentation and that the misrepresentation was *material.* *See Levine v. Blue Shield of California*, 189 Cal. App. 4th 1117, 1126, 113 Cal. Rptr. 3d 262, 269 (2010) (element of fraud is that defendant "must have concealed or suppressed a material fact"); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 188-89, 98 Cal. Rptr. 837, 845 (1971) (fiduciaries have a duty to disclose all facts "which materially affect [the beneficiary's] rights and interest"). The fundamental problem for Plaintiff is that Exhibit 1 to the SAC demonstrates conclusively that none of Defendant Swedberg's representations were either misleading or material given the information that he provided about the nature and financial impact of the changes. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1065 (N.D. Cal. 2010) (on a motion to dismiss "the court may consider exhibits attached to the complaint" (citation omitted)).

1     The allegations in the SAC do not support a claim that Defendants Siravo

2   and Swedberg misrepresented anything to the Board.  At best, Plaintiff has alleged

3   conclusory allegations of wrongdoing along with representations by Defendant

4   Swedberg that are transparently immaterial.  A complaint fails to state a claim

5   under such circumstances.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50, 173 L.Ed.

6   2d 868, 894 (2009) (courts, "draw[ing] on . . . judicial experience and common

7   sense," must deny complaints containing only "conclusory statements" and the

8   "mere possibility of misconduct").

9     According to the SAC, after meeting with Robert Harvey and John Merlo, on

10  November 5, 2007, Defendant Swedberg, "with [Defendant] Siravo's concurrence,"

11  sent a memorandum to Harvey that provided the information he had "requested

12  regarding two suggested changes to the CEO Supplemental Executive Retirement

13  Plan."  (SAC ¶ 166 & Ex. 1.)  The document "recommend[ed]" that (1) "[t]he

14  CEO's bonus and incentive pay be included in the benefit calculation"; and (2) the

15  Board "[c]hange the tax gross-up calculation to utilize the divisor of (.60%) versus

16  the current multiplier of (1.40%)," which "results in the correct tax gross-up

17  amount."  (SAC Ex. 1.)  Of paramount importance, Defendant Swedberg explicitly

18  explained that the changes would result in Siravo receiving $7.412 million instead

19  of $4.863 million.  (*Id.*)

20    Plaintiff *concedes* that Defendant Swedberg disclosed the most critical

21  information (amount of benefit increase and substantive nature of the changes) in

22  the memorandum to the Chairman Harvey, yet insists that the Board was

23  nevertheless misled because Defendants allegedly (1) mischaracterized the change

24  as "administrative" rather than "substantive;" and (2) gave the Board a "reason for

25  the change" that was "false and misleading."  (Opp. at 18.)  These arguments

26  should be rejected out of hand.

27    For the reasons articulated in the Motion, the characterization of the

28  suggested changes as "administrative" rather than "substantive" is a non-actionable

CASE NO. CV10-01597 GW (MANx)
REPLY ISO MOTION TO DISMISS
COUNTS 5 & 6

1    opinion.  (Mot. at 10.)  Further, as the SAC itself makes clear, the characterization

2    of the change is not material.  *See Levine*, 189 Cal. App. 4th  at 1126; *Neel*, 6 Cal.

3    3d 176 at 189.  Importantly, although the NCUA's Opposition disputes that the

4    statement was Mr. Swedberg's non-actionable opinion (Opp. at 18-20), it does not

5    dispute that the characterization was immaterial given the information that was

6    disclosed.

7         The SAC proves this point by alleging that these were "substantive changes

8    intended to nearly double the SERP benefit."  (SAC ¶ 167.)  Exhibit 1, on its face,

9    *discloses* that the changes would nearly double the SERP benefit.  If the import of

10   the "administrative" versus "substantive" characterization is the extent of the

11   increase in benefits, that is precisely the information that Defendant Swedberg

12   conveyed in Exhibit 1.  Swedberg's characterization of the change as

13   "administrative" could not possibly be material where, as here, he fully described

14   the "substantive" financial impact of the change.  *See* RESTATEMENT (SECOND) OF

15   TORTS § 538, com. e (1977) (stating that a fact is not material as a matter of law "if

16   the fact misrepresented is so obviously unimportant that the jury could not

17   reasonably find that a reasonable man would have been influenced by it"); *see also*

18   *Quan v. Computer Sciences Corp.*, 623 F.3d 870, 886-87 (9th Cir. 2010) (rejecting

19   breach of fiduciary duty claim in ERISA action where purported misrepresentations

20   about "pricing of stock options at 100% of market value," had little financial impact

21   and therefore were not material as a matter of law).

22        The NCUA's claim that Defendants misrepresented the reason for the

23   changes cannot survive either.  Defendant Swedberg recommended that the Board

24   include bonus and incentive pay in the definition of compensation to conform the

25   plan "with the intent of the program when it was initially developed," which was to

26   pay WesCorp's retiring executives at a replacement rate of 48% of their

27   compensation.  (SAC Ex. 1.)  This was a true statement; in the intervening years

28   since the first SERP was adopted, WesCorp's executive compensation had changed

from a salary-based compensation system to a salary-plus-bonus-and-incentive-pay system.  (SAC ¶ 167 & Ex. 1.)  Swedberg also recommended to the Board that it change the "tax gross-up calculation" to achieve the "correct tax gross-up amount."  Notably, Plaintiff does not dispute (either in the SAC or the Opposition) Swedberg's assertion that his proposed change results in the "correct" gross-up amount.

Plaintiff repeatedly asserts that Siravo and Swedberg concealed their "true intentions and the reasons for the changes" (Opp. at 15, 18), which the SAC alleges "were simply intended to increase the size of the lump sum payment to Siravo." (SAC ¶ 160.)  In Exhibit 1, however, Defendant Swedberg explicitly told Chairman Harvey that the proposed changes to Siravo's SERP would increase Siravo's retirement payout by over $2.5 million.  Quite obviously, a fundamental purpose of the change was to obtain a larger retirement pay-out for Siravo.  Based on Exhibit 1, the Board could not have been misled about the purpose (or impact) of the changes recommended by Swedberg.

### 4. The Purported Misrepresentations Compare Two Different Time Periods

Plaintiff concedes that the SAC allegations of misrepresentation improperly compare two different time periods, but claims (without any case citation whatsoever) that the difference is without consequence because the time periods were only four months apart.  (Opp. at 20-21.)  The SAC, however, *does not allege* that the intent of WesCorp in creating the original SERP in 2001 was the same (or even similar) as the intent of the parties in negotiating the Siravo SERP contract in 2002.  Absent such an allegation, the SAC simply cannot use the intent of the contracting parties at the time the Siravo contract was negotiated in 2002 as a basis for showing that Swedberg's representations about WesCorp's intent in creating the original SERP in 2001 — an entirely different time period — were false.  (SAC ¶¶ 167, 169 & Ex. 1.)  *See Quan*, 623 F.3d at 886-87 (rejecting breach of fiduciary

duty claim in ERISA action based on alleged misrepresentations such as "a
statement purportedly to the effect that [a] June [30] 2006 stock price drop was
caused by 'the market, not [defendant]" because the statement actually referred to
the market on June 15, not June 30); *see also Broam*, 320 F.3d at 1026 n.2 (plaintiff
cannot create new allegations in an opposition brief).

### 5.   The Complaint Does Not Allege A Claim For Constructive Fraud And Such A Claim Would Fail Regardless

Continuing to alter the SAC through its Opposition, the NCUA asserts that
the SAC supports a claim for constructive fraud.  (Opp. at 16-17.)  The SAC does
not allege such a cause of action (as the NCUA concedes), and for this reason alone
it should be rejected here.  Even if allowed, the claim adds nothing.  In an action for
constructive fraud, Plaintiff must still show reliance, damage *as a result* of the lack
of disclosure, and a *material* failure.  *The 1849 Condominiums Assoc., Inc. v.
Bruner*, No. 2:09-cv-03339-JAM, 2010 WL 2557711, at *5 (E.D. Cal. June 21,
2010) (facts withheld must be material to support a constructive fraud claim);
*Estate of Gump*, 1 Cal. App. 4th 582, 603, 2 Cal. Rptr. 2d 269, 282 (1991) (reliance
and damage required for constructive fraud).  As explained, the SAC fails to state
allegations sufficient to make out these contentions.

### 6.   Plaintiff's New Argument That The Amended SERPs Used A Different Formula Than The Board Authorized Is Once Again Not Alleged In The Complaint

The assertion in the Opposition that the amended SERPs did not comply with
the Board's resolution because they contained "a more generous formula" for
calculating the SERP payments than the Board authorized (Opp. at 22) is likewise
found nowhere in the SAC, even *after* Defendants made it clear in the last round of
briefing that this allegation was missing.  The fact that the NCUA again chose not
to include this allegation leads inexorably to the conclusion that there is no factual
basis for it.

1        The SAC alleges that the Board adopted a resolution to approve the SERP

2   changes based upon "the proposal outlined in the November 2 memorandum."

3   (SAC ¶¶ 170-71.)  That memorandum attached as Exhibit 1 described changes that

4   would result in an increased pay-out to Siravo of up to $7.412 million.  Yet the

5   SAC then alleges that "[t]he amended Siravo SERP provided Siravo a larger *lump*

6   *sum payment* than the board's resolution authorized" because Siravo was paid

7   $6,881,401 million.  (SAC ¶¶ 173, 175 (emphasis added).)  As $6.8 million is

8   clearly *less* than $7.4 million, not more, the SAC is at odds with its own Exhibit,

9   and in such cases, the Exhibit trumps.  *Sprewell v. Golden State Warriors*, 266 F.3d

10  979, 988 (9th Cir. 2001).

11       Plaintiff does not address this problem in its Opposition.  Instead, it notes

12  that the Board resolution did not authorize a specific dollar amount to be paid to

13  Siravo, and then adds the new allegation (not found in either the FAC or the SAC)

14  that the amended SERP allowed for a more generous *formula* than the Board

15  authorized.  (Opp. at 21-22.)  That the Board resolution did not authorize a specific

16  dollar amount is not relevant to the viability of the NCUA's fraud and fiduciary

17  duty claims because the Board indisputably *knew*, based on Exhibit 1, that the

18  SERP changes could result in a financial impact of as much as $7.4 million.

19  Moreover, although the NCUA claims that the amended SERP document

20  "contained a more generous formula," the SAC does *not* contain this allegation,

21  much less any detail or explanation as to what such a vague and amorphous

22  allegation might mean.[5]  *Ashcroft*, 129 S. Ct. at 1950 ("[W]here the well-pleaded

---

23  [5] The NCUA now proffers that "the evidence at trial [will] show" that the Board
    authorized a formula based on WesCorp's Defined Benefit Plan ("DBP"), which
24  used the "average of the employee's annual compensation over the prior five
    years," while the amended SERP "calculated compensation based on the *highest*
25  annual compensation out of the prior three years." (Opp. at 9 n.4.)  Of course,
    during the last round of briefing Defendants pointed out that this allegation was
26  missing in the FAC.  That the NCUA continued to omit it suggests there is no
    factual basis for the allegation.  Had the NCUA actually made this allegation in the
27  SAC, Defendants would have responded to it by attaching the DBP for the Court's
    review, which would contradict the NCUA's representations.  Specifically, it would
28  show that the "average compensation" referenced has no application to the SERP

1  facts do not permit the court to infer more than the mere possibility of misconduct,

2  the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to

3  relief.'" (quoting Fed. R. Civ. P. 8(a)(2)) (alterations omitted)).

4  **III.   CONCLUSION**

5          Plaintiff's Opposition does not save the SAC, instead relying on argument

6  that has no basis in the pleadings.  Even after being given the opportunity to correct

7  the defects identified during the last round of briefing, the SAC does not adequately

8  allege fraud or breach of fiduciary duty.  This time, the Motion to Dismiss should

9  be granted with prejudice.

10

11  DATED: May 26, 2011                        MUNGER, TOLLES & OLSON LLP
                                               Richard E. Drooyan
12                                             Laura D. Smolowe

13

14                                             By:      /s/ Richard E. Drooyan
                                                        RICHARD E. DROOYAN
15

16                                             Attorneys for Defendants
                                               ROBERT A. SIRAVO AND
17                                             THOMAS E. SWEDBERG

18

19

20

21

22

23

24  _____

25  amendments.  The Board resolution states that the new SERP should "[i]nclude
    salary *plus* bonus and incentive pay . . . to make it consistent with the compensation
    used in WesCorp's [DBP]."  (SAC ¶ 172.)  The DBP in fact defines
26  "compensation" as "the total compensation we paid to you that is subject to federal
    income tax."  In other words, the resolution sought to make the SERPs consistent
27  with the DBP by including bonus and incentive pay.  The "Average Compensation"
    referenced by the NCUA in its Opposition relates to a definition of the "Normal
28  Retirement Benefit," *not* the meaning of compensation in the DBP generally.

                                               CASE NO. CV10-01597 GW (MANx)
                                               REPLY ISO MOTION TO DISMISS
                                               COUNTS 5 & 6