1  BRAD D. BRIAN (State Bar No. 079001)
   Brad.Brian@mto.com
2  RICHARD E. DROOYAN (State Bar No. 065672)
   Richard.Drooyan@mto.com
3  LAURA D. SMOLOWE (State Bar No. 263012)
   Laura.Smolowe@mto.com
4  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
5  Thirty-Fifth Floor
   Los Angeles, CA 90071-1560
6  Telephone: (213) 683-9100
   Facsimile: (213) 687-3702
7
8  Attorneys for Defendant
   Robert A. Siravo
9  [Attorneys for remaining Officer Defendants listed
   separately on next page]
10

11              UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  NATIONAL CREDIT UNION ADMINISTRATION BOARD AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION, | CASE NO. CV10-01597 GW (MANx) |
| 15 | **REPLY IN SUPPORT OF MOTION OF OFFICER DEFENDANTS TO DISMISS THE FIRST CLAIM FOR RELIEF OF THE SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6),** |
| 16 | |
| 17          Plaintiff, | |
| 18          vs. | |
| 19  ROBERT A. SIRAVO, TODD M. LANE, ROBERT J. BURRELL, THOMAS E. SWEDBERG, TIMOTHY T. SIDLEY, ROBERT H. HARVEY, JR., WILLIAM CHENEY, GORDON DAMES, JAMES P. JORDAN, TIMOTHY KRAMER, ROBIN J. LENTZ, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE, | Judge:   Honorable George Wu |
| 20 | Date:    June 9, 2010 |
| 21 | Time:    8:30 a.m. |
| 22 | |
| 23 | |
| 24 | |
| 25          Defendants. | |

26

27

28

1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   REYNOLD L. SIEMENS #177956
2  Email: reynold.siemens@pillsburylaw.com
   725 South Figueroa Street, Suite 2800
3  Los Angeles, CA 90017-5406
   Telephone: (213) 488-7100
4  Facsimile: (213) 629-1033
   PILLSBURY WINTHROP SHAW PITTMAN LLP
5  BRUCE A. ERICSON #76342
   Email: bruce.ericson@pillsburylaw.com
6  GEORGE ALLEN BRANDT #264935
   Email: allen.brandt@pillsburylaw.com
7  50 Fremont Street
   Post Office Box 7880
8  San Francisco, CA 94120-7880
   Telephone: (415) 983-1000
9  Facsimile: (415) 983-1200

10 Attorneys for Defendants
   Robert John Burrell, William Cheney, Gordon Dames,
11 Robert H. Harvey, Jr., James Jordan, Timothy M.
   Kramer, Robin Lentz, John M. Merlo, Warren
12 Nakamura, Brian Osberg, David Rhamy and
   Sharon Updike
13
   KENT B. GOSS (State Bar No. 131499)
14 kgoss@orrick.com
   SETH E. FREILICH (State Bar No. 217321)
15 sfreilich@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
16 777 South Figueroa Street, Suite 3200
   Los Angeles, California 90017-5855
17 Telephone: (213) 629-2020
   Facsimile: (213) 612-2499
18
   Attorneys for Defendant
19 Timothy T. Sidley

20 CHAPIN FITZGERALD SULLIVAN LLP
   Kenneth M. Fitzgerald, Esq. (SBN: 142505)
21 kfitzgerald@cfslawfirm.com
   Curtis G. Carll, Esq. (SBN: 248470)
22 ccarll@cfslawfirm.com
   550 West C Street, Suite 2000
23 San Diego, California 92101
   Telephone: (619) 241-4810
24 Facsimile: (619) 955-5318

25 Attorneys for Defendant
   Todd M. Lane
26

27

28

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................. 1

II.    THE COMPLAINT FAILS TO SUFFICIENTLY ALLEGE A
       BREACH OF THE OFFICERS' FIDUCIARY DUTIES.............................. 2

III.   THE COMPLAINT'S ALLEGATIONS ARE BASED ON
       HINDSIGHT .................................................................................... 5

IV.    THE OFFICER DEFENDANTS PRESENTED THE  "RED FLAGS"
       TO THE BOARD FOR ITS ASSESSMENT AND
       CONSIDERATION............................................................................ 6

V.     THE NCUA FAILS TO CITE A SINGLE CASE HOLDING A
       CORPORATE OFFICER LIABLE IN THIS CONTEXT ........................... 10

VI.    CONCLUSION ............................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ........................................................... 5

*Fed. Sav. and Loan Ins. Corp. v. Molinaro*,
  899 F.2d 899 (9th Cir. 1989) .............................................. 11

*In re Heritage Bond Litig.*,
  2004 U.S. Dist. LEXIS 15387 No. 02-ML-1475 DT (C.D. Cal. June 28,
  2004) .................................................................................. 11

*Rubke v. Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) .............................................. 6

**STATE CASES**

*Bancroft-Whitney Co., GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim
  Servs, Inc.*,
  83 Cal. App. 4th 409, 99 Cal. Rptr. 2d 665 (2000) ........................... 11

*Bancroft-Whitney Co. v. Glen*,
  64 Cal. 2d 327 (1966) .......................................................... 10

*Reeves v. Hanlon*,
  33 Cal. 4th 1140, 17 Cal. Rptr. 2d 289 (2004) .................................. 11

*Reid v. Robinson*,
  64 Cal. App. 46, 220 P. 676 (1923).......................................... 11

**STATE RULES**

Rule 12(b)(6)........................................................................ 6

**FEDERAL REGULATIONS**

12 C.F.R. Part 704, Appx. B (Oct. 25, 2002) ...................................... 4

12 C.F.R. § 704.6(c) ............................................................... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Second Amended Complaint (the "Complaint") concedes that the Officer Defendants Robert A. Siravo, Todd M. Lane, Robert J. Burrell and Timothy T. Sidley disclosed the risks of WesCorp's MBS investments to the Director Defendants.  But the Complaint and the National Credit Union Administration (the "NCUA") assert that, in hindsight, the Officer Defendants should have done something more to underscore or highlight those risks.  Such hindsight judgments, which are inconsistent with the NCUA's own regulations, cannot support the NCUA's breach of fiduciary duty claim against the Officer Defendants.

The NCUA's Opposition to the Officer Defendants' Motion to Dismiss is based upon assertions that are not supported by allegations in the Complaint and, in some cases, are even contradicted by the Complaint.  The NCUA claims in its Opposition that the Officers ignored the risks about the MBS investments, but the Complaint explicitly alleges that the Officer Defendants disclosed these risks, which it calls "red flags," to the Board of Directors.  There can be no basis for a claim that the Officers breached their duties of candor to the Board when the allegations specifically detail to the contrary.

Similarly, the NCUA spends pages listing the Officer Defendants' fiduciary duties (as if there is any dispute over whether they are fiduciaries), without identifying any factual allegations in the Complaint that could constitute a breach of these duties.  The NCUA's allegations of breach are so conclusory as to be facially insufficient.

Finally, the NCUA goes to great lengths to distinguish the cases cited by the Officer Defendants, but offers none of its own.  It is not surprising that the NCUA is unable to come up with a single case for the proposition that hindsight alone is sufficient to impose liability on a corporate officer for breach of fiduciary duty.

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN COMPLAINT

1    The NCUA seeks to hold both the Officer and the Director Defendants liable

2    for ignoring investment risks even though it alleges that the Officer Defendants

3    brought these risks to the Board's attention, and that the Director Defendants

4    considered these risks in making their investment decisions, which fall squarely

5    within the protection of the Business Judgment Rule.  Everybody wishes they had

6    an economic crystal ball, but hindsight is 20/20 and it cannot form the basis of a

7    claim for breach of fiduciary duty.  The NCUA's Second Amended Complaint

8    should be dismissed with prejudice.

9  **II.    THE COMPLAINT FAILS TO SUFFICIENTLY ALLEGE A BREACH**

10  **OF THE OFFICERS' FIDUCIARY DUTIES**

11    The NCUA's Opposition is long on its description of the duties the Officer

12    Defendants owed WesCorp, but short on alleged *breaches* of those duties.  The

13    Opposition is largely just a summary of the allegations in the Second Amended

14    Complaint (*see* Opp. at 1-14) that does not make any effort to respond to the

15    Officer Defendants' arguments.  Indeed, the NCUA does not even argue that the

16    Complaint states a claim against the Officer Defendants until section I(D) starting

17    on page 20.  The NCUA seems to think that it can survive a Motion to Dismiss as

18    long as it has enough allegations in the Complaint, even if the allegations amount to

19    nothing more than hindsight judgments that the Officer Defendants should have

20    further highlighted the risks of the MBS investments for the Director Defendants.

21    Accepting the NCUA's description of the duties of the Officer Directors, it

22    fails to identify any allegations in the Complaint that are sufficient to establish any

23    corresponding breaches of those duties.  The NCUA's Opposition spends pages

24    identifying the specific duties of Defendants Siravo, Lane, Burrell, and Sidley,[1] but

---

[1] *E.g.,* Siravo "had a duty to be candid and forthright with the WesCorp board of directors" (Opp. at 6 (citing Complaint ¶ 54)); Lane "had a duty to ensure that WesCorp followed sound financial practices," "to understand the risks in the proposed budgets[,] and to communicate those risks to the budget committee and the board" (Opp. at 6 (citing Complaint ¶ 55)); each of the Officer Defendants "had a duty to be candid and forthright with the WesCorp board of directors . . . and to disclose changes in the profitability, risk profile and dangers in WesCorp's

never alleges that the Officers breached those duties by, for example, failing to "communicate" the risks to the Board, misleading the Board about those risks, or concealing them from the Board.

Instead, the NCUA relies upon vague and conclusory allegations that are unsupported or contradicted by the Complaint. The NCUA claims that the Officers "failed to recommend appropriate concentration limits" for private label MBS and Option ARM MBS investments in the highest rated AAA and AA securities (Opp. at 21), but the Complaint never alleges what such concentration limits should have been or that these hypothetical limits were exceeded or even approached. (*See* Mot. at 9, 20.)[2] Further, neither the Complaint nor the Opposition suggest that the Officers ever violated the NCUA's own regulations on concentration limits (found at 12 C.F.R. § 704.6(c)). (*See* Director Defendants' Reply at § II(B)(2)(b).)

Although the Complaint alleges that more than 70% of WesCorp's investment portfolio purchases in 2007 were Option ARM MBS, the actual concentration was 37% of the portfolio. (Complaint ¶ 122.) The NCUA never alleges that this percentage was in excess of some unidentified reasonable concentration limit or the NCUA's own limits.[3] Further, the ALCO books disclose that the Officers tracked and limited concentration by different measures, and stayed well within these limits. Although the NCUA apparently believes that the

---

investment policies" (Opp. at 8 (citing Complaint ¶ 54)); "Lane and Siravo had a duty to . . . explain to the budget committee and, if necessary, the board as a whole, the credit and financial risks that the budget contained" (Opp. at 9 (citing Complaint ¶ 86)); and "Burrell had a duty to provide the information necessary to do so to Siravo and Lane" (*id.*).

[2] Moreover, notwithstanding the NCUA's emphasis on the allegation that Option ARM investments were "liar loans" with "reduced documents" (Opp. at 4; Complaint ¶ 78), the Complaint does not, in fact, allege that the Officers (or Directors) *knew* these loans were being fraudulently issued.

[3] While the Complaint elsewhere alleges that a "concentration limit of 100% of capital for CDOs" adopted by the Board was a "meaningful concentration limit[]," (Complaint ¶ 126), we note that the $9 billion in Option ARM MBS was only 27.7% of WesCorp's total assets in 2007 ($9 billion/$32.517 billion) (Complaint ¶¶ 63, 122) and 45% of its total shares and deposits in 2008 ($9 billion/$20 billion total shares and deposits) (Complaint ¶¶ 64, 122).

1   Officer Defendants should have used different measures to set limits, the Complaint

2   does not allege that the limits they set were unreasonable or inappropriate, much

3   less that they were violated.

4        The NCUA claims the Officers "knew that the credit risk of private label

5   MBS purchases was not being thoroughly reviewed" (Opp. at 21), but the

6   Complaint never alleges what more the Officer Defendants should have done to

7   "review" these risks, which were in fact reviewed in the ALCO books and

8   presented to both the ALCO and the Board.  (*See* Complaint ¶¶ 134-42, 145.)

9        The NCUA also claims that the Officer Defendants "did not comply with

10  WesCorp policies requiring the review of credit risk implications for new security

11  types[.]"  (Opp. at 21.)  But neither the Opposition nor the Complaint identify the

12  alleged policies or explain what was required.  Further, neither attempts to explain

13  why Option ARM MBS was a "new" security type as opposed to a category of

14  private label MBS investments that had been a part of WesCorp's portfolio for

15  years.

16       The NCUA further complains that "WesCorp also increased its risk in its

17  portfolio by purchasing MBS from lower tranches[.]"  (Opp. at 21.)  The NCUA

18  conveniently ignores, however, that the Complaint alleges these were were the

19  "lower tranches" of the highest AAA and AA-rated securities.  (Complaint ¶¶ 73,

20  82.)[4]  The NCUA itself permitted WesCorp to invest in securities rated as low as

21  "BBB."  12 C.F.R. Part 704, Appx. B (Oct. 25, 2002).

22       Finally, the NCUA claims that the Officer Defendants "failed to disclose" to

23  the Budget Committee "what changes to WesCorp's investment portfolio would be

24  required for WesCorp to meet the budgets or the additional investment risk that

25  would be required to do so" and failed to "recommend increasing WesCorp's

26

27  [4] The NCUA's assertion that the Officer Defendants "took no steps to curtail
    WesCorp's purchases of . . . lower tranch MBS" (Opp. at 22) is contradicted by the
28  Complaint (¶ 82.)

1  capital goals[.]" (Opp. at 22.) But the Complaint acknowledges that this

2  information was presented to the ALCO, which included Directors who were

3  members of the Budget Committee and which was responsible for " the overall

4  management direction for WesCorp's investment strategy and the types and levels

5  of risk WesCorp's investments exposed it to." (Complaint ¶¶ 25, 96-101.) Further,

6  WesCorp's capital goals were well above what the NCUA required. (*See* Director

7  Defendants' Reply at § II(B)(2)(d).)

8        Merely repeating these "threadbare recitals" of claimed breaches does not

9  support a claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009)

10  (allegations that are "no more than conclusions[] are not entitled to the assumption

11  of truth").[5]

12  **III.    THE COMPLAINT'S ALLEGATIONS ARE BASED ON HINDSIGHT**

13        The Complaint's allegations are based on the NCUA's hindsight judgments

14  that, in retrospect and with an understanding of the turn the market ultimately took,

15  the Officer Defendants should have done more to highlight the risks of the MBS

16  investments for the Director Defendants so that they would have made different

17  investment decisions. (*See* Mot. at 12, 18, 20-21.) Such a claim does not and

18  cannot support a cause of action for breach of fiduciary duty.

19        Complete with citations to the Officer Defendants' Motion, the NCUA

20  correctly notes that the Officer Defendants "repeatedly characterize the NCUA's

21  allegations as 'hindsight.'" (*See* Opp. at 23 (citing Opening Brief, passim).) The

22  ───────────────
23  [5] The Officer Defendants also note that the arguments raised by the Director
   Defendants, particularly in sections II(B)(2)(b) and (c) of their Reply Brief, apply
   equally here. While the Director Defendants present this argument within the
24  context of the Business Judgment Rule, which this Court has ruled does not apply
   to the Officer Defendants, the underlying defects in the NCUA allegations remain.
25  The NCUA allegations that the Officer Defendants failed to propose proper
   concentration limits (Complaint ¶ 110), for example, ignores that WesCorp was
26  investing in low-risk AAA and AA securities. Similarly, the NCUA alleges that at
   least defendants Sidley and Burrell should have conducted "a thorough review" of
27  "new" security types (Complaint ¶ 132), while again ignoring that Option ARM
   investments were in no way "new" for WesCorp.

28

1   NCUA then asserts, with no citation whatsoever, that the Complaint "alleges that

2   the Officer Defendants failed to act with reasonable care and diligence, taking into

3   account the information known to them *at the time*." (*Id*. (emphasis added).)  The

4   absence of any citation is telling and confirms that the Complaint's allegations are

5   hindsight-based.

6          Nowhere does the Complaint allege that the Officer Defendants were aware

7   of risks or material information that they misrepresented to, failed to share with, or

8   concealed from the Board "at the time."  To the contrary, as discussed below, *see*

9   pp. 6-10, *infra*, the Officer Defendants continuously advised the ALCO and the

10  Board of the so-called "red flags" that represented risks to WesCorp's MBS

11  investments.  The NCUA's theory that the Officer Defendants should have done

12  more than then they did to steer the Board away from these investments is entirely

13  based on hindsight.  *Cf. Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1163 (9th

14  Cir. 2009) (in securities fraud case, affirming Rule 12(b)(6) dismissal where

15  allegations at issue "merely squabble[d] about the adverbs used in the" allegedly

16  false representations and where the plaintiff's claim could be reduced,

17  "[e]ssentially," to the argument that the defendant "should have included more

18  expressive language").

19  **IV.    THE OFFICER DEFENDANTS PRESENTED THE "RED FLAGS"**

20  **TO THE BOARD FOR ITS ASSESSMENT AND CONSIDERATION**

21         That the Officer Defendants were aware of "red flags" does not, without

22  more, state a claim for breach of fiduciary duty.  These so-called "red flags" are

23  nothing more than risks about the economy and WesCorp's investments, which the

24  Officer Defendants *presented to the ALCO and to the WesCorp Board*.  (Complaint

25  ¶¶ 96-101, 136-44)  The very essence of selecting investments involves weighing

26  the potential risks and rewards of a prospective investment.  Here, the Officer

27  Defendants kept themselves apprised of the risks related to MBS investments, and

28  they brought those risks to the attention of the Director Defendants.  According to

1   the Complaint, this is exactly what they were supposed to do.  (*See e.g,* Opp. at 6-7

2   (citing Complaint ¶¶ 54, 55) (asserting that, for example, Siravo was supposed to

3   disclose to the Board "changes in the profitability, risk profile and dangers in

4   WesCorp's investment portfolio" and Lane was responsible for disclosing "risks to

5   the budget committee and the board").)  In other words, the Officers complied with

6   their duties to keep the Board fully informed so that the Directors could consider

7   that information, assess the risks, and exercise their business judgment to make

8   what they believed to be appropriate investment decisions.

9        The NCUA bases its fiduciary duty claim on the assertion that the Officer

10  Defendants failed to take certain actions "[d]espite their knowledge of these 'red

11  flag' warnings."  (Opp. at 22.)  But an examination of the Complaint shows that all

12  of the "red flags" identified by the NCUA in its Opposition were disclosed to the

13  Board.  In other words, the very "red flags" the NCUA claims the Officers ignored

14  were, as alleged in the Complaint, disclosed to the Board:

15  •   The NCUA claims that Siravo, Lane, and Burrell were aware of additional

16      risks because "investment credit spreads were tightening significantly."

17      (Opp. at 13 (citing Complaint ¶¶ 96-99).)

18      •   The Complaint alleges, however, that the "Director Defendants[]

19          attended ALCO meetings at which tightening investment credit

20          spreads and lower yields were discussed."  (*Id.* ¶ 96.)  It also

21          alleges that a document describing the "inherent risks in [MBS]

22          securities" was "sent to all directors."  (*Id.* ¶ 97.)  Further, it

23          alleges that in June 2006 "the Director Defendants were

24          presented with a chart showing that the investment credit

25          spreads for private label MBS had been generally shrinking

26          while the investment credit spreads required for WesCorp to

27          meet its budgeted income targets had been increasing."

28          (*Id.* ¶ 99.)

CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN COMPLAINT

1    • The NCUA claims that Siravo, Lane, and Burrell were aware that "'good'

2       investments were becoming increasingly hard to find." (Opp. at 13 (citing

3       Complaint ¶136).)

4            • The very paragraph in the Complaint cited by the NCUA

5               alleges, however, that "the Investment Department reported at

6               the ALCO meetings that investment credit spreads were

7               tightening" and that "'good' investments were becoming

8               increasingly hard to find."  (Complaint ¶ 136.)  In other words,

9               the Directors on the ALCO were provided with information

10              about these risks.

11   • The NCUA claims that Siravo, Lane and Burrell were aware that "interest

12      rates were beginning to rise." (Opp. at 13 citing Complaint ¶ 137.)

13           • Again, the very paragraph cited by the NCUA alleges that "the

14              Director Defendants were kept informed at the ALCO meetings

15              both of interest rates and of the status of the housing market, and

16              they were therefore aware of interest rates beginning to rise

17              significantly in 2005."  (Complaint ¶ 137.)

18   • The NCUA claims that Siravo, Lane, and Burrell were aware that "the

19      'housing bubble' might be dangerously close to bursting."  (Opp. at 13

20      (citing Complaint ¶¶ 134, 137-42).)

21           • The Complaint alleges on information and belief that "the

22              Director Defendants were also aware of these warnings [that the

23              housing bubble was close to bursting]."  (Complaint ¶ 134.)  It

24              also alleges that "ALCO and the board were informed that the

25              rise in real estate prices was slowing and by mid-2006 they had

26              been informed that residential real estate prices were flat and

27              declining" (*id.* ¶ 138); that the ALCO packages in October and

28              December 2006, were "negative on housing" and noted

1                  "escalating delinquencies and the inability of borrowers to

2  refinance" (*id.* ¶ 139); the January 23, 2007 ALCO package

3  "warn[ed] of a larger wave [of delinquencies] to come" (*id.* ¶

4  141); and the March 2007 ALCO packages "noted the doubling

5  of delinquency rates . . . and the inability of borrowers to roll

6  over balances and refinance" (*id.* ¶ 142).

7      •  The NCUA claims that the Officer Defendants "were also aware that: (1)

8  the 'reset shock' experienced by Option ARM MBS loans increases their

9  credit risk; (2) the credit quality of the Option ARM MBS loan pools  was

10  deteriorating; and (3) a drop in housing demand could result in a decrease

11  in real estate values and credit losses on existing Option ARM loans

12  because the borrowers would be unable to refinance."  (Opp. at 13 (citing

13  Complaint ¶¶ 120, 134).)

14             •  The same paragraphs, however, allege that "the Director

15  Defendants were aware" of these risks and of "these warnings

16  [that the housing bubble was close to bursting]."  (Complaint

17  ¶¶ 120, 134.)

18         Not only is the NCUA's Opposition contradicted by its own allegations in the

19  Complaint, it also fails to account for the extensive information that the Officer

20  Defendants disclosed to the Directors in the ALCO books.[6]  The characteristics and

21  volume of material in the ALCO books confirms that the Board was kept fully

22  informed.  (*See* Mot. at 7-8, 22; *see also* RJN Ex. 2 at 0113, 0115, 0123, 0125,

23  0126.)  Notably, the NCUA has had control of WesCorp's books and records for

24

25  _____

[6] The NCUA claims that the ALCO books are not subject to judicial notice.  (Opp.

26  at 3.)  For the reasons articulated in the Director Defendants' Request for Judicial Notice and Reply to Request for Judicial Notice, which the Officer Defendants fully

27  join, judicial notice is proper here.  Even without the ALCO books, the NCUA's claims are unsupported by the Complaint or contradicted elsewhere in the

28  Complaint.

      CASE NO. CV10-01597 GW (MANx)
MOTION TO DISMISS FIRST CLAIM FOR
RELIEF IN COMPLAINT

1  over two years and it has never asserted that the ALCO books contained any false

2  representations or information.

3          As is clear from the Complaint and the ALCO books, *every* so-called "red

4  flag" risk identified by the NCUA was disclosed to the Board.  To the extent the

5  NCUA's case against the Officer Defendants is premised on the idea that the

6  Officers ignored the risks of WesCorp's MBS investments (Opp. at 22), it is fatally

7  undermined by the NCUA's own allegations.  The Officer Defendants did what

8  they were supposed to do with that information: they presented it to the Board.  The

9  Directors then considered that information, weighed the potential risks and rewards

10  and exercised their business judgment in making investment decisions.

11  **V.    THE NCUA FAILS TO CITE A SINGLE CASE HOLDING A**

12  **CORPORATE OFFICER LIABLE IN THIS CONTEXT**

13          The Officer Defendants acknowledge that this Court has observed that they

14  are not entitled to the protection of the Business Judgment Rule in California.

15  Nevertheless, this does not mean that corporate officers may be held liable for

16  conduct based upon a judgment that, in hindsight, they should have done something

17  different.  (*See* Mot. at 12-13.)

18          The NCUA cites several cases for the undisputed proposition that officers

19  have fiduciary duties that include "a duty of reasonable care, diligence and skill in

20  their work."  (Opp. at 15-16) (citations omitted.)  It goes on to quote the California

21  Supreme Court's decision in *Bancroft-Whitney Co. v. Glen,* 64 Cal. 2d 327, 345

22  (1966) that this duty requires an officer "not only affirmatively to protect the

23  interests of the corporation committed to his charge, but also to refrain from doing

24  anything that would work injury to the corporation, or to deprive it of profit or

25  advantage which his skill and ability might properly bring to it, or to enable it to

26  make in the reasonable and lawful exercise of its powers."  (Opp. at 16-17.)

27  Nowhere in the First Claim for Relief for Breach of Fiduciary Duty[7] does the

28  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[7] The SERP allegations that are the basis for the Fifth through Eighth Claims for

1  NCUA allege that any of the Officer Defendants did any of these things to harm

2  WesCorp.

3        The NCUA then expends considerable effort to distinguish the cases cited by

4  the Officer Defendants (Opp. at 17-18), but it fails to cite *even one* case holding

5  that corporate officers may be held liable for a breach of fiduciary duty because, in

6  hindsight, they should have further emphasized the risks that they disclosed to the

7  Board. There simply is no precedent for holding officers liable solely because, in

8  hindsight, they should have done something different. The absence of case law in

9  itself supports Defendants' position.

10       Moreover, the NCUA misses the point about the cases cited by the Officer

11 Defendants. It is not that they arise out of identical contexts. Rather, in *analogous*

12 circumstances, where courts have addressed the liability of corporate officers for

13 breach of fiduciary duty, they have required more. While these cases might not be

14 dispositive, they are instructive and persuasive.

15       By the time the NCUA's Opposition reaches Section I(C), the NCUA

16 appears to have abandoned its claim that Officers' cases are distinguishable. The

17 NCUA concedes that *Bancroft-Whitney Co.*, *GAB Bus. Servs., Inc. v. Lindsey &*

18 *Newsom Claim Servs, Inc.*, 83 Cal. App. 4th 409, 99 Cal. Rptr. 2d 665 (2000),

19 *disapproved of on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140, 424, 17

20 Cal. Rptr. 2d 289 (2004), *Reid v. Robinson*, 64 Cal. App. 46, 220 P. 676 (1923),

21 *Fed. Sav. and Loan Ins. Corp. v. Molinaro*, 899 F.2d 899 (9th Cir. 1989), and *In re*

22 *Heritage Bond Litig.*, 2004 U.S. Dist. LEXIS 15387, MDL No. 02-ML-1475 DT

23 (C.D. Cal. June 28, 2004) held officers liable based on wrongful or affirmative

24 misconduct or a wholesale abdication of their responsibilities. (Opp. at 19-20.)

25 The NCUA nevertheless insists, without citation, that these cases do not *limit*

26 liability to such conduct. (*Id.*) Where the authority finds liability only in cases of

27
28 _____
   Relief are not the basis for the First Claim for Relief, which is predicated upon the
   MBS investment decisions made by WesCorp.

1  wrongful conduct or an abdication of responsibilities, and the NCUA has cited *no*

2  cases to the contrary, it can fairly be said that the NCUA's position is

3  unprecedented.

4       The Complaint does not allege that the Officer Defendants ever misled the

5  Board, withheld information from the Board, or failed to advise the Board of the

6  risks of its MBS investments.  Instead, it alleges that, with the hindsight benefit of

7  knowing what happened to WesCorp's MBS investments (and the MBS

8  investments of many other financially astute investors), the Officer Defendants

9  should have done more to dissuade the Board from making these investments.  That

10  is simply not enough to impose liability on the Officer Defendants for breach of

11  fiduciary duty.

12  **VI.**  **CONCLUSION**

13       The NCUA's second attempt to amend its complaint and state a claim against

14  the Officers has failed.  Without any legal authority on which to rely, the Complaint

15  tries to hold the Officer Defendants liable for decisions that, at best, seem unwise

16  only in hindsight.  Taking the allegations as true, the most the NCUA can muster is

17  that after providing the Board with detailed information about the potential risks of

18  private label and Option ARM MBS investments, the Officers should have made

19  different investment recommendations.  Such a claim is, quite simply, not

20  actionable.  The Complaint should be dismissed with prejudice.

21

22  DATED: May 26, 2011     MUNGER, TOLLES & OLSON LLP

23       Richard E. Drooyan
        Laura D. Smolowe

24

25       By:    */s/ Richard E. Drooyan*
        RICHARD E. DROOYAN

26

27       Attorneys for Defendant
        ROBERT A. SIRAVO

28

1   DATED: May 26, 2011                    PILLSBURY WINTHROP SHAW
                                           PITTMAN LLP
2

3                                          By:_____/s/ Bruce A. Ericson_____
                                                    BRUCE A. ERICSON
4
                                           Attorneys for Defendant
5                                          Robert J. Burrell

6   DATED: May 26, 2011                    ORRICK, HERRINGTON &
                                           SUTCLIFFE LLP
7

8                                          By:___/s/ Seth E. Freilich_____
                                                    SETH E. FREILICH
9
                                           Attorneys for Defendant
10                                         Timothy T. Sidley

11  DATED: May 26, 2011                    CHAPIN FITZGERALD SULLIVAN
                                           LLP
12

13                                         By: /s/ Kenneth M. Fitzgerald_____
                                                    KENNETH M. FITZGERALD
14
                                           Attorneys for Defendant
15                                         Todd M. Lane

16

17

18

19

20

21

22

23

24

25

26

27

28

14037915.3                                - 13 -