PILLSBURY WINTHROP SHAW PITTMAN LLP
REYNOLD L. SIEMENS #177956
Email: reynold.siemens@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone: (213) 488-7100
Facsimile: (213) 629-1033

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON #76342
Email: bruce.ericson@pillsburylaw.com
GEORGE ALLEN BRANDT #264935
Email: allen.brandt@pillsburylaw.com
50 Fremont Street
Post Office Box 7880
San Francisco, CA 94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200

Attorneys for Defendants ROBERT JOHN BURRELL, WILLIAM CHENEY,
GORDON DAMES, ROBERT H. HARVEY, JR., JAMES JORDAN,
TIMOTHY M. KRAMER, ROBIN LENTZ, JOHN M. MERLO, WARREN
NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION, <br><br> Plaintiff, <br><br> vs. <br><br> ROBERT A. SIRAVO, et al., <br><br> Defendants. | No. CV 10-01597 GW (MANx) <br><br> **REPLY IN SUPPORT OF DIRECTOR DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (DOC. 116)** <br><br> Honorable George H. Wu <br> Courtroom 10 <br> 312 North Spring Street <br><br> Date: June 9, 2011 <br> Time: 8:30 a.m. <br> Courtroom: Los Angeles, 10 |

# TABLE OF CONTENTS

**Page**

I. SUMMARY OF ARGUMENT. ........................................................... 1

II. ARGUMENT. ................................................................................... 2

    A. To survive a motion to dismiss, the NCUA must plead an exception to California's Business Judgment Rule. ...................................................................... 2

        1. It takes more than simple negligence to plead around the Business Judgment Rule. ................................... 3

        2. Recasting decisions to invest as "failures to act" does not avoid the Business Judgment Rule. ................................................................................... 4

        3. The Court has already rejected the NCUA's other legal arguments for ignoring the Business Judgment Rule. ...................................................... 6

    B. The SAC does not plead an exception to the Business Judgment Rule. ......................................................... 10

        1. The ALCO books are properly before the Court and show the adequacy of the Directors' decision-making processes. ............................................... 10

        2. The NCUA's "five specific situations" do not overcome the Business Judgment Rule – as the Court has already ruled. ............................................. 11

            a. The Budget Committee had no duty to evaluate investment risk. ........................................ 11

            b. The NCUA's arguments about concentration limits represent a hindsight-fueled dispute with the content of the Directors' decisions. ........................ 12

            c. The NCUA's allegations about Option ARM approval under NCUA regulations and WesCorp's policies lack substance. ............................................................. 15

            d. The NCUA's allegations about capital ratios are based on hindsight. ................................ 17

            e. The NCUA's arguments about red flags ignore the SAC's allegations that the Directors shifted strategy in response to changing market conditions. ........................... 19

1

C.      Dismissal should be without leave to amend. ............................ 20

2   III.    CONCLUSION. .................................................................................. 21

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
## TABLE OF AUTHORITIES

2
Page

3
### Cases

4

5
*Bader v. Anderson,*
    179 Cal. App. 4th 775, 101 Cal. Rptr. 3d 821 (2009) ............................3

6
*Barnes v. State Farm Mut. Auto. Ins. Co.,*
    16 Cal. App. 4th 365, 20 Cal. Rptr. 2d 87 (1993) ...................................7

7

8
*Berg & Berg Enters., LLC v. Boyle,*
    178 Cal. App. 4th 1020, 100 Cal. Rptr. 3d 875 (2009) .............. 4, 7, 8, 9

9
*Citigroup Inc. S'holder Derivative Litig.,*
    964 A.2d 106 (Del. Ch. 2009) ...............................................................6

10

11
*Dixon v. Ladesh Co.,*
    No. 10-CV-1076, 2011 U.S. Dist. LEXIS 38274 (E.D. Wis.
    Mar. 30, 2011) ........................................................................................9

12

13
*FDIC v. Castetter,*
    184 F.3d 1040 (9th Cir. 1999) ........................................... 3, 5, 7

14
*Fleet Nat'l Bank v. Boyle,*
    No. 04-CV-1277-LDD, 2005 U.S. Dist. LEXIS 44036

15
    (E.D. Pa. Sep. 12, 2005) .........................................................................9

16
*Frances T. v. Village Green Owners Ass'n,*
    42 Cal. 3d 490, 229 Cal. Rptr. 456 (1986) .............................................3

17

18
*FSLIC v. Musacchio,*
    695 F. Supp. 1053 (N.D. Cal. 1988) ......................................................9

19
*Gailliard v. Natomas,*
    208 Cal. App. 3d 1250, 256 Cal. Rptr. 702 (1989) ............................4, 5

20

21
*Goodyear Tire & Rubber Co. Deriv. Litig.,*
    No. 5:CV2180, 2007 U.S. Dist. LEXIS 1233 (N.D. Ohio
    Jan. 5, 2007) ...........................................................................................9

22

23
*Lamden v. La Jolla Shore Clubdominium Homeowners Ass'n,*
    21 Cal. 4th 249, 87 Cal. Rptr. 2d 237 (1999) .....................................6, 7

24
*Lee v. Interinsurance Exchange,*
    50 Cal. App. 4th 694, 57 Cal. Rptr. 2d 798 (1996) ....................... passim

25

26
*McKesson HBOC Secs. Litig.,*
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) .................................................9

27
*McMichael v. U.S. Filter Corp.,*
    No. EDCV 99-182VAP, 2001 WL 418981 (C.D. Cal. Apr.

28
    17, 2001) .................................................................................................8

*Official Comm. of Bond Holders of Metricom, Inc. v. Derrickson,*
    No. C 02-04756 JF, 2004 U.S. Dist. LEXIS 19497 (N.D.
    Cal. Feb. 25, 2004) ...................................................................8

*Seidel v. Byron,*
    05 C 6698, 2008 U.S. Dist. LEXIS 76306 (N.D. Ill. Sep.
    26, 2008)...................................................................................9

*Torch Liquidating Trust v. Stockstill,*
    No. 07-133, 2008 U.S. Dist. LEXIS 19535 (E.D. La. Mar.
    13, 2008)...................................................................................9

**Statutes and Codes**

California Corporations Code
    Section 309 ...........................................................................7, 8
    Section 7231 .........................................................................7, 8

United States Code
    Title 12, Section 1766(a) .........................................................15

**Rules and Regulations**

75 Federal Register 64786 (Oct. 20, 2010) .....................................15

Code of Federal Regulations
    Title 12, Part 704, Appx. B (Oct. 25, 2002) ................................. 15, 18
    Title 12, Section 703.3(f) (June 3, 2003) ....................................14
    Title 12, Section 704.3(d) (Mar. 19, 1997) .................................17
    Title 12, Section 704.5(c) (Oct. 25, 2002) ..................................15
    Title 12, Section 704.5(h) (Oct. 25, 2002) ..................................15
    Title 12, Section 704.6(c) (Oct. 25, 2002) ..................................14
    Title 12, Section 704.6(d)(i)-(ii) (Jan. 18, 2011)...........................15

# I.     SUMMARY OF ARGUMENT.

The NCUA has faced an insurmountable obstacle from the moment it intervened in the case:  framing the Directors' carefully-made decisions to invest in securities that everyone thought were safe at the time as not only negligent, but so clearly wrongful as to strip away the protections of the Business Judgment Rule.  The task is made much more difficult because the "everyone" who thought the investments were safe includes not only WesCorp's Directors and Officers, but also the NCUA itself, as confirmed by the NCUA's Chairman in a speech made last July and preserved for us on the NCUA's website.  In an attempt to work around these inconvenient truths, the NCUA, in its Opposition to the Directors' Motion, Doc. 129 (the "Opposition" or "Opp."), engages in a series of legal and rhetorical contortions, none persuasive, or even novel.

The Opposition first attempts to avoid even having to plead an exception to the Business Judgment Rule.  Invoking points and authorities that the Court has already rejected, the NCUA erroneously attempts to reduce the Business Judgment Rule to nothing more than simple negligence.  This argument misstates the law and misunderstands the purpose and function of the Business Judgment Rule.  And the Opposition's other legal arguments are no better.

The Opposition next attempts to reframe the Second Amended Complaint, Doc. 116 ("SAC"), as alleging not decisions, but an abdication of decision-making.  But this revisionist history cannot survive a reading of the SAC itself, which takes issue with decisions made:  the securities the Directors bought.

Having failed to squirm out of pleading an exception to the Business Judgment Rule, the Opposition points to five "specific situations" that it says overcome the Rule.  This Court has seen each before – and rejected each as not overcoming the Business Judgment Rule.  The Opposition argues that the Budget Committee adopted budgets without adequately considering risk, but doesn't explain why the *budget* committee was responsible for *investment* decisions that

1  the SAC says belonged to the ALCO.  The Opposition argues that the Directors

2  should have used different concentration limits, but does not explain why they

3  should have known that at the time or how their decision-making process was

4  deficient – especially given the fact that the NCUA's own concentration limits

5  (which WesCorp obeyed, in spirit and letter) contained the same alleged

6  shortcoming as WesCorp's – the NCUA 'fixed' in its own regulations only *after*

7  it sued these Directors.  The Opposition argues that the Directors should have

8  approved Option ARM MBS as a new type of investment under WesCorp's

9  policies and NCUA regulations, but does not identify the policy, does not

10  identify a regulation and does not explain in what way Option ARM MBS were

11  "new" (they weren't).  The Opposition argues that the Directors should have

12  increased WesCorp's capital ratio, but fails to mention that WesCorp maintained

13  a capital ratio well above that required by the NCUA's regulations.  Finally, the

14  Opposition argues that the Directors ignored information about the economy, but

15  fails to explain how such an argument comports with allegations that the

16  Directors adjusted strategy based on changing economic circumstances, and does

17  not connect the information to any of the specific investment decisions at issue.

18      The Opposition, like the SAC, gives the Court nothing new.  It's the same

19  legal authorities, the same factual allegations, and the same arguments that the

20  Court has already seen.  The SAC should be dismissed – this time for good.

21  **II.     ARGUMENT.**

22  **A.      To survive a motion to dismiss, the NCUA must plead an exception to**

23          **California's Business Judgment Rule.**

24      Much of the NCUA's Opposition consists of legal arguments why the

25  Business Judgment Rule should not apply, or should be eviscerated.  These

26  arguments have two principal flaws:  First, they largely repeat (and evidently

27  seek reconsideration of) points that this Court has already resolved against the

28  NCUA.  Second, they are wrong as a matter of law.

1.      **It takes more than simple negligence to plead around the Business Judgment Rule.**

In an effort to avoid the Business Judgment Rule, the Opposition equates it to the standard of care for simple negligence: "such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under the circumstances." NCUA's Opposition to Director Defendants' Mot. to Dismiss SAC, Doc. 129 ("Opposition" or "Opp.") at 13:6-13. But pleading simple negligence – as the NCUA argues it has here – is not enough. *See FDIC v. Castetter*, 184 F.3d 1040, 1041 (9th Cir. 1999) (holding that California's Business Judgment Rule insulates directors from liability for simple negligence). To state a claim against the Directors, the NCUA must plead an exception to the Business Judgment Rule. Order filed Dec. 20, 2011, Doc. 110 ("12/20 Order"), at 6. The SAC does not do so.

California's Business Judgment Rule "recognizes that where decisions are without fraud or breach of trust, management of the corporation is best left to those to whom it has been entrusted, not to the courts." 12/20 Order at 5 (quoting *Bader v. Anderson*, 179 Cal. App. 4th 775, 787, 101 Cal. Rptr. 3d 821, 830 (2009)). "The general purpose of the business judgment rule is to afford directors broad discretion in making corporate decisions and to allow these decisions to be made without judicial second-guessing in hindsight." *Id.* (quoting *Castetter*, 184 F.3d at 1044). "We are mindful that directors sometimes must make difficult cost-benefit choices without the benefit of complete or personally verifiable information . . . . [D]irectors are not personally liable in tort unless their action, including any claimed reliance on expert advice, was clearly unreasonable <u>under the circumstance known to them at the time</u>." *Id.* (quoting *Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 509, 229 Cal. Rptr. 456, 467 (1986)) (emphasis in original). Because of the danger that a judge or jury would be affected by hindsight bias, "'doubtful cases' do not call for

1    '[i]nterference with the discretion of directors.'" *Id.* at 5-6 (quoting *Berg & Berg*

2    *Enters., LLC v. Boyle*, 178 Cal. App. 4th 1020, 1046, 100 Cal. Rptr. 3d 875, 897-

3    98 (2009); *Lee v. Interinsurance Exchange*, 50 Cal. App. 4th 694, 715, 57 Cal.

4    Rptr. 2d 798, 811 (1996)).

5    **2.**     **Recasting decisions to invest as "failures to act" does not avoid the**

6           **Business Judgment Rule.**

7       In another effort to avoid the Business Judgment Rule, the NCUA claims

8    that its allegations against the Directors are not quarrels with decisions the

9    Directors made but allegations that the Directors failed to make decisions at all

10    and, therefore, are not protected by the Business Judgment Rule. Opp. at 21:8-18

11    (citing *Gailliard v. Natomas*, 208 Cal. App. 3d 1250, 1263-64, 256 Cal. Rptr.

12    702, 710-11 (1989), which, says the NCUA, holds that the Business Judgment

13    Rule does not protect directors who completely "abdicate" their corporate

14    responsibilities).

15       This revisionist history is rebutted by any fair reading of the SAC. The

16    gist of the SAC is that the Directors decided to invest too heavily in Option-

17    ARM MBS. That's a decision, not a failure to decide. Nonetheless, the

18    Opposition argues that the Directors failed to consider or impose meaningful

19    concentration limits (Opp. at 8:19-22, 9:6-9, 15:19-21), failed to consider

20    different ways of tracking investments (Opp. at 8:25-28, 9:9-13, 10:17-20), failed

21    to consider augmenting WesCorp's capital (Opp. at 2:8-10, 11:6-9, 15:26-28),

22    failed to approve Option ARM MBS as a new security type (Opp. at 10:15-20),

23    failed to track and lower the concentration of lower tranche AAA rated MBS

24    (Opp. at 5:12-18, 8:25-28, 9:9-13, 10:15-20, 25:2-5) and failed to change

25    WesCorp's investment strategy (Opp. at 11:17-21).

26       Unfortunately for the NCUA, the SAC contradicts the Opposition. The

27    SAC alleges that the Directors did adopt concentration limits – albeit not

28    precisely the limits that the NCUA now wants. SAC ¶ 111. The SAC alleges

1    that the Directors did monitor investments.  SAC ¶ 128.  The SAC alleges that

2    the Directors did consider capital, and increased WesCorp's capital.  SAC ¶ 147.

3    And the SAC alleges that the Directors did approve investments in AAA-rated

4    private label MBS.  SAC ¶ 74.  The Directors acted – they just did not act in the

5    way the NCUA now says they should have acted.  Failing to act in the way the

6    NCUA prefers is not a failure to act.  The Business Judgment Rule precludes

7    such hindsight-based arguments, no matter how they are framed.

8         Other allegations in the SAC also undercut the NCUA's reliance on

9    *Gaillard* because they enumerate many things that the Directors did right.  *See*

10   12/20 Order at 9 ("The affirmatively-alleged facts about what the Director

11   Defendants *did do* in their roles with WesCorp are not meaningfully different

12   from those the Ninth Circuit considered in *Castetter* and concluded called for

13   application of the business judgment rule." (citing *Castetter,* 184 F.3d at 1045)).

14   The SAC alleges that the Directors invested in only highly rated securities

15   underwritten "by the world's leading investment banks."  SAC ¶ 39.  The SAC

16   alleges that the Directors reviewed and approved budgets containing "detailed

17   information" including proposed projected expenses, projected fee income, and

18   monthly projected totals for projected investment income.  SAC ¶ 88.  The SAC

19   alleges that the Directors classified and tracked MBS investments by rating

20   (AAA and AA) and FICO score (prime, alt-A and subprime).  SAC ¶ 128.  And

21   the SAC alleges that Directors attended meetings of WesCorp's Asset &

22   Liability Committee ("ALCO") and received presentations about the economy,

23   the investment climate and WesCorp's investment strategy.  SAC ¶¶ 96, 97, 99,

24   135.  In short, the SAC's own allegations demonstrate that the Directors did not

25   "abdicate" their responsibilities, within the meaning of *Gailliard*.

26        Although the NCUA attempts to recharacterize the SAC as stating a claim

27   for a failure of oversight, it does not cite a single California case that imposes

28   liability on directors for an alleged failure to oversee business risk, and it ignores

1   the decisions of other courts rejecting such arguments as contrary to the policies

2   underlying the Business Judgment Rule. *In re Citigroup Inc. S'holder Derivative*

3   *Litig.*, 964 A.2d 106, 124 (Del. Ch. 2009), is such a case. There the plaintiffs

4   accused the directors of Citigroup of allowing the bank to buy too much

5   subprime MBS. The Chancery Court rejected this claim, stating: "Although

6   these claims are framed by plaintiffs as *Caremark* [failure of oversight] claims

7   . . . [w]hen one looks past the lofty allegations of duties of oversight and red

8   flags used to dress up these claims, what is left appears to be plaintiff

9   shareholders attempting to hold the director defendants personally liable for

10  making . . . business decisions that, in hindsight, turned out poorly for the

11  Company." *Id.* The same is true here. Like the NCUA's other attempts to end-

12  run the Business Judgment Rule, the Court should reject this last-minute attempt

13  to reframe its allegations as failures of oversight.

14  **3.      The Court has already rejected the NCUA's other legal arguments for**

15          **ignoring the Business Judgment Rule.**

16          The NCUA makes a number of other legal arguments against the Business

17  Judgment Rule that this Court has already rejected.[1]

18          The Opposition argues that there are two components to the Business

19  Judgment Rule – one common law, one statutory – and that only the statutory

20  Business Judgment Rule applies to cases seeking money damages from directors.

21  Opp. at 12:10-13:5. (It made the same argument last time. *See* Doc. 102, at

22  8:20-23 & n.3.) The NCUA does not cite a case so holding. Instead, it relies on

23  ambiguous statements from two cases: *Lamden v. La Jolla Shore Clubdominium*

24  *Homeowners Ass'n*, 21 Cal. 4th 249, 257, 87 Cal. Rptr. 2d 237, 241 (1999) and

25  _____

26  [1]   If the NCUA wished to repeat failed arguments to preserve them for appeal, it
        should have been candid enough to say so, as did the Directors. *Cf.* Doc. 96-
27    1, at 22:22-25. But it is not entitled to seek reconsideration on points it has
        already lost in the hope that the second (or third) time is the charm.
28

1   *Lee*, 50 Cal. App. 4th at 714.  *Lamden* is a case about termite infestation at a

2   condominium.  In deciding not to apply the Business Judgment Rule to

3   homeowners' associations, the Court briefly describes both the statutory rule

4   (Cal. Corp. Code §§ 309, 7231) and the common law rule, but nowhere holds

5   either has limited application or excludes the other.  Similarly, although *Lee*

6   points out that there are two components to the Rule, it does not hold that only

7   one component applies to any given situation.  *See Lee*, 50 Cal. App. 4th at 714.

8       Indeed, far from holding that only one component applies to a given

9   situation, courts routinely draw from cases interpreting both components – no

10   matter what damages the plaintiff happens to be seeking.  *Berg & Berg* relied on

11   both components, despite the fact that plaintiff sought money damages against

12   the defendant directors.  *Berg & Berg*, 178 Cal. App. 4th at 1046.  Faced with

13   exactly the situation in which the NCUA contends only the statutory Business

14   Judgment Rule applies – personal liability for money damages for directors – the

15   court held exactly the opposite: "As noted, the business judgment rule has two

16   components – immunization from liability that is codified at Corporations Code

17   section 309 and a judicial policy of deference to the exercise of good-faith

18   business judgment in management decisions . . . both components apply here."

19   *Id.* at 1048.  Similarly, while *Castetter* relied heavily on the statutory Business

20   Judgment Rule, it also drew from cases interpreting the common law Business

21   Judgment Rule.  *See, e.g. Castetter*, 184 F.3d at 1044 (citing *Barnes v. State*

22   *Farm Mut. Auto. Ins. Co.,* 16 Cal. App. 4th 365, 20 Cal. Rptr. 2d 87 (1993), a

23   case explicitly about the common law component of the Business Judgment

24   Rule).  In any event, the NCUA's argument is immaterial.  As the Court has

25   previously held, even under the statutory Business Judgment Rule alone the

26   NCUA would have to plead an exception to the Business Judgment Rule.  *See*

27   Order filed Jan. 31, 2011, Doc. 115 ("1/31 Order") at 1 n.2.

28       The Opposition argues that California Corporations Code section 7231 is

1  somehow different than section 309 and that, because section 7231 is rarely

2  litigated, it cannot be applied on a motion to dismiss.  Opp. at 16:27-18:2.  (It

3  made the same argument last time.  *See* Doc. 102, at 12:4-13:9.)  Again, the

4  Court has already rejected this argument, and rightfully so:  The standards

5  applicable under section 7231 are not different than the standards applicable

6  under section 309.  12/20 Order at 4 n.3.  Even if section 7231 applies here, the

7  Directors were still engaged in the business of investing member credit unions'

8  money, as the NCUA has admitted.  12/20 Order at 7.  Investment decisions are

9  the quintessential type of decision protected by the Business Judgment Rule.

10       The Opposition argues that a district court cannot apply the Business

11  Judgment Rule on a motion to dismiss because the Rule raises issue of fact.

12  Opp. at 13:6-13, 16:22-26.  (It made the same argument last time.  *See* Doc. 102,

13  at 11:2-12:3.)  This is wrong, as this Court has already ruled.  California courts

14  have explicitly held that the Business Judgment Rule can be applied on motions

15  to dismiss or demurrers.  *See Berg & Berg*, 178 Cal. App. 4th at 1044-46.  As

16  this Court has said, "the business judgment rule is the rough corporate equivalent

17  of the government actor's qualified immunity motion.  Business judgment rule

18  applications can (and arguably should, at least where the allegations are as

19  detailed as they are here) be made at the motion-to-dismiss stage."  12/20 Order

20  at 8 (citing *Berg & Berg*, 178 Cal. App. 4th at 1044-46).

21       The Opposition argues that federal courts routinely refuse to apply the

22  Business Judgment Rule on motions to dismiss, offering a smattering of cases,

23  mostly from out of circuit and not applying California law.  Not so.  A number of

24  district courts in this circuit have granted motions to dismiss on Business

25  Judgment Rule grounds.  *See, e.g., Official Comm. of Bond Holders of Metricom,*

26  *Inc. v. Derrickson,* No. C 02-04756 JF, 2004 U.S. Dist. LEXIS 19497, at *10-12

27  (N.D. Cal. Feb. 25, 2004); *McMichael v. U.S. Filter Corp.*, No. EDCV 99-

28  182VAP, 2001 WL 418981, at 29-43 (C.D. Cal. Apr. 17, 2001); *In re McKesson*

1   *HBOC Secs. Litig.,* 126 F. Supp. 2d 1248, 1278 (N.D. Cal. 2000); *see also Dixon*

2   *v. Ladesh Co.,* No. 10-CV-1076, 2011 U.S. Dist. LEXIS 38274, at *21-23 (E.D.

3   Wis. Mar. 30, 2011); *Seidel v. Byron,* No. 05 C 6698, 2008 U.S. Dist. LEXIS

4   76306, at *13 (N.D. Ill. Sep. 26, 2008); *Torch Liquidating Trust v. Stockstill,* No.

5   07-133, 2008 U.S. Dist. LEXIS 19535, at *21-33 (E.D. La. Mar. 13, 2008); *In re*

6   *Goodyear Tire & Rubber Co. Deriv. Litig.,* No. 5:CV2180, 2007 U.S. Dist.

7   LEXIS 1233, at *31-32 (N.D. Ohio Jan. 5, 2007); *Fleet Nat'l Bank v. Boyle,* No.

8   04-CV-1277-LDD, 2005 U.S. Dist. LEXIS, 44036, at *58 (E.D. Pa. Sep. 12,

9   2005).  The NCUA's cases do not rebut the explicit holding of California courts

10  that the Business Judgment Rule can properly be applied on a motion to dismiss.

11  12/20 Order at 8.[2]

12      The Opposition offers a bizarre reading of *Twombly* and *Iqbal* as

13  <u>weakening</u> pleadings standards and thus making it improper to apply the

14  Business Judgment Rule on a motion to dismiss in federal court.  Opp. at 14:2-8.

15  (It made the same argument last time.  *See* Doc. 102, at 10:14-23.)  But the

16  Business Judgment Rule is a rule of substantive corporate law.  It can and should

17  be applied as early as possible in litigation.  *See* 12/20 Order at 8.  *Twombly* and

18  *Iqbal* do not relax corporate law, nor do they make it any easier to plead an

19  exception to the Business Judgment Rule.

20

21  _____

    [2]  The NCUA overstates its only California authority, *FSLIC v. Musacchio,*
22  695 F. Supp. 1053, 1064 (N.D. Cal. 1988).  The defendants argued that the
    plaintiff had an affirmative obligation to plead the inapplicability of the
23  Business Judgment Rule.  The court disagreed, saying that the Rule was a
    defense.  In the alternative, the court also said the Rule raised questions of
24  fact (citing a North Carolina case).  *Musacchio* has no application here, first,
    because the SAC goes into detail about what the Directors did right (*see* 12/20
25  Order at 8-9), and second, because its cursory statement predates by twenty
    years the unambiguous statement of *Berg & Berg* that whether plaintiff has
26  pleaded facts overcoming the Business Judgment Rule is a question of law,
    appropriate to decide on a motion to dismiss or demurrer.  *Berg & Berg*,
27  178 Cal. App. 4th at 1046.

28

1   The Court has rejected all the NCUA's legal arguments not once, but
2   twice.  Raising the arguments again is nothing but a diversion from the real issue:
3   whether the SAC pleads facts establishing an exception to the Business Judgment
4   Rule.  On that issue, the Opposition has precious little to say.  Indeed, it never
5   reaches the issue until almost 20 pages into its 25-page brief.

6   **B.   The SAC does not plead an exception to the Business Judgment Rule.**

7   The NCUA does not allege fraud, breach of trust, conflict of interest,
8   oppression, corruption improper motives or bad faith.  The only SAC allegations
9   that "even come close to satisfying" the required showing are those alleging that
10  the Directors' actions were "clearly unreasonable under the circumstances known
11  to them at the time" or were the product of the failure to conduct an "active
12  investigation."  1/31 Order at 2.  But general allegations of a failure to conduct
13  an investigation are insufficient "in the absence of (1) allegations of facts which
14  would reasonably call for such an investigation, or (2) allegations of facts which
15  would have been discovered by a reasonable investigation and would have been
16  material to the questioned exercise of business judgment."  1/31 Order at 1
17  (quoting *Lee,* 50 Cal. App. 4th at 715).  The SAC never even really tries to allege
18  facts establishing either exception.

19  **1.   The ALCO books are properly before the Court and show the**
20  **adequacy of the Directors' decision-making processes.**

21  The ALCO books (Request for Judicial Notice, Doc. 123 ("RJN"), Exs. 1,
22  4-9) speak both to what the Directors knew at the time and to the adequacy of
23  their investigation. The ALCO books show that the Officers prepared and the
24  Directors received roughly one hundred pages of information every month when
25  making decisions about WesCorp's investments.  Instead of asserting that the
26  books are inaccurate or disputing the Directors' argument regarding the adequacy
27  of their process, the NCUA objects that the ALCO books are not properly the
28  subject of judicial notice, arguing that the books may not be used for the truth of

1    matters asserted in them.  Opp. at 18:6-20:16.  But the Directors do not offer the

2    ALCO books for the truth of the matters asserted in them.  Rather, the Directors

3    offer the ALCO books for two proper purposes:  first, to illustrate *process* – what

4    kinds of information the Officers collected and the ALCO received before

5    making investment decisions; and second, to show that the SAC mischaracterizes

6    what the books say.  Both are proper purposes for judicial notice.  *See* Reply in

7    Support of Request for Judicial Notice, filed herewith ("RJN Reply"), Part

8    I.A.1.b.  The Court may properly consider the ALCO books on this motion.

9         Given the amount of material presented to the Directors monthly, the

10   NCUA's allegations are remarkably implausible.  Yet even without consideration

11   of this material, the SAC fails to offer anything more than the same kinds of

12   conclusory allegations that were inadequate to overcome the Business Judgment

13   Rule in the FAC.  Without the ALCO books, the SAC's allegations fail; with the

14   ALCO books, they fail spectacularly.

15   **2.    The NCUA's "five specific situations" do not overcome the Business**

16   **       Judgment Rule – as the Court has already ruled.**

17        The Opposition argues that the SAC alleges "five specific situations" in

18   which the Directors were required to consider the risks of WesCorp's

19   investments.  Opp. at 15:15-16:4.  There is nothing new here:  All five situations

20   were alleged in the First Amended Complaint, Doc. 84 ("FAC"), and in the

21   NCUA's Offer of Additional Allegations, Doc. 111.  They do not improve on a

22   third reading.

23   **a.    The Budget Committee had no duty to evaluate investment risk.**

24        First, the Opposition argues that WesCorp's Budget Committee did not

25   consider investment risk when it budgeted annual income targets.  Opp. at 6:18-

26   22, 15:17-19, 23:17-24:8.  As the Court noted, this argument is "not significantly

27   different" than the allegations regarding the budget in the FAC.  1/31 Order at 2.

28   Moreover, "the Court would seemingly also have to question why a *budget*

1   committee should be held responsible for the effect of *investment* decisions." *Id.*
2   (emphasis in original).

3         The NCUA has yet to answer this fundamental question.  Instead, it
4   suggests that if the Budget Committee did not evaluate the risk, the Budget
5   Committee had the duty to delegate risk evaluations to another body and then
6   asserts – without citation – that the Budget Committee failed to delegate that
7   duty.  Opp. at 24:2-8.  This unsupported argument flies in the face of what the
8   SAC does allege.  The SAC alleges that the Asset/Liability Staff Committee
9   ("ALSC") and the ALCO took responsibility for "review of investment security
10  purchases and sales and the prevailing investment strategies and potential
11  changes thereto."  SAC ¶ 59.  The SAC also alleges that Budget Committee
12  members regularly attended ALCO meetings and received presentations on risk.
13  SAC ¶¶ 96-99.  If (as alleged) the ALCO and ALSC evaluated risk, and the
14  Budget Committee members consulted with those bodies, the system was
15  working.  What is the NCUA's argument – that one loses the protection of the
16  Business Judgment Rule if one does not build in redundancy?  And even if the
17  NCUA now thinks, in hindsight, that Budget Committee should have duplicated
18  the work of the ALCO, the NCUA has yet to plead facts that would have been
19  uncovered by such additional inquiry, as is required under *Lee.  See* Memo. in
20  Supp. of Director Defendants' Mot. to Dismiss Plaintiff's Second Amended
21  Complaint, Doc. 122-1 ("Dir. Op. Mem.") at 12:25-13:11.

22  **b.**    **The NCUA's arguments about concentration limits represent a**
23          **hindsight-fueled dispute with the content of the Directors' decisions.**

24        Second, the Opposition argues that the Directors should have set a
25  separate concentration limit for AAA-rated private-label MBS.  Opp. at 15:19-
26  20, 22:16-23:10.  But the SAC's "new" concentration limits allegations are
27  almost identical to those in the FAC.  *See* Dir. Op. Mem. at 22:7-19.  The Court
28  has previously recognized that "a seemingly gigantic problem with Plaintiff's

1    case is that WesCorp never invested in securities graded lower than AA" and

2    mainly invested in AAA.  1/31 Order at 2.  Instead of offering *facts* that call into

3    question the Directors' investment decision processes, the NCUA offers a series

4    of conclusions about the content of the Directors' decisions:  the Directors

5    should have set different concentration limits and the Directors should have

6    made different investment decisions.  Opp. at 23:2-10.  As the Court has

7    previously recognized, such arguments do not satisfy *Lee* because they fail to

8    describe what *at the time* should have alerted the Directors to the need for

9    specific concentration limits on Option ARM MBS.  12/20 Order at 8.  That

10   failure is especially telling because, as the NCUA admits, (i) WesCorp bought

11   only the highest-rated securities, (ii) did not limit its investigation to ratings, and

12   (iii) faithfully observed not only its own concentration limits but also the

13   NCUA's  concentration limits (which did not require a separate limit for private-

14   label MBS until 2011, months *after* the NCUA had sued the Directors).

15        *(i) Ratings:*  As the SAC alleges, WesCorp invested in only the highest

16   rated securities, AAA and AA.  These securities appeared to be as safe as other

17   highly rated securities; the SAC does not allege anything special about them that

18   additional investigation would have uncovered.  That these securities appeared

19   safe to the reasonable investor at the time is underscored by NCUA Chairman

20   Matz's presentation on corporate credit unions' investments in MBS, including

21   Option ARM MBS.  *See* RJN Ex. 10, at 0765.  As Chairman Matz publicly stated

22   – one month before her agency filed the FAC:  "The loss history of securities

23   with an initial rating of triple-A or double-A was less than one half of one

24   percent.  The loss history of securities issued by government-sponsored entities

25   and the loss history of private label securities was virtually the same."  *Id.*[3]

26

27   [3]   The Court may consider Chairman Matz's presentation on this motion.  *See*
            RJN Reply, Part I.C, at 7-9.
28

1   What, then, at the time should have alerted the Directors to know something that

2   Chairman Matz and her agency did not know?

3       *(ii) Other diligence:*  In response to the Directors' point that they did much

4   more than merely rely on the AAA ratings, the Opposition argues that the

5   Directors rest this point on inappropriate "characterization" of the ALCO books.

6   Opp. at 23:11-16.[4]  Not so.  No characterization is needed – the Court need only

7   read the books to see what types of information the Officers presented to the

8   Directors.  Take, for example …

9       *(iii) Concentration limits:*  The ALCO books presented the Directors with

10  information that WesCorp tracked and limited concentration by many measures:

11  by originator, by issuer group, by shelf registration, by servicers, by bond issuer

12  and by state.  Dir. Op. Mem. at 21:24-22:6.  The NCUA has never alleged that

13  WesCorp violated any of its own limits, or even came close to the line.

14       Nor does the NCUA accuse WesCorp of violating the NCUA's

15  concentration limits.  Oh, yes, the NCUA has concentration limits.  Its

16  regulations set concentration limits (12 C.F.R. § 704.6(c) (Oct. 25, 2002)) and

17  discuss how to analyze concentration risk (*see id.* § 703.3(f) (June 3, 2003)).

18  Why do the SAC and the Opposition not mention these limits?  Two reasons:

19  First, because WesCorp did not violate them, and second, because at the time

20  they too did not require concentration limits by collateral type (such a private-

21  label MBS).  The NCUA sues the Directors for $6.8 billion, arguing that they

23  [4]   The Opposition also says that the Directors' reference to a consultant,
    RiskSpan, rests on the original plaintiffs' complaint, which does not bind the
24  NCUA.  Assuming *arguendo* the original complaint does not bind the NCUA,
    the NCUA itself has judicially admitted that "WesCorp engaged RiskSpan to
25  provide independent evaluations of WesCorp's most credit sensitive holdings
    (the majority of the sub-prime Residential Mortgage-Backed Securities and
26  Collateralized Debt Obligations Securities).  RiskSpan conducted its analysis
    of WesCorp's riskiest sub-prime holdings on a monthly basis."  Doc. 2, Ex. 8,
27  ¶ 13, at 4.

1   breached their duty of care by not imposing concentration limits by collateral

2   type.  *But the NCUA conveniently fails to mention that its own regulations did*

3   *not require or even suggest limits by collateral type until the year 2011, well*

4   *after the NCUA filed this lawsuit.  See* 12 C.F.R. § 704.6(d)(i)-(ii), as added by

5   75 Fed. Reg. 64786, 64841, 64841 (Oct. 20, 2010), effective Jan. 18, 2011.

6   **c.      The NCUA's allegations about Option ARM approval under NCUA**

7           **regulations and WesCorp's policies lack substance.**

8           Third, the Opposition argues that the Directors violated NCUA regulations

9   and WesCorp's policies by not deeming Option ARM MBS a "new" type of

10   collateral and, accordingly, not giving it heightened scrutiny.  Opp. at 2:4-7,

11   9:14-19, 10:15-20, 15:21-26.  The argument, like the others, is a retread.  No part

12   of it withstands scrutiny.

13           *Alleged violation of NCUA regulations:*  No less than eight times the

14   Opposition assets that the Directors violated NCUA regulations by approving

15   investments in Option ARMs.  Opp. at 1:16-18, 2:7-9, 8:5-8, 8:19-22, 9:5-9,

16   9:19-22, 15:12-14, 21:2-5.  But which regulation did the Directors violate?  Good

17   question – the Opposition does not cite a single NCUA regulation.  There is a

18   reason for that omission:  the SAC does not contain any factual allegations that

19   the Directors violated any specific NCUA regulations.

20           The SAC's silence is no accident.  As the Directors have previously

21   explained (Doc. 96-1, at 14:8-15:16), the NCUA has promulgated extensive

22   regulations under 12 U.S.C. 1766(a) detailing how a credit union should analyze,

23   limit and monitor its investments.  These regulations prescribe everything from

24   approved types of investments (12 C.F.R. § 704.5(c) (Oct. 25, 2002) to

25   concentration limits (12 C.F.R. § 704.6(c) (Oct. 25, 2002)).  The NCUA's

26   regulations expressly contemplate and authorize investments in private-label

27   MBS.  12 C.F.R. § 704.5(c), (h) (Oct. 25, 2002) & Part 704, Appx. B (Oct. 25,

28   2002).  As noted above, the NCUA's regulations set concentration limits (*id.*

1  §704.6(c) (Oct. 25, 2002)) and discuss how to analyze concentration risk (*see id.*

2  § 703.3(f) (June 3, 2003)).  The NCUA has never alleged that the Directors

3  violated any of these specific regulations or failed to follow any NCUA-

4  approved concentration limits.  The NCUA's failure to plead specific facts

5  regarding any violation of NCUA regulations is emblematic of the inadequacies

6  of the SAC.  Instead of pleading facts, the NCUA regurgitates unsupported

7  conclusions that sound good in hindsight but fail to overcome the Business

8  Judgment Rule.

9      *Alleged violation of WesCorp policies:*  Likewise, the Opposition

10  repeatedly says that the Directors violated some WesCorp policy by approving

11  Option ARMs, but the SAC never identifies that policy, or delineates what it

12  requires, or how the Directors allegedly failed to meet it, or how (within the

13  meaning of *Lee*) meeting it would have made any material difference.  Opp. at

14  23:4-6.  The NCUA relies on a single paragraph from the SAC for the allegation

15  that the Directors did not approve Option ARM MBS as a "new" type of

16  collateral.  Opp. at 9:14-19 (citing SAC ¶ 115).  Which WesCorp policy?  What

17  did the policy say?  What should the Directors have done under the policy?

18      *Alleged "newness" of the collateral:*  What made Option ARM MBS a

19  "new type of collateral" under the policy?  The Opposition and the SAC do not

20  tell us, and the answer is far from obvious.  After all, WesCorp had invested in

21  private label MBS (a category that includes Option ARM MBS) since 2002.

22  SAC ¶ 72.  ARMs, and private-label MBS containing ARMs, have been around

23  for decades, received the blessing of Congress and long were viewed as essential

24  to reducing what was deemed the main risks facing financial institutions –

25  interest rate risk and liquidity risk.  *See* Dir. Op. Mem. at 16:19-17:4.  The

26  Opposition is silent on these issues.

27      On top of it all, the Opposition still has not pointed to facts that show that

28  the Directors knew of but disregarded problems with Option ARM securities.

1   Even if the SAC did offer the details identified above, the allegations would be

2   "irrelevant given the business judgment rule because there are no allegations that

3   the director defendants were aware at the time any investment decisions were

4   made of the *details* underlying the incredibly weak foundation for those

5   securities at the time . . . .  Without more, what appears ridiculous in hindsight is

6   still based on just that – hindsight."  1/31 Order at 3.  Instead of alleging facts

7   that the Directors knew the details underlying these securities, the SAC offers

8   only vague allegations that the Directors knew some of the risks inherent in

9   ARMs generally.  *See* Dir. Op. Mem. at 15:7-20.  Knowing that ARMs,

10  including Option ARMs, entail certain risks is a far cry from being aware of "the

11  *details* underlying the incredibly weak foundation for those securities."  1/31

12  Order at 3.  The Opposition, like the SAC, does not even try to provide the kind

13  of details that this Court has asked for.

14  **d.      The NCUA's allegations about capital ratios are based on hindsight.**

15          Fourth, the Opposition argues that the Directors failed to maintain the

16  proper ratio of capital to assets.  Opp. at 2:7-10, 10:21-11:9, 15:26-28, 21:24,

17  25:2-5.  With the benefit of hindsight, the NCUA alleges that, while WesCorp

18  increased its capital, it should have increased it more.  SAC ¶ 147.

19          But how much is enough?  Nowhere does the NCUA allege that

20  WesCorp's capital ratio dropped below the NCUA's standards.  NCUA

21  regulations normally permit a four percent ratio of capital to assets (in other

22  words, a corporate credit union must have $4 of capital for every $100 of assets).

23  12 C.F.R. § 704.3(d) (Mar. 19, 1997).  Neither the SAC nor the Opposition

24  suggests that WesCorp violated this regulation.  Nor could they.

25          But that is not all.  For the NCUA, it gets worse.  Once again, its own

26  regulations show exactly how implausible its allegations are.

27          Between 2002 and 2010, the NCUA gave certain well-regarded corporate

28  credit unions – including WesCorp – expanded investment authority to invest in

1    securities rated as low as "BBB." *See* 12 C.F.R. Part 704, Appx. B (Oct. 25,

2    2002)). In exchange for the expanded authority, approved credit unions such as

3    WesCorp had to agree to maintain more capital: a ratio of five percent. *Id.* As

4    the Court is aware, WesCorp never purchased securities lower than "AA." SAC

5    ¶¶ 82, 148. It never went as low as the NCUA said it could go; on S&P's ratings

6    scale, BBB is six levels below AA (the levels in between are AA-, A+, A, A-,

7    and BBB+). *See* Dir. Op. Mem. at 7:16-20. Yet WesCorp upheld its end of the

8    bargain: the NCUA never alleges that WesCorp violated the higher five percent

9    regulatory capital ratio minimum. Nor could it. The ALCO books contain a

10   monthly historical and planned capital ratio review report informing the

11   Directors that WesCorp's capital ratio never dropped below six percent. *See*

12   RJN, Ex. 1, at 0067, Ex. 4, at 0195, Ex. 5, at 0306, Ex. 6, at 0411, Ex. 7, at 0507,

13   Ex. 8, at 0614, Ex. 9, at 0714. Put another way, WesCorp never bought the

14   BBB-rated securities that the NCUA said it could buy, but even so, WesCorp

15   maintained significantly more capital than the NCUA would have required had

16   WesCorp chosen to invest in BBB-rated securities.

17        The fact that the NCUA gave WesCorp permission to buy BBB-rated

18   MBS also belies the NCUA's griping that WesCorp bought some lower tranche

19   AAA-rated MBS: even the lowest AAA tranche was eight levels above BBB.

20   The NCUA alleges that some of WesCorp's AAA-rated investments were not

21   from the top tranche. SAC ¶ 84. The SAC does not allege that higher tranche

22   investments would have resulted in fewer losses. *See* Dir. Op. Mem. at 20:28-

23   21:16. The Court has previously recognized that "a seemingly gigantic problem

24   with Plaintiff's case is that WesCorp never invested in securities graded lower

25   than AA." 1/31 Order at 2. The NCUA's allegations related to lower tranche

26   AAA-rated securities offer no solution to this "gigantic problem."

27        In short, the NCUA's capital and tranche allegations amount to this:

28   WesCorp's capital ratio was good – and fully complied with applicable law – but

1   a higher capital ratio would have been better.  WesCorp's purchase of AAA-

2   rated securities was good – and fully complied with applicable law – but higher

3   tranche AAA-rated securities would have been better.  The Business Judgment

4   Rule bars such hindsight-based arguments.

5   **e.    The NCUA's arguments about red flags ignore the SAC's allegations**

6   **that the Directors shifted strategy in response to changing market**

7   **conditions.**

8        Fifth and finally, the Opposition argues that the Directors failed to

9   reconsider WesCorp's investment in MBS in light of warnings that the housing

10  market might deteriorate.[5]  Opp. at 15:28-16:4.  But the statements that the

11  NCUA cherry-picks from the ALCO books are high-level discussions of the

12  economy that the SAC does not connect with any specific decision that the

13  Directors made.  *See* Dir. Op. Mem. at 18:9-22.

14       The Opposition fails for another reason:  its argument that the Directors

15  refused to change strategy in the face of the information they received contradicts

16  what the SAC actually alleges.  The SAC alleges that WesCorp backed away

17  from AA-rated investments in 2005 (which had peaked at only 22% of

18  WesCorp's portfolio) and stopped buying subprime by December 2006.  SAC

19  ¶¶ 82, 148.  The Directors accordingly incorporated information about economic

20  trends into their investment plans and made decisions on the basis of the best

21  information available at the time.  Because the Directors stopped buying AA-

22  rated investments, stopped buying subprime, and finally stopped buying private

23  _____

24  [5]  As the Directors indicated in their motion, Dir. Op. Mem. at 23 n.7, the so-
     called "red flags" regarding the housing market did not arise until well after

25  some defendants had left WesCorp.  Bill Cheney left WesCorp in February
     2006 (SAC ¶ 18); Dave Rhamy and Sharon Updike left WesCorp in April

26  2006 (SAC ¶¶ 21-22).  All three left WesCorp before the NCUA's alleged
     "red flags" and before most of the events alleged in the SAC's few

27  substantive allegations that are specific about time.  The Opposition offers no
     response to the Directors on this point.

28

1    label MBS altogether, "Plaintiff might be understood as, in essence, complaining

2    about the *timing* of the investment decisions.  If understood in that fashion, it

3    would be hard to see how any such approach could survive application of the

4    business judgment rule."  1/31 Order at 3 n.4.  The NCUA can quibble with the

5    content or the timing of the investment decisions that the Directors made, but

6    such content-based arguments do not establish an exception to the Business

7    Judgment Rule.

8    **C.      Dismissal should be without leave to amend.**

9            The Opposition does not argue that the NCUA should be granted leave to

10   amend if the SAC is dismissed, nor does it suggest anything fruitful that another

11   round of amendments might yield.  The NCUA has had two chances to state a

12   claim, and considerable guidance from the Court.  The NCUA had two

13   examiners on site at WesCorp throughout the relevant period, and has had over

14   two years since seizing WesCorp in March 2009 to search its books and records

15   and grill its employees.  Yet despite all this time and all its resources, the NCUA

16   offers little more than bloated and repetitive versions of the same factual

17   allegations that were deemed inadequate in the FAC and the same legal

18   arguments that the Court has already rejected.  The NCUA has nothing new to

19   offer and further amendment would be futile – which may be why the NCUA

20   does not request it.  *See* Dir. Op. Mem. at 24:2-18.

21

22

23

24

25

26

27

28

1   III.   **CONCLUSION.**

2           The Opposition is devoted mainly to repeating what is in the SAC (Opp. at

3   3-11), repeating legal arguments that the NCUA has already lost (Opp. at 12-18)

4   and repeating points that it made in its opposition to the Directors' Request for

5   Judicial Notice (Opp. at 18-20).  The Opposition only reaches the substance of

6   the Directors' arguments in the last four and one-half pages (Opp. at 20:17-

7   25:11).  Such repetition is emblematic of the central fault of the SAC:  even its

8   "new" allegations "are not significantly different than what were already

9   included in the FAC."  1/31 Order at 2.  Because the SAC suffers from the same

10  shortcomings as the FAC, it too should be dismissed – and this time without

11  leave to amend.

12          Dated:  May 26, 2011.

13                              PILLSBURY WINTHROP SHAW PITTMAN LLP
                                REYNOLD L. SIEMENS  #177956
14                              725 South Figueroa Street, Suite 2800
                                Los Angeles, CA 90017-5406
15
                                PILLSBURY WINTHROP SHAW PITTMAN LLP
16                              BRUCE A. ERICSON  #76342
                                GEORGE ALLEN BRANDT  #264935
17                              50 Fremont Street
                                Post Office Box 7880
18                              San Francisco, CA  94120-7880

19

20                              By _____/s/ Bruce A. Ericson_____
                                        Bruce A. Ericson
21
                                Attorneys for Defendants Robert John Burrell, William
22                              Cheney, Gordon Dames, Robert H. Harvey, Jr., James
                                Jordan, Timothy M. Kramer, Robin Lentz, John M. Merlo,
23                              Warren Nakamura, Brian Osberg, David Rhamy and
                                Sharon Updike
24

25

26

27

28