PILLSBURY WINTHROP SHAW PITTMAN LLP
REYNOLD L. SIEMENS  #177956
Email: reynold.siemens@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Telephone:  (213) 488-7100
Facsimile:  (213) 629-1033

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON  #76342
Email: bruce.ericson@pillsburylaw.com
GEORGE ALLEN BRANDT  #264935
Email: allen.brandt@pillsburylaw.com
50 Fremont Street
Post Office Box 7880
San Francisco, CA  94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200

Attorneys for Defendants ROBERT JOHN BURRELL, WILLIAM CHENEY, GORDON DAMES, ROBERT H. HARVEY, JR., JAMES JORDAN, TIMOTHY M. KRAMER, ROBIN LENTZ, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD AS CONSERVATOR FOR WESTERN CORPORATE FEDERAL CREDIT UNION,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT A. SIRAVO, et al.,<br><br>Defendants. | No. CV 10-01597 GW (MANx)<br><br>**REPLY IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (DOC. 116)**<br><br>Honorable George H. Wu<br>Courtroom 10, 312 North Spring Street<br><br>Date:       June 9, 2011<br>Time:       8:30 a.m.<br>Courtroom: Los Angeles, 10 |

1  Defendants WILLIAM CHENEY, GORDON DAMES, ROBERT H.
2  HARVEY, JR., JAMES JORDAN, TIMOTHY M. KRAMER, ROBIN LENTZ,
3  JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID
4  RHAMY and SHARON UPDIKE (the "Directors") and ROBERT JOHN
5  BURRELL ("Burrell") have asked the Court to take judicial notice of certain
6  documents in connection with their pending motions to dismiss.  *See* Request for
7  Judicial Notice (Doc. 123).  All the other Defendants have joined in this request.
8  Plaintiff, National Credit Union Administration Board (the "NCUA"), objects to
9  this Request (Doc. 130, the "Objections" or "Obj.").  The Directors and Burrell
10 now reply to those Objections.

11 **I.   ARGUMENT**
12 **A.   The ALCO books are properly before the Court.**
13 **1.   The Court may properly consider the ALCO books because they are**
14 **       incorporated by reference into the SAC.**
15 **a.   The NCUA misconceives the incorporation by reference doctrine.**
16      The NCUA concedes that, when deciding a motion to dismiss under Rule
17 12(b)(6), a court can consider the pleadings, facts subject to judicial notice, and
18 documents incorporated into the complaint.  Obj. at 4:16-5:1.  The NCUA also
19 concedes that, under the incorporation by reference doctrine, a court may
20 consider documents whose contents are alleged in a complaint, quoted in a
21 complaint, relied on by a complaint or integral to a complaint, or on which the
22 complaint necessarily relies.  Obj. at 6:9-26 (citing, inter alia, *Swartz v. KPMG*
23 *LLP*, 476 F.3d 756, 763 (9th Cir. 2007)).  And the NCUA concedes that the
24 purpose of the incorporation by reference doctrine is to prevent a plaintiff from
25 surviving a motion to dismiss by deliberately omitting important documents or
26 selectively referencing portions of documents on which its claims are based.  *Id.*
27      Despite these concessions, the NCUA argues that the Court should not
28 look at the very documents – books prepared for the members of WesCorp's

1  Asset Liability Committee ("ALCO") – that its latest complaint refers to and
2  quotes from.  *See, e.g.,* Second Amended Complaint, Doc. 116 ("SAC") ¶¶ 138,
3  139, 141, 142.  But the Court can and should review the ALCO books cited by
4  the SAC to ensure that the NCUA does not survive a motion to dismiss by
5  mischaracterizing what the ALCO books say and what they show.
6         The NCUA argues that the "mere mention" of a document in a complaint
7  is insufficient to justify taking judicial notice of it, implying that it has merely
8  mentioned the ALCO books in the SAC.  Obj. at 6:23-26 (quoting *Coto*
9  *Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).  But far from
10 merely mentioning the ALCO books, the SAC quotes directly from the books
11 and (mis)characterizes their content by alleging that the Directors ignored "red
12 flags" in the ALCO books about WesCorp's investments.  *See, e.g.*, SAC ¶¶ 138,
13 139, 141, 142.  By relying upon its characterization of these books, the NCUA
14 has incorporated them into the SAC.  Accordingly, the Court may consider the
15 documents in full and is not bound by the NCUA's interpretation of them.  *In re*
16 *Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405-09 (9th Cir. 1996).
17        The NCUA argues – without citation – that the ALCO quotations are not
18 "central" or "crucial" to the NCUA's claim because the NCUA could have
19 pleaded generally that the Directors were on notice of these facts without
20 referring to the ALCO books.  Obj. at 8:7-14.  But that is not what the NCUA
21 did, and the issue is not whether a hypothetical complaint could have been
22 written without reference to the ALCO books.  When the actual complaint relies
23 on a document, the Court may look at that document.  *See, e.g.*, *Coto*, 593 F.3d at
24 1037; *In re Silicon Graphics Secs. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999);
25 *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998).  In alleging that the
26 Directors knew things that take them outside the Business Judgment Rule, the
27 NCUA uses the ALCO books to establish what the Directors knew.  Thus, the
28 books are central to the SAC's claims against the Directors.

### b. The Directors are not offering the ALCO books for the truth of the matters asserted in the books but to show what kinds of materials the ALCO considered and to correct the NCUA's mischaracterizations of the books – both permissible purposes.

The NCUA also argues that the incorporation by reference doctrine "does not permit attribution to the plaintiff of everything in a document written by a third party or a defendant where the plaintiff has not adopted the entirety of the document." Obj. at 6:27-7:1. This argument reflects a misunderstanding of how the Defendants use the ALCO books in their motions.

Defendants do not offer the ALCO books for the truth of the matters asserted in the books. Rather, Defendants offer the ALCO books for two proper purposes: first, to illustrate *process* – what kinds of information the Officers collected and the ALCO received before making investment decisions; and second, to show that the SAC mischaracterizes what the books say. Both are proper purposes for judicial notice. Neither rests on any assertion or assumption that what the books actually say is true.

*Process and information placed before the ALCO:* Courts routinely grant judicial notice when the issue in not the truth of matters asserted by a document but the fact that the matter was asserted – that is, that certain information was available. In the context of securities litigation, for example, courts take judicial notice of analyst reports, news articles and other analyst documents to consider "whether and when certain information was provided to the market" but not for the truth of the matters asserted in the documents. *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1157-58 (C.D. Cal. 2007) (quoting *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1116 (C.D. Cal. 2003)); *see also In re Century Aluminum Co. Secs. Litig.*, 749 F. Supp. 2d 964, 980 (N.D. Cal. 2010) (granting judicial notice to analyst materials "not for the truth of the matter asserted, but to show disclosure of information."); *Rubke v. Capitol Bancorp*

*Ltd.,* 460 F. Supp. 2d 1124, 1138-39, 1146 (N.D. Cal. 2006), *aff'd,* 551 F.3d 1156 (9th Cir. 2009).  Just as it is appropriate in securities litigation to take judicial notice of information available to the public, so too is it appropriate here to take judicial notice of information available to the Directors.

The truth of the matters asserted in the ALCO books does not matter because Defendants use the ALCO books to show what kinds of information the Officers provided to the Directors before the Directors approved investments. Thus, the Directors point out that the ALCO books contain analyses of economic and market conditions, reviews of each proposed new investment (with individualized concentration limits), a discussion of credit support, risk assessment and risk exposure, a discussion of fluctuations in member balances and loans, a forecast of borrowings, liquidity, capital and capital ratios, a discussion of investment strategies, and supporting documentation.  *See* Memo. in Supp. of Director Defendants' Mot. to Dismiss Plaintiff's Second Amended Complaint, Doc. 122-1 ("Dir. Op. Mem.") at 10:1-19.  The Directors also point out that the ALCO books show that:  WesCorp's Officers reviewed new and existing investments (*id.* at 16:12-15); gave the Directors roughly 100 pages of material to review each month (*id.* at 18:24-26); addressed capital levels (*id.* at 21:8-9); addressed compliance with WesCorp's concentration limits (*id.* at 21:24-22:1); and tracked concentration by originator, by issuer group, by shelf registration, by servicers, by bond issuer and by state (*id.* at 22:3-6).  The Directors do not present these books for the truth of what they say – *e.g.,* that the economic analyses were correct in hindsight, or that concentration limit imposed on a given issuer was wise or accurately stated in the book.[1]  The Directors

---

[1] For example, Dir. Op. Mem. at 21:22-23 notes that the ALCO books say that WesCorp kept its MBS investments well below its concentration limits. Whether or not that statement was true (and the NCUA never alleges that the statements are not true), the fact that the books say this is relevant because it
(continued…)

1  merely point out that the ALCO books show that the Directors received
2  information covered by California Corporations Code section 309(b) and,
3  accordingly, were entitled to rely on that information – whether or not today it
4  can be shown to be true or false.

5      *The NCUA's mischaracterizations:* The NCUA argues that nothing in the
6  ALCO books "disproves or is even relevant to the notice allegations supported
7  by the quotes and references." Obj. at 8:15-16. Not so. The SAC offers very
8  truncated quotations of cautionary remarks from the ALCO books and then
9  mischaracterizes the remarks as being about specific proposed investments, when
10 in fact the remarks were part of a very general review of conditions in the
11 economy and the housing market. SAC ¶¶ 138-39, 141-42. The Directors
12 therefore offered the actual books so that the Court can see how the SAC
13 misrepresents what the books say, and the context in which it is said. Dir. Op.
14 Mem. at 10, 16:5-18, 18:9-20:20, 21-22. This usage is unquestionably proper;
15 the Supreme Court has said so. *See, e.g., Bell Atlantic Corp. v. Twombly,*
16 550 U.S. 544, 555, 569 n.13, 127 S. Ct. 1955, 1972 n.13 (2007) ("the District
17 Court [is] entitled to take notice of the full contents of the published articles
18 referenced in the complaint, from which [ ] truncated quotations [are] drawn.");
19 *accord, In re Bare Escentuals Sec. Litig.,* 745 F. Supp. 2d 1052, 1066-67 (N.D.
20 Cal. 2010). The point, of course, is to prevent a plaintiff from surviving a motion
21 to dismiss by deliberately omitting or mischaracterizing important documents (or
22 portions thereof) on which its claims are based. *Swartz,* 476 F.3d at 763.

---

23 (…continued)
24 shows the information placed in front of the Directors when they were making investment decisions – that MBS investments were well below the
25 concentration limits. Directors are, of course, entitled to rely on information such as this. Cal. Corp. Code § 309(b). For this reason, the Directors' use of
26 the ALCO books is not at all like the uses disallowed in the cases cited by the NCUA. *See* Obj. at 6:27-7:23 (citing cases). In those cases, the party seeking
27 judicial notice was asking the court to assume the truth of matters asserted in
28 documents. Here Defendants do no such thing.

**2. The Court should take judicial notice of the ALCO books whether or not they are referred to the in SAC.**

Even if the ALCO books were not quoted in the SAC, they would still properly be the subject of judicial notice, because they are of unquestioned authenticity and both sides refer to them. Fed. R. Evid. 201(b). Because they can properly be judicially noticed, the Court *should* do so: "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007).

The NCUA does not dispute the authenticity of the ALCO books. Instead, it quarrels with an argument that the Directors do not make by claiming that the Directors seek judicial notice that the ALCO books "demonstrate[] that the Directors were acting within the standard of care." Obj. at 3:26-27. Alternatively, the NCUA argues that courts may take judicial notice of the existence of documents, but "'only for the purpose of determining what statements are contained therein, not to prove the truth of the contents **or any party's assertion of what the contents mean.**'" Obj. at 6:1-8 (quoting *United States v. Southern California Edison Co.*, 300 F. Supp. 2d 964, 975 (E.D. Cal. 2004)) (emphasis supplied by NCUA). From this, the NCUA argues that the Directors are attempting to prove the meaning of ALCO books' content.

Both arguments mischaracterize Defendants' use of the ALCO books. As described above in part I.A.1.b of this Reply, Defendants offer the ALCO books "for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean." *Southern California Edison Co.*, 300 F. Supp. 2d at 975. The NCUA's own authorities hold that this is proper.

**B.     The WesCorp presentations are also incorporated by reference.**

The SAC refers to presentations to the Directors about credit spreads for private label MBS.  SAC ¶ 99.  Because the NCUA relies on the presentations in alleging the Directors received information about investment risks, these presentations are incorporated into the SAC and may properly be considered by the Court.  In response, the NCUA argues merely that it did not identify these documents specifically in the SAC.  Obj. at 7:24-8:2.  It did not question the authenticity of the documents or offer another document.  These documents are incorporated in the SAC and are properly before the Court.  They show *process*: that the Officers presented and the Directors received information on credit spreads and risks.  RJN Ex. 2, at 0113, 0115, 0123, 0125, 0126.

**C.     The NCUA transcript is properly the subject of judicial notice.**

The Court may take judicial notice of information and documents that are not subject to reasonable dispute and that are matters of public record.  Fed. R. Evid. 201(b).  The transcript of a video presentation by the NCUA's Chairman, Debbie Matz, attached to the Directors' Request for Judicial Notice is publicly available on the NCUA's website.  Because the transcript was created by a governmental agency and made publicly available on that agency's website, it is a public record properly the subject of judicial notice.  *Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information on approved vendors posted on websites of public school districts).

The NCUA argues that the NCUA transcript is not properly the subject of judicial notice because it contains "disputed facts."  (What "dispute"?  Is the NCUA picking a fight with its own Chairman?)  The NCUA argues that the Directors "claim … the transcript shows that WesCorp's investments were not risky."  Obj. at 9:11-13.  The NCUA also claims (citing nothing) that the transcripts refer to private label MBS generally and not the types of MBS in which WesCorp was investing.  Obj. at 9:7-18.

601442432v5                                      - 7 -                        REPLY IN SUPPORT OF REQUEST FOR
                                                                              JUDICIAL NOTICE IN SUPPORT OF MOTION
                                                                              TO DISMISS SAC, No. CV 10-01597 GW (MANx)

1     Any fair reading of the transcript explodes these arguments. Chairman
2 Matz expressly addressed WesCorp (of course she did: as the NCUA is pleased
3 to remind us, WesCorp was by far the biggest corporate credit union that the
4 NCUA has seized). She said: "Western Corporate Federal Credit Union
5 (WesCorp) and U.S. Central Federal Credit Union (U.S. Central) had 70 percent
6 and 57 percent, respectively, of their total investments in private label mortgage-
7 backed securities." Request for Judicial Notice, Doc. 123, Ex. 10, at 0761. And
8 then, immediately after identifying WesCorp *by name*, the Chairman defined
9 WesCorp's "private label mortgage-backed securities" ("let's get an
10 understanding of what a mortgage-backed security is."). *Id.* Chairman Matz's
11 presentation is very much about WesCorp and its investments.
12     These are motions to dismiss. The Directors offer the transcript not to
13 "prove" that particular investments actually had low risk, but to demonstrate how
14 hindsight bias infects the SAC. And how better to do this than by using the
15 agency's own words? One month before the NCUA entered this case, its
16 Chairman was making public statements that contradict the litigation positions
17 the NCUA now takes. The SAC says that no reasonable director would have
18 made the investment decisions the Directors made; the NCUA's Chairman said
19 that everybody – the NCUA included – regarded private label MBS as safe and
20 prudent, no riskier than agency MBS. The Chairman also described the
21 historical context of private label MBS, how the NCUA viewed private label
22 MBS (in a word, "safe"), and the unprecedented nature of the credit crisis of
23 2007-2009. The transcript is a succinct statement of the credit crisis from the
24 NCUA's own mouth – or at least the side of its mouth from which it spoke one
25 month before it intervened in this case.
26     The NCUA quibbles that the Directors left out the PowerPoint slideshow
27 that accompanied the transcript. Obj. at 4:6-8. If the NCUA wishes to supply
28 the slideshow, it may do so – but it has not chosen to do so. Or if the Court

1 wishes to see the slideshow, it can access the slideshow, and hear the voice of
2 Chairman Matz giving the speech, via the Internet link provided in the Directors'
3 Request for Judicial Notice (at 3:10-12).  But this quibble aside, the NCUA does
4 not dispute the transcript's authenticity.  Thus, the transcript remains a public
5 record of the statements of the highest official in a government agency – and, as
6 such, properly the subject of judicial notice.  *Daniels-Hall,* 629 F.3d at 998-99.

## II.   CONCLUSION

The Directors and Burrell (and the other Defendants) respectfully request that the Court take judicial notice of the materials attached to the Directors' Request for Judicial Notice and appropriately consider those materials in ruling on Defendants' motions to dismiss.

Dated:  May 26, 2011.

> PILLSBURY WINTHROP SHAW PITTMAN LLP
> REYNOLD L. SIEMENS  #177956
> Email:  reynold.siemens@pillsburylaw.com
> 725 South Figueroa Street, Suite 2800
> Los Angeles, CA 90017-5406
>
> PILLSBURY WINTHROP SHAW PITTMAN LLP
> BRUCE A. ERICSON  #76342
> Email:  bruce.ericson@pillsburylaw.com
> GEORGE ALLEN BRANDT  #264935
> Email:  allen.brandt@pillsburylaw.com
> 50 Fremont Street
> Post Office Box 7880
> San Francisco, CA  94120-7880
>
>
> By      */s/ Bruce A. Ericson*
>            Bruce A. Ericson
>
> Attorneys for Defendants Robert John Burrell, William Cheney, Gordon Dames, Robert H. Harvey, Jr., James Jordan, Timothy M. Kramer, Robin Lentz, John M. Merlo, Warren Nakamura, Brian Osberg, David Rhamy and Sharon Updike