# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 10-1597-GW(MANx) | Date | July 7, 2011 |
| Title | *National Credit Union Administration, et al. v. Robert Siravo, et al.* | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

    Michael H. Bierman
    Michael E. Pappas
    Jeffrey D. Wexler

Attorneys Present for Defendants:

    Bruce A. Ericson
    Seth E. Freilich
    Richard E. Drooyan
    Curtis Carll
    Kenneth M. Fitzgerald

**PROCEEDINGS:** DEFENDANTS ROBERT A. SIRAVO AND THOMAS E. SWEDBERG'S MOTION TO DISMISS COUNTS FIVE AND SIX OF SECOND AMENDED COMPLAINT (filed 04/18/11)

DEFENDANT TODD M. LANE'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (filed 04/18/11)

DEFENDANT OFFICER DEFENDANTS MOTION TO DISMISS THE FIRST CLAIM FOR RELIEF OF THE SECOND AMENDED COMPLAINT (filed 04/18/11)

DEFENDANT DIRECTORS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (filed 04/18/11)

The Court's tentative ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, the above-entitled motions are **taken under submission** and continued to **July 25, 2011 at 8:30 a.m.** Parties will contact the court clerk by no later than July 21, 2011 whether additional argument will be required on said date.

 

                                                                                                                                           :     35

Initials of Preparer   JG

*Nat'l Credit Union Admin. Bd. v. Siravo, et al.*, Case No. CV-10-1597

Tentative Rulings on: (1) Motion to Dismiss the First Claim for Relief of the Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) by Defendants Robert A. Siravo, Robert J. Burrell, Timothy T. Sidley and Todd M. Lane;

(2) Motion to Dismiss Counts Five and Six of Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) by Defendants Robert A. Siravo and Thomas E. Swedberg;

(3) Motion to Dismiss Plaintiff's Second Amended Complaint by Defendant Todd M. Lane; and

(4) Motion to Dismiss Plaintiff's Second Amended Complaint by Defendants William Cheney, Gordon Dames, Robert H. Harvey, Jr., James Jordan, Timothy M. Kramer, Robin Lentz, John M. Merlo, Warren Nakamura, Brian Osberg, David Rhamy and Sharon Updike

As to the four pending motions to dismiss in this matter, the Court incorporates herein and assumes the readers' familiarity with the exposition and analysis already delineated in connection with the earlier motions to dismiss. *See* Docket Nos. 110 and 115.

## Motion 1

There are enough allegations here for the Court to conclude that the NCUA has stated a claim for breach of fiduciary duty, even if some of the allegations (such as the Budget Committee-based allegations), had they been the *only* allegations, likely would not have sufficed. Those allegations that principally support the denial of this motion are the allegations that the officers did not do the necessary analysis – other than in a "perfunctory," "rote" way – for "new" investments and did not establish meaningful concentration limits on most MBS or any concentration limits at all on Option ARM-based MBS. *See* Second Amended Complaint ("SAC") ¶¶ 37-39, 73, 105-19, 124-25, 132, 192(b)-(f), (h), 195(a)-(c). While that conduct perhaps does not rise to the level of wrongdoing present in the cases cited by the moving defendants, those cases dealt with post-pleading-stage challenges and there is little to indicate that the behavior assessed in those cases sets the floor for a fiduciary breach claim.

1

The moving defendants' principal argument with respect to the allegations concerning analysis of "new" investments is that Option ARM MBS were not "new" at all. Yet, they certainly shared different characteristics than more "standard" MBS. Moreover, without analyzing them (and their particular characteristics, for investment purposes), WesCorp could not even be sufficiently sure that they were effectively unlike other MBS. As to the second category of alleged wrongdoing mentioned above, although the moving defendants take the NCUA to task for not alleging what the concentration limits should have been, the NCUA (unlike the moving defendants, allegedly) obviously was never charged with that duty *vis a vis* WesCorp, and there is no reason to believe that it should now be tasked with that responsibility, at least at this stage of this litigation. Finally, that the investments were highly rated does not necessarily cancel out the need for concentration limits, as such limits support investment diversification, a common prudent investing strategy irrespective of relative risk levels. See *id.* ¶ 106.

**<u>Motion 2</u>**

To begin with, the parties dispute whether this motion is even properly brought. On December 20, 2010, the Court issued a tentative ruling (Docket No. 110) *denying* a previous motion attacking the allegations now in question on this motion. However, because the Court required an offer of proof from the NCUA in connection with whether they would be allowed to amend their allegations with respect to those allegations that concerned the director defendants, the Court continued the hearing on all three motions at issue that day until January 31, 2011, without adopting the tentative ruling as its final ruling at that time. The moving defendants on this motion, pointing to the Court's January 31, 2011, ruling (Docket No. 115), assert that the Court then *granted* their previous motion attacking these claims with leave to amend. Indeed, that is what Docket No. 115 indicates. However, as the tentative ruling attached to that order (and adopted as the Court's final ruling on the issue presented) provides, the only substantive question the Court considered that day was whether to grant leave to amend with respect to the first claim for relief, charging the director defendants with breach of their fiduciary duties. The Minute Order stating that all motions were granted with leave to amend was therefore an error, and one which the Court would have addressed had any party brought

2

it to the Court's attention prior to this round of briefing having been prepared and filed. The Court did not intend to change its position, as set forth in Docket No. 110.

Even if it considers the merits of the instant motion, for at least some of the same reasons as set forth in Docket Number 110, there are sufficient allegations to get past the pleading stage here as well. This is true even if the moving defendants are correct that the NCUA has not pled the *concealment* of any *quid pro quo* arrangement between Siravo and Swedberg. If indeed – as alleged – Siravo and Swedberg presented false justifications for the need to adjust the SERPs, *see id.* ¶¶ 42, 157-58, 160, 162-65, 167(a)-(c), 169, 176-77, 223, this may have led to the decision to approve the adjustments, regardless of whether the total amount was revealed to the Board. In addition, the NCUA persuasively argues that, at this stage, it is conceivable that precursors to Exhibit 1 were relied upon by Merlo (and Harvey) – who were charged with reviewing and recommending the proposed SERP changes and who developed the proposal to amend Siravo's SERP in conjunction with Swedberg and Siravo, *see id.* ¶¶ 161, 170-71 – even if the drafts themselves never made it before the Board as a whole. *See id.* ¶¶ 164, 170. Also, it is not so clear that the Court can "contextualize" the PowerPoint presentation in the way the moving defendants seek, at least in connection with a Rule 12(b)(6) motion.

**Motion 3**

This motion (which addresses only the first claim for relief, not the eighth claim for relief) is more of a close call than Motions 1 and 2 (though the NCUA has a somewhat persuasive argument that it should not be considered at all, in light of Lane having been one of the movants on Motion 1). If the Budget Committee-related allegations fall short of stating a claim by themselves (as suggested above in connection with Motion 1), Lane has a relatively minor role in the alleged wrongdoing. Nevertheless, he was a voting member of the ALCO, *see id.* ¶ 60, a committee charged with "overall management direction for WesCorp's investment strategy and the types and level of risk WesCorp's investments exposed it to," including "the review of and recommendations for existing and proposed concentration limits, and the review of and recommendations for investment security purchases and sales." *Id.* ¶ 25; *see also id.* ¶¶ 109-10. He was also a voting member of the ALSC, which "assumed much of the work

3

that was previously required of the ALCO, with the ALCO retaining the responsibility to approve ALSC recommendations." *Id.* ¶¶ 59-60. Any member could argue that he/she was *only one member*, but membership presumably comes with duties. Indeed, the SAC alleges that "[a]s members of the ALCO and the ALSC, [Lane was] responsible for supervising WesCorp's investments and recommending policies and investment strategies and for ensuring the safety and soundness of WesCorp's asset and liability activities, including its investment activities." *Id.* ¶ 60; *see also id.* ¶ 189. If the ALCO failed in such a way as to implicate claims of fiduciary breaches, and Lane was a member of the ALCO, it is not so clear that he can be absolved of any liability by virtue of his relatively minor role within the ALCO. Finally, while Lane raises causation-related arguments, suggesting that he is not tied to any of the causes of any harm to WesCorp, the NCUA is obviously correct that there can be multiple causes of a harm. Moreover, the Court cannot weed out – or even prioritize – those alleged causes at this stage.

Lane presents fairly powerful reasons why he should not be held liable. However, that does not always mean that such a determination can be made at the pleading stage.

**<u>Motion 4</u>**

For the same reasons as before, and under the same analysis as before (see Docket Nos. 110, 115), the business judgment rule protects the director defendants. Given the allegations/admissions made in the successive versions of the pleadings thus far, it is clear that the director defendants did not unreasonably fail to investigate or perform their role. They may have made choices – or not made other choices – with which the NCUA disagrees, but that does not mean they failed in their responsibilities so severely that they lose the protection of the business judgment rule. If the Court has erred in connection with its understanding of how the business judgment rule operates in this context (and, for reasons addressed in detail previously, it does not appear to have so erred), the disappointed parties can seek a ruling in their favor on appeal. Unlike with respect to the officer defendants, because of the effect of the business judgment rule, the question in assessing the director defendants' liability *vis a vis* the Option ARMs and concentration levels is what the director defendants knew at the time that should have dictated to them that they do something more or different from all that they did do and all that they did

review. The NCUA has failed to present sufficient allegations in this regard, so as to fit within the exception to the business judgment rule described in *Lee v. Interinsurance Exchange*, 50 Cal.App.4th 694, 715 (1996). It has had multiple attempts to plead an exception to the business judgment rule and has failed to do so. Dismissal without leave to amend