Michael H. Bierman, State Bar No. 89156
Michael E. Pappas, State Bar No. 130400
Jeffrey D. Wexler, State Bar No. 132256
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 S. Figueroa, Suite 3900
Los Angeles, California 90017
Telephone: 213.892.4992
Facsimile: 213.892.7731
E-Mail: mbierman@luce.com
mpappas@luce.com
jwexler@luce.com

Attorneys for Plaintiff National Credit Union Administration Board
As Liquidating Agent For Western Corporate Federal Credit Union

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD AS LIQUIDATING AGENT FOR WESTERN CORPORATE FEDERAL CREDIT UNION,<br><br>        Plaintiff,<br><br>v.<br><br>ROBERT A. SIRAVO, TODD M. LANE, ROBERT J. BURRELL, THOMAS E. SWEDBERG, TIMOTHY T. SIDLEY, ROBERT H. HARVEY, JR., WILLIAM CHENEY, GORDON DAMES, JAMES P. JORDAN, TIMOTHY KRAMER, ROBIN J. LENTZ, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE,<br><br>        Defendants. | Case No.: CV10-01597 GW (MANx)<br><br>**RESPONSE TO SECOND SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (DOC. 116)**<br><br>Date:        July 25, 2011<br>Time:        8:30 a.m.<br>Courtroom:  10 |

1    The director defendants (the "Directors") have requested that the Court take

2    judicial notice of a securities action filed by the National Credit Union

3    Administration on July 18, 2011 against RBS Securities, Inc. and other defendants.

4    The complaint in that action (the "RBS Complaint") seeks recovery for

5    misrepresentations and omissions in connection with the sale of 29 private label

6    mortgage backed securities ("MBS") to the Western Corporate Federal Credit Union

7    ("WesCorp").  The Directors also request judicial notice of the press release issued

8    about the lawsuit.  They argue that "the NCUA's allegations in the RBS case are

9    admissions that undercut and render implausible…the NCUA's allegations in this

10    case…."  Docket 148 at 2:28-3:2.

11    Plaintiff National Credit Union Administration Board as Liquidating Agent

12    for WesCorp (the "NCUA") does not object to the Court taking judicial notice of the

13    filing of the RBS Complaint or the issuance of the press release.  However, the

14    inferences the Directors seek to draw from these documents in support of their

15    motions to dismiss are not justified by the documents and are not the proper subject

16    of judicial notice.  Moreover, nothing in the RBS Complaint undercuts or otherwise

17    compromises the allegations of the Second Amended Complaint in this case.

18    Rather, that Complaint vividly illustrates both the consequences of the Directors'

19    failure to impose meaningful sector and investment-type concentration limits and

20    the blind eye WesCorp used in its pre-purchase analyses as it acquired heavy

21    concentrations of the riskiest AAA rated securities in order to meet the investment

22    income targets mandated by the Directors.

23    The RBS Complaint alleges misstatements and omissions in the offering

24    documents for 29 of the hundreds of private label MBS purchased by WesCorp from

25    2005 through 2007.  Of these, two (with AA ratings) were based on subprime loans.

26    Seventeen were Option ARM MBS.  The other ten were ALT-A MBS.  The losses

27    on these securities represented less than $750 million of the $6.8 billion in total

28

1

Case No. CV10-01597 GW (MANx)
RESPONSE TO SECOND SUPPLEMENTAL
REQUEST FOR JUDICIAL NOTICE

1  losses and less than $561 million of the $4.7 billion in Option ARM MBS losses

2  recognized by WesCorp as of December 31, 2008.

3  　　　　The RBS Complaint alleges a widespread failure to adhere to underwriting

4  guidelines on the part of a number of originators of loans for private label MBS.

5  That failure is an independent cause of some of WesCorp's losses.  The Directors do

6  not and cannot claim that it is a supervening cause.  In particular, the losses that are

7  the subject of the RBS Complaint would have been prevented had the Directors

8  established meaningful concentration limits by sector and investment type, as they

9  were required to do.  Such concentration limits would have prevented the losses,

10  regardless of whether the offering documents for some of the securities WesCorp

11  purchased contained material misstatements or omissions.

12  　　　　As the Second Amended Complaint alleges, the purpose of concentration

13  limits is to protect against investment losses resulting from factors that the purchaser

14  cannot discover with due diligence.  Second Amended Complaint [Docket 116] at

15  24, ¶ 106.  Sector concentration limits, such as the limits on investment in private

16  label MBS at issue here, are imposed to limit losses from precisely the type of

17  industry-wide events alleged in the RBS Complaint – the undisclosed, widespread

18  abandonment of underwriting guidelines by the originators of the mortgages that

19  formed the basis for WesCorp's private label MBS.

20  　　　　In addition, the allegations of the RBS Complaint highlight WesCorp's lack

21  of diligence in purchasing private label MBS.  That Complaint alleges that "a

22  material percentage of the borrowers whose mortgages comprise the RMBS were all

23  but certain to become delinquent or default shortly after origination."  Docket 148-1

24  at 2, ¶ 6.  It alleges a surge in delinquencies and defaults following the offerings that

25  were far higher than those reported in the offering documents.  *See id.* at 19-27,

26  ¶¶ 61-66.  As a result, the losses actually experienced in the first 12 months after

27  issuance of the securities far exceeded the "expected losses" at issuance.  *See id*. at

28  29-41, ¶¶ 74-86.  Finally, it suggests that loan pool information, including

Case No. CV10-01597 GW (MANx)
RESPONSE TO SECOND SUPPLEMENTAL
REQUEST FOR JUDICIAL NOTICE

1  information about delinquencies, defaults and pool losses, was provided to investors

2  in Trustee's reports. *See id.* at 19, ¶¶ 65.

3      Of the 29 private label MBS at issue in the RBS Complaint, 17 are based on

4  loans from Greenwich Capital Acceptance, Inc ("Greenwich") as depositor. *See id.*

5  at 14-16, Tables 1 and 2. WesCorp purchased the first of these securities at issue in

6  the RBS Complaint, CUSIP 61915RCL8, from MortgageIT Mortgage Loan Trust

7  2006-1 on February 17, 2006. *See id.* at 4. The RBS Complaint alleges that by

8  August 2006, six months after the security had been issued, the loan pool for the

9  security had a delinquency rate of 2.8% as contrasted with the .34% in the

10 prospectus supplement, *see id.* at 26, ¶ 65, and actual gross losses for the pool were

11 more than 2.4 times higher than the expected gross losses, *see id.* at 39, ¶ 84.

12 Notwithstanding this information, the RBS Complaint shows that WesCorp

13 continued to purchase more than $1 billion of MBS based on loans from Greenwich

14 as depositor through June 26, 2007. *See id.* at 3-4, ¶ 8.

15     The remainder of the Greenwich loans that are the subject of the RBS

16 complaint were issued by HarborView entities. *See id.* The RBS Complaint alleges

17 that WesCorp purchased a HarborView 2006-8 MBS, CUSIP 41161GAE3, from

18 Greenwich on August 1, 2006. *See id.* at 3. It alleges that six months later, in

19 February 2007, the loan pool for the security had a delinquency rate of 6.54% as

20 contrasted with the 2.78% in the prospectus supplement, *see id.* at 22, ¶ 65, and that

21 it had actual gross losses of almost $8 million compared to expected gross losses of

22 just over $4.6 million, *see id.* at 22, ¶ 84. Despite this information, WesCorp

23 continued to purchase additional hundreds of millions of dollars of HarborView

24 MBS through June 2007.

25     The allegations of the RBS Complaint are not admissions material to the

26 pending motions to dismiss. They do not establish that liability of the Directors is

27 implausible if the factual allegations of the Second Amended Complaint are proven.

28 They do not establish either that the defendants in this case acted reasonably or that

they violated their respective duties of care.  They certainly do not establish that the Directors acted diligently in mandating that WesCorp's investment portfolio generate such high levels of investment income that it was effectively prevented from prudently diversifying.  Nor do they establish that the Directors were diligent in allowing WesCorp to continue purchasing the billions of dollars of relatively risky AAA rated private label MBS required to meet the budget without imposing basic meaningful sector concentration limits or investment type concentration limits.


DATED:  July 22, 2011          LUCE, FORWARD, HAMILTON & SCRIPPS LLP
                               MICHAEL H. BIERMAN
                               MICHAEL E. PAPPAS
                               JEFFREY D. WEXLER


                               By:   /s/ Michael H. Bierman
                                     Michael H. Bierman
                                     Attorneys For The National Credit Union
                                     Administration Board As Liquidating Agent
                                     For Western Corporate Federal Union