1   RICHARD E. DROOYAN (State Bar No. 065672)
    Richard.Drooyan@mto.com
2   LAURA SMOLOWE (State Bar No. 263012)
    Laura.Smolowe@mto.com
3   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue
4   Thirty-Fifth Floor
    Los Angeles, CA 90071-1560
5   Telephone: (213) 683-9100
    Facsimile: (213) 687-3702
6
    Attorneys for Defendants
7   Robert A. Siravo and Thomas E. Swedberg

COPY

FILED
CLERK, U.S. DISTRICT COURT

AUG 15 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10  NATIONAL CREDIT UNION            CASE NO. CV10-01597 GW
    ADMINISTRATION BOARD AS          (MANx)
11  LIQUIDATING AGENT FOR WESTERN
    CORPORATE FEDERAL CREDIT UNION,  **ANSWER AND**
12                                   **COUNTERCLAIM OF**
            Plaintiff,               **DEFENDANTS ROBERT A.**
13                                   **SIRAVO AND THOMAS E.**
         vs.                         **SWEDBERG TO SECOND**
14                                   **AMENDED COMPLAINT**
    ROBERT A. SIRAVO, TODD M. LANE,
15  ROBERT J. BURRELL, THOMAS E.
    SWEDBERG, and TIMOTHY T. SIDLEY,  **DEMAND FOR JURY TRIAL**
16
            Defendants.
17

18  ROBERT A. SIRAVO and THOMAS E.
    SWEDBERG,
19
            Counterclaimants,
20
         vs.
21
    NATIONAL CREDIT UNION
22  ADMINISTRATION BOARD AS
    LIQUIDATING AGENT FOR WESTERN
23  CORPORATE FEDERAL CREDIT UNION,

24          Counterclaim Defendant.

25

26

27

28

Defendants Robert A. Siravo ("Siravo") and Thomas E. Swedberg ("Swedberg") hereby answer the Second Amended Complaint of Plaintiff National Credit Union Administration Board ("NCUA") as Liquidating Agent of Western Corporate Federal Credit Union ("WesCorp") as follows:

### JURISDICTION AND VENUE

1.    Siravo and Swedberg admit that WesCorp was a credit union with its corporate offices located in San Dimas, California, that WesCorp was placed into conservatorship by the NCUA Board on March 19, 2009, and that WesCorp was placed into involuntary liquidation on October 1, 2010.  The remainder of Paragraph 1 contains legal conclusions, to which no response is required.

2.    Paragraph 2 contains legal conclusions, to which no response is required.  To the extent a response is required, Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 2 and on that basis deny those allegations.

3.    Paragraph 3 contains legal conclusions, to which no response is required, but Siravo and Swedberg admit that the court has subject matter jurisdiction.

4.    Paragraph 4 contains legal conclusions, to which no response is required, but Siravo and Swedberg admit that they are residents of California and are subject to the personal jurisdiction of the court.

5.    Paragraph 5 contains legal conclusions, to which no response is required, but Siravo and Swedberg admit that venue is proper in this district.

### PARTIES

6.    Siravo and Swedberg admit that the NCUA is the liquidating agent for WesCorp.

7.    Siravo and Swedberg admit that Siravo was the President and CEO of WesCorp from on or about May 1, 2002 to or about March 20, 2009, and that he is a resident of California.

- 2 -

8.     Siravo and Swedberg admit that Todd M. Lane ("Lane") served as Chief Financial Officer of WesCorp. Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 8 and on that basis deny those allegations.

9.     Siravo and Swedberg admit that Robert J. Burrell ("Burrell") served as Executive Vice President and as the Chief Investment Officer for WesCorp. Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 9 and on that basis deny those allegations.

10.    Siravo and Swedberg admit that Timothy T. Sidley ("Sidley") served as Vice President for Risk Assessment and as Chief Risk Officer in charge of investment credit services during his employment at WesCorp. Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 10 and on that basis deny those allegations.

11.    Siravo and Swedberg admit that Swedberg served as WesCorp's Director of Human Resources from October 1998 until sometime in 1999; he became the Vice President of Human Resources in 1999 until approximately April or May 2007; he served as Vice President of Strategic Planning and Organizational Development from approximately April or May 2007 to December 31, 2008; he retired from WesCorp on July 2009, that he worked as an employee on a consultant basis for WesCorp from January 1, 2009 until July 2009; and he is a resident of California.

12.    Siravo and Swedberg admit that Robert H. Harvey, Jr. ("Harvey") was a director and the Chairman of the WesCorp board of directors, and that he is a resident of the state of Washington. Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 12 and on that basis deny those allegations.

13. Siravo and Swedberg admits that James P. Jordan ("Jordan") was a member of the WesCorp board of directors and was the Vice Chairman of the WesCorp board. Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 13 and on that basis deny those allegations.

14. Siravo and Swedberg admit that Timothy Kramer ("Kramer") was a member of the WesCorp board of directors and served as the Secretary and Treasurer of the WesCorp board. Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 14 and on that basis deny those allegations.

15. Siravo and Swedberg admit that Robin J. Lentz ("Lentz") was a member of the WesCorp board of directors. Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 15 and on that basis deny those allegations.

16. Siravo and Swedberg admit that John M. Merlo ("Merlo") was a member of the WesCorp board of directors and that he is a resident of California. Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 16 and on that basis deny those allegations.

17. Siravo and Swedberg admit that Gordon Dames ("Dames") was a member of the WesCorp board of directors. Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 17 and on that basis deny those allegations.

18. Siravo and Swedberg admit that William Cheney ("Cheney") was a member of the WesCorp board of directors. Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 18 and on that basis deny those allegations.

19.   Siravo and Swedberg admit that Warren Nakamura ("Nakamura") was a member of the WesCorp board of directors.  Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 19 and on that basis deny those allegations.

20.   Siravo and Swedberg admit that Brian Osberg ("Osberg") was a member of the WesCorp board of directors.  Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 20 and on that basis deny those allegations.

21.   Siravo and Swedberg admit that David Rhamy ("Rhamy") was a member of the WesCorp board of directors.  Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 21 and on that basis deny those allegations.

22.   Siravo and Swedberg admit that Sharon Updike ("Updike") was a member of the WesCorp board of directors.  Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 22 and on that basis deny those allegations.

23.   Siravo and Swedberg admit the allegations of Paragraph 23.

24.   Siravo[1] admits that WesCorp's Asset and Liability Committee ("ALCO) had oversight responsibility for WesCorp's asset liability management process, including investments.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 24 and on that basis denies those allegations, except to the extent they reference the contents of WesCorp's corporate policies, which speak for themselves.  Siravo refers to

---

[1] Paragraphs 24 through 153 are not incorporated in either the Fifth Claim or the Sixth Claim for Relief, which are the only claims asserted against Swedberg in the Second Amended Complaint. Accordingly, it is not necessary for Swedberg to respond to Paragraphs 24 through 153, except for Paragraph 42 and 43, which specifically include allegations against Swedberg. To the extent that a response is required, Swedberg incorporates and adopts Siravo's responses in this Answer to the allegations set forth in Paragraph 24 through 41 and 44 through 153 of the Second Amended Complaint..

WesCorp's corporate policies for their contents and denies any characterization inconsistent with their terms.

25.    Siravo admits that the ALCO had responsibilities for WesCorp's investment strategies, including investments, policies and strategies, concentration limits, and the purchase and sale of securities, and directing the types and level of risk.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 25 and on that basis denies those allegations.

26.    Siravo admits that board members attended ALCO meetings and received ALCO materials along with monthly board packages.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 26 and on that basis denies those allegations.

27.    Siravo admits that WesCorp's budget was reviewed by the budget committee of the Board of Directors, which recommended it before it was approved by the Board.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 27 and on that basis denies those allegations.

28.    Paragraph 28 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

29.    Paragraph 29 contains legal conclusions, to which no response is required.

### SUMMARY OF CLAIMS

30.    Siravo admits that WesCorp was a non-profit corporate credit union, that its members were credit unions, and that it provided its members with banking and investment services for their funds.  The remaining allegations of Paragraph 30 contain legal conclusions, to which no response is required.  To the extent the remaining allegations require a response, they are denied.

31.     Siravo admits that WesCorp was a leading corporate federal credit union and provided its members with banking and investment services for their funds.  Siravo also admits that he became President and CEO of WesCorp in 2002, and that, with the knowledge and consent of the NCUA, WesCorp thereafter grew in size.  Siravo denies the remaining allegations of Paragraph 31.

32.     Siravo admits that WesCorp invested its members' funds and borrowed funds in securities, including private label mortgage backed securities ("MBS") that were not guaranteed by the United States or its agencies.  Siravo denies the remaining allegations of Paragraph 32.

33.     Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33 and on that basis denies them.

34.     Siravo admits that WesCorp used income from its investments to pay operating expenses.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 34 and on that basis denies those allegations.

35.     Siravo denies the allegations of Paragraph 35.

36.     Siravo admits that WesCorp invested in MBS, including MBS based on reduced documentation Option ARM loans.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 36 and on that basis denies those allegations.

37.     Siravo denies the allegations of Paragraph 37.

38.     Siravo admits that WesCorp invested in MBS, including MBS based on reduced documentation Option ARM loans.  Siravo lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 38 and on that basis denies those allegations.

39.     Siravo admits that WesCorp purchased AAA rated and AA rated MBS that were underwritten by the world's leading investment banks and denies the remaining allegations of Paragraph 39.

40.     Siravo lacks knowledge or information to form a belief as to the truth of the allegations of Paragraph 39, and on that basis denies them, except to the extent they reference the contents of WesCorp's 2009 financial statements, which speak for themselves.  Siravo refers to WesCorp's 2009 financial statements for their contents and denies any characterization inconsistent with their terms.

41.     Siravo denies that WesCorp's officers failed to impose prudent concentration limits.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 41, and on that basis denies those allegations.

42.     Siravo and Swedberg admit that their Supplemental Executive Retention Plans ("SERPs") for Siravo and other Executive participants were amended in 2007 and 2008, which increased the amount that they received upon their retirement from WesCorp.  Siravo and Swedberg also admit that WesCorp entered into an agreement with Lane for the payments in 2006, 2007, and 2008 in lieu of any payments under his SERP.  Siravo and Swedberg deny that they engineered amendments to the SERPs or falsely characterized the amendments, and deny that there were no *bona fide* business reasons for the payments to Lane. Siravo and Swedberg lack knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 42, and on that basis deny those allegations.

43.     Siravo and Swedberg deny the allegations of Paragraph 43.

## FACTUAL ALLEGATIONS

### The Federal Credit Union System

44.     Siravo admits that the federal credit union system is a three-tier system consisting of (1) one wholesale corporate credit union (U.S. Central Federal Credit Union); (2) retail corporate credit unions; and (3) "natural person" credit unions.  Siravo further admits that the wholesale corporate credit union provides services to the retail corporate credit unions, while the retail corporate

credit unions provide services to both federally-chartered and state-chartered natural person credit unions. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 44 and on that basis those allegations.

45.    Siravo admits that WesCorp was a retail corporate credit union. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 45 and on that basis denies those allegations.

46.    Siravo admits that corporate credit unions are owned by their members and that in the case of retail corporate credit unions, the members are primarily natural person credit unions. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 46 and on that basis denies those allegations.

47.    Siravo admits that retail corporate credit unions provide services and support to their natural person credit union members. Siravo admits that retail corporate credit unions offer their natural person credit unions banking and investment services for their funds, and that these services may include settlement of transactions such as checks, ATM and credit card transactions and wire transfers, and that they allow their members to borrow funds. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 47 and on that basis denies those allegations.

48.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48 and on that basis denies them, except to the extent they reference the contents of WesCorp's website, which speaks for itself. Siravo refers to WesCorp's website for its contents and denies any characterization inconsistent with its terms.

49.     Siravo admits that WesCorp had by-laws, which speak for themselves.  Siravo refers to WesCorp's bylaws for their contents and denies any characterization inconsistent with their terms.

50.     Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50 and on that basis denies them.

51.     Siravo admits that WesCorp provided services to its members, and that Chief Executive Officers of credit unions were members of its Board of Directors.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 51 and on that basis denies those allegations.

### The Officer Defendants' Responsibilities and Duties

52.     Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 52 and on that basis denies those allegations, except to the extent the allegations reference the contents of WesCorp's by-laws and corporate policies, which speak for themselves.  Siravo refers to WesCorp's by-laws and corporate policies for their contents and denies any characterization inconsistent with their terms.

53.     Siravo admits that he served as President and CEO of WesCorp, and that he had responsibilities for overseeing WesCorp's operations and investments.  Siravo denies the remaining allegations of Paragraph 53.

54.     Siravo admits that he served as President and CEO of WesCorp.  The remaining allegations of Paragraph 54 contain legal conclusions, to which no response is required.  To the extent that a response is required, they are denied.

55.     Siravo admits that Lane served as Chief Financial Officer of WesCorp, had general supervisory responsibilities, and had responsibilities for WesCorp's financial statements, financial operations, and budgets.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 55 and on that basis denies those allegations.

56.     Siravo admits that Burrell admits that he served as Chief Investment Officer for WesCorp and had responsibilities for WesCorp's investments and for supervising WesCorp's Investment Department.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 56 and on that basis denies those allegations.

57.     Siravo admits that Siravo worked with Lane and Burrell, among others, to manage WesCorp and implement its business strategies, including its investment strategies.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 56 and on that basis denies those allegations.

58.     Siravo admits that Sidley served as Vice President of Risk Assessment, and that the Director of Investment Credit Services reported to Sidley.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 58 and on that basis denies those allegations.

59.     Siravo admits that WesCorp created an Asset/Liability Staff Committee ("ALSC") and that the ALSC had responsibilities for reviewing investment security purchases and investment strategies.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 59 and on that basis denies those allegations.

60.     Siravo admits that Siravo, Burrell and Lane served as voting members of ALCO and ALSC, and that Sidley served as a non-voting member of ALSC and a staff liaison to ALCO.  Siravo denies the remaining allegations of Paragraph 60.

### WesCorp's Era of Growth

61.     Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 61 and on that basis denies them.

62.     Siravo admits that he became President and CEO of WesCorp in 2002 and that, with the knowledge and consent of the NCUA, WesCorp thereafter grew

in size.  Siravo lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 62 and on that basis denies those allegations.

63.    Siravo admits that, with the knowledge and consent of the NCUA, WesCorp grew in size after 2002.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 63 and on that basis denies them.

64.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 64 and on that basis denies them.

65.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 65 and on that basis denies them.

66.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 66 and on that basis denies them.

67.    Siravo admits that WesCorp invested in MBS, including private label MBS that had higher yields than MBS issued by government agencies.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 67 and on that basis denies those allegations.

68.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 68 and on that basis denies them, except to the extent the allegations reference the contents of WesCorp's corporate policies, which speak for themselves.  Siravo refers to WesCorp's corporate policies for their contents and denies any characterization inconsistent with their terms.

69.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 69 and on that basis denies them.

70.    Siravo admits that his compensation and the compensation of other WesCorp executives increased from 2002 to 2008, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 70 and on that basis denies those allegations.

**WesCorp's Private Label MBS Investments**

71.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 71 and on that basis denies them.

72.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 72 and on that basis denies them.

73.    Siravo admits that WesCorp invested in AAA rated and AA rated private label MBS. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 73 and on that basis denies those allegations, except to the extent the allegations reference the contents of the NCUA's regulations and WesCorp's investment policies, which speak for themselves. Siravo refers to the NCUA's regulations and WesCorp's investment policies for their contents and denies any characterization inconsistent with their terms.

74.    Siravo admits that between 2004 and 2007 WesCorp invested in AAA rated MBS, including Collateralized Debt Obligations ("CDOs") and Option ARM MBS. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 74 and on that basis denies those allegations.

75.    Siravo admits that MBS are shares in a pool of mortgages and CDOs are shares in a pool of MBS. Siravo also admits that there are risks associated with investments in MBS and CDOs. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 75 and on that basis denies those allegations

76.    Siravo admits that WesCorp purchased CDOs. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 76 and on that basis denies those allegations.

77.    Siravo admits that Option ARM MBS are investments in Option ARM mortgages, and that Option ARM mortgages have payment terms, that

monthly payments can "reset," and they can have a negative amortization. Siravo lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 77 and on that basis denies those allegations.

78.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 78 and on that basis denies them.

79.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 79 and on that basis denies them.

80.   Siravo admits that WesCorp invested in Option ARM MBS, including Option ARM MBS that included reduced documentation Option ARM loans. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 80 and on that basis denies those allegations.

81.   Siravo admits that MBS investments were sold in tranches and that WesCorp invested in some AAA rated and AA rated MBS that paid a higher yield than other AAA rated and AA rated MBS. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 81 and on that basis denies those allegations.

82.   Siravo admits that WesCorp invested in AA rated MBS as well as AAA rated MBS. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 82 and on that basis denies those allegations.

83.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 83 and on that basis denies them.

84.   Siravo admits that WesCorp invested in AAA rated Option ARM MBS. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 84 and on that basis denies those allegations.

## WesCorp's Budgets

85.   Siravo admits that WesCorp's management proposed budgets, that budgets were considered and recommended by the Budget Committee of the Board of Directors, that budgets were adopted by WesCorp's Board of Directors, and that he worked on budgets with Lane and Burrell.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 85 and on that basis denies those allegations.

86.   Paragraph 86 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

87.   Paragraph 87 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 87 and on that basis denies them.

88.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 88 and on that basis denies them, except to the extent the allegations reference the contents of WesCorp's budgets and executive summaries, which speak for themselves.  Siravo refers to WesCorp's budgets and the executive summaries for their contents and denies any characterization inconsistent with their terms.

89.   Siravo denies that Siravo, Burrell and Lane dictated the level of risk in WesCorp's investment portfolio.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 89 and on that basis denies those allegations.

90.   Siravo admits that when he was WesCorp's CEO, WesCorp's management proposed budgets that were considered and recommended by the Budget Committee and adopted by WesCorp's Board of Directors, and that he worked on the budgets with Lane and Burrell.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations

of Paragraph 90 and on that basis denies those allegations, except to the extent the allegations reference the contents of WesCorp's budgets, which speak for themselves.  Siravo refers to WesCorp's budgets for their contents and denies any characterization inconsistent with their terms.

91.    Siravo denies the allegations of Paragraph 91.

92.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 92 and on that basis denies them.

93.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 93 and on that basis denies them.

94.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 94, and on that basis denies them, except to the extent they reference the contents of WesCorp's budgets, which speak for themselves.  Siravo refers to WesCorp's budgets for their contents and denies any characterization inconsistent with their terms.

95.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 95, and on that basis denies them, except to the extent they reference materials presented to the Budget Committee, which speak for themselves.  Siravo refers to these materials for their contents and denies any characterization inconsistent with their terms.

96.    Siravo admits that directors attended ALCO meetings.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 96 and on that basis denies them.

97.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 97 and on that basis denies them, except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves.  Siravo refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with their terms.

98.     Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 98 and on that basis denies them.

99.     Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 99 and on that basis denies them.

100.    Paragraph 100 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

101.    Paragraph 101 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

102.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 102 and on that basis denies them.

103.    Siravo denies the allegations of Paragraph 103.

104.    Siravo denies the allegations of Paragraph 104.

### MBS Concentration Risk

105.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 105 and on that basis denies them, except to the extent they reference the contents of the NCUA's regulations, which speak for themselves.  Siravo refers to the NCUA's regulations for their contents and denies any characterization inconsistent with their terms.

106.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 106 and on that basis denies them.

107.    Siravo admits that WesCorp provided services to its members and invested their funds.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 107 and on that basis denies those allegations.

108.    Siravo admits that WesCorp's Board of Directors was responsible for setting investment policies.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 108 and on that basis denies those allegations, except to the extent they reference the contents

of WesCorp's corporate and investment policies, which speak for themselves.
Siravo refers to WesCorp's corporate and investment policies for their contents
and denies any characterization inconsistent with their terms.

109.   Siravo admits that the ALCO had responsibilities for reviewing
WesCorp's investments and investment policies. Siravo lacks knowledge or
information sufficient to form a belief as to the truth of the remaining allegations
of Paragraph 109 and on that basis denies those allegations.

110.   Siravo admits that Sidley headed WesCorp's Risk Assessment
Department and Burrell headed the Investment Department. Paragraph 110
contains legal conclusions, to which no response is required. To the extent the
allegations require a response, Siravo lacks knowledge or information sufficient to
form a belief as to the truth of the remaining allegations of Paragraph 110 and on
that basis denies those allegations.

111.   Siravo admits that WesCorp's Board of Directors adopted policies
regarding its investment securities, which corporate policies speak for themselves,
and that from time to time it amended its policies. Siravo refers to WesCorp's
corporate policies for their contents and denies any characterization inconsistent
with their terms. Siravo lacks knowledge or information sufficient to form a belief
as to the truth of the remaining allegations of Paragraph 111 and on that basis
denies those allegations.

112.   Siravo lacks knowledge or information sufficient to form a belief as
to the truth of the allegations of Paragraph 112 and on that basis denies them.

113.   Siravo lacks knowledge or information sufficient to form a belief as
to the truth of the allegations of Paragraph 113 and on that basis denies them.

114.   Siravo admits that WesCorp invested in AAA rated private label
MBS. Siravo lacks knowledge or information sufficient to form a belief as to the
truth of the remaining allegations of Paragraph 114 and on that basis denies those
allegations.

**The Risks of Option ARM MBS**

115.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 115 and on that basis denies those allegations, except to the extent they reference the contents of WesCorp's corporate policies, which speak for themselves.  Siravo refers to WesCorp's corporate policies for their contents and denies any characterization inconsistent with their terms.

116.   Siravo admits that WesCorp purchased Option ARM MBS, but denies that they were a new security type.  Siravo lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 116 and on that basis denies those allegations.

117.   Siravo admits that WesCorp purchased Option ARM MBS with the approval of WesCorp's Board of Directors and the ALCO, but denies that they were a new security type.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 117 and on that basis denies those allegations.

118.   Siravo admits that, with the approval of WesCorp's Board of Directors and the ALCO, WesCorp purchased Option ARM MBS, but denies that they were a new security type.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 118 and on that basis denies those allegations.

119.   Siravo denies Option ARM MBS were a new type of security.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 119 and on that basis denies those allegations.

120.   Siravo lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 120 and on that basis denies them.

121.   Siravo lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 121 and on that basis denies them.

122.   Siravo lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 122 and on that basis denies them.

123.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 123 and on that basis denies them.

124.   Paragraph 124 contains legal conclusions, to which no response is required. To the extent the allegations require a response, they are denied. Siravo denies the remaining allegations of Paragraph 124.

125.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 125 and on that basis denies them.

126.   Siravo lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 126 and on that basis denies them.

127.   Paragraph 127 contains legal conclusions, to which no response is required. To the extent the allegations require a response, they are denied.

128.   Siravo admits that WesCorp purchased AAA rated and AA rated MBS, but denies that the Officer Defendants did not monitor concentrations of Option ARM MBS. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 128 and on that basis denies those allegations.

129.   Siravo denies that WesCorp was unaware of the concentrations of MBS. Siravo lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 129 and on that basis denies those allegations.

130.   Siravo denies that WesCorp was unaware of the concentrations of MBS. Siravo lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 130 and on that basis denies those allegations.

131.   Siravo admits that the Officer Defendants and Directors were aware of the risks of MBS investments.   Siravo lacks information or knowledge

1    sufficient to form a belief as to the truth of the remaining allegations of Paragraph

2    131 and on that basis denies them.

3          132.   Siravo admits that Burrell served as the officer in charge of the

4    Investment Department and the Chief Investment Officer and that Sidley served as

5    the officer in charge of the Investment Credit Services Department and as the

6    Chief Risk Officer.  Paragraph 132 contains legal conclusions, to which no

7    response is required.  To the extent these allegations require a response, they are

8    denied. Siravo lacks knowledge or information sufficient to form a belief as to the

9    truth of the remaining allegations of Paragraph 132 and on that basis denies those

10    allegations.

11          133.   Siravo denies the allegations of Paragraph 133.

12          **The Risks in WesCorp's Portfolio**

13          134.   Siravo lacks information or knowledge sufficient to form a belief as

14    to the truth of the allegations of Paragraph 134 and on that basis denies them.

15          135.   Siravo admits that Officer Defendants and Directors attended ALCO

16    meetings at which there were presentations about the economy, investments and

17    WesCorp's investment strategy.  Siravo lacks information or knowledge sufficient

18    to form a belief as to the truth of the remaining allegations of Paragraph 135 and

19    on that basis denies those allegations.

20          136.   Siravo lacks information or knowledge sufficient to form a belief as

21    to the truth of the allegations of Paragraph 136 and on that basis denies them.

22          137.   Siravo admits that Officer Defendants and Directors attended ALCO

23    meetings at which there were presentations on interest rates and the housing

24    market.  Siravo lacks information or knowledge sufficient to form a belief as to the

25    truth of the remaining allegations of Paragraph 137 and on that basis denies those

26    allegations.

27          138.   Siravo lacks knowledge or information sufficient to form a belief as

28    to the truth of the allegations in Paragraph 138 and on that basis denies them,

except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves. Siravo refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with its terms.

139. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139 and on that basis denies them, except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves. Siravo refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with its terms.

140. Siravo lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 140 and on that basis denies them.

141. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141 and on that basis denies them, except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves. Siravo refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with its terms.

142. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142 and on that basis denies them, except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves. Siravo refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with its terms.

143. Siravo admits that WesCorp stopped purchasing AA rated MBS, and that it continued to purchase AAA rated MBS in 2007. Siravo lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 143 and on that basis denies those allegations.

144. Siravo admits that WesCorp continued to purchase AAA rated Option ARM MBS in 2007 and that it stopped purchasing private label MBS in 2007. Paragraph 144 contains legal conclusions, to which no response is required. To

1   the extent these allegations require a response, they are denied.  Siravo denies the

2   remaining allegations of Paragraph 144.

3       145.   Paragraph 145 contains legal conclusions, to which no response is

4   required.  To the extent the allegations require a response, they are denied.

5       146.   Siravo admits that WesCorp continued to purchase AAA rated Option

6   ARM MBS in 2007 and that it stopped purchasing private label MBS in 2007.

7   Paragraph 146 contains legal conclusions, to which no response is required.  To

8   the extent these allegations require a response, they are denied.  Siravo lacks

9   information or knowledge sufficient to form a belief as to the truth of the

10  remaining allegations of Paragraph 146 and on that basis denies those allegations.

11      147.   Siravo lacks information or knowledge sufficient to form a belief as

12  to the truth of the allegations of Paragraph 147 and on that basis denies them,

13  except to the extent they reference the contents of the NCUA's regulations, which

14  speak for themselves.  Siravo refers to the NCUA's regulations for their contents

15  and denies any characterization inconsistent with their terms.  Paragraph 147 also

16  contains legal conclusions, to which no response is required.  To the extent these

17  allegations require a response, they are denied.

18                                **WesCorp's Collapse**

19      148.   Siravo lacks information or knowledge sufficient to form a belief as

20  to the truth of the allegations of Paragraph 148 and on that basis denies them.

21      149.   Siravo denies that the Officer Defendants or the Director Defendants

22  caused WesCorp's collapse.  Siravo lacks knowledge or information sufficient to

23  form a belief as to the truth of the remaining allegations of Paragraph 149 and on

24  that basis denies those allegations.

25      150.   Siravo lacks information or knowledge sufficient to form a belief as

26  to the truth of the allegations of Paragraph 150 and on that basis denies them.

27      151.   Siravo lacks information or knowledge sufficient to form a belief as

28  to the truth of the allegations of Paragraph 151 and on that basis denies them.

152.   Siravo lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 152 and on that basis denies them.

153.   Siravo lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 153 and on that basis denies them.

**The SERP Payments**

154.   Siravo and Swedberg admit that in November 2001, WesCorp's Board of Directors authorized a Supplemental Retirement Plan (the "Executive SERP") for certain WesCorp executives, and that Swedberg was a participant in the plan.

155.   Siravo and Swedberg admit that the Executive SERP was part of an Executive Retention Program "to provide certain benefits" and "a measure of peace of mind for certain executives of WesCorp," and that the Executive SERP provided participants with a lump sum payment at their expected retirement dates if they had been employed at WesCorp for at least 10 years and had been a participant in the plan for at least 5 years at the time of their retirement from WesCorp.  Siravo and Swedberg deny the remaining allegations of Paragraph 155.

156.   Siravo and Swedberg admit that, effective May 1, 2002, WesCorp agreed to provide benefits to Siravo under a CEO/President Retention Program, and that these benefits included a lump sum payment under a Supplemental Retirement Plan (the "CEO SERP") that was payable on May 1, 2008 (the "President/CEO Retirement Date"), provided that Siravo was continuously employed by WesCorp until that date.  Siravo and Swedberg deny the remaining allegations of Paragraph 156.

157.   Siravo and Swedberg admit that the Executive SERP and CEO SERP both provided for lump sum benefits determined by a formula where "C is Final Compensation as defined herein;" "Final Compensation" is defined as "monthly base salary paid most recently while [the President/CEO or the Executive] is a

1    participant in the Program, multiplied by twelve (12);" and the formula included a

2    40% gross-up for taxes.

3        158.   Siravo and Swedberg admit that in the fall of 2007, along with

4    Directors Robert Harvey and John Merlo, they noticed that the lump sum formula

5    in Siravo's CEO SERP did not account for changes in the nature of the

6    compensation received by WesCorp Executives since the Executive SERP was

7    adopted in 2001, and that the percentage of the gross-up for taxes did not account

8    for all of the taxes owed on the lump sum payments.  Siravo and Swedberg also

9    admit that, with the concurrence of Harvey and Merlo, they proposed amendments

10    to the CEO SERP to (1) change the definition of "Final Compensation" to include

11    all compensation received by Siravo and (2) increase the tax gross-up to 67%.

12    Siravo and Swedberg deny the remaining allegations of Paragraph 158.

13        159.   Siravo and Swedberg admit that Swedberg prepared materials that

14    explained the proposed amendments to the CEO SERP; that he communicated

15    with members of WesCorp's Board of Directors regarding the proposed

16    amendments; and that he was no longer the Director of Human Resources for

17    WesCorp, but retained responsibility for Executive Compensation matters with the

18    concurrence of the new Vice President of Human Resources when he

19    communicated with the directors regarding the amendments.  Siravo and

20    Swedberg the remaining allegations of Paragraph 159.

21        160.   Siravo and Swedberg admit that in a memorandum dated November

22    2, 2007, Swedberg advised Robert Harvey, the Chairman of WesCorp's Board of

23    Directors, that "[i]n preparing for the May 2008 SERP distribution to Bob Siravo,

24    we noticed that there were two administrative errors in the current 457(f) plan

25    document that are not consistent with the intent of the program when it was

26    initially developed."  Siravo and Swedberg deny the remaining allegations of

27    Paragraph 160.

28

161.   Siravo and Swedberg admit that Swedberg, along with Siravo and Chairman of the Board Harvey and Board member Merlo, developed a proposal to amend the CEO SERP.  Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 161 and on that basis deny those allegations.

162.   Siravo and Swedberg admit that on or about October 19, 2007, Swedberg prepared a draft of a PowerPoint presentation for WesCorp's Board of Directors, which he sent to Siravo and which speaks for itself.  Siravo and Swedberg refer to the PowerPoint for its contents and deny any characterization inconsistent with its terms.

163.   Siravo and Swedberg deny the allegations of Paragraph 163.

164.   Siravo and Swedberg admit that Swedberg discussed proposed amendments to the CEO SERP with John Merlo, who suggested changing the presentation from a PowerPoint to a memorandum.  Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 164 and on that basis deny those allegations.

165.   Siravo and Swedberg deny the allegations of Paragraph 165.

166.   Siravo and Swedberg admit that in October 2007, Swedberg discussed proposed amendments to the CEO SERP with Robert Harvey and John Merlo, and that Exhibit 1 to the Second Amended Complaint is a true and correct copy of a memorandum dated November 2, 2007 that Swedberg prepared and sent to Harvey, which memorandum speaks for itself.  Siravo and Swedberg refer to the memorandum for its contents and deny any characterization inconsistent with its terms.  Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 166 and on that basis deny those allegations.

167.   Siravo and Swedberg deny the allegations of Paragraph 167.

168.   Siravo and Swedberg deny the allegations of Paragraph 168.

169.   Siravo and Swedberg admit that Siravo's employment agreement provided for the possibility of a bonus; that the amount of Siravo's lump sum payment under the CEO SERP, effective May 1, 2002, was based upon the Siravo's "Final Compensation," which was defined as the "monthly base salary paid most recently while the President/CEO is a participant in the Program, multiplied by twelve (12);" that the gross-up percentage in that CEO SERP was the same as the percentage in the original Executive SERP.  Siravo and Swedberg deny the remaining allegations of Paragraph 169.

170.   Siravo and Swedberg admit that Chairman Harvey approved the proposed amendments to the CEO SERP and submitted it to other members of the WesCorp board's executive committee, who also approved it.  Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 170 and on that basis deny those allegations.

171.   Siravo and Swedberg admit that WesCorp's Board of Directors approved amendments to the CEO SERP.  Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 171 and on that basis deny those allegations.

172.   Siravo and Swedberg admit that WesCorp's Board of Directors adopted a resolution authorizing changes to the CEO SERP, which resolution speaks for itself.  Siravo and Swedberg refer to the resolution for its contents and deny any characterization inconsistent with its terms.

173.   Siravo and Swedberg admit that Robert Harvey, as Chairman of WesCorp's Board of Directors, executed an amendment to the CEO SERP that was prepared by Swedberg, which amendment speaks for itself.  Siravo and Swedberg refer to the amendment for its contents and deny any characterization inconsistent with its terms.  Siravo and Swedberg deny the remaining allegations of Paragraph 173.

174.   Paragraph 174 contains legal conclusions, to which no response is required.  To the extent these allegations require a response, they are denied. Siravo and Swedberg deny the remaining allegations of Paragraph 174.

175.   Siravo and Swedberg admit that under the President/CEO Retention Program, Siravo's President/CEO Retirement Date was May 1, 2008; that he received a lump sum SERP payment on or about May 13, 2008 of $6,881,401; that the amount he received was more than he would have received under the CEO SERP before it was amended; and that he continued to serve as President/CEO of WesCorp until on or about March 20, 2009.  Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 175 and on that basis deny those allegations.

176.   Siravo and Swedberg admit that Swedberg worked on amendments to the Executive SERP, which amendments speak for themselves.  Siravo and Swedberg refer to the amendments for their contents and deny any characterization inconsistent with their terms.

177.   Siravo and Swedberg admit that on or about June 24, 2008, Siravo presented amendments to the Executive SERP to the WesCorp Board of Directors, and the Board of Directors adopted a resolution approving the amendments, which resolution speaks for itself.  Siravo and Swedberg refer to the resolution for its contents and deny any characterization inconsistent with its terms.

178.   Siravo and Swedberg admit that Swedberg retired from WesCorp at the end of 2008, and that on January 6, 2009, he received a lump sum SERP of $1,223,962, which was more than the he would have received under the CEO SERP before it was amended.  Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 178 and on that basis deny those allegations.

179.   Siravo and Swedberg admit that Lane was a participant in the Executive SERP and that he wanted to leave his employment at WesCorp before

his expected retirement date under the Executive SERP. Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 179 and on that basis deny those allegations.

180.    Siravo and Swedberg admit that Lane and Siravo executed an Early Payout Agreement, which agreement speaks for itself. Siravo and Swedberg refer to the agreement for its contents and deny any characterization inconsistent with its terms. Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 180 and on that basis deny those allegations.

181.    Siravo and Swedberg deny the allegations in Paragraph 181.

182.    Siravo and Swedberg admit that Lane received payments in 2006, 2007 and 2008 in addition to his base compensation and bonus and that he left his employment with WesCorp in 2008. Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 182 and on that basis deny those allegations.

## FIRST CLAIM FOR RELIEF

(Breach of Fiduciary Duties – Against the Officer Defendants)

183.    Siravo and Swedberg incorporate by reference their responses to paragraphs 1 through 153 as though set forth in full. Swedberg is not named as a defendant to this Claim and accordingly no response is required to paragraphs 184 through 198. To the extent the allegations require a response to paragraphs 184 through 198, Swedberg lacks information or knowledge sufficient to form a belief as to the truth of the allegations, and on that basis denies them.

184.    Paragraph 184 contains legal conclusions, to which no response is required. To the extent the allegations require a response, they are denied.

185.    Paragraph 185 contains legal conclusions, to which no response is required. To the extent the allegations require a response, they are denied.

186.   Paragraph 186 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

187.   Paragraph 187 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

188.   Paragraph 188 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

189.   Paragraph 189 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, Siravo lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 189 and on that basis they are denied.

190.   Paragraph 190 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, Siravo lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 190 and on that basis they are denied.

191.   Paragraph 191 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

192.   Paragraph 192 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.  Siravo denies that he breached any duties that he owed to WesCorp.  Siravo lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 192 and on that basis denies those allegations.

193.   Paragraph 193 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.  Siravo denies that he breached any duties that he owed to WesCorp.  Siravo lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 193 and on that basis denies those allegations.

194.   Paragraph 194 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, Siravo lacks

- 30 -

information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 194 and on that basis they are denied.

195. Paragraph 195 contains legal conclusions, to which no response is required. To the extent the allegations require a response, they are denied. Siravo lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 195 and on that basis denies those allegations.

196. Paragraph 196 contains legal conclusions, to which no response is required. To the extent the allegations require a response, they are denied. Siravo denies that he breached any duties that he owed to WesCorp. Siravo lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 192 and on that basis denies those allegations.

197. Siravo denies the allegations of Paragraph 197.

198. Siravo denies the allegations of Paragraph 198.

### SECOND CLAIM FOR RELIEF

(Breach of Fiduciary Duties – Against Defendants Rhamy, Updike, Dames, Osberg, Longson and Harvey)

199. Siravo and Swedberg incorporate by reference their responses to paragraphs 1 through 153 as though set forth in full. Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required to paragraphs 200 through 205. To the extent the allegations require a response to paragraphs 200 through 205, Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the allegations, and on that basis deny them.

200. Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

201. Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

202.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

203.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

204.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

205.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

## THIRD CLAIM FOR RELIEF

(Breach of Fiduciary Duties – Against Defendants Jordan, Nakamura, Cheney, Rhamy, Kramer, Lentz, and Osberg)

206.   Siravo and Swedberg incorporate by reference their responses to paragraphs 1 through 153 as though set forth in full.  Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required to paragraphs 207 through 212.  To the extent the allegations require a response to paragraphs 207 through 212, Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the allegations, and on that basis deny them.

207.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

208.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

209.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

210.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

211.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

212.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

## FOURTH CLAIM FOR RELIEF

(Breach of Fiduciary Duties – Against All Director Defendants)

213.   Siravo and Swedberg incorporate by reference their responses to paragraphs 1 through 153 as though set forth in full.  Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required to paragraphs 214 through 220.  To the extent the allegations require a response to paragraphs 214 through 220, Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the allegations, and on that basis deny them.

214.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

215.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

216.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

217.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

218.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

219.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

220.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

## FIFTH CLAIM FOR RELIEF

(Breach of Fiduciary Duty – Against Defendants Siravo and Swedberg)

221.   Siravo and Swedberg incorporate by reference paragraphs 1 through 23 and 154 through 178 as though set forth in full.

222.   Paragraph 222 contains legal conclusions to which no response is required.  To the extent the allegations require a response, they are denied.

223.   Siravo and Swedberg deny the allegations of Paragraph 223.

224.   Paragraph 224 contains legal conclusions to which no response is required.  To the extent the allegations require a response, they are denied

225.   Siravo and Swedberg deny the allegations of Paragraph 225.

226.   Siravo and Swedberg deny the allegations of Paragraph 226.

**SIXTH CLAIM FOR RELIEF**

(Fraud -- Against Defendants Siravo and Swedberg)

227.   Siravo and Swedberg incorporate by reference paragraphs 1 through 23, 154 through 178, and 222 through 226, as though set forth in full.

228.   Paragraph 228 contains legal conclusions to which no response is required.  To the extent the allegations require a response, they are denied.

229.   Siravo and Swedberg admit Exhibit 1 to the Second Amended Complaint is a true and correct copy of a memorandum dated November 2, 2007, that Swedberg sent to Robert Harvey, the Chairman of WesCorp's Board of Directors.  Siravo and Swedberg also admit that on or about June 24, 2008, Siravo sent a similar memorandum.  The memoranda sent by Siravo and Swedberg speak for themselves.  Siravo and Swedberg refer to the memoranda for their contents and deny any characterization inconsistent with their terms.  Siravo and Swedberg deny the remaining allegations in Paragraph 229.

230.   Siravo and Swedberg deny the allegations in Paragraph 230.

231.   Siravo and Swedberg deny the allegations in Paragraph 231.

232.   Paragraph 228 contains legal conclusions to which no response is required.  To the extent the allegations require a response, they are denied.

233.   Siravo and Swedberg deny the allegations in Paragraph 233.

234.  Siravo and Swedberg deny the allegations in Paragraph 234.

**SEVENTH CLAIM FOR RELIEF**

(Breach of Fiduciary Duty -- Against Defendant Siravo)

235.  Siravo and Swedberg incorporate by reference paragraphs 1 through 23, 154 through 182, inclusive as though set forth in full.  Swedberg is not named as a defendant to this Claim and accordingly no response is required to paragraphs 236 through 239.  To the extent the allegations require a response to paragraphs 236 through 239, Swedberg lacks information or knowledge sufficient to form a belief as to the truth of the allegations, and on that basis denies them.

236.  Paragraph 236 contains legal conclusions to which no response is required.  To the extent that a response is required, the allegations are denied.

237.  Paragraph 237 contains legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

238.  Siravo denies the allegations in Paragraph 238.

239.  Siravo denies the allegations in Paragraph 239.

**EIGHTH CLAIM FOR RELIEF**

(Unjust Enrichment -- Against Defendant Lane)

240.  Siravo and Swedberg incorporate by reference their responses to paragraphs 1 through 153, 154 through 182, and 236 through 239 as though set forth in full.  Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required to paragraphs 241 through 244.  To the extent the allegations require a response to paragraphs 241 through 244, Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the allegations, and on that basis deny them.

241.  Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

242.  Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

243. Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

244. Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

## AFFIRMATIVE DEFENSES

As for their affirmative defenses, Siravo and Swedberg allege as follows:

### FIRST AFFIRMATIVE DEFENSE

#### (Failure to State Claim)

245. The Second Amended Complaint fails to state facts sufficient to constitute claims against Siravo and Swedberg upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

#### (Standing)

246. The NCUA lacks standing to assert the claims alleged in this action.

### THIRD AFFIRMATIVE DEFENSE

#### (Business Judgment Rule, Due Diligence and Reasonable Investigation)

247. The First and Seventh Claims for Relief are barred by the business judgment rule in that every act or omission challenged by the NCUA was made after reasonable investigation and in good faith based upon reasonable grounds to believe that such acts or omissions were reasonable and prudent under the circumstances.

### FOURTH AFFIRMATIVE DEFENSE

#### (Comparative Fault)

248. The NCUA's recovery, if any, must be reduced to the extent that its injuries, losses and/or damages, if any, were caused by the NCUA's own fault.

### FIFTH AFFIRMATIVE DEFENSE

#### (Ratification, Consent, Approval, Acquiescence and Participation)

249. The NCUA's Claims are barred, in whole or in part, by the NCUA's knowledge, acquiescence, ratification, approval, participation in, and/or oversight

1    of WesCorp's investment strategies, risk asset efforts, purchase of MBS securities,

2    and other activities that the NCUA challenges as improper, including but not

3    limited to the NCUA's supervision and oversight of WesCorp, its on-site

4    examinations of WesCorp, and its approval of WesCorp's investments, investment

5    strategies, policies, and procedures.

6    **SIXTH AFFIRMATIVE DEFENSE**

7    (Estoppel)

8    250.   The NCUA's Claims are barred, in whole or in part, by the doctrine

9    of estoppel because WesCorp complied with the NCUA's regulations and

10    directives and/or because WesCorp's investments, investment strategies, policies,

11    and procedures were reviewed, accepted and approved by the NCUA and its

12    examiners.

13    **SEVENTH AFFIRMATIVE DEFENSE**

14    (Waiver)

15    251.   The NCUA's Claims are barred, in whole or in part, by the doctrine

16    of waiver.

17    **EIGHTH AFFIRMATIVE DEFENSE**

18    (Laches)

19    252.   The NCUA's Claims are barred, in whole or in part, by the doctrine

20    of laches.

21    **NINTH AFFIRMATIVE DEFENSE**

22    (Statute of Limitations)

23    253.   The NCUA's Claims are barred, in whole or in part, by the applicable

24    statute(s) of limitations.

25    **TENTH AFFIRMATIVE DEFENSE**

26    (Intervening Cause)

27    254.   The NCUA's Claims are barred, in whole or in part, because

28    WesCorp's losses, if any, were the result of one or more intervening causes, or

1    were caused by the acts and/or failures of other persons and/or entities, including

2    but not limited to the NCUA, rating agencies, underwriters, brokers, issuers,

3    auditors, investment bankers, financial advisors, and counsel.

4                    **ELEVENTH AFFIRMATIVE DEFENSE**

5                         (Superseding Causes)

6        255.   The NCUA's Claims are barred, in whole or in part, because the acts

7    and conduct of Siravo and/or Swedberg, including but not limited to the purchases

8    of securities and amendments of, and/or changes, to the Supplemental Executive

9    Retention Programs were approved and/or ratified by WesCorp's Board of

10   Directors, Executive Committee, individual directors, and/or the Asset Liability

11   Committee, and because WesCorp's losses were caused by supervening events

12   unconnected to Siravo and Swedberg, including macroeconomic and mortgage

13   industry events that affected WesCorp's business.

14                    **TWELFTH AFFIRMATIVE DEFENSE**

15                          (No causation)

16       256.   The NCUA's Claims are barred, in whole or in part, because Siravo

17   and/or Swedberg did not directly or indirectly cause the alleged damages

18   complained of in the Second Amended Complaint and the NCUA seeks to hold

19   Siravo and Swedberg responsible for the alleged breaches by other parties,

20   including but not limited to the NCUA, rating agencies, underwriters, brokers,

21   issuers, auditors, investment bankers, financial advisors, and counsel.

22                   **THIRTEENTH AFFIRMATIVE DEFENSE**

23                         (Reliance on others)

24       257.   The NCUA's Claims are barred, in whole or in part, because the acts

25   or omissions of Siravo and/or Swedberg were made or occurred in reasonable good

26   faith reliance on the statements and representations of others upon which they was

27   entitled to rely, including but not limited to NCUA personnel and examiners, rating

28

agencies, underwriters, brokers, issuers, auditors, investment bankers, financial advisors, and counsel.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Apportionment)

258. Any damages that the NCUA may have suffered should be apportioned according to the relative degrees of fault of other persons and/or entities responsible for the NCUA's damages, including the NCUA, and any alleged liability of Siravo and Swedberg should be reduced accordingly.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Lack of Injury)

259. The NCUA's Claims are barred, in whole or in part, because the NCUA has not suffered any legally cognizable injury or damage.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (No Entitlement to Exemplary or Punitive Damages)

260. NCUA is precluded from recovering exemplary or punitive damages, either in whole or in part, under the applicable provisions of the law, including, without limitation, California Civil Code section 3294, the United States Constitution and/or the California Constitution.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Right to Assert Additional Affirmative Defenses)

261. Siravo and Swedberg presently have insufficient knowledge or information on which to form a belief as to whether there may be additional, as yet unstated, affirmative defenses available. Thus, subject to discovery in this action, Siravo and Swedberg expressly reserve their rights to assert additional affirmative defenses.

## COUNTERCLAIMS

For counterclaims, Siravo and Swedberg allege:

## JURISDICTION

262. The Court has supplemental jurisdiction over these counterclaims under 28 U.S.C. § 1367(a), because these counterclaims and the purported claims alleged by the NCUA all form part of the same case or controversy concerning the parties' rights and responsibilities related to Siravo's and Swedberg's service as officers and employees of WesCorp.

## PARTIES

263. Siravo served as President/CEO of WesCorp from May 1, 2002 to on or about March 20, 2009. Swedberg was employed by WesCorp from October 1998 until he retired in July 2009. He was the Director of Human Resources from October 1998 and served as the Vice President of Human Resources in 1999 until approximately April or May 2007. He then served as Vice President of Strategic Planning and Organizational Development until December 31, 2008, and was thereafter employed on a consultant basis until he retired in July 2009.

264. Counter-defendant National Credit Union Administration Board as Liquidator of Western Corporate Federal Credit Union ("NCUA") is the liquidating agent of WesCorp.

## FACTUAL ALLEGATIONS

### Policy 21

265. WesCorp's Board of Directors adopted a resolution regarding indemnification and insurance, codified in WesCorp's book of policies as "Policy 21."

266. WesCorp agreed in Policy 21 to indemnify WesCorp's current and former "officials" and "employees" "to the maximum extent permitted by either the laws of the state of California or the Model Business Corporation Act" (the "MBCA") "for any liability asserted against them in connection with judicial or administrative proceedings, formal or informal, to which they are or may become parties by reason of the performance of their official duties."

267.   WesCorp also agreed in Policy 21 that the indemnification "shall include the recovery of reasonable costs and attorneys fees incurred by an individual so indemnified if such individual is required to engage the services of any attorney. . .to secure the indemnity provided herein."

268.   WesCorp also agreed in Policy 21 to "purchase and maintain insurance" on behalf of current and former officials and employees "against any liability asserted against them and expenses reasonably incurred by them in their official capacities and arising out of the performance of their official duties to the extent such insurance is permitted by the applicable state law or the Model Business Corporation Act[.]"

### NCUA's Denial of Advancement

269.   On January 10, 2011, Siravo and Swedberg Defendants submitted a request to the NCUA as Liquidating Agent for WesCorp for reimbursement of past defense costs incurred in defending this litigation, advancement of any future defense costs of any future defense costs that they might incur, and indemnification for any costs they incur in establishing their right to indemnity.

270.   The Liquidating Agent has not agreed to the indemnification requests of Siravo and Swedberg.

271.   All of the claims asserted by the NCUA against Siravo and Swedberg in this litigation "arise out of the performance of their official duties" as officers and employees of WesCorp.

272.   Siravo and Swedberg have incurred, and continue incur, attorney's fees and costs in connection with the defense of the claims asserted by the NCUA as Liquidating Agent for WesCorp in this litigation.

### FIRST COUNTERCLAIM

(Advancement of Litigation Costs Under Policy 21)

273.   Siravo and Swedberg corporate by reference and re-allege each and every allegation contained in paragraphs 262 to 272 as though fully set forth herein.

- 41 -

274.    WesCorp agreed in Policy 21 to indemnify Siravo and Swedberg "to the maximum extent permitted by either" California law *or* the MBCA.

275.    The MBCA provides that a corporation must advance defense costs if the corporation has promised by resolution or otherwise indemnification "to the fullest extent permitted by law," as WesCorp did in Policy 21. MBCA §8.58 expressly states that any such resolution "shall be deemed to *obligate* the corporation to *advance* funds to pay for or reimburse" the defense costs before final disposition of the case. (emphasis added).

276.    Siravo and Swedberg will provide to the NCUA as liquidator of WesCorp the written affirmation and undertaking required for advancement attorneys fees by MBCA §8.53. Siravo and Swedberg will each provide a written affirmation that he in good faith believes that he has met the relevant standard of conduct in MBCA §8.51 required for indemnification: that he conducted himself in good faith and in what he reasonably believed was in the best interests of WesCorp. Siravo and Swedberg will also each provide a written undertaking to repay any advanced funds if it is ultimately determined that he is not entitled to mandatory indemnification or that he did not meet the standard of conduct under section 8.51.

277.    NCUA as liquidator of WesCorp is obligated to advance to Siravo and Swedberg defense costs incurred in this litigation under the provisions of the MBCA that are adopted by WesCorp in Policy 21.

278.    The NCUA has failed to advance Siravo and Swedberg their defense costs incurred in this litigation.

279.    Siravo and Swedberg have incurred damages as a result of the NCUA's failure to advance their defense costs incurred in this litigation in an amount to be determined at trial.

### SECOND COUNTERCLAIM

(Indemnification under California Labor Code 2802)

280.    Siravo and Swedberg incorporate by reference and re-allege each and

- 42 -

1  every allegation contained in paragraphs 262 to 279 as though fully set forth herein.

2      281.   At all relevant time, Siravo and Swedberg were employees of

3  WesCorp.

4      282.   California Labor Code Section 2802 provides that an employer *"shall*

5  indemnify his or her employee for all necessary expenditures or losses incurred by

6  the employee in direct consequence of the discharge of his or her duties[.] "

7      283.   NCUA as liquidator of WesCorp is obligated to indemnify and

8  reimburse Siravo and Swedberg for their defense costs as they are incurred in this

9  litigation under the California Labor Code Section 2802.

10     284.   Siravo and Swedberg have incurred and paid attorneys fees and costs

11 in defense of the claims asserted by NCUA as liquidator of WesCorp in this

12 litigation.

13     285.   The NCUA has failed to reimburse Siravo and Swedberg for the

14 attorney's fees and costs they have paid to date.

15     286.   Siravo and Swedberg have incurred damages as a result of the

16 NCUA's failure to reimburse Siravo and Swedberg for their attorney fees and costs

17 in an amount to be determined at trial.

18                        **THIRD COUNTERCLAIM**

19                      (Indemnification under Policy 21)

20     287.   Siravo and Swedberg incorporate by reference and re-allege each and

21 every allegation contained in paragraphs 262 to 286 as though fully set forth herein.

22     288.   WesCorp agreed in Policy 21 to indemnify Siravo and Swedberg "to

23 the maximum extent permitted by either" California law *or* the MBCA.

24     289.   Siravo and Swedberg demand indemnity under Policy 21 to the fullest

25 extent permissible under either California law or the MBCA and/or defense costs to

26 the fullest extent permissible under either California law or the MBCA.

27     290.   Siravo and Swedberg also demand recovery of costs and attorneys fees

28 incurred to secure the indemnity provided for in Policy 21.

1    291.  If NCUA refuses to indemnify Siravo and Swedberg pursuant to

2    Policy 21, they will suffer damages in an amount to be determined at trial.

3    **FOURTH COUNTERCLAIM**

4    (Declaratory Relief)

5    292.  Siravo and Swedberg incorporate by reference and re-allege each and

6    every allegation contained in paragraphs 262 to 291 as though fully set forth herein.

7    293.  The NCUA is obligated to advance to Siravo and Swedberg their

8    attorney's fees and costs incurred in defense of this litigation under Policy 21, the

9    MBCA, and California Labor Code Section 2802.

10    294.  The NCUA has failed to respond to Siravo's and Swedberg's request

11    for advancement of their attorney's fees and costs incurred in defense of this

12    litigation.

13    295.  The rights of the parties with respect to the advancement of attorney's

14    fees and costs incurred in defense of this litigation can be determined only by

15    declaratory relief.

16    **FIFTH COUNTERCLAIM**

17    (Declaratory Relief)

18    296.  Siravo and Swedberg incorporate by reference and re-allege each and

19    every allegation contained in paragraphs 262 to 295 as though fully set forth herein.

20    297.  WesCorp promised in Policy 21 to "purchase and maintain" insurance

21    "against any liability asserted against" current and former officials and employees,

22    including but not limited to Siravo and Swedberg.

23    298.  The Policy that WesCorp purchased was inadequate to fulfill this

24    promise.

25    299.  WesCorp purchased an insurance policy from CUMIS Insurance

26    Society, which has taken the position that the claims asserted against Siravo and

27    Swedberg in this action are excluded from coverage under the insurance policy.

28    300.  Because the insurance policy does not cover Siravo and Swedberg for

"any liability," WesCorp breached the promise to provide insurance coverage for Siravo and Swedberg in Policy 21.

301.   Because CUMIS invoked various exclusions to deny most coverage to Siravo and Swedberg, but for WesCorp's failure to comply with its obligations and obtain adequate insurance coverage, Siravo and Swedberg would have been covered for all of the costs and claims related to this litigation.

302.   An actual existing and bona fide controversy exists between Siravo and Swedberg, on the one hand, and the NCUA, on the other hand, as to NCUA's liability for advancement and indemnification, in that:

303.   Policy 21 promises to maintain insurance coverage for "any liability" asserted against Siravo and Swedberg, yet the CUMIS insurance policy does not cover the current action.

304.   NCUA has declined to pay for Siravo's and Swedberg's defense costs.

305.   The rights of the parties under Policy 21 can be determined only by declaratory relief.

## PRAYER

WHEREFORE, Siravo and Swedberg pray for judgment against plaintiffs as follows:

1.   That Plaintiff NCUA as Liquidating Agent for WesCorp takes nothing by the Complaint and that the Complaint be dismissed with prejudice.

2.   That judgment be entered in favor of Siravo and Swedberg, and against Plaintiff.

3.   That the NCUA be ordered to advance Siravo's and Swedberg's defense costs in this litigation.

4.   That Siravo and Swedberg be awarded damages on their counterclaims, in amounts to be determined at trial.

5.   That the Court adjudge and declare that NCUA is obligated to pay to advance to Siravo and Swedberg their defense costs incurred in this action and to

1   the fullest extent any liability incurred by Siravo and Swedberg because of the

2   inadequate insurance policy purchased by WesCorp in breach of its promise to

3   purchase and maintain insurance under Policy 21.

4      6. That Siravo and Swedberg be awarded their costs and

5   reasonable attorneys' fees.

6      7. That Siravo and Swedberg be granted such other and further

7   relief as the Court may deem just and proper.

8           **DEMAND FOR JURY TRIAL**

9     Siravo and Swedberg hereby demand a jury trial

10

11  Dated:  August 15, 2011     RICHARD E. DROOYAN
                                            LAURA SMOLOVE
12               Munger, Tolles & Olson LLP

13

14              By

15              RICHARD E. DROOYAN

16              Attorneys for Robert A. Siravo and
                                            Thomas E. Swedberg
17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

        I, the undersigned, declare that I am over the age of 18 and not a party to the within cause.  I am employed by Munger, Tolles & Olson LLP in the County of Los Angeles, State of California.  My business address is 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California  90071-1560.

        On August 15, 2011, I served upon the interested party(ies) in this action the foregoing document(s) described as:

**Answer and Counterclaim of Defendants Robert A. Siravo and Thomas E. Swedberg to Second Amended Complaint**

☒ By placing ☐ the original(s) ☒ a true and correct copy(ies) thereof, as set out below, in an addressed, sealed envelope(s) clearly labeled to identify the person(s) being served at the address(es) set forth on the attached service list.

☒ **BY MAIL (AS INDICATED ON THE ATTACHED SERVICE LIST)** I caused such envelope(s) to be placed in interoffice mail for collection and deposit in the United States Postal Service at 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California, on that same date, following ordinary business practices.  I am familiar with Munger, Tolles & Olson LLP's practice for collection and processing correspondence for mailing with the United States Postal Service; in the ordinary course of business, correspondence placed in interoffice mail is deposited with the United States Postal Service with first class postage thereon fully prepaid on the same day it is placed for collection and mailing.

☐ **BY FEDERAL EXPRESS PRIORITY OVERNIGHT DELIVERY (AS INDICATED ON ATTACHED SERVICE LIST)** I delivered the sealed Federal Express envelope(s) to an employee authorized by Federal Express to receive documents, with delivery fees paid or provided for.

☐ **BY FACSIMILE (AS INDICATED ON ATTACHED SERVICE LIST)** By causing to be sent a true and correct copy(ies) of said document via facsimile transmission.  The transmission was reported as complete and without error.  A true and correct copy of the machine's transmission report, indicating the date and time that the transmission was completed without error is attached to this proof of service and is incorporated herein by this reference.  The telephone number of the facsimile machine I used was (213) 683-9510.  This facsimile machine complies with Rule 2003(3) of the California Rules of Court.

☐ **(STATE)** I declare under penalty of perjury that the foregoing is true and correct.

☒ **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

*See attached Service List*

Executed on August 15, 2011, at Los Angeles, California.

_____
Denise Olguin

14801984.1

- 1 -

ANSWER AND COUNTERCLAIM OF DEFENDANTS ROBERT A. SIRAVO AND THOMAS E. SWEDBERG TO SECOND AMENDED COMPLAINT

1

Service List
*National Credit Union Administration Board v. Siravo, et al.*
Case 2:10-cv-01597-GW -MAN

2

3

4  Michael H Bierman                              Kyle A Ostergard
   Michael E Pappas                               Alston & Bird LLP
   Michelle Kimiko Sugihara                       333 South Hope Street
5  Jeffrey D Wexler                               Sixteenth Floor
   Luce Forward Hamilton & Scripps LLP            Los Angeles, CA 90071-2901
6  601 South Figueroa Street, Suite 3900
   Los Angeles, CA 90017

7

8  George Allen Brandt
   Bruce A Ericson
   Pillsbury Winthrop Shaw Pittman LLP
9  50 Fremont Street
   PO Box 7880
10 San Francisco, CA 94120-7880

11 Reynold Lloyd Siemens
   Pillsbury Winthrop Shaw Pittman LLP
12 725 South Figueroa Street, Suite 2800
   Los Angeles, CA 90017-5406

13

14 Curtis G Carl
   Kenneth M Fitzgerald
   Chapin Fitzgerald Sullivan LLP
15 550 West C Street, Suite 2000
   San Diego, CA 92101

16

17 Janlynn R Fleener
   Downey Brand LLP
   621 Capitol Mall, 18th Floor
18 Sacramento, CA 95814

19 Seth E Freilich
   Andrew S Wong
20 Orrick Herrington & Sutcliffe LLP
   777 South Figueroa Street, Suite 3200
21 Los Angeles, CA 90017

22 Suzanne Havens-Beckman
   Azita Moradmand
23 David C Parisi
   Parisi and Havens LLP
24 15233 Valleyheart Drive
   Sherman Oaks, CA 91403

25

26 Scott A Kamber
   KamberLaw LLC
   100 Wall Street, 23rd Floor
27 New York, NY 10005

28

14801984.1

- 2 -

ANSWER AND COUNTERCLAIM OF DEFENDANTS ROBERT A. SIRAVO AND THOMAS E. SWEDBERG
TO SECOND AMENDED COMPLAINT