COPY
FILED
2011 AUG 16 PM 12:04

```
 1  CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP
       Kenneth M. Fitzgerald, Esq. (SBN: 142505)
 2     kfitzgerald@cfsblaw.com
 3     Curtis G. Carll, Esq. (SBN: 248470)
       ccarll@cfsblaw.com
 4  550 West "C" Street, Suite 2000
 5  San Diego, California 92101
 6  Tel: (619) 241-4810
    Fax: (619) 955-5318
 7
 8  Attorneys for Defendant
    Todd M. Lane
 9
```

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **National Credit Union Administration Board**, *as Liquidating Agent for Western Corporate Federal Credit Union*, | Case No.: CV10-01597 GW (MANx) |
| | **Answer and Counterclaims of Defendant Todd M. Lane to Second Amended Complaint** |
| Plaintiff, | |
| vs. | Jury Trial Demanded |
| Robert A. Siravo, Todd M. Lane, Robert J. Burrell, Thomas E. Swedberg, Timothy T. Sidley, Robert H. Harvey, Jr., William Cheney, Gordon Dames, James P. Jordan, Timothy Kramer, Robin J. Lentz, John M. Merlo, Warren Nakamura, Brian Osberg, David Rhamy and Sharon Updike, | Honorable George H. Wu Courtroom: 10 |
| Defendants. | |

CV 10-01597 GW (MANx)
Lane's Answer and Counterclaims to Second Amended Complaint

| | |
|---|---|
| 1 | **Todd M. Lane**, )<br>) |
| 2 | ) |
| 3 | Counter-Claimant, )<br>    vs. ) |
| 4 | ) |
| 5 | **National Credit Union** )<br>**Administration Board**, *as Liquidating* ) |
| 6 | *Agent for Western Corporate Federal* )<br>*Credit Union*, ) |
| 7 | ) |
| 8 | Counter-Defendant. )<br>) |

Defendant Todd M. Lane ("Lane") answers the numbered allegations in and provides affirmative defenses to the Second Amended Complaint of Plaintiff National Credit Union Administration Board as Liquidating Agent for Western Corporate Federal Credit Union ("Plaintiff"), Doc. 116, filed February 22, 2011.

Except where expressly admitted, Lane denies all the allegations in the Second Amended Complaint.

## Jurisdiction and Venue

1. Lane admits that WesCorp was a credit union with its corporate offices located in San Dimas, California, that WesCorp was placed into conservatorship by the NCUA Board on March 19, 2009, and that WesCorp was placed into involuntary liquidation on October 1, 2010. The remainder of Paragraph 1 contains legal conclusions, to which no response is required.

2. Paragraph 2 contains legal conclusions, to which no response is required. To the extent the allegations require a response, they are denied.

3. Paragraph 3 contains legal conclusions, to which no response is required. To the extent the allegations require a response, they are denied.

4. Paragraph 4 contains legal conclusions, to which no response is required. To the extent the allegations require a response, they are denied.

5. Paragraph 5 contains legal conclusions, to which no response is required. To the extent the allegations require a response, they are denied.

6. Lane admits that the NCUA is the liquidating agent for WesCorp.

7. Lane admits that Robert A. Siravo ("Siravo") was the President and CEO of WesCorp from May 1, 2002 to or about March 20, 2009, and that he is a resident of California. Lane denies the remaining allegations of Paragraph 7.

8. Lane admits the allegations of Paragraph 8.

9. Lane admits that Robert J. Burrell ("Burrell") served as Executive Vice President and as the Chief Investment Officer for WesCorp. Lane lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 9 and on that basis denies those allegations.

10. Lane admits that Timothy T. Sidley ("Sidley") served as Vice President for Risk Assessment and as Chief Risk Officer in charge of investment credit services. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 10 and on that basis denies those allegations.

11. Lane admits that Thomas E. Swedberg ("Swedberg") was Vice President of Human Resources and Vice President of Strategic Planning and Organizational Development. Sidley lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 11 and on that basis denies those allegations.

12. Lane admits that Robert H. Harvey, Jr. ("Harvey") was a director and the Chairman of the WesCorp board of directors, and that he is a resident of the state of Washington. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 12 and on that basis denies those allegations.

13. Lane admits that James P. Jordan ("Jordan") was a member of the WesCorp board of directors and was the Vice Chairman of the WesCorp board. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 13 and on that basis denies those allegations.

14. Lane admits that Timothy Kramer ("Kramer") was a member of the WesCorp board of directors and served as the Secretary and Treasurer of the WesCorp board. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 14 and on that basis denies those allegations.

15. Lane admits that Robin J. Lentz ("Lentz") was a member of the WesCorp board of directors. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 15 and on that basis denies those allegations.

16. Lane admits that John M. Merlo ("Merlo") was a member of the WesCorp board of directors and that he is a resident of California. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 16 and on that basis denies those allegations.

17. Lane admits that Gordon Dames ("Dames") was a member of the WesCorp board of directors. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 17 and on that basis denies those allegations.

18. Lane admits that William Cheney ("Cheney") was a member of the WesCorp board of directors. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 18 and on that basis denies those allegations.

19. Lane admits that Warren Nakamura ("Nakamura") was a member of the WesCorp board of directors. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 19 and on that basis denies those allegations.

20. Lane admits that Brian Osberg ("Osberg") was a member of the WesCorp board of directors. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 20 and on that basis denies those allegations.

21. Lane admits that David Rhamy ("Rhamy") was a member of the WesCorp board of directors. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 21 and on that basis denies those allegations.

22. Lane admits that Sharon Updike ("Updike") was a member of the WesCorp board of directors. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 22 and on that basis denies those allegations.

23. Lane admits the allegations of Paragraph 23.

24. Lane admits that WesCorp's Asset and Liability Committee ("ALCO") had oversight responsibility for WesCorp's asset liability management process, including investments. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 24 and on that basis denies those allegations, except to the extent they reference the contents of WesCorp's corporate policies, which speak for themselves. Lane refers to WesCorp's corporate policies for their contents and denies any characterization inconsistent with their terms.

25. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25 and on that basis denies those allegations.

26. Lane admits that board members attended ALCO meetings and received ALCO materials along with their monthly board packages. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 26 and on that basis denies those allegations.

27. Lane admits that WesCorp's budget was reviewed by the budget committee, which recommended it before it was approved by the board. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 27 and on that basis denies those allegations.

28. Paragraph 28 contains legal conclusions, to which no response is required. To the extent the allegations require a response, they are denied.

29. Paragraph 29 contains legal conclusions, to which no response is required.

## Summary of Claims

30. Lane admits that WesCorp was a non-profit corporate credit union, that its members were credit unions, and that it provided its members with banking and investment services for their funds. The remaining allegations of Paragraph 30 contain legal conclusions, to which no response is required. To the extent the remaining allegations require a response, they are denied.

31. Lane admits that WesCorp was a leading corporate federal credit union and provided its members with banking and investment services for their funds. Lane also admits that Siravo became President and CEO of WesCorp in 2002. Lane denies the remaining allegations of Paragraph 31.

32. Lane admits that WesCorp invested its members' funds and borrowed funds in securities, including private label mortgage backed securities ("MBS"), including MBS that were not guaranteed by the United States or its agencies. Lane denies the remaining allegations of Paragraph 32.

33. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33 and on that basis denies them.

34. Lane admits that WesCorp used income from its investments to pay operating expenses. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 34 and on that basis denies those allegations.

35. Lane denies the allegations of Paragraph 35.

36. Lane admits that WesCorp invested in MBS, including MBS based on reduced-documentation Option ARM loans. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 36 and on that basis denies those allegations.

37. Lane denies the allegations of Paragraph 37.

38. Lane admits that WesCorp invested in MBS, including MBS based on reduced documentation Option ARM loans. Lane lacks knowledge or

- 5 -
CV 10–01597 GW (MANx)
Lane's Answer and Counterclaims to Second Amended Complaint

information sufficient to form a belief as to the remaining allegations of Paragraph 38 and on that basis denies those allegations.

39. Lane admits that WesCorp purchased AAA-rated and AA-rated MBS that were underwritten by the world's leading investment banks and denies the remaining allegations of Paragraph 39.

40. Lane lacks knowledge or information to form a belief as to the truth of the allegations of Paragraph 40, and on that basis denies them, except to the extent they reference the contents of WesCorp's 2009 financial statements, which speak for themselves. Lane refers to WesCorp's 2009 financial statements for their contents and denies any characterization inconsistent with their terms.

41. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 41, and on that basis denies those allegations.

42. Lane admits that he and Siravo executed an agreement, which speaks for itself. Lane refers to the agreement for its contents and denies any characterization inconsistent with its terms. Lane lacks knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 42, and on that basis denies those allegations.

43. Lane denies the allegations of Paragraph 43.

## Factual Allegations

**The Federal Credit Union System**

44. Lane admits that the federal credit union system is a three-tier system consisting of (1) one wholesale corporate credit union (U.S. Central Federal Credit Union); (2) retail corporate credit unions; and (3) "natural person" credit unions. Lane further admits that the wholesale corporate credit union provides services to the retail corporate credit unions, while the retail corporate credit unions provide services to both federally-chartered and state-chartered natural person credit unions. Lane lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations of Paragraph 44 and on that basis denies those allegations.

45. Lane admits that WesCorp was a retail corporate credit union. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 45 and on that basis denies those allegations.

46. Lane admits the allegations of Paragraph 46.

47. Lane admits that retail corporate credit unions provide services and support to their natural person credit union members. Lane admits that retail corporate credit unions offer their natural person credit unions banking and investment services for their funds, and that these services may include settlement of transactions such as checks, ATM and credit card transactions and wire transfers, and that they allow their members to borrow funds. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 47 and on that basis denies those allegations.

48. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48 and on that basis denies them, except to the extent they reference the contents of WesCorp's website, which speaks for itself. Lane refers to WesCorp's website for its contents and denies any characterization inconsistent with its terms.

49. Lane admits that WesCorp had by-laws, which speak for themselves. Lane refers to WesCorp's bylaws for their contents and denies any characterization inconsistent with their terms.

50. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50 and on that basis denies them.

51. Lane admits the allegations of Paragraph 51.

**The Officer Defendants' Responsibilities and Duties**

52. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 52 and on that basis denies those

allegations, except to the extent the allegations reference the contents of WesCorp's by-laws and corporate policies, which speak for themselves. Lane refers to WesCorp's by-laws and corporate policies for their contents and denies any characterization inconsistent with their terms.

53. Lane admits that Siravo served as President and CEO of WesCorp, and that he had responsibilities for overseeing WesCorp's operations and investments. Lane denies the remaining allegations of Paragraph 53.

54. Lane admits that Siravo served as President and CEO of WesCorp. The remaining allegations of Paragraph 54 contain legal conclusions, to which no response is required. To the extent that a response is required, they are denied.

55. Lane admits that he served as Chief Financial Officer of WesCorp and had responsibilities for WesCorp's financial statements, financial operations, and budgets. Lane denies the remaining allegations of Paragraph 55.

56. Lane admits that Burrell served as Chief Investment Officer for WesCorp and had responsibilities for WesCorp's investments and for supervising WesCorp's Investment Department. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 56 and on that basis denies those allegations.

57. Lane denies the allegations of Paragraph 57.

58. Lane admits that Sidley served as Vice President of Risk Assessment, and that the Director of Investment Credit Services reported to Sidley. Lane further admits that Sidley had responsibilities with respect to WesCorp's investment credit policies and procedures. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 58 and on that basis denies those allegations.

59. Lane denies that the Asset/Liability Staff Committee ("ALCS") had the responsibilities as described in Paragraph 59. Lane lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 59 and on that basis denies those allegations.

60. Lane admits that Siravo, Burrell and Lane served as voting members of ALCO and ALSC, and that Sidley served as a non-voting member of ALSC and a staff liaison to ALCO. Lane denies the remaining allegations of Paragraph 60.

**WesCorp's Era of Growth**

61. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 61 and on that basis denies them.

62. Lane admits that Sirvo became President and CEO of WesCorp in 2002. Lane lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 62 and on that basis denies those allegations.

63. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 63 and on that basis denies them.

64. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 64 and on that basis denies them.

65. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 65 and on that basis denies them.

66. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 66 and on that basis denies them.

67. Lane admits that WesCorp invested in MBS, including private label MBS that had higher yields than MBS issued by government agencies. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 67 and on that basis denies those allegations.

68. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 68 and on that basis denies them, except to the extent the allegations reference the contents of WesCorp's corporate

policies, which speak for themselves. Lane refers to WesCorp's corporate policies for their contents and denies any characterization inconsistent with their terms.

69. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 69 and on that basis denies them.

70. Lane admits that his compensation and the compensation of other WesCorp executives increased from 2002 to 2008, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 70 and on that basis denies those allegations.

**WesCorp's Private Label MBS Investments**

71. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 71 and on that basis denies them.

72. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 72 and on that basis denies them.

73. Lane admits that WesCorp invested in AAA-rated and AA-rated private label MBS. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 73 and on that basis denies those allegations, except to the extent the allegations reference the contents of the NCUA's regulations and WesCorp's investment policies, which speak for themselves. Lane refers to the NCUA's regulations and WesCorp's investment policies for their contents and denies any characterization inconsistent with their terms.

74. Lane admits that between 2004 and 2007 WesCorp invested in MBS, including Collateralized Debt Obligations ("CDOs") and Option ARM MBS. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 74 and on that basis denies those allegations.

75. Lane admits that MBS are shares in a pool of mortgages and CDOs are shares in a pool of MBS. Lane also admits that there are risks associated with

1  investments in CDOs.  Lane lacks knowledge or information sufficient to form a
2  belief as to the truth of the remaining allegations of Paragraph 75 and on that
3  basis denies those allegations

　　　76.　　Lane admits that WesCorp purchased CDOs.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 76 and on that basis denies those allegations.

　　　77.　　Lane admits that Option ARM MBS are investments in Option ARM mortgages, and that Option ARM mortgages have payment terms and can have a negative amortization.  Lane lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 77 and on that basis denies those allegations.

　　　78.　　Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 78 and on that basis denies them.

　　　79.　　Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 79 and on that basis denies them.

　　　80.　　Lane admits that WesCorp invested in Option ARM MBS, including Option ARM MBS that included reduced-documentation Option ARM loans.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 80 and on that basis denies those allegations.

　　　81.　　Lane admits that MBS investments were sold in tranches and that WesCorp invested in some AAA-rated and AA-rated MBS that paid a higher yield than other AAA-rated and AA-rated MBS.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 81 and on that basis denies those allegations.

　　　82.　　Lane admits that WesCorp invested in AA-rated MBS.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 82 and on that basis denies those allegations.

83. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 83 and on that basis denies them.

84. Lane admits that WesCorp invested in AAA-rated Option ARM MBS. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 84 and on that basis denies those allegations.

**WesCorp's Budgets**

85. Lane admits the allegations of Paragraph 85.

86. Paragraph 86 contains legal conclusions, to which no response is required. To the extent the allegations require a response, they are denied.

87. Paragraph 87 contains legal conclusions, to which no response is required. To the extent the allegations require a response, Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 87 and on that basis denies them.

88. The allegations of Paragraph 88 reference the contents of WesCorp's budgets and an executive summary, which speak for themselves. Lane refers to WesCorp's budgets and the executive summary for their contents and denies any characterization inconsistent with their terms. To the extent that the allegations of Paragraph 88 refer to facts beyond those documents, Lane denies them.

89. Lane denies the allegations of Paragraph 89.

90. Lane admits that when he was WesCorp's CFO, WesCorp's management proposed budgets that were considered and recommended by the Budget Committee and adopted by WesCorp's Board of Directors, and that he worked on the budgets with Siravo and Burrell. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 90 and on that basis denies those allegations, except to the extent the allegations reference the contents of WesCorp's budgets, which speak for

themselves. Lane refers to WesCorp's budgets for their contents and denies any characterization inconsistent with their terms.

91. Lane denies the allegations of Paragraph 91.

92. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 92 and on that basis denies them.

93. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 93 and on that basis denies them.

94. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 94, and on that basis denies them, except to the extent they reference the contents of WesCorp's budgets, which speak for themselves. Lane refers to WesCorp's budgets for their contents and denies any characterization inconsistent with their terms.

95. The allegations of Paragraph 95 reference the contents of materials supplied to the Budget Committee about budgets, which speak for themselves. Lane refers to these materials for their contents and denies any characterization inconsistent with their terms. To the extent that the allegations of Paragraph 95 go beyond those documents, Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 95, and on that basis denies them.

96. Lane admits that directors attended ALCO meetings. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 96 and on that basis denies them.

97. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 97 and on that basis denies them, except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves. Lane refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with their terms.