1  CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP
2      Kenneth M. Fitzgerald, Esq. (SBN: 142505)
       kfitzgerald@cfsblaw.com
3      Curtis G. Carll, Esq. (SBN: 248470)
       ccarll@cfsblaw.com
4  550 West "C" Street, Suite 2000
5  San Diego, California  92101
6  Tel:  (619) 241-4810
7  Fax:  (619) 955-5318

8  Attorneys for Defendant
   Todd M. Lane
9

10             UNITED STATES DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA

12

13  **National Credit Union**            )  Case No.:    CV10-01597 GW (MANx)
    **Administration Board,** *as Liquidating*  )
14  *Agent for Western Corporate Federal*  )  ***Amended*** **Answer and Counterclaims**
    *Credit Union,*                        )  **of Defendant Todd M. Lane to**
15                                         )  **Second Amended Complaint**
                                           )
16                    Plaintiff,           )
                                           )  Jury Trial Demanded
17        vs.                              )
                                           )
18  **Robert A. Siravo, Todd M. Lane,**   )  Honorable George H. Wu
19  **Robert J. Burrell, Thomas E.**      )  Courtroom:   10
    **Swedberg, Timothy T. Sidley,**      )
20  **Robert H. Harvey, Jr., William**    )
    **Cheney, Gordon Dames, James P.**    )
21  **Jordan, Timothy Kramer, Robin J.**  )
22  **Lentz, John M. Merlo, Warren**      )
    **Nakamura, Brian Osberg, David**     )
23  **Rhamy and Sharon Updike,**          )
24                                         )
                                           )
25                    Defendants.          )
26                                         )
                                           )
27                                         )
                                           )
28                                         )

1  **Todd M. Lane**,                       )
                                            )
2                                           )
3                      Counter-Claimant,    )
           vs.                              )
4                                           )
5  **National Credit Union**               )
   **Administration Board**, *as Liquidating* )
6  *Agent for Western Corporate Federal*    )
   *Credit Union*,                          )
7                                           )
8                      Counter-Defendant.   )
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Todd M. Lane ("Lane") answers the numbered allegations in and provides affirmative defenses to the Second Amended Complaint of Plaintiff National Credit Union Administration Board as Liquidating Agent for Western Corporate Federal Credit Union ("Plaintiff"), Doc. 116, filed February 22, 2011.

Except where expressly admitted, Lane denies all the allegations in the Second Amended Complaint.

## Jurisdiction and Venue

1.      Lane admits that WesCorp was a credit union with its corporate offices located in San Dimas, California, that WesCorp was placed into conservatorship by the NCUA Board on March 19, 2009, and that WesCorp was placed into involuntary liquidation on October 1, 2010.  The remainder of Paragraph 1 contains legal conclusions, to which no response is required.

2.      Paragraph 2 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

3.      Paragraph 3 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

4.      Paragraph 4 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

5.      Paragraph 5 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

6.      Lane admits that the NCUA is the liquidating agent for WesCorp.

7.      Lane admits that Robert A. Siravo ("Siravo") was the President and CEO of WesCorp from May 1, 2002 to or about March 20, 2009, and that he is a resident of California.  Lane denies the remaining allegations of Paragraph 7.

8.      Lane admits the allegations of Paragraph 8.

9.      Lane admits that Robert J. Burrell ("Burrell") served as Executive Vice President and as the Chief Investment Officer for WesCorp.  Lane lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 9 and on that basis denies those allegations.

10.     Lane admits that Timothy T. Sidley ("Sidley") served as Vice President for Risk Assessment and as Chief Risk Officer in charge of investment credit services.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 10 and on that basis denies those allegations.

11.     Lane admits that Thomas E. Swedberg ("Swedberg") was Vice President of Human Resources and Vice President of Strategic Planning and Organizational Development.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 11 and on that basis denies those allegations.

12.     Lane admits that Robert H. Harvey, Jr. ("Harvey") was a director and the Chairman of the WesCorp board of directors, and that he is a resident of the state of Washington.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 12 and on that basis denies those allegations.

13.     Lane admits that James P. Jordan ("Jordan") was a member of the WesCorp board of directors and was the Vice Chairman of the WesCorp board. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 13 and on that basis denies those allegations.

14.     Lane admits that Timothy Kramer ("Kramer") was a member of the WesCorp board of directors and served as the Secretary and Treasurer of the WesCorp board.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 14 and on that basis denies those allegations.

15.     Lane admits that Robin J. Lentz ("Lentz") was a member of the WesCorp board of directors. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 15 and on that basis denies those allegations.

16.     Lane admits that John M. Merlo ("Merlo") was a member of the WesCorp board of directors and that he is a resident of California. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 16 and on that basis denies those allegations.

17.     Lane admits that Gordon Dames ("Dames") was a member of the WesCorp board of directors. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 17 and on that basis denies those allegations.

18.     Lane admits that William Cheney ("Cheney") was a member of the WesCorp board of directors. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 18 and on that basis denies those allegations.

19.     Lane admits that Warren Nakamura ("Nakamura") was a member of the WesCorp board of directors. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 19 and on that basis denies those allegations.

20.     Lane admits that Brian Osberg ("Osberg") was a member of the WesCorp board of directors. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 20 and on that basis denies those allegations.

21.     Lane admits that David Rhamy ("Rhamy") was a member of the WesCorp board of directors. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 21 and on that basis denies those allegations.

22.     Lane admits that Sharon Updike ("Updike") was a member of the WesCorp board of directors. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 22 and on that basis denies those allegations.

23.     Lane admits the allegations of Paragraph 23.

24.     Lane admits that WesCorp's Asset and Liability Committee ("ALCO") had oversight responsibility for WesCorp's asset liability management process, including investments. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 24 and on that basis denies those allegations, except to the extent they reference the contents of WesCorp's corporate policies, which speak for themselves. Lane refers to WesCorp's corporate policies for their contents and denies any characterization inconsistent with their terms.

25.     Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25 and on that basis denies those allegations.

26.     Lane admits that board members attended ALCO meetings and received ALCO materials along with their monthly board packages. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 26 and on that basis denies those allegations.

27.     Lane admits that WesCorp's budget was reviewed by the budget committee, which recommended it before it was approved by the board. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 27 and on that basis denies those allegations.

28.     Paragraph 28 contains legal conclusions, to which no response is required. To the extent the allegations require a response, they are denied.

29.     Paragraph 29 contains legal conclusions, to which no response is required.

## Summary of Claims

30.     Lane admits that WesCorp was a non-profit corporate credit union, that its members were credit unions, and that it provided its members with banking and investment services for their funds.  The remaining allegations of Paragraph 30 contain legal conclusions, to which no response is required.  To the extent the remaining allegations require a response, they are denied.

31.     Lane admits that WesCorp was a leading corporate federal credit union and provided its members with banking and investment services for their funds.  Lane also admits that Siravo became President and CEO of WesCorp in 2002.  Lane denies the remaining allegations of Paragraph 31.

32.     Lane admits that WesCorp invested its members' funds and borrowed funds in securities, including private label mortgage backed securities ("MBS"), including MBS that were not guaranteed by the United States or its agencies. Lane denies the remaining allegations of Paragraph 32.

33.     Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33 and on that basis denies them.

34.     Lane admits that WesCorp used income from its investments to pay operating expenses.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 34 and on that basis denies those allegations.

35.     Lane denies the allegations of Paragraph 35.

36.     Lane admits that WesCorp invested in MBS, including MBS based on reduced-documentation Option ARM loans.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 36 and on that basis denies those allegations.

37.     Lane denies the allegations of Paragraph 37.

38.     Lane admits that WesCorp invested in MBS, including MBS based on reduced documentation Option ARM loans.  Lane lacks knowledge or

1    information sufficient to form a belief as to the remaining allegations of

2    Paragraph 38 and on that basis denies those allegations.

3        39.    Lane admits that WesCorp purchased AAA-rated and AA-rated

4    MBS that were underwritten by the world's leading investment banks and denies

5    the remaining allegations of Paragraph 39.

6        40.    Lane lacks knowledge or information to form a belief as to the truth

7    of the allegations of Paragraph 40, and on that basis denies them, except to the

8    extent they reference the contents of WesCorp's 2009 financial statements, which

9    speak for themselves.  Lane refers to WesCorp's 2009 financial statements for

10   their contents and denies any characterization inconsistent with their terms.

11       41.    Lane lacks knowledge or information sufficient to form a belief as to

12   the truth of the allegations of Paragraph 41, and on that basis denies those

13   allegations.

14       42.    Lane admits that he and Siravo executed an agreement, which speaks

15   for itself.  Lane refers to the agreement for its contents and denies any

16   characterization inconsistent with its terms.  Lane lacks knowledge or

17   information to form a belief as to the truth of the remaining allegations of

18   Paragraph 42, and on that basis denies those allegations.

19       43.    Lane denies the allegations of Paragraph 43.

20                        **Factual Allegations**

21   **The Federal Credit Union System**

22       44.    Lane admits that the federal credit union system is a three-tier system

23   consisting of (1) one wholesale corporate credit union (U.S. Central Federal

24   Credit Union); (2) retail corporate credit unions; and (3) "natural person" credit

25   unions.  Lane further admits that the wholesale corporate credit union provides

26   services to the retail corporate credit unions, while the retail corporate credit

27   unions provide services to both federally-chartered and state-chartered natural

28   person credit unions.  Lane lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations of Paragraph 44 and on that basis denies those allegations.

45.    Lane admits that WesCorp was a retail corporate credit union.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 45 and on that basis denies those allegations.

46.    Lane admits the allegations of Paragraph 46.

47.    Lane admits that retail corporate credit unions provide services and support to their natural person credit union members.  Lane admits that retail corporate credit unions offer their natural person credit unions banking and investment services for their funds, and that these services may include settlement of transactions such as checks, ATM and credit card transactions and wire transfers, and that they allow their members to borrow funds.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 47 and on that basis denies those allegations.

48.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48 and on that basis denies them, except to the extent they reference the contents of WesCorp's website, which speaks for itself.  Lane refers to WesCorp's website for its contents and denies any characterization inconsistent with its terms.

49.    Lane admits that WesCorp had by-laws, which speak for themselves. Lane refers to WesCorp's bylaws for their contents and denies any characterization inconsistent with their terms.

50.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50 and on that basis denies them.

51.    Lane admits the allegations of Paragraph 51.

**The Officer Defendants' Responsibilities and Duties**

52.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 52 and on that basis denies those

allegations, except to the extent the allegations reference the contents of WesCorp's by-laws and corporate policies, which speak for themselves. Lane refers to WesCorp's by-laws and corporate policies for their contents and denies any characterization inconsistent with their terms.

53. Lane admits that Siravo served as President and CEO of WesCorp, and that he had responsibilities for overseeing WesCorp's operations and investments. Lane denies the remaining allegations of Paragraph 53.

54. Lane admits that Siravo served as President and CEO of WesCorp. The remaining allegations of Paragraph 54 contain legal conclusions, to which no response is required. To the extent that a response is required, they are denied.

55. Lane admits that he served as Chief Financial Officer of WesCorp and had responsibilities for WesCorp's financial statements, financial operations, and budgets. Lane denies the remaining allegations of Paragraph 55.

56. Lane admits that Burrell served as Chief Investment Officer for WesCorp and had responsibilities for WesCorp's investments and for supervising WesCorp's Investment Department. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 56 and on that basis denies those allegations.

57. Lane denies the allegations of Paragraph 57.

58. Lane admits that Sidley served as Vice President of Risk Assessment, and that the Director of Investment Credit Services reported to Sidley. Lane further admits that Sidley had responsibilities with respect to WesCorp's investment credit policies and procedures. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 58 and on that basis denies those allegations.

59. Lane denies that the Asset/Liability Staff Committee ("ALCS") had the responsibilities as described in Paragraph 59. Lane lacks knowledge or

1   information sufficient to form a belief as to the truth of the remaining allegations

2   of Paragraph 59 and on that basis denies those allegations.

3       60.     Lane admits that Siravo, Burrell and Lane served as voting members

4   of ALCO and ALSC, and that Sidley served as a non-voting member of ALSC

5   and a staff liaison to ALCO.  Lane denies the remaining allegations of Paragraph

6   60.

7   **WesCorp's Era of Growth**

8       61.     Lane lacks knowledge or information sufficient to form a belief as to

9   the truth of the allegations of Paragraph 61 and on that basis denies them.

10      62.     Lane admits that Sirvo became President and CEO of WesCorp in

11  2002.  Lane lacks knowledge or information sufficient to form a belief as to the

12  remaining allegations of Paragraph 62 and on that basis denies those allegations.

13      63.     Lane lacks knowledge or information sufficient to form a belief as to

14  the truth of the allegations of Paragraph 63 and on that basis denies them.

15      64.     Lane lacks knowledge or information sufficient to form a belief as to

16  the truth of the allegations of Paragraph 64 and on that basis denies them.

17      65.     Lane lacks knowledge or information sufficient to form a belief as to

18  the truth of the allegations of Paragraph 65 and on that basis denies them.

19      66.     Lane lacks knowledge or information sufficient to form a belief as to

20  the truth of the allegations of Paragraph 66 and on that basis denies them.

21      67.     Lane admits that WesCorp invested in MBS, including private label

22  MBS that had higher yields than MBS issued by government agencies.  Lane

23  lacks knowledge or information sufficient to form a belief as to the truth of the

24  remaining allegations of Paragraph 67 and on that basis denies those allegations.

25      68.     Lane lacks knowledge or information sufficient to form a belief as to

26  the truth of the allegations of Paragraph 68 and on that basis denies them, except

27  to the extent the allegations reference the contents of WesCorp's corporate

28

policies, which speak for themselves.  Lane refers to WesCorp's corporate policies for their contents and denies any characterization inconsistent with their terms.

69.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 69 and on that basis denies them.

70.    Lane admits that his compensation and the compensation of other WesCorp executives increased from 2002 to 2008, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 70 and on that basis denies those allegations.

**WesCorp's Private Label MBS Investments**

71.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 71 and on that basis denies them.

72.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 72 and on that basis denies them.

73.    Lane admits that WesCorp invested in AAA-rated and AA-rated private label MBS.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 73 and on that basis denies those allegations, except to the extent the allegations reference the contents of the NCUA's regulations and WesCorp's investment policies, which speak for themselves.  Lane refers to the NCUA's regulations and WesCorp's investment policies for their contents and denies any characterization inconsistent with their terms.

74.    Lane admits that between 2004 and 2007 WesCorp invested in MBS, including Collateralized Debt Obligations ("CDOs") and Option ARM MBS. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 74 and on that basis denies those allegations.

75.    Lane admits that MBS are shares in a pool of mortgages and CDOs are shares in a pool of MBS.  Lane also admits that there are risks associated with

1   investments in CDOs.  Lane lacks knowledge or information sufficient to form a

2   belief as to the truth of the remaining allegations of Paragraph 75 and on that

3   basis denies those allegations

4       76.    Lane admits that WesCorp purchased CDOs.  Lane lacks knowledge

5   or information sufficient to form a belief as to the truth of the remaining

6   allegations of Paragraph 76 and on that basis denies those allegations.

7       77.    Lane admits that Option ARM MBS are investments in Option

8   ARM mortgages, and that Option ARM mortgages have payment terms and can

9   have a negative amortization.  Lane lacks knowledge or information sufficient to

10  form a belief as to the remaining allegations of Paragraph 77 and on that basis

11  denies those allegations.

12      78.    Lane lacks knowledge or information sufficient to form a belief as to

13  the truth of the allegations of Paragraph 78 and on that basis denies them.

14      79.    Lane lacks knowledge or information sufficient to form a belief as to

15  the truth of the allegations of Paragraph 79 and on that basis denies them.

16      80.    Lane admits that WesCorp invested in Option ARM MBS, including

17  Option ARM MBS that included reduced-documentation Option ARM loans.

18  Lane lacks knowledge or information sufficient to form a belief as to the truth of

19  the remaining allegations of Paragraph 80 and on that basis denies those

20  allegations.

21      81.    Lane admits that MBS investments were sold in tranches and that

22  WesCorp invested in some AAA-rated and AA-rated MBS that paid a higher

23  yield than other AAA-rated and AA-rated MBS.  Lane lacks knowledge or

24  information sufficient to form a belief as to the truth of the allegations of

25  Paragraph 81 and on that basis denies those allegations.

26      82.    Lane admits that WesCorp invested in AA-rated MBS.  Lane lacks

27  knowledge or information sufficient to form a belief as to the truth of the

28  remaining allegations of Paragraph 82 and on that basis denies those allegations.

83.     Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 83 and on that basis denies them.

84.     Lane admits that WesCorp invested in AAA-rated Option ARM MBS.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 84 and on that basis denies those allegations.

**WesCorp's Budgets**

85.     Lane admits the allegations of Paragraph 85.

86.     Paragraph 86 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

87.     Paragraph 87 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 87 and on that basis denies them.

88.     The allegations of Paragraph 88 reference the contents of WesCorp's budgets and an executive summary, which speak for themselves.  Lane refers to WesCorp's budgets and the executive summary for their contents and denies any characterization inconsistent with their terms.  To the extent that the allegations of Paragraph 88 refer to facts beyond those documents, Lane denies them.

89.     Lane denies the allegations of Paragraph 89.

90.     Lane admits that when he was WesCorp's CFO, WesCorp's management proposed budgets that were considered and recommended by the Budget Committee and adopted by WesCorp's Board of Directors, and that he worked on the budgets with Siravo and Burrell.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 90 and on that basis denies those allegations, except to the extent the allegations reference the contents of WesCorp's budgets, which speak for

themselves.  Lane refers to WesCorp's budgets for their contents and denies any characterization inconsistent with their terms.

91.     Lane denies the allegations of Paragraph 91.

92.     Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 92 and on that basis denies them.

93.     Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 93 and on that basis denies them.

94.     Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 94, and on that basis denies them, except to the extent they reference the contents of WesCorp's budgets, which speak for themselves.  Lane refers to WesCorp's budgets for their contents and denies any characterization inconsistent with their terms.

95.     The allegations of Paragraph 95 reference the contents of materials supplied to the Budget Committee about budgets, which speak for themselves. Lane refers to these materials for their contents and denies any characterization inconsistent with their terms.  To the extent that the allegations of Paragraph 95 go beyond those documents, Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 95, and on that basis denies them.

96.     Lane admits that directors attended ALCO meetings.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 96 and on that basis denies them.

97.     Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 97 and on that basis denies them, except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves.  Lane refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with their terms.

98.     Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 98 and on that basis denies them.

99.     Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 99 and on that basis denies them.

100.    Paragraph 100 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

101.    Paragraph 101 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

102.    Lane denies the allegations of Paragraph 102.

103.    Lane denies the allegations of Paragraph 103.

104.    Lane denies the allegations of Paragraph 104.

**MBS Concentration Risk**

105.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 105 and on that basis denies them, except to the extent they reference the contents of the NCUA's regulations, which speak for themselves.  Lane refers to the NCUA's regulations for their contents and denies any characterization inconsistent with their terms.

106.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 106 and on that basis denies them.

107.    Lane admits that WesCorp provided services to its members and invested their funds.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 107 and on that basis denies those allegations.

108.    Lane admits that WesCorp's Board of Directors was responsible for setting investment policies.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 108 and on that basis denies those allegations, except to the extent they reference the contents of WesCorp's corporate and investment policies, which speak for themselves.

Lane refers to WesCorp's corporate and investment policies for their contents and denies any characterization inconsistent with their terms.

109. Lane admits that the ALCO had responsibilities for reviewing WesCorp's investments. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 109 and on that basis denies those allegations.

110. Lane admits that Sidley headed WesCorp's Risk Assessment Department and Burrell headed the Investment Department and that these two departments were responsible for investment concentration limits and diversification of investments. Lane denies the remaining allegations of Paragraph 110.

111. Lane admits that WesCorp's board adopted policies regarding its investment securities, which corporate policies speak for themselves, and that from time to time it amended its policies. Lane refers to WesCorp's corporate policies for their contents and denies any characterization inconsistent with their terms. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 111 and on that basis denies those allegations.

112. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 112 and on that basis denies them.

113. Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 113 and on that basis denies them.

114. Lane admits that WesCorp invested in AAA-rated private label MBS. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 114 and on that basis denies those allegations.

/ / / / /

/ / / / /

**The Risks of Option ARM MBS**

115.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 115 and on that basis denies those allegations, except to the extent they reference the contents of WesCorp's corporate policies, which speak for themselves. Lane refers to WesCorp's corporate policies for their contents and denies any characterization inconsistent with their terms.

116.    Lane admits that WesCorp purchased Option ARM MBS, but denies that they were a new security type. Lane lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 116 and on that basis denies those allegations.

117.    Lane admits that WesCorp purchased Option ARM MBS with the approval of WesCorp's Board of Directors and the ALCO, but denies that they were a new security type. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 117 and on that basis denies those allegations.

118.    Lane admits that, with the approval of WesCorp's Board of Directors and the ALCO, WesCorp purchased Option ARM MBS, but denies that they were a new security type. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 118 and on that basis denies those allegations.

119.    Lane denies Option ARM MBS were a new type of security and denies the allegations of Paragraph 119.

120.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 120 and on that basis denies them.

121.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 121 and on that basis denies them.

122.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 122 and on that basis denies them.

123.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 123 and on that basis denies them.

124.    Lane denies the allegations of Paragraph 124.

125.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 125 and on that basis denies them.

126.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 126 and on that basis denies them.

127.    Paragraph 127 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

128.    Lane admits that WesCorp purchased AAA-rated and AA-rated MBS, but denies that the Officer Defendants did not monitor concentrations of Option ARM MBS.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 128 and on that basis denies those allegations.

129.    Lane denies that WesCorp was unaware of the concentrations of MBS.  Lane lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 129 and on that basis denies them.

130.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 130 and on that basis denies them.

131.    Lane admits that the Officer Defendants and Directors were aware that MBS investments contained risks.  Lane lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 131 and on that basis denies them.

132.    Lane admits that Burrell served as the officer in charge of the Investment Department and the Chief Investment Officer and that Sidley served

as the officer in charge of the Investment Credit Services Department and as the Chief Risk Officer.  Paragraph 132 contains legal conclusions, to which no response is required.  To the extent these allegations require a response, they are denied.  Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 132 and on that basis denies those allegations.

133.    Lane denies the allegations of Paragraph 133.

**The Risks in WesCorp's Portfolio**

134.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 134 and on that basis denies them.

135.    Lane admits that Officer Defendants and Directors attended ALCO meetings at which there were presentations about the economy, investments and WesCorp's investment strategy.  Lane lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 135 and on that basis denies those allegations.

136.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 136 and on that basis denies them.

137.    Lane admits that Officer Defendants and Directors attended ALCO meetings at which there were presentations on interest rates and the housing market.  Lane lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 137 and on that basis denies those allegations.

138.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 138 and on that basis denies them, except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves.  Lane refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with its terms.

139.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139 and on that basis denies them, except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves.  Lane refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with its terms.

140.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 140 and on that basis denies them.

141.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141 and on that basis denies them, except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves.  Lane refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with its terms.

142.    Lane lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142 and on that basis denies them, except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves.  Lane refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with its terms.

143.    Lane admits that WesCorp stopped purchasing AA-rated MBS, and it continued to purchase AAA-rated MBS in 2007.  Lane lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 143 and on that basis denies those allegations.

144.    Lane admits that WesCorp continued to purchase AAA-rated Option ARM MBS in 2007 and that it stopped purchasing private label MBS in 2007.  Paragraph 144 contains legal conclusions, to which no response is required.  To the extent these allegations require a response, they are denied.  Lane denies the remaining allegations of Paragraph 144.

145.    Paragraph 145 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

146. Lane admits that WesCorp continued to purchase AAA-rated Option ARM MBS in 2007 and that it stopped purchasing private label MBS in 2007. Paragraph 146 contains legal conclusions, to which no response is required. To the extent these allegations require a response, they are denied. Lane denies the remaining allegations of Paragraph 146.

147. Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 147 and on that basis denies them, except to the extent they reference the contents of the NCUA's regulations, which speak for themselves. Lane refers to the NCUA's regulations for their contents and denies any characterization inconsistent with their terms. Paragraph 147 also contains legal conclusions, to which no response is required. To the extent these allegations require a response, they are denied.

**WesCorp's Collapse**

148. Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 148 and on that basis denies them.

149. Lane denies that the Officer Defendants or the Director Defendants caused WesCorp's collapse. Lane lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 149 and on that basis denies those allegations.

150. Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 150 and on that basis denies them.

151. Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 151 and on that basis denies them.

152. Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 152 and on that basis denies them.

153. Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 153 and on that basis denies them.

/ / / / /

**The SERP Payments**

154.    Lane admits that in November 2001, WesCorp's Board of Directors authorized a Supplemental Retirement Plan (the "Executive SERP") for certain WesCorp executives.  Lane lacks information or knowledge sufficient to form a belief as to the truth of the rest of the allegations of Paragraph 154 and on that basis denies them.

155.    The allegations of Paragraph 155 reference the contents of documents relating to the Executive SERP, which speak for themselves.  Lane refers to the documents comprising the Executive SERP for their contents and denies any characterization inconsistent with its terms.

156.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 156 and on that basis denies them.

157.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 157 and on that basis denies them.

158.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 158 and on that basis denies them.

159.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 159 and on that basis denies them.

160.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 160 and on that basis denies them.

161.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 161 and on that basis denies them.

162.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 162 and on that basis denies them.

163.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 163 and on that basis denies them.

164.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 164 and on that basis denies them.

165.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 165 and on that basis denies them.

166.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 166 and on that basis denies them.

167.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 167 and on that basis denies them.

168.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 168 and on that basis denies them.

169.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 169 and on that basis denies them.

170.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 170 and on that basis denies them.

171.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 171 and on that basis denies them.

172.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 172 and on that basis denies them.

173.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 173 and on that basis denies them.

174.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 174 and on that basis denies them.

175.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 175 and on that basis denies them.

176.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 176 and on that basis denies them.

177.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 177 and on that basis denies them.

178.    Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 178 and on that basis denies them.

179.    Lane admits that he was a participant in the Executive SERP and that under the Executive SERP, his expected retirement date as 2015.  Lane denies the remaining allegations of Paragraph 179.

180.    Lane admits that he and Siravo executed an Early Payout Agreement, which speaks for itself.  Lane refers to the agreement for its contents and denies any characterization inconsistent with its terms.

181.    Lane denies the allegations in Paragraph 181.

182.    Lane admits that he received payments in 2006, 2007 and 2008 for the amounts set forth in Paragraph 182, in addition to his base compensation and bonus, and that he left his employment with WesCorp on April 8, 2008.  Lane denies the rest of the allegations of Paragraph 182.

## First Claim for Relief

### (Breach of Fiduciary Duties – Against the Officer Defendants)

183.    Lane incorporates by reference his responses to paragraphs 1 through 153 as though set forth in full.

184.    Paragraph 184 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

185.    Paragraph 185 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

186.    Paragraph 186 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

187.    Paragraph 187 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

188.    Paragraph 188 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

189.    Paragraph 189 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

190.    Paragraph 190 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

191.    Paragraph 191 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

192.    Paragraph 192 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.  Lane denies that he breached any duties that he owed to WesCorp.  Lane lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 192 and on that basis denies those allegations.

193.    Paragraph 193 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.  Lane denies that he breached any duties that he owed to WesCorp.  Lane lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 193 and on that basis denies those allegations.

194.    Paragraph 194 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

195.    Paragraph 195 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.  Lane lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 195 and on that basis denies those allegations.

196.    Paragraph 196 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.  Lane denies that he breached any duties that he owed to WesCorp.  Lane lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 196 and on that basis denies those allegations.

197.    Paragraph 197 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, Lane lacks information

1    or knowledge sufficient to form a belief as to the truth of the remaining

2    allegations of Paragraph 197 and on that basis denies those allegations.

3        198.    Lane denies the allegations of Paragraph 198.

4                            **Second Claim for Relief**

5    **(Breach of Fiduciary Duties – Against Defendants Rhamy, Updike, Dames,**

6                        **Osberg, Longson and Harvey)**

7        199.    Lane incorporates by reference his responses to paragraphs 1 through

8    153 as though set forth in full.  Lane is not named as a defendant to this Claim

9    and accordingly no response is required to paragraphs 200 through 205.  To the

10   extent the allegations require a response to paragraphs 200 through 205, Lane

11   lacks information or knowledge sufficient to form a belief as to the truth of the

12   allegations, and on that basis denies them.

13       200.    Lane is not named as a defendant to this Claim and accordingly no

14   response is required.

15       201.    Lane is not named as a defendant to this Claim and accordingly no

16   response is required.

17       202.    Lane is not named as a defendant to this Claim and accordingly no

18   response is required.

19       203.    Lane is not named as a defendant to this Claim and accordingly no

20   response is required.

21       204.    Lane is not named as a defendant to this Claim and accordingly no

22   response is required.

23       205.    Lane is not named as a defendant to this Claim and accordingly no

24   response is required.

25   / / / / /

26   / / / / /

27   / / / / /

28   / / / / /

**Third Claim for Relief**

**(Breach of Fiduciary Duties – Against Defendants Jordan, Nakamura, Cheney, Rhamy, Kramer, Lentz, and Osberg)**

206.   Lane incorporates by reference his responses to paragraphs 1 through 153 as though set forth in full.  Lane is not named as a defendant to this Claim and accordingly no response is required to paragraphs 207 through 212.  To the extent the allegations require a response to paragraphs 207 through 212, Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations, and on that basis denies them.

207.   Lane is not named as a defendant to this Claim and accordingly no response is required.

208.   Lane is not named as a defendant to this Claim and accordingly no response is required.

209.   Lane is not named as a defendant to this Claim and accordingly no response is required.

210.   Lane is not named as a defendant to this Claim and accordingly no response is required.

211.   Lane is not named as a defendant to this Claim and accordingly no response is required.

212.   Lane is not named as a defendant to this Claim and accordingly no response is required.

**Fourth Claim for Relief**

**(Breach of Fiduciary Duties – Against All Director Defendants)**

213.   Lane incorporates by reference his responses to paragraphs 1 through 153 as though set forth in full.  Lane is not named as a defendant to this Claim and accordingly no response is required to paragraphs 214 through 220.  To the extent the allegations require a response to paragraphs 214 through 220, Lane

lacks information or knowledge sufficient to form a belief as to the truth of the allegations, and on that basis denies them.

214.    Lane is not named as a defendant to this Claim and accordingly no response is required.

215.    Lane is not named as a defendant to this Claim and accordingly no response is required.

216.    Lane is not named as a defendant to this Claim and accordingly no response is required.

217.    Lane is not named as a defendant to this Claim and accordingly no response is required.

218.    Lane is not named as a defendant to this Claim and accordingly no response is required.

219.    Lane is not named as a defendant to this Claim and accordingly no response is required.

220.    Lane is not named as a defendant to this Claim and accordingly no response is required.

## Fifth Claim for Relief

### (Breach of Fiduciary Duty – Against Defendants Siravo and Swedberg)

221.    Lane incorporates by reference paragraphs 1 through 23 and 154 through 178 as though set forth in full.  Lane is not named as a defendant to this Claim and accordingly no response is required to paragraphs 222 through 226. To the extent the allegations require a response to paragraphs 222 through 226, Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations, and on that basis denies them.

222.    Lane is not named as a defendant to this Claim and accordingly no response is required.

223.    Lane is not named as a defendant to this Claim and accordingly no response is required.

1
2
224. Lane is not named as a defendant to this Claim and accordingly no response is required.

3
4
225. Lane is not named as a defendant to this Claim and accordingly no response is required.

5
6
226. Lane is not named as a defendant to this Claim and accordingly no response is required.

7
**Sixth Claim for Relief**

8
**(Fraud – Against Defendants Siravo and Swedberg)**

9
10
11
12
13
14
227. Lane incorporates by reference paragraphs 1 through 23 and 154 through 178 as though set forth in full. Lane is not named as a defendant to this Claim and accordingly no response is required to paragraphs 228 through 234. To the extent the allegations require a response to paragraphs 228 through 234, Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations, and on that basis denies them.

15
16
228. Lane is not named as a defendant to this Claim and accordingly no response is required.

17
18
229. Lane is not named as a defendant to this Claim and accordingly no response is required.

19
20
230. Lane is not named as a defendant to this Claim and accordingly no response is required.

21
22
231. Lane is not named as a defendant to this Claim and accordingly no response is required.

23
24
232. Lane is not named as a defendant to this Claim and accordingly no response is required.

25
26
233. Lane is not named as a defendant to this Claim and accordingly no response is required.

27
28
234. Lane is not named as a defendant to this Claim and accordingly no response is required.

**Seventh Claim for Relief**

**(Breach of Fiduciary Duty – Against Defendant Siravo)**

235.    Lane incorporates by reference paragraphs 1 through 23 and 154 through 178 as though set forth in full.  Lane is not named as a defendant to this Claim and accordingly no response is required to paragraphs 236 through 239. To the extent the allegations require a response to paragraphs 236 through 239, Lane lacks information or knowledge sufficient to form a belief as to the truth of the allegations, and on that basis denies them, unless otherwise noted.

236.    Lane is not named as a defendant to this Claim and accordingly no response is required.

237.    Lane is not named as a defendant to this Claim and accordingly no response is required.

238.    Lane denies the allegations in Paragraph 238.

239.    Lane denies the allegations in Paragraph 239.

**Eighth Claim for Relief**

**(Unjust Enrichment – Against Defendant Lane)**

240.    Lane incorporates by reference his responses to paragraphs 1 through 153, 179 through 182, as though set forth in full.

241.    Lane denies the allegations of paragraph 241.

242.    Lane denies the allegations of paragraph 242.

243.    Lane admits that he received payments in 2006, 2007 and 2008 for the amounts set forth in Paragraph 243, in addition to his base compensation and bonus, and that he left his employment with WesCorp on April 8, 2008.  Lane denies the rest of the allegations of Paragraph 243.

244.    Lane denies the allegations of paragraph 244.

/ / / / /

/ / / / /

/ / / / /

# Affirmative Defenses

## First Affirmative Defense – Consent, Approval, Acquiescence, Participation, Ratification

245. The Second Amended Complaint, and each cause of action alleged therein against Lane, is barred, in whole or in part, because of NCUA's own consent approval, acquiescence, participation and/or ratification at any time in any activity that NCUA challenges as improper. In addition, the claims against Lane are barred because the acts stated were ratified or approved by other state and federal agencies or entities.

246. Lane is informed and believes and on that basis alleges that the NCUA affirmatively chose to give WesCorp the highest level of expanded investment authority given to any corporate credit union.

247. In particular but without limitation, the NCUA gave WesCorp authority to invest in securities rated by the ratings agencies as low as BBB. *See* 12 C.F.R. Part 704, Appx. B (Oct. 25, 2002). BBB is six levels below the lowest rated investment that WesCorp ever made (AA).

248. NCUA's Office of Corporate Credit Unions ("OCCU") provided supervision and oversight of WesCorp, including its investment strategies and risk assessment. This supervision was done, among other ways, through an on-site examiner who was physically located at WesCorp's facilities on a full-time basis, examining WesCorp's activities. The OCCU examiner's efforts resulted in yearly examination reports, analyzing and assessing WesCorp's operations, including but not limited to its investment strategies and risk assessment.

249. In addition, the NCUA's Office of Capital Markets ("OCM") provided assistance to NCUA's OCCU examiner by, among other things, helping to evaluate WesCorp's investments and related asset and liability issues.

250. As a result of NCUA's constant oversight and examination efforts, NCUA was, upon information and belief, at all times aware of WesCorp's

monitoring and risk-protection efforts and, upon further information and belief, consistently approved of WesCorp's efforts. WesCorp's efforts which NCUA, upon information and belief, knew of and approved of included, among other things: (i) limiting investments to primarily high grade securities with AA and AAA ratings; (ii) conducting thorough credit reviews or proposed security purchases prior to purchasing; (iii) conducting credit reviews on newly-issued security types; (iv) conducting annual credit reviews on existing securities; (v) preparing monthly watch lists for, and keeping appropriate oversight of, securities that were not performing well; (vi) creating concentration limits as to individual issues; (vii) creating concentration limits as to different security types; and (viii) publishing monthly reports on credit status and providing the WesCorp Board with substantial information regarding concentration limits and credit enhancement levels on WesCorp's security portfolios.

251.  NCUA, through its oversight and examination efforts, was, upon information and belief, also aware of the fact that Option ARM MBS were not a "new" security type that WesCorp began investing in. NCUA regulations and WesCorp policies refer to "new" security types as those securities which have different collateral than other securities. As NCUA was aware at all relevant times, WesCorp had a long history of purchasing securities with the same type of caollateral – mortgages – as Option ARM MBS. Upon information and belief, NCUA and OCCU examiners ratified WesCorp's investment in Option ARM MBS and never suggested that Option ARM MBS were a "new" security type which WesCorp should review as such.

252.  NCUA, though its OCCU examiners, the OCCU examination reports and other efforts and statements, consistently approved of WesCorp's investment strategies and investment concentrations, including WesCorp's investments in Option ARM MBS.

253.   Prior to its involvement in this lawsuit, NCUA never made any claims that WesCorp's investment strategies violated NCUA regulations or WesCorp policies.  Similarly, the OCCU examination reports never made such suggestions.

254.   NCUA at all times, upon information and belief, approved of WesCorp's investment strategies, policies and procedures.

255.   NCUA also, upon information and belief, approved of WesCorp's risk assessment efforts.  In those instances, to the extent there were any, where NCUA, through the OCCU examination reports, raised any concerns regarding WesCorp's risk assessment efforts, WesCorp promptly addressed those concerns and NCUA subsequently, in later OCCU examination reports and/or through other statements or actions, approved of WesCorp's efforts.

256.   WesCorp in fact, upon information and belief, promptly addressed any concerns raised by NCUA in an OCCU examination report and, upon information and belief, obtained subsequent approval from NCUA of those efforts.

257.    In at least 2006 and 2007, after the investments at issue in NCUA's complaint were made, NCUA continued to approve of WesCorp's management, risk assessment and ability to operate within regulatory limits.

258.   In light of the foregoing, NCUA knowingly ratified and approved of the policies, strategies and actions which are now complained of in the Second Amended Complaint.

**Second Affirmative Defense – Failure to State Claim**

259.   The Second Amended Complaint fails to state facts sufficient to constitute claims against Lane upon which relief can be granted.

**Third Affirmative Defense – Standing**

260.   The NCUA lacks standing to assert the claims alleged in this action.

**Fourth Affirmative Defense – Business Judgment Rule**

261.    The First and Seventh Claims for Relief are barred by the business judgment rule because Lane acted in good faith, acted in the best interests of WesCorp, and exercised the care that an ordinarily prudent person would have in similar circumstances.

**Fifth Affirmative Defense – Comparative Negligence**

262.    The NCUA's recovery, if any, must be reduced to the extent that its injuries, losses and/or damages, if any, were caused by the NCUA's own negligence.

**Sixth Affirmative Defense – Ratification**

263.    The NCUA's Claims are barred, in whole or in part, by the NCUA's knowledge, acquiescence, ratification, approval and oversight of WesCorp's investment strategies, risk asset efforts and purchase of MBS securities.  In addition, Plaintiff had knowledge of the details of Lane's Executive Retention Program Early Payout Agreement, approved of it, and intended that Lane rely on this approval.  Lane had and has no reason to believe the Agreement was improper and reasonably relied on Plaintiff's approval.

**Seventh Affirmative Defense – Estoppel**

264.    The NCUA's Claims are barred, in whole or in part, by the doctrine of estoppel because, inter alia, WesCorp complied with the NCUA's regulations and directives and/or because WesCorp's investments were reviewed, accepted and approved by the NCUA and its examiners.  In addition, Plaintiff had knowledge of the details of Lane's Executive Retention Program Early Payout Agreement, approved of it, and intended that Lane rely on this approval.  Lane had and has no reason to believe the Agreement was improper and reasonably relied on Plaintiff's approval.

**Eighth Affirmative Defense – Waiver**

265.    The NCUA's Claims are barred, in whole or in part, by the doctrine of waiver.

**Ninth Affirmative Defense – Laches**

266.    The NCUA's Claims are barred, in whole or in part, by the doctrine of laches.

267.    Plaintiff had knowledge of Lane's Executive Retention Program Early Payout Agreement for at least four years and 210 days before bringing its Sixth Claim for Relief.  Plaintiff's delay was unreasonable and without justification. Lane has been prejudiced by this delay by, in addition to other factors, allowing evidence to defend against this claim to spoil.

**Tenth Affirmative Defense – Statute of Limitations**

268.    The NCUA's Claims are barred, in whole or in part, by the applicable statute(s) of limitations.

**Eleventh Affirmative Defense – Intervening Cause**

269.    The NCUA's Claims are barred, in whole or in part, because WesCorp's losses, if any, were the result of one or more intervening causes, or were caused by the acts and/or failures of other persons and/or entities, including but not limited to the NCUA, rating agencies, underwriters, brokers, issuers, auditors, investment bankers, financial advisors, and counsel.

**Twelfth Affirmative Defense – Superseding Cause**

270.    The NCUA's Claims are barred, in whole or in part, because the acts and conduct of Lane, including but not limited to the purchases of securities and amendments of, and/or changes, to the Supplemental Executive Retention Programs were approved and/or ratified by WesCorp's Board of Directors, Executive Committee, individual directors, and/or the Asset Liability Committee.

**Thirteenth Affirmative Defense – No causation**

271.    The NCUA's Claims are barred, in whole or in part, because Lane did not directly or indirectly cause the alleged damages complained of in the Second Amended Complaint.

**Fourteenth Affirmative Defense – Reliance on others**

272.    The NCUA's Claims are barred, in whole or in part, because the acts or omissions of Lane were made or occurred in reasonable good faith reliance on the statements and representations of others upon which they was entitled to rely, including but not limited to NCUA personnel and examiners, rating agencies, underwriters, brokers, issuers, auditors, investment bankers, financial advisors, and counsel.

**Fifteenth Affirmative Defense – Apportionment**

273.    Any damages that the NCUA may have suffered should be apportioned according to the relative degrees of fault of other persons and/or entities responsible for the NCUA's damages, and any alleged liability of Lane should be reduced accordingly.

**Sixteenth Affirmative Defense – Lack of Injury**

274.    The NCUA's Claims are barred, in whole or in part, because the NCUA has not suffered any legally cognizable injury or damage.

**Seventeenth Affirmative Defense – No Entitlement to Exemplary or Punitive Damages**

275.    NCUA is precluded from recovering exemplary or punitive damages, either in whole or in part, under the applicable provisions of the law, including, without limitation, California Civil Code section 3294, the United States Constitution and/or the California Constitution.

**Eighteenth Affirmative Defense – Accord and Satisfaction**

276.    The NCUA's Eighth Claim for Relief is barred by accord and satisfaction.

**Nineteenth Affirmative Defense – Right to Assert Additional Affirmative Defenses**

277.     Lane presently has insufficient knowledge or information on which to form a belief as to whether there may be additional, as yet unstated, affirmative defenses.  Thus, subject to discovery in this action, Lane expressly reserves his right to assert additional affirmative defenses.

## Counterclaims

For counterclaims, Lane alleges:

### Jurisdiction

278.     The Court has supplemental jurisdiction over these counterclaims under 28 U.S.C. § 1367(a), because these counterclaims and the purported claims alleged by the NCUA all form part of the same case or controversy concerning the parties' rights and responsibilities related to Lane service as an officer and employee of WesCorp.

### Parties

279.     Lane served as CFO of WesCorp from March 9, 1998 to April 18, 2008.

280.     Counter-defendant National Credit Union Administration Board as Liquidator of Western Corporate Federal Credit Union ("NCUA") is the liquidating agent of WesCorp.

### Factual Allegations

**Policy 21**

281.     WesCorp's Board of Directors adopted a resolution regarding indemnification and insurance, codified in WesCorp's book of policies as "Policy 21."

282.     WesCorp agreed in Policy 21 to indemnify WesCorp's current and former "officials" and "employees" "to the maximum extent permitted by either the laws of the state of California or the Model Business Corporation Act" (the

"MBCA") "for any liability asserted against them in connection with judicial or administrative proceedings, formal or informal, to which they are or may become parties by reason of the performance of their official duties."

283.    WesCorp also agreed in Policy 21 that the indemnification "shall include the recovery of reasonable costs and attorneys fees incurred by an individual so indemnified if such individual is required to engage the services of any attorney. . . to secure the indemnity provided herein."

284.    WesCorp also agreed in Policy 21 to "purchase and maintain insurance" on behalf of current and former officials and employees "against any liability asserted against them and expenses reasonably incurred by them in their official capacities and arising out of the performance of their official duties to the extent such insurance is permitted by the applicable state law or the Model Business Corporation Act[.]"

**NCUA's Denial of Advancement**

285.    On January 7, 2011, Lane submitted a request to the NCUA as Liquidating Agent for WesCorp for reimbursement of past defense costs incurred in defending this litigation, advancement of any future defense costs of any future defense costs that he might incur, and indemnification for any costs he incurs in establishing his right to indemnity.  Lane supplemented his request to the Liquidating Agent on February 2, 2011.

286.    The Liquidating Agent has not made a decision after 180 days related to the indemnification requests of Lane and therefore has denied these claims.

287.    All of the claims asserted by the NCUA against Lane in this litigation "arise out of the performance of his official duties" as officers and employees of WesCorp.

288.    Lane has incurred, and continues to incur, attorney's fees and costs in connection with the defense of the claims asserted by the NCUA as Liquidating Agent for WesCorp in this litigation.

## First Counterclaim

### (Advancement of Litigation Costs Under Policy 21)

289.    Lane incorporates by reference and re-alleges each and every allegation contained in paragraphs 281 to 288 as though fully set forth herein.

290.    WesCorp agreed in Policy 21 to indemnify Lane "to the maximum extent permitted by either" California law *or* the MBCA.

291.    The MBCA provides that a corporation must advance defense costs if the corporation has promised by resolution or otherwise indemnification "to the fullest extent permitted by law," as WesCorp did in Policy 21.  MBCA §8.58 expressly states that any such resolution "shall be deemed to *obligate* the corporation to *advance* funds to pay for or reimburse" the defense costs before final disposition of the case.  (emphasis added).

292.    Lane will provide to the NCUA as liquidator of WesCorp the written affirmation and undertaking required for advancement attorneys fees by MBCA §8.53.  Lane will provide a written affirmation that he in good faith believes that he has met the relevant standard of conduct in MBCA §8.51 required for indemnification: that he conducted himself in good faith and in what he reasonably believed was in the best interests of WesCorp.  Lane will also provide a written undertaking to repay any advanced funds if it is ultimately determined that he is not entitled to mandatory indemnification or that he did not meet the standard of conduct under section 8.51.

293.    NCUA as liquidator of WesCorp is obligated to advance to Lane defense costs incurred in this litigation under the provisions of the MBCA that are adopted in Policy 21.

294.    The NCUA has failed to advance Lane his defense costs incurred in this litigation.

295.    Lane has incurred damages as a result of the NCUA's failure to advance his defense costs incurred in this litigation in an amount to be proven at trial, and in excess of $100,000.

### Second Counterclaim

### (Indemnification under California Labor Code 2802)

296.    Lane incorporates by reference and re-alleges each and every allegation contained in paragraphs 281 to 295 as though fully set forth herein.

297.    At all relevant times, Lane was an employee of WesCorp.

298.    California Labor Code Section 2802 provides that an employer "shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties[.]"

299.    NCUA as liquidator of WesCorp is obligated to indemnify and reimburse Lane for his defense costs as they are incurred in this litigation under the California Labor Code Section 2802.

300.    Lane has incurred and paid attorneys fees and costs in defense of the claims asserted by NCUA as liquidator of WesCorp in this litigation.

301.    The NCUA has failed to reimburse Lane for the attorney's fees and costs he has paid to date.

302.    Lane has incurred damages as a result of the NCUA's failure to reimburse him for his attorney fees and costs in an amount to be proven at trial, in excess of $100,000.

### Third Counterclaim

### (Indemnification under Policy 21)

303.    Lane incorporates by reference and re-alleges each and every allegation contained in paragraphs 281 to 302 as though fully set forth herein.

304.    WesCorp agreed in Policy 21 to indemnify Lane "to the maximum extent permitted by either" California law *or* the MBCA.

305.   Lane demands indemnity under Policy 21 to the fullest extent permissible under either California law or the MBCA and/or defense costs to the fullest extent permissible under either California law or the MBCA.

306.   Lane also demands recovery of costs and attorneys fees incurred to secure the indemnity provided for in Policy 21.

307.   If NCUA refuses to indemnify Lane pursuant to Policy 21, they will suffer damages in an amount to be determined.

**Fourth Counterclaim**

**(Declaratory Relief)**

308.   Lane incorporates by reference and re-alleges each and every allegation contained in paragraphs 281 to 307 as though fully set forth herein.

309.   The NCUA is obligated to advance to Lane his attorney's fees and costs incurred in defense of this litigation under Policy 21, the MBCA, and California Labor Code Section 2802.

310.   The NCUA has failed to respond to Lane's request for advancement of his attorney's fees and costs incurred in defense of this litigation.

311.   The rights of the parties with respect to the advancement of attorney's fees and costs incurred in defense of this litigation can be determined only by declaratory relief.

**Fifth Counterclaim**

**(Declaratory Relief)**

312.   WesCorp promised in Policy 21 to "purchase and maintain" insurance "against any liability asserted against" current and former officials and employees.

313.   The Policy that WesCorp purchased was inadequate to fulfill this promise.

314.   WesCorp purchased an insurance policy from CUMIS Insurance Society, which has taken the position that the claims asserted against Lane in this action are excluded from coverage under the insurance policy.

315.    Because the insurance policy does not cover Lane for "any liability," WesCorp breached the promise to provide insurance coverage for Lane in Policy 21.

316.    Because CUMIS invoked various exclusions to deny most coverage to Lane, but for WesCorp's failure to comply with its obligations and obtain adequate insurance coverage, Lane would have been covered for all of the costs and claims related to this litigation.

317.    An actual existing and bona fide controversy exists between Lane, on the one hand, and the NCUA, on the other hand, as to NCUA's liability for advancement and indemnification, in that:

318.    Policy 21 promises to maintain insurance coverage for "any liability" asserted against Lane, yet the CUMIS insurance policy does not cover the current action.

319.    NCUA has declined to pay for Lane's defense costs.

320.    The rights of the parties under Policy 21 can be determined only by declaratory relief.

## Prayer

Wherefore, Lane prays for judgment against plaintiffs as follows:

1.    That Plaintiff NCUA as Liquidating Agent for WesCorp takes nothing by the Complaint and that the Complaint be dismissed with prejudice.

2.    That judgment be entered in favor of Lane, and against Plaintiff.

3.    That the NCUA be ordered to advance Lane's defense costs in this litigation.

4.    That Lane be awarded damages on his counterclaims, in amounts to be determined at trial.

5.    That the Court adjudge and declare that NCUA is obligated to pay to the fullest extent any liability incurred by Lane because of the

inadequate insurance policy purchased by WesCorp in breach of its promise to purchase and maintain insurance under Policy 21.

6.     That Lane be awarded his costs and reasonable attorneys' fees.

7.     That Lane be granted such other and further relief as the Court may deem just and proper.

# Jury Demand

Todd M. Lane hereby demands a trial by jury for all issues so triable.


DATED: September 2, 2011          CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP


                                 By:   /s/ Curtis G. Carll
                                       —————————————————————
                                       Kenneth M. Fitzgerald, Esq.
                                       Curtis G. Carll, Esq.
                                       Attorneys for Defendant
                                       Todd M. Lane