1   RICHARD E. DROOYAN (State Bar No. 065672)
    Richard.Drooyan@mto.com
2   LAURA SMOLOWE (State Bar No. 263012)
    Laura.Smolowe@mto.com
3   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue
4   Thirty-Fifth Floor
    Los Angeles, CA  90071-1560
5   Telephone:  (213) 683-9100
    Facsimile:   (213) 687-3702
6
    Attorneys for Defendants
7   Robert A. Siravo and Thomas E. Swedberg

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10  NATIONAL CREDIT UNION                CASE NO. CV10-01597 GW
    ADMINISTRATION BOARD AS              (MANx)
11  LIQUIDATING AGENT FOR WESTERN
    CORPORATE FEDERAL CREDIT UNION,      **AMENDED ANSWER AND**
12                                       **COUNTERCLAIMS OF**
            Plaintiff,                   **DEFENDANTS ROBERT A.**
13                                       **SIRAVO AND THOMAS E.**
         vs.                             **SWEDBERG TO SECOND**
14                                       **AMENDED COMPLAINT**
    ROBERT A. SIRAVO, TODD M. LANE,
15  ROBERT J. BURRELL, THOMAS E.
    SWEDBERG, and TIMOTHY T. SIDLEY,     **DEMAND FOR JURY TRIAL**
16
            Defendants.
17
    ─────────────────────────────────
18  ROBERT A. SIRAVO and THOMAS E.
    SWEDBERG,
19
            Counterclaimants,
20
         vs.
21
    NATIONAL CREDIT UNION
22  ADMINISTRATION BOARD AS
    LIQUIDATING AGENT FOR WESTERN
23  CORPORATE FEDERAL CREDIT UNION,
24          Counterclaim Defendant.
25
26
27
28
                                         AMENDED ANSWER AND
    15488701.3                           COUNTERCLAIMS OF DEFENDANTS
                                         SIRAVO AND SWEDBERG TO SAC

Defendants Robert A. Siravo ("Siravo") and Thomas E. Swedberg ("Swedberg") hereby answer the Second Amended Complaint of Plaintiff National Credit Union Administration Board ("NCUA") as Liquidating Agent of Western Corporate Federal Credit Union ("WesCorp") as follows:

## JURISDICTION AND VENUE

1. Siravo and Swedberg admit that WesCorp was a credit union with its corporate offices located in San Dimas, California, that WesCorp was placed into conservatorship by the NCUA Board on March 19, 2009, and that WesCorp was placed into involuntary liquidation on October 1, 2010. The remainder of Paragraph 1 contains legal conclusions, to which no response is required.

2. Paragraph 2 contains legal conclusions, to which no response is required. To the extent a response is required, Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 2 and on that basis deny those allegations.

3. Paragraph 3 contains legal conclusions, to which no response is required, but Siravo and Swedberg admit that the court has subject matter jurisdiction.

4. Paragraph 4 contains legal conclusions, to which no response is required, but Siravo and Swedberg admit that they are residents of California and are subject to the personal jurisdiction of the court.

5. Paragraph 5 contains legal conclusions, to which no response is required, but Siravo and Swedberg admit that venue is proper in this district.

## PARTIES

6. Siravo and Swedberg admit that the NCUA is the liquidating agent for WesCorp.

7. Siravo and Swedberg admit that Siravo was the President and CEO of WesCorp from on or about May 1, 2002 to or about March 20, 2009, and that he is a resident of California.

- 2 -

8. Siravo and Swedberg admit that Todd M. Lane ("Lane") served as Chief Financial Officer of WesCorp. Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 8 and on that basis deny those allegations.

9. Siravo and Swedberg admit that Robert J. Burrell ("Burrell") served as Executive Vice President and as the Chief Investment Officer for WesCorp. Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 9 and on that basis deny those allegations.

10. Siravo and Swedberg admit that Timothy T. Sidley ("Sidley") served as Vice President for Risk Assessment and as Chief Risk Officer in charge of investment credit services during his employment at WesCorp. Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 10 and on that basis deny those allegations.

11. Siravo and Swedberg admit that Swedberg served as WesCorp's Director of Human Resources from October 1998 until sometime in 1999; he became the Vice President of Human Resources in 1999 until approximately April or May 2007; he served as Vice President of Strategic Planning and Organizational Development from approximately April or May 2007 to December 31, 2008; he retired from WesCorp on July 2009, that he worked as an employee on a consultant basis for WesCorp from January 1, 2009 until July 2009; and he is a resident of California.

12. Siravo and Swedberg admit that Robert H. Harvey, Jr. ("Harvey") was a director and the Chairman of the WesCorp board of directors, and that he is a resident of the state of Washington. Siravo and Swedberg lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 12 and on that basis deny those allegations.

- 3 -

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

1    13.    Siravo and Swedberg admits that James P. Jordan ("Jordan") was a

2    member of the WesCorp board of directors and was the Vice Chairman of the

3    WesCorp board.  Siravo and Swedberg lack knowledge or information sufficient

4    to form a belief as to the truth of the remaining allegations of Paragraph 13 and on

5    that basis deny those allegations.

6    14.    Siravo and Swedberg admit that Timothy Kramer ("Kramer") was a

7    member of the WesCorp board of directors and served as the Secretary and

8    Treasurer of the WesCorp board.  Siravo and Swedberg lack knowledge or

9    information sufficient to form a belief as to the truth of the remaining allegations

10    of Paragraph 14 and on that basis deny those allegations.

11    15.    Siravo and Swedberg admit that Robin J. Lentz ("Lentz") was a

12    member of the WesCorp board of directors.  Siravo and Swedberg lack knowledge

13    or information sufficient to form a belief as to the truth of the remaining

14    allegations of Paragraph 15 and on that basis deny those allegations.

15    16.    Siravo and Swedberg admit that John M. Merlo ("Merlo") was a

16    member of the WesCorp board of directors and that he is a resident of California.

17    Siravo and Swedberg lack knowledge or information sufficient to form a belief as

18    to the truth of the remaining allegations of Paragraph 16 and on that basis deny

19    those allegations.

20    17.    Siravo and Swedberg admit that Gordon Dames ("Dames") was a

21    member of the WesCorp board of directors.  Siravo and Swedberg lack knowledge

22    or information sufficient to form a belief as to the truth of the remaining

23    allegations of Paragraph 17 and on that basis deny those allegations.

24    18.    Siravo and Swedberg admit that William Cheney ("Cheney") was a

25    member of the WesCorp board of directors.  Siravo and Swedberg lack knowledge

26    or information sufficient to form a belief as to the truth of the remaining

27    allegations of Paragraph 18 and on that basis deny those allegations.

28

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

1    19.    Siravo and Swedberg admit that Warren Nakamura ("Nakamura")

2    was a member of the WesCorp board of directors.  Siravo and Swedberg lack

3    knowledge or information sufficient to form a belief as to the truth of the

4    remaining allegations of Paragraph 19 and on that basis deny those allegations.

5    20.    Siravo and Swedberg admit that Brian Osberg ("Osberg") was a

6    member of the WesCorp board of directors.  Siravo and Swedberg lack knowledge

7    or information sufficient to form a belief as to the truth of the remaining

8    allegations of Paragraph 20 and on that basis deny those allegations.

9    21.    Siravo and Swedberg admit that David Rhamy ("Rhamy") was a

10   member of the WesCorp board of directors.  Siravo and Swedberg lack knowledge

11   or information sufficient to form a belief as to the truth of the remaining

12   allegations of Paragraph 21 and on that basis deny those allegations.

13   22.    Siravo and Swedberg admit that Sharon Updike ("Updike") was a

14   member of the WesCorp board of directors.  Siravo and Swedberg lack knowledge

15   or information sufficient to form a belief as to the truth of the remaining

16   allegations of Paragraph 22 and on that basis deny those allegations.

17   23.    Siravo and Swedberg admit the allegations of Paragraph 23.

18   24.    Siravo[1] admits that WesCorp's Asset and Liability Committee

19   ("ALCO) had oversight responsibility for WesCorp's asset liability management

20   process, including investments.   Siravo lacks knowledge or information sufficient

21   to form a belief as to the truth of the remaining allegations of Paragraph 24 and on

22   that basis denies those allegations, except to the extent they reference the contents

23   of WesCorp's corporate policies, which speak for themselves.  Siravo refers to

24

25   [1] Paragraphs 24 through 153 are not incorporated in either the Fifth Claim or the Sixth Claim for
     Relief, which are the only claims asserted against Swedberg in the Second Amended Complaint.

26   Accordingly, it is not necessary for Swedberg to respond to Paragraphs 24 through 153, except
     for Paragraph 42 and 43, which specifically include allegations against Swedberg. To the extent

27   that a response is required, Swedberg incorporates and adopts Siravo's responses in this Answer
     to the allegations set forth in Paragraph 24 through 41 and 44 through 153 of the Second

28   Amended Complaint..

                                              AMENDED ANSWER AND
                                              COUNTERCLAIMS OF DEFENDANTS
                                              SIRAVO AND SWEDBERG TO SAC

WesCorp's corporate policies for their contents and denies any characterization inconsistent with their terms.

25. Siravo admits that the ALCO had responsibilities for WesCorp's investment strategies, including investments, policies and strategies, concentration limits, and the purchase and sale of securities, and directing the types and level of risk. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 25 and on that basis denies those allegations.

26. Siravo admits that board members attended ALCO meetings and received ALCO materials along with monthly board packages. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 26 and on that basis denies those allegations.

27. Siravo admits that WesCorp's budget was reviewed by the budget committee of the Board of Directors, which recommended it before it was approved by the Board. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 27 and on that basis denies those allegations.

28. Paragraph 28 contains legal conclusions, to which no response is required. To the extent the allegations require a response, they are denied.

29. Paragraph 29 contains legal conclusions, to which no response is required.

## SUMMARY OF CLAIMS

30. Siravo admits that WesCorp was a non-profit corporate credit union, that its members were credit unions, and that it provided its members with banking and investment services for their funds. The remaining allegations of Paragraph 30 contain legal conclusions, to which no response is required. To the extent the remaining allegations require a response, they are denied.

- 6 -

31.     Siravo admits that WesCorp was a leading corporate federal credit union and provided its members with banking and investment services for their funds. Siravo also admits that he became President and CEO of WesCorp in 2002, and that, with the knowledge and consent of the NCUA, WesCorp thereafter grew in size. Siravo denies the remaining allegations of Paragraph 31.

32.     Siravo admits that WesCorp invested its members' funds and borrowed funds in securities, including private label mortgage backed securities ("MBS") that were not guaranteed by the United States or its agencies. Siravo denies the remaining allegations of Paragraph 32.

33.     Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33 and on that basis denies them.

34.     Siravo admits that WesCorp used income from its investments to pay operating expenses. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 34 and on that basis denies those allegations.

35.     Siravo denies the allegations of Paragraph 35.

36.     Siravo admits that WesCorp invested in MBS, including MBS based on reduced documentation Option ARM loans. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 36 and on that basis denies those allegations.

37.     Siravo denies the allegations of Paragraph 37.

38.     Siravo admits that WesCorp invested in MBS, including MBS based on reduced documentation Option ARM loans. Siravo lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 38 and on that basis denies those allegations.

39.     Siravo admits that WesCorp purchased AAA rated and AA rated MBS that were underwritten by the world's leading investment banks and denies the remaining allegations of Paragraph 39.

40.     Siravo lacks knowledge or information to form a belief as to the truth of the allegations of Paragraph 39, and on that basis denies them, except to the extent they reference the contents of WesCorp's 2009 financial statements, which speak for themselves.  Siravo refers to WesCorp's 2009 financial statements for their contents and denies any characterization inconsistent with their terms.

41.     Siravo denies that WesCorp's officers failed to impose prudent concentration limits.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 41, and on that basis denies those allegations.

42.     Siravo and Swedberg admit that their Supplemental Executive Retention Plans ("SERPs") for Siravo and other Executive participants were amended in 2007 and 2008, which increased the amount that they received upon their retirement from WesCorp.  Siravo and Swedberg also admit that WesCorp entered into an agreement with Lane for the payments in 2006, 2007, and 2008 in lieu of any payments under his SERP.  Siravo and Swedberg deny that they engineered amendments to the SERPs or falsely characterized the amendments, and deny that there were no *bona fide* business reasons for the payments to Lane. Siravo and Swedberg lack knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 42, and on that basis deny those allegations.

43.     Siravo and Swedberg deny the allegations of Paragraph 43.

## FACTUAL ALLEGATIONS

### The Federal Credit Union System

44.     Siravo admits that the federal credit union system is a three-tier system consisting of (1) one wholesale corporate credit union (U.S. Central Federal Credit Union); (2) retail corporate credit unions; and (3) "natural person" credit unions.  Siravo further admits that the wholesale corporate credit union provides services to the retail corporate credit unions, while the retail corporate

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

credit unions provide services to both federally-chartered and state-chartered natural person credit unions.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 44 and on that basis those allegations.

45.    Siravo admits that WesCorp was a retail corporate credit union. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 45 and on that basis denies those allegations.

46.    Siravo admits that corporate credit unions are owned by their members and that in the case of retail corporate credit unions, the members are primarily natural person credit unions.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 46 and on that basis denies those allegations.

47.    Siravo admits that retail corporate credit unions provide services and support to their natural person credit union members.  Siravo admits that retail corporate credit unions offer their natural person credit unions banking and investment services for their funds, and that these services may include settlement of transactions such as checks, ATM and credit card transactions and wire transfers, and that they allow their members to borrow funds.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 47 and on that basis denies those allegations.

48.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48 and on that basis denies them, except to the extent they reference the contents of WesCorp's website, which speaks for itself.  Siravo refers to WesCorp's website for its contents and denies any characterization inconsistent with its terms.

- 9 -

49.   Siravo admits that WesCorp had by-laws, which speak for themselves.  Siravo refers to WesCorp's bylaws for their contents and denies any characterization inconsistent with their terms.

50.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50 and on that basis denies them.

51.   Siravo admits that WesCorp provided services to its members, and that Chief Executive Officers of credit unions were members of its Board of Directors.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 51 and on that basis denies those allegations.

**The Officer Defendants' Responsibilities and Duties**

52.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 52 and on that basis denies those allegations, except to the extent the allegations reference the contents of WesCorp's by-laws and corporate policies, which speak for themselves.  Siravo refers to WesCorp's by-laws and corporate policies for their contents and denies any characterization inconsistent with their terms.

53.   Siravo admits that he served as President and CEO of WesCorp, and that he had responsibilities for overseeing WesCorp's operations and investments.  Siravo denies the remaining allegations of Paragraph 53.

54.   Siravo admits that he served as President and CEO of WesCorp.  The remaining allegations of Paragraph 54 contain legal conclusions, to which no response is required.  To the extent that a response is required, they are denied.

55.   Siravo admits that Lane served as Chief Financial Officer of WesCorp, had general supervisory responsibilities, and had responsibilities for WesCorp's financial statements, financial operations, and budgets.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 55 and on that basis denies those allegations.

- 10 -

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

56.   Siravo admits that Burrell admits that he served as Chief Investment Officer for WesCorp and had responsibilities for WesCorp's investments and for supervising WesCorp's Investment Department.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 56 and on that basis denies those allegations.

57.   Siravo admits that Siravo worked with Lane and Burrell, among others, to manage WesCorp and implement its business strategies, including its investment strategies.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 56 and on that basis denies those allegations.

58.   Siravo admits that Sidley served as Vice President of Risk Assessment, and that the Director of Investment Credit Services reported to Sidley.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 58 and on that basis denies those allegations.

59.   Siravo admits that WesCorp created an Asset/Liability Staff Committee ("ALSC") and that the ALSC had responsibilities for reviewing investment security purchases and investment strategies.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 59 and on that basis denies those allegations.

60.   Siravo admits that Siravo, Burrell and Lane served as voting members of ALCO and ALSC, and that Sidley served as a non-voting member of ALSC and a staff liaison to ALCO.  Siravo denies the remaining allegations of Paragraph 60.

## WesCorp's Era of Growth

61.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 61 and on that basis denies them.

62.   Siravo admits that he became President and CEO of WesCorp in 2002 and that, with the knowledge and consent of the NCUA, WesCorp thereafter grew

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

1    in size.  Siravo lacks knowledge or information sufficient to form a belief as to the

2    remaining allegations of Paragraph 62 and on that basis denies those allegations.

3         63.    Siravo admits that, with the knowledge and consent of the NCUA,

4    WesCorp grew in size after 2002.  Siravo lacks knowledge or information

5    sufficient to form a belief as to the truth of the allegations of Paragraph 63 and on

6    that basis denies them.

7         64.    Siravo lacks knowledge or information sufficient to form a belief as

8    to the truth of the allegations of Paragraph 64 and on that basis denies them.

9         65.    Siravo lacks knowledge or information sufficient to form a belief as

10   to the truth of the allegations of Paragraph 65 and on that basis denies them.

11        66.    Siravo lacks knowledge or information sufficient to form a belief as

12   to the truth of the allegations of Paragraph 66 and on that basis denies them.

13        67.    Siravo admits that WesCorp invested in MBS, including private label

14   MBS that had higher yields than MBS issued by government agencies.  Siravo

15   lacks knowledge or information sufficient to form a belief as to the truth of the

16   remaining allegations of Paragraph 67 and on that basis denies those allegations.

17        68.    Siravo lacks knowledge or information sufficient to form a belief as

18   to the truth of the allegations of Paragraph 68 and on that basis denies them,

19   except to the extent the allegations reference the contents of WesCorp's corporate

20   policies, which speak for themselves.  Siravo refers to WesCorp's corporate

21   policies for their contents and denies any characterization inconsistent with their

22   terms.

23        69.    Siravo lacks knowledge or information sufficient to form a belief as

24   to the truth of the allegations of Paragraph 69 and on that basis denies them.

25        70.    Siravo admits that his compensation and the compensation of other

26   WesCorp executives increased from 2002 to 2008, but lacks knowledge or

27   information sufficient to form a belief as to the truth of the remaining allegations

28   of Paragraph 70 and on that basis denies those allegations.

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

## WesCorp's Private Label MBS Investments

71.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 71 and on that basis denies them.

72.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 72 and on that basis denies them.

73.    Siravo admits that WesCorp invested in AAA rated and AA rated private label MBS.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 73 and on that basis denies those allegations, except to the extent the allegations reference the contents of the NCUA's regulations and WesCorp's investment policies, which speak for themselves.  Siravo refers to the NCUA's regulations and WesCorp's investment policies for their contents and denies any characterization inconsistent with their terms.

74.    Siravo admits that between 2004 and 2007 WesCorp invested in AAA rated MBS, including Collateralized Debt Obligations ("CDOs") and Option ARM MBS.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 74 and on that basis denies those allegations.

75.    Siravo admits that MBS are shares in a pool of mortgages and CDOs are shares in a pool of MBS.  Siravo also admits that there are risks associated with investments in MBS and CDOs.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 75 and on that basis denies those allegations

76.    Siravo admits that WesCorp purchased CDOs.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 76 and on that basis denies those allegations.

77.    Siravo admits that Option ARM MBS are investments in Option ARM mortgages, and that Option ARM mortgages have payment terms, that

15488701.3

- 13 -

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

monthly payments can "reset," and they can have a negative amortization. Siravo lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 77 and on that basis denies those allegations.

78.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 78 and on that basis denies them.

79.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 79 and on that basis denies them.

80.    Siravo admits that WesCorp invested in Option ARM MBS, including Option ARM MBS that included reduced documentation Option ARM loans. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 80 and on that basis denies those allegations.

81.    Siravo admits that MBS investments were sold in tranches and that WesCorp invested in some AAA rated and AA rated MBS that paid a higher yield than other AAA rated and AA rated MBS. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 81 and on that basis denies those allegations.

82.    Siravo admits that WesCorp invested in AA rated MBS as well as AAA rated MBS. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 82 and on that basis denies those allegations.

83.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 83 and on that basis denies them.

84.    Siravo admits that WesCorp invested in AAA rated Option ARM MBS. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 84 and on that basis denies those allegations.

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

**WesCorp's Budgets**

85.    Siravo admits that WesCorp's management proposed budgets, that budgets were considered and recommended by the Budget Committee of the Board of Directors, that budgets were adopted by WesCorp's Board of Directors, and that he worked on budgets with Lane and Burrell.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 85 and on that basis denies those allegations.

86.    Paragraph 86 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

87.    Paragraph 87 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 87 and on that basis denies them.

88.    Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 88 and on that basis denies them, except to the extent the allegations reference the contents of WesCorp's budgets and executive summaries, which speak for themselves.  Siravo refers to WesCorp's budgets and the executive summaries for their contents and denies any characterization inconsistent with their terms.

89.    Siravo denies that Siravo, Burrell and Lane dictated the level of risk in WesCorp's investment portfolio.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 89 and on that basis denies those allegations.

90.    Siravo admits that when he was WesCorp's CEO, WesCorp's management proposed budgets that were considered and recommended by the Budget Committee and adopted by WesCorp's Board of Directors, and that he worked on the budgets with Lane and Burrell.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations

- 15 -

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

of Paragraph 90 and on that basis denies those allegations, except to the extent the allegations reference the contents of WesCorp's budgets, which speak for themselves. Siravo refers to WesCorp's budgets for their contents and denies any characterization inconsistent with their terms.

91.   Siravo denies the allegations of Paragraph 91.

92.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 92 and on that basis denies them.

93.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 93 and on that basis denies them.

94.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 94, and on that basis denies them, except to the extent they reference the contents of WesCorp's budgets, which speak for themselves. Siravo refers to WesCorp's budgets for their contents and denies any characterization inconsistent with their terms.

95.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 95, and on that basis denies them, except to the extent they reference materials presented to the Budget Committee, which speak for themselves. Siravo refers to these materials for their contents and denies any characterization inconsistent with their terms.

96.   Siravo admits that directors attended ALCO meetings. Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 96 and on that basis denies them.

97.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 97 and on that basis denies them, except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves. Siravo refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with their terms.

98.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 98 and on that basis denies them.

99.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 99 and on that basis denies them.

100.   Paragraph 100 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

101.   Paragraph 101 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

102.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 102 and on that basis denies them.

103.   Siravo denies the allegations of Paragraph 103.

104.   Siravo denies the allegations of Paragraph 104.

### MBS Concentration Risk

105.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 105 and on that basis denies them, except to the extent they reference the contents of the NCUA's regulations, which speak for themselves.  Siravo refers to the NCUA's regulations for their contents and denies any characterization inconsistent with their terms.

106.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 106 and on that basis denies them.

107.   Siravo admits that WesCorp provided services to its members and invested their funds.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 107 and on that basis denies those allegations.

108.   Siravo admits that WesCorp's Board of Directors was responsible for setting investment policies.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 108 and on that basis denies those allegations, except to the extent they reference the contents

15488701.3

of WesCorp's corporate and investment policies, which speak for themselves.
Siravo refers to WesCorp's corporate and investment policies for their contents
and denies any characterization inconsistent with their terms.

109.   Siravo admits that the ALCO had responsibilities for reviewing
WesCorp's investments and investment policies.  Siravo lacks knowledge or
information sufficient to form a belief as to the truth of the remaining allegations
of Paragraph 109 and on that basis denies those allegations.

110.   Siravo admits that Sidley headed WesCorp's Risk Assessment
Department and Burrell headed the Investment Department.  Paragraph 110
contains legal conclusions, to which no response is required.  To the extent the
allegations require a response, Siravo lacks knowledge or information sufficient to
form a belief as to the truth of the remaining allegations of Paragraph 110 and on
that basis denies those allegations.

111.   Siravo admits that WesCorp's Board of Directors adopted policies
regarding its investment securities, which corporate policies speak for themselves,
and that from time to time it amended its policies.  Siravo refers to WesCorp's
corporate policies for their contents and denies any characterization inconsistent
with their terms.  Siravo lacks knowledge or information sufficient to form a belief
as to the truth of the remaining allegations of Paragraph 111 and on that basis
denies those allegations.

112.   Siravo lacks knowledge or information sufficient to form a belief as
to the truth of the allegations of Paragraph 112 and on that basis denies them.

113.   Siravo lacks knowledge or information sufficient to form a belief as
to the truth of the allegations of Paragraph 113 and on that basis denies them.

114.   Siravo admits that WesCorp invested in AAA rated private label
MBS.  Siravo lacks knowledge or information sufficient to form a belief as to the
truth of the remaining allegations of Paragraph 114 and on that basis denies those
allegations.

15488701.3

## The Risks of Option ARM MBS

115.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 115 and on that basis denies those allegations, except to the extent they reference the contents of WesCorp's corporate policies, which speak for themselves.  Siravo refers to WesCorp's corporate policies for their contents and denies any characterization inconsistent with their terms.

116.   Siravo admits that WesCorp purchased Option ARM MBS, but denies that they were a new security type.  Siravo lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 116 and on that basis denies those allegations.

117.   Siravo admits that WesCorp purchased Option ARM MBS with the approval of WesCorp's Board of Directors and the ALCO, but denies that they were a new security type.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 117 and on that basis denies those allegations.

118.   Siravo admits that, with the approval of WesCorp's Board of Directors and the ALCO, WesCorp purchased Option ARM MBS, but denies that they were a new security type.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 118 and on that basis denies those allegations.

119.   Siravo denies Option ARM MBS were a new type of security.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 119 and on that basis denies those allegations.

120.   Siravo lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 120 and on that basis denies them.

121.   Siravo lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 121 and on that basis denies them.

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

122.   Siravo lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 122 and on that basis denies them.

123.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 123 and on that basis denies them.

124.   Paragraph 124 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.  Siravo denies the remaining allegations of Paragraph 124.

125.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 125 and on that basis denies them.

126.   Siravo lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 126 and on that basis denies them.

127.   Paragraph 127 contains legal conclusions, to which no response is required.  To the extent the allegations require a response, they are denied.

128.   Siravo admits that WesCorp purchased AAA rated and AA rated MBS, but denies that the Officer Defendants did not monitor concentrations of Option ARM MBS.  Siravo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 128 and on that basis denies those allegations.

129.   Siravo denies that WesCorp was unaware of the concentrations of MBS.  Siravo lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 129 and on that basis denies those allegations.

130.   Siravo denies that WesCorp was unaware of the concentrations of MBS.  Siravo lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 130 and on that basis denies those allegations.

131.   Siravo admits that the Officer Defendants and Directors were aware of the risks of MBS investments.   Siravo lacks information or knowledge

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

1    sufficient to form a belief as to the truth of the remaining allegations of Paragraph

2    131 and on that basis denies them.

3        132.   Siravo admits that Burrell served as the officer in charge of the

4    Investment Department and the Chief Investment Officer and that Sidley served as

5    the officer in charge of the Investment Credit Services Department and as the

6    Chief Risk Officer.  Paragraph 132 contains legal conclusions, to which no

7    response is required.  To the extent these allegations require a response, they are

8    denied. Siravo lacks knowledge or information sufficient to form a belief as to the

9    truth of the remaining allegations of Paragraph 132 and on that basis denies those

10   allegations.

11       133.   Siravo denies the allegations of Paragraph 133.

12                    **The Risks in WesCorp's Portfolio**

13       134.   Siravo lacks information or knowledge sufficient to form a belief as

14   to the truth of the allegations of Paragraph 134 and on that basis denies them.

15       135.   Siravo admits that Officer Defendants and Directors attended ALCO

16   meetings at which there were presentations about the economy, investments and

17   WesCorp's investment strategy.  Siravo lacks information or knowledge sufficient

18   to form a belief as to the truth of the remaining allegations of Paragraph 135 and

19   on that basis denies those allegations.

20       136.   Siravo lacks information or knowledge sufficient to form a belief as

21   to the truth of the allegations of Paragraph 136 and on that basis denies them.

22       137.   Siravo admits that Officer Defendants and Directors attended ALCO

23   meetings at which there were presentations on interest rates and the housing

24   market.  Siravo lacks information or knowledge sufficient to form a belief as to the

25   truth of the remaining allegations of Paragraph 137 and on that basis denies those

26   allegations.

27       138.   Siravo lacks knowledge or information sufficient to form a belief as

28   to the truth of the allegations in Paragraph 138 and on that basis denies them,

                                        AMENDED ANSWER AND
                                        COUNTERCLAIMS OF DEFENDANTS
                                        SIRAVO AND SWEDBERG TO SAC

except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves. Siravo refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with its terms.

139.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139 and on that basis denies them, except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves. Siravo refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with its terms.

140.   Siravo lacks information or knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 140 and on that basis denies them.

141.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141 and on that basis denies them, except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves. Siravo refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with its terms.

142.   Siravo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142 and on that basis denies them, except to the extent they reference the contents of WesCorp's ALCO books, which speak for themselves. Siravo refers to WesCorp's ALCO books for their contents and denies any characterization inconsistent with its terms.

143.   Siravo admits that WesCorp stopped purchasing AA rated MBS, and that it continued to purchase AAA rated MBS in 2007. Siravo lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 143 and on that basis denies those allegations.

144.   Siravo admits that WesCorp continued to purchase AAA rated Option ARM MBS in 2007 and that it stopped purchasing private label MBS in 2007. Paragraph 144 contains legal conclusions, to which no response is required. To

- 22 -

1   the extent these allegations require a response, they are denied.  Siravo denies the

2   remaining allegations of Paragraph 144.

3       145.   Paragraph 145 contains legal conclusions, to which no response is

4   required.  To the extent the allegations require a response, they are denied.

5       146.   Siravo admits that WesCorp continued to purchase AAA rated Option

6   ARM MBS in 2007 and that it stopped purchasing private label MBS in 2007.

7   Paragraph 146 contains legal conclusions, to which no response is required.  To

8   the extent these allegations require a response, they are denied.  Siravo lacks

9   information or knowledge sufficient to form a belief as to the truth of the

10  remaining allegations of Paragraph 146 and on that basis denies those allegations.

11      147.   Siravo lacks information or knowledge sufficient to form a belief as

12  to the truth of the allegations of Paragraph 147 and on that basis denies them,

13  except to the extent they reference the contents of the NCUA's regulations, which

14  speak for themselves.  Siravo refers to the NCUA's regulations for their contents

15  and denies any characterization inconsistent with their terms.  Paragraph 147 also

16  contains legal conclusions, to which no response is required.  To the extent these

17  allegations require a response, they are denied.

18                               **WesCorp's Collapse**

19      148.   Siravo lacks information or knowledge sufficient to form a belief as

20  to the truth of the allegations of Paragraph 148 and on that basis denies them.

21      149.   Siravo denies that the Officer Defendants or the Director Defendants

22  caused WesCorp's collapse.  Siravo lacks knowledge or information sufficient to

23  form a belief as to the truth of the remaining allegations of Paragraph 149 and on

24  that basis denies those allegations.

25      150.   Siravo lacks information or knowledge sufficient to form a belief as

26  to the truth of the allegations of Paragraph 150 and on that basis denies them.

27      151.   Siravo lacks information or knowledge sufficient to form a belief as

28  to the truth of the allegations of Paragraph 151 and on that basis denies them.

1    152.   Siravo lacks information or knowledge sufficient to form a belief as
2    to the truth of the allegations of Paragraph 152 and on that basis denies them.

3    153.   Siravo lacks information or knowledge sufficient to form a belief as
4    to the truth of the allegations of Paragraph 153 and on that basis denies them.

5                              **The SERP Payments**

6    154.   Siravo and Swedberg admit that in November 2001, WesCorp's
7    Board of Directors authorized a Supplemental Retirement Plan (the "Executive
8    SERP") for certain WesCorp executives, and that Swedberg was a participant in
9    the plan.

10   155.   Siravo and Swedberg admit that the Executive SERP was part of an
11   Executive Retention Program "to provide certain benefits" and "a measure of
12   peace of mind for certain executives of WesCorp," and that the Executive SERP
13   provided participants with a lump sum payment at their expected retirement dates
14   if they had been employed at WesCorp for at least 10 years and had been a
15   participant in the plan for at least 5 years at the time of their retirement from
16   WesCorp.  Siravo and Swedberg deny the remaining allegations of Paragraph 155.

17   156.   Siravo and Swedberg admit that, effective May 1, 2002, WesCorp
18   agreed to provide benefits to Siravo under a CEO/President Retention Program,
19   and that these benefits included a lump sum payment under a Supplemental
20   Retirement Plan (the "CEO SERP") that was payable on May 1, 2008 (the
21   "President/CEO Retirement Date"), provided that Siravo was continuously
22   employed by WesCorp until that date.  Siravo and Swedberg deny the remaining
23   allegations of Paragraph 156.

24   157.   Siravo and Swedberg admit that the Executive SERP and CEO SERP
25   both provided for lump sum benefits determined by a formula where "C is Final
26   Compensation as defined herein;" "Final Compensation" is defined as "monthly
27   base salary paid most recently while [the President/CEO or the Executive] is a

28

15488701.3                          - 24 -                   AMENDED ANSWER AND
                                                             COUNTERCLAIMS OF DEFENDANTS
                                                             SIRAVO AND SWEDBERG TO SAC

1    participant in the Program, multiplied by twelve (12);" and the formula included a

2    40% gross-up for taxes.

3         158.   Siravo and Swedberg admit that in the fall of 2007, along with

4    Directors Robert Harvey and John Merlo, they noticed that the lump sum formula

5    in Siravo's CEO SERP did not account for changes in the nature of the

6    compensation received by WesCorp Executives since the Executive SERP was

7    adopted in 2001, and that the percentage of the gross-up for taxes did not account

8    for all of the taxes owed on the lump sum payments.  Siravo and Swedberg also

9    admit that, with the concurrence of Harvey and Merlo, they proposed amendments

10   to the CEO SERP to (1) change the definition of "Final Compensation" to include

11   all compensation received by Siravo and (2) increase the tax gross-up to 67%.

12   Siravo and Swedberg deny the remaining allegations of Paragraph 158.

13        159.   Siravo and Swedberg admit that Swedberg prepared materials that

14   explained the proposed amendments to the CEO SERP; that he communicated

15   with members of WesCorp's Board of Directors regarding the proposed

16   amendments; and that he was no longer the Director of Human Resources for

17   WesCorp, but retained responsibility for Executive Compensation matters with the

18   concurrence of the new Vice President of Human Resources when he

19   communicated with the directors regarding the amendments.  Siravo and

20   Swedberg the remaining allegations of Paragraph 159.

21        160.   Siravo and Swedberg admit that in a memorandum dated November

22   2, 2007, Swedberg advised Robert Harvey, the Chairman of WesCorp's Board of

23   Directors, that "[i]n preparing for the May 2008 SERP distribution to Bob Siravo,

24   we noticed that there were two administrative errors in the current 457(f) plan

25   document that are not consistent with the intent of the program when it was

26   initially developed."  Siravo and Swedberg deny the remaining allegations of

27   Paragraph 160.

28

15488701.3

1    161.   Siravo and Swedberg admit that Swedberg, along with Siravo and
2  Chairman of the Board Harvey and Board member Merlo, developed a proposal to
3  amend the CEO SERP.  Siravo and Swedberg lack information or knowledge
4  sufficient to form a belief as to the truth of the remaining allegations of Paragraph
5  161 and on that basis deny those allegations.

6    162.   Siravo and Swedberg admit that on or about October 19, 2007,
7  Swedberg prepared a draft of a PowerPoint presentation for WesCorp's Board of
8  Directors, which he sent to Siravo and which speaks for itself.  Siravo and
9  Swedberg refer to the PowerPoint for its contents and deny any characterization
10  inconsistent with its terms.

11    163.   Siravo and Swedberg deny the allegations of Paragraph 163.

12    164.   Siravo and Swedberg admit that Swedberg discussed proposed
13  amendments to the CEO SERP with John Merlo, who suggested changing the
14  presentation from a PowerPoint to a memorandum.  Siravo and Swedberg lack
15  information or knowledge sufficient to form a belief as to the truth of the
16  remaining allegations of Paragraph 164 and on that basis deny those allegations.

17    165.   Siravo and Swedberg deny the allegations of Paragraph 165.

18    166.   Siravo and Swedberg admit that in October 2007, Swedberg
19  discussed proposed amendments to the CEO SERP with Robert Harvey and John
20  Merlo, and that Exhibit 1 to the Second Amended Complaint is a true and correct
21  copy of a memorandum dated November 2, 2007 that Swedberg prepared and sent
22  to Harvey, which memorandum speaks for itself.  Siravo and Swedberg refer to the
23  memorandum for its contents and deny any characterization inconsistent with its
24  terms.  Siravo and Swedberg lack information or knowledge sufficient to form a
25  belief as to the truth of the remaining allegations of Paragraph 166 and on that
26  basis deny those allegations.

27    167.   Siravo and Swedberg deny the allegations of Paragraph 167.
28    168.   Siravo and Swedberg deny the allegations of Paragraph 168.

169.   Siravo and Swedberg admit that Siravo's employment agreement provided for the possibility of a bonus; that the amount of Siravo's lump sum payment under the CEO SERP, effective May 1, 2002, was based upon the Siravo's "Final Compensation," which was defined as the "monthly base salary paid most recently while the President/CEO is a participant in the Program, multiplied by twelve (12);" that the gross-up percentage in that CEO SERP was the same as the percentage in the original Executive SERP.  Siravo and Swedberg deny the remaining allegations of Paragraph 169.

170.   Siravo and Swedberg admit that Chairman Harvey approved the proposed amendments to the CEO SERP and submitted it to other members of the WesCorp board's executive committee, who also approved it.  Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 170 and on that basis deny those allegations.

171.   Siravo and Swedberg admit that WesCorp's Board of Directors approved amendments to the CEO SERP.  Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 171 and on that basis deny those allegations.

172.   Siravo and Swedberg admit that WesCorp's Board of Directors adopted a resolution authorizing changes to the CEO SERP, which resolution speaks for itself.  Siravo and Swedberg refer to the resolution for its contents and deny any characterization inconsistent with its terms.

173.   Siravo and Swedberg admit that Robert Harvey, as Chairman of WesCorp's Board of Directors, executed an amendment to the CEO SERP that was prepared by Swedberg, which amendment speaks for itself.  Siravo and Swedberg refer to the amendment for its contents and deny any characterization inconsistent with its terms.  Siravo and Swedberg deny the remaining allegations of Paragraph 173.

- 27 -

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

174.   Paragraph 174 contains legal conclusions, to which no response is required.  To the extent these allegations require a response, they are denied.  Siravo and Swedberg deny the remaining allegations of Paragraph 174.

175.   Siravo and Swedberg admit that under the President/CEO Retention Program, Siravo's President/CEO Retirement Date was May 1, 2008; that he received a lump sum SERP payment on or about May 13, 2008 of $6,881,401; that the amount he received was more than he would have received under the CEO SERP before it was amended; and that he continued to serve as President/CEO of WesCorp until on or about March 20, 2009.  Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 175 and on that basis deny those allegations.

176.   Siravo and Swedberg admit that Swedberg worked on amendments to the Executive SERP, which amendments speak for themselves.  Siravo and Swedberg refer to the amendments for their contents and deny any characterization inconsistent with their terms.

177.   Siravo and Swedberg admit that on or about June 24, 2008, Siravo presented amendments to the Executive SERP to the WesCorp Board of Directors, and the Board of Directors adopted a resolution approving the amendments, which resolution speaks for itself.  Siravo and Swedberg refer to the resolution for its contents and deny any characterization inconsistent with its terms.

178.   Siravo and Swedberg admit that Swedberg retired from WesCorp at the end of 2008, and that on January 6, 2009, he received a lump sum SERP of $1,223,962, which was more than the he would have received under the CEO SERP before it was amended.  Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 178 and on that basis deny those allegations.

179.   Siravo and Swedberg admit that Lane was a participant in the Executive SERP and that he wanted to leave his employment at WesCorp before

15488701.3

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

1  his expected retirement date under the Executive SERP.  Siravo and Swedberg

2  lack information or knowledge sufficient to form a belief as to the truth of the

3  remaining allegations of Paragraph 179 and on that basis deny those allegations.

4       180.   Siravo and Swedberg admit that Lane and Siravo executed an Early

5  Payout Agreement, which agreement speaks for itself.  Siravo and Swedberg refer

6  to the agreement for its contents and deny any characterization inconsistent with

7  its terms.  Siravo and Swedberg lack information or knowledge sufficient to form

8  a belief as to the truth of the remaining allegations of Paragraph 180 and on that

9  basis deny those allegations.

10       181.   Siravo and Swedberg deny the allegations in Paragraph 181.

11       182.   Siravo and Swedberg admit that Lane received payments in 2006,

12  2007 and 2008 in addition to his base compensation and bonus and that he left his

13  employment with WesCorp in 2008.  Siravo and Swedberg lack information or

14  knowledge sufficient to form a belief as to the truth of the remaining allegations of

15  Paragraph 182 and on that basis deny those allegations.

16  **FIRST CLAIM FOR RELIEF**

17  (Breach of Fiduciary Duties – Against the Officer Defendants)

18       183.   Siravo and Swedberg incorporate by reference their responses to

19  paragraphs 1 through 153 as though set forth in full.  Swedberg is not named as a

20  defendant to this Claim and accordingly no response is required to paragraphs 184

21  through 198.  To the extent the allegations require a response to paragraphs 184

22  through 198, Swedberg lacks information or knowledge sufficient to form a belief

23  as to the truth of the allegations, and on that basis denies them.

24       184.   Paragraph 184 contains legal conclusions, to which no response is

25  required.  To the extent the allegations require a response, they are denied.

26       185.   Paragraph 185 contains legal conclusions, to which no response is

27  required.  To the extent the allegations require a response, they are denied.

28

1    186.   Paragraph 186 contains legal conclusions, to which no response is

2    required.  To the extent the allegations require a response, they are denied.

3    187.   Paragraph 187 contains legal conclusions, to which no response is

4    required.  To the extent the allegations require a response, they are denied.

5    188.   Paragraph 188 contains legal conclusions, to which no response is

6    required.  To the extent the allegations require a response, they are denied.

7    189.   Paragraph 189 contains legal conclusions, to which no response is

8    required.  To the extent the allegations require a response, Siravo lacks

9    information or knowledge sufficient to form a belief as to the truth of the

10   allegations of Paragraph 189 and on that basis they are denied.

11   190.   Paragraph 190 contains legal conclusions, to which no response is

12   required.  To the extent the allegations require a response, Siravo lacks

13   information or knowledge sufficient to form a belief as to the truth of the

14   allegations of Paragraph 190 and on that basis they are denied.

15   191.   Paragraph 191 contains legal conclusions, to which no response is

16   required.  To the extent the allegations require a response, they are denied.

17   192.   Paragraph 192 contains legal conclusions, to which no response is

18   required.  To the extent the allegations require a response, they are denied.  Siravo

19   denies that he breached any duties that he owed to WesCorp.  Siravo lacks

20   information or knowledge sufficient to form a belief as to the truth of the

21   remaining allegations of Paragraph 192 and on that basis denies those allegations.

22   193.   Paragraph 193 contains legal conclusions, to which no response is

23   required.  To the extent the allegations require a response, they are denied.  Siravo

24   denies that he breached any duties that he owed to WesCorp.  Siravo lacks

25   information or knowledge sufficient to form a belief as to the truth of the

26   remaining allegations of Paragraph 193 and on that basis denies those allegations.

27   194.   Paragraph 194 contains legal conclusions, to which no response is

28   required.  To the extent the allegations require a response, Siravo lacks

15488701.3

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

1   information or knowledge sufficient to form a belief as to the truth of the

2   allegations of Paragraph 194 and on that basis they are denied.

3       195.   Paragraph 195 contains legal conclusions, to which no response is

4   required.  To the extent the allegations require a response, they are denied.  Siravo

5   lacks information or knowledge sufficient to form a belief as to the truth of the

6   remaining allegations of Paragraph 195 and on that basis denies those allegations.

7       196.   Paragraph 196 contains legal conclusions, to which no response is

8   required.  To the extent the allegations require a response, they are denied.  Siravo

9   denies that he breached any duties that he owed to WesCorp.  Siravo lacks

10  information or knowledge sufficient to form a belief as to the truth of the

11  remaining allegations of Paragraph 192 and on that basis denies those allegations.

12      197.   Siravo denies the allegations of Paragraph 197.

13      198.   Siravo denies the allegations of Paragraph 198.

14                     **SECOND CLAIM FOR RELIEF**

15  (Breach of Fiduciary Duties – Against Defendants Rhamy, Updike, Dames, Osberg,

16                     Longson and Harvey)

17      199.   Siravo and Swedberg incorporate by reference their responses to

18  paragraphs 1 through 153 as though set forth in full.  Siravo and Swedberg are not

19  named as defendants to this Claim and accordingly no response is required to

20  paragraphs 200 through 205.  To the extent the allegations require a response to

21  paragraphs 200 through 205, Siravo and Swedberg lack information or knowledge

22  sufficient to form a belief as to the truth of the allegations, and on that basis deny

23  them.

24      200.   Siravo and Swedberg are not named as defendants to this Claim and

25  accordingly no response is required.

26      201.   Siravo and Swedberg are not named as defendants to this Claim and

27  accordingly no response is required.

28

- 31 -        AMENDED ANSWER AND
                            COUNTERCLAIMS OF DEFENDANTS
                            SIRAVO AND SWEDBERG TO SAC

1    202.   Siravo and Swedberg are not named as defendants to this Claim and
2    accordingly no response is required.

3    203.   Siravo and Swedberg are not named as defendants to this Claim and
4    accordingly no response is required.

5    204.   Siravo and Swedberg are not named as defendants to this Claim and
6    accordingly no response is required.

7    205.   Siravo and Swedberg are not named as defendants to this Claim and
8    accordingly no response is required.

9                            **THIRD CLAIM FOR RELIEF**

10   (Breach of Fiduciary Duties – Against Defendants Jordan, Nakamura, Cheney,
11                          Rhamy, Kramer, Lentz, and Osberg)

12   206.   Siravo and Swedberg incorporate by reference their responses to
13   paragraphs 1 through 153 as though set forth in full.  Siravo and Swedberg are not
14   named as defendants to this Claim and accordingly no response is required to
15   paragraphs 207 through 212.  To the extent the allegations require a response to
16   paragraphs 207 through 212, Siravo and Swedberg lack information or knowledge
17   sufficient to form a belief as to the truth of the allegations, and on that basis deny
18   them.

19   207.   Siravo and Swedberg are not named as defendants to this Claim and
20   accordingly no response is required.

21   208.   Siravo and Swedberg are not named as defendants to this Claim and
22   accordingly no response is required.

23   209.   Siravo and Swedberg are not named as defendants to this Claim and
24   accordingly no response is required.

25   210.   Siravo and Swedberg are not named as defendants to this Claim and
26   accordingly no response is required.

27   211.   Siravo and Swedberg are not named as defendants to this Claim and
28   accordingly no response is required.

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

212.    Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

## FOURTH CLAIM FOR RELIEF

(Breach of Fiduciary Duties – Against All Director Defendants)

213.    Siravo and Swedberg incorporate by reference their responses to paragraphs 1 through 153 as though set forth in full.  Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required to paragraphs 214 through 220.  To the extent the allegations require a response to paragraphs 214 through 220, Siravo and Swedberg lack information or knowledge sufficient to form a belief as to the truth of the allegations, and on that basis deny them.

214.    Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

215.    Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

216.    Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

217.    Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

218.    Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

219.    Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

220.    Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

## FIFTH CLAIM FOR RELIEF

(Breach of Fiduciary Duty – Against Defendants Siravo and Swedberg)

AMENDED ANSWER AND COUNTERCLAIMS OF DEFENDANTS SIRAVO AND SWEDBERG TO SAC

221.   Siravo and Swedberg incorporate by reference paragraphs 1 through 23 and 154 through 178 as though set forth in full.

222.   Paragraph 222 contains legal conclusions to which no response is required.  To the extent the allegations require a response, they are denied.

223.   Siravo and Swedberg deny the allegations of Paragraph 223.

224.   Paragraph 224 contains legal conclusions to which no response is required.  To the extent the allegations require a response, they are denied

225.   Siravo and Swedberg deny the allegations of Paragraph 225.

226.   Siravo and Swedberg deny the allegations of Paragraph 226.

**SIXTH CLAIM FOR RELIEF**

(Fraud -- Against Defendants Siravo and Swedberg)

227.   Siravo and Swedberg incorporate by reference paragraphs 1 through 23, 154 through 178, and 222 through 226, as though set forth in full.

228.   Paragraph 228 contains legal conclusions to which no response is required.  To the extent the allegations require a response, they are denied.

229.   Siravo and Swedberg admit Exhibit 1 to the Second Amended Complaint is a true and correct copy of a memorandum dated November 2, 2007, that Swedberg sent to Robert Harvey, the Chairman of WesCorp's Board of Directors.  Siravo and Swedberg also admit that on or about June 24, 2008, Siravo sent a similar memorandum.  The memoranda sent by Siravo and Swedberg speak for themselves.  Siravo and Swedberg refer to the memoranda for their contents and deny any characterization inconsistent with their terms.  Siravo and Swedberg deny the remaining allegations in Paragraph 229.

230.   Siravo and Swedberg deny the allegations in Paragraph 230.

231.   Siravo and Swedberg deny the allegations in Paragraph 231.

232.   Paragraph 228 contains legal conclusions to which no response is required.  To the extent the allegations require a response, they are denied.

233.   Siravo and Swedberg deny the allegations in Paragraph 233.

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

1   234.   Siravo and Swedberg deny the allegations in Paragraph 234.

2   **SEVENTH CLAIM FOR RELIEF**

3   (Breach of Fiduciary Duty -- Against Defendant Siravo)

4   235.   Siravo and Swedberg incorporate by reference paragraphs 1 through

5   23, 154 through 182, inclusive as though set forth in full.  Swedberg is not named

6   as a defendant to this Claim and accordingly no response is required to paragraphs

7   236 through 239.  To the extent the allegations require a response to paragraphs

8   236 through 239, Swedberg lacks information or knowledge sufficient to form a

9   belief as to the truth of the allegations, and on that basis denies them.

10   236.   Paragraph 236 contains legal conclusions to which no response is

11   required.  To the extent that a response is required, the allegations are denied.

12   237.   Paragraph 237 contains legal conclusions to which no response is

13   required. To the extent that a response is required, the allegations are denied.

14   238.   Siravo denies the allegations in Paragraph 238.

15   239.   Siravo denies the allegations in Paragraph 239.

16   **EIGHTH CLAIM FOR RELIEF**

17   (Unjust Enrichment -- Against Defendant Lane)

18   240.   Siravo and Swedberg incorporate by reference their responses to

19   paragraphs 1 through 153, 154 through 182, and 236 through 239 as though set

20   forth in full.  Siravo and Swedberg are not named as defendants to this Claim and

21   accordingly no response is required to paragraphs 241 through 244.  To the extent

22   the allegations require a response to paragraphs 241 through 244, Siravo and

23   Swedberg lack information or knowledge sufficient to form a belief as to the truth

24   of the allegations, and on that basis deny them.

25   241.   Siravo and Swedberg are not named as defendants to this Claim and

26   accordingly no response is required.

27   242.   Siravo and Swedberg are not named as defendants to this Claim and

28   accordingly no response is required.

- 35 -

243.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

244.   Siravo and Swedberg are not named as defendants to this Claim and accordingly no response is required.

## AFFIRMATIVE DEFENSES

As for their affirmative defenses, Siravo and Swedberg allege as follows:

## FIRST AFFIRMATIVE DEFENSE

(Ratification, Consent, Approval, Acquiescence and Participation by the NCUA)

245.   The NCUA's Claims are barred, in whole or in part, because the NCUA, with full knowledge of Siravo's acts and omissions, consented to, approved of, acquiesced in, authorized and/or ratified each and every act or omission that the SAC alleges to be improper, including but not limited to those related to WesCorp's investment strategies, risk assessment efforts, and purchases of MBS securities.

246.   The NCUA's Office of Corporate Credit Unions ("OCCU") provided supervision and oversight of WesCorp, including of its investment strategies and risk management.  That supervision and oversight of WesCorp included but is not limited to its on-site examinations of WesCorp; its review of ALCO and Board of Directors books and meeting minutes; its approval of WesCorp's investments, investment strategies, policies, and procedures; its approval of the decisions and actions of WesCorp's management with full knowledge of WesCorp's investment strategies and MBS investments; its authorization of investments by WesCorp in securities rated by the rating agencies as low as BBB; and its preparation of yearly examination reports analyzing and assessing WesCorp's operations.

247.   As the NCUA was aware at all relevant times, WesCorp had a long history of purchasing securities with the same type of collateral -- mortgages -- as Option ARM MBS.  On information and belief, the NCUA and OCCU examiners knew of and acquiesced in WesCorp's investments in Option ARM MBS and

15488701.3

- 36 -

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

1   never suggested that Option ARM MBS were a "new" security type which

2   WesCorp should review as such.

3        248.   The NCUA, through its OCCU examiners, consistently approved of

4   WesCorp's investment strategies and investment concentrations, including

5   WesCorp's investments in Option ARM MBS, lower tranche MBS, and reduced

6   documentation MBS.

7        249.   On information and belief, the NCUA also knew and approved of

8   WesCorp's investment related and credit risk management policies and

9   procedures, including, without limitation, the policies and procedures for limiting

10  investments to primarily high grade securities with AA and AAA ratings, for

11  conducting credit reviews or proposed security purchases prior to purchasing, for

12  conducting credit reviews on newly-issued security types, for conducting annual

13  credit reviews on existing securities, for preparing monthly watch lists and

14  overseeing securities that were underperforming, for creating concentration limits,

15  and for publishing monthly reports on credit status.

16       250.   On information and belief, the NCUA knew and approved of

17  WesCorp's investment strategies and risk management efforts.

18       251.   In those instances, to the extent there were any, where the NCUA

19  raised any concerns regarding WesCorp's risk assessment efforts, WesCorp

20  promptly addressed those concerns, and the NCUA and the WesCorp Board

21  subsequently approved of WesCorp's remedial efforts.

22       252.   Moreover, as late as July 2010, the NCUA believed and issued public

23  statements indicating that AA and AAA rated private-label MBS were safe and

24  appropriate investments.  In light of the foregoing, the NCUA knowingly

25  consented to, approved of, acquiesced in, authorized and/or ratified each and every

26  activity that the NCUA now challenges as improper.

27

28

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

## SECOND AFFIRMATIVE DEFENSE

### (Ratification, Consent, Approval, by WesCorp Directors)

253.   Siravo and Swedberg incorporate by reference and re-allege each and every allegation contained in paragraphs 245-252 as though fully set forth herein

254.   The NCUA's Claims are barred, in whole or in part, because WesCorp's Board of Directors and/or committees thereof (the "Board"), with full knowledge of Swedberg and Siravo's acts and omissions, consented to, approved of, acquiesced in, authorized and/or ratified each and every act or omission that the SAC alleges to be improper.

255.   As to the First Claim for Relied related to MBS investments, WesCorp made no investments, including but not limited to those challenged in this action, without first making full disclosure to the Board and obtaining the approval of the Board.

256.   WesCorp changed no concentration limits or other investment limitations or investment policies without first making full disclosure to the Board and obtaining the approval of the Board.

257.   To the extent (if at all), Siravo did anything alleged in the SAC as the basis for the First Claim for Relief, he did so only have making disclosure to, and receiving the permission of the Board.

258.   The WesCorp Board provided supervision and oversight of WesCorp, including of its investment strategies and risk assessment. WesCorp and the Board's supervision was effected by, among other things, implementing policies to direct WesCorp's activities and its investments, by receiving and reviewing reports on WesCorp's activities, by reviewing and approving actions and decisions of WesCorp officers and employees, and by directing WesCorp's officers to follow the directions of the NCUA and its on-site examiner. Without limiting the foregoing, on information and belief the Board adopted certain policies that addressed WesCorp's investment strategies, risk assessment efforts, purchases of

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

1    MBS, the review and approval of concentration limits and risk assessment efforts,

2    approval and authorization of investments in MBS, and approvals of specific

3    purchases of MBS.  Siravo complied with such policies and directives to the extent

4    they were applicable to his scope of duties.  Moreover, on information and belief

5    the Board directed its officers to follow the guidance and direction of the NCUA

6    in all respects, which direction Siravo followed to the extent applicable to his

7    scope of duties.

8         259.   As the Board was aware at all relevant times, WesCorp had a long

9    history of purchasing securities with the same type of collateral -- mortgages -- as

10   Option ARM MBS.  On information and belief, the Board knew of and acquiesced

11   in WesCorp's investment in Option ARM MBS and never suggested that Option

12   ARM MBS were a "new" security type which WesCorp should review as such.

13        260.   The Board consistently approved of WesCorp's investment strategies

14   and investment concentrations, including WesCorp's investments in Option ARM

15   MBS, lower tranche MBS, and reduced documentation MBS.

16        261.   On information and belief, the Board also knew and approved of

17   WesCorp's investment related and credit risk management policies and

18   procedures, including, without limitation, the policies and procedures for limiting

19   investments to primarily high grade securities with AA and AAA ratings, for

20   conducting credit reviews or proposed security purchases prior to purchasing, for

21   conducting credit reviews on newly-issued security types, for conducting annual

22   credit reviews on existing securities, for preparing monthly watch lists and

23   overseeing securities that were underperforming, for creating concentration limits,

24   and for publishing monthly reports on credit status.

25        262.   On information and belief, the Board knew and approved of

26   WesCorp's investment strategies and risk management efforts.

27        263.   In those instances, to the extent there were any, where the NCUA

28   raised any concerns regarding WesCorp's risk assessment efforts, WesCorp

15488701.3                                    - 39 -                     AMENDED ANSWER AND
                                                                    COUNTERCLAIMS OF DEFENDANTS
                                                                    SIRAVO AND SWEDBERG TO SAC

1  promptly addressed those concerns, and the NCUA and the Board subsequently
2  approved of WesCorp's remedial efforts.

3    264.   As for the SERP claims, they are barred because the WesCorp Board
4  was fully informed about the nature, purpose, and effect of the proposed SERP
5  amendments (to both the Siravo SERP and the Executive SERP).  The Board was
6  fully aware that both SERPs would be modified, and were fully cognizant of the
7  financial effect the SERP amendments would have on WesCorp.  In fact, the
8  documents which the NCUA alleges are false and misleading, and form the basis
9  of the SERP claims, were largely written by WesCorp Board members themselves.

10    265.   Siravo and Swedberg disclosed to the Board all relevant and material
11  information regarding the SERP amendments, and the Board authorized all of the
12  actions taken.

13    266.   In light of the foregoing, the Board knowingly consented to, approved
14  of, acquiesced in, authorized and/or ratified each and every activity that the NCUA
15  now challenges as improper.

16                          **THIRD AFFIRMATIVE DEFENSE**
17          (Business Judgment Rule, Due Diligence and Reasonable Investigation)

18    267.   Siravo and Swedberg incorporate by reference and re-allege each and
19  every allegation contained in paragraphs 245 to 266 as though fully set forth
20  herein

21    268.   The First and Seventh Claims for Relief are barred by the business
22  judgment rule in that every act or omission challenged by the NCUA was made
23  after reasonable investigation based upon reasonable grounds to believe that such
24  acts or omissions were reasonable and prudent under the circumstances, because
25  every act or omission challenged met or exceeded the custom and practice in the
26  industry and was undertaken in good faith, with full candor, and in what Siravo
27  honestly believed to be the best interests of WesCorp.

28

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

**FOURTH AFFIRMATIVE DEFENSE**

(Intervening or Superseding Causes)

269.    Siravo and Swedberg incorporate by reference and re-allege each and every allegation contained in paragraphs 245 to 268 as though fully set forth herein

270.    The NCUA's Claims are barred, in whole or in part, because any damages alleged therein were the result of one or more superseding causes or were caused by the acts and/or failures to act of persons and/or entities other than Siravo or Swedberg, and were not the result or any act or omission on the part of Siravo or Swedberg.

271.    Such intervening and supervening causes include but are not limited to the fact that all investments made by WesCorp, all investment policies adopted by WesCorp, and/or the amendments to the SERPS were approved, authorized and/or ratified by WesCorp's Board of Directors and/or committees of that Board.

272.    Such intervening and superseding causes also include but are not limited to the worldwide credit crunch and other macroeconomic and mortgage industry events that constrained WesCorp's access to credit and capital markets, affected its liquidity, and caused sharp and unforeseen drops in the value of its investment portfolio.

**FIFTH AFFIRMATIVE DEFENSE**

(Statute of Limitations)

273.    Siravo and Swedberg incorporate by reference and re-allege each and every allegation contained in paragraphs 245 to 272 as though fully set forth herein

274.    The NCUA's Claims are barred, in whole or in part, by the applicable statute(s) of limitations.

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

## SIXTH AFFIRMATIVE DEFENSE

### (Reliance on others)

275.   Siravo and Swedberg incorporate by reference and re-allege each and every allegation contained in paragraphs 245 to 274 as though fully set forth herein

276.   The NCUA's Claims are barred, in whole or in part, because the acts and conduct of Siravo and/or Swedberg, including but not limited to the purchases of securities and amendments of, and/or changes to, the SERPs, were made or occurred in reasonable good faith reliance on the statements, representations, and approvals of others upon whom they was entitled to rely, including but not limited to the WesCorp Board of Directors, individual directors, the ALCO, NCUA personnel and examiners, rating agencies, underwriters, brokers, issuers, auditors, investment bankers, financial advisors, and counsel.

## SEVENTH AFFIRMATIVE DEFENSE

### (Apportionment)

277.   Siravo and Swedberg incorporate by reference and re-allege each and every allegation contained in paragraphs 245 to 276 as though fully set forth herein

278.   Any damages that the NCUA may have suffered should be apportioned according to the relative degrees of fault of other persons and/or entities responsible for the NCUA's damages, including but not limited to NCUA personnel and examiners, rating agencies, underwriters, brokers, issuers, auditors, investment bankers, financial advisors, and counsel, and any alleged liability of Siravo and Swedberg should be reduced accordingly.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Entitlement to Exemplary or Punitive Damages)

279.   Siravo and Swedberg incorporate by reference and re-allege each and every allegation contained in paragraphs 245 to 278 as though fully set forth herein

280.   NCUA is precluded from recovering exemplary or punitive damages, either in whole or in part, under the applicable provisions of the law, including,

without limitation, California Civil Code section 3294, the United States Constitution and/or the California Constitution.

### NINTH AFFIRMATIVE DEFENSE

#### (Set Off)

281.  Siravo and Swedberg incorporate by reference and re-allege each and every allegation contained in paragraphs 245 to 280 as though fully set forth herein

282.  The Second Amended Complaint, and each cause of action alleged therein against Siravo and Swedberg, is subject to their rights of set off with respect to monies owed to them by WesCorp and/or the NCUA.

### COUNTERCLAIMS

For counterclaims, Siravo and Swedberg allege:

### JURISDICTION

283.  The Court has supplemental jurisdiction over these counterclaims under 28 U.S.C. § 1367(a), because these counterclaims and the purported claims alleged by the NCUA all form part of the same case or controversy concerning the parties' rights and responsibilities related to Siravo's and Swedberg's service as officers and employees of WesCorp.

### PARTIES

284.  Siravo served as President/CEO of WesCorp from May 1, 2002 to on or about March 20, 2009.  Swedberg was employed by WesCorp from October 1998 until he retired in July 2009.  He was the Director of Human Resources from October 1998 and served as the Vice President of Human Resources in 1999 until approximately April or May 2007.  He then served as Vice President of Strategic Planning and Organizational Development until December 31, 2008, and was thereafter employed on a consultant basis until he retired in July 2009.

285.  Counter-defendant National Credit Union Administration Board as Liquidator of Western Corporate Federal Credit Union ("NCUA") is the liquidating

- 43 -

1    agent of WesCorp.

2                          **FACTUAL ALLEGATIONS**

3                                **Policy 21**

4           286.   WesCorp's Board of Directors adopted a resolution regarding

5    indemnification and insurance, codified in WesCorp's book of policies as "Policy

6    21."

7           287.   WesCorp agreed in Policy 21 to indemnify WesCorp's current and

8    former "officials" and "employees" "to the maximum extent permitted by either the

9    laws of the state of California or the Model Business Corporation Act" (the

10   "MBCA") "for any liability asserted against them in connection with judicial or

11   administrative proceedings, formal or informal, to which they are or may become

12   parties by reason of the performance of their official duties."

13          288.   WesCorp also agreed in Policy 21 that the indemnification "shall

14   include the recovery of reasonable costs and attorneys fees incurred by an

15   individual so indemnified if such individual is required to engage the services of

16   any attorney. . .to secure the indemnity provided herein."

17          289.   WesCorp also agreed in Policy 21 to "purchase and maintain

18   insurance" on behalf of current and former officials and employees "against any

19   liability asserted against them and expenses reasonably incurred by them in their

20   official capacities and arising out of the performance of their official duties to the

21   extent such insurance is permitted by the applicable state law or the Model Business

22   Corporation Act[.]"

23                 **The NCUA's Refusal to Pay Attorney's Fees**

24          290.   On January 10, 2011, Siravo and Swedberg Defendants submitted a

25   request to the NCUA as Liquidating Agent for WesCorp for reimbursement of past

26   defense costs incurred in defending this litigation, payment of any future defense

27   costs that they might incur in this case, and payment for any costs they incur in

28   establishing their right to indemnity.

1    291.   The Liquidating Agent has not agreed to these requests of Siravo and

2    Swedberg.

3    292.   All of the claims asserted by the NCUA against Siravo and Swedberg

4    in this litigation "arise out of the performance of their official duties" as officers

5    and employees of WesCorp.

6    293.   Siravo and Swedberg have incurred, and continue incur, damages in

7    the form of attorney's fees and costs in connection with the defense of the claims

8    asserted by the NCUA as Liquidating Agent for WesCorp in this litigation.

9                              **FIRST COUNTERCLAIM**

10               (Breach of Obligation to Pay Litigation Costs Under Policy 21)

11   294.   Siravo and Swedberg incorporate by reference and re-allege each and

12   every allegation contained in paragraphs 283 to 293 as though fully set forth herein.

13   295.   WesCorp agreed in Policy 21 to indemnify Siravo and Swedberg "to

14   the maximum extent permitted by either" California law *or* the MBCA.

15   296.   The MBCA provides that a corporation must advance defense costs if

16   the corporation has promised by resolution or otherwise indemnification "to the

17   fullest extent permitted by law," as WesCorp did in Policy 21.  MBCA §8.58

18   expressly states that any such resolution "shall be deemed to obligate the

19   corporation to advance funds to pay for or reimburse" the defense costs before final

20   disposition of the case.

21   297.   Siravo and Swedberg have performed all of their obligations under

22   Policy 21 except to the extent that their performance has been excused by the

23   actions of WesCorp and/or the NCUA.  Siravo and Swedberg have offered to

24   provide to the NCUA as liquidator of WesCorp the written affirmation and

25   undertaking required for advancement attorneys fees by MBCA §8.53 that they

26   conducted themselves in good faith in what they reasonably believed was in the

27   best interests of WesCorp and to repay any advanced funds if it is ultimately

28   determined that they are not entitled to mandatory indemnification or that they did

1   not meet the standard of conduct under section 8.51.

2        298.   NCUA as liquidator of WesCorp is liable for WesCorp's obligations

3   and is obligated to reimburse Siravo and Swedberg for defense costs incurred in

4   this litigation under the provisions of the MBCA that are adopted by WesCorp in

5   Policy 21.

6        299.   The NCUA has failed to reimburse Siravo and Swedberg for the

7   defense costs they have incurred in this litigation.

8        300.   Siravo and Swedberg have incurred damages as a result of the

9   NCUA's breach of WesCorp's obligation in Policy 21 to reimburse them for their

10  defense costs incurred in this litigation, which exceed $100,000 through September

11  2011, in an amount to be determined through a dispositive motion or at trial.

12                           **SECOND COUNTERCLAIM**

13           (Payment of Litigation Costs Under California Labor Code 2802)

14       301.   Siravo and Swedberg incorporate by reference and re-allege each and

15  every allegation contained in paragraphs 283 to 300 as though fully set forth herein.

16       302.   At all relevant time, Siravo and Swedberg were employees of

17  WesCorp.

18       303.   California Labor Code Section 2802 provides that an employer "shall

19  indemnify his or her employee for all necessary expenditures or losses incurred by

20  the employee in direct consequence of the discharge of his or her duties[.] "

21       304.   NCUA as liquidator of WesCorp is obligated to reimburse Siravo and

22  Swedberg for their defense costs as they are incurred in this litigation under

23  California Labor Code Section 2802.

24       305.   Siravo and Swedberg have incurred and paid attorneys fees and costs

25  in defense of the claims asserted by NCUA as liquidator of WesCorp in this

26  litigation.

27       306.   The NCUA has failed to reimburse Siravo and Swedberg for the

28  attorney's fees and costs they have paid to date.

AMENDED ANSWER AND
COUNTERCLAIMS OF DEFENDANTS
SIRAVO AND SWEDBERG TO SAC

307.   Siravo and Swedberg have incurred damages as a result of the NCUA's breach obligation under California Labor Code 2802 as liquidator of WesCorp to reimburse Siravo and Swedberg for their attorney fees and costs, which exceed $100,000 through September 2011, and will incur damages in the future if the NCUA fails to reimburse them for any litigation costs they pay in the future in an amount to be determined through a dispositive motion or at trial.

### THIRD COUNTERCLAIM

(Indemnification under Policy 21)

308.   Siravo and Swedberg incorporate by reference and re-allege each and every allegation contained in paragraphs 283 to 307 as though fully set forth herein.

309.   WesCorp agreed in Policy 21 to indemnify Siravo and Swedberg "to the maximum extent permitted by either" California law *or* the MBCA.

310.   Siravo and Swedberg have demanded that the NCUA, as liquidator of WesCorp, indemnify them under Policy 21 to the fullest extent permissible under either California law or the MBCA and/or defense costs to the fullest extent permissible under either California law or the MBCA.

311.   Siravo and Swedberg have incurred damages as a result of the NCUA's failure to reimburse them for their attorney fees and costs, which exceed $100,000 through September 2011, and they will incur additional damages in an amount to be determined through a dispositive motion or at trial if the NCUA refuses to indemnify them for such fees and costs pursuant to Policy 21.

### FOURTH COUNTERCLAIM

(Breach of Obligation to Provide Insurance)

312.   Siravo and Swedberg incorporate by reference and re-allege each and every allegation contained in paragraphs 283 to 311 as though fully set forth herein.

313.   WesCorp promised in Policy 21 to "purchase and maintain" insurance "against any liability asserted against" current and former officials and employees, including but not limited to Siravo and Swedberg.

314.   WesCorp purchased an insurance policy from CUMIS Insurance Society, but CUMIS Insurance Society has denied coverage under the insurance policy for the claims asserted against Siravo and Swedberg in this action.

315.   WesCorp breached the promise in Policy 21 to provide insurance coverage for Siravo and Swedberg because CUMIS has denied coverage for the claims asserted against them in this action and, therefore, the insurance policy does not cover Siravo and Swedberg for "any liability" asserted against them.

316.   The NCUA as liquidator of WesCorp is liable for WesCorp's obligations.

317.   The NCUA, after putting WesCorp into conservatorship, compounded the damage to Siravo and Swedberg by canceling the CUMIS Policy, by refusing to obtain replacement insurance, and by refusing CUMIS' offer of supplemental insurance with fewer coverage exclusions than the CUMIS Policy.

318.   If WesCorp had complied with its obligations in Policy 21 and obtained adequate insurance coverage, Siravo and Swedberg would have been covered for all of the costs and claims related to this litigation.

319.   Siravo and Swedberg have performed all of their obligations under Policy 21 except to the extent that their performance has been excused by the actions of WesCorp and/or the NCUA.

320.   Siravo and Swedberg have incurred damages for their unreimbursed attorney's fees and costs, which exceed $100,000 through September 2011.

321.   Siravo and Swedberg will continue to incur damages in this litigation in an amount to be determined through dispositive motion or at trial, as a result of the WesCorp's failure to obtain insurance as required by Policy 21

### PRAYER

WHEREFORE, Siravo and Swedberg pray for judgment against plaintiffs as follows:

1.     That Plaintiff NCUA as Liquidating Agent for WesCorp takes nothing

AMENDED ANSWER AND COUNTERCLAIMS OF DEFENDANTS SIRAVO AND SWEDBERG TO SAC

1    by the Complaint and that the Complaint be dismissed with prejudice.

2         2.    That judgment be entered in favor of Siravo and Swedberg, and

3    against Plaintiff.

4         3.    That the NCUA be ordered to reimburse Siravo and Swedberg for the

5    defense costs they have incurred in this litigation.

6         4.    That Siravo and Swedberg be awarded damages on their

7    counterclaims, in amounts to be determined through dispositive motions or at trial.

8         5.    That the Court adjudge and declare that NCUA is obligated to pay to

9    advance to Siravo and Swedberg their defense costs incurred in this action and to

10   the fullest extent any liability incurred by Siravo and Swedberg.

11        6.    That Siravo and Swedberg be awarded their costs and reasonable

12   attorneys' fees.

13        7.    That Siravo and Swedberg be granted such other and further relief as

14   the Court may deem just and proper.

15                     **DEMAND FOR JURY TRIAL**

16        Siravo and Swedberg hereby demand a jury trial

17

18   Dated:  October 31, 2011              RICHARD E. DROOYAN
                                          LAURA D. SMOLOVE
19                                        Munger, Tolles & Olson LLP

20

21                                        By _Richard E. Drooyan / LDS_
                                          RICHARD E. DROOYAN
22

23                                        Attorneys for Robert A. Siravo and
                                          Thomas E. Swedberg
24

25

26           .

27

28

15488701.3                - 49 -        AMENDED ANSWER AND
                                        COUNTERCLAIMS OF DEFENDANTS
                                        SIRAVO AND SWEDBERG TO SAC

## **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

        I, the undersigned, declare that I am over the age of 18 and not a party to the within cause. I am employed by Munger, Tolles & Olson LLP in the County of Los Angeles, State of California. My business address is 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California 90071-1560.

        On October 31, 2011, I served upon the interested parties in this action the foregoing document described as:

### **AMENDED ANSWER AND COUNTERCLAIM OF DEFENDANTS ROBERT A. SIRAVO AND THOMAS E. SWEDBERG TO SECOND AMENDED COMPLAINT**

[X] By placing ☐ the original(s) ☒ a true and correct copy(ies) thereof, as set out below, in an addressed, sealed envelope(s) clearly labeled to identify the person(s) being served at the address(es) set forth on the attached service list.

[X] **BY MAIL (AS INDICATED ON THE ATTACHED SERVICE LIST)** I caused such envelope(s) to be placed in interoffice mail for collection and deposit in the United States Postal Service at 355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, California, on that same date, following ordinary business practices. I am familiar with Munger, Tolles & Olson LLP's practice for collection and processing correspondence for mailing with the United States Postal Service; in the ordinary course of business, correspondence placed in interoffice mail is deposited with the United States Postal Service with first class postage thereon fully prepaid on the same day it is placed for collection and mailing.

☐ **BY FEDERAL EXPRESS PRIORITY OVERNIGHT DELIVERY (AS INDICATED ON ATTACHED SERVICE LIST)** I delivered the sealed Federal Express envelope(s) to an employee authorized by Federal Express to receive documents, with delivery fees paid or provided for.

☐ **BY FACSIMILE (AS INDICATED ON ATTACHED SERVICE LIST)** By causing to be sent a true and correct copy(ies) of said document via facsimile transmission. The transmission was reported as complete and without error. A true and correct copy of the machine's transmission report, indicating the date and time that the transmission was completed without error is attached to this proof of service and is incorporated herein by this reference. The telephone number of the facsimile machine I used was (213) 683-9510. This facsimile machine complies with Rule 2003(3) of the California Rules of Court.

☐ **(STATE)** I declare under penalty of perjury that the foregoing is true and correct.

[X] **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

*See attached Service List*

        Executed on October 31, 2011, at Los Angeles, California.

                               Myrna G. Perez

14801984.1

- 50 -

Service List
*National Credit Union Administration Board v. Siravo, et al.*
Case 2:10-cv-01597-GW -MAN

| | |
|---|---|
| Michael H Bierman<br>Michael E Pappas<br>Michelle Kimiko Sugihara<br>Jeffrey D Wexler<br>Luce Forward Hamilton & Scripps LLP<br>601 South Figueroa Street, Suite 3900<br>Los Angeles, CA 90017 | Kyle A Ostergard<br>Alston & Bird LLP<br>333 South Hope Street<br>Sixteenth Floor<br>Los Angeles, CA 90071-2901 |

George Allen Brandt
Bruce A Ericson
Pillsbury Winthrop Shaw Pittman LLP
50 Fremont Street
PO Box 7880
San Francisco, CA 94120-7880

Reynold Lloyd Siemens
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406

Curtis G Carll
Kenneth M Fitzgerald
Chapin Fitzgerald Sullivan LLP
550 West C Street, Suite 2000
San Diego, CA 92101

Janlynn R Fleener
Downey Brand LLP
621 Capitol Mall, 18th Floor
Sacramento, CA 95814

Seth E Freilich
Andrew S Wong
Orrick Herrington & Sutcliffe LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017

Suzanne Havens-Beckman
Azita Moradmand
David C Parisi
Parisi and Havens LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403

Scott A Kamber
KamberLaw LLC
100 Wall Street, 23rd Floor
New York, NY 10005

14801984.1

- 51 -

ANSWER AND COUNTERCLAIM OF DEFENDANTS ROBERT A. SIRAVO AND THOMAS E. SWEDBERG TO SECOND AMENDED COMPLAINT