Michael H. Bierman, State Bar No. 89156
Jeffrey D. Wexler, State Bar No. 132256
Michael E. Pappas, State Bar No. 130400
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 S. Figueroa, Suite 3900
Los Angeles, California 90017
Telephone: 213.892.4992
Facsimile:  213.892.7731
E-Mail:   mbierman@luce.com
          mpappas@luce.com
          jwexler@luce.com

Attorneys for Plaintiff and Counterdefendant National Credit Union Administration Board As Liquidating Agent For Western Corporate Federal Credit Union

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD AS LIQUIDATING AGENT FOR WESTERN CORPORATE FEDERAL CREDIT UNION, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT A. SIRAVO, TODD M. LANE, ROBERT J. BURRELL, THOMAS E. SWEDBERG, TIMOTHY T. SIDLEY, ROBERT H. HARVEY, JR., WILLIAM CHENEY, GORDON DAMES, JAMES P. JORDAN, TIMOTHY KRAMER, ROBIN J. LENTZ, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE, <br><br> Defendants. | Case No.: CV10-01597 GW (MANx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF AND COUNTERDEFENDANT NATIONAL CREDIT UNION ADMINISTRATION BOARD AS LIQUIDATING AGENT FOR WESTERN CORPORATE FEDERAL CREDIT UNION TO DISMISS AMENDED COUNTERCLAIMS FOR: (1) LACK OF SUBJECT MATTER JURISDICTION; AND (2) FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED [Fed. R. Civ. P. 12(b)(1) and 12(b)(6)]** <br><br> Date: January 9, 2012 <br> Time: 8:30 a.m. <br> Courtroom: 10 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..........................................................................................1

BACKGROUND…. ......................................................................................3

    A.    The Complaint .................................................................3

    B.    WesCorp's Policy 21 ......................................................3

    C.    The NCUA's Denial of the Officer Defendants' Requests for Indemnity and Advancement of Defense Costs...................4

    D.    The Counterclaims ...........................................................4

LEGAL ARGUMENT...................................................................................8

I.    THE COURT SHOULD DISMISS THE COUNTERCLAIMS TO THE EXTENT THAT THEY SEEK TO REQUIRE THE NCUA TO MAKE PAYMENTS DURING THE PENDENCY OF THIS LAWSUIT. ...............8

    A.    The Court Lacks Subject Matter Jurisdiction to Order Legal Expense Payments or to Issue Declaratory Relief ......................8

    B.    The Officer Defendants Cannot State a Claim Against the NCUA for Payment During the Pendency of this Lawsuit .........................10

        1.    Under the Governing Regulations, Federal Credit Unions Have Discretion Whether to Advance Costs While a Matter is Pending ................................................................10

        2.    Neither Policy 21 Nor the Provisions Referred to Therein Create a Right to Payment While a Matter is Pending.............12

II.    THE COURT SHOULD DISMISS THE COUNTERCLAIMS TO THE EXTENT THAT THEY SEEK INDEMNIFICATION ...............................14

    A.    The Officer Defendants Cannot Obtain Indemnification for Actions Brought by the NCUA Based upon Their Allegedly Wrongful Conduct .........................................................14

    B.    The Officer Defendants Cannot State a Claim Under Labor Code Section 2802 ...................................................................17

    C.    The Officer Defendants' Claims for Indemnification are Not Ripe ...19

CONCLUSION…. ......................................................................................20

i

1

**TABLE OF AUTHORITIES**

2

**CASES**

Page

3

*Abbott Labs v. Gardner,*

4
    387 U.S. 136 (1967)........................................................................20

*Adams v. RTC,*

5
    831 F. Supp. 1471 (D. Minn),

6
    *aff'd*, 10 F.3d 1568 (8th Cir. 1993) ................................... 14, 15, 16, 17

*Carney v. RTC,*

7
    19 F.3d 950 (5th Cir. 1994).........................................................9, 10

8
*Courtney v. Halleran,*

9
    485 F.3d 942 (7th Cir. 2007)................................................................9

*Freeman v. FDIC,*

10
    56 F.3d 1394 (D.C. Cir. 1995) ........................................................8, 9

11
*Gentile v. SinglePoint Fin., Inc.,*

12
    788 A.2d 111 (Del. 2001) ...............................................................12

*Havens v. Attar,*

13
    1997 WL 55957, 1997 Del. Ch. LEXIS 12 (Del. Ch. Jan. 30, 1997)...............12

14
*Lear Corp. v. Johnson Elec. Holdings Ltd.,*

15
    353 F.3d 580 (7th Cir. 2003)..............................................................19

*Los Angeles Protective League v. City of Los Angeles,*

16
    27 Cal. App. 4th 168 (1994)......................................................17, 18

17
*Nicholas Labs., LLC v. Chen,*

18
    2011 Cal. App. LEXIS 1287 (Oct. 12, 2011) ..................................17

*O'Hara v. Teamsters Union Local No. 856,*

19
    151 F.3d 1152 (9th Cir. 1998)..................................................13, 14

20
*RTC v. Atherton,*

21
    1994 U.S. Dist. LEXIS 21427 (D.N.J. Sept. 9, 1994)................................16, 17

*RTC v. Baker,*

22
    1994 WL 637359, 1994 U.S. Dist. LEXIS 16218

23
    (E.D. Pa. Nov. 14, 1994).............................................. 14, 15, 16, 17

*RTC v. Eason,*

24
    17 F.3d 1126 (8th Cir. 1994)........................................ 14, 15, 16, 17

25
*RTC v. Gregor,*

26
    1995 WL 931093, 1995 U.S. Dist. LEXIS 22032
    (E.D.N.Y. Sept. 29, 1995)...........................................................14, 16

27

28

ii

1

2

### TABLE OF AUTHORITIES
**(cont'd)**

**Page**

3

*RTC v. Scott*,
  929 F. Supp. 1001 (S.D. Miss. 1996),

4

  *vacated*, 125 F.3d 254 (5th Cir. 1997)..............................................16

5

*Sahni v. American Diversified Partners*,
  83 F.3d 1054 (9th Cir. 1996)....................................................9

6

7

*Thomas v. Union Carbide Agric. Prods. Co.*,
  473 U.S. 568 (1985)..............................................................20

8

*Thompson v. The Williams Cos., Inc.*,
  2007 Del. Ch. LEXIS 112 (Del. Ch. July 31, 2007) .........................12

9

10

### STATUTES

11

12 U.S.C. § 1787(b) ...........................................................10

12

12 U.S.C. § 1787(g) ............................................ 1, 8, 9, 10, 19

13

12 U.S.C. § 1821(j)..............................................................8, 9

14

Cal. Corp. Code § 7237......................3, 5, 12, 13, 14, 17, 18, 19

15

Cal. Corp. Code § 7237(c) ...............................................13

16

Cal. Corp. Code § 7237(d) ...............................................13

17

Cal. Labor Code § 2802 ......................2, 5, 6, 7, 12, 13, 14, 17, 18, 19

18

### REGULATIONS

19

12 C.F.R. § 545.121 ........................................................15, 16

20

12 C.F.R. § 545.121(a)(2) ...............................................15

21

12 C.F.R. § 545.121(c)(2)(iii) ...........................................15

22

12 C.F.R. § 545.121(e).....................................................15

23

12 C.F.R. § 701.33(c)(2) ...................................................13

24

12 C.F.R. § 701.33(c)(6) ....................................... 2, 10, 11, 12

25

12 C.F.R. § 701.33(c)(6)(i) ...............................................17

26

12 C.F.R. § 701.33(c)(6)(ii) ..........................................11, 17

27

12 C.F.R. § 701.33(c)(6)(iii) .............................................11

28

**TABLE OF AUTHORITIES**
**(cont'd)**

**Page**

### RULES

Fed. R. Civ. P. 12(b)(1)....................................................................................1, 9

Fed. R. Civ. P. 12(b)(6)........................................................................................1

### **MISCELLANEOUS**

76 Fed. Reg. 30510 (May 26, 2011)..............................................................10, 11

Model Business Corporation Act § 8.52.............................................................13

Model Business Corporation Act § 8.53...............................................................5

Model Business Corporation Act § 8.53(a) .......................................................13

Model Business Corporation Act § 8.58.............................................................13

U.S. Const., Art. III............................................................................................20

201186831.1

iv

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

Defendants and counterclaimants Robert A. Siravo ("Siravo"), Thomas E. Swedberg ("Swedberg"), Timothy T. Sidley ("Sidley"), Robert J. Burrell ("Burrell"), and Todd M. Lane ("Lane") (collectively, the "Officer Defendants"), have each filed Amended Counterclaims against plaintiff and counterdefendant the National Credit Union Administration Board as Liquidating Agent for Western Corporate Federal Credit Union (the "NCUA"). Each Officer Defendant alleges that, as a former officer of Western Corporate Federal Credit Union ("WesCorp"), he is entitled to, *inter alia*, indemnification, payment of defense costs (including advances of funds to pay defense costs), and costs incurred to secure indemnity. Siravo and Swedberg pray for an order that the NCUA advance their defense costs, and Sidley alleges that he is entitled to a judicial declaration that the NCUA is obligated to indemnify him and to advance future defense costs.

The NCUA here moves first for dismissal of those counterclaims that seek to require the NCUA to make payments unless and until the Officer Defendants prevail (*i.e.*, the Officer Defendants' claims for advancement, "reimbursement," and declaratory relief). Second, it moves on independent grounds for dismissal of the indemnification claims asserted in the Amended Counterclaims in their entirety.

The Officer Defendants' claims seeking payments from the NCUA prior to resolution of this matter fail under both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). First, the Court lacks subject matter jurisdiction to adjudicate the claims because they seek either an order requiring payment (advancement or reimbursement) or declaratory relief that the Officer Defendants have a right to payment. Under 12 U.S.C. § 1787(g), the courts lack jurisdiction to grant relief that would "restrain or affect" the NCUA's exercise of its statutory powers. Orders requiring payments or related declarations of rights fall within the scope of the statute.

1

1    Second, as a matter of law, the Officer Defendants have no legal right to

2    payment before final resolution of this action.  Under 12 C.F.R. § 701.33(c)(6), the

3    regulation governing the availability of indemnification to officers of credit unions,

4    a credit union's decision whether to advance or reimburse legal expenses during the

5    pendency of a lawsuit (1) is wholly discretionary, but (2) requires the credit union to

6    make specific supporting findings.  Here, the NCUA has not elected to advance or

7    reimburse the Officer Defendants' litigation expenses, and it has not made the

8    findings required under Section 701.33(c)(6) to do so.  Accordingly, the Officer

9    Defendants cannot pursue a claim for advancement or reimbursement.

10    Moreover, the Officer Defendants do not allege any substantive basis for

11    advancement or reimbursement.  Neither California law nor the Model Business

12    Corporation Act (the "MBCA") requires advances or reimbursement during the

13    pendency of a lawsuit, nor does the WesCorp policy ("Policy 21") relied upon by

14    the Officer Defendants.  Without a substantive basis for the relief they seek, the

15    Officer Defendants cannot state a claim.

16    Besides dismissing the claims seeking payment during the pendency of the

17    action, the Court should also dismiss the Officer Defendants' claims for

18    indemnification in their entirety.  First, the counterclaims for indemnification (and

19    advancement and reimbursement) fail because the regulations authorizing

20    indemnification by financial institutions such as WesCorp apply only to solvent

21    institutions.  As a matter of law, corporate officers sued by the receiver or liquidator

22    of a failed financial institution may not obtain indemnification from the estate of the

23    failed institution, even if the officers ultimately defeat the claims against them.

24    Second, the Officer Defendants' claims for indemnification under Cal. Labor

25    Code § 2802 (including advancement and reimbursement) fail because that statute is

26    inapplicable to the claims asserted by the Officer Defendants here.  Section 2802

27    does not apply to an employee's claim against an employer seeking indemnity for

28    expenses incurred by the employee in defending against a lawsuit brought by the

2

1  employer.  Furthermore, claims for indemnification by directors and officers of a

2  non-profit corporation are governed by Cal. Corp. Code § 7237 – a statute directly

3  addressing such claims – and not by the more general Labor Code section.[1]

4      Third, the claims for indemnification are not ripe because, under both

5  California law and the MBCA, a corporate officer must prevail in order to have a

6  right to mandatory indemnification.  Because the Officer Defendants have not yet

7  prevailed, their counterclaims are not yet ripe.  While declaratory relief usually

8  creates ripeness in indemnification situations, the Court does not have jurisdiction to

9  issue declaratory relief here.

10      The counterclaims for advancements, reimbursement, declaratory relief, and

11  indemnification in the Amended Counterclaims should be dismissed.

12                          **BACKGROUND**

13      **A.     The Complaint**

14      The NCUA filed its Second Amended Complaint (the "SAC") [Docket 116]

15  on February 22, 2011.  The SAC's First Claim for Relief for Breach of Fiduciary

16  Duty alleges a claim against Siravo, Lane, Burrell, and Sidley for breaches of their

17  duty of care while acting as officers of WesCorp, which resulted in more than $6.8

18  billion in losses in WesCorp's investment portfolio and its ultimate demise.  The

19  SAC's Fifth Claim for Relief for Breach of Fiduciary Duty and Sixth Claim for

20  Relief for Fraud seek relief as against Siravo and Swedberg for their wrongful

21  actions concerning the amendments to the Siravo SERP and the Executive SERP.[2]

22      **B.     WesCorp's Policy 21.**

23      WesCorp's Board of Directors adopted a resolution regarding indemnification

24  and insurance, codified in WesCorp's book of policies as "Policy 21."  *See*

25  Siravo/Swedberg Counterclaim [Docket 190], ¶ 286; Sidley Counterclaim [Docket

---

26  [1]    Under Section 7237, mandatory indemnification requires prevailing on the merits.

27  [2]    The parties have agreed to stipulate to the dismissal of the NCUA's Seventh

28  and Eighth Claims for Relief for Breach of Fiduciary Duty and Unjust Enrichment.

191], ¶ 290; Burrell Counterclaim [Docket 192], ¶ 336; Lane Counterclaim [Docket

193], ¶ 257.  In Policy 21, WesCorp agreed to indemnify WesCorp's current and

former "officials" and "employees" "to the maximum extent permitted by either"

California law or the MBCA "for any liability asserted against them in connection

with judicial or administrative proceedings, formal or informal, to which they are or

may become parties by reason of the performance of their official duties."

Siravo/Swedberg Counterclaim [Docket 190], ¶ 287; Sidley Counterclaim [Docket

191], ¶ 291; Burrell Counterclaim [Docket 192], ¶ 337; Lane Counterclaim [Docket

193], ¶ 258.  Policy 21 also provided that the indemnification was to include the

recovery of reasonable attorneys' fees and costs incurred to secure indemnification.

*See* Siravo/Swedberg Counterclaim [Docket 190], ¶ 288; Sidley Counterclaim

[Docket 191], ¶ 292; Burrell Counterclaim [Docket 192], ¶ 338; Lane Counterclaim

[Docket 193], ¶ 259.

## C.   The NCUA's Denial of the Officer Defendants' Requests for Indemnity and Advancement of Defense Costs

Each Officer Defendant filed an administrative claim with the NCUA

seeking: (1) reimbursement of past defense costs incurred in this litigation; (2)

advancement of future defense costs; and (3) indemnification for costs incurred in

establishing the right to indemnity.  *See* Siravo/Swedberg Counterclaim [Docket

190], ¶ 290; Sidley Counterclaim [Docket 191], ¶ 308; Burrell Counterclaim

[Docket 192], ¶¶ 347, 349; Lane Counterclaim [Docket 193], ¶ 261.  The NCUA has

declined to reimburse, advance costs to, or indemnify the Officer Defendants.  *See*

Siravo/Swedberg Counterclaim [Docket 190], ¶ 290; Sidley Counterclaim [Docket

191], ¶ 309; Burrell Counterclaim [Docket 192], ¶¶ 348, 350; Lane Counterclaim

[Docket 193], ¶ 262.

## D.   The Counterclaims

In Amended Answers and Counterclaims filed on October 31, 2011, the

Officer Defendants each asserted counterclaims against the NCUA.  Siravo and

1    Swedberg (in a combined pleading), Burrell, and Lane each allege largely the same

2    four counterclaims against the NCUA.  Sidley alleges three counterclaims against

3    the NCUA, two of which largely duplicate counterclaims asserted by the other

4    Officer Defendants.  Sidley's third counterclaim seeks declaratory relief.

5         As discussed in more detail below, each of the Officer Defendants alleges that

6    the NCUA has breached indemnification obligations under Policy 21 and that, under

7    that policy, the NCUA is obligated to indemnify them and to provide them advances

8    to the fullest extent permitted by either California law or the MBCA.  Each of the

9    Officer Defendants also seeks indemnification under Labor Code Section 2802.[3]

10        In their First Counterclaim for Breach of Obligation to Pay Litigation Costs

11   under Policy 21, Siravo, Swedberg, Burrell, and Lane claim that the NCUA is

12   obligated under Policy 21 to pay their defense costs incurred in this litigation.  *See*

13   Siravo/Swedberg Counterclaim [Docket 190], ¶¶ 294-300; Burrell Counterclaim

14   [Docket 192], ¶¶ 351, 363-71;[4] Lane Counterclaim [Docket 193], ¶¶ 265-72.  They

15   allege that the NCUA's "obligation" includes the obligation to advance funds to pay

16   their defense costs before the final disposition of this case.[5]  *See* Siravo/Swedberg

17   Counterclaim [Docket 190], ¶ 296; Burrell Counterclaim [Docket 192], ¶ 364; Lane

18   Counterclaim [Docket 193], ¶ 267.  They further allege that they have incurred, and

19   will continue to incur, damages in the form of defense costs incurred in this lawsuit

20   as a result of the NCUA's failure to pay such costs.  *See* Siravo/Swedberg

21

22

23   [3]    The Officer Defendants do ***not*** allege a right to indemnification based upon
      Cal. Corp. Code § 7237, the statute which expressly governs the right to
24   indemnification and advances of officers of nonprofit corporations.

25   [4]    Burrell's Amended Answer and Counterclaims [Docket 192] omits paragraphs
      352-62.

26   [5]    The Officer Defendants other than Sidley state their willingness to provide the
      NCUA a written affirmation and undertaking as required for advancement of costs
27   under MBCA § 8.53.  *See* Siravo/Swedberg Counterclaim [Docket 190], ¶ 297;
      Burrell Counterclaim [Docket 192], ¶¶ 366-68; Lane Counterclaim [Docket 193],
28   ¶ 269.

1    Counterclaim [Docket 190], ¶¶ 299-300; Burrell Counterclaim [Docket 192],

2    ¶¶ 370-72; Lane Counterclaim [Docket 193], ¶¶ 271-72.

3         In their Second Counterclaim for Damages for Breach of Obligation to Pay

4    Litigation Costs Under California Labor Code Section 2802, Siravo, Swedberg,

5    Burrell, Lane, and Sidley allege that because they were WesCorp employees at all

6    relevant times, the NCUA as liquidator for WesCorp is obligated under Cal. Labor

7    Code § 2802 to pay their past defense costs, and to advance their defense costs "as

8    they are incurred in this litigation."  Siravo/Swedberg Counterclaim [Docket 190],

9    ¶¶ 301-07; Sidley Counterclaim [Docket 191], ¶¶ 321-27; Burrell Counterclaim

10   [Docket 192], ¶¶ 373-80; Lane Counterclaim [Docket 193], ¶¶ 273-79.  They further

11   allege that they have incurred, and will continue to incur, damages in the form of

12   defense costs incurred in this lawsuit as a result of the NCUA's failure to pay such

13   costs.  *See* Siravo/Swedberg Counterclaim [Docket 190], ¶¶ 306-07; Sidley

14   Counterclaim [Docket 191], ¶ 327; Burrell Counterclaim [Docket 192], ¶¶ 379-80;

15   Lane Counterclaim [Docket 193], ¶¶ 278-79.

16        In the Third Counterclaim of Siravo, Swedberg, Burrell, and Lane for

17   Damages for Breach of Obligation to Provide Indemnity Under Policy 21 and the

18   First Counterclaim of Sidley for Indemnification Under Policy 21, the Officer

19   Defendants claim that they are entitled to indemnification, as well as defense costs,

20   and costs incurred to secure indemnity under Policy 21.  *See* Siravo/Swedberg

21   Counterclaim [Docket 190], ¶¶ 310-11; Sidley Counterclaim [Docket 191], ¶¶ 316-

22   20; Burrell Counterclaim [Docket 192], ¶¶ 382-84; Lane Counterclaim [Docket

23   193], ¶¶ 282-83.  They further allege that they will suffer damages in an amount to

24   be determined if the NCUA "refuses to indemnify" them.  Siravo/Swedberg

25   Counterclaim [Docket 190], ¶ 311; Sidley Counterclaim [Docket 191], ¶ 320;

26   Burrell Counterclaim [Docket 192], ¶ 385; Lane Counterclaim [Docket 193], ¶ 284.[6]

27   _____

28   [6]    In their Fourth Counterclaim, which is not the subject of this motion, Siravo, Swedberg, Burrell, and Lane each allege that the NCUA is liable for WesCorp's

1    In his Third Counterclaim for Declaratory Relief, Sidley alleges that he is

2    entitled to a judicial declaration regarding the NCUA's alleged obligation to

3    advance and indemnify his defense costs under Policy 21, the MBCA and Section

4    2802.  *See* Sidley Counterclaim [Docket 191], ¶¶ 328-38.

5    The Officer Defendants each pray for an award of damages on their

6    counterclaims.  *See* Siravo/Swedberg Counterclaim [Docket 190], prayer, ¶ 4;

7    Sidley Counterclaim [Docket 191], prayer ¶ 3; Burrell Counterclaim [Docket 192],

8    prayer ¶ 3; Lane Counterclaim [Docket 193], prayer, ¶ 3.  In addition, Siravo and

9    Swedberg expressly ask the Court to "adjudge and declare that NCUA is obligated

10   to pay to advance to Siravo and Swedberg their defense costs incurred in this action

11   and to the fullest extent any liability incurred by Siravo and Swedberg" and to order

12   such payment.  Siravo/Swedberg Counterclaim [Docket 190], prayer, ¶¶ 3, 5.

13   Burrell ask the Court to order the NCUA to "reimburse [him] for the defense costs

14   he has incurred in this litigation."[7]  Burrell Counterclaim [Docket 192], prayer, ¶ 4.

15   The other Officer Defendants do not explicitly seek advances in their prayers, but

16   instead seek "such other and further relief as the Court may deem just and proper,"

17   Sidley Counterclaim [Docket 191], prayer ¶ 7; Burrell Counterclaim [Docket 192],

18   prayer ¶ 6; Lane Counterclaim [Docket 193], prayer, ¶7.  Sidley expressly seeks

19

20   purported obligation to provide insurance coverage against "any liability" asserted
     against him.  *See* Siravo/Swedberg Counterclaim [Docket 190], ¶¶ 315-16; Burrell
21   Counterclaim [Docket 192], ¶¶ 391-92; Lane Counterclaim [Docket 193], ¶¶ 290-
     91.  They further allege that the NCUA is liable for their defense costs and the
22   claims against them in this litigation because the NCUA canceled the CUMIS
     policy, refusing to obtain replacement insurance or supplemental insurance.  *See*
23   Siravo/Swedberg Counterclaim [Docket 190], ¶ 317; Burrell Counterclaim [Docket
     192], ¶¶ 393, 395; Lane Counterclaim [Docket 193], ¶¶ 292, 294.

24       In his Third Counterclaim, Sidley seeks declaratory relief based on Policy 21's
25   provision that WesCorp "purchase and maintain" insurance "against any liability
     asserted against" him.  Sidley Counterclaim [Docket 191], ¶¶ 330-34.  This motion
26   is not directed towards those allegations, either.

27   [7]    Counsel for Burrell has offered to stipulate to strike Burrell's prayer asking that
     "the NCUA be ordered to reimburse Burrell for the defense costs he has incurred in
     this litigation," Burrell Counterclaim [Docket 192], prayer, ¶ 4, and the prayers of
28   Lane and Sidley do not seek a reimbursement order from the NCUA.

7

1    declaratory relief as to his right to advances, *see* Sidley Counterclaim [Docket 191],

2    ¶¶ 329, 335, 337.

3                                    **LEGAL ARGUMENT**

4    **I.    THE COURT SHOULD DISMISS THE COUNTERCLAIMS TO THE
        EXTENT THAT THEY SEEK TO REQUIRE THE NCUA TO MAKE
5        PAYMENTS DURING THE PENDENCY OF THIS LAWSUIT.**

6           **A.    The Court Lacks Subject Matter Jurisdiction to Order Legal
                Expense Payments or to Issue Declaratory Relief.**
7

8           Besides seeking damages, Siravo and Swedberg explicitly seek an

9    advancement and reimbursement order from the Court, and Sidley seeks declaratory

10   relief including a declaration that he is entitled to advancement and reimbursement

11   of costs while the action is pending.[8]  The Court cannot grant this relief.  Under 12

12   U.S.C. § 1787(g), the courts do not have subject matter jurisdiction to take any

13   action to "restrain or affect" the NCUA's exercise of its statutory powers.  *See id.*

14   Section 1787(g) provides:

15           . . . Except as provided in this section, ***no court may take any action,***
             except at the request of the Board of Directors by regulation or order, ***to***
16           ***restrain or affect the exercise of powers or functions of the Board as***
             a conservator or ***a liquidating agent***.
17

18   *Id.* (emphasis added).

19           Like its FDIC counterpart, 12 U.S.C. § 1821(j), Section 1787(g) "effect[s] a

20   sweeping ouster of courts' power to grant equitable remedies to parties like the

21   [plaintiffs]," barring not only injunctive relief but also declaratory relief that would

22   restrain a government agency that has taken over a financial institution from

23   fulfilling its statutory duties in dealing with the assets of that institution.  *Freeman v.*

24   *FDIC*, 56 F.3d 1394, 1398-99 (D.C. Cir. 1995) (applying Section 1821(j), which

25   uses essentially the same language in prohibiting courts from restraining or affecting

26

27   ─────────────
     [8]    While Burrell and Lane do not explicitly seek payment during the pendency of
28   the action, they have alleged that the NCUA has breached its obligation to advance
     defense costs.  This allegation is only material if they are in fact seeking that relief.

                                            8

the exercise of powers or functions of the FDIC as a conservator or a receiver).  *See Sahni v. American Diversified Partners,* 83 F.3d 1054, 1058-59 (9th Cir. 1996) ("[e]ssential to the[] [FDIC's] enumerated powers [as a receiver] is the FDIC's ability to carry out its basic functions as a receiver free from judicial restraint, pursuant to 12 U.S.C. § 1821(j)").  In particular, Section 1787(g) deprives the courts of jurisdiction to require the NCUA, which is acting as liquidating agent, to pay a claimed creditor, given that the NCUA is under a statutory directive to itself determine where payments should go.  *See Courtney v. Halleran,* 485 F.3d 942, 946-50 (7th Cir. 2007) (Section 1821(j) barred declaratory, injunctive, and other equitable relief to require the FDIC to make payments where it had specific statutory authority "to direct where funds should go").

Section 1787(g) requires dismissal pursuant to Fed. R. Civ. P. 12(b)(1) of any counterclaim seeking either an Order requiring advancement of costs or declaratory relief.  Both forms of relief would restrain or affect the powers and functions of the NCUA.  The NCUA's basic function as liquidating agent is to marshal the assets of the liquidation estate, to determine the validity and priority of the claims against the estate, and to pay pro rata shares of the marshaled assets in accordance with the statutory priority scheme.  An advancement or reimbursement order would directly interfere with this process by requiring the NCUA to make payments of money outside the statutory scheme.

Although not an injunction, a judicial declaration would similarly restrain or affect the powers and functions of the NCUA as liquidating agent.  *See, e.g.*, *Freeman*, 56 F.3d at 1399 ("[n]ot only does [Section 1821(j)] bar injunctive relief, but in the circumstances of the present case where appellants seek a declaratory judgment that would effectively 'restrain' the FDIC from foreclosing on their property, § 1821(j) deprives the court of power to grant that remedy as well"); *Carney v. RTC*, 19 F.3d 950, 958 (5th Cir. 1994) (Section 1821(j) barred claim for declaratory relief that plaintiffs were not liable to the RTC because such claim was

9

1   an "attempt[] to enjoin the RTC from including them in the state court action under

2   the guise of bringing a declaratory judgment action"; plaintiffs' "claim for

3   declaratory relief was an attempt to 'restrain or affect' the RTC's ability to exercise

4   its authorized powers or functions just as completely as an injunction would").

5          While Section 1787(g) deprives the Court of jurisdiction to grant injunctive

6   and declaratory relief, it does not leave the Officer Defendants without a remedy.

7   Under 12 U.S.C. § 1787(b), they are entitled to *de novo* judicial review of the denial

8   of their administrative claims for damages arising from the alleged failure to

9   indemnify – a right they are asserting in the Counterclaims.  If the Court finds that

10  their claims were wrongly disallowed, it can allow them and fix the correct claim

11  amount.  The claims would then be paid in accordance with the statutory liquidation

12  priority scheme.  Accordingly, the Court lacks subject matter jurisdiction either to

13  order payments of legal expenses or to issue declaratory relief to the same effect.

14        **B.    The Officer Defendants Cannot State a Claim Against the NCUA for Payment During the Pendency of this Lawsuit.**

15

16              **1.    Under the Governing Regulations, Federal Credit Unions Have Discretion Whether to Advance Costs While a Matter is Pending.**

17

18        Any right of the Officer Defendants to advancement or reimbursement during

19  the pendency of this lawsuit is subject to 12 C.F.R. § 701.33(c)(6), which governs a

20  credit union's determination whether to pay an officer's or employee's attorneys'

21  fees in advance of final judgment.[9]  That regulation provides that:

22

23  [9]    While Section 701.33(c)(6) did not became effective until January 27, 2011, the regulation is applicable to decisions as to indemnification made after that date

24  even though indemnification is sought based upon conduct occurring before that date.  As the NCUA Board recently explained in adopting a related indemnification

25  regulation:

26        . . . *[T]o the extent that an FICU's indemnification provisions are reflected in a general policy statement* or a bylaw provision with

27        general applicability, the Board takes the view that, *following the effective date of the final rule, the policy or bylaw must be interpreted*

28        *so as to give effect to the rule's prohibitions.*

***A Federal credit union may, before final disposition of a proceeding*** referred to in paragraph (c)(5) of this section, ***advance funds to pay for or reimburse the expenses***, including legal fees, reasonably incurred in connection with the proceeding by an official or employee who is a party to the proceeding because that individual is or was an official or employee of the credit union if:

> (i)  The disinterested members of the credit union's board of directors (or in the event there are fewer than two disinterested directors, the supervisory committee) in good faith, determine in writing after due investigation and consideration that the official or employee acted in good faith and in a manner he or she reasonably believed to be in the best interests of the credit union's members;

> (ii) The disinterested members of the credit union's board of directors (or the supervisory committee, as the case may be), in good faith, determine in writing that the payment or reimbursement of the expenses will not materially affect the credit union's safety and soundness; and

> (iii) The official or employee provides:

>> (A)   A written affirmation of the individual's reasonable good faith belief that the relevant standard of conduct described in § 701.4(b) of this chapter has been met by the individual; and

>> (B)   A written undertaking to repay the credit union for any funds advanced or reimbursed, to the extent not covered by payments from insurance, if the official or employee is not entitled to indemnification under paragraph (c)(5) of this section.

*Id.* (emphasis added).

Thus, under Section 701.33(c)(6), a credit union's decision whether to advance or reimburse expenses prior to judgment is wholly discretionary.  In order to advance costs, the credit union's decision makers must determine in writing that: (1) "the official or employee acted in good faith and in a manner he or she reasonably believed to be in the best interests of the credit union's members"; and (2) "the payment or reimbursement of the expenses will not materially affect the credit union's safety and soundness."  12 C.F.R. § 701.33(c)(6)(ii)-(iii).  Even where

---

76 Fed. Reg. 30510-01, 30512 (May 26, 2011) (emphasis added).  Accordingly, WesCorp's Policy 21 must be interpreted so as to give effect to the prohibitions in Section 701.33(c)(6).

11

1    the decision makers make these two determinations, Section 701.33(c)(6) still gives

2    the credit union discretion whether to advance or reimburse expenses.

3         Here, the Officer Defendants' counterclaims for advancement of costs are

4    devoid of any allegation that the NCUA made either of the findings required under

5    Section 701.33(c)(6).  Furthermore, even if the NCUA had made such findings,

6    under Section 701.33(c)(6) it is still within the NCUA's discretion not to advance or

7    reimburse expenses.  Accordingly, the Officer Defendants have no right to

8    indemnification or reimbursement of defense costs unless and until the Court enters

9    judgment in their favor on the NCUA's claims against them.  *Cf. Gentile v.*

10   *SinglePoint Fin., Inc.*, 788 A.2d 111, 113 (Del. 2001) (where a statute provides that

11   a corporation "may" make advances and has not provided for mandatory

12   advancements, a director may not compel advancements); *Thompson v. The*

13   *Williams Cos., Inc.*, 2007 Del. Ch. LEXIS 112 at *7 (Del. Ch. July 31, 2007)

14   ("advancement is not mandatory absent a clearly worded by-law or contract making

15   it mandatory"); *Havens v. Attar*, 1997 WL 55957 at *13, 1997 Del. Ch. LEXIS 12 at

16   *43 (Del. Ch. Jan. 30, 1997) ("a board's decision to accept an undertaking and to

17   advance expenses is left to **the business judgment of the board in the absence of a**

18   **by-law specifically providing for mandatory advancement**") (emphasis in original).

19            **2.    Neither Policy 21 Nor the Provisions Referred to Therein**
               **Create a Right to Payment While a Matter is Pending.**
20

21        The Officer Defendants assert that Policy 21 establishes a right to

22   advancement and reimbursement.  However, Policy 21 does not explicitly provide

23   for advances or reimbursement of defense costs during the pendency of an action

24   (let alone for advances for costs incurred by the Officer Defendants in defending

25   against litigation brought in the right of the corporation itself).  Nor do the MBCA

26   and Labor Code Section 2802 – the provisions the Officer Defendants claim are

27

28

                                        12

1    incorporated by reference into Policy 21.[10]  Corporations Code Section 7237, the

2    California statute that actually governs the Officer Defendants' claim for

3    indemnification, likewise does not create a right to advancement or reimbursement.

4         While both Section 7237 and the MBCA give a corporation the power to

5    make advances or reimburse costs during the pendency of a lawsuit, neither

6    provision requires it to do so.  *See* Cal. Corp. Code § 7237(c) ("[a] corporation ***shall***

7    ***have power*** to indemnify any person who was or is a party . . . to any . . . pending

8    . . . action . . .") (emphasis added); MBCA § 8.53(a) ("[a] corporation ***may***, before

9    final disposition of a proceeding, advance funds to pay for or reimburse the

10   expenses incurred in connection with the proceeding . . .") (emphasis added).[11]  Both

11   Section 7237 and the MBCA make indemnification mandatory only after an officer

12   has been successful on the merits.  *See* Cal. Corp. Code § 7237(d) ("[t]o the extent

13   that an agent of a corporation has been successful on the merits . . . , the agent shall

14   be indemnified against expenses actually and reasonably incurred by the agent . . .");

15   MBCA § 8.52 ("[a] corporation shall indemnify a director who was wholly

16   successful, on the merits or otherwise . . .").

17        Similarly, under Section 2802[12] an employee is not entitled to indemnity

18   unless the claims of wrongdoing or negligence asserted against the employee have

19   been proven to be unfounded or without merit.  *See O'Hara v. Teamsters Union*

20   *Local No. 856,* 151 F.3d 1152, 1159-60 (9th Cir. 1998) (an employer is exempt from

21

22   [10]    Policy 21 does not comply with applicable regulations because it purports to
     allow indemnification to the maximum extent permitted by either California law or
23   the MBCA.  Federal credit unions are required elect to follow either state law or the
     MBCA (but not both).  *See* 12 C.F.R. § 701.33(c)(2) ("[a] federal credit union that
24   elects to provide indemnification shall specify whether it will follow the relevant
     state law or the Model Business Corporation Act.").

25   [11]    While the MBCA authorizes a corporation to adopt a provision obligating itself
     to "advance funds to pay for or reimburse expenses in accordance with section
26   8.53," MBCA § 8.58, the Officer Defendants do not and cannot allege that WesCorp
     ever adopted such a provision.

27   [12]    For the reasons discussed in Part II.B below, the Officer Defendants have not
     stated a claim under Section 2802.
28

13

1   a responsibility to indemnify the employee under Section 2802 unless the claims

2   against the employee are proven to be "unfounded" or "without merit").

3        Here, the Officer Defendants have not alleged that the claims against them

4   have been proven to be unfounded or without merit; they cannot so allege, given

5   that this lawsuit is still ongoing.  Thus, the Officer Defendants have failed to state a

6   claim for advancement of costs under Section 2802.

7   **II.   THE COURT SHOULD DISMISS THE COUNTERCLAIMS TO THE EXTENT THAT THEY SEEK INDEMNIFICATION.**

8

9        **A.   The Officer Defendants Cannot Obtain Indemnification for Actions Brought by the NCUA Based upon Their Allegedly Wrongful Conduct.**

10

11       The counterclaims must be dismissed to the extent that they seek

12   indemnification from the NCUA because, as a matter of law, corporate officers or

13   directors sued by a receiver or liquidator for a failed financial institution may not

14   obtain indemnification from that plaintiff, regardless of whether they might have

15   had a right to obtain indemnification had the institution remained solvent.

16       Once a financial institution fails, indemnification for suits brought by the

17   receiver or liquidator against the institution's directors and officers is unavailable,

18   even if the directors and officers ultimately defeat the claims against them.  *See,*

19   *e.g., Adams v. RTC,* 831 F. Supp. 1471, 1478-79 (D. Minn.) ("when the RTC sues

20   the directors for their wrongful conduct against the institution, indemnification is

21   simply unavailable"), *aff'd*, 10 F.3d 568 (8th Cir. 1993).  Put otherwise, the

22   indemnification regulations governing financial institutions apply only to solvent

23   institutions.  *See, e.g., RTC v. Eason,* 17 F.3d 1126, 1134-35 (8th Cir. 1994); *RTC v.*

24   *Gregor,* 1995 WL 931093 at *4, 1995 U.S. Dist. LEXIS 22032 at *14-15 (E.D.N.Y.

25   Sept. 29, 1995); *RTC v. Baker*, 1994 WL 637359 at *7, 1994 U.S. Dist. LEXIS

26   16218 at *21-23 (E.D. Pa. Nov. 14, 1994).

27       For instance, in *Adams* the RTC took over a failed savings and loan and sued

28   its former officers and directors for breach of fiduciary duty.  Several of the

14

1  directors counterclaimed for indemnification for damages, costs, and attorneys' fees

2  under 12 C.F.R. § 545.121, the Office of Thrift Supervision's indemnification

3  regulation for officers and directors of a Federal savings association.  The court

4  granted the RTC summary judgment on the indemnification counterclaims, holding

5  that "when the RTC sues the directors for their wrongful conduct against the

6  institution, indemnification is simply unavailable." *Adams*, 831 F. Supp. at 1479.

7  As the court explained, allowing indemnification for actions brought by the RTC

8  under Section 545.121 "would lead to the absurd result that the RTC could succeed

9  in a suit against the perfidious directors, and then recover from itself." *Id.* at 1478

10  (noting that "[t]he regulation was apparently created for the legitimate purpose of

11  protecting the faithful director who is sued by a third party").

12      Similarly, in *Eason* the RTC as receiver of a failed bank sued former directors

13  and officers of the bank for negligence and breach of fiduciary duty in approving

14  loans that later failed.  The district court dismissed the RTC's claims but denied

15  defendants' motion for attorneys' fees under Section 545.121.  The Eighth Circuit

16  affirmed, based upon its conclusion that Section 545.121 applies only to solvent

17  institutions. *See Eason*, 17 F.3d at 1135.  In support, the Eighth Circuit relied upon

18  the language of: (1) Section 545.121(c)(2)(iii), which requires indemnification in

19  cases where the director prevails on the merits only upon the approval of the

20  majority of the directors and officers of the savings association; and (2) Section

21  545.121(e), which provides for the advancement of funds subject to the majority

22  approval of the board. *See id.*  Because both provisions "assume the existence of an

23  ongoing institution with a working board of directors," the Eighth Circuit concluded

24  that "as to a claim for attorney's fees against RTC the regulation as a whole applies

25  only during the life of the indemnifying association or the life of its 'legal

26  representative, successors, and assigns.'" *Id.* (quoting 12 C.F.R. § 545.121(a)(2)).

27      In *Baker*, 1994 WL 637359 at *7, 1994 U.S. Dist. LEXIS 16218 at *21-23,

28  the RTC argued that indemnification under Section 545.121 "is not possible where

15

1   the RTC acts as a receiver as this would essentially lead to the undesired effect of

2   the RTC indemnifying the directors and officers every time it succeeded in a suit

3   against those individuals, thereby depleting the very fund it is attempting to

4   maximize." *Id.* The court dismissed the indemnification claim because the savings

5   and loan "once it was placed under receivership, was no longer an 'ongoing

6   [financial] institution with a working board of directors.'" *Id.*

7        In *Gregor,* 1995 WL 931093 at *4, 1995 U.S. Dist. LEXIS 22032 at *14-15,

8   and *RTC v. Atherton*, 1994 U.S. Dist. LEXIS 21427 at *12 (D.N.J. Sept. 9, 1994),

9   the courts struck affirmative defenses for indemnification asserted by bank directors

10  in response to claims brought against them by the RTC. The *Gregor* court followed

11  *Adams* and *Eason* in holding that indemnification was unavailable under the

12  indemnification regulations because those regulations assume the existence of an

13  ongoing institution with a working board of directors. *See Gregor,* 1995 WL

14  931093 at *4, 1995 U.S. Dist. LEXIS 22032 at *14-15. The *Atherton* court

15  followed *Adams* in holding that Section 545.121 precludes indemnification of a

16  financial institution's directors when the RTC has sued those directors for their

17  wrongful conduct against the institution. *See Atherton*, 1994 U.S. Dist. LEXIS

18  21427 at *12.[13]

19        The principle that the receiver or liquidator of a failed financial institution has

20  no indemnification obligations in cases it brings against former officers and

21  directors applies to this case. First, the NCUA has brought this action in its capacity

22  as the liquidating agent for a failed credit union, WesCorp. Second, the NCUA is

23  suing the Officer Defendants for their wrongful conduct that directly led to the

24  collapse of WesCorp. Allowing indemnification for the NCUA's lawsuit would

25

26  [13]   One district court in Mississippi declined to follow *Adams* and *Eason*; the
27  Eleventh Circuit vacated that holding based on the defendant's failure to exhaust
    administrative remedies, and it therefore did not reach the merits. *See RTC v. Scott*,
    929 F. Supp. 1001, 1025-26 (S.D. Miss. 1996), *vacated*, 125 F.3d 254 (5th Cir.
28  1997).

1    lead to the "absurd result" that the NCUA could succeed in its suit against the

2    Officer Defendants, and then recover from itself.  Finally, like the indemnification

3    regulation addressed by the courts in *Eason* and *Baker*, the indemnification

4    regulation governing federal credit unions contains language which "assume[s] the

5    existence of an ongoing institution with a working board of directors."  *See* 12

6    C.F.R. § 701.33(c)(6)(i)-(ii) (referring to determinations to be made by

7    "disinterested members of the credit union's board of directors").  Thus, under

8    *Adams, Eason,* and *Baker,* the Officer Defendants are not entitled to indemnification

9    from the NCUA for this action brought by the NCUA and alleging that their

10   wrongful conduct caused WesCorp substantial damages.

**B.    The Officer Defendants Cannot State a Claim Under Labor Code Section 2802.**

13        The claims by the Officer Defendants based on Labor Code Section 2802

14   must be dismissed for two reasons.  First, Section 2802 does not authorize an

15   employee to seek indemnity from an employer.  *See Nicholas Labs., LLC v. Chen*,

16   2011 Cal. App. LEXIS 1287 at *10-23 (Oct. 12, 2011).  As that court explained:

> . . . We are not persuaded that the Legislature, in drafting section 2802, intended to depart from the usual meaning of the word "indemnify" to address "first party" disputes between employers and employees.  The Legislature could have specifically provided in section 2802 that attorney fees incurred defending an action by the employer were recoverable by a prevailing employee.  The fact that the Legislature did not do so suggests disputes between employers and employees are subject to the ordinary rules applying to the recover of attorney fees in California litigation.

22   *Id.* at *21.

23        Second, Section 2802 is inapplicable to the Officer Defendants' claims for

24   indemnification because claims for indemnification brought by the officers or

25   directors of a non-profit corporation are governed by a specific statutory provision,

26   Cal. Corp. Code § 7237, and therefore not by the more general Labor Code section.

27   In *Los Angeles Protective League v. City of Los Angeles*, 27 Cal. App. 4th 168, 177-

28   79 (1994), the court recognized that "a particular or specific provision will prevail

17

1    over one which is more general" and that a later-in-time statute will prevail over an

2    earlier-in-time statute if the two cannot be reconciled; it therefore held that claims

3    for indemnity in cases involving public employees are governed by the specific

4    provisions of the California Tort Claims Act, not the more general provisions of

5    Section 2802.  *See id.*

6           Here, Section 7237 of the Corporations Code, enacted in 1978, specifically

7    provides for indemnification of directors or officers of nonprofit corporations who

8    have been sued by reason of their position with the corporation:

> (c)    A corporation shall have power to indemnify any person
> who was or is a party . . . to any threatened, pending or completed
> action by or in the right of the corporation . . . by reason of the fact that
> such person is or was an agent of the corporation, against expenses
> actually and reasonably incurred by such person in connection with the
> defense or settlement of such action if such person acted in good faith,
> in a manner such person believed to be in the best interests of the
> corporation and with such care, including reasonable inquiry, as an
> ordinarily prudent person in a like position would use under similar
> circumstances.  No indemnification shall be made under this
> subdivision:
>
> > (1)    In respect of any claim, issue or matter as to
> > which such person shall have been adjudged to be liable to the
> > corporation in the performance of such person's duty to the
> > corporation, unless and only to the extent that the court in
> > which such proceeding is or was pending shall determine upon
> > application that, in view of all the circumstances of the case,
> > such person is fairly and reasonably entitled to indemnity for
> > the expenses which such court shall determine[.]
>
> . . .
>
> (d)    To the extent that an agent of a corporation has been
> successful on the merits in defense of any proceeding referred to in
> subdivision (b) or (c) or in defense of any claim, issue or matter therein,
> the agent shall be indemnified against expenses actually and reasonably
> incurred by the agent in connection therewith.

Cal. Corp. Code § 7237.

       By contrast, Section 2802 of the Labor Code, enacted in 1937, provides

generally that:

> (a)    An employer shall indemnify his or her employee for all
> necessary expenditures or losses incurred by the employee in direct
> consequence of the discharge of his or her duties, or of his or her

18

1    obedience to the directions of the employer, even though unlawful,
2    unless the employee, at the time of obeying the directions, believed
     them to be unlawful.

3    Cal. Labor Code § 2802.

4          Because the later-enacted Corporations Code Section 7237 expressly

5    addresses indemnification of the officers of nonprofit corporations, it prevails over

6    the prior-enacted Labor Code Section 2802, which generally sets forth the standards

7    for indemnifying employees.  Accordingly, the Officer Defendants' counterclaims

8    based on Section 2802 do not state a claim for relief.

9          **C.     The Officer Defendants' Claims for Indemnification are Not Ripe.**

10         As shown in Part I.C above, each of the provisions on which the Officer

11   Defendants rely or could rely for their indemnification claims – Corporations Code

12   Section 7237, the MBCA, and Labor Code Section 2802 – makes indemnification

13   mandatory only if the officers first prevail.  Because the Officer Defendants have

14   not prevailed on the NCUA's claims against them, their counterclaims for

15   indemnification are not ripe.

16         In the ordinary case, a party seeking to establish its right to indemnification if

17   it prevails on the merits may establish ripeness by pleading a claim for ***declaratory***

18   ***relief*** as to its right to indemnification.[14]  For the reasons discussed above, however,

19   the Officer Defendants are jurisdictionally barred by Section 1787(g) from bringing

20   claims for declaratory relief against the NCUA as to their right for indemnification.

21   Accordingly, the Officer Defendants must show that they now have ripe claims for

22   ***indemnification***.  They cannot do so.

23

24   _____

     [14]    Some authority holds that, at least outside the context of liability insurance,
25   even a claim for declaratory relief for indemnification is not ripe until the claimed
     indemnitor has prevailed in the underlying action.  *See, e.g., Lear Corp. v. Johnson
26   Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("[a] declaration that A must
     indemnify B if X comes to pass has an advisory quality; and if the decision would
27   not strictly be an advisory opinion (anathema under Article III) it could be a
     mistake, because it would consume judicial time in order to produce a decision that
28   may turn out to be irrelevant").

                                        19

1      The ripeness doctrine prohibits federal courts from becoming entangled in

2 disputes not ready for adjudication. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148

3 (1967). The courts are not to adjudicate "contingent future events that may not

4 occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide*

5 *Agric. Prods. Co.,* 473 U.S. 568, 579-81 (1985) (citation omitted). Here, the Officer

6 Defendants' claims for indemnification are predicated upon a contingent future

7 event – resolution of this lawsuit in their favor – that may not occur as anticipated,

8 or at all. Thus, the Officer Defendants' claims for indemnification are not now ripe,

9 and, for the reasons discussed above, those claims will not be ripe unless and until

10 the Officer Defendants have prevailed.

11 **CONCLUSION**

12      For the foregoing reasons, the NCUA respectfully requests that the Court

13 dismiss the Amended Counterclaims to the extent that they seek advancement,

14 reimbursement, declaratory relief, or indemnification.

15

16 DATED: November 14, 2011     LUCE, FORWARD, HAMILTON & SCRIPPS LLP
                         Michael H. Bierman

17                          Jeffrey D. Wexler
                         Michael E. Pappas

18

19

20                     By:    /s/ Michael H. Bierman

21                          Michael H. Bierman
                         Attorneys for Plaintiff and Counterdefendant

22                          National Credit Union Administration Board
                         As Liquidating Agent For Western Corporate

23   201179514.4                    Federal Credit Union

24

25

26

27

28

20