1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    REYNOLD L. SIEMENS  #177956
2   Email:  reynold.siemens@pillsburylaw.com
    725 South Figueroa Street, Suite 2800
3   Los Angeles, CA 90017-5406
    Telephone:  (213) 488-7100
4   Facsimile:  (213) 629-1033

5   PILLSBURY WINTHROP SHAW PITTMAN LLP
    BRUCE A. ERICSON  #76342
6   Email:  bruce.ericson@pillsburylaw.com
    MARLEY DEGNER  #251923
7   Email:  marley.degner@pillsburylaw.com
    50 Fremont Street, Post Office Box 7880
8   San Francisco, CA  94120-7880
    Telephone: (415) 983-1000
9   Facsimile: (415) 983-1200

10  Attorneys for Defendant ROBERT JOHN BURRELL

11  [THE NAMES AND ADDRESSES OF
    OTHER COUNSEL APPEAR ON THE
12  SIGNATURE PAGES]

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                  WESTERN DIVISION

16

17  NATIONAL CREDIT UNION                No. CV 10-01597 GW (MANx)
    ADMINISTRATION BOARD AS
18  LIQUIDATING AGENT FOR WESTERN        **JOINT OPPOSITION TO
    CORPORATE FEDERAL CREDIT UNION,      NCUA'S MOTION TO
19                                       DISMISS
                 Plaintiff,              COUNTERCLAIMS
20                                       [DOC. 196]**
          vs.
21                                       Date:  January 9, 2012
    ROBERT A. SIRAVO, et al.,            Time:  8:30 a.m.
22                                       Courtroom:  10
                 Defendants.             Hon. George H. Wu
23
                                         Filed herewith:  Declaration of
24  AND RELATED COUNTERCLAIMS.           Laura D. Smolowe

25

26

27

28

1

# Table of Contents

2
Page

3   I.      INTRODUCTION AND SUMMARY OF ARGUMENT ..................... 1

4   II.     STATEMENT OF THE COUNTERCLAIMS ........................................ 3

5   III.    ARGUMENT ................................................................................................ 5

6           A.    The Court Has Subject Matter Jurisdiction Over the
                  Counterclaims ................................................................................. 5
7
8           B.    The NCUA Cannot Retroactively Strip Counterclaimants
                  of Their Vested Rights to Indemnity ............................................. 7

9                 1.     The NCUA Misconstrues Policy 21 .................................. 7

10                2.     The NCUA Cites the Wrong Regulation and
                         Misinterprets It As Applying Retroactively ..................... 10
11
12          C.    The Counterclaims Do Not Assert Claims Under FDIC
                  Regulations ..................................................................................... 14

13          D.    The Officers Have Viable Counterclaims for
                  Indemnification Under California Law ........................................ 17
14
            E.    The Counterclaims Are Ripe ......................................................... 20
15
16  IV.     CONCLUSION ........................................................................................... 21

17

18

19

20

21

22

23

24

25

26

27

28

**Table of Authorities**

**Page**

**Cases**

*Adams v. Greenwood,*
    10 F.3d 568 (8th Cir. 1993)...............................................................15

*Adams v. RTC,*
    831 F. Supp. 1471 (D. Minn. 1993) ..................................... 14, 15, 16

*Akzo Nobel Salt, Inc. v. Fed. Mine Safety and Health Review
    Comm'n,*
    212 F.3d 1301 (D.C. Cir. 2000) .........................................................8

*AmBase Corp. v. United States,*
    --- Fed. Cl. ----, 2011 WL 3891942 (Fed. Cl. Aug. 31,
    2011).................................................................................................6

*Bowen v. Georgetown Univ. Hospital,*
    488 U.S. 204, 109 S. Ct. 468 (1988) ...............................................12

*Bruns v. Nat'l Credit Union Admin.,*
    122 F.3d 1251 (9th Cir. 1997) ............................................................5

*Bueford v. RTC,*
    991 F.2d 481 (8th Cir. 1993) ..............................................................5

*Carney v. RTC,*
    19 F.3d 950 (5th Cir. 1994) ................................................................6

*Cassady v. Morgan, Lewis & Bockius LLP,*
    145 Cal. App. 4th 220, 51 Cal. Rptr. 3d 527  (2006)......................18

*Edwards v. Arthur Andersen LLP,*
    44 Cal. 4th 937, 189 P.2d 285 (2008) .............................................19

*Freeman v. FDIC,*
    56 F.3d 1394 (D.C. Cir. 1995) ...........................................................6

*Freund v. Nycomed Amersham,*
    347 F.3d 752 (9th Cir. 2003)............................................................20

*Gentile v. SinglePoint Fin., Inc.,*
    788 A.2d 111 (Del. 2001)................................................................10

*Gentry v. Superior Court,*
    42 Cal. 4th 443, 165 P.3d 556 (2007) .............................................20

*Haney v. Castle Meadows Inc.,*
    839 F. Supp. 753 (D. Colo. 1993) .....................................................7

*Havens v. Attar,*
    C.A. No. 15134, 1997 WL 55957 (Del. Ch. Jan. 30, 1997)...........10

- ii -

*Henry v. FDIC,*
    695 F. Supp. 2d 1063 (C.D. Cal. 2010)................................................12

*Hindes v. FDIC,*
    137 F.3d 148 (3d Cir. 1998) .........................................................6

*In re NOS Comm'ns, MDL No. 1357,*
    495 F.3d 1052 (9th Cir. 2007)......................................................12

*Landgraf v. USI Film Products,*
    511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994) ...................14

*Los Angeles Police Protective League v. City of Los Angeles,*
    27 Cal. App. 4th 168, 32 Cal. Rptr. 2d 574 (1994)...............................20

*MBIA Ins. Corp. v. FDIC,*
    --- F. Supp. 2d ----, 2011 WL 4721293 (D.D.C. Oct. 6,
    2011) ....................................................................................6

*Nicholas Labs., LLC v. Chen,*
    199 Cal. App. 4th 1240, 132 Cal. Rptr. 3d 223 (2011) .................. 18, 19

*O'Hara v. Teamsters Union Local No. 856,*
    151 F.3d 1152 (9th Cir. 1998)................................................. 19, 20

*Owen By and Through Owen v. United States,*
    713 F.2d 1461 (9th Cir. 1983).....................................................18

*Rosa v. RTC,*
    938 F.2d 383 (3d Cir. 1991) .........................................................5

*RTC v. Atherton,*
    Civ. No. 92-5261 (GEB), 1994 U.S. Dist. LEXIS 21427
    (D.N.J. Sept. 9, 1994) ......................................................... 15, 16

*RTC v. Baker,*
    No. Civ. A. 93-0093, 1994 WL 637359 (E.D. Pa. Nov. 14,
    1994) ......................................................................... 15, 16

*RTC v. Eason,*
    17 F.3d 1126 (8th Cir. 1994) ................................................. 15, 16

*RTC v. Gregor,*
    No. 94-CV-2578, 1995 WL 931093 (E.D.N.Y. Sept. 29,
    1995) ......................................................................... 15, 16

*RTC v. Scott,*
    929 F. Supp. 1001 (S.D. Miss. 1996),
    *vacated on other grounds*, 125 F.3d 254 (5th Cir. 1997)......................16

*Sharpe v. FDIC,*
    126 F.3d 1147 (9th Cir. 1997) ........................................... 5, 6, 8

*Tam v. FDIC*,
  No. CV 08–06458 MMM (AJWx),
  2011 WL 5553986 (C.D. Cal. Nov. 14, 2011) ..................................... 12

*Thompson v. The Williams Cos., Inc.*,
  C.A. No. 2716-VCS, 2007 Del Ch. LEXIS 112 (Del. Ch.
  July 31, 2007) ................................................................................. 10

*Wilson v. Haria and Gogri Corp*,
  479 F. Supp. 2d 1127 (E.D. Cal. 2007) ........................................... 19

**Statutes and Codes**

California Corporations Code
  Section 7237 ............................................................................... passim

California Labor Code
  Section 2802 ............................................................................... passim

United States Code
  Title 12, Section 1787(b)(5)(E) ......................................................... 5
  Title 12, Section 1787(b)(6)(A) ......................................................... 5
  Title 12, Section 1787(g) ............................................................... 5, 7
  Title 12, Section 1821(d) ................................................................... 6
  Title 12, Section 1821(j) ................................................................ 6, 7
  Title 12, Section 1821(k) ................................................................. 16
  Title 28, Section 2412(b) ................................................................. 16

**Rules and Regulations**

Code of Federal Regulations
  Title 12, Section 545.121 (as amended Dec. 26, 1995) ...... 13, 14, 15, 16
  Title 12, Section 701.33(c) (eff. Sept. 7, 1988) ............................. 3, 7
  Title 12, Section 701.33(c)(6) (eff. Jan. 27, 2011) ........................... 12
  Title 12, Section 704.20(g) (eff. Jan. 18, 2011) ............................... 13
  Title 12, Section 709.1(e) (as amended May 17, 2004) ...................... 21
  Title 12, Section 709.5(b)(5) (as amended Oct. 25, 1999) .................. 21
  Title 12, Section 709.5(b)(6) (as amended Oct. 25, 1999) .................. 21
  Title 12, Section 709.6(c) (adopted Nov. 7, 1991) .............................. 5
  Title 12, Section 709.7 (adopted Nov. 7, 1991) .................................. 5
  Title 12, Section 750.7 (eff. June 27, 2011) ..................................... 13

Local Rules of the United States District Court for the Central
  District of California
  Rule 7-3 .......................................................................................... 5

**Other Authorities**

*Compensation of Officials,*
  53 Fed. Reg. 4,992 (proposed Feb. 19, 1988) ............................... 3, 8

*Corporate Credit Unions,*
  74 Fed. Reg. 652510 (proposed Dec. 9, 2009) ................................. 13

*Fiduciary Duties at Federal Credit Unions*,
    75 Fed. Reg. 15,574 (proposed Mar. 29, 2010) .....................................11

*Fiduciary Duties at Federal Credit Unions,*
    75 Fed. Reg. 81,378 (Dec. 28, 2010) ......................................11

*Golden Parachute and Indemnification Payments,*
    75 Fed. Reg. 47,236 (proposed Aug. 5, 2010) .....................................13

*Golden Parachute and Indemnification Payments,*
    76 Fed. Reg. 30,510 (May 26, 2011) ............................................. 12, 13

Model Business Corporation Act
    Section 8.51(a).........................................................................8
    Section 8.53 .............................................................................9
    Section 8.58 ..........................................................................8, 9

*Organization and Operations of Federal Credit Unions;*
    *Compensation of Officials,*
    53 Fed. Reg. 29,640 (Aug. 8, 1988)........................................3, 8

Senate Rules Committee, Office of Senate Floor Analysis, SB
    1305 (Aug. 23, 2000)
    (excerpted from Legislative History for 2000 Amendment
    to Cal. Labor Code section 2802, 2000 Ch. 990, S.B. 1305,
    compiled by Legislative Intent Serv., Inc.) ...........................................20

1    I.       **INTRODUCTION AND SUMMARY OF ARGUMENT**

2           The NCUA's motion to dismiss the Counterclaims seeking indemnity

3    ("NCUA Memo," Doc. 196-1) ignores some of the key factual allegations on

4    which the Counterclaims rest, and misapprehends the applicable legal

5    principles.  Correctly understood, those facts and legal principles require that

6    the NCUA's motion be denied.

7           The NCUA agrees that this Court has subject matter jurisdiction over

8    these Counterclaims but quibbles about allowable remedies.  No matter:  the

9    law is clear that damages can be awarded, and that is all the Counterclaimants

10   (the "Officers") seek.[1]

11          The NCUA argues for a narrow construction of the Officers'

12   indemnification rights, but ignores that WesCorp's indemnification policy

13   ("Policy 21") provides officers and employees with the maximum

14   indemnification provided by California law, or the Model Business

15   Corporations Act, whichever is greater.  The NCUA also ignores that the

16   Officers entered into their employment pursuant to Policy 21, and performed

17   all their services for WesCorp under Policy 21.  Only after the Officers

18   completed their service did the NCUA cancel their D&O insurance and change

19   its regulations in a retroactive attempt to deny them coverage.  (Indeed, the

20   NCUA advanced Defendant Sidley's defense costs for the better part of a year

21   before changing its mind and denying him coverage too.)

22          The NCUA argues that a regulation it promulgated *after* the Officers

23   completed their service under Policy 21 – *after* the NCUA filed this lawsuit –

24   permits it to abrogate Policy 21 retroactively.  This argument does not begin to

25   satisfy the strict legal requisites for retroactive rulemaking and fundamentally

26   ─────────────────────

[1]       For convenience, as used herein, the term "Officers" refers to all of the
27   remaining Defendants.  Defendant Swedberg, however, was an employee of
     WesCorp during all relevant times alleged in the Complaint and
28   Counterclaims and was never an officer.

1    conflicts with basic American jurisprudence.  The NCUA's regulation is not

2    retroactive on its face and lacks any statutory basis for abrogating vested

3    rights.  It also is not the right regulation:  the NCUA does not even cite the

4    regulation applicable to post-receivership situations.

5          The NCUA argues that a series of FDIC cases resting on an FDIC

6    regulation that has no NCUA counterpart allow it to abrogate Policy 21

7    retroactively.  Those cases have no application here:  in each the claimant sued

8    under the FDIC regulation, not a resolution or bylaw such as WesCorp's

9    Policy 21.

10         The NCUA argues that the Officers cannot state a stand-alone claim for

11   indemnity under California Labor Code section 2802.  This Court, however, is

12   not bound by the California Court of Appeal decision relied upon by the

13   NCUA (because it is not the decision of the state's highest court), and this

14   Court should not follow that decision (because it is contrary to the statute's

15   plain language and legislative history).  In any event, should the Court agree

16   with the NCUA that section 2802 does not apply, the Court should grant the

17   Officers leave to assert a counterclaim under Corporations Code section 7237,

18   which, as the NCUA concedes, does apply.

19         Finally the NCUA argues that the Counterclaims are not ripe.  Not so.

20   Each Officer has already incurred defense costs.  Those claims are ripe

21   because the applicable indemnification provisions allow for payment of

22   already-incurred fees and do not limit indemnification to claims that the

23   Officers win.  Further, as indemnified parties, each Officer has a claim that by

24   statute is prior to the claims of the NCUA's Insurance Fund or the claims of

25   the former members of WesCorp.  This Court should not permit the NCUA to

26   delay these Counterclaims and thereby attempt to subvert the statutory

27   priorities that Congress established.

28

1  II.    **STATEMENT OF THE COUNTERCLAIMS**

2        The NCUA's summary of the Counterclaims in the "Background"

3  section of its memo (NCUA Memo 3:12-8:2) is largely accurate but it omits

4  certain allegations and legal background of which the Court can take judicial

5  notice.  Those items include the following:

6        In 1988, the NCUA amended its rules to encourage credit unions to

7  provide indemnity and insurance for directors, officers and other employees.

8  *See Compensation of Officials,* 53 Fed. Reg. 4992, 4993 (proposed Feb. 19,

9  1988) (proposing amendments to 12 C.F.R. § 701.33).  The proposed

10  amendment specifically stated that credit unions, in deciding to provide

11  indemnity, could choose between state law and the American Bar

12  Association's Model Business Corporations Act ("MBCA").  *Id.*  With some

13  changes, the NCUA adopted the proposed amendment, effective Sept. 7, 1988.

14  *See Organization and Operations of Federal Credit Unions; Compensation of*

15  *Officials,* 53 Fed. Reg. 29,640 (Aug. 8, 1988).[2]

16        Thereafter, WesCorp adopted its indemnification and insurance policy,

17  in accordance with the amended rule.  That policy, as later codified, became

18  known as Policy 21.[3]  The NCUA knew of and approved Policy 21.  Burrell

19  ¶ 336.

20  _____

21  [2]    As amended in 1988, section 701.33(c) provides that:
        Indemnification shall be consistent either with the standards

22      applicable to credit unions generally in the state in which the
        principal or home office of the credit union is located, or with the

23      relevant provisions of the Model Business Corporation Act.  A
        Federal credit union that elects to provide indemnification shall

24      specify whether it will follow the relevant state law or the Model
        Business Corporation Act.

25  12 C.F.R. § 701.33(c)(2) (eff. Sept. 7, 1988).
    [3]    Policy 21 provides in relevant part:

26      It shall be the policy of WesCorp to indemnify to the maximum extent
        permitted by either the laws of the State of California or the Model

27      Business Corporation Act the following individuals for any liability
        asserted against them and expenses reasonably incurred by them in

28      connection with judicial or administrative proceedings, formal or

                                                        (continued…)

1    Policy 21 requires indemnification to the maximum extent allowed by

2  the laws of the State of California or the MBCA, whichever provides more

3  indemnity.  Burrell ¶ 337; Siravo/Swedberg ¶ 287.  Policy 21 also requires

4  purchase and maintenance of D&O insurance.  Burrell ¶ 339;

5  Siravo/Swedberg ¶ 289.[4]  The Officers have fully performed – no aspect of

6  Policy 21 is executory on their part.  Burrell ¶¶ 365-368; Siravo/Swedberg

7  ¶ 297.  And the Officers have already incurred significant defense costs.

8  Burrell ¶ 371; Siravo/Swedberg ¶¶ 293, 300.

9    After seizing WesCorp in March 2009, the NCUA canceled the

10 Officers' insurance, refused to buy the other insurance offered to it, and

11 refused to indemnify all but one of the Officers for their defense costs.  The

12 NCUA's refusal to pay defense costs (to all defendants except Sidley, whose

13 defense costs the NCUA did pay for a time) first occurred as early as February

14 2010.  Burrell ¶¶ 347-348.  That refusal took place before the NCUA became a

15 plaintiff in this case, before the NCUA filed its first complaint herein, and

16 long before the adoption of the regulation on which the NCUA principally

17 relies in making its motion.

18    The NCUA became the plaintiff in this case in August 2010 and started

19 to liquidate WesCorp in October 2010.  (Late in October, the NCUA stopped

20 paying Sidley's defense costs.)  Thereafter, the NCUA announced a claims

21 process for creditors.  The Officers each exhausted the claims process and

22 _____

(…continued)

23      informal, to which they are or may become parties by reason of the
        performance of their official duties:

24      Current Officials
        Former Officials

25      Current Employees
        Former Employees

26 [4]    The Officers have Counterclaims against the NCUA for its failure to
        provide insurance and its efforts to cancel the insurance that WesCorp had and

27     thereby deny the Officers insurance coverage.  Burrell ¶¶ 386-398; Lane
        ¶¶ 285-297; Sidley ¶¶ 330-338; Siravo/Swedberg ¶¶ 312-321.  The NCUA's

28     motion does not challenge those Counterclaims.  NCUA Memo 6-7 n.6.

1   their administrative remedies.  Burrell ¶¶ 349-350; Lane ¶¶ 261-262; Sidley

2   ¶¶ 308-309; Siravo/Swedberg ¶¶ 290-291.  The NCUA denied Sidley's claim

3   (Sidley ¶¶ 308-309) and simply pocket-vetoed the others' claims by letting

4   180 days run without making any written response (Burrell ¶¶ 349-350; Lane

5   262-263).  *See* 12 U.S.C. § 1787(b)(4)(a)(i); 12 C.F.R. § 709.6(c).  The

6   Counterclaims were timely filed shortly thereafter.[5]

7   III.   **ARGUMENT**

8   A.      **The Court Has Subject Matter Jurisdiction Over the Counterclaims**

9            As the NCUA concedes, this Court has jurisdiction to decide the

10   Officers' claims for indemnity.  NCUA Memo 10:5-13.  Both statutes and

11   regulations provide that this Court has jurisdiction over such claims where, as

12   here, the NCUA has denied or not acted timely on the claims.  *See* 12 U.S.C.

13   § 1787(b)(6)(A); 12 C.F.R. § 709.7.[6]

14            The only issue, therefore, is what relief a district court can order, given

15   12 U.S.C. § 1787(g).  The answer is that a district court has jurisdiction to

16   award damages, or even declaratory relief, so long as the declaratory relief is

17   functionally equivalent to damages.  *See, e.g., Bruns v. Nat'l Credit Union*

18   *Admin.,* 122 F.3d 1251, 1254 (9th Cir. 1997) (notwithstanding

19

20   _____
     [5]      The Officers originally answered and counterclaimed in August.  Doc.
21   157, 158, 159, 166, 170, 174.  The parties met and conferred pursuant to C.D.
     Cal. L.R. 7-3 in October.  That conference resulted in the Officers' agreement
22   to drop roughly two-thirds of their affirmative defenses, and to amend their
     defenses and their Counterclaims.  Doc. 182-183.  The Officers then filed
23   amended answers and Counterclaims.  Doc. 190-193.  The NCUA's motion to
     dismiss (Doc. 196) challenges the amended Counterclaims.  In this
24   Opposition, the amended Counterclaims are cited thusly: "Burrell ¶ __" refers
     to Doc. 192; "Lane ¶ __" refers to Doc. 193; "Sidley ¶ __" refers to Doc. 191;
25   and "Siravo/Swedberg ¶ __" refers to Doc. 190.
     [6]      At first glance, 12 U.S.C. § 1787(b)(5)(E) appears to contradict
26   12 U.S.C. § 1787(b)(6)(A), but courts construing the like provisions of the
     FDIC's statute harmonize the two by holding that district courts can consider a
27   claimant's denied claim *de novo*.  *Bueford v. RTC,* 991 F.2d 481, 486 (8th Cir.
     1993); *Rosa v. RTC,* 938 F.2d 383, 392 n.11 (3d Cir. 1991); *see Sharpe v.*
28   *FDIC,* 126 F.3d 1147, 1152 (9th Cir. 1997).

1   section 1787(g), money damages against NCUA available under the Federal

2   Tort Claims Act).

3        One of the cases NCUA cites (all of which rely on an analogous

4   regulation governing the FDIC) makes clear that courts may hear damages-

5   based claims – including those for declaratory relief that, in effect, seek only a

6   declaration regarding damages.  NCUA Memo 8:8-9:20.  *See Freeman v.*

7   *FDIC,* 56 F.3d 1394, 1399 (D.C. Cir. 1995) (holding that while 12 U.S.C.

8   § 1821(j) precludes claims for "nonmonetary remedies," "serious due process

9   concerns would be implicated if parties aggrieved by the FDIC's action as

10  receiver were left entirely without remedies. In many cases, however,

11  aggrieved parties will have opportunities to seek money damages or other

12  relief through the administrative claims process provided in 12 U.S.C.

13  § 1821(d), and their claims are ultimately subject to judicial review."

14  (emphasis supplied)).

15       Other courts have come to the same conclusion.  *See, e.g., Sharpe,*

16  126 F.3d at 1153 ("The damages claim is not affected by the jurisdictional bar

17  imposed by § 1821(j). . . ."); *Hindes v. FDIC,* 137 F.3d 148, 161 (3d Cir.

18  1998) ("Courts uniformly have held that the preclusion of section 1821(j) does

19  not affect a damages claim."); *Carney v. RTC,* 19 F.3d 950, 958 & n.3 (5th

20  Cir. 1994) (holding that section 1821(j) only prevents declaratory relief that is

21  an "attempt to 'restrain or affect'" an "exercise [of] authorized powers" and

22  that "[n]aturally, we do not hold that § 1821(j) would bar all actions for

23  declaratory relief against the receiver of a failed financial institution"); *MBIA*

24  *Ins. Corp. v. FDIC,* --- F. Supp. 2d ----, 2011 WL 4721293, at * 16 (D.D.C.

25  Oct. 6, 2011) (because of the limitation imposed by § 1821(j), "plaintiff is

26  limited to its claim for damages"); *AmBase Corp. v. United States,* --- Fed. Cl.

27  ----, 2011 WL 3891942, at *32 (Fed. Cl. Aug. 31, 2011) ("Awarding damages

28  net of the receivership deficit does not 'restrain or affect the exercise of

1    powers or functions of the [FDIC] as a conservator or a receiver,' 12 U.S.C.

2    § 1821(j), but is directed at assuring the integrity of the judgment for breach of

3    contract." (brackets in original)); *Haney v. Castle Meadows Inc.,* 839 F. Supp.

4    753, 759 (D. Colo. 1993) (claim for "damages premised on rescission is not

5    barred by § 1821(j)").

6           To the extent that the NCUA seeks to preclude an order that would

7    require the NCUA to advance future legal fees on a going-forward basis,[7] the

8    Officers hereby withdraw such requests.[8]  But the Officers may, and therefore

9    do, maintain their claim for damages for their unreimbursed attorneys' fees

10   already incurred, including seeking such damages in advance of judgment, as

11   well as their claims for future damages.  Siravo/Swedberg, Prayer ¶¶ 3-4;

12   Burrell, Prayer, ¶¶ 3-4; Lane, Prayer, ¶¶ 3-4; Sidley, Prayer, ¶¶ 3.

13   Section 1787(g) in no way bars such relief.

14   B.     **The NCUA Cannot Retroactively Strip Counterclaimants of Their**

15          **Vested Rights to Indemnity**

16   1.     **The NCUA Misconstrues Policy 21**

17          Well before the events that are the subject of this lawsuit, and pursuant

18   to the regulation adopted by the NCUA in 1988 (12 C.F.R. § 701.33(c)(2)),

19   WesCorp's board of directors adopted a resolution (later codified in

20   WesCorp's book of policies as "Policy 21") that promised to indemnify its

21   current and former officers and employees "to the maximum extent permitted

22   by either" California law or the MBCA "for any liability asserted against them

23   and expenses reasonably incurred by them in connection with judicial or

24

_____

25   [7]    *See* NCUA Memo at 8 ("Besides seeking damages, Siravo and
      Swedberg explicitly seek an advancement and reimbursement order from the
26   Court, and Sidley seeks declaratory relief including a declaration that he is
      entitled to advancement and reimbursement of costs while the action is
27   pending.").
      [8]    Siravo/Swedberg withdraw paragraph 5 of their Prayer.  Burrell, Lane
28   and Sidley do not pray for such relief, only damages for fees already incurred.

1   administrative proceedings, formal or informal, to which they are or may

2   become parties by reason of the performance of their official duties."

3          Policy 21 by its plain language expresses the commitment that WesCorp

4   will indemnify (and insure) current and former officers and employees under

5   either California law or the MBCA, depending on which confers the broader

6   indemnity rights in a given case.[9]  The NCUA has offered no justification for

7   failing to abide by the agreements entered into by WesCorp years earlier.

8   *See, e.g., Sharpe*, 126 F.3d at 1153 (holding, in the analogous FDIC context,

9   the "ordinary principles of contract interpretation [apply] in examining the

10  rights between the parties," and that, in that case, "[i] is beyond cavil that this

11  failure to perform the express terms of the settlement agreement is a breach").

12         *Count 1 (MBS investments, against all Officers):*  Here, at least as to the

13  allegations in Count One, the MBCA confers the broader indemnity rights, so

14  it applies.  Section 8.51(a) of the MBCA defines the broadest scope for which

15  a corporation may permissively indemnify its directors.  Section 8.58, in turn,

16  provides that this permissive indemnification becomes *mandatory* where the

17

---

18  [9]        Back in February 2010, when the NCUA initially denied the indemnity
    claims of WesCorp's directors and officers, it did so on the theory that Policy
19  21 was null and void because it did not choose in advance of a claim arising
    between California law and the MBCA.  In response, the directors and officers
20  showed that the NCUA had considered but expressly declined to adopt a rule
    forcing such a pre-claim choice of law.  The NCUA makes a half-hearted
21  attempt to revive that argument in a footnote.  NCUA Memo 13 n.10.  But the
    argument is still wrong.  The NCUA's final regulation permits a resolution,
22  like Policy 21, that permits a credit union to adopt an indemnification policy
    that affords its officers and employees with the broadest indemnity permissible
23  under either state law or the MBCA *on a case-by-case basis.  Organization
    and Operations of Federal Credit Unions; Compensation of Officials,* 53 Fed.
24  Reg. 29,640, 29,641 (Aug. 8, 1988).  Indeed, the NCUA deleted a provision
    from the initial proposed regulation that would have nullified an
25  indemnification policy that failed to make an advance, blanket election for all
    claims.  *Id.* (referring to *Compensation of Officials,* 53 Fed. Reg. 4992, 4993
26  (proposed Feb. 19, 2011)).  It is, of course, far too late for the NCUA to
    change its mind now; courts reject agency reinterpretations of regulations
27  adopted during litigation that contradict earlier agency interpretations.  *See
    Akzo Nobel Salt, Inc. v. Fed. Mine Safety and Health Review Comm'n,*
28  212 F.3d 1301, 1304-05 (D.C. Cir. 2000).

1   corporation adopts a policy to indemnify its officers and employees.  MBCA

2   section 8.58 states in relevant part:

3           (a)  A corporation may, by a provision . . . in a resolution
        adopted . . . obligate itself in advance of the act or omission
4       giving rise to a proceeding to provide indemnification in
        accordance with section 8.51 or advance funds to pay for or
5       reimburse expenses in accordance with section 8.53.[10]

6   Section 8.53, in turn, expressly provides for the advancement of legal

7   expenses.[11]

8           In adopting Policy 21, WesCorp obligated itself in advance to

9   indemnify its officers and employees to the fullest extent permitted by the

10  MBCA and "advance funds" to reimburse their legal expenses.  Pursuant to

11  section 8.58 of the MBCA, the NCUA must indemnify the WesCorp

12  Defendants for their defense costs, as they are incurred.  The Court should

13  reject the NCUA's attempt to escape that obligation.

14          *Counts 5 and 6 (SERP, against Siravo and Swedberg):*  As for the SERP

15  allegations in Counts Five and Six, Policy 21 mandates indemnification under

16  California law, which provides the maximum coverage.  Siravo and Swedberg

17  believe that the appropriate predicate for the SERP allegations is the

18  indemnity provided by Labor Code section 2802.  Should, however, the Court

19  agree with the NCUA that section 2802 is not applicable, then the Court

20  should look to Corporations Code section 7237, as the NCUA concedes.[12]

21  *See* NCUA Memo 13:4-16 & n.11.

22

-----

23  [10]     The relevant provisions of the MBCA are attached as Exhibit A to the Declaration of Laura D. Smolowe, filed herewith.

24  [11]     Although section 8.53 applies to directors, section 8.56 provides for the
25  advancement of fees to an officer "to the same extent as a director," and for expenses "incurred in connection with" a proceeding brought in the name of the corporation.

26  [12]     Although not mentioned explicitly in the Counterclaims, as part of the
27  relevant California law governing indemnity, section 7237 is incorporated as a basis for Policy 21's indemnity rights.  If necessary, Defendants Siravo and Swedberg request leave to amend the Counterclaims to explicitly reference
28  section 7237 in their First and Second Counterclaims.

1    The NCUA's argument that Labor Code section 2802 and Corporations

2    Code section 7237 do not require indemnity until the end of a successful

3    defense (NCUA Memo 13:17-14:2 & n.12) fails to accord with Policy 21's

4    clear language offering the greatest level of indemnity.  *See* Part III.D below.

5    By adopting Policy 21 in order to provide the maximum indemnity under

6    either California law or the MBCA, WesCorp's Board made the decision to

7    advance fees as they are incurred.

8         In short, the NCUA must comply with WesCorp's promise to its

9    officers and employees, via Policy 21, to offer the most indemnity available

10   under either the MBCA or California law, on a case-by-case basis.

11   2.    **The NCUA Cites the Wrong Regulation and Misinterprets It As**

12         **Applying Retroactively**

13        The NCUA now argues, for the first time, that a federal regulation

14   nullifies Policy 21's guarantees and gives the NCUA complete discretion to

15   provide or deny indemnity as it pleases.  NCUA Memo 10:16-12:18.[13]  The

16   NCUA never made this argument when it denied indemnity to most of the

17   WesCorp directors and officers back in February 2010 or when it made an

18   about-face and denied indemnity to Sidley at the end of October 2010 (having

19   paid his defense costs until then).  That is because the NCUA's new argument

20   _____

[13]    Via a "*Cf.*" citation, the NCUA also suggests that some Delaware cases
give it discretion to deny indemnification.  NCUA Memo 12:7-18.  The short
answer to this is that Delaware law has no relevance; Policy 21 rests on
California law or the MBCA, whichever provides more indemnification.  Even
if Delaware law were to apply, these cases are inapposite.  In *Gentile v.
SinglePoint Fin., Inc.,* 788 A.2d 111, 113 (Del. 2001), indemnification was
denied because the employee was the plaintiff.  In *Thompson v. The Williams
Cos., Inc.,* C.A. No. 2716-VCS, 2007 Del Ch. LEXIS 112, at *7, *11-*13
(Del. Ch. July 31, 2007), the court merely rejected the employee's argument
that he could receive advancement of defense costs without signing an
undertaking; here, all the Officers have agreed to sign undertakings.  And in
*Havens v. Attar,* C.A. No. 15134, 1997 WL 55957, at *13 (Del. Ch. Jan. 30,
1997), the court merely held that in the absence of a bylaw or resolution (such
as Policy 21) making indemnification mandatory, the board of directors had
discretion to refuse it.  Of course, if the NCUA wishes to stipulate to Delaware
law, the case is over, because Delaware's Business Judgment Rule clearly
protects officers.

1  rests on a *post hoc* regulation it promulgated almost two years after seizing

2  WesCorp and firing its directors and officers, and almost six month after the

3  NCUA brought suit:  that regulation is 12 C.F.R. § 701.33(c)(6), effective

4  January 27, 2011.  *See Fiduciary Duties at Federal Credit Unions,* 75 Fed.

5  Reg. 81,378, 81,380-81,381, 81,386 (Dec. 28, 2010).  The NCUA argues that

6  this new regulation acts retroactively, and mid-litigation, to strip the Officers

7  of their vested indemnity rights – rights created by a policy that the NCUA

8  had urged WesCorp and other federal credit unions to adopt.  Or, put

9  differently, the NCUA argues that it can rewrite the law after the fact to escape

10  legal obligations that it now finds inconvenient.

11       The history of this new subsection (c)(6) is murky at best.  The

12  proposed rule did not contain any subsection (c)(6) (or, for that matter,

13  subsection (c)(7)).  *See Fiduciary Duties at Federal Credit Unions,* 75 Fed.

14  Reg. 15,574 (proposed Mar. 29, 2010).  Exactly where subsection (c)(6) came

15  from, or when, is a mystery.  The discussion in the Federal Register of the

16  final rule and the comments that led to it does not even refer to subsection

17  (c)(6) by name.  *See* 75 Fed. Reg. at 81,380-81,381.  The closest it comes to an

18  explanation is the bland statement that "[s]ome commenters stated that the

19  proposed rule's silence on the advancement of expenses would also

20  disadvantage FCUs [federal credit unions] in attracting directors.   To alleviate

21  this concern, the final rule permits the FCU to advance funds to pay or

22  reimburse reasonable legal fees and other professional expenses to assist the

23  official or employee in resisting lawsuits that the FCU considers meritless."

24  *Id.* at 81,381.  Thus, without notice or a comment period, the NCUA

25  promulgated new subsection (c)(6), which it now argues deprives the Officers

26  of any reimbursement of defense costs already incurred, and also of any

27  indemnity, now or ever.  NCUA Memo 10:16-12:18.

28

1    The NCUA's argument is wrong for at least three independent reasons,

2    any one of which suffices to defeat it.

3         *First*, the NCUA cannot now say that the regulations that it enacted

4    after it took over WesCorp retroactively operated to change Policy 21, which

5    was in effect when the Officers' conduct occurred, and when the Officers were

6    sued, "to give effect to the [NCUA's] prohibitions."  NCUA Memo 10 n.9.

7    The NCUA's footnote explanation – "following the effective date of the final

8    rule, the [indemnification] policy or bylaw must be interpreted so as to give

9    effect to the rule's prohibition" (*id.*) – only explains how current

10   indemnification policies are interpreted.  The NCUA and its rule say nothing

11   about how indemnification policies in effect *before* that effective date are to be

12   interpreted with respect to conduct occurring *before* that date, lawsuits filed

13   *before* that date or claims for indemnity made – and rejected – *before* that date.

14        *Second*, nothing in the "legislative history" of section 701.33(c)(6) says

15   it was intended to apply retroactively.  Absent express statutory permission,

16   and clear regulatory intent, regulations are ordinarily construed to be

17   prospective in effect only and will not be given retroactive effect if they

18   disturb vested rights.  *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204,

19   208-09, 109 S. Ct. 468, 471-72 (1988); *Tam v. FDIC,* No. CV 08–06458

20   MMM (AJWx), 2011 WL 5553986, ¶¶ 50-63 (C.D. Cal. Nov. 14, 2011)

21   (citing, inter alia, *In re NOS Comm'ns, MDL No. 1357*, 495 F.3d 1052 (9th

22   Cir. 2007)); *Henry v. FDIC,* 695 F. Supp. 2d 1063, 1078-82 (C.D. Cal. 2010).

23        More or less conceding the point, the NCUA does not cite the statute

24   authorizing section 701.33(c)(6), or the new rule's "legislative history"; rather,

25   it cites only a snippet of text in the announcement of a different rule in an

26   entirely different part of the NCUA's regulations.  NCUA Memo at 10-11 n.9

27   (citing *Golden Parachute and Indemnification Payments,* 76 Fed. Reg. 30,510,

28   30,511, 30,512 (May 26, 2011)). That rule, the NCUA admits, applies only "in

1  the limited circumstances described in the rule, *i.e.*, in the context of an

2  administrative enforcement action brought by NCUA or the appropriate state

3  regulatory authority."  76 Fed. Reg. at 30,511.

4       *Third*, nothing suggests that section 701.33 is even the operative

5  regulation, post receivership.  Other regulations (*e.g.,* 12 C.F.R. § 704.20(g)

6  (eff. Jan. 18, 2011), superseded by 12 C.F.R. § 750.7 (eff. June 27, 2011) deal

7  specifically with post-receivership indemnity.[14]  In contrast, section 701.33

8  assumes the continued existence of the credit union and makes no sense as

9  applied to failed credit unions.  Indeed, the NCUA admits as much.  NCUA

10  Memo at 16:19-17:10.

11       Despite the NCUA's attempts to rewrite law and history after the fact in

12  order to avoid legal obligations it finds inconvenient, it cannot rewrite

13  Policy 21 now, after suing the Officers (and after paying the defense costs of

14  one of them for the better part of a year), simply to deny them indemnity.[15]

15  After all, the Officers took their jobs at WesCorp while Policy 21 was in force,

16  and performed all the acts and omissions now at issue while Policy 21 was in

17  force.  This kind of retroactive rewriting of the rules offends our

18  jurisprudence.  As the Supreme Court said in *Landgraf v. USI Film Products*,

19  511 U.S. 244, 263-280, 128 L. Ed. 2d 229, 251-62, 114 S. Ct. 1483, 1496-

20  _____

21  [14]     When proposing sections 704.20(g) and 750.7, the NCUA explicitly said that these rules would apply only "to all new employment contracts entered into on or after that date [i.e., the effective date], as well as existing

22  contracts that are renewed or modified in any way after that date."  *Corporate Credit Unions*, 74 Fed. Reg. 65,210, 65,253-65,255 (proposed Dec. 9, 2009);

23  *Golden Parachute and Indemnification Payments,* 75 Fed. Reg. 47,236, 47,237 (proposed Aug. 5, 2010).

24  [15]     Nor can the NCUA deny indemnification on the theory (which it does not argue here, but does in its motion to strike) that the NCUA is not bound by

25  WesCorp's commitments.  The stipulation of May 11, 2011, which the NCUA signed, provides otherwise:  "The NCUA as Liquidating Agent is by 12 U.S.C.

26  § 1787(b) the successor to WesCorp and the NCUA as Conservator, and therefore is the proper party against which Defendants' claims, counterclaims,

27  cross-claims and affirmative defenses arising out of the acts or omissions of WesCorp and the NCUA as Conservator and/or Liquidator are to be asserted

28  in this action; ...."  Doc. 125, at 2:21-26.  *See also Sharpe,* 126 F.3d at 1153.

1    1505 (1994), "the presumption against retroactive legislation is deeply rooted

2    in our jurisprudence, and embodies a legal doctrine centuries older than our

3    Republic.  Elementary considerations of fairness dictate that individuals

4    should have an opportunity to know what the law is and to conform their

5    conduct accordingly; settled expectations should not be lightly disrupted.  For

6    that reason, the 'principle that the legal effect of conduct should ordinarily be

7    assessed under the law that existed when the conduct took place has timeless

8    and universal appeal'" (citations and footnotes omitted).

9    C.      **The Counterclaims Do Not Assert Claims Under FDIC Regulations**

10            Citing a number of FDIC and RTC cases from the 1990's, all of which

11   arose under 12 C.F.R. § 545.121 (as amended Dec. 26, 1995) — which does

12   not apply to credit unions and was not promulgated by the NCUA — the

13   NCUA argues that these cases bar the Officers from seeking indemnity here.

14   NCUA Memo, part II.A, 14:9-17:10.  The short answer is that the Officers are

15   not suing under 12 C.F.R. § 545.121 or any other regulation, but rather under

16   WesCorp's Policy 21 (to which the NCUA is the successor) and under

17   California law or the MBCA.  Therefore, section 545.121 and the cases cited

18   by the NCUA are irrelevant and inapposite.

19           To start, section 545.121 is a regulation promulgated by the late Office

20   of Thrift Supervision that has no parallel in the NCUA's regulations.  Section

21   545.121 mandated indemnification of directors, officers and employees in

22   sharply limited circumstances.  In contrast, since 1988 the NCUA's

23   regulations have permitted indemnification in accordance with state law and/or

24   the MBCA.  Thus, the limitations of section 545.121, which drove the

25   outcomes in the cases cited by the NCUA, have no application here.

26           *Adams v. RTC,* 831 F. Supp. 1471, 1747-49 (D. Minn. 1993), to which

27   the NCUA devotes almost a page (see NCUA Memo 14:11-15:11), illustrates

28

1   this point.[16]  In *Adams*, the directors claimed indemnification pursuant to

2   section 545.121, not pursuant to  corporate policy or resolution such as Policy

3   21.  The court denied indemnification pursuant to the terms of a acquisition

4   between the failed savings and loan and its successor institution (831 F. Supp.

5   at 1478; *see also id.* at 1474) and also held that the language of the acquisition

6   agreement "does not contravene the mandatory indemnification requirements

7   of 545.121." *Id.* at 1478.  The language from this opinion quoted by the

8   NCUA (NCUA Memo 15:7-11) deals with the interplay between this

9   acquisition agreement and section 545.121, neither of which has any

10  conceivable application to our case here.

11        Similarly, *RTC v. Eason*, 17 F.3d 1126, 1134-35 (8th Cir. 1994); *RTC v.*

12  *Gregor*, No. 94-CV-2578, 1995 WL 931093, at *3 (E.D.N.Y. Sept. 29, 1995);

13  *RTC v. Atherton*, Civ. No. 92-5261 (GEB), 1994 U.S. Dis. LEXIS 21427, at

14  *12 (D.N.J. Sept. 9, 1994); and *RTC v. Baker*, No. Civ. A. 93-0093, 1994 WL

15  637359, at *7 (E.D. Pa. Nov. 14, 1994) all consider claims for indemnification

16  arising under section 545.121, not a policy or resolution such as Policy 21.

17        *Eason* is illustrative.  The RTC sued the directors and officers of a failed

18  savings and loan, accusing them of breach of fiduciary duty and negligence in

19  making some "participation loans."  17 F.3d at 1129.  The defendants won a

20  jury trial, at least in part on the strength of the bank examiners' notes, which

21  described two of the loans using the words "excellent investment," and the

22  examiners' examination reports, which gave the bank's underwriting practices

23  a letter grade of B on an A to F scale.  *Id.* at 1130.  The RTC appealed,

24  challenging the admission of this evidence, and the defendants appealed,

25  _____

26  [16]     The NCUA's citation suggests that the Eighth Circuit affirmed the
     ruling in the RTC's favor on the indemnification point.  NCUA Memo 14:19-

27  21.  Not so.  In the Eighth Circuit, the RTC was the only appellant, and it
     appealed other unrelated points it had lost below, and that it lost again on

28  appeal.  The appellate opinion says nothing about indemnification.  *Adams v.*
     *Greenwood*, 10 F.3d 568 (8th Cir. 1993).

1   challenging the district court's refusal to award them attorneys' fees under the

2   Equal Access to Justice Act, 28 U.S.C. § 2412(b).  *Eason,* 17 F.3d at 1130-36.

3   The Eighth Circuit rejected both appeals.  It ruled that the examiners' notes

4   and reports were admissible.  *Id.* at 1130-34.  It also denied fees, but only on

5   the ground that section 545.121 – the predicate for the fees claim – by its

6   terms applied only to ongoing financial institutions, not institutions in

7   conservatorship or receivership.  *Id.* at 1134-35.

8        The NCUA's other cases – *Atherton, Baker* and *Gregor* – add nothing

9   to the discussion.  Like *Adams* and *Eason*, these unpublished decisions dismiss

10  Counterclaims under section 545.121.  Nothing in any of them purports to bar

11  indemnity claims arising under other law (such as the MBCA) or bylaws or

12  resolutions.

13       The only case cited by the NCUA where the claim for indemnity did not

14  rest solely on section 545.121 – but instead on an indemnification bylaw – is

15  the one case that squarely rejects the *Adams/Eason* line of authorities.  In that

16  case, *RTC v. Scott,* 929 F. Supp. 1001, 1025-27 (S.D. Miss. 1996), *vacated on*

17  *other grounds*, 125 F.3d 254 (5th Cir. 1997), the defendant, Scott, the

18  president and CEO of a failed bank, won summary judgment on the merits of

19  the RTC's claims (breach of contract, breach of fiduciary duty, and

20  negligence), and also won an award of attorneys' fees and costs pursuant to

21  the bank's bylaw awarding defense costs only if "'final judgment on the merits

22  is in such person's favor ...'"  *Scott,* 929 F. Supp. at 1025.  The district court

23  squarely rejected the notion that the RTC, via section 545.121, could avoid an

24  indemnification bylaw.  *Id.* at 1025-27.  The court also rejected the notion that

25  the FDIC statute providing for director and officer liability (12 U.S.C.

26  § 1821(k)) somehow *sub silentio* voided pre-existing indemnification

27  obligations.  949 F. Supp. at 1026.  The Fifth Circuit vacated the decision not

28  on the merits but on exhaustion grounds.  In so doing, the appellate court made

1  it clear that it found no impediment (save for exhaustion) to Scott recovering

2  defense costs from the assets of the failed institution.  *Scott*, 125 F.3d at 260.

3       There is no issue of exhaustion here.  The Counterclaims plead

4  exhaustion, and NCUA Memo 4:16-25, 10:5-13 concedes the point.

5  D.   **The Officers Have Viable Counterclaims for Indemnification Under**

6       **California Law**

7       Regardless of the applicability of Labor Code section 2802, the NCUA

8  concedes that Corporations Code section 7237 applies to the claims at issue.

9  *See* NCUA Memo 13:4-16 & n.11.  Accordingly, should the Court conclude

10 that indemnity is not available under section 2802, the Officers respectfully

11 request an opportunity to amend to bring counterclaims under section 7237.

12      Both Labor Code section 2802 and Corporations Code section 7237

13 provide for indemnification of individuals in the Officers' position.  *See* Cal.

14 Lab. Code § 2802(a) (requiring indemnification whenever the employee incurs

15 expenses as a "direct consequence of the discharge of his or her duties"); Cal.

16 Corp. Code § 7237(c) ("A corporation shall have power to indemnify any

17 person who was or is a party or is threatened to be made a party to any

18 threatened, pending or completed action by or in the right of the corporation

19 . . . if such person acted in good faith, in a manner such person believed to be

20 in the best interests of the corporation and with such care, including

21 reasonable inquiry, as an ordinarily prudent person in a like position would

22 use under similar circumstances" ).[17]

23      Both in addition allow for the advancement of fees, and neither requires

24 the Officer to succeed on a claim in order to recover.  Section 2802 contains

25 no prevailing party requirement or other relevant limitation and therefore, by

26 its terms, allows for reimbursement of fees incurred at any point.  *See Cassady*

27 _____

[17]    Indemnification is mandatory if the employee prevails in the action.

28 Cal. Corp. Code § 7237(d).

1  *v. Morgan, Lewis & Bockius LLP,* 145 Cal. App. 4th 220, 230, 51 Cal. Rptr.

2  3d 527, 534 (2006) (holding that "as long as the employee is acting within the

3  scope of his or her employment the right to indemnity is not dependent upon a

4  finding that the underlying action was unfounded." (citation omitted)

5  (emphasis supplied)); *Nicholas Labs., LLC v. Chen,* 199 Cal. App. 4th 1240,

6  1248 n.3, 132 Cal. Rptr. 3d 223, 229 n.3 (2011) ("But the statute on its face

7  contains no prevailing party requirement.").

8        For its part, Corporations Code section 7237 explicitly allows for

9  advancement upon the execution of an undertaking, and allows for indemnity

10  even after a finding of liability where the court "determine[s] that, in view of

11  all the circumstances of the case, such person is fairly and reasonably entitled

12  to indemnity for the expenses which such court shall determine."  Cal. Corp.

13  Code § 7237(c)(1); *see id.* § 7237(f) ("Expenses incurred in defending any

14  proceeding may be advanced by the corporation prior to the final disposition

15  of such proceeding upon receipt of an undertaking by or on behalf of the agent

16  to repay such amount unless it shall be determined ultimately that the agent is

17  entitled to be indemnified as authorized in this section.").[18]  Because WesCorp

18  adopted Policy 21 to provide the maximum indemnification under the MBCA

19  or California law, section 7237's obligation to indemnify is mandatory upon

20  execution of the required undertaking.

21        As for the applicability of section 2802, the Officers agree that *Nicholas*

22  *Labs* is on point.  *See* 199 Cal. App. 4th 1240, 132 Cal. Rptr. 3d 223 (2011).

23  However, with due respect to the state appellate court, this Court may

24  disregard that opinion upon convincing evidence that the California Supreme

25  Court would rule otherwise.  *See, e.g., Owen By and Through Owen v. United*

26  *States,* 713 F.2d 1461, 1464-65 (9th Cir. 1983) (declining to apply Court of

27

28  [18]      All the Officers have offered to provide the necessary undertaking.

1    Appeal decision where "convincing evidence exists that the highest court of a

2    state will not follow the result reached by some of that state's inferior

3    appellate courts"); *see also Wilson v. Haria and Gogri Corp,* 479 F. Supp. 2d

4    1127, 1136-38 (E.D. Cal. 2007) (rejecting application of California Court of

5    Appeal decision where reasoning of decision was contrary to plain meaning

6    and legislative history of statute).

7           The Officers submit that the reasoning in *Nicholas Labs* is inconsistent

8    with the text and legislative history of section 2802 and that this Court may on

9    that basis come to a contrary conclusion.  This is because *Nicholas Labs*

10   disregards the fundamental purpose and public policy that underlie the statute.

11   *See Nicholas Labs,* 199 Cal. App. 4th at 230-31.

12          The plain language of the statute – covering "all necessary expenditures

13   or losses incurred by the employee in direct consequence of the discharge of

14   his or her duties" – by its terms covers claims by employers as well as third-

15   party claims.  *O'Hara v. Teamsters Union Local No.* 856, 151 F.3d 1152,

16   1160 (9th Cir. 1998) (analysis of section 2802 begins with the language).

17          Supporting that plain language, section 2802 arises out of, and codifies,

18   California's "strong public policy that favors the indemnification (and

19   defense) of employees by their employers for claims and liabilities resulting

20   from the employees' acts within the course and scope of their employment."

21   *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 952, 81 Cal. Rptr. 3d 282,

22   293, 189 P.3d 285 (2008).  The legislative history of section 2802 shows that

23   it was amended in 2000 with the specific purpose of expanding indemnity to

24   cover attorney's fees so as to "put section 2802 on equal footing with other

25   wage and hour protections in the Labor Code."  Decl. of Laura D. Smolowe,

26   filed herewith, Ex. B, at 14-15 (Senate Rules Committee, Office of Senate

27   Floor Analysis, SB 1305 (Aug. 23, 2000) (excerpted from Legislative History

28   for 2000 Amendment to Cal. Labor Code section 2802, 2000 Ch. 990, S.B.

1   1305, compiled by Legislative Intent Serv., Inc.).  As California's wage and

2   hour protections are particularly robust, this legislative history evidences an

3   intent to elevate indemnity to the same level.  *See, e.g., Gentry v. Superior*

4   *Court,* 42 Cal. 4th 443, 456, 64 Cal. Rptr. 773, 781-82, 165 P.3d 556 (2007).

5        Moreover, the two Ninth Circuit cases relied upon by the state appellate

6   court in fact support the Officers' position.  *See O'Hara,* 151 F.3d at 1161

7   (granting indemnity under section 2802 to an employee who was sued by an

8   employer); *Freund v. Nycomed Amersham,* 347 F.3d 752 (9th Cir. 2003)

9   (emphasizing that section "2802 is designed to indemnify employees for the

10   legal defense costs when they are sued for actions arising out of their

11   employment.").

12        The NCUA also argues that section 2802 is trumped by Corporations

13   Code section 7237.  *See* NCUA Memo 17:23-19:8.  Notwithstanding the

14   NCUA's argument otherwise, however, it is actually section 2802 which is

15   later in time.  As noted above, section 2802 was amended in 2000 specifically

16   to expand indemnity rights to cover attorney's fees.  Further, a specific statute

17   only trumps its more general counterpart if the two "cannot be reconciled."

18   *Los Angeles Police Protective League v. City of Los Angeles,* 27 Cal. App. 4th

19   168, 178, 32 Cal. Rptr. 2d 574, 579 (1994).  The NCUA has not suggested that

20   this is the case.  The Officers submit that the two sections are entirely

21   consistent: two statutes which indemnify officers in suits by their employer

22   companies and which allow for advancement of fees.

23        Regardless of the Court's conclusion, the Officers wish to make clear

24   they are preserving the issue for appeal.

25   E.   **The Counterclaims Are Ripe**

26        The NCUA's argument that the Counterclaims are not ripe (NCUA

27   Memo 19:9-20:10) fails for multiple reasons:

28

1    *First*, each of the Officers has already incurred substantial litigation

2    expenses for which he is entitled to be reimbursed under Policy 21, the MBCA

3    and California law (either Labor Code section 2802 or Corporations Code

4    section 7237).

5    *Second*, these provisions do not require the Officers to prevail in this

6    litigation in order to be reimbursed for the attorneys' fees that they have

7    already incurred that arise out of the performance of their duties for WesCorp.

8    Policy 21 was intended to provide officers and employees with the maximum

9    indemnification, including the reimbursement of attorneys' fees already

10   incurred, provided under either the MBCA or California law.

11   *Third*, the Officers, as indemnified parties, are general creditors of

12   WesCorp who take priority over the accountholders and shareholders and

13   members of WesCorp, as well as any reimbursement of the National Credit

14   Union Share Insurance Fund.  *See* 12 C.F.R. §§ 709.1(e) (as amended May 17,

15   2004) (defining "shareholder" as "members, nonmembers, accountholders or

16   any other party or entity that is the owner of a share, share certificate or share

17   draft account or the equivalent of such accounts under state law."),

18   709.5(b)(5)-(6) (as amended Oct. 25, 1999) (stating that "general creditors"

19   take priority over "shareholders").  Thus, the Officers' claims for

20   indemnification should be paid in full before the Liquidating Agent pays any

21   of the uninsured portions of the claims of "shareholders" of WesCorp,

22   anything to the National Credit Union Share Insurance Fund or any

23   distribution of surplus funds to "shareholders" of WesCorp.

24   IV.   **CONCLUSION**

25   For each of the foregoing reasons, the Court should deny the NCUA's

26   motion to dismiss and let discovery go forth as to the Counterclaims.

27   Dated:  December 5, 2011.

28

PILLSBURY WINTHROP SHAW PITTMAN LLP
REYNOLD L. SIEMENS  #177956
Email:  reynold.siemens@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406

PILLSBURY WINTHROP SHAW PITTMAN LLP
BRUCE A. ERICSON  #76342
Email:  bruce.ericson@pillsburylaw.com
MARLEY DEGNER #251923
Email:  marley.degner@pillsburylaw.com
50 Fremont Street, Post Office Box 7880
San Francisco, CA  94120-7880


By _____ */s/ Bruce A. Ericson*_____
         Bruce A. Ericson

Attorneys for Defendant
ROBERT JOHN BURRELL

MUNGER, TOLLES & OLSON LLP
BRAD D. BRIAN
RICHARD E. DROOYAN
LAURA D. SMOLOWE
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702


By _____ */s/ Richard E. Drooyan*_____
         Richard E. Drooyan

Attorneys for Defendants ROBERT A. SIRAVO
and THOMAS E. SWEDBERG

CHAPIN FITZGERALD SULLIVAN &
BOTTINI LLP
KENNETH M. FITZGERALD
CURTIS G. CARLL
550 West "C" Street, Suite 2000
San Diego, CA 92101
Telephone: (619) 241-4810
Facsimile:  (619) 955-5318


By _____ */s/ Kenneth M. Fitzgerald*_____
         Kenneth M. Fitzgerald

Attorneys for Defendant TODD M. LANE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON & SUTCLIFFE LLP
KENT B. GOSS
SETH E. FREILICH
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
Telephone:  (213) 629-2020
Facsimile:  (213) 612-2499

JOHN R. WALTON
jrw@waltonlawpc.com
LAW OFFICES OF JOHN R. WALTON
35 N. Lake Avenue, Suite 700
Pasadena, CA 91101
Telephone: (626) 578-6000
Facsimile: (626) 578-6012


By _____ */s/ John R. Walton*_____
                        John R. Walton
Attorneys for Defendant THOMAS T. SIDLEY