CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP
   Kenneth M. Fitzgerald, Esq. (SBN: 142505)
   kfitzgerald@cfsblaw.com
   Curtis G. Carll, Esq. (SBN: 248470)
   ccarll@cfsblaw.com
550 West "C" Street, Suite 2000
San Diego, California 92101
Tel: (619) 241-4810
Fax: (619) 955-5318

Attorneys for Defendant
Todd M. Lane

[The names and addresses of other counsel
appear on the signature pages.]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **National Credit Union Administration Board**, *as Liquidating Agent for Western Corporate Federal Credit Union,* | Case No.: CV10-01597 GW (MANx) |
| Plaintiff, | **Defendants' Joint Opposition to the NCUA's Motion to Strike Affirmative Defenses [Docket No. 195-1]** |
| vs. | |
| **Robert A. Siravo**, *et al.,* | Date: January 9, 2012 |
| Defendants. | Time: 8:30 a.m. |
| | Courtroom: Los Angeles, 10 |
| | |
| | The Honorable George H. Wu |
| **And related counterclaims.** | |

# TABLE OF CONTENTS

I.    Introduction ................................................................................................. 1

II.   Discussion .................................................................................................... 2

      A.    Summary of Challenged Affirmative Defenses.................................. 2

      B.    Legal Standard .................................................................................. 4

      C.    The NCUA Stipulated to the Defenses that it Now Seeks
            to Strike ............................................................................................ 5

      D.    The Motion to Strike is a Backhanded Attempt to
            Preclude Discovery or Presentation of Evidence
            Regarding the NCUA's Own Role at WesCorp ................................. 6

      E.    The Officers Allege that the NCUA (Acting as
            WesCorp's Regulator) Was Involved in the Same
            Decisions that the NCUA Now Claims Were Breaches of
            the Officers' Duties........................................................................... 7

      F.    The NCUA's Role at WesCorp is Key Evidence in this
            Case and Must Be Admitted With or Without the
            Affirmative Defenses ......................................................................... 9

      G.    The Cases Cited by the NCUA Are Distinguishable........................ 11

      H.    WesCorp's Board Demanded that the Officer Defendants
            Defer to the NCUA's Authority, Making the NCUA's
            Actions a Proper Basis for the Affirmative Defenses
            Asserted........................................................................................... 13

      I.    The Affirmative Defense of the Business Judgment Rule
            Should Be Allowed Pending Further Development of the
            Facts and Law and At a Minimum Preserved for Appeal ............... 15

      J.    The Statute of Limitations Defense Should Not Be
            Stricken ........................................................................................... 16

      K.    There Are Sufficient Facts to Support Estoppel ............................. 17

III.  Conclusion................................................................................................. 19

1

# TABLE OF AUTHORITIES

2
**Page(s)**

3
## FEDERAL CASES

4
Bureerong v. Uvawas,
922 F. Supp. 1450 (C.D. Cal. 1996).................................................................4

5
Colaprico v. Sun Microsystems, Inc.,
6
758 F. Supp. 1335 (N.D. Cal. 1991)...............................................................4

7
Fantasy, Inc. v. Fogerty,
984 F. 2d 1524 (9th Cir. 1993)........................................................................5
8

9
FDIC v. Ashley,
749 F. Supp. 1065 (D. Kan. 1990) ................................................................13

10
FDIC v. Crosby,
11
774 F. Supp. 584 (W.D. Wash 1991) ............................................................13

12
FDIC v. Lowe,
13
809 F. Supp. 856 (D. Utah 1992) ..................................................................13

14
FDIC v. McSweeney,
976 F.2d 532 (9th Cir. 1992)........................................................................16
15

16
FDIC v. Ornstein,
73 F. Supp. 2d 277 (E.D. N.Y. 1999)...........................................................13

17
FDIC v. Van Dellen,
18
Case No. 2:10-cv-04915-DSF-SH, Doc. 75 ..................................................15

19
Ganley v. County of Mateo,
U.S. Dist. LEXIS 26467 (N.D. Cal. Mar. 22, 2007) ...............................5, 17
20

21
Grant Thornton, LLP v. FDIC,
535 F. Supp. 2d 676 (S.D. Wa. 2007) ...............................................11, 12, 13
22

23
In re 2TheMart.com Sec. Litig.,
114 F. Supp. 2d 955 (C.D. Cal. 2000)............................................................5

24
Lazar v. Trans Union LLC,
25
195 F.R.D. 665 (C.D. Cal. 2000) ...................................................................4

26
O'Melveny & Myers v. F.D.I.C.,
512 U.S. 79 (1994) .....................................................................................6, 18
27

28
Payne v. Ostrus,
50 F.2d 1039 (8th Cir. 1931).........................................................................10

RTC v. Eason,
17 F.3d 1126 (8th Cir. 1994) ...................................................................... 9, 10

RTC v. Scott,
929 F. Supp. 1001 (S.D. Miss. 1996) ......................................................... 9, 10

Salgado-Diaz v. Gonzales,
395 F.3d 1158, 1166-67 (9th Cir. 2005) .......................................................... 18

Smith v. Wal-Mart Stores,
WL 2711468 (N.D. Cal. Sept. 20, 2006) ........................................................... 5

State of Cal. Dept. of Toxic Substances v. Alco Pac., Inc.,
217 F. Supp. 2d 1028 (C.D. Cal. 2002) ......................................................... 4, 5

United States v. 729.773 Acres of Land, Etc.,
531 F. Supp. 967 (D. Haw. 1982) ................................................................. 4, 5

Washington Bancorporation v. Said,
812 F. Supp. 1256 (D.D.C. 1993) ..................................................................... 9

## STATE CASES

Biren v. Equal Emergency Med. Grp., Inc.,
102 Cal. App. 4th 125 (2002) ......................................................................... 15

Burt v. Irvine Co.,
237 Cal. App. 2d 828 (1965) .......................................................................... 17

PMC, Inc. v. Kadisha,
78 Cal. App. 4th 1368 (2000) ......................................................................... 15

Smith v. Superior Court,
217 Cal. App. 3d 950 (1990) .......................................................................... 17

## STATUTES AND RULES

12 U.S.C. § 1787(b)(14) ...................................................................................... 16

Cal. Code Civ. Proc. § 359 .................................................................................. 17

Cal. Code Civ. Proc. § 343 .................................................................................. 17

1
2

# JURY INSTRUCTIONS

3

California Civil Jury Instruction (CACI) 4101 ....................................................... 9

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

# I.   INTRODUCTION

Although a motion to strike is a drastic and disfavored remedy, the NCUA seeks to strike a number of the defendant officers' affirmative defenses, and allegations supporting those defenses, that are based upon the NCUA's actions in its oversight of WesCorp.  These defenses are critical to a fair assessment of what happened at WesCorp and whether the Officers acted negligently or breached their duties of care.  The motion should be denied, as the NCUA cannot meet its burden of showing that these defenses have no possible legal merit, or that there are no facts that can possibly support them.[1]

The NCUA previously stipulated that all defenses against WesCorp may be properly pleaded against the NCUA in this action.  The NCUA tacitly admits that the pleaded defenses (ratification, consent, approval, etc.) are indeed viable defenses that may properly be asserted against WesCorp.  Nevertheless, the NCUA seeks to have them stricken "to the extent" those defenses include evidence of conduct by the NCUA.  This is not a proper function of a motion to strike, particularly inasmuch as such evidence is critical to the Officer's defense as against WesCorp.

Similarly, the NCUA's motion to strike the Officers' affirmative defenses based on the NCUA's conduct itself is essentially a motion in limine in disguise. The NCUA seeks to strike all of the affirmative defenses through which the Officers would present evidence of the NCUA's own knowledge, approval, and endorsement of the investment strategy that the NCUA now challenges.  Most tellingly, the NCUA even asks the Court to strike defenses "to the extent" they

---

[1]  For convenience, as used herein, the term "Officers" refers to all of the remaining Defendants.  Defendant Swedberg, however, was an employee of WesCorp during all relevant times alleged in the Complaint and Counterclaims and was never an officer.

1    refer to the NCUA, even though the Officers specifically allege that the WesCorp

2    board members directed them to follow the NCUA's guidance.

3         By asking the Court to strike these defenses, the NCUA is really seeking to

4    eliminate the Officers' ability to present the fact-finder with a complete picture of

5    what happened at WesCorp.  In fairness, one cannot judge their conduct without

6    understanding that the NCUA itself, charged with regulating and supervising

7    WesCorp, assessed and blessed WesCorp's investments in MBS, deeming them

8    prudent and acceptable.  The actions and expressed views of the NCUA are

9    highly relevant to the issues of whether the Officers met the standard of care in

10   discharging their duties toward WesCorp, and are critical to defenses such as

11   ratification, consent, and approval by WesCorp through its board.  The NCUA's

12   thinly disguised attempt at the pleading stage to preclude evidence of its own

13   actions and inaction must be rejected.

14        The NCUA quibbles that the statute of limitations defense does not cite to

15   specific law, or recite to specific facts supporting the limitations.  Yet the

16   NCUA's own complaint recites purported wrongdoing and mistakes in judgment

17   going back to 2002, and makes no citation to the law it contends forms the basis

18   for the cause of action.  To succeed in having the defense stricken, however, the

19   NCUA must establish that there are no questions of fact; that any questions of law

20   are clear and not in dispute; and that under no set of circumstances could the

21   affirmative defense succeed.  As with the defenses relating to the NCUA's

22   conduct, the NCUA has not, and cannot, establish that these defenses are barred

23   as a matter of law.

24              **II.      DISCUSSION**

25   **A.  Summary of Challenged Affirmative Defenses**

26        The NCUA challenges some of the Defendants' affirmative defenses, on

27   three distinct bases:  1) the NCUA's own conduct is irrelevant to the asserted

28   defenses sounding in ratification, consent, and approval, as well as Sidley's

defense of estoppel and Swedberg's defense of apportionment; 2) the business judgment rule is not available as a defense; and 3) the statute of limitations is not viable.

As to the first group, a close reading of the Motion reveals that the NCUA is actually seeking to surgically remove from the defenses all references to its own conduct.  In the first instance, the NCUA argues that its conduct as regulator cannot be challenged or asserted as a defense, in any way, to the claim that defendants breached their fiduciary duties to WesCorp.  In addition, while the NCUA moves to strike affirmative defenses specifically based upon the NCUA's own conduct (*e.g.,* Siravo and Swedberg's First Affirmative Defense of Ratification, Consent, Approval, Acquiescence, and Participation by the NCUA), it also seeks to strike "all references in the Officer Defendants' affirmative defenses to the conduct of the NCUA."  *See* Doc. 195, 3:1–4:3.  These defenses are based on the supervision and oversight of WesCorp by the NCUA *and* the WesCorp board.  They assert that as a result of such constant examination, the WesCorp board (which itself took direction from the NCUA and directed that officers likewise do so), were at all times aware and of and approved of the same acts now claimed to have been grossly negligent and wrongful.  *See* Doc. 191, ¶¶ 246–58, 268; Doc. 193, ¶¶ 246–48, 251; Doc. 192, ¶¶ 247–314; Doc. 190, ¶¶ 245–66, 276.  The NCUA admits that the conduct of WesCorp and its board is a proper ground for such defenses, but offers no argument or authority as to why the relevant scope of conduct by WesCorp does not include the board's own reliance (rightly or wrongly) on the conduct of NCUA and its instructions that subordinate officers heed the NCUA's directions.  *See, e.g.,* Sidley's First Affirmative Defense, Doc. 191, ¶ 247 ("WesCorp and the Board's supervision was effected, among other things, … by directing WesCorp's officers to follow the directions of the NCUA and its on-site examiner.").

1       The NCUA also moves to strike all Defendants' affirmative defenses of the

2   business judgment rule on the ground that this Court has already ruled that, unlike

3   directors, officers have no such defense.  But subsequent Central District

4   authority calls into question that conclusion and the sounder path is to preserve

5   the defense at least until trial, pending further development of the facts and the

6   law.  In any event, defendants wish to preserve this defense for appellate

7   purposes.

8       As to the statute of limitations, the NCUA claims that the assertion of the

9   defense is not sufficiently specific, apparently demanding that defendants state

10  the applicable prescriptive period and the legal citation.  The NCUA's own

11  complaint, however, is so vague as to make this impossible, charging actions

12  going back nearly ten years.  *See* Second Amended Complaint, Doc. 116, ¶ 31

13  (charging that the departure from the "traditional business model," which the

14  NCUA claims was a breach of fiduciary duty, began as early as 2002).  Moreover,

15  the claims themselves are opaque as to which law would apply.  The NCUA

16  nowhere states the basis for *its own* assertion of breach of fiduciary duty against

17  WesCorp, other than to say "California law."  Moreover, the first claim for relief

18  sounds in negligence (two years), but is described as a breach of fiduciary duty

19  (either three years or four years).  Similarly, the fifth claim for relief sounds in

20  constructive fraud, and the companion sixth claim for relief is for actual fraud,

21  thus rendering it unclear what limitations period would apply.

22  **B.  Legal Standard**

23      A motion to strike defenses is a drastic remedy which is disfavored by the

24  courts and is infrequently granted.  *See State of Cal. Dept. of Toxic Substances v.*

25  *Alco Pac., Inc.,* 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)*; Lazar v. Trans*

26  *Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000); *Bureerong v. Uvawas*, 922 F.

27  Supp. 1450, 1478 (C.D. Cal. 1996); *Colaprico v. Sun Microsystems, Inc.*, 758 F.

28  Supp. 1335, 1339 (N.D. Cal. 1991). *See also United States v. 729.773 Acres of*

*Land, Etc.,* 531 F. Supp. 967, 971 (D. Haw. 1982). This is so because, "[t]o determine that a defense is insufficient as a matter of law, the court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." *Ganley v. County of Mateo*, 2007 U.S. Dist. LEXIS 26467, *3 (N.D. Cal. Mar. 22, 2007) (quotations and citations omitted). In exercising its discretion, the court views the pleadings in the light most favorable to the non-moving party (*see In re 2TheMart.com Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)), and resolves any doubt as to the relevance of the challenged allegations or sufficiency of a defense in defendant's favor. *Alco Pac.*, 217 F. Supp. 2d at 1033. Even if that high standard can be shown, the motion to strike should be granted only when the pleading to be stricken has no essential or important relationship to the controversy. *Fantasy, Inc. v. Fogerty*, 984 F. 2d 1524, 1527 (9th Cir. 1993) (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07 (1990)).

If the Court does choose to grant the motion to strike, then leave to amend should be granted, so long as there is no prejudice to the moving party. *Smith v. Wal-Mart Stores*, No. C 06-2069 SBA, 2006 WL 2711468, at *2 (N.D. Cal. Sept. 20, 2006) (not reported) (citation omitted).

**C.  The NCUA Stipulated to The Defenses That It Now Seeks to Strike.**

The NCUA attempts to evade Defendants' affirmative defenses by arguing it is immune from them as a federal regulator. While making this argument, however, the NCUA ignores the stipulation it signed admitting the very converse of its current assertion. On May 11, 2011, the NCUA and Defendants signed and filed a Joint Stipulation, pursuant to which the NCUA admitted:

> The NCUA as Liquidating Agent is by 12 U.S.C. § 1787(b) the successor to WesCorp and the NCUA as Conservator, and therefore is the proper party against

> which Defendants' claims, counterclaims, cross-claims
> and affirmative defenses arising out of the acts or
> omissions of WesCorp and the NCUA as Conservator
> and/or Liquidator are to be asserted in this action; ….

Doc. 125.  Here, the challenged affirmative defenses are based on the acts and

omissions of WesCorp and, by extension, the NCUA.  Doc. 191, ¶¶ 246–58, 268;

Doc. 193, ¶¶ 246–48, 251; Doc. 192, ¶¶ 247–314; Doc. 190, ¶¶ 245–66, 276.  The

NCUA as Liquidating Agent, by its own admission, is the proper party against

which Defendants can assert affirmative defenses that would have been available

against WesCorp.

Further, it is settled law that the NCUA stands in the shoes of WesCorp

with respect to such defenses.  As the Supreme Court succinctly stated in

*O'Melveny*: "…any defense good against the original party is good against the

receiver."  *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 86 (1994) (citation

omitted).  Thus, any defense Defendants have as WesCorp itself, such as defenses

of consent, approval, acquiescence, participation, and ratification by WesCorp's

board, is likewise viable against the NCUA, which seeks to bring the claims on

WesCorp's behalf.

**D.   The Motion to Strike Attempts to Preclude Discovery or Presentation
      of Evidence Regarding the NCUA's Own Role at WesCorp.**

The NCUA claims that the Officers breached their fiduciary duties to

WesCorp.  The heart of this claim is that the Officers allowed WesCorp to invest

too heavily in mortgage-backed securities—some of which, although rated AAA

or AA when purchased, eventually lost value.  The NCUA targets a few alleged

actions on the part of the Officers that it claims make them personally liable for

the company's losses: 1) allegedly not highlighting investment risks when

presenting to the Board a proposed budget; 2) allegedly not lobbying the Board

for meaningful concentration limits on investments; and 3) and allegedly not

1  vetting as "new security types" investments that neither the Officers nor the

2  Board regarded as new.  Doc. 116, ¶¶ 85–104; 105–114; 117; 128–29.  The

3  NCUA alleges that the Officers "failed to perform their duties with such care as

4  an ordinarily prudent person in a like position would use as an executive officer

5  for a $30 billion financial institution." *Id.* ¶ 196.  According to the NCUA, then,

6  its entire case rests on the answer to this question: Were the actions of the

7  Officers reasonable at the time they were made?

8       The NCUA's motion to strike is really an attempt to avoid some of the

9  most relevant evidence available to answer that question:  evidence as to what the

10  federal regulators thought at the time of WesCorp's investments and investment

11  processes and strategy.  For example, the NCUA criticizes the Officers for

12  recommending AA-rated investments, but does not want the fact-finder to know

13  that the NCUA gave WesCorp permission to buy investments rated as low as

14  BBB (permission that WesCorp chose not to use).  For another example, the

15  NCUA wants to argue that WesCorp fell below the standard of care, but does not

16  want the fact-finder to know that NCUA examiners at the time praised

17  WesCorp's investment practices and gave those practices very high grades – in

18  banking terms the equivalent of being on the Honor Roll.  In short, the NCUA

19  wants this Court to bless an injustice by allowing the NCUA to present half the

20  story and leave out the rest of the story.  The Court should not pre-judge the duty

21  of care issue, or foreclose an important body of evidence directly relevant to the

22  standard of care, by granting the NCUA's motion.  And there is no reason to do

23  so now.  The admissibility of evidence should be ruled upon when evidence is

24  presented, not as discovery is just getting underway.

25

26

27

28

### E.   The Officers Allege that the NCUA (Acting as WesCorp's Regulator) Oversaw the Same Decisions that the NCUA Now Claims Were Breaches of the Officers' Fiduciary Duties.

The Officers allege that the NCUA, as WesCorp's regulator, participated in and ratified the same decisions over which it is now suing the Officers.  *See* Doc. 195-1, at 3:3-15.  As the NCUA accurately paraphrases the Officers' allegations, the NCUA:

- praised WesCorp's management;
- endorsed WesCorp's investment philosophy;
- gave WesCorp special permission to engage in riskier investments;
- monitored WesCorp's investments daily;
- approved WesCorp's policies and procedures for reviewing, evaluating, and managing investments;
- encouraged WesCorp's practice of concentrating its loans in the riskiest type of mortgage backed securities; and
- never raised any concerns regarding WesCorp's investment strategies, risk assessment efforts, or business plans.

*Id.* (citing Doc. 190, ¶¶ 245–52; Doc. 191, ¶¶ 246–58, 277–78; Doc. 192, ¶¶ 247–314; Doc. 193, ¶¶ 246–47.).

Among other ways, the NCUA accomplished all this (and more) by having an on-site examiner full-time at WesCorp who had complete access to all the information that the Officers did.  Doc. 191, ¶ 248; Doc. 192, ¶¶ 258–262 (the NCUA's on-site examiner "provided real-time surveillance of WesCorp's investment activities").  The NCUA's examiners then used this information to prepare yearly examination reports analyzing, assessing, and praising WesCorp's operations.  *See, e.g.*, Doc. 190, ¶ 246; Doc. 192, ¶ 264.

But they did much more than that.  The NCUA had its examiners in the

same building with real-time access to the same due diligence materials when
WesCorp was evaluating and approving investments and concentrations of
investments—including Option ARM MBS—and risk-assessment procedures.
Doc. 192, ¶ 275 ("the NCUA . . . consistently approved of WesCorp's investment
strategies and investment concentrations, including WesCorp's investments in
Option ARM MBS, lower tranche MBS and reduced documentation MBS"); ¶
283 ("the NCUA knew and approved of WesCorp's policies and procedures for
conducting credit reviews on proposed security purchases"); ¶ 290 ("the NCUA
knew and approved of WesCorp's policies and procedures for creating
concentration limits . . . and monitored compliance with such limits").  One
wouldn't learn any of that from reading the NCUA's Second Amended
Complaint.  The Officers plead these additional, important facts in their
affirmative defenses because they are new matter, which is critical to a fair
assessment of their alleged misconduct in purchasing MBS investments.

**F.  The NCUA's Role at WesCorp Is Key Evidence in this Case and Must
Be Admitted With or Without the Affirmative Defenses.**

As a general matter, whether or not fiduciary duties have been breached by
a corporate officer depends on whether the officer "failed to act as a reasonably
careful corporate officer would have acted under the same or similar
circumstances."  CACI 4101; *see also* Doc. 116, ¶ 196.  Therefore, evidence
relating to what the NCUA knew and thought about WesCorp's investments—
including its approval of them—is essential to a fair adjudication of this case.
*See, e.g.*, *RTC v. Eason*, 17 F.3d 1126, 1130–32 (8th Cir. 1994); *Washington
Bancorporation v. Said*, 812 F. Supp. 1256, 1266 n.15 (D.D.C. 1993) (noting that
evidence showing that the FDIC participated in a loan, or otherwise
"affirmatively acknowledg[ed] that it believed that it was prudent to invest,"
would lead to summary judgment for directors on a claim of negligence in
entering a loan); *RTC v. Scott*, 929 F. Supp. 1001, 1022 (S.D. Miss. 1996)

(granting summary judgment in favor of director and officer of a bank on a claim of gross negligence for certain loans, and in doing so, relying on expert report that described that the bank was "under the scrutiny of [government] examiners" who did not "make any adverse findings" with regard to the loans); *Payne v. Ostrus*, 50 F.2d 1039, 1044–45 (8th Cir. 1931) (affirming judgment for defendants in a suit brought by the receiver of a bank against the directors of the bank for approving excessive loans, and relying on evidence that "during all of the period in which it is charged that these defendants were negligent in making loans to individuals that were insolvent, the banking department of the state of Iowa was encouraging banks to remain open, having their directors sign guaranties of bank loans, and using every effort to maintain the former business relations . . . .").

In *Eason*, the RTC brought claims of negligence and breach of fiduciary duties against officers and directors of a failed savings and loan for having approved loans that later failed. *Eason*, 17 F.3d at 1128. The RTC attempted to exclude a document prepared by an examiner of the savings and loan that gave its "underwriting a grade of 'B' (on an A-to-F scale), and answered 'Yes' to the question 'Are underwriting standards for loan commitments adequate'?" *Id.* at 1130. The RTC also tried to exclude a document prepared by an examiner that individually described two of the challenged loans as an "excellent investment." *Id.* The district court allowed both documents into evidence, and the Court of Appeal upheld this ruling. With regard to the "B" grade that was given to the savings and loan, the Court found that it was evidence of "custom and usage" in the banking industry. *Id.* at 1133.

Custom and usage in the industry are, of course, the essence of the standard of care. One cannot assess the reasonableness of conduct by a corporate officer without knowing how others acted in the face of the same or similar information and circumstances. In this case, those "others" included regulators whose job it was to monitor risk and assess the prudence of WesCorp's practices. Therefore,

evidence related to what the NCUA knew, what the NCUA approved of, and of the NCUA's evaluations of WesCorp's investments are not just relevant to this case, but cornerstones of it. Thus, with or without the affirmative defenses, this evidence is admissible—indeed *crucial* to determining whether the NCUA can prove its case in chief. That the evidence must come in anyhow, with or without these affirmative defenses, simply underscores the pointless and premature nature of this motion, which really is just a *sub silentio* attempt to avoid providing discovery on this vital subject.

### G.  The Cases Cited by the NCUA Are Distinguishable.

The NCUA's entire motion to strike the Officers' affirmative defenses relating to the NCUA's conduct rests on this proposition: "The pre-failure actions of financial institution regulators cannot be asserted as an affirmative defense to claims brought by the receiver or liquidator of those institutions." Doc. 195-1, at 6:22-24. In support of this argument, the NCUA offers a string-cite of seven cases with no explanation of the facts of any. Those facts are important, however, because they render the cases inapposite to the situation here.

In *Grant Thornton, LLP v. FDIC*, the FDIC sued an accounting firm for professional malpractice; a bank had hired the accounting firm at the insistence of the government. 535 F. Supp. 2d 676 (S.D. Wa. 2007). The accounting firm had audited the bank's financials, found that they were GAAP compliant, and reported that the bank had almost $200 million in shareholder equity. *Id.* at 682. But the bank was actually insolvent, which had been covered up by rampant fraud on the part of its directors. *Id.* The accounting firm argued that the government had been independently monitoring and examining the bank for years before the audit, and, therefore, the government should have discovered the fraud, and shared any and all information relating to the fraud with the firm. *Id.* at 720. The court rejected this argument. It found that the standard of care and responsibilities of an accounting firm are not the same as those of bank

examiners, and that the government had no duty to warn the accounting firm. *Id.* at 721 ("Unlike Grant Thornton, the bank examiners were not conducting audits governed by professional auditing standards with the objective of determining whether the financial statements were fairly stated in all material aspects."); *id.* at 722 ("The [government's] regulatory activities are simply not parallel to [the accounting firm's] auditing responsibilities and do not give rise to a duty to warn"). Therefore, the Court concluded that the accounting firm's arguments relating to the government's failure to discover fraud and disclose information were "legally irrelevant to the issue of whether [the accounting firm] breached its professional duties." *Id.* at 720.

Here, the NCUA does not occupy the same position as the government examiners in *Grant Thornton*, nor do the Officers occupy the same position as the defendant in that case. The defendant in *Grant Thornton* was an accounting firm which had conducted an audit governed by professional standards that were different from the government bank examiners. *Id.* at 721. Unlike that situation, what the NCUA did is legally relevant to whether the Officers breached their fiduciary duties because the Officers were making investment recommendations and the examiners were opining as to the safety and soundness of those recommendations and of the WesCorp's board's investment decisions.

Moreover, the Officers are not accusing the NCUA of discovering information and not turning it over to WesCorp, nor alleging that the NCUA had a duty to do so, nor that there was any information practically available to the NCUA or WesCorp that would have altered either's assessment of investments. **And they are not claiming that the NCUA had a duty to warn WesCorp of the riskiness of particular investments.** Instead, the Officers are stating the plain fact that the NCUA had access to all the same information that they had, supervised on-site and full-time WesCorp's investment activities, and that the NCUA approved the Officers' recommendations. In this context, what the

1   NCUA knew, did, and said regarding the recommendations that the Officers made

2   that the NCUA now attacks is key evidence as to whether the Officers acted with

3   due care —not any effort to create some new duty on the part of the government.

4          Finally, the Officers are not claiming that the NCUA's conduct was a

5   supervening or intervening cause of damage to WesCorp.  *Id.* at 720.  In *Grant*

6   *Thornton*, the regulators had repeatedly criticized the bank's management, sought

7   civil monetary penalties, and even made a criminal referral—all **before** hiring the

8   accounting firm to examine the books.  *Id.* at 681–82.  There is no similar claim

9   by the Officers against the NCUA.

10         Other cases cited by the NCUA similarly rest on the principle that the

11   NCUA had no duty to WesCorp—and, therefore, cannot be blamed for any

12   failings vis-à-vis WesCorp.  *FDIC v. Ornstein*, 73 F. Supp. 2d 277, 279 (E.D.

13   N.Y. 1999); *FDIC v. Lowe*, 809 F. Supp. 856, 858 (D. Utah 1992) (noting that

14   "lack of a duty" and sovereign immunity preclude banking regulators from

15   liability); *FDIC v. Crosby*, 774 F. Supp. 584, 586 (W.D. Wash 1991); *FDIC v.*

16   *Ashley*, 749 F. Supp. 1065, 1068 (D. Kan. 1990) (noting lack of duty and

17   sovereign immunity precludes comparative negligence of the FDIC in its

18   regulatory capacity)  But the Officers' affirmative defenses do not assert that the

19   NCUA had a duty or is to blame; rather, the defenses assert that the NCUA

20   looked at WesCorp's investment decisions and expressed the view that in their

21   professional judgment, the investment decisions were prudent and met

22   professional standards.  Whether or not the NCUA had a duty to WesCorp, the

23   fact is that the NCUA approved of the investments it now says were recklessly

24   made, and defendants must be permitted to introduce that evidence.  If not,

25   defendants will be deprived of a fair opportunity to explain why their conduct was

26   reasonable under the circumstances at the time.

27

28

**H.   WesCorp's Board Demanded that the Officer Defendants Defer to the NCUA's Authority, Making the NCUA's Actions a Proper Basis for the Affirmative Defenses Asserted.**

The NCUA claims that the Officers' affirmative defenses that include the "pre-failure actions of financial institution regulators" should be stricken.  Doc. 195-1, at 6.  But, in fact, the NCUA is asking the Court to go beyond that.  In Sidley's first affirmative defense, he alleges that WesCorp's Board limited the power of certain officers by directing the officers "to follow the directions of the NCUA and its on-site examiner."  Doc. 191, ¶ 247 ("the Board directed its officers to follow the guidance and direction of NCUA in all respects, which direction Sidley followed to the extent applicable to his scope of duties.").

These allegations further stress how important evidence regarding the NCUA's involvement with WesCorp's decision-making is—*regardless* of whether the NCUA itself may be held liable.  Defendants recognize the NCUA cannot be found liable, but that does not mean the NCUA's actions are irrelevant to the affirmative defenses.  The NCUA acknowledges that its motion to strike does not include the Officers' allegations that WesCorp's board of directors ratified or consented to the Officers' alleged decision-making.  Doc. 195-1, at 4:2-5 ("Many of these affirmative defenses allege both the acts or omissions of the NCUA as regulator and the acts and omissions of other parties, such as WesCorp's board of directors.  For those defenses, the NCUA is moving to strike only the references to the NCUA as regulator, not the defense as a whole.").

If, as the NCUA concedes, evidence of approval by WesCorp's board is admissible to mitigate or excuse the Officers' liability, then evidence of the NCUA's approval must be as well—*because* WesCorp's Board commanded the Officers to rely on the NCUA's directives.  But, if successful, the NCUA's motion would seemingly allow the Officers to testify that the WesCorp board demanded that the Officers rely on the NCUA, but would not allow the Officers

1   to introduce evidence of the NCUA's involvement with WesCorp.  In other
2   words, the Officers would have no ability to present evidence to support a defense
3   that the NCUA has conceded they can present.

4   **I.    The Affirmative Defense of the Business Judgment Rule Should Be**
5   **Allowed Pending Further Development of the Facts and the Law and**
6   **At a Minimum Preserved for Appeal.**

7       We recognize and acknowledge that this Court previously ruled in the
8   absence of squarely controlling case law that the business judgment rule is not
9   available to officers.  Doc. 110, at 9-12.  But that ruling rested on one 22-year old
10  case, and as this Court recognized, the cases are at best murky and the matter has
11  never been resolved by California's Supreme Court.

12      Since this Court made its ruling, another court in this district recently
13  reached a different conclusion.  In *FDIC v. Van Dellen*, FDIC sued former
14  officers of IndyMac Bank for negligence and breach of fiduciary duties in
15  approving certain loans.  Case No. 2:10-cv-04915-DSF-SH, Doc. 75, at 1.  The
16  defendants pleaded the affirmative defense of the business judgment rule, and the
17  FDIC moved to strike it.  Judge Fischer denied the FDIC's motion.  She held that
18  the FDIC could not establish as a matter of law that the business judgment rule as
19  it exists under California law did not apply to officers.  *Id.* at 3 (citing, among
20  other cases, *Biren v. Equal Emergency Med. Grp., Inc.*, 102 Cal. App. 4th 125,
21  137 (2002) & *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1386–87 (2000)).

22      Defendants suggest this Court revisit the issue in light of the *Van Dellan*
23  decision and allow defendants to preserve the defense at least through discovery.
24  The Court can then give the matter further consideration at summary judgment
25  stage or when crafting jury instructions for trial—and do so then in light of real
26  facts and a fully developed record.

27      Even without revisiting the issue it is inappropriate to strike the business
28  judgment rule affirmative defense without clear, controlling case law.  In the

1  event the Court does not believe the business judgment rule is available as a

2  defense, Defendants wish to make clear that they are preserving the point for

3  appeal.

4  **J.    The Statute of Limitations Defense Should Not Be Stricken.**

5      The NCUA challenges the Officers' statute of limitation defenses on the

6  ground that they fail to give the NCUA "fair notice" of the defense.  Doc. 195-1,

7  at 10:1-3.  As a threshold matter, Defendants Lane and Siravo pleaded the statute

8  of limitations defense to the NCUA's claims for unjust enrichment and breach of

9  fiduciary duty related to Mr. Lane's Early Payout Agreement.  Doc. 116, ¶¶ 235–

10  44 (7th & 8th Claims for Relief).  But, just before the parties were to make initial

11  disclosures, the NCUA announced it was willing to dismiss those claims based on

12  its discovery of a document showing that the WesCorp Board had actually

13  approved of Mr. Lane's Early Payout.  *Cf. id.* ¶ 242 ("The NCUA is informed and

14  believes and on that basis alleges that the  Early Payout Agreement under which

15  Lane received in excess of $1.4 million was not authorized by the WesCorp board

16  of directors[.]").  The NCUA subsequently dismissed those claims, but not before

17  the Officers filed their amended answers.  To the extent the statute of limitations

18  defenses were pled to defend the Early Payout Agreement claims, they are now

19  moot.

20      As for the statute of limitations as a defense to the NCUA's first claim for

21  relief for breach of fiduciary duties against the Officers, the appropriate period is

22  unclear.  The NCUA has three years from the date of the conservatorship (March

23  19, 2009, *see* SAC, Doc. 116, at ¶ 1) to bring claims against directors and

24  officers.  12 U.S.C. § 1787(b)(14).  But it can only assert claims that were not

25  time-barred as of the date of the conservatorship; section 1787(b)(14) does not

26  resurrect from the dead claims that were time-barred as of that date.  *FDIC v.*

27  *McSweeney*, 976 F.2d 532, 534 (9th Cir. 1992). The question is thus whether the

28  NCUA's claims were time-barred under state law as of March 19, 2009—a

1    question that is difficult to answer, given the highly ambiguous allegations in the

2    NCUA's Second Amended Complaint.

3         Indeed, read closely, the Second Amended Complaint asserts that the

4    "departure from the traditional business model" for credit unions in 2002 was the

5    breach of duty that was the cause of the investment losses claimed as damages.

6    *See* Doc. 116, at ¶ 31.  If so, then the NCUA's claims seemingly would be barred

7    under any applicable statute of limitations.[2]  If not, however, then the Officers are

8    left guessing as to what law plaintiff seeks to apply, and what specific

9    transactions are claimed to be wrongful.  Without such specification, the Officers

10   are unfairly hampered in alleging more specific facts to support an applicable

11   period of prescription.  Certainly, at this point, before meaningful discovery has

12   been conducted, it is premature to conclude that the statute of limitations does not

13   bar any part of the NCUA's claim, which is the standard for evaluating a motion

14   to strike.  *Ganley*, 2007 U.S. Dist. LEXIS 26467, *3.

15        In any event, should the Court feel that greater specificity is warranted at

16   this stage, it should grant the Officers leave to amend.

17   **K.   There are Sufficient Facts to Support Sidley's Pleading of Estoppel.**

18        The elements of equitable estoppel are that: (1) the party to be estopped

19   knows the facts, (2) he or she intends that his or her conduct will be acted on or

20   must so act that the party invoking estoppel has a right to believe it is so intended,

21   (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or

22

23

24   _____

25   [2]   For example, depending on how the NCUA's allegations are interpreted, the
     appropriate limitations period could be two years (for negligence-based claims, *see*

26   *Burt v. Irvine Co.*, 237 Cal. App. 2d 828, 865 (1965)); three years (for liability created
     by statute, *see* Cal. Code Civ. Proc. § 359; *Smith v. Superior* Court, 217 Cal. App. 3d

27   950, 953 (1990)); or four years (the catch-all period under Cal. Code Civ. Proc. §

28   343).

1  she must detrimentally rely on the former's conduct.[3]  *Salgado-Diaz v. Gonzales,*

2  395 F.3d 1158, 1166–67 (9th Cir. 2005).

3  Here, Sidley has alleged, with factual specificity, that both the NCUA and

4  WesCorp supervised, oversaw, and thus, knew of WesCorp's investment

5  strategies and risk assessment.  Doc. 191, ¶¶ 247–49, 277.  As to the NCUA,

6  Sidley alleged that it had an on-site examiner who was physically located at

7  WesCorp's facilities on a full-time basis examining WesCorp's abilities.  *Id.*, at

8  ¶¶ 248, 277.  The on-site examiner's efforts resulted in yearly examination

9  reports, analysis and assessment of WesCorp's operations including, but not

10  limited to investment strategies and risk assessment.  *Id.*, at ¶¶ 247, 277.  As a

11  result of its examination, Sidley alleged that the Plaintiff consistently approved of

12  WesCorp's investment strategies and investment concentrations.  *Id.*, at ¶¶ 251,

13  277.  WesCorp also knew of and approved of its own policies, as evidenced by

14  its: (i) limiting investments to primarily high grade securities with AA and AAA

15  ratings; (ii) conducting thorough credit reviews of proposed security purchases

16  based upon available information prior to purchasing; (iii) preparing monthly

17  watch lists for, and keeping appropriate oversight of, securities that were not

18  performing well, amongst other policies.  *Id.*, at, ¶¶ 247, 249, 277.

19  While forming these policies, WesCorp *specifically instructed Sidley to*

20  *have no involvement in WesCorp's choice of securities to purchase or the*

21  *implementation of such decisions*.  Doc. 191, at ¶¶ 247, 277 (emphasis added).

22  Clearly, having instructed Sidley to do something, WesCorp intended Sidley to

23  follow its directions, leaving Sidley ignorant of the true facts.  But now, instead of

24  being rewarded for following instructions, Sidley is being sued for it.  SAC, ¶

25

26  _____

[3]  While there is an additional requirement that applies when equitable estoppel is

27  asserted against the government, that requirement does not apply because the NCUA
is subject to all defenses WesCorp is subject to, including equitable estoppel.

28  *O'Melveny & Meyers v. F.D.I.C.*, 512 U.S. 79, 86 (1994) (citation omitted).

195.  This is a prime example of detrimental reliance and demonstrates how Sidley pled sufficient facts supporting his affirmative defense of estoppel.

### III.   CONCLUSION

Defendants respectfully request that the Court deny the NCUA's motion to strike in its entirety.  Alternatively, Defendants request leave to amend, which should be granted as there is no cognizable prejudice to plaintiff.


DATED:   December 5, 2011          CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP


By:     /s/ *Kenneth M. Fitzgerald*
        Kenneth M. Fitzgerald, Esq.
        Curtis G. Carll, Esq.
        Attorneys for Defendant
        Todd M. Lane


By:     /s/ *Bruce A. Ericson*
        Bruce A. Ericson, Esq.
        Marley Degner, Esq.
        George Allen Brandt, Esq.
        Reynold L. Siemens, Esq.
        Attorneys for Defendant
        Robert John Burrell


By:     /s/ *Richard E. Drooyan*
        Richard E. Drooyan, Esq.
        Laura Smolowe, Esq.
        Attorneys for Defendants
        Robert A. Siravo
        and Thomas E. Swedberg

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:      /s/ *John R. Walton*
Kent B. Goss, Esq.
Seth E. Freilich, Esq.
John R. Walton, Esq.
Attorneys for Defendant
Timothy Sidley