Michael H. Bierman, State Bar No. 89156
Jeffrey D. Wexler, State Bar No. 132256
Michael E. Pappas, State Bar No. 130400
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 S. Figueroa, Suite 3900
Los Angeles, California 90017
Telephone: 213.892.4992
Facsimile: 213.892.7731
E-Mail: mbierman@luce.com
jwexler@luce.com
mpappas@luce.com

Attorneys for Plaintiff and Counterdefendant National Credit Union Administration Board As Liquidating Agent For Western Corporate Federal Credit Union

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD AS LIQUIDATING AGENT FOR WESTERN CORPORATE FEDERAL CREDIT UNION,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT A. SIRAVO, TODD M. LANE, ROBERT J. BURRELL, THOMAS E. SWEDBERG, TIMOTHY T. SIDLEY, ROBERT H. HARVEY, JR., WILLIAM CHENEY, GORDON DAMES, JAMES P. JORDAN, TIMOTHY KRAMER, ROBIN J. LENTZ, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE,<br><br>Defendants. | Case No.: CV10-01597 GW (MANx)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF AND COUNTERDEFENDANT NATIONAL CREDIT UNION ADMINISTRATION BOARD AS LIQUIDATING AGENT FOR WESTERN CORPORATE FEDERAL CREDIT UNION TO STRIKE AFFIRMATIVE DEFENSES**<br><br>Date: January 9, 2012<br>Time: 8:30 a.m.<br>Courtroom: 10 |

# TABLE OF CONTENTS


**Page**

INTRODUCTION ....................................................................................1

LEGAL ARGUMENT ..............................................................................3

I. AFFIRMATIVE DEFENSES BASED ON THE NCUA'S PRE-FAILURE CONDUCT ARE LEGALLY INSUFFICIENT.......................3

A. The NCUA did Not Stipulate to Affirmative Defenses Based on the NCUA's Pre-Failure Conduct ..........................................3

B. The Officer Defendants' Focus on Discovery and Evidentiary Issues is Misplaced ..............................................................4

C. The Rule Precluding Defenses Based upon the Pre-Failure Conduct of Banking Regulators is Not Contingent Upon the Extent of the Regulators' Oversight ..........................................6

II. THE COURT SHOULD STRIKE THE AFFIRMATIVE DEFENSES RELYING ON THE BUSINESS JUDGMENT RULE BECAUSE THAT RULE DOES NOT APPLY TO OFFICERS .............................8

III. THE STATUTE OF LIMITATIONS DEFENSES ARE LEGALLY INSUFFICIENT.......................................................................10

IV. SIDLEY'S ESTOPPEL DEFENSE IS LEGALLY INSUFFICIENT.........11

CONCLUSION...................................................................................12

# TABLE OF AUTHORITIES

Page

## CASES

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167 (N.D. Cal. 2010)....10

*Barnes v. State Farm Mut. Auto Ins. Co.*, 16 Cal. App. 4th 365 (1993)....8, 9

*Bottoni v. Sallie Mae, Inc.*, 2011 U.S. Dist. LEXIS 93634 (N.D. Cal. Aug. 22, 2011)....11

*Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc.*, 2011 U.S. Dist. LEXIS 96154 (C.D. Cal. Aug. 25, 2011)....5, 10

*FDIC v. Ashley*, 749 F. Supp. 1065 (D. Kan. 1990)....7

*FDIC v. Carter*, 701 F. Supp. 730 (C.D. Cal. 1987)....7

*FDIC v. Crosby*, 774 F. Supp. 584 (W.D. Wash. 1990)....7

*FDIC v. Lowe*, 809 F. Supp. 856 (D. Utah 1992)....7

*FDIC v. Ornstein*, 73 F. Supp. 2d 277 (E.D.N.Y. 1999)....7

*FDIC v. Perry*, 2011 U.S. Dist. LEXIS 143222 (C.D. Cal. Dec. 13, 2011)....2, 9

*FDIC v. Van Dellen*, Case No. CV 10-4915 DSF (SHx) (C.D. Cal. Sept. 27, 2011)....8

*Gaillard v. Natomas Co.*, 208 Cal. App. 3d 1250 (1989)....8, 9

*Gessele v. Jack in the Box, Inc.*, 2011 U.S. Dist. LEXIS 99419 (D. Or. Sept. 2, 2011)....2, 10

*Grant Thornton, LLP v. FDIC*, 535 F. Supp. 2d 676 (S.D. W. Va. 2007)....5, 7, 11

*J&J Sports Prods., Inc. v. Montanez*, 2010 U.S. Dist. LEXIS 137732 (E.D. Cal. Dec. 13, 2010)....10

*J&J Sports Prods., Inc. v. Soto*, 2010 U.S. Dist. LEXIS 103958 (S.D. Cal. Sept. 27, 2010)....5

*Lee v. Interinsurance Exch.*, 50 Cal. App. 4th 694 (1996)....8, 9

**TABLE OF AUTHORITIES**
**(cont'd)**

**Page**

*Mukherjee v. Immigration & Naturalization Serv.*,
793 F.2d 1006 (9th Cir. 1986) .......... 11

*Qarbon.com Inc. v. eHelp Corp.*,
315 F. Supp. 2d 1046 (N.D. Cal. 2004) .......... 11

*RTC v. Sands*,
863 F. Supp. 365 (N.D. Tex. 1994) .......... 7

*SEC v. Sands*,
902 F. Supp. 1149 (C.D. Cal. 1995) .......... 11

*Wyshak v. City Nat'l Bank*,
607 F.2d 824 (9th Cir. 1979) .......... 10

**STATUTES**

Cal. Corp. Code § 309 .......... 8, 9

Cal. Corp. Code § 7231 .......... 9

**RULES**

Fed. R. Civ. P. 12(f) .......... 5

201194023.1

**INTRODUCTION**

Plaintiff and counterdefendant the National Credit Union Administration Board as Liquidating Agent for Western Corporate Federal Credit Union (the "NCUA") brought this motion to strike largely to remove affirmative defenses based on the pre-failure actions of the NCUA as regulator – affirmative defenses that have repeatedly been held legally insufficient.

Defendants and counterclaimants Robert A. Siravo, Thomas E. Swedberg, Timothy T. Sidley ("Sidley"), Robert J. Burrell, and Todd M. Lane (collectively, the "Officer Defendants") concede that the case law establishes that the NCUA "cannot be blamed for any failings vis-à-vis WesCorp." Docket 203 at 13:10-12. They cite no authority suggesting that the affirmative defenses are valid. However, they argue that those defenses should not be stricken because evidence of what the NCUA did might be relevant to whether the Officer Defendants acted improperly.

In so doing, the Officer Defendants confuse the legal sufficiency of the defenses at issue with the scope of discovery on the NCUA's claims. To the extent that the conduct of the NCUA is material to the issues that the NCUA must prove to prevail on its claims – the appropriate standard of care and whether the Officer Defendants met it – then it would be a proper subject of discovery. However, this motion is not the proper procedural mechanism to decide that question, and the NCUA is not asking the Court to do so here. The question is irrelevant to the legal sufficiency of the affirmative defenses at issue. Because the NCUA's pre-failure conduct does not give rise to legally sufficient affirmative defense, the Court should strike all affirmative defenses that are based on conduct by the NCUA prior to WesCorp's failure.[1]

---

[1] The Officer Defendants also contend that the NCUA stipulated away its right to challenge affirmative defenses that they could have asserted against WesCorp. However, the stipulation relied upon by the Officer Defendants merely substituted the NCUA as liquidating agent for the NCUA as conservator, while providing that such substitution did ***not*** affect the parties' substantive rights against each other. *See* Docket 125 at 3:7-12.

Next, although the Court has already held that the Officer Defendants cannot rely on the business judgment rule, *see* Docket 110 at 9-11, they argue that they should be able to assert the business judgment rule as an affirmative defense because the Court may have made a mistake in its ruling. The Officer Defendants have shown no basis for reconsideration. To the contrary, Judge Wright recently issued a detailed opinion that concluded, like this Court, that as a matter of California law the business judgment rule does not apply to officers. *See FDIC v. Perry*, 2011 U.S. Dist. LEXIS 143222 at *8-14 (C.D. Cal. Dec. 13, 2011).

Furthermore, the Officer Defendants argue that the Court should not strike their bald assertion of their statute of limitations defenses because the alleged lack of clarity of the NCUA's Second Amended Complaint prevents them from identifying the applicable statute of limitations. Nothing in the Second Amended Complaint excuses the Officer Defendants' obligation to comply with Fed. R. Civ. P. 8 and to properly identify in their defenses "which claims are untimely and which statutes of limitations are at issue." *Gessele v. Jack in the Box, Inc.*, 2011 U.S. Dist. LEXIS 99419 at *15 (D. Or. Sept. 2, 2011) (striking statute of limitation affirmative defense). Because there is no dispute that the Officer Defendants' statute of limitations defenses consist of nothing more than a legal conclusion, the Court should strike them.

Finally, while Sidley attempts to argue that his estoppel defense is legally sufficient, the defense is improper both because it relies upon the NCUA's pre-failure conduct and because it fails to allege the type of egregious facts necessary to support the assertion of the affirmative defense of estoppel against the government. The Court should therefore strike Sidley's affirmative defense of estoppel.

# LEGAL ARGUMENT

## I. AFFIRMATIVE DEFENSES BASED ON THE NCUA'S PRE-FAILURE CONDUCT ARE LEGALLY INSUFFICIENT.

The Officer Defendants concede – as they must – that the NCUA's pre-failure conduct was not "a supervening or intervening cause of damage to WesCorp," and they acknowledge that the NCUA "cannot be blamed for any failings vis-à-vis WesCorp." Docket 203 at 13:4-5, 13:10-12. While they cite no authority suggesting that their affirmative defenses based on pre-failure regulatory conduct are legally viable, the Officer Defendants argue that the NCUA's motion to strike should be denied because: (1) the NCUA has purportedly stipulated to the defenses; (2) evidence regarding the NCUA's conduct may otherwise be relevant to issues presented in the case; (3) the NCUA was involved in the same decisions it now criticizes; and (4) the cases cited by the NCUA are distinguishable. *See id.* at 5:20 – 15:3. None of these arguments justifies retaining the legally insufficient defenses.

### A. The NCUA did Not Stipulate to Affirmative Defenses Based on the NCUA's Pre-Failure Conduct.

The Officer Defendants' lead argument is that the NCUA agreed in the Joint Stipulation to Substitute NCUA as Liquidating Agent in Place of NCUA as Conservator [Docket 125] that they could assert defenses based on the NCUA's pre-failure conduct, and that the NCUA therefore cannot now seek to strike these defenses. *See* Docket 203 at 5:20 – 6:17. This argument blatantly misreads the stipulation. The portion of the stipulation quoted by the Officer Defendants is explicitly limited to "affirmative defenses ***arising out of WesCorp's conduct – or the NCUA's conduct as Conservator and/or Liquidator***." Docket 125 at 2:21-26 (emphasis added) (the NCUA "is the proper party against which Defendants' claims, counterclaims, cross-claims and affirmative defenses arising out of the act or omissions of WesCorp and the NCUA as Conservator and/or Liquidator are to be

asserted in this action"). It says nothing about affirmative defenses based on pre-failure conduct of the NCUA as regulator.

Moreover, the parties specifically agreed (in a portion of the stipulation not cited by the Officer Defendants) that the stipulation did ***not*** affect the parties' substantive claims and defenses against each other:

> ***This stipulation***, and the substitution of the NCUA as Liquidating Agent, ***do not affect in any way whatever rights, if any, Defendants may have to assert*** claims, counterclaims, cross-claims or ***affirmative defenses*** . . . against WesCorp or against the NCUA as Conservator and/or Liquidating Agent (***the NCUA by this stipulation does not concede that defendants have any such rights***).

*Id.* at 3:7:12 (emphasis added).

The Officer Defendants also argue that "it is settled law that the NCUA stands in the shoes of WesCorp with respect to such defenses" and that "any defense Defendants have as [to] WesCorp itself, such as defenses of consent, approval, acquiescence, participation, and ratification by WesCorp's board, is likewise viable against the NCUA, which seeks to bring the claims on WesCorp's behalf." Docket 203 at 6:10-17. The NCUA does not dispute this proposition, which applies to the NCUA as liquidating agent, and it therefore is not seeking to strike the Officer Defendants' affirmative defenses to the extent they are based on the conduct of WesCorp or its board.

### B. <u>The Officer Defendants' Focus on Discovery and Evidentiary Issues is Misplaced</u>.

Throughout their opposition, the Officer Defendants essentially argue that the affirmative defenses based on pre-failure regulatory conduct should not be stricken so that the Officer Defendants are not hampered in their ability to obtain discovery relevant to the standard of care and whether they breached it – issues material to NCUA's proof of its claims. *See, e.g.*, Docket 203 at 1:19 – 2:13, 6:18 – 7:24, 14:1 – 15:3. For example, the Officer Defendants argue that if the motion to strike is granted, they will not be able to "introduce evidence of the NCUA's involvement

with WesCorp," which is critical to their defense because WesCorp allegedly instructed them to follow the NCUA's directions. *Id.* at 14:26 – 15:3.

The short answer is that the scope of discovery for the Officer Defendants' defenses to NCUA's case in chief is independent of the legal sufficiency of the affirmative defenses at issue here. Whether any particular evidence is discoverable, admissible, or relevant depends on its relationship to the issues that are material to the NCUA's claims. It does not depend on whether the affirmative defenses at issue are legally sufficient, redundant, immaterial, or impertinent. *See* Fed. R. Civ. P. 12(f); *Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc.*, 2011 U.S. Dist. LEXIS 96154 at *7-8 (C.D. Cal. Aug. 25, 2011). Thus, although damages are relevant in virtually every case, affirmative defenses alleging that plaintiffs are not entitled to recover damages are routinely stricken because alleging that the plaintiff is not entitled to recover damages is not a legally sufficient affirmative defense. *See, e.g., id.* at *4; *J&J Sports Prods. v. Soto*, 2010 U.S. Dist. LEXIS 103958 at *4-5 (S.D. Cal. Sept. 27, 2010).

The same is true here. Regardless of defendants' arguments regarding the scope of discovery and the relevance of certain evidence, "[c]ourts have uniformly held that claims or defenses based upon pre-receivership actions of regulators are legally insufficient," *Grant Thornton, LLP v. FDIC*, 535 F. Supp. 2d 676, 722 (S.D. W. Va. 2007). The affirmative defenses based on the NCUA's alleged pre-failure conduct should therefore be stricken.

The Officer Defendants argue that granting the NCUA's motion would "pre-judge the duty of care issue, or foreclose an important body of evidence directly relevant to the standard of care." Docket 203 at 7:20-22. That is simply not the case. To the extent that alleged actions or omissions of the NCUA are relevant to the Officer Defendants' standard of care or whether they met it, those actions or omissions would be subject to discovery, regardless of whether the affirmative defenses are stricken. However, questions regarding the discoverability of evidence

should be addressed during the discovery process. Questions regarding the admissibility of evidence should be addressed – as the Officer Defendants suggest – at the time "when [the] evidence is presented." Docket 203 at 7:23-24.

The Officer Defendants expound at length on their allegations of NCUA involvement in WesCorp. *See id.* at 8:1 – 11:8. These allegations (many of which the NCUA disputes) do not render the affirmative defenses legally sufficient. As the Officer Defendants acknowledge in their discussion of cases and otherwise, the allegations are relevant – if at all – to the issues of the Officer Defendants' standard of care and whether they met it, issues that are part of the NCUA's claims regardless of any affirmative defense.

### C. The Rule Precluding Defenses Based upon the Pre-Failure Conduct of Banking Regulators is Not Contingent Upon the Extent of the Regulators' Oversight.

In its opening memorandum, the NCUA cited numerous cases that held that the pre-failure actions of financial institution regulators cannot be asserted as an affirmative defense to claims brought by the receiver or liquidator of those institutions. *See* Docket 195-1 at 6:22 – 7:8. Although the Officer Defendants concede that the NCUA "cannot be blamed for any failings vis-à-vis WesCorp," *see* Docket 203 at 13:10-12, they argue that this case can be distinguished from the cases cited by the NCUA because "the NCUA approved of the investments it now says were recklessly made," *see id.* at 13:19-24. The Officer Defendants' attempt to distinguish the cases cited by the NCUA on their facts, *see id.* at 11:10 – 13:26, fails because those cases state a bright-line rule that is not contingent upon the extent of the regulators' oversight.

The Officer Defendants do not cite ***any*** authority (and the NCUA is aware of none) that creates an exception to the general rule when a regulatory agency is ***especially*** involved in the oversight of the failed institution, or when the agency "approves" the conduct of that institution. To the contrary, courts in a variety of settings and circumstances have all reached the same conclusion: the pre-failure

conduct of a regulatory agency cannot support a legally viable defense, regardless of the level of oversight exercised by the regulatory agency. *See, e.g.*, *FDIC v. Ornstein*, 73 F. Supp. 2d 277, 281 (E.D.N.Y. 1999) (striking affirmative defenses based on pre-receivership conduct); *RTC v. Sands*, 863 F. Supp. 365, 372-73 (N.D. Tex. 1994) (pre-conservatorship conduct of banking regulators is off limits); *FDIC v. Lowe*, 809 F. Supp. 856, 858 (D. Utah 1992) (affirmative defenses against the FDIC in its capacity as regulator are insufficient as a matter of law); *FDIC v. Crosby*, 774 F. Supp. 584, 586 (W.D. Wash. 1991) (regulatory conduct prior to receivership not relevant); *FDIC v. Ashley*, 749 F. Supp. 1065, 1068 (D. Kan. 1990) (contributory negligence defense not available against FDIC for pre-closing activities); *FDIC v Carter*, 701 F. Supp. 730, 737 (C.D. Cal. 1987) (the discretionary function exemption requires the court to strike affirmative defenses based on the FDIC's oversight of a bank).[2]

If the NCUA's "approval" of investments is relevant to either the Officer Defendants' duty of care or whether they met it, it is relevant to the case. However, if it is not relevant to either issue, it cannot be inserted into the case by the assertion of affirmative defenses that are legally insufficient.

[2] While the Officer Defendants argue that "[o]ther cases cited by the NCUA similarly rest on the principle that the NCUA had no duty to WesCorp" and cite four of the cases cited by the NCUA, *see* Docket 203 at 13:10-18, they do not address or attempt to distinguish two other cases cited by the NCUA that made no reference to the issue whether the regulator owed a pre-failure duty to a financial institution. *See Sands*, 863 F. Supp. at 372-73 (holding that affirmative defenses cannot be based on the pre-failure conduct of regulators, without holding or suggesting that such defenses are unavailable based simply upon a lack of duty); *Carter*, 701 F. Supp. at 737 (holding that the FTCA's discretionary function exemption "protects the FDIC from any liability for negligence in examining a bank" prior to its failure). Furthermore, three of the cases cited by the Officer Defendants recognize that the rule barring the assertion of affirmative defenses against regulators of financial institutions based on the regulators' pre-failure conduct is based upon the FTCA's discretionary function exemption, not only the lack of a duty owed by regulators. *See Grant Thornton*, 535 F. Supp. 2d at 721; *Lowe*, 809 F. Supp. at 858-59; *Ashley*, 749 F. Supp. at 1068. Thus, there is no basis for the Officer Defendants' attempt to distinguish the cases barring the assertion of affirmative defenses against regulators as being based upon the regulator's lack of duty.

In short, alleging that the NCUA encouraged, approved, or praised WesCorp's management does not change the fundamental rule that the NCUA's pre-failure conduct cannot, as a matter of law, support the Officer Defendants' affirmative defenses that the NCUA is seeking to strike here.

## II. THE COURT SHOULD STRIKE THE AFFIRMATIVE DEFENSES RELYING ON THE BUSINESS JUDGMENT RULE BECAUSE THAT RULE DOES NOT APPLY TO OFFICERS.

Although the Court already held that the business judgment rule does not apply to the Officer Defendants, *see* Docket 110 at 9-11, they argue, *see* Docket 203 at 15:12-23, that the Court should revisit the issue based on Judge Fischer's September 27, 2011 ruling in *FDIC v. Van Dellen*, Case No. CV 10-4915 DSF (SHx) (C.D. Cal. Sept. 27, 2011). But *Van Dellen* does not compel a different outcome.

In *Van Dellen*, former officers of IndyMac asserted the business judgment rule as an affirmative defense to the FDIC's claims against them for negligence and breach of fiduciary duty. The *Van Dellen* court denied the FDIC's motion for judgment on the pleadings as to those affirmative defenses for two reasons. First, the court held that the "Delaware business judgment rule may apply" and that Delaware law, unlike California law, permits officers to rely upon the business judgment rule. *Id.* at 3. Second, the court reasoned that even if California law applied, the FDIC had not shown that the California business judgment rule is inapplicable as a matter of law:

> California has recognized that "[t]he common law business judgment rule has two components: and "[o]nly the first component is embodied in Corporations Code section 309." *Lee v. Interinsurance Exch.*, 50 Cal. App. 4th 694, 714 (1996); *see also Barnes v. State Farm Mut. Auto. Ins. Co.*, 16 Cal. App. 4th 365, 378-79 (1993).

*Id.* at 3; *but see Gaillard v. Natomas Co.*, 208 Cal. App. 3d 1250, 1265 (1989) (officers are not entitled to invoke the business judgment rule).

Thus, the *Van Dellen* court failed to analyze the ***second*** common law component of the business judgment rule. This Court considered that component and concluded that it insulates only directors, not officers:

> Even if the argument would be that sections 309 and 7231 codify only one "component" of the common law business judgment rule, *see Lee*, 50 Cal. App. 4th at 714, that second component – apparently still left to the common law – has been described as one "which insulates from court intervention those management decisions which are made *by directors* in good faith in what *the directors* believe is the organization's best interest." *Id.* (emphasis added); *see also Barnes v. State Farm Mut. Auto. Ins. Co.*, 16 Cal. App. 4th 365, 378 (describing "a judicial policy of deference to the business judgment *of corporate directors* in the exercise of their broad discretion in making corporate decisions") (quoting *Gaillard*) (emphasis added).

Docket 110 at 10.

Judge Wright recently reached the same conclusion in *Perry*, 2011 U.S. Dist. LEXIS 143222 at *8-14. In that case, a former IndyMac officer contended that the business judgment rule insulated him from personal liability on the FDIC's claims. After analyzing California's common law and statutory business judgment rule, the court unequivocally held that "California's statutory [business judgment rule] does not extend its protection to corporate officers." *Id.* at *11. The court also observed that the legislative history for Section 309 "show[ed] that it was the drafters' intent not to include officers when applying [the business judgment rule's] standard of care to directors." *Id.* at *12. In fact, the court noted that "when the California legislature had the opportunity to codify common law [business judgment rule], it purposely excluded its application to corporate officers." *Id.* at *13.

In sum, as this Court has already held, and as Judge Wright recently confirmed in *Perry*, the Officer Defendants cannot rely upon the business judgment rule. The court should thus strike the Officer Defendants' affirmative defenses based on the business judgment rule.

## III. <u>THE STATUTE OF LIMITATIONS DEFENSES ARE LEGALLY INSUFFICIENT</u>.

Although the Officer Defendants do not dispute that their statute of limitations defenses are nothing more than bare-bones legal conclusions, they argue that they are nonetheless sufficient as pled because the "highly ambiguous allegations in the NCUA's Second Amended Complaint" make it difficult to determine the applicable statute of limitations. Docket 203 at 16:4 – 17:16.

The NCUA does not bear the burden of establishing the applicable statute of limitations. As with all affirmative defenses, the party asserting the defense must provide "fair notice" of the nature of the defense by alleging facts that explain how the defense relates to the instant case. *See Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979). Thus, merely stating that claims are barred "by the applicable statute(s) of limitations" – as the Officer Defendants do – is not enough. Instead, the Officer Defendants must show "why that affirmative defense might exist." *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010) (striking statute of limitations defense); *see Desert European Motorcars, Ltd.*, 2011 U.S. Dist. LEXIS 96154 at *7-8 (striking statute of limitations defense where defendant failed to plead facts supporting the defense); *Gessele*, 2011 U.S. Dist. LEXIS 99419 at *15 (striking statute of limitations defense because it failed to "identify which claims are untimely and which statutes of limitations are at issue"); *J&J Sports Prods., Inc. v. Montanez*, 2010 U.S. Dist. LEXIS 137732 (E.D. Cal. Dec. 13, 2010) (striking statute of limitations defense because defendants failed to plead any facts or legal theory to support the affirmative defense).

Because the Officer Defendants' statute of limitations defenses do not attempt to articulate any applicable statute of limitations, much less plead any facts supporting the defenses, the Court should strike those defenses. If the Officer Defendants wish to amend these affirmative defenses, they should identify each of

the statute(s) of limitations that they believe might apply, specify which claims are supposedly barred by the statute(s) of limitations, and allege facts that support their contention that such claims are time barred in part or in full.

## IV. SIDLEY'S ESTOPPEL DEFENSE IS LEGALLY INSUFFICIENT.

Sidley's affirmative defense of estoppel fails for several reasons. First, the defense is based on the NCUA's pre-failure regulatory conduct, which, for the reasons discussed above, is a legally insufficient ground for an affirmative defense. *See, e.g., Grant Thornton*, 535 F. Supp. 2d at 722 ("claims or defenses based upon pre-receivership actions of regulators are legally insufficient").

In addition, in order to plead the defense of estoppel against the government, a defendant must allege facts showing that the "government's wrongful act would cause serious injustice and . . . the public interest would not be unduly harmed by imposition of the doctrine." *Mukherjee v. Immigration & Naturalization Serv.*, 793 F.2d 1006, 1009 (9th Cir. 1986); *see Bottoni v. Sallie Mae, Inc.*, 2011 U.S. Dist. LEXIS 93634 at *5 (N.D. Cal. Aug. 22, 2011) (striking defense of estoppel); *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049-40 (N.D. Cal. 2004) (striking affirmative defense of estoppel where defendant failed to provide sufficient factual basis for the defense); *SEC v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995) (striking defense of estoppel).

Sidley's affirmative defense of estoppel does not come close to satisfying this heightened standard. *See* Docket 191, ¶¶ 277-78. Apparently recognizing this deficiency, Sidley argues that "[w]hile there is an additional requirement that applies when equitable estoppel is asserted against the government, that requirement does not apply because the NCUA is subject to all defenses WesCorp is subject to, including equitable estoppel." Docket 203 at 18 n.3. However, Sidley's estoppel affirmative defense alleges that the ***NCUA*** is equitably estopped by its alleged

actions and failures to act.[3] *See* Docket 191, ¶ 278. WesCorp would not have been subject to an affirmative defense of estoppel based upon the NCUA's action or inaction, and Sidley therefore cannot show that he is entitled to assert his affirmative defense of estoppel against the NCUA because he could have asserted it against WesCorp.

## CONCLUSION

For the reasons set forth herein and in the NCUA's opening brief, the Court should strike in their entirety: (a) Siravo and Swedberg's First, Third, and Fifth Affirmative Defenses; (b) Burrell's Second and Seventh Affirmative Defenses; (c) Lane's First, Second and Fifth Affirmative Defenses; and (d) Sidley's Second, Eleventh, and Twelfth Affirmative Defenses. The Court should also strike the references to the NCUA in: (a) Siravo and Swedberg's Sixth and Seventh Affirmative Defenses; (b) Burrell's First Affirmative Defense; (c) Lane's Sixth and

---

[3] In describing the factual basis for his affirmative defense of estoppel, Sidley cites certain factual allegations concerning WesCorp that are incorporated by reference into his Eleventh Affirmative Defense of estoppel by reason of his incorporation by reference of all allegations stated in his First Affirmative Defense. *See* Docket 203 at 18:3 – 19:2. However, Sidley's estoppel defense itself is based on the alleged action and inaction of the NCUA, not of WesCorp:

> The Second Amended Complaint, and each cause of action alleged therein against Sidley, is barred, in whole or in part, by the doctrine of estoppel because WesCorp complied with the NCUA's regulations and directors and/because [*sic*] WesCorp's investments were reviewed and approved by the NCUA and its examiners and therefore, ***by its words, actions and failures to act, NCUA is equitably estopped*** from asserting each of the purported causes of action alleged in the Complaint and/or from obtaining any of the relief sought thereby.

Docket 191, ¶ 278 (emphasis added).

Seventh Affirmative Defenses; and (d) Sidley's First and Sixth Affirmative Defenses.

DATED: December 23, 2011

LUCE, FORWARD, HAMILTON & SCRIPPS LLP
Michael H. Bierman
Jeffrey D. Wexler
Michael E. Pappas

By: /s/ Michael H. Bierman
Michael H. Bierman
Attorneys for Plaintiff and Counterdefendant National Credit Union Administration Board As Liquidating Agent For Western Corporate Federal Credit Union

101746262.3