# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No. | CV 10-1597-GW(MANx) |
| Title | *National Credit Union Administration, et al. v. Robert Siravo, et al.* |
| Date | March 12, 2012 |

**Present: The Honorable** GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Pat Cuneo | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Jeffrey D. Wexler

Attorneys Present for Defendants:

Richard E. Drooyan
Kenneth Fitzgerald
Laura D. Smolowe

**PROCEEDINGS:** PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIMS FOR: (1) LACK OF SUBJECT MATTER JURISDICTION; AND (2) FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED (FILED 11/14/11)

Court hears oral argument. Based on the tentative circulated and attached hereto, and for reasons stated on the record, Plaintiff's motion is **GRANTED WITH LEAVE TO AMEND.** Defendants will have until April 4, 2012 to **manually** file the Second Amended Counterclaim and Answer. The Answer to the Counterclaim will be filed by April 14, 2012.

: 08

Initials of Preparer    JG

*Nat'l Credit Union Admin. Bd. v. Siravo, et al.*, Case No. CV-10-1597
Further Rulings on Motion to Dismiss Amended Counterclaims for: (1) Lack of Subject Matter Jurisdiction; and (2) Failure to State a Claim Upon Which Relief May be Granted

This action was first filed, in California state court, on or about November 24, 2009. Plaintiff/counterdefendant National Credit Union Administration Board as Liquidating Agent for Western Corporate Federal Credit Union ("NCUA") intervened and filed its complaint-in-intervention on February 24, 2010. On November 14, 2011, the NCUA moved to dismiss various pending counterclaims under Fed. R. Civ. P. 12(b)(1) to the extent the counterclaims seek advancement or reimbursement of defense costs during the pendency of this suit or declaratory relief relating to any obligation of the NCUA to provide advancement, reimbursement or indemnification, and, under Fed. R. Civ. P. 12(b)(6), to the extent the counterclaims seek advancement or reimbursement of costs during the pendency of the lawsuit or indemnification. In their Opposition, the Officer Defendants[1] "withdraw" any requests that the NCUA "advance future legal fees on a going-forward basis." *See* Opposition Brief at 7:6-8. However, this "withdrawal" does not include any damages such as fees they have *already* incurred (including seeking such damages in advance of judgment) or any claims for future damages.

A. The Effect of 12 U.S.C. § 1787(g)

The NCUA argues that 12 U.S.C. § 1787(g)[2] precludes *federal jurisdiction*[3] where there is any request for relief that would "restrain or affect" the NCUA's exercise of its statutory powers, as would (in the NCUA's view) any relief advancing or reimbursing

---

[1] For convenience, the Court uses this designation for the counterclaimants here – Robert A. Siravo, Thomas E. Swedberg, Timothy T. Sidley, Robert J. Burrell and Todd M. Lane. On March 2, 2012, the parties stipulated to a dismissal, with prejudice, of Sidley, including all of Sidley's counterclaims. *See* Docket No. 216.

[2] "Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Board as a conservator or liquidating agent." 12 U.S.C. § 1787(g).

[3] Whether or not the NCUA is correct in its view that section 1287(g) is a *jurisdictional* limitation, it is plainly a limitation on the scope of relief this Court could award in the Officer Defendants' favor in this action.

costs to the Officer Defendants in this action or any declaratory relief[4] respecting any *right* to payment. As support for this view, the NCUA relies upon authority interpreting section 1787(g)'s statutory cousin – virtually a statutory identical twin – relating to the Federal Deposit Insurance Corporation ("FDIC"), 12 U.S.C. § 1821(j).[5] *See, e.g., Courtney v. Halleran*, 485 F.3d 942, 948 (7th Cir. 2007) (discussing breadth of section 1821(j)); *Freeman v. FDIC*, 56 F.3d 1394, 1398-99 (D.C. Cir. 1995). An advancement or reimbursement order (either in the form of an injunction or declaratory relief), it contends, would directly interfere with the NCUA's exercise of its powers as a liquidating agent of WesCorp. Instead, the Officer Defendants must follow the route of judicial review of the denial of their administrative claims for damages (as to which this Court unquestionably does have subject matter jurisdiction and/or the power to award relief, at least in some form). *See* 12 U.S.C. § 1787(b)(6)(A).

The Officer Defendants respond that a district court does have jurisdiction to award *damages* and, under their view, even declaratory relief where the declaratory relief in question is functionally equivalent to damages,[6] citing, for example, *Bruns v. National Credit Union Administration*, 122 F.3d 1251, 1254 (9th Cir. 1997), *Freeman*, 56 F.3d at 1399, and *Carney v. RTC*, 19 F.3d 950, 954-58 & n.3 (5th Cir. 1994). Yet, *Bruns* did not involve any action by the NCUA as conservator or liquidating agent, meaning that section 1787(g) would never have been implicated in that case, and, in *Carney*, the Fifth Circuit determined that the federal court lacked jurisdiction to award the requested declaratory relief. *See Carney*, 19 F.3d at 957-58.

---

[4] Sidley's Counterclaim is the only one to set forth an independent claim for declaratory relief, although Siravo and Swedberg request declaratory relief in the Prayer section of their counterclaim. As noted *supra*, Footnote 1, the parties have stipulated to dismiss Sidley.

[5] With the exception of the replacement of the words "the Board" and "liquidating agent" with, respectively, "the Corporation" and "a receiver," the language of the two sections is identical.

[6] If any declaratory relief requested is the functional equivalent of an award of damages, there is no need for the declaratory relief. It would be superfluous. *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1095 (9th Cir. 2004) ("[C]onsidered in conjunction with his claim for damages, declaratory judgment without the possibility of prospective effect would be superfluous."); *cf. Exxon Shipping Co. v. Airport Depot Diner, Inc.*, 120 F.3d 166, 168-69 (9th Cir. 1997) ("[I]t is an accepted principle that no declaration should be made, unless it serve a useful, practical purpose...."). Other types of declaratory relief certainly fall within the scope of relief prohibited by section 1787(g) (or statutes that are the functional equivalent thereof). *See Courtney v. Halleran*, 485 F.3d 942, 948 (7th Cir. 2007); *Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C. Cir. 1995).

In any event, this case fits within the "many cases" that *Freeman* recognizes allow for pursuit of "money damages...through [an] administrative claims process" that is "ultimately subject to judicial review." *Freeman*, 56 F.3d at 1399. In fact, as referenced above, the NCUA concedes that the Officer Defendants' entitlement to fees – effectively as "damages" – is properly before the Court pursuant to 12 U.S.C. § 1787(b). In effect, however, it argues that 12 U.S.C. § 1787(g) prevents the Court from issuing any ruling until, at the earliest, final judgment in the case. Even then (assuming similarity to the FDIC context), the NCUA asserts that the best the Officer Defendants can get would be "the issuance of a certificate for claim in liquidation entitling [them] to a *pro rata* share of the liquidation assets available to the class of general creditors." Reply Brief at 1:26-28; *see also Battista v. FDIC*, 195 F.3d 1113, 1116 (9th Cir. 1999) ("There is no question that the FDIC may pay creditors with receiver's certificates instead of with cash."); *FDIC v. Hickey*, 757 F.Supp.2d 194, 198-99 (E.D.N.Y. 2010). Any Judgment *ordering payment* of any fees to which the Officer Defendants might otherwise be entitled as damages would therefore run afoul of section 1787(g) given the NCUA's role as liquidating agent of WesCorp.[7]

No one appears to dispute that one of the "powers or functions" of the NCUA as liquidating agent of WesCorp is to pay claims to the extent possible (and to the extent it exercises its discretion to do so). See 12 U.S.C. § 1787(b)(2)(F), (b)(2)(J)(i), (b)(3)(A), (b)(5), (b)(10). If that is an accurate characterization of at least one of the NCUA's roles as liquidating agent, it would indeed appear that any relief this Court might fashion

---

[7] The NCUA relies upon 12 U.S.C. § 1787(b)(14)(D) as expressing a limitation (and, specifically, a seemingly *jurisdictional* limitation with respect to *that* particular provision) on what relief the Court has the power to issue to the Officer Defendants, and upon subsection 1787(b)(10)(A) as supplying the NCUA with "discretion" in the decision of whether to pay proper creditor claims. *See* 12 U.S.C. § 1787(b)(14)(D) (stating that, except as otherwise provided in subsection 1787(b), "no court shall have *jurisdiction* over...any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any credit union for which the Board has been appointed liquidating agent" or "any claim relating to any act or omission of such credit union or the Board as liquidating agent") (emphasis added); *id.* § 1787(b)(10)(A). While the NCUA's reading of those statutory provisions make sense on a facial reading of them, the NCUA only cited to them for the first time in its Reply (though it did cite to section 1787(b) generally in its opening brief). Ordinarily, therefore, the Court would not consider any argument based *solely* on those subsections on this motion. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). The Court would ask the Officer Defendants at oral argument whether they have any basis to contest the NCUA's presentation and/or understanding of those subsections.

actually *ordering* the NCUA to pay the Officer Defendants – whether by virtue of an "advancement" or "reimbursement" order[8] or by way of declaratory relief determining that the Officer Defendants have a *right* to such *payment* – would "restrain or affect" the NCUA's exercise of its powers.  As such, with the exception of allowing the Officer Defendants' their counterclaims for damages – which, given the course of events occurring in the context of this action, would effectively proceed by way of *de novo* review of the NCUA's denial of the Officer Defendants' administrative claims, pursuant to 12 U.S.C. § 1787(b) – the NCUA is correct that the Officer Defendants may not obtain the relief they seek that is the subject of this motion.

B. <u>Do the Officer Defendants Have a Right to Indemnification?</u>

The above determination seemingly precludes the necessity of resolving whether, in the absence of section 1787(g), the Officer Defendants would have any right, during the pendency of the action (*i.e.*, by way of advancement, reimbursement or declaratory relief), to any indemnification-related relief they seek, because even if they did have such a right, this Court could not issue any such relief.  Apart from the issue of payments during the pendency of the case, the NCUA also asks that the Court dismiss the Officer Defendants' claims for indemnification in their entirety.  As a result, what would still appear to be a ripe subject of dispute is whether the Officer Defendants would have a right to indemnification – at the *conclusion* of this action – *regardless* of whether they prevail on the merits of the NCUA's affirmative claims.  At a minimum, what would still be in dispute would be whether any of the Officer Defendants can look to California Labor Code section 2802 as the source of any right to indemnification.

The resolution of at least the larger, over-arching question, depends to a great extent, if not entirely, on the meaning of the provision for indemnification WesCorp adopted, known as "Policy 21."  Policy 21, in pertinent part, establishes that it was

> the policy of WesCorp to indemnify <u>to the maximum extent permitted</u> by either the laws of the State of California or the Model Business Corporation Act [current and former Officials and current and former Employees] for any liability asserted against them and expenses

---

[8] As the NCUA points out, the Officer Defendants cite no authority for drawing any distinction between reimbursement of past fees and advancement of future fees insofar as the application of section 1787(g) is concerned.

> reasonably incurred by them in connection with judicial or administrative proceedings, formal or informal, to which they are or may become parties by reason of the performance of their official duties.

Docket No. 209-1 at 4 (emphasis added).[9] The indemnification right extends to reasonable costs and attorneys' fees incurred by an indemnified individual "to secure the indemnity provided." *Id.*

The Officer Defendants' position on this motion appears to be based on an argument that Policy 21's "maximum extent" provision transforms the provision for permissive indemnification under California law into a provision for mandatory indemnification (providing execution of an undertaking, which all Officer Defendants have offered to provide here). In particular, the Officer Defendants argue that Labor Code section 2802 – which they assert is the relevant provision of California law incorporated into Policy 21 – contains no prevailing party requirement, meaning that fees could be reimbursed at any point in time (though that latter point is irrelevant given the approach taken above with respect to section 1787(g)). *See Nicholas Labs., LLC v. Chen*, 199 Cal.App.4th 1240, 1248 n.3 (2011); *Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal.App.4th 220, 230 (2006). The Officer Defendants also point out that California Corporations Code section 7237 – which the NCUA asserts is the relevant provision of California law incorporated into Policy 21 – even allows for indemnification following a finding of liability under subsection 7237(c)(1).[10]

As an initial matter, the NCUA argues – primarily in connection with the question

---

[9] The NCUA attempts in its Reply to rely upon the regulatory history of 12 C.F.R. § 701.33 – which is what authorized federal credit unions' adoption of indemnification policies in the first place, *see id.* § 701.33(c)(1) – to have the Court conclude that WesCorp's failure to *elect* between the Model Business Corporation Act ("MBCA") and California law in Policy 21 should be understood as producing the result that the NCUA now has *complete discretion* whether to afford any indemnification at all. *See* Reply Brief at 9:1-27. Putting aside the fact that, again, this is the first the Court has heard of this argument, *see Zamani*, 491 F.3d at 997, the regulatory history the NCUA cites does not remotely support that conclusion (and would specifically contradict the plain intent of Policy 21). The history the NCUA points to would disallow the mixing-and-matching of or picking-and-choosing provisions of California law and the MBCA, but that is not what Policy 21 did or what the Officer Defendants seek to do now.

[10] If the Court is correct in its understanding of the Officer Defendants' arguments, it does *not* appear that they are arguing that prevailing party status is unnecessary under the MBCA. In their Opposition brief, however, they do make clear that they are attempting to rely solely on the MBCA – by way of Policy 21 – in connection with the NCUA's claims for breach of fiduciary duty. Therefore, it would appear that the issue of indemnification rights would only be ripe with respect to the SERP-related claims asserted against Siravo and Swedberg, as to which the Officer Defendants claim reliance on California law, by way of Policy 21.

(now answered) of whether the Officer Defendants could ever obtain the relief they seek *prior to* the final disposition of this matter – that a recently-enacted regulation, 12 C.F.R. § 701.33(c)(6), precludes any mandatory indemnification because it provides for *discretionary* expense payments and, even in that situation, requires that certain findings be made which have not yet been made. Section 701.33(c)(6), which was made effective January 27, 2011, provides, in full, as follows:

> (6) A Federal credit union may, before final disposition of a proceeding referred to in paragraph (c)(5) of this section, advance funds to pay for or reimburse the expenses, including legal fees, reasonably incurred in connection with the proceeding by an official or employee who is a party to the proceeding because that individual is or was an official or employee of the credit union if:
>
> (i) The disinterested members of the credit union's board of directors (or in the event there are fewer than two disinterested directors, the supervisory committee), in good faith, determine in writing after due investigation and consideration that the official or employee acted in good faith and in a manner he or she reasonably believed to be in the best interests of the credit union's members;
>
> (ii) The disinterested members of the credit union's board of directors (or the supervisory committee, as the case may be), in good faith, determine in writing after due investigation and consideration that the payment or reimbursement of the expenses will not materially adversely affect the credit union's safety and soundness; and
>
> (iii) The official or employee provides:
>
> > (A) A written affirmation of the individual's reasonable good faith belief that the relevant standard of conduct described in § 701.4(b) of this chapter has been met by the individual; and
> >
> > (B) A written undertaking to repay the credit union for any funds advanced or reimbursed, to the extent not covered by payments from insurance, if the official or employee is not entitled to indemnification under paragraph (c)(5) of this section.

12 C.F.R. § 701.33(c)(6). In light of section 701.33(c)(6) and the sources of law incorporated into Policy 21, the NCUA contends that the Officer Defendants have no *right* to indemnification or reimbursement of defense costs until the Court renders judgment *in their favor* on the NCUA's claims (or, presumably, unless and until the NCUA makes the necessary findings and exercises its discretion in the Officer

6

Defendants' favor). The NCUA takes the position that section 701.33(c)(6) is applicable to indemnification decisions made after January 27, 2011, even though the conduct at issue that supports the claimed basis for indemnification occurred before that date. In advancing that contention, it cites to a stance the NCUA Board took in May 2011 in connection with what the NCUA calls "a related indemnification regulation."

In response, however, the Officer Defendants contend that retroactive application of section 701.33(c)(6) – to underlying conduct occurring *before* its effective date – would be impermissible. They note that there is nothing in the "related indemnification regulation's" legislative/rulemaking history which suggests it would apply to this situation – where the underlying conduct had already been completed and the relevant lawsuit instituted. They also point out that there is nothing demonstrating a clear intent to apply the regulation retroactively, meaning it should only apply prospectively where a retroactive application would disturb vested rights. *See, e.g., Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208-09 (1988); *Henry v. FDIC*, 695 F.Supp.2d 1063, 1078-82 (C.D. Cal. 2010); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 263-80 (1994). Finally, they question whether section 701.33 even applies in the post-receivership setting, agreeing with the NCUA that it "makes no sense as applied to failed credit unions." Opposition Brief at 13:7-9.[11]

The NCUA rejects the Officer Defendants' argument that application of section 701.33(c)(6) here would be impermissibly retroactive because, it asserts,

> (1) that regulation was adopted to **expand or clarify** the ability of a federal credit union to make interim payments during a pending lawsuit and does not curtail pre-existing rights to advances; and (2) adoption of that regulation did not in any event impair any right the Officer Defendants might have had with regard to receiving advances.

Reply Brief at 2:7-11. As to the former statement, the NCUA asserts that the previously

---

[11] As the NCUA points out in its Reply, the alternative regulation the Officer Defendants suggest should apply to a post-receivership indemnification determination specifically does not apply here. *See* 12 C.F.R. § 750.7; 76 Fed. Reg. 30510, 30511 (May 26, 2011) ("This part 750 contains restrictions on the ability of all [federally insured credit unions] to provide indemnification payments to credit union officials, but the restrictions apply only in the limited circumstances described in the rule, i.e., in the context of an administrative enforcement action brought by NCUA or the appropriate state regulatory authority. This part would, accordingly, take precedence in that specific instance over broader, generally applicable provisions of §701.33 or of state law and regulation.").

applicable regulation authorized indemnification but did not authorize advances, whereas the new regulation expanded or clarified the ability to make such advances. With respect to the latter point, the NCUA contests the Officer Defendants' assertion that the language of Policy 21 actually *requires* the NCUA to advance fees. Instead, it argues that both Corporations Code section 7237 and the Model Business Corporation Act ("MBCA") – incorporated into Policy 21, at least in the NCUA's view – allow for advancement of costs only if authorized in the case, with specific findings required.

At this stage, the Court need not resolve whether section 701.33(c)(6) applies to limit the effect of Policy 21. Given the ruling on the scope of available relief announced *supra*, the only way in which the Officer Defendants' claim to indemnification rights would be ripe for adjudication *now*[12] – albeit with the issuance of any relief delayed until later – would be if they were correct in their reading of Policy 21 that it effectively *requires* indemnification regardless of whether they are the prevailing parties on the NCUA's claims against them (because of their view that neither the Labor Code nor Corporations Code sections potentially applicable here limit indemnification to claims that the indemnitee *wins, see also* Footnote 10, *supra*). If they are incorrect in that view, their indemnification claim is not ripe because they have not yet prevailed.[13] If they are correct, then section 701.33(c)(6)'s potential application becomes an issue.

However, the Court cannot resolve the proper understanding of Policy 21's "maximum extent permitted" language on the pleadings alone.[14] In effect, the Officer

---

[12] The NCUA cites *Armstrong v. Alabama Power Co.*, 667 F.2d 1385, 1388-89 (11th Cir. 1982), and *A/S J. Ludwig Mowinckles Rederi v. Tidewater Construction Corp.*, 559 F.2d 928, 932 (4th Cir. 1977), for the proposition that "claims for indemnification against all potential liability and expenses are not made ripe by the mere fact that claimants have already incurred some defense costs." Reply Brief at 17:14-19. However, both *Armstrong* and *A/S J. Ludwig* involved claims for equitable indemnification arising out of personal injury and property damage claims which obviously depended upon resolution of the initial liability question for the complaining party to have *any* right to indemnification from others.

[13] In connection with their arguments on this motion, the Officer Defendants assert that they are general creditors and therefore should enjoy priority over other classes of people or entities entitled to payout in connection with the liquidation of WesCorp. Even if the Officer Defendants are correct in that regard, however, given the language of section 1787(g), the Court could not issue such a ruling now. In any event, it would be foolhardy (at a minimum) to do so without hearing from the other individuals or entities who might have a right to weigh in on the issue of statutory prioritization. The Officer Defendants' assertion, therefore, does not change any aspect of the ripeness analysis.

[14] It is for this same reason that, if the Court were not to reach the conclusion regarding the effect of section 1787(g) that it has above, it could not resolve, on the pleadings alone, whether Policy 21 *required* (because

Defendants appear to be arguing that any predicate findings that would ordinarily be necessary to a determination to provide indemnification are actually no roadblock to indemnification given the mandatory and expansive language of Policy 21. While that would appear to be a relatively strange understanding of Policy 21's meaning, one way in which Policy 21 could have been – but is not – written which would have effectively precluded that argument would have been to provide for indemnification "pursuant to" California law or the MBCA. The NCUA's understanding of how Policy 21 works would be much strengthened had that been the language chosen therein.[15]

As indicated above, if the Court misunderstands the Officer Defendants' argument and they are *not* arguing that Policy 21 provides for indemnification *regardless* of prevailing party status, then the Court would agree with the NCUA that ripeness concerns would preclude the Court from resolving that issue now (because the Officer Defendants would have to prevail before implicating any indemnification right). Given that, under that scenario, the right to indemnification would not yet be a ripe issue, neither would any argument concerning the effect, if any, of section 701.33(c)(6), or the availability of indemnification pursuant to California Labor Code section 2802 versus California Corporations Code section 7237. The discussion which follows this point in the analysis, therefore, would only be binding (*i.e.*, within the Court's power to decide) if indeed the Court is correct that the Officer Defendants are advancing an argument that they have a right to indemnification under Policy 21 regardless of prevailing party status.

C. Do Considerations of Solvency or Absurdity Change the Analysis?

The Court would reject the NCUA's reliance upon cases involving the Resolution Trust Corporation ("RTC") to the extent that they support the view that a party seeking indemnification from a receiver or liquidating agent cannot do so by way of reliance upon a regulation that presumes the ongoing solvency of the institution in question. To be clear, the Court does not quibble with the outcome of that analysis where such

---

– as the NCUA has conceded – California Corporations Code section 7237 and the MBCA both *allow*) advancement or reimbursement of costs/expenses during the pendency of a lawsuit.

[15] If, instead, it is the NCUA's position that section 701.33(c)(6) in effect *nullifies* Policy 21 *irrespective* of how Policy 21 should be interpreted (*i.e.*, in *all* situations), the NCUA would indeed appear to have a fairly steep hill to climb in convincing the Court that any such effect would be legitimate.

9

regulations are unquestionably in play and relied upon. Here, however, the Officer Defendants are suing under Policy 21 and, as noted above, there are colorable arguments (which the Court may never even have to reach) for why section 701.33(c)(6) would not apply here. Whether or not section 701.33(c) assumes the existence of an ongoing institution, where it is not, in fact, the source of the right the Officer Defendants seek to enforce, this is quite beside the point.[16]

The NCUA responds that it is *as if* the Officer Defendants are suing under a regulation because federal law should control the enforcement and construction of Policy 21, given that its very existence depends upon authority granted by a federal statute or regulation. Yet, simply because federal law might control the question of how Policy 21 is to be interpreted or enforced does not mean that the Officer Defendants are thereby automatically suing *pursuant* to a regulation. Of the RTC-based cases, only *RTC v. Scott*, 929 F.Supp. 1001, 1025-27 (S.D. Miss. 1996), *vacated on other grounds sub nom. FDIC v. Scott*, 125 F.3d 254 (5th Cir. 1997), involved a claim for indemnity based – like the Officer Defendants' claim here – at least in part on an indemnification bylaw, and in that case the court rejected the idea that the RTC could avoid the effect of the bylaw either by way of the regulation in question or by virtue of an FDIC statute identified as somehow impliedly voiding the pre-existing indemnification bylaw obligation. In so ruling, the *Scott* court must have, at least implicitly, rejected any possibility that *only* the applicable regulation mattered with respect to the indemnification claim.

The NCUA also relies upon the RTC cases to the extent those decisions reason that allowing indemnification of officers or directors for alleged wrongdoing to the regulated institution itself would lead to an absurd result. Again, the Court does not disagree with that proposition. *See United States v. Corinthian Colleges*, 655 F.3d 984, 994 (9th Cir. 2011) ("The plain language of a regulation…will not control if clearly expressed administrative intent is to the contrary or if such plain meaning would lead to absurd results.") (quoting *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1085

---

[16] In any event, if the perceived requirement of WesCorp's continued vitality is due to the need, in the NCUA's view, for further findings to be made *by WesCorp* before the Officer Defendants would enjoy any right to indemnification, that need for present or future action is absent if the Officer Defendants prevail in their view of the meaning of Policy 21's "maximum extent" language, because the necessary decisions seemingly would have been made at the time Policy 21 was designed and issued.

(9th Cir. 2007)); *F.B.T. Productions, LLC v. Aftermath Records*, 621 F.3d 958, 963 (9th Cir. 2010) ("Under California law, '[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.'") (quoting Cal. Civ. Code §1638), *cert. denied*, 131 S.Ct. 1677 (2011); *see also Nicholas Labs., LLC v. Chen*, 199 Cal.App.4th 1240, 1248 (2011) (noting that "general rule" and "common understanding" of "indemnify" as applying to third party claims "does not apply if the parties to a contract use the term 'indemnity' to include direct liability as well as third party liability") (omitting internal quotation marks); *id.* at 1252 n.8 (noting an argument for "the *potential* absurdity of interpreting section 2802 to allow indemnification to employees *successfully* sued by their employers"). However, that is a circumstance that either WesCorp, in Policy 21, or the federal government and the NCUA, in applicable regulations, could have easily anticipated. Having not done so, the Court is reluctant to read into Policy 21 or a governing regulation, if any, an "absurd result" exception, especially where the Officer Defendants have already directed the Court to provisions of at least California law that allow for indemnification even where the individual in question is adjudged liable (though perhaps not in first party cases). The Court would not conclusively reject the "absurd results" argument just yet, but, for the reasons mentioned, neither is it prepared to adopt that reasoning at this time.

D. <u>Labor Code Section 2802 Does Not Apply Here</u>

On the issue of the applicability of California Labor Code section 2802,[17] however, the Court would agree with the NCUA, at least insofar as it argues that the Officer Defendants' claims should be governed by California Corporations Code section

---

[17] In pertinent part, section 2802 provides as follows:

> (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.
> . . . .
>
> (c) For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

Cal. Lab. Code § 2802.

7237 instead.[18] Section 7237 is a statutory provision clearly applicable *specifically* to non-profit corporations. See *Los Angeles Protective League v. City of Los Angeles*, 27 Cal.App.4th 168, 178-79 (1994) ("[A] particular or specific provision will prevail over one which is more general."). Moreover, the two statutes could conflict: an employee acting in bad faith, but not by following directions from the employer that the employee believed to be unlawful, *could* conceivably obtain indemnification under section 2802, but not under section 7237.

If the Court were to ultimately agree with the NCUA's argument on the inapplicability of section 2802 indemnification, the Officer Defendants ask that the Court grant them leave to add a counterclaim under Corporations Code section 7237.[19] The NCUA does not object to this request (assuming the Court does not conclude that the

---

[18] As a result, the Court need not resolve the NCUA's alternative argument that Labor Code section 2802 does not apply to lawsuits by an employer against its employee. Were the Court required to confront that argument, the NCUA would appear to have the stronger of the positions, considering California Court of Appeal decisions on the topic. See *Nicholas Labs.*, 199 Cal.App.4th at 1248-52; see also *Cassady*, 145 Cal.App.4th at 230 ("Section 2802...requires an employer to indemnify an employee who is sued by third persons for conduct in the course and scope of his or her employment....") (emphasis added). *O'Hara v. Teamsters Union Local #856*, 151 F.3d 1152 (9th Cir. 1998), to which the Officer Defendants direct the Court in order to support the contrary conclusion, actually *supports* the view that section 2802 only comes into play when a third-party suit is involved, as the *Nicholas Laboratories* decision recognized, because there *was* an underlying third-party suit involved in that case. See *Nicholas Labs.*, 199 Cal.App.4th at 1249-50; see also *Los Angeles Police Protective League v. City of Los Angeles*, 27 Cal.App.4th 168 (1994). *Freund v. Nycomed Amersham*, 347 F.3d 752 (9th Cir. 2003), which the Officer Defendants also cite, similarly does not necessarily aid their position because any limited rumination the Court had about the operation of section 2802 in that case came in the context of a suit *by an employee* against an employer, rather than *vice versa* (and even then determined that the employee did *not* have a right to recover attorneys' fees in that action). See *id.* at 765-66; *Nicholas Labs.*, 199 Cal.App.4th at 1250. Although the Officer Defendants are of course correct that this Court is not obliged to follow the *Nicholas Laboratories* decision in that it was issued by a state intermediate court of appeals, the decision resulted from a detailed and extensive analysis of a number of different factors, including certain public policy factors. See *id.* at 1251-52. Moreover, permitting the Officer Defendants an avenue to indemnification under section 7237 supports California's "strong public policy that favors the indemnification...of employees by their employers for claims and liabilities resulting from the employees' acts within the course and scope of their employment." *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 952 (2008) (omitting internal quotation marks) (quoting practice guide). In the end, where there is no obvious statutory support for a reading of section 2802 contrary to that adopted in *Nicholas Laboratories*, this Court would find it difficult to disagree with that court's determination.

[19] Rejection of a section 2802 avenue for indemnification does not render the indemnification issue un-ripe. Although the NCUA contends that the Corporations Code requires that an officer prevail on the merits before obtaining mandatory indemnification, see Cal. Corp. Code § 7237(d), the Officer Defendants note that indemnification is also possible where an officer has been found liable, see *id.* § 7237(c)(1), and argue that the effect of Policy 21 is to turn that *availability* of indemnification in such circumstances into a requirement of indemnification in *all* circumstances. As noted above, while the Officer Defendants' understanding of Policy 21's language in that respect might be somewhat far-fetched, it is not one that this Court can outright reject based solely on the pleadings and a plain-language reading of Policy 21.

indemnification claims should be dismissed in their entirety).

### E. Conclusion

In sum, the Court would grant the NCUA's motion insofar as it seeks the dismissal of any claim to relief, including declaratory relief, designed to establish the Officer Defendants' right to the advancement or reimbursement of defense costs during the pendency of this action. It would also grant the motion to dismiss those counterclaims that rely upon California Labor Code section 2802 for any indemnification rights, with leave to amend to add counterclaims founded upon indemnification rights flowing from California Corporations Code section 7237. It would otherwise deny the motion.